**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **EDWARD A. COPELAND AND SHERYL COPELAND,** | |
| **Plaintiffs,** | **CIVIL ACTION NO. 5:22-cv-00212-CAR** |
| **vs.** | |
| **TRISTAR PRODUCTS, INC., and ABC, INC.,** | |
| **Defendants.** | |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE OR LIMIT OPINIONS AND TESTIMONY OF DEFENDANT TRISTAR PRODUCTS, INC.'S EXPERT DR. ROBERT GIACHETTI, PH.D.**

Plaintiffs, by and through their undersigned attorneys, pursuant to Federal Rules of Evidence 702 and 403, and this Court's October 18, 2023 Order extending the deadline for *Daubert* motions (Doc. 24), files this Brief in Support of their Motion to Exclude or Limit Opinions and Testimony of Defendant Tristar Products, Inc.'s ("Tristar") expert Dr. Robert Giachetti, Ph.D ("Dr. Giachetti").

### I.    INTRODUCTION AND FACTUAL BACKGROUND

In 2016, Plaintiffs ordered the subject pressure cooker online that was designed, manufactured, marketed, and sold by Tristar. (Doc.1). Over the next several years, Plaintiffs used the pressure cooker several times and became familiar with its operation. (*Id.*) On July 18, 2020, Plaintiffs were using the subject pressure cooker to cook a chuck roast. Upon completion of the cooking cycle, Mr. Copeland attempted to rotate the lid to the open position. As soon as he started

to rotate the lid, the contents explosively expelled onto both he and Mrs. Copeland. (*Id.* at ¶¶ 15). "When he went to just barely turn the lid, which turned freely, it blew off". (Ex. "A", Depo. of Sheryl Copeland, p. 50, ll 8-10). Mr. Copeland only used one hand to open the cooker. (*Id.* at p. 50-52). As a result, hot contents of the subject pressure cooker caused painful and disfiguring burns on Mr. Copeland's face, torso, neck, arms, and hands. (Doc. 1, ¶¶ 16). Mr. Copeland had to undergo surgery to graph cadaver skin to his body and later endured procedures to debride and remove skin. (*Id.* at ¶¶ 17). Mrs. Copeland also experienced severe and disfiguring burns to her breasts, chest, hands, arms, and face. (*Id.* at ¶¶ 20).

On June 13, 2022, Plaintiffs sued Tristar for injuries they sustained alleging that Tristar is strictly liable for the defects in the subject pressure cooker. (Doc. 1). Specifically, Plaintiffs assert that the subject pressure cooker was defective because the lid can be removed or opened while still under pressure. (*Id.*) Furthermore, Plaintiffs allege that Tristar was negligent in the design, manufacture, marketing, and selling of the subject pressure cooker and failed to adequately warn users. (*Id.*) Additionally, Plaintiffs contend that Tristar should be punished for its actions despite knowing that the pressure cooker was defective. (*Id.*).

In an effort to address Plaintiffs' claims, Tristar has hired Dr. Giachetti, a mechanical engineer, to testify about the operation and functionality of the subject pressure cooker, and to offer an explanation as to what he believes caused the Tristar pressure cooker to open under pressure. Tristar has produced Dr. Giachetti's supplemental opinion which offers the following four opinions:

      1. When recreating the Copeland's recipe and cool down protocol, per Mrs. Copeland's testimony, no contents were ejected from the exemplar pressure cooker when it was opened.

2. The narrative of the usage of the pressure cooker on the day of the incident is consistent with a completely vented and depressurized unit.

3. There is no evidence that the pressure cooker is defective or the condition of the pressure cooker as sold was unreasonably dangerous because the pressure cooker showed signs that it had been forcibly opened at least one time and attempts had been exerted to open it while under pressure in several instances, the pressure cooker, as tested at low pressure showed a large resistance to opening force (45 pounds) and 45 pounds is not consistent with an easy or effortless opening force, the exemplar pressure cooker reviewed conformed to voluntary standards, and a reduction in lock performance was consistent with a plastically deformed locking plate and deep cut groove in the locking tab and float valve.

4. The burns observed on Mr. Copeland's arms are consistent with forcing open the pressure cooker lid while there was pressing inside of it.

(Exhibit "B" Dr. Giachetti's Report p. 21-22). First, Dr. Giachetti should be limited from asserting the first two opinions, that the cooker was not pressurized at the time of the incident at issue, while at the same time asserting opinions three and four that the cooker was pressurized at the time of the incident. These are contradictory opinions which not only fail to assist a trier of fact in understanding evidence or in resolving a fact issue, but would serve to confuse a trier of fact and prejudice Plaintiffs. Dr. Giachetti clearly opines in his third and fourth opinions, that the cooker was under pressure at the time of the subject incident, and these opinions necessarily render one and two inapplicable.

Secondly, Dr. Giachetti should be limited from offering certain aspects of this third opinion. He opines that the pressure cooker is not defective, that it showed signs that it had been forcibly opened at least one time and that there had been attempts to open the cooker while under pressure in several instances. However, Dr. Giachetti admits that he is unable to tell whether the evidence showing the cooker was opened under pressure occurred during the incident at issue or

sometime before. (Ex. "B", p. 15; Ex. "C", Depo. of Giachetti, p. 112, ll 21-24).[1] He also admits that he is unable to tell whether the prior attempts to open the cooker were successful or whether those attempts were abandoned once the effort met resistance. (Ex. "C", p. 119, ll 6-17). Dr. Giachetti should also be limited from offering opinions that 45 pounds is not consistent with an easy or effortless opening because he fails to comply with any reliable methodology in conforming this opinion.

Finally, Dr. Giachetti should be limited from offering opinions regarding the burns or burn patterns suffered by plaintiffs. Dr. Giachetti is not a medical doctor and has no training in burn identification or treatment. Furthermore, Dr. Giachetti should be limited in offering testimony that he is able to determine that plaintiffs used force to open the pressure cooker because he fails to apply any reliable methodology in reaching that opinion. In fact, he has not used any mechanical engineering expertise in reaching these conclusions.

Therefore, for the reasons set forth below, Plaintiffs hereby moves to exclude testimony of Dr. Robert Giachetti pursuant to Federal Rule of Evidence 703 and 403, and the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## II.     ARGUMENT AND CITATION OF AUTHORITY

Federal Rule of Evidence 702 allows "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion where three criteria are met. The testimony must be (1) based on sufficient facts or data, (2) be the product of reliable principles and methods, and (3) reflect a reliable application of the principles and

---

[1] The deposition of Dr. Giachetti is attached hereto as Exhibit "C" because at the time of filing this brief, plaintiffs have not received the sealed transcript.

methods to the facts of the case. Fed. R. Evid. 702. A party seeking admission of expert testimony must establish its proper foundation and the trial court makes this determination under the abuse of discretion standard. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). The trial courts serve as the gatekeeper for expert testimony and this analysis requires more than taking an experts word for it. *Ebereli v. Cirrus Design Corp.*, 615 F.Supp.2d 1357 (S.D.Fla. 2009).

In addressing the trial courts' role as the gatekeeper of expert testimony, the 11th Circuit found that expert testimony is admissible when: (1) the expert is qualified to testify, (2) the methodology used by the expert in reaching his conclusion is reliable as determined by the sort of inquiry mandated in *Daubert*, and (3) the testimony, through the application of scientific or technical expertise, assists the trier of fact to understand the evidence or determine a fact in issue. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999). Therefore, the expert must be qualified, the methodology used must be reliable, and the testimony must assist the trier of fact to understand the evidence.

Furthermore, in considering the reliability requirement, the court must insure the expert witness employed reliable scientific methods or principles and may consider factors such as whether the theory can be tested, whether it was subject to peer review, whether the technique has a high known potential rate of error, whether the theory has gained acceptance within the scientific community, and whether the expert is being as careful as an expert in the same field would be in conducting work outside the context of litigation. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The expert's testimony must be helpful, or "fit" with the factual issues to be resolved and have a valid scientific connection to disputed facts in the case. *Allison,* 184 F.3d 1312.

**A. Dr. Giachetti's opinion that the pressure cooker was not pressurized when the lid separated from the base contradicts his later opinions that the cooker was pressurized and is neither helpful to the trier of fact nor relevant to the facts of this case.**

In his first two opinions, Dr. Giachetti opines that the narrative of the usage of the pressure cooker on the day of the incident was consistent with a vented and depressurized unit. However, in his fourth opinion, Dr. Giachetti states that he believes the unit was pressurized when the incident occurred. (Ex. "B", p. 21). These opinions contradict each other and would not only fail to assist the jury in determining an issue of fact, but would only serve to confuse the jury. In his deposition, Dr. Giachetti stated that his opinion is that the pressure cooker was under pressure when the incident at issue occurred. In fact, there is no evidence that the pressure cooker was not under pressure when the incident occurred and as such there is no disputed issue regarding this matter. Dr. Giachetti's later opinion renders his first two opinions irrelevant and inapplicable.

Dr. Giachetti's first two opinions should also be excluded pursuant to Federal Rules of Evidence rule 403. Rule 403 states that a "court may exclude relevant evidence if its probative value is substantially outweighed by danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Therefore, even if Dr. Giachetti's first two opinions were relevant, they should be excluded because any probative value is substantially outweighed by prejudice to plaintiffs, the confusion it creates, and the potential for misleading the jury. Since Dr. Giachetti believes the pressure cooker was pressurized at the time of the incident, any opinions to the contrary are contradictory and irrelevant. More importantly, conflicting opinions are both confusing and misleading to a jury.

**B. Dr. Giachetti's opinion that there is no evidence that the pressure cooker is defective or unreasonably dangerous should be excluded because his methodology fails to satisfy either the reliability or relevance requirements.**

In support of this opinion, Dr. Giachetti makes four assertions: (1) the pressure cooker shows signs it had been forcibly open at least one time and that attempts had been exerted to open it while under pressure in several instances, (2) the pressure cooker, as tested at low pressure, showed resistance to opening of 45 pounds and 45 pounds is not consistent with easy or effortless force, (3) the exemplar pressure cooker viewed by Dr. Giachetti conformed to voluntary standards set forth by UL136, and (4) the reduction of lock performance is consistent with a plastically deformed locking plate and a deep cut grove in the locking tab and float valve. (Ex. "B", p. 21). All of these assertions are based on flawed methodology and would not assist the jury in determining an issue of fact.

Dr. Giachetti makes an issue out of the fact that the pressure cooker showed signs of being forcibly opened at least one time and that attempts have been exerted to open it while under pressure in several instances. Those assertions are neither relevant, nor helpful to a jury. The signs of a forcible opening referred to by Dr. Giachetti are a scratch, or witness mark, on the locking tab showing that the lid was removed while the lid was locked in place. (Ex. "B", p. 14). However, by Dr. Giachetti's own admission, he is unable to determine whether the scratch or witness mark was made during the explosive event at issue or whether it was made sometime prior to the incident at issue. (Ex. "C", p. 112, ll: 21-24). As such, in the absence of any reliable methodology to make that determination, this opinion fails the reliability requirement. Furthermore, this opinion fails the relevance requirement, because Dr. Giachetti cannot determine when the forceable opening occurred, and as such, his opinion does not "fit." It would not assist a jury in understanding the

evidence or in determining a fact issue. In fact, it is just as likely that the explosive event at issue caused the scratch, or witness mark, referred to by Dr. Giachetti as evidence of a forcible opening.

When an expert's opinion is not directly relevant to an issue in the case, the testimony does not help the trier of fact and is inadmissible. *Phillips v. American Honda Motor Co. Inc.*, 238 F. Appx 537, 540 (11th Cir. 2007). In order to be admissible, an experts' opinion must advance the question at issue. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004). This opinion serves no purpose other than as an attempt to muddy the waters, and as such should also be excluded pursuant to Federal Rules of Evidence 403.

Dr. Giachetti's opinion that there were attempts to open the pressure cooker while under pressure in several instances should also be excluded because it fails to meet both the reliability and relevance requirements. This opinion fails to meet the reliability requirement because Dr. Giachetti's methodology is flawed. He admits that he does not know how much pressure was exerted on the lid in the previous opening attempts, or whether those attempts were successful. (Ex. "C", p. 119, ll 6-17). Therefore, he cannot determine whether significant force was applied to the lid or whether an attempt to open the lid was made and abandoned once resistance was met. (*Id.*). As such, this opinion offers nothing to assist the jury in determining whether the pressure cooker was defective. This opinion is neither reliable nor relevant and is another attempt to muddy the waters with an opinion that does not advance the question in dispute. Based on Dr. Giachetti's testimony, the locking plate, and locking tab and float valve could have been damaged in the explosive event at issue here. There is no evidence, and his methodology produces no reliable conclusion, that the cooker had been opened under pressure prior to the incident at issue. The two previous assertions seem to be an effect to introduce an opinion that the locking mechanism on the

cooker was damaged prior to the subject incident. Dr. Giachetti's own admission shows that it proves neither.

Dr. Giachetti also opines that the pressure cooker showed a resistance to opening force up to 45 pounds, which he opines is not consistent with easy or effortless opening force. This opinion also fails to meet the reliability and relevance requirements discussed above. First, Dr. Giachetti bases his opinion of whether 45 pounds of force is significant on an article he cites in his report, but failed to provide pursuant to a request for production of documents. Therefore, plaintiffs had no access to the data upon which he bases his opinion. In his report, he states that "45 pounds represents a substantial effort to generate, this amount of force represents approximately 58% of the mean maximum effort of one hand pushing ability of 23-year-old male when pushing at elbow height, and 66% of the mean maximum effort when push is exerted at shoulder height. (Ex. "B", p. 20). Stated another way, Dr. Giachetti opines that 45 pounds represent almost 58% of a maximum average effort of 23-year-old males when pushing at elbow height and 66% of that effort while pushing at shoulder height. (*Id.*). However, his report does not mention the range of outcomes for the test subjects, the type of pushing the subjects were performing, nor the angles at which they were pushing. More importantly, there is no explanation regarding the methodology of applying that information to the effort Mr. Copeland would have exerted while rotating the lid open on the subject pressure cooker.

The absence of any explanation regarding the methodology is enough to exclude this opinion. However, in his deposition, Dr. Giachetti went on to explain that the pushing force discussed in the article describes someone standing and pushing something at elbow height, and then pushing something at shoulder height and measuring that force. (Ex. "C", p. 135-136). Dr. Giachetti provides no explanation of how that data applies in this case or how that is same type of

force that would be applied when opening the pressure cooker. This is Dr. Giachetti's attempt to shoehorn unrelated and irrelevant data into the facts in this case. This is simply to large of a gap between the data cited and the opinion offered. See *General Electric Co. v. Joiner*, 522 U.S. 136 (1997).

Dr. Giachetti also opines that 45 pounds of force constitutes a significant amount of force. However, whether an individual perceives 45 pounds of force as significant is, by definition, subjective. As Dr. Giachetti admits, that maximum force varies from person to person (Ex. "C", p. 137, ll 10-11). Dr. Giachetti even testified that "I think that everyone has a different perception of effort". (*Id.* at p. 140, ll 15-16). He also stated "I am not arguing that people's perception of how much effort they are putting in is subjective. (Ex. "C", p. 145, ll 17-19). So, stating that 45 pounds force is significant is simply the *ipse dixit* of Dr. Giachetti. He offers no data to support that statement. When asked "[w]ould you agree that whether its easy or effortless opening is subjective to the user," Dr. Giachetti responded "I don't think so…" (Depo of Giachetti, p. 133, l 18-20). Dr. Giachetti simply wants the court to take his word that 45 pounds is significant force and nothing in *Daubert* or the Federal Rules of Evidence requires the Court to admit such opinion evidence when there is simply "to great analytical gap between the data and opinion proffered." *General Electric Co.*, 522 U.S. at 146 (1997).

Similarly, Dr. Giachetti's fourth assertion, that a reduction in lock performance is consistent with a plastically deformed locking plate and a deep cut groove in a locking tab and float valve, should be excluded for the same reasons. However, Dr. Giachetti is not able to determine whether the condition of the locking plate, locking tab, and floating valve existed prior to the explosive incident at issue. Dr. Giachetti is presumably offering his opinion in an attempt to advance his position that the locking mechanism of the cooker had been compromised prior to the

subject incident. However, as discussed above, Dr. Giachetti is not able to determine whether that condition existed prior to the explosive incident at issue or whether that incident caused the deformation of the locking tab. Not only should this opinion be excluded pursuant to Rule 702, but it should be excluded under Rule 403 as being prejudicial to plaintiffs. Dr. Giachetti is trying to paint the picture that plaintiffs had compromised the locking mechanism of the cooker without any evidence to support that position. Introduction of this evidence would only prejudice plaintiffs and confuse and mislead the jury. As such, this opinion should be excluded.

### C. Dr. Giachetti is not qualified to offer burn injury and pattern opinion and his opinion fails to satisfy either reliability or relevance requirements.

In this fourth opinion, Dr. Giachetti states that the burns observed on Mr. Copeland's arms are consistent with forcing open the pressure cooker lid while there was pressure inside of the cooker. (Ex. "B", p. 22). In support of that opinion, Dr. Giachetti states that the burns on Mr. Copeland's right hand and arm are consistent with his right hand on the lid handle, and burns on his left arm are consistent with his left hand holding on to the base's handle. (*Id.*). As a threshold matter, Dr. Giachetti does not have a medical degree, and does not hold himself out as a medical expert. (Ex. "C", p. 184). In fact, Dr. Giachetti's opinions based on burn injury and patterns have previously been excluded by this Court in another case. (Ex. "D"). In support of this opinion, Dr. Giachetti does not rely on medical expertise regarding burn injury and patterns but on an experiment he did that was funded by Tristar. He uses that experiment for the basis of his opinion as to how water can come out of the pressure cooker during an explosive event. (Ex. "C", p. 175-177).

To perform that experiment, Dr. Giachetti affixed a pressure cooker to a table so it could not move, creating a situation where the lid of the pressure cooker could be easily removed, and

used a mannequin that proportionately represented a 50-percentile female with hands placed on each side of the pressure cooker. (Ex. "C", p. 178-179). This experiment did not create a real-world situation or simulate the circumstances at issue, and did not account for Mr. Copeland's proportions. Dr. Giachetti admitted that he didn't use any formulas or equations to arrive at his conclusion regarding the burn pattern and simply stated "I don't need an equation to say that because it has already been established that that's how water **can** come out. Now I say **can** because it could spray or whatever". (*Id.* at 177) (emphasis added). This is tantamount to an admission that the contents of the pressure cooker <u>could</u> be ejected from the cooker in a manner that is not consistent with his conclusions. In fact, Dr. Giachetti's deposition is rife with answers that contain phrases like "I think" or "can".

Dr. Giachetti further testified that "because of his injuries, the only way those puzzle pieces line up is if his hand is at the top and we have that horizontally directed water flow out. And then once you put those two pieces together, then you get the complete picture of where the hand **likely** was." (*Id.* at p. 177, ll 16-20) (emphasis added). Furthermore, Dr. Giachetti admits that even if the burn pattern could prove where Mr. Copeland's hands were at the time of the explosive event, that alone does not prove that Mr. Copeland used forced to open the pressure cooker. In fact, Dr. Giachetti testified as follows:

> Q: Let me ask you this way. The first bullet where it says, '[t]he burns on the right hand and arm are consistent with the right hand on the lid's handle,' that statement in of itself doesn't prove that he was using force, correct?
>
> A: Correct.
>
> Q: That only shows where is hand was, correct?
>
> A: That's right.
>
> Q: The second bullet, 'the burns on his left arm are consistent with his left hand

holding onto the base's handle,' The same question, that in and of itself doesn't prove he was using any force, that just shows where his hand was, correct?

A: That's correct.

(*Id.* at 173). When asked the basis for his opinion that Mr. Copeland used force to open the pressure cooker, he stated "[m]y basis for effort is that it was under pressure." (*Id.* at 174).

Furthermore, even though he didn't include this in his report, he testified he thinks it also <u>likely</u> that Mr. and Mrs. Copeland worked together to forcibly open the cooker. (Ex. "C", p. 105). This is simply more evidence that Dr. Giachetti is guessing or speculating. He has no methodology to show that plaintiffs forcibly opened the cooker. His basis for his opinion is that Mrs. Copeland had burns on her fingertips and "that is the only plausible thing that I could come up with." (Ex. "C", p. 106, ll 17-18). Dr. Giachetti assumes that Mr. Copeland used force to open the pressure cooker because it was under pressure. This begs the question and offers nothing to assist the jury in determining an issue of fact. It amounts to nothing more than conjecture or guessing and is simply a bald assertion and *ipse dixit* of Dr. Giachetti. A contested issue in this case is whether plaintiffs forced the lid of the cooker open. Dr. Giachetti's opines that they did force it open because it was under pressure, but offers no methodology to support that opinion. Dr. Giachetti wants to rule out the possibility that plaintiffs did not use force to open the cooker by simply stating they would have had to use force because it was under pressure. This ignores the consideration of whether the locking mechanism was defective, which is the ultimate issue.

Dr. Giachetti's opinion here is based on unreliable extrapolations. In fact, when asked "[a]re you also aware that [user manual] says the lid safety devise prevents the lid from opening until all pressure is released," Dr. Giachetti replied "[y]es, I am aware of that." (Ex. "C", p. 166, ll 16-20). Dr. Giachetti was then asked "[s]o in this case that didn't happen, right," and then he

responded "[p]robably not." (*Id.* at 21-22). Dr. Giachetti's own admission shows that the lid was defective. Dr. Giachetti's simple conclusion that plaintiffs used force to open the lid is simply based on the absence of him being able to offer a contrary conclusion. Without established scientific or physical evidence there is no way for this conclusion to be verified and his opinion is simply speculation. In fact, his opinion directly conflicts with the plaintiff's consistent testimony that they did not use any force to open the pressure cooker. When considering Dr. Giachetti's opinions based on burn injury and patterns in the Williams case, this court held "Dr. Giachetti's opinion that the pressure cooker was forcibly opened would conflict directly with Plaintiff's consistent and repeated testimony…[and] [w]ithout affirmative scientific physical evidence that the pressure cooker lid was forced open, this opinion is mere speculation. (Ex. "D", p. 16). This court further held that "despite not having any expertise in burn injuries, [Dr. Giachetti] advanced a theory that Plaintiff forcibly opened the pressure cooker based on her burn patterns – a deduction directly contrary to plaintiffs unequivocal statement that she did nothing more than press the cancel button prior to the explosion." (*Id.* at p. 17). This court found that "Dr. Giachetti's opinions as to both the cause of the incident and the analysis of plaintiff's burn injuries are not sufficiently based on scientific fact or reliable methodology and should be excluded from trial." (*Id.*).

Dr. Giachetti is trying to fit the opinions he has reached in other Tristar cases into the facts of this case. Dr. Giachetti simply attempts to make a bald assertion that plaintiff forced the pressure cooker open simply because he could not come up with a contrary explanation to this conclusion. There is simply too great of a gap between the methodology, or lack thereof, and Dr. Giachetti's conclusions.

### III.    CONCLUSION

Dr. Giachetti offers opinions that do not meet the Daubert requirements for reliability and relevance. Dr. Giachetti is also not qualified to testify about plaintiffs forcibly opening the pressure cooker based on the burn patterns. These opinions should also be excluded pursuant to Federal Rules 702 and 403 because they are not grounded in any reliable methodology and only serve to confuse and mislead the jury. They serve no purpose in assisting the jury to understand the evidence and determine an issue of fact. Therefore, for the reasons explained above, plaintiffs move this court to exclude or limit Dr. Giachetti from offering his opinions in this matter.

This 20th day of February, 2024.

Respectfully submitted,

**REYNOLDS, HORNE & SURVANT**                          */s/ Marty K. Senn*
6320 Peake Road                                                        MARTY K. SENN
P.O. Box 26610                                                          Georgia Bar No.: 513896
Macon, Georgia 31210                                             *Attorney for Plaintiff Edward A. Copeland and*
Telephone: (478) 405-0300                                      *Sheryl Copeland*
Facsimile: (478) 405-0550
creynolds@reynoldsinjurylaw.com
bjsurvant@reynoldsinjurylaw.com
msenn@reynoldsinjurylaw.com

## CERTIFICATE OF SERVICE

This is to certify that on this date, the undersigned served a true and correct copy of the foregoing

pleading with the Clerk of Court using the CM/ECF system and served all parties of record via

electronic service through the CM/ECF system to:

Sanjay Ghosh, Esq.
Steven H. Campbell, Esq.
Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
sanjay.ghosh@nelsonmullins.com
steven.campbell@nelsonmullins.com
*Attorneys for Defendant*

David S. Osterman, Esq.
Goldberg Segalla
301 Carnegie Center, Suite 200
Princeton, NJ 08540
dosterman@goldbergsegalla.com
*Attorney for Defendant*

This 20th day of February 2024.

**REYNOLDS, HORNE & SURVANT**

6320 Peake Road                          */s/ Marty K. Senn*
P.O. Box 26610                           MARTY K. SENN
Macon, Georgia 31210                     Georgia Bar No.: 513896
Telephone: (478) 405-0300                *Attorney for Plaintiffs Edward A. Copeland and*
Facsimile: (478) 405-0550                *Sheryl Copeland*
msenn@reynoldsinjurylaw.com