Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**SAMANTHA WILLIAMS**,

      Plaintiff,

v.                                                                  Civil Action No. 7:17-CV-66 (HL)

**TRISTAR PRODUCTS, INC.**,

      Defendant.

**ORDER**

Plaintiff Samantha Williams filed this products liability and personal injury action after a pressure cooker manufactured by Defendant exploded in her kitchen, causing severe personal injuries. Before the Court is Defendant's Motion for Summary Judgment (Doc. 37), as well as several pending Motions in Limine: (1) Defendant's Motion in Limine to Exclude the Opinions of Dr. Pratt (Doc. 35); (2) Plaintiff's Motion in Limine to Exclude the Opinions of Dr. Giachetti (Doc. 36); and (3) Plaintiff's Motion in Limine to Exclude the Opinions of Dr. Barnett (Doc. 38). The Court held a hearing on these motions on April 30, 2019.

**I. FACTUAL SUMMARY**

The incident in question occurred on February 14, 2017, as Plaintiff Samantha Williams was alone in her home in Lakeland, Georgia. (Doc. 41, ¶¶ 1, 37). Plaintiff was cooking beef stew in her PC-WAL1/TRI-6 six-quart pressure cooker when she alleges the device's hot contents and steam were expelled onto

her, causing significant burn injuries. (Id. at ¶ 2). The specific PC-WAL1/TRI-6 cooker at issue was a model 1305 and was manufactured in May 2013. (Doc. 47-1, ¶ 24); (Doc. 38, p. 7). Plaintiff's mother purchased the cooker in approximately October or November of 2016 from a local Wal-Mart store in Douglas, Georgia and gave it to Plaintiff as a Christmas gift on December 24, 2016. (Doc. 1-1, ¶¶ 10-11).

Plaintiff estimates that she used the subject pressure cooker three times before the incident. (Doc. 41, ¶ 26). On the day of the incident, the cooker had finished cooking and automatically went into "keep warm" mode. (Id. at ¶ 36). Plaintiff stated that the cooker was emitting a "humming and buzzing" noise that she had never before heard. (Doc. 1-1, ¶ 15). Plaintiff states she then approached the cooker and simply pressed the "cancel" button, which allegedly resulted in the lid suddenly popping off of the cooker and the contents being expelled outward onto her, causing her burn injuries. (Id. at ¶ 16). Plaintiff suffered severe second-degree burns on both breasts, her entire right arm from the shoulder to the wrist, and from her neck to above her belly button. (Id. at ¶ 17).

In her deposition, Plaintiff stated that the pressure cooker was fully closed at the time of the incident and denied that it was only partially closed. (Doc. 41, ¶ 34). Plaintiff unequivocally stated that she did not attempt to remove the lid or otherwise touch the cooker aside from pressing the "cancel" button. (Doc. 47-5,

43:10-22). Both parties agree that the lid cannot "explosively separate from the base" while the unit is "fully locked." (Doc. 41, ¶ 21). Likewise, both parties admit there are no deformations on the locks to suggest the lock was forcibly broken open. (Id. at ¶ 22). However, Plaintiff's expert Dr. Pratt has proven that the lid is able to "explode off of the base" if the lid remains partially open with the locking lugs overlapping by exactly 11/32 of an inch, or 0.344 inches, with an internal pressure of exactly 7.4 pounds per square inch (PSI). (Id. at ¶ 23). Plaintiff's expert also avers that the subject pressure cooker lid can also pop off of the base at "about 3/16 or 5/16 of an inch" of locking lug overlap with an internal pressure of anywhere from 1 to 10 PSI. (Doc. 47-1, ¶ 23).

Plaintiff stated in her deposition that she had confirmed the lid was "fully closed" because she heard the "click" of the locks, aligned the lock symbols on the base with the top, and turned the lid "as far as it will go." (Id. at ¶¶ 31-33). There were no other witnesses to the event nor any other persons who could have tampered with the cooker at the time of the incident. (Id. at ¶¶ 37-38). Defendant's expert, Dr. Giachetti, testified during his deposition that the cooker can make a little "click" that is less audible but similar to the normal "click" of the locks when the lid is nearly, but not completely, locked in position. (Doc. 47-1, ¶ 31).

Plaintiff has testified that she operated the cooker in accordance with the instruction manual which was provided with the cooker by Defendant. (Doc. 41, ¶

3

31). Defendant states that Plaintiff had not "read, relied upon, or attempted to read or rely upon any warnings or instructions on the [subject pressure cooker's] 'caution label,'" but Plaintiff's expert has indicated that the information on this label was also contained in the instruction manual. (Doc. 47-1, ¶ 42). There is no evidence that anyone attempted to open or otherwise touched or rotated the lid of the subject pressure cooker while the contents were pressurized. (Doc. 41, ¶ 40). There is also no evidence that any food clogged any valve on the cooker. (Id. at ¶ 41). Plaintiff testified that the pressure cooker valve was not clogged, but she was not asked about any other valves or clogging. (Doc. 47-1, ¶ 41).

The subject pressure cooker was designed and manufactured by Zhongshan Usata Electrical Appliance Co., Ltd ("USATA") at its factory in China. (Doc. 41, ¶ 6). The cookers are then sold through Front Source Limited to Defendant Tristar. (Id. at ¶ 8). Defendant states that Tristar is not a "design firm," nor does it do any manufacturing or "design work." (Id. at ¶ 3). Plaintiff disputes that USATA was the sole designer and manufacturer and contends that Defendant's involvement in the design and manufacture processes made Tristar "ultimately responsible for the design of the WAL-1/TRI-6." (Doc. 47-1, ¶ 6). Defendant's statement that Tristar merely "distributed and marketed the final product" is likewise disputed. (Id. at ¶ 7).

Defendant held ultimate veto power over Engineering Change Request (ECR) design changes to be performed by manufacturer USATA. (Doc. 47-2, ¶¶

4

28-34). Defendant created an Asian division engineering team that supervised product development, including the manufacturing process, production process, inspection process, and testing. (Id. at ¶ 16). As USATA would make changes at Defendant's direction, and then Defendant decided whether or not to approve or deny any order at the factory before shipment and import. (Id. at ¶ 33). Defendant, not USATA or Front Source, performed internal testing to address situations where the lid is not fully locked yet still pressurized. (Id. at ¶ 40). The multiple ECRs made by Defendant were more than simple requests because, as stated by Defendant's corporate representative, a change could not be made without Tristar's final approval after its own engineering team reviewed the design modifications and drawings. (Doc. 47-1, ¶ 12). Defendant "initiated major and critical design changes." (Id. at ¶ 14). Additionally, Defendant holds two design patents in the pressure cooker, including one for the design of the lid, and one for the cooker's control panel with surface ornamentation. (Id.).

The owner's manual states in three places that the lid cannot be removed when the contents are pressurized. (Id. at ¶ 28). This contradicts Dr. Pratt's experiment in which he found that the only way the lid can "explode off of the base" of the cooking unit is if "the locking lugs overlap by precisely 11/32 of an inch . . . with the exact internal pressure of 7.4 pounds per square inch," or PSI. (Doc. 41, ¶ 23). Defendant also admitted that it is possible for the subject pressure cooker to pressurize without being completely closed/locked, which,

5

Plaintiff points out, is also in direct contradiction to statements made in the owner's manual. (Doc. 47-7, 90:11-13). Plaintiff's expert Dr. Pratt stated in his deposition that the issues he claims are present in the subject pressure cooker have been re-designed and virtually eliminated in the newer models. (Doc. 47-2, at ¶ 54). Defendant admits that these subsequent changes implemented in newer models of the PC-WAL1 pressure cooker were not omitted from the older designs for economic, technological, or other reasons of unfeasibility. (Id. at ¶ 52). Rather, Defendant says, they had not received sufficient consumer feedback, and the later implemented designs had not yet been considered. (Id. at ¶ 53).

In 2014, nearly three years before the incident in question, Defendant had knowledge of injuries claimed to have been caused by the PC-WAL1/TRI-6 pressure cooker's alleged failure to depressurize upon completion of cooking. (Id. at ¶ 24). Defendant developed the subject pressure cooker's instruction manual and was responsible for the information inside, including warnings and frequently asked questions. (Id. at ¶ 19). In 2015 and 2016, Defendant Tristar, not USATA or Front Source, was directly involved in the Consumer Product Safety Commission's investigation into consumer reports of the subject pressure cooker line pressurizing when not fully locked, and the lid coming off while pressurized and causing burn injuries. (Id. at ¶ 47).

6

Plaintiff filed this lawsuit asserting various products liability claims against Defendant Tristar including strict liability design defect, negligence, negligent failure to warn, negligent design, negligent manufacture, and punitive damages. (Doc. 1, p. 2). Defendant contends that it is entitled to judgment as a matter of law because there is no fact question for the jury since Plaintiff's testimony directly conflicts with her expert's opinions. (Doc. 51, p. 1). Defendant also claims that Plaintiff has not provided sufficient facts to demonstrate a genuine issue for trial as to proximate cause. (Id. at 2). Additionally, Defendant claims summary judgment is appropriate because Plaintiff did not present any risk-utility or alternative design evidence. (Id. at 5). Finally, Defendant claims summary judgment is appropriate on Plaintiff's warnings-based claims because she did not present evidence of a duty, defect, or causation. (Id. at 8).

## II. THE PARTIES' <u>DAUBERT</u> MOTIONS

The Court will address the parties' <u>Daubert</u> motions before turning to Defendant's Motion for Summary Judgment because whether the parties' proposed experts will be allowed to testify relates to the summary judgment analysis.

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" his "testimony is based

7

on sufficient facts or data" and "is the product of reliable principles and methods;" and he "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Thus, in evaluating the admissibility of expert testimony, the Court must consider whether "the expert is qualified to testify competently regarding the matters he intends to address," whether his methodology "is sufficiently reliable," and whether his testimony will help the trier of fact "understand the evidence or to determine a fact in issue." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). The Court's goal is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)). To allow the testimony to be considered by the jury, the Court must find that "it is properly grounded, well-reasoned, and not speculative." Id. (quoting Fed. R. Evid. 702 advisory comm. note to 2000 amends.).

**A. Defendant's Motion to Exclude the Opinions of Dr. Pratt (Doc. 35)**

Defendant has filed a Motion in Limine to exclude the opinions of Dr. John Pratt for three reasons: (1) his opinions do not fit the facts of the case; (2) his opinions are not the product of reliable scientific methodology, and therefore would not assist the trier of fact; and (3) he is not qualified to proffer those opinions because he is admittedly not a warnings or human factors expert.

Dr. Pratt opines that the pressure cooker manufactured by Defendant is defective in a number of ways, mainly in that the contents can pressurize despite the lid not being in the "fully locked" position. (Doc. 35-2, p. 14). Dr. Pratt's opinions are based on his examination of the subject pressure cooker, as well as extensive testing on exemplar pressure cookers manufactured by Defendant.

Defendant argues that Dr. Pratt is repurposing his expert testimony used in prior cases involving pressure cookers manufactured by Defendant and has therefore failed to determine what caused the incident in this particular case. (Doc. 35-2, p. 3). In those cases, Dr. Pratt testified that the pressure cookers could explode when partially open. Here, Plaintiff has testified that she fully closed the pressure cooker. Thus, Defendant argues, Dr. Pratt's opinions do not "fit" the facts of the case as required by <u>Daubert</u> because Dr. Pratt does not explain how a pressure cooker can explode while in the fully locked position. Defendant further argues that Dr. Pratt's opinions do not meet the "fit" requirement under <u>Daubert</u> because he did not read Plaintiff's testimony prior to forming his opinions, nor did he perform testing on the incident cooker. These same reasons, Defendant contends, additionally support a finding that the opinions are not based on sufficient data or reliable methodology.

The Court disagrees with Defendant and finds that Dr. Pratt's testimony fits the facts of the case and is reliable and based on sufficient data. As Plaintiff explains in her response, "Dr. Pratt's assignment was not to recreate the subject

incident; Dr. Pratt was asked to utilize his expertise in mechanical engineering, combined with his extensive experience and familiarity with Tristar's pressure cookers, to find what defects in the subject pressure [cooker] could explain what happened to Plaintiff, to see if those defects were consistent with the incident as described by Plaintiff, and to consider whether Plaintiff's misuse contributed to the incident." (Doc. 45, p. 9 n.1). "If a proposed expert opinion principally relies on experience and knowledge, a court must satisfy itself that the expert has appropriately explained how the expert's experience and knowledge has led to the conclusions, why the expert's experience provides a sufficient basis for the opinion, and why that experience is reliably applied to the facts." Padgett v. Kmart Corp., No. CV-315-048, 2016 WL 3746671, at *5 (S.D. Ga. July 8, 2016). Simply put, "[p]hysical testing is not an absolute prerequisite to the admission of expert testimony." Hendrix v. Evenflo Co., Inc., 255 F.R.D. 568, 586 (N.D. Ga. 2009). Rather, "it is more common that engineering experts state that their opinions are not based upon any scientific method but on general experience and knowledge after a review of evidence." Reid v. BMW of N. Am., 430 F. Supp. 2d 1365, 1370 (N.D. Ga. 2006).

While it is true that Dr. Pratt did not perform explosive testing on the incident pressure cooker, he devotes an entire section of his expert report to his findings after an examination of the incident pressure cooker. The Court disagrees with Defendant's position that "Dr. Pratt expects the Court to 'take his

word for it' that the Engineering Opinions are sound science." (Doc. 35-1, p. 16). Dr. Pratt, who has a Ph.D. in engineering and has extensive experience in design and development of products, fasteners, machines, tools, and latching and locking devices, explains his testing of an exemplar pressure cooker in detail. His familiarity with pressure cookers manufactured by Defendant gained by testifying as an expert in similar litigation further demonstrate his experience and knowledge of the product. The Court finds that based on Dr. Pratt's knowledge and experience, his proposed testimony and methodology is sufficiently reliable.

Defendant's argument that Dr. Pratt's opinions do not "fit" the facts of the case is also unconvincing. Under the "helpfulness" or "fit" requirement, which is concerned primarily with relevance, the Court must consider "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute[.]" Daubert, 509 U.S. at 591 (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)). Defendant argues that because Dr. Pratt's opinions on the potential removal of the cooker's lid conflict with Plaintiff's testimony as to what happened, his opinions are thus contradictory to the facts on the record and should be excluded.

Plaintiff responds by citing to Lee v. Smith & Wesson Corp., a Sixth Circuit case in which the witness testimony and an expert's description conflicted identically to the present case. 760 F.3d 523, 536-27 (6th Cir. 2014). The Sixth Circuit reversed the district court's exclusion of the conflicting expert's testimony

and determined that the district court had abused its discretion in excluding the opinion because the expert "had the appropriate qualifications, he used reliable methods, and his opinions were based on physical evidence from the accident." Id. at 526. Plaintiff also cites to similar decisions made by district courts in Georgia. In Cameron v. Teeberry Logistics, the Northern District of Georgia denied the plaintiff's motion to exclude the defendant's accident reconstructionist after he provided opinions as to timing that conflicted with the plaintiff's deposition testimony. No. 3:12-cv-181-TCB, 2013 WL 7874709, at *4 (N.D. Ga. May 21, 2013). In rejecting the plaintiff's argument that the expert should be excluded, the court stated "the fact that [the expert's] opinion is inconsistent with other facts of this case is not a proper basis for exclusion." Id. Similarly, in Souder v. Floyd Cty., Ga., the Northern District of Georgia denied the defendant's motion to exclude the opinions of the plaintiff's accident reconstructionist because the reconstructionist's opinions were contrary to portions of his own deposition testimony. Nos. 4:03-CV-0085-HLM, 4:04-CV-0095-HLM, 2005 WL 6218033, at *5 (N.D. Ga. Mar. 22, 2005). The court rejected the defendant's argument, finding that "contrary evidence goes not to the admissibility of the expert testimony; rather, it goes to the weight of that testimony." Id. at *6.

Although, as Defendant argues, Dr. Pratt formed his opinions prior to Plaintiff's deposition, Dr. Pratt based his opinions on documents in the record, an

12

examination of the incident pressure cooker, and pressure testing of an exemplar cooker manufactured by Defendant, in addition to his extensive knowledge and experience. This evidence supports his opinions, despite conflicting with portions of Plaintiff's testimony. Weighing of competing evidence is for the jury, not the court. Hockensmith v. Ford Motor Co., No. 1:01-CV-3645-GET, 2003 WL 25639639, at *5 (N.D. Ga. Apr. 17, 2003).

Lastly, Defendant's argument that Dr. Pratt's opinions should be excluded because he is not a warnings expert must fail. Dr. Pratt admits that he is not a warnings expert in his deposition, and while that may be true, Dr. Pratt has relevant experience rendering him qualified to testify as to the adequacy of the warnings in Defendant's instruction manual. Defendant cites to this Court's previous decision in Hernandez v. Crown Equipment Corp., 92 F. Supp. 3d 1325, 1347 (M.D. Ga. 2015), in support of its argument that Dr. Pratt should not be allowed to testify as to the opinions expressed in a section of his expert report entitled "Misleading Information in The Owner's Manual." (Doc. 35-1, p. 20). In Hernandez, this Court granted the defendant's motion to exclude the plaintiff's expert, Mark Elrod, from testifying as to the effectiveness of the warnings and instructions provided for the Crown forklift because not only did the expert admit in his deposition that he was not a warnings expert, but there was "no evidence that he [had] ever developed or designed warnings or instructions for how forklift operators should respond to emergency situations while operating a forklift.". Id.

But that is not the case here. Dr. Pratt has experience not only in designing products, but he also has drafted instructions, manuals, and warnings for cockpit door latching mechanisms and pneumatic tools. (Doc. 45-2, 138:13-20). Further, while Dr. Pratt does not purport to be an expert in human factors, he has studied human factors as part of his engineering education. (Id., 29:3-6). Plaintiff does not intend to offer Dr. Pratt as a human factors expert, but the Court finds that he may testify as to the opinions in his report concerning the misleading information in the owner's manual.[1]

Accordingly, Defendant's Motion to Exclude the Opinions of Dr. Pratt (Doc. 35) is **DENIED**.

### B. Plaintiff's Motion to Exclude the Opinions of Dr. Giachetti (Doc. 36)

Defendant's expert, Dr. Giachetti, is a mechanical engineer who has worked on more than a hundred cases as a mechanical engineering expert, including cases regarding pressure cookers. (Doc. 43, p. 3). Dr. Giachetti intends to proffer opinions that (1) the subject pressure cooker lid did not "explode from the base"; (2) it is more likely than not that Plaintiff had her left arm around the edge of the lid at the time the cooker was opened; (3) there was only "nominal pressure inside of" the cooker when the lid was opened; and (4) it is more likely that Plaintiff's injuries occurred while trying to open the pressure cooker from a "fully locked" position than from the lid exploding off of the base. (Id. at 3-4).

---

[1] Dr. Pratt may not, however, testify as to his opinion that the instructions for bean recipes are misleading, as it is irrelevant to the case at hand. (Doc. 35-2, pp. 13-14).

Plaintiff moved to exclude Dr. Giachetti's testimony in regards to both opinions (2) and (4) described above. However, at the April 30th hearing, Plaintiff withdrew her objection to opinion (4), leaving only Dr. Giachetti's opinion that Plaintiff's burns were caused from the contents of the pressure cooker spilling onto her after attempting to open the pressure cooker for the Court's consideration. (Doc. 61, 59:17-61:16).

Plaintiff does not challenge Dr. Giachetti's engineering qualifications. Rather, what Plaintiff contends is that Dr. Giachetti's opinions are irrelevant and unreliable. (Doc. 36, p. 5). Dr. Giachetti has admitted that he is not an expert in burn injuries and does not intend to testify regarding "medical and burn injuries opinions." (Doc. 43, p. 7). Dr. Giachetti did, however, examine photographs of Plaintiff's burn injuries to theorize about the manner in which the scalding liquid came to be on Plaintiff's skin and whether those burn patterns would be consistent with her testimony. (Id. at 7-8). But Plaintiff contends that this is insufficient evidence for Dr. Giachetti to rely on in proffering his opinion that Plaintiff's burns were not caused by hot contents exploding onto her skin, but instead that her burns are more consistent with Plaintiff grabbing the pressure cooker and forcing the lid open, spilling the contents onto herself. During the hearing, Plaintiff argued that "[b]oth sides can say their theories, but [Dr. Giachetti] wants to go a step further and say he can rule out the other one, and I just don't think he's qualified to do it." (Doc. 61, 66:19-22). In other words,

15

Plaintiff does not oppose Dr. Giachetti testifying as to his theory of how the incident occurred but moves to preclude Dr. Giachetti from testifying that, based on his evaluation of Plaintiff's medical records and photos of her burn injuries, that her burns were not caused by an explosion.

As part of the methodology for Dr. Giachetti's second opinion, he states that the lack of burns on Plaintiff's right elbow crease supported the hypothesis that she had her elbow bent while trying to force open the subject pressure cooker, but Plaintiff *did* have burns on her right elbow crease. (Doc. 36-3, 107:2-108:9). Also, in considering Plaintiff's burn pattern in his fluid dynamic analysis, Dr. Giachetti admitted he was unaware what clothing Plaintiff was wearing and stated "it was irrelevant to [his] analysis." (Id. at 91:7-12). Some clothing is more protective than others. Undoubtedly, when subjected to scalding liquids, wearing a tank top such as Plaintiff was wearing at the time of the incidence, would result in different burn patterns on the wearer than if she were, hypothetically, wearing a loose-fitted, long-sleeved sweater or some type of sleeve on one arm. (Doc. 48, p. 6). Additionally, Dr. Giachetti's opinion that the pressure cooker was forcibly opened would conflict directly with Plaintiff's consistent and repeated testimony that she did not touch the cooker aside from pressing the "cancel" button, casting further doubt pm Dr. Giachetti's opnion. (Doc. 48, p. 3-4). Without affirmative scientific or physical evidence that the pressure cooker lid was forced opened, this opinion is mere speculation.

16

Dr. Giachetti developed his opinions after examining a surprisingly small amount of data, some of which was incorrect. Then, despite not having any expertise in burn injuries, he advanced a theory that Plaintiff forcibly opened the pressure cooker based on her burn patterns – a deduction directly contrary to Plaintiff's unequivocal statement that she did nothing more than press the "cancel" button prior to the explosion. Additionally, Dr. Giachetti did not perform any of the calculations outlined in his deposition. As a whole, the Court finds that Dr. Giachetti's opinions as to both the cause of the incident and the analysis of Plaintiff's burn injuries are not sufficiently based on scientific fact or reliable methodology and should be excluded from trial. Nevertheless, at the hearing on the motion to exclude Dr. Giachetti's opinions, Plaintiff consented to permitting Dr. Giachetti to testify regarding his theory of how the incident occurred. Dr. Giachetti may not, however, testify as to any opinions based on his evaluation of Plaintiff's burn injuries.

For the foregoing reasons, the expert opinions and testimony of Dr. Giachetti as described herein are excluded from this trial. Plaintiff's Motion to Exclude and Limit Opinions and Testimony of Defendant's Expert, Robert Giachetti, Ph.D., is **GRANTED**.

### C. Plaintiff's Motion to Exclude the Opinions of Dr. Barnett (Doc. 38)

Dr. Barnett's expert opinions are statistical analyses that he has created and intends to present at trial to explain to the jury of laymen how slim the

17

chances of experiencing injury from the subject pressure cooker as opposed to other extreme and unlikely scenarios. For instance, Dr. Barnett's statistics conclude that a user of a Tristar PC-WAL1/TRI-6 pressure cooker is twenty (20) times more likely to suffer death or injury from pneumonia in a given year than they are to experience an explosive incident with the pressure cooker.

Dr. Barnett's qualifications are not challenged; however, Plaintiff contends that Dr. Barnett's opinions are irrelevant and unreliable. (Doc. 38, p. 4-5). The statistics presented by Dr. Barnett are based on standard statistical methodologies. (Doc. 44, p. 1). His testimony is intended to demonstrate that Tristar's products are not prone to explosive events by providing comparisons of the probability that the product at issue will cause the alleged harm to the likelihood of dissimilar and unrelated events taking place. (Id. at 1-2). These dissimilar incidents include anecdotes like the odds of winning the lottery, being elected to public office, or being harmed from accidental poisoning. (Barnett Rpt., pp. 4-5). Unlike the statistical opinions that this Court allowed in Hernandez, these statistics are not regarding similar injuries from similar products. 92 F. Supp. 3d at 1342. Rather, the statistics proffered by Dr. Barnett are irrelevant to this case and would serve only to distract the jury by introducing a bevy of flights of fancy to consider with no particularly important legal effect. Furthermore, the simple comparisons of the chances of one thing happening versus another are not "beyond the understanding of the average lay person" and thus expert

testimony of this nature is unnecessary. Cook ex rel. Estate of Tessier, 402 F.3d 1092, 1111 (11th Cir. 2005).

The data Dr. Barnett used to create these statistics included multiple different models of the pressure cooker which may or may not be functionally identical to the PC-WAL1/TRI-6 model 1305 pressure cooker at issue. (Dr. Barnett Dep., 18:24-19:7).  Without evidence that these pressure cookers had the same present risks and rates of failure as the specific model that Plaintiff had used there is no way to be certain that the resulting statistics are accurate and, therefore, reliable. Additionally, Dr. Barnett was unaware that the subject pressure cooker's model had undergone design changes from 2013 to 2018, which affected the likelihood of the cookers' lid explosively separating from the base of the unit. (Id. at 19:8-24). Finally, Dr. Barnett admits he did not and could not perform an analysis to isolate the failure rate of the subject 2013 manufactured PC-WAL1-TRI-6 model 1305 pressure cooker. (Id. 22:7-22). For these reasons, the Court finds that the methodology used by Dr. Barnett in his statistical findings is unreliable and, therefore, inadmissible.

For the foregoing reasons, the expert opinions and testimony of Dr. Barnett are excluded. Plaintiff's Motion to Exclude Opinions and Testimony of Defendant's Expert, Arnold Barnett, Ph.D, is **GRANTED**.

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standard

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends that no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Maddox v. Stephens, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." Grimes v. Miami Dade Cty., 552 F. App'x 902, 904 (11th Cir. 2014).

"An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain

a jury verdict in its favor. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Allen, 121 F.3d at 646.

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. See Celotex, 477 U.S. at 323; Barreto v. Davie Marketplace, LLC, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. See Celotex, 477 U.S. at 322–24; Barreto, 331 F. App'x at 673. "When that burden has been met, the burden shifts to the nonmovant . . . to go beyond the pleadings and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." Lamar v. Wells Fargo Bank, 597 F. App'x 555, 556–57 (11th Cir. 2014) (citations omitted).

### B. Discussion

Defendant Tristar moves for summary judgment on all of Plaintiff's claims for four reasons. First, Defendant contends that it is not subject to liability for Plaintiff's injuries because it did not manufacture the pressure cooker and is merely a product seller. Second, Defendant contends that Plaintiff has not met her burden of proving that the pressure cooker was defective and that her injuries were proximately caused by the defect in the pressure cooker. Third, Defendant

21

argues that Plaintiff has failed to present evidence of a reasonable alternative design in support of her design defect claim. Lastly, Defendant argues that Plaintiff's claim for punitive damages must fail because her underlying claims fail as a matter of law.

### 1. Product Seller v. Manufacturer

By the plain language of the Georgia products liability statute, O.C.G.A § 51-1-11.1(a), a cause of action for strict liability can by maintained only against the manufacturer of a product. Under Georgia law, an entity may be a "manufacturer" if it satisfies one of two alternative definitions: (1) an actual manufacturer or designer of the product or (2) a manufacturer of a component part which caused the plaintiff injury. Freeman v. United Cities Propane Gas of Ga., Inc., 807 F. Supp. 1533, 1539 (M.D. Ga. 1992). "[M]anufacturers are those entities that have an active role in the production, design, or assembly of products," not entities "that ha[ve] no real role in the creation of products, such as those who merely label a product as their own." Buchan v. Lawrence Metal Prods., Inc., 270 Ga. App. 517, 520–21 (2004). A "product seller," by contrast, is not subject to strict liability. O.C.G.A. § 51–1–11.1(b). A product seller is any person who "sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation; or repairs; maintains; or otherwise is involved in placing a product in the stream of commerce." O.C.G.A. § 51-1-11.1(a). A

"product seller," however, may become a "manufacturer" subject to statutory liability by having input or by being actively involved in the conception, design, or specification of the product. Nelson v. C.M. City, Inc., 218 Ga. App. 850, 852 (1995).

Defendant argues that it cannot be held liable as a manufacturer because it merely "identified manufacturers who designed and manufactured pressure cookers" and only had "commonsensical" input into the design process. (Doc. 37-1, p. 9). Defendant contends that the cooker is manufactured in China by USATA, and that it is USATA who makes the ultimate determination as to what design changes should be implemented. (Id. at p. 6). But there is evidence on the record suggesting that Defendant is more than a mere product seller. Tristar had staff monitoring production in China; Tristar created an Asian division engineering team that worked directly with factories to manage product development, inspection, and testing of products; Tristar initiated and had final approval of design changes; and Tristar had direct involvement with the Consumer Product Safety Commission's investigation into consumer reports regarding pressure cookers. The jury must weigh this evidence to determine if Defendant was a manufacturer or merely a product seller.

### 2. Defect and Proximate Cause

Under Georgia law, the maker of an article for sale or use by others must use reasonable care and skill in designing the article so that it is reasonably safe

for the purposes for which it is intended and for other uses which are foreseeably probable. Dorsey Trailers Se., Inc. v. Brackett, 185 Ga. App. 172, 174 (1987). To recover on a design defect claim, Plaintiff must show (1) that Defendant's design is defective and (2) that the defective design caused Plaintiff's injuries. Folsom v. Kawasaki Motors Corp. U.S.A., 509 F. Supp. 2d 1364, 1374 (M.D. Ga. 2007). A risk-utility test is applied in design defect cases to determine "if the risks inherent in a product design [outweigh] the utility or benefit derived from the product." Dean v. Toyota Indus. Equip. Mfg. Inc., 246 Ga. App. 255, 259 (2000). The Georgia Supreme Court has promulgated a non-exhaustive list of factors for the trier of fact to consider in applying the risk-utility test. Banks v. ICI Americas, Inc., 264 Ga. 732, 734-35 (1994). Those factors include: the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product; publicity surrounding the danger, or the efficacy of warnings, common knowledge, the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance. Id. at 736 n. 6.

Defendant contends that Plaintiff has not met her burden of proving either that the pressure cooker is defective or that the defect proximately caused her

injury. Defendant's argument largely rests on its contention that Plaintiff's expert Dr. Pratt should be precluded from testifying. But Defendant argues that even if Dr. Pratt's opinions are admissible, Plaintiff still has no evidence to raise a question of fact as to proximate cause.

Unlike factual cause, true proximate cause has nothing to do with factual issues of cause and effect. See generally, Atlantic Coast Line R. Co. v. Daniels, 8 Ga. App. 775, 778 (1911) ("When a negligent act so operates upon a normal situation of prudently conducted activities as to produce through it an injury which, according to the law of ordinary human probability, would not otherwise have happened, and no other wrongful act is found among the nearby activities which have joined in bringing about the injury, the negligent act is to be regarded as the sole and proximate cause of the injury."). It is sufficient if, in ordinary prudence, the defendant might have foreseen that some injury would result from his act or omission. Milton Bradley Co. of Ga. v. Cooper, 79 Ga. App. 302, 307 (1949). Although expert opinions are often necessary to establish proximate cause in products liability cases, expert testimony is not always required where jurors are capable of determining whether injuries were caused by alleged defects in a product based on their own experiences. Owens v. Gen. Motors Corp., 272 Ga. App. 842, 846 (2005).

Here, Plaintiff has presented evidence of a defect in the form of admissible testimony from her expert Dr. Pratt. Dr. Pratt opines, and Defendant does not

25

dispute, that the subject pressure cooker can explosively separate from the base if the lid is exactly turned to 0.344 inches from the "fully locked" position and has pressurized to exactly 7.4 PSI. Plaintiff's testimony and injuries are consistent with the allegation that the lid explosively separated. Although Plaintiff unequivocally testified that the cooker was fully closed and she heard a "click" to indicate its complete closure, there is evidence on the record that the pressure cooker can produce a click when nearly, but not completely, closed.

Further, Plaintiff has presented evidence that the alleged defects in the subject pressure cooker proximately caused her injuries. In Georgia, "it is axiomatic that questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases." Sanders v. Lull Intern., Inc., 411 F.3d 1266, 1271 (11th Cir. 2005) (quoting Sewing Mach. v. Smith, 275 Ga. 683, 687 (2002)). The Court disagrees with Defendant that the lack of evidence that at the time of the accident, the lugs on the subject pressure cooker overlapped by precisely .344 of one inch and were pressurized to exactly 7.4 PSI, weigh against Plaintiff's proximate cause argument. Rather, the Court does not find that this case is one in which the issue of proximate cause is "plain and undisputed." Thus, it should be for the jury to determine if Plaintiff was mistaken as to whether she had closed the lid completely, meaning that the defect in the pressure cooker proximately caused

her injuries. Accordingly, Defendant's motion for summary judgment on this issue is **DENIED**.

### 3.  Reasonable Alternative Design

The "heart" of a design defect case is the reasonableness of selecting from alternative product designs and adopting the safest, most feasible one. Jones v. NordicTrack, Inc., 274 Ga. 115, 118 (2001). The Georgia Supreme Court has set forth certain risk-utility factors applicable specifically to alternative design: "the feasibility of an alternative design; the availability of an effective substitute for the product which meets the same need but is safer; the financial cost of the improved design; and the adverse effects from the alternative." Banks, 264 Ga. at 736 n.6.

Defendant argues that Plaintiff's design defect claim must fail because she has not presented any evidence of a reasonable alternative design through expert testimony or otherwise. While it is true that the language in Banks makes it seem likely that the Georgia Supreme Court would require a plaintiff to present evidence of alternative designs, Georgia courts and other federal district courts applying Georgia law have held otherwise. See Bodymasters Sports Indus., Inc. v. Wimberley, 232 Ga. App. 170, 173 (1998); Timmons v. Ford Motor Co., 982 F. Supp. 1475, 1479 ("While at the 'heart' of the analysis, the Georgia Supreme Court clearly found that alternative designs were a factor that *may* be considered and not a requirement."); Bunch v. Pac. Cycle, No. 4:13-CV-0036-HLM, 2014 WL

12495343, at *7 (N.D. Ga. Apr. 14, 2014) ("Although the existence of an available alternative design is a factor affecting the risk-utility analysis, that factor is not controlling."). Defendant also incorrectly argues that alternative design evidence must be presented in the form of expert testimony. But it is not required that either Plaintiff present evidence of reasonable alternative designs or that the evidence be in the form of expert testimony. Here, Plaintiff has presented evidence – through the testimony of her expert witness and the 30(b)(6) deposition testimony of Tristar – that the later models of the subject pressure cooker, which effectively prevent the alleged defect at issue, are a reasonable alternative design. Regardless, reasonable alternative design is not an independent element of a design defect claim. Whether the reasonable alternative design theories presented by Plaintiff are viable goes to the weight of the evidence—and it is not for the Court to deprive the jury of its role in performing the risk-utility analysis.

### 4. Failure to Warn

"Under Georgia law, a manufacturer has a duty to warn of nonobvious foreseeable dangers from normal use of its product." Thornton v. E.I. Du Pont De Nemours Co., Inc., 22 F.3d 284, 289 (11th Cir. 1994). To establish a failure to warn claim, "a plaintiff must show that (1) the defendant knew, or had reason to know, that the product is likely to be dangerous for the intended use; (2) the defendant had no reason to believe that the user would realize the danger; and

28

(3) the defendant failed to exercise reasonable care to inform the user about the danger." <u>Carmical v. Bell Helicopter Textron, Inc.</u>, 117 F.3d 490, 494–95 (11th Cir. 1997) (applying Georgia law). Where a duty to warn arises, it may be breached by "(1) failing to adequately communicate the warning to the ultimate user or (2) failing to provide an adequate warning of the product's potential risk." <u>Wilson Foods Corp. v. Turner</u>, 218 Ga. App. 74, 75 (1995) (quoting <u>Thornton</u>, 22 F.3d at 289). Additionally, Georgia law imposes on the manufacturer of personal property the duty to exercise ordinary care to warn users of a known or reasonably foreseeable risk of injury after a product's sale because the manufacturer's duty to warn does not cease upon sale. <u>Chrysler Corp. v. Batten</u>, 264 Ga. 723, 724 (1994). This post-sale duty to warn arises when a manufacturer actually or constructively acquires post-sale knowledge of risk. <u>Id.</u> Plaintiff appear to assert negligence claims against Defendant for failure to warn users both at the time of the sale and after the sale of the product.

Defendant contends that there is no genuine issue of material fact as to Plaintiff's negligent warning claim because Plaintiff has failed to present evidence that Defendant had actual or constructive knowledge of "any connection between a 'humming' sound and an explosion. . . ." (Doc. 51, p. 8). But the Court disagrees. Plaintiff has presented evidence demonstrating Defendant's knowledge of injuries resulting from its pressure cooker's failure to depressurize since 2014. Plaintiff showed that hundreds of complaints were filed in the form of

letters sent directly to Defendant, as well as complaints filed with the Consumer Product Safety Commission. Further, the Consumer Product Safety Commission began an investigation after receiving such complaints. Even after this investigation began, Defendant took no action to warn consumers. Based on these factors, the Court cannot find that Defendant is entitled to judgment as a matter of law as to Plaintiff's failure to warn claim. Accordingly, summary judgment is **DENIED** as to this issue.

### 5. Punitive Damages

In Georgia, punitive damages are governed by statute. O.C.G.A. § 51-12-5.1. Punitive damages are only awarded in tort actions in which a plaintiff proves by clear and convincing evidence that the defendant's misconduct was willful, malicious, fraudulent, wanton, oppressive, or exhibited a want of care which would raise the presumption of conscious indifference to consequences. O.C.G.A. § 51-12-5.1(b). A party's negligence, even gross negligence, is insufficient to support an award of punitive damages. Troutman v. B.C.B. Co., Inc., 209 Ga. App. 166, 168 (1993). Punitive damages are a derivative claim and may only survive if the underlying tort claims survive. Lewis v. Meredith Corp., 293 Ga. App. 747, 750 (2008). Numerous Georgia cases have held that punitive damages are available where a manufacturer knows that its product is potentially dangerous and chooses to do nothing to make it safer or to warn customers. Cisson v. C.R. Bard, Inc., No. 2:11-CV-00196, 2013 WL 5700513, at *13 (S.D.

W. Va. Oct. 18, 2013) (applying Georgia law).

When considering punitive damages at the summary judgment stage, it is important to remember that the issue of "[p]unitive damages is usually a matter for the jury." Reid, 430 F. Supp. 2d at 1374 (denying summary judgment as to punitive damages where issue of fact existed as to whether car manufacturer was aware of defect and failed to warn others). Defendant argues that Plaintiff's punitive damages claim fails because her underlying substantive claims must fail, and also that she has not met her burden of proving that Defendant's actions rose to the level of willful misconduct. Plaintiff disagrees and states that she has presented enough evidence to create a genuine issue of material fact as to punitive damages. The Court agrees. Plaintiff has put forth ample evidence that Defendant was aware that the subject model pressure cooker could pressurize despite not being fully closed but took no action. Based this knowledge, it is possible that a jury could find that such a failure to act reached the level of bad faith or conscious indifference to consequences. Thus, Defendant's motion for summary judgment as to punitive damages is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion for Summary Judgment (Doc. 37), **DENIES** Defendant's Motion in Limine to Exclude the Opinions of Dr. Pratt (Doc. 35), **GRANTS IN PART** Plaintiff's Motion in Limine to Exclude the Opinions of Dr. Giachetti (Doc. 36), and **GRANTS**

Plaintiff's Motion in Limine to Exclude the Opinions of Dr. Barnett (Doc. 38). The case shall be placed on the Court's next available trial calendar.

   **SO ORDERED** this 27th day of August, 2019.

       _**s/ Hugh Lawson**_____
       **HUGH LAWSON, SENIOR JUDGE**

ehm