**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **EDWARD A. COPELAND AND** | ) | |
| **SHERYL COPELAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No: 5:22-cv-00212-CAR** |
| | ) | |
| **TRISTAR PRODUCTS, INC., and** | ) | |
| **ABC, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT TRISTAR PRODUCTS, INC.'S
<u>BRIEF IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF'S EXPERT, DR. SOHEIL
ESHRAGHI</u>**

Defendant Tristar Products, Inc. ("Tristar") files this brief in Support of its Motion to bar Plaintiffs Edward and Sheryl Copeland's expert, Dr. Soheil Eshraghi, from testifying at trial pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

**PRELIMINARY STATEMENT**

This is a product liability action in which Plaintiffs allege they were injured while using a pressure cooker distributed by Tristar. As the name implies, a pressure cooker cooks food under pressure, at temperatures upwards of 230 degrees Fahrenheit. At the end of a cook cycle, however, and once the steam and pressure has been released, the contents will still be hot, but are no longer under pressure.

Dr. Soheil Eshraghi opines the pressure cooker is defectively designed because the lid can be opened while the pressure cooker is still pressurized. Dr. Eshraghi reached that conclusion by testing the Plaintiffs' pressure cooker while it was pressurized. But Eshraghi's methodology is unreliable pursuant to Federal Rule of Evidence 702(a)-(d) for several reasons.

First, Plaintiff Edward Copeland's judicial admissions conclusively establish the pressure cooker was not pressurized at the time of the accident, a fact Eshraghi concedes. Eshraghi has <u>no</u> opinions alleging the pressure cooker is defective while the unit is not pressurized.

Second, Eshraghi's opinion is likewise unreliable - even if we assume the pressure cooker was pressurized – because he failed to follow his own methodology for determining a design defect. Eshraghi opines the subject pressure cooker was defectively designed because it opened after applying only 40-45 pounds of force, but Eshraghi admits a pressure cooker is not defectively designed if it passes Underwriters Laboratories ("UL") 136 – an industry recognized test - that tests whether a pressure cooker's lid can withstand 100 pounds of force. It is undisputed UL tested Tristar's pressure cooker design and certified that it passed UL 136. Rather than concede the unit is not defective, Eshraghi performed testing - purportedly to verify UL's conclusions - but he admittedly (1) never performed a UL 136 test; and (2) only tested the subject unit instead of an exemplar.

Only testing the subject unit does not call into question UL's findings because it is undisputed the subject pressure cooker's lock was damaged from previously being forced open. It is further undisputed that a pressure cooker with a broken lock is not as strong as a normal unit. The condition of the pressure cooker explains why both UL's testing and Tristar's expert, Dr. Giachetti, who also performed UL 136 testing on an exemplar, with an unbroken lock, found the pressure cooker withstood 100 pounds of force.

Eshraghi's other method for determining whether a pressure cooker is defective is whether he can replicate what Plaintiff claims occurred. If he cannot replicate what occurred, in his opinion, the pressure cooker is <u>not</u> defective. Here, Eshraghi admitted he did <u>not</u> attempt to replicate what

occurred, but Plaintiff's judicial admissions and Giachetti's testing based upon those admissions (and other sworn testimony), establish the alleged event cannot be replicated.

Similarly, Eshraghi's testing does not reflect a reliable application of the principles and methods to the facts of the case since it contradicts how Plaintiff allegedly opened the pressure cooker. Plaintiff claims he used one hand to open the pressure cooker, but Eshraghi admitted he could only open the pressure cooker by using two hands even though the lock was broken. In sum, had Eshraghi followed his own methodology, he would not opine a design defects exists. Eshraghi's methodology fails 702 and each of the *Daubert* factors.

## STATEMENT OF FACTS

Plaintiffs seek to recover for personal injuries allegedly sustained when a Tristar PPC 780 pressure cooker lid exploded from the pressure cooker's base while still pressurized. During the discovery period, Plaintiff Edward Copeland responded to Tristar's request for admissions on November 15, 2022. *See* Plaintiff Edward Copeland's response to Tristar's request for admissions, attached hereto as **Exhibit A**. Plaintiff admitted that he "waited until the float valve dropped, before attempting to remove the lid" on the day of the accident. *Id*. at #15.

Dr. Eshraghi testified the float valve is a small cylindrical pin that is inside the pressure cooker's lid with a silicone gasket on the bottom, so when it gets pushed up by the steam, the pressure cooker is sealed allowing it to pressurize. *See* deposition transcript of Soheil Eshraghi at 34:33 – 35:24, attached hereto as **Exhibit B**. The float valve weighs just a few grams and therefore when the pressure begins to build in the unit, the pressure will push the float valve into the up position helping to lock the lid in place. *Id*. at 35:25 – 36:20. For the pressure cooker to be pressurized, the float valve must be in the "up" position. *Id*. at 106:18 – 107:4. Eshraghi admitted when the pressure is gone inside the pressure cooker, gravity will bring the float valve back into

the down position. *Id*. at 37:18-20; 43:3-18; 40:3-9. When the float valve is in the down position, there is no pressure in the unit and no explosive event can occur. *Id*. at 40:3-9.

Eshraghi concludes the PPC 780 is defectively designed because the pressure cooker's lock should prevent any ordinary human from overcoming the lock while the unit is under pressure. Because he was able to overcome the lock, the pressure cooker is defective. *Id*. at 59:19 – 60:1. He does not have any warning or manufacturing defect opinions. *Id*. at 58:22 – 59:14. He admits his theory of defect can only cause an injury when the pressure cooker is pressurized. *Id*. at 105:24 – 106:3.

Eshraghi does not identify in his reports the specific design flaw that makes the PPC 780 defective. *See* expert reports of Dr. Eshraghi, attached hereto as **Exhibit C**. Eshraghi testified he has no opinions as to how the lock should be designed. *Id*. at 105:10-12. Likewise, Eshraghi does not opine that any alternative design should be utilized to remove the purported design defect. *Id*. at 105:13-16.

Eshraghi's experience with pressure cookers is limited. No court has ever qualified Dr. Eshraghi as being an expert in the design of a pressure cooker. *See* Exhibit B at 14:5-7. Eshraghi has never worked for a pressure cooker manufacturer or a distributor or a retailer that sells pressure cookers. *Id*. at 10:25 – 11:8. His professional work as an engineer does not involve pressure cookers. He works in the airplane industry. *Id*. at 13:25 – 14:4; 52:6-11. Thus, he has never designed a pressure cooker. *Id*. at 11:9-10. He has never worked for a company that performs quality control services for manufacturers or distributors of pressure cookers. *Id*. at 11:11-14. Eshraghi has never owned a pressure cooker or used a pressure cooker to eat food. *Id*. at 11:15-19. He could not identify any benefits of using a pressure cooker other than speed at his deposition. *Id*. at 11:25 – 12:7.

Eshraghi's only experience with pressure cookers is derived from litigation. His former boss previously asked him to go to a pressure cooker inspection. *Id*. at 14:8 – 15:2. Eshraghi's former boss educated Dr. Eshraghi on different tests to perform and how to prepare reports. *Id*. at 15:7-15.

Eshraghi confirmed at his deposition that he will <u>not</u> opine a pressure cooker is defectively designed if it passes UL 136 because such a pressure cooker is reasonably safe and not defective. *Id*. at 32:9-12; 46:14 – 47:19. A pressure cooker passes UL 136 if it can withstand 100 pounds of force without its lid separating from the pressure cooker's base during pressurization. *Id*. at 42:14-25. Eshraghi acknowledged that he wanted to know if the subject pressure cooker passed UL 136, and he confirmed that UL tested the pressure cooker, and certified that it passed. *Id*. at 45:20-24; 46:14 – 47:3; *see also* UL certificate of compliance, attached hereto as **Exhibit D**. Eshraghi testified that he needed to retest the pressure cooker to UL 136 to validate the results because "that's what quality conformance tests are. They are to check those properties." *Id*. at 45:25 – 46:13. However, he admitted that he never performed a UL 136 test. <u>Id</u>. at 30:20-22.

Furthermore, Eshraghi did not test any exemplar units despite his acknowledgement that the subject unit was forced open at some point in time prior to Dr. Eshraghi's tests due to the presence of scratch over a locking tab. *Id*. at 55:20 – 56:25; 119:20 – 120:2; 66:21-25. Dr. Giachetti, Tristar's engineering expert, opines that forcing open the unit degrades the ability of the locking mechanism. *See* Dr. Giachetti's 6.28.23 report at 19-21, attached hereto as **Exhibit E**. Dr. Giachetti explains that "because tolerances are small and material is lost on the locking tab when the lock is forcefully overcome . . . the loss in the distance the locking pin needs to travel around the locking tab . . . reduces the ability of the lock to withstand external opening force." *Id*. at 20.

Dr. Giachetti testified that when UL performs the UL136 test, UL tests new units, not broken units. *See* Dr. Giachetti's deposition transcript at 190:6-8, attached hereto as **Exhibit F**. the subject unit had a broken lock which degraded the lock's ability to withstand external opening force. Thus, testing the subject unit does not tell you whether the design is sufficient to pass UL 136. *Id*. at 188:23 – 190:8.

Eshraghi admitted that has no opinion on whether forcing open the pressure cooker degrades the lock's ability to withstand external opening force. *See* Exhibit B at 125:11-21. When he tested the subject unit with the broken lock, it withstood 40-45 pounds of force, not 100 pounds. *Id*. at 69:15-20. Eshraghi opined 40-45 pounds of force to open the pressure cooker is insufficient because UL requires the pressure cooker to withstand 100 pounds of force. *Id*. at 69:21 – 70:6. But he does not know if the reason he was able to open the pressure cooker at 40-45 pounds versus 100 pounds was because the lock had been already degraded from being forced open previously since he did not test any exemplar units. *Id*. at 121:5 – 122:10.

Eshraghi admitted when the unit is not pressurized, the lid can be rotated freely and easily with just two or three fingers. *Id*. at 40:19 – 41:21. Conversely, when the unit is pressurized and the lid is rotated, the user will feel resistance. *Id*. at 42:11-13. When the unit is pressurized, the lid cannot be rotated freely and easily with just two or three fingers. *Id*. at 43:1-4. The user will feel resistance so long as some amount of pressure remains in the unit because the float valve will be in the up position. *Id*. at 44:3-10.

The owner's manual instructs users to not force open the lid and that if the unit is difficult to open, it is still pressurized. *See* owner's manual at 3, under heading "Important Safeguards," attached hereto as **Exhibit G**. This warning is repeated with the language "never force open" the Power Pressure cooker XL. *Ibid*. Plaintiff Edward Copeland admitted that he read the owner's

manual thoroughly prior to the accident. *See* Exhibit A at #4. He admitted that he used the pressure cooker multiple times between 2016 and 2020, and that is operated as Plaintiff expected and intended. *Id*. at #8 -9. Plaintiff Sheryl Copeland testified that her husband knew not to force open the pressure cooker. *See* Sheryl Copeland's deposition transcript at 52:11-16, attached hereto as **Exhibit H**.

Eshraghi performed two tests with the subject pressure cooker. In the first test, he utilized a torque wrench to remove the lid. Giachetti used a strap wrench, a similar method. Those tests showed 40-45 pounds to force were needed to remove the lid. Giachetti testified the purpose for testing the subject unit was to understand how much force would be needed to open a unit with a degraded and broken lock. *See* Exhibit F at 198:17 – 199:2. Giachetti opined the pressure in the unit during these tests was so low that no explosive event could have occurred if UL 136 is followed. *Id*. at 199:16 – 200:9.[1] This is because the unit had less than 1 pound per square inch ("psi") because Eshraghi and Giachetti unplugged the unit as soon as the float valve was raised, which occurs at about a quarter of a psi. *Id*. at 124:21 – 125:3; 99:11-16. Eshraghi did not know how much pressure was in the unit during the test because he did not utilize a pressure reading device, but admitted no explosive event will occur at less than 1 psi. *See* exhibit B at 60:20 – 61:2; 61:23 – 62:3. Eshraghi agrees with Giachetti that the float valve raises at less than 1 psi. 61:18-22.

Eshraghi performed a second test with the subject pressure cooker in his backyard. Eshraghi admits this was not a UL 136 test. *See* Exhibit B at 96:5-12. For example, he did not

---

[1] Section 9 of UL 136 describes the cover opening test. *See* UL 136, attached hereto as **Exhibit I**. Section 9.1 requires that an ordinary user shall not be able to open the pressure cooker when the pressure creates a risk of injury, such as the escape of steam or hot water. Section 9.2 requires that the cooker be equipped with a pressure indicating device. Section 9.3 describes 100 pounds of force is to be applied. 9.5 states the cooker is to half filled with water. Section 9.6 allows the lid to rotate during the test, but bot the displacement of the cover or escape of steam or water that would result in risk of injury.

measure the pressure in the unit and filled it with water all the way to the max fill line. *Id.* at 86:15-23; 85:21 – 86:2. Giachetti likewise opined the "backyard" test is not a UL 136 test because the water in the unit was not filled halfway. He also explained the test did not meet UL 136 because Eshraghi did not unplug the unit as soon as the float valve raised or allow it to pressurize until the timer starts for the cook cycle. Furthermore, UL does not use two hands to attempt to open the lid, and the unit should be restrained by the handles on the base, which did not occur. And, of course, the unit was broken. *See* Exhibit F at 192:7 – 193:8.

Eshraghi will also <u>not</u> opine a pressure cooker is defectively designed if he cannot replicate what Plaintiff claimed occurred. *See* Exhibit B at 32:9-12; 24:2-11; 19:21-25.  Eshraghi admitted he did not attempt to replicate the incident. *Id.* at 33:4-12. For example, Plaintiff claimed he opened the pressure cooker with only one hand, but Eshraghi's testing confirmed he needed two hands to open the pressure cooker despite its broken lock. *See* Exhibit H at 50:3-10; 51:19 – 52:10; *see also* Exhibit B at 126:3-12; 96:17 – 97:1. A person using two hands can generate force exceeding 100 pounds and up to 200 pounds. *See* Exhibit B at 70:9-21. Eshraghi admitted significant force is needed to generate 45 pounds of force. *Id.* at 125:22 – 126:2.

Likewise, Eshraghi did not replicate Plaintiff's conduct leading up to his attempted removal of the pressure cooker's lid to determine if the lid pressure cooker could still be pressurized. *Id.* at 33:4-12. Plaintiff's admissions establish the pressure cooker was not pressurized as do Plaintiffs' other discovery responses. Plaintiff alleges that he cooked boneless chuck roast in the pressure cooker. He cooked it for 40-45 minutes, the cook cycle automatically ended, and the incident occurred 45 minutes after the completion of the cook cycle before checking the contents of the pressure cooker. *See* Plaintiffs' answers to interrogatories at #2, attached hereto as **Exhibit J**. Dr.

Giachetti recreated Plaintiff's recipe and conduct and found that the pressure cooker was not pressurized after 45 minutes. *See* Exhibit E at 19.

## ARGUMENT AND CITATION OF AUTHORITY

**I.      Eshraghi's opinions violate Federal Rule of Evidence 702 and *Daubert* and are thus inadmissible. Without expert testimony, summary judgment is required.**

Federal Rule of Evidence 702 precludes Eshraghi's testimony. Federal Rule of Evidence 702 allows expert testimony when "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if  the proponent demonstrates to the court that it is more likely than not that: (a) such testimony will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." *See also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). When analyzing the reliability of an expert's methodology, "a court should meticulously focus on the expert's principles and methodology, and not on the conclusions that they generate*." McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). To evaluate reliability, the court should examine: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Federal Rule of Evidence 702 was recently amended in December 2023. The "rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." *See* Communication from the Chief Justice, the

Supreme Court of the United States, Amendments to the Federal Rules of Evidence, Rule 702, page 19, attached hereto as **Exhibit K**. Further "Rule 702(d) has also been amended to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id*. at 21. "Judicial gatekeeping is essential because . . . jurors . . . lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support." *Ibid*. The amendment "does not permit the expert to make claims that are unsupported by the expert's basis and methodology." *Id*. at 22.

Plaintiffs cannot prove a design defect without expert testimony. Because Eshaghi's opinion does not meet the requirements of 702 and is inadmissible, as demonstrated below, summary judgment is proper. "Due to the technical nature of the *Banks* [*v. ICI Ams., Inc.,* 264 Ga. 732, 736 n.6 (1994)] factors,[2] expert testimony is ordinarily required to prove a design defect since a jury cannot reasonably draw that conclusion based on human experience alone." *See Hendy v. Wal-Mart Stores E.*, 2022 U.S. Dist. Lexis 116769 (N.D. Ga. 2022) at *4-5. (Citing *Shelton v. GALCO Int'l, Ltd.*, 2017 U.S. Dist. LEXIS 184322, at *5-6 (N.D. Ga. July 19, 2017) (granting summary judgment to a gun holster manufacturer where the plaintiff produced no expert testimony

---

[2] *Banks* sets forth the relevant factors for the risk-utility analysis. "These factors include: the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance. We note that a manufacturer's proof of compliance with industry wide-practices, state of the art, or federal regulations does not eliminate conclusively its liability for its design of allegedly defective products." *Banks v. ICI Ams., Inc.*, 264 Ga. 732, 736 n.6 (1994). Here, Eshraghi provides no opinions on the risk or utility of the design. Rather, Eshraghi admits the design is sufficient if it satisfies UL 136, and it does.

or other evidence for the risk-utility analysis); *Justice v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 89873, at *3-4 (N.D. Ga. June 27, 2012) (granting summary judgment to a car manufacturer where the plaintiff's sole expert would not attest to a design defect in the car)); *Mize v. HJC Corp.*, 2006 U.S. Dist. LEXIS 65180, at *3 (N.D. Ga. Sept. 13, 2006) (granting summary judgment to the defendant after excluding the plaintiff's expert witness on a design defect).

### A. Eshraghi's opinions are not reliable because it is conclusively established the pressure cooker was not pressurized.

#### 1. Eshraghi's opinions confuse the jury.

Eshraghi's opinions that the pressure cooker was pressurized serves to confuse rather than help the jury understand evidence, because Plaintiff's judicial admission that the float valve was down conclusively establishes that the pressure cooker was depressurized. Eshraghi testified that no pressure is in the unit when the float valve is down. Likewise, Eshraghi's opinions do not help the jury determine a fact in issue because it is undisputed the pressure cooker was depressurized. Thus, Plaintiffs cannot establish it is more likely than not Eshraghi's opinions "will help the trier of fact to understand the evidence or to determine a fact in issue." *See* Rule 702(a). Plaintiffs therefore do not satisfy 702(a).

#### 2. Eshraghi's testimony is not premised upon sufficient facts or data.

Eshraghi never reviewed Plaintiff's response to request for admissions and did not know Plaintiff admitted the unit was not pressurized when he authored his opinions. Because of his ignorance as to what Plaintiff admitted, Eshraghi provided opinions premised upon the pressure cooker exploding while under pressure. Eshraghi therefore does not satisfy 702(b), because his opinions are founded upon facts which cannot be considered. *See Norris v. Sellers*, 2016 U.S. Dist. Lexis 198407 at *17-21 (S.D. Fl. Sept. 26, 2016) (Holding expert opinion was unreliable, because opinion was solely based upon government report that defendant, when served with requests for

admissions asking defendant to admit to the information in the report, denied the statements in the report claiming they were unreliable). *Norris* precludes an expert from taking a position that is inconsistent with his or her client's responses to request for admissions. *Norris's* holding is consistent with Rule 36 and applies that rationale to 702. Accordingly, *Norris* reinforces Tristar's argument that Eshraghi's testimony is improper and unreliable under 702(b), because it contradicts Plaintiff's judicial admission.

> ### 3. Eshraghi's testimony is not the product of reliable principles and methods, because he did not perform any testing which replicated Plaintiff's accident or which rebuts UL's determination that the pressure cooker passes UL 136.

Eshraghi's methodology is not reliable because it ignores Plaintiff's admission that the float valve was down and the unit was therefore not pressurized. His methodology incorrectly presumes that the unit was pressurized.

> ### 4. Eshraghi's principles and methods were not reliably applied to the facts of this case.

Eshraghi did not reliably apply his methodology to the facts of this case because his opinions are dependent upon the unit being pressurized despite Plaintiff's admissions establishing the unit was not pressurized.

> ## B. Eshraghi's opinions are not reliable even if the pressure cooker was pressurized because they do not establish the pressure cooker fails UL 136 or that Plaintiff's accident can be replicated.

> ### 1. Eshraghi's opinions confuse the jury.

Eshraghi's opinions confuse the jury because he opines the pressure cooker is defective despite the fact that his own methodology establishes no defect exists. Eshraghi admits that the pressure cooker is reasonably safe and not defective if it passes UL 136, and it is undisputed UL tested the pressure cooker to UL 136 and certified it passed. Thus, his opinions – which are not

premised upon UL 136 testing - do not help the jury understand the evidence or determine a fact in issue because there is no scientifically reliable evidence establishing the pressure cooker fails UL 136.

Eshraghi did not do any UL 136 testing to rebut UL's determination (or Giachetti's conclusion) that the pressure cooker passed UL 136. Eshraghi claims he tested the unit to verify that UL's certification was correct. But to rebut UL's conclusion, Eshraghi needed to perform a UL 136 test. He admits he did not.

Furthermore, UL performs the test on new units with working locks that have not been previously forced open. Eshraghi only tested the subject unit which possessed a compromised lock. Thus, his testing did not confirm or reject UL's testing.. Without evidence that the pressure cooker fails UL 136, there is no issue for the jury to determine. Both parties agree that the pressure cooker is not defective if it passes UL 136, and the undisputed evidence establishes the pressure cooker passed UL 136.

Similarly, Eshraghi's testing does not help the jury understand what happened because he never attempted to replicate the accident, another aspect of his methodology he admittedly did not follow. According to Eshraghi, if the accident cannot be replicated there is no defect. Because he did not follow his own methodology, his testing assumes the unit was pressurized and the lock was insufficient.

His assumption does not help the jury understand the evidence or determine a fact in issue, because it is undisputed when Plaintiff's recipe and conduct is recreated, no accident occurs. Unlike Eshraghi, Giachetti recreated Plaintiff's recipe, waited 45 minutes – consistent with the interrogatory answers and testimony – and found no pressure remained in the unit. *See* Giachetti's 6.28.23 report at 9-11; 21. Moreover, Eshraghi's testing established the unit cannot be opened

13

with one hand which contradicts Plaintiff's version of events. Thus, the accident cannot be replicated if Plaintiff's conduct is followed either because the unit would not be pressurized after 45 minutes or because the lid cannot be removed with one hand. Had Eshraghi faithfully followed his own methodology, he would not proffer his opinion of defect.

        **2.**        **Eshraghi's opinion is not based upon sufficient facts or data.**

Tristar incorporates the arguments from subsection B(i) into its argument that Eshraghi's opinion was not based upon sufficient facts or data since those arguments illustrate Eshraghi's opinion is lacking a sufficient basis. Tristar simply points out that the facts (Plaintiff's sworn testimony and admissions) when scientifically tested result in a non-pressurized event, or an inability to open the pressure cooker with only one hand. Likewise the data (Eshraghi's testing a unit with a broken lock) fails to rebut a known undisputed fact: UL concluded the pressure cooker passes UL 136.

Eshraghi does not rely upon these facts or data. His testing proves he actually is unconcerned with how Plaintiff opened the pressure cooker, what UL concluded, or whether the condition of the pressure cooker would invalidate his results. His sole focus is simply whether the pressure cooker can be opened, but that focus fails to address what he acknowledges is dispositive on the issue of a design defect i.e., can the accident be replicated and does the pressure cooker pass UL 136.

        **3.**        **Eshraghi's testimony is not the product of reliable principles and methods, because he did not perform any testing which replicated Plaintiff's accident or which rebuts UL's determination that the pressure cooker passes UL 136.**

Tristar again incorporates the arguments made in subsection B(i) and (ii) as they are relevant to whether Eshraghi performed a reliable methodology. A review of the *Daubert* factors further confirms Eshaghi did not perform a reliable methodology.

Eshaghi's theory can be and has been tested, and that testing resoundingly established no design defects exists with Tristar's pressure cooker. The testing establishes the pressure cooker only fails to satisfy UL 136 when the unit has a broken lock. *Ibid.* Further, the testing establishes Plaintiff's accident cannot be replicated. Thus, objective testing establishes Eshraghi's methodology was irrelevant and not scientifically valid.

Second, Eshraghi's testing of a unit with a broken lock has not been peer reviewed or published as being reliable in determining whether the pressure cooker passes UL 136. Eshraghi cited no articles or scientific studies to support his theory. This is unsurprising since he does not work in the pressure cooker field. He even admitted he had no opinion on whether forcing open the unit weakens the lock.

Third, Giachetti – who actually works with manufacturers to develop pressure cookers - opined testing a unit with a broken lock does not inform us whether the design is sufficient to pass UL 136 since the lock is no longer in the same condition as it was when manufactured. *See* Giachetti's deposition transcript at 22:14-21; 45:12-20. Thus, it is known in the pressure cooker community that Eshraghi's methodology is invalid and is not accepted in the scientific community.

Moreover, the 2000 *Daubert* amendments additionally establish the unreliability of Eshraghi's testing. First, Eshraghi's opinion does not grow "naturally and directly out of research" he has "conducted independent of the litigation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). He only inspects and tests pressure cookers "expressly for purposes of testifying." *Ibid*.

Fourth, "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136,146 (1997). Eshraghi concludes the pressure cooker's design is defective because his testing shows it can be opened with 40-45 pounds of force.

15

But Eshraghi's conclusion is unfounded given that he did not perform a UL 136 test and he failed to test a unit with a working lock.

Fifth, Eshraghi has not adequately accounted for obvious alternate explanations. *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994). Similar to the preceding paragraph, the obvious explanation for why exemplar units pass UL 136 but the subject unit does not, is that the subject unit was previously forced open which damaged its lock (a position Eshraghi has no opinion on and is therefore unchallenged and undisputed).

The last 2000 *Daubert* amendment asks whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting. *Kumho Tire Co. v. Carmicahel*, 119 S. Ct. 1167 (1999) While Eshraghi does not perform pressure cooker work outside of litigation, Tristar surmises that Eshraghi would not classify his airplane fastener designs defective if a damaged fastener failed to perform as intended but non-damaged fasteners did not.

Accordingly, the *Daubert* factors and the 2000 amendments to *Daubert* establish the inherent unreliability of Eshraghi's testing due to his desire to support Plaintiff's litigation rather than scientifically determine whether the pressure cooker is defective.

### 4.    Eshraghi's principles and methods were not reliably applied to the facts of this case.

Tristar incorporates its arguments from section B(i)(ii) & (iii), and adds that Eshraghi's testing exists in a vacuum unrelated to the facts of this case since he disregarded Plaintiff's admissions, interrogatories and testimony, particularly the fact Plaintiff claimed he opened the pressure cooker with one hand. Eshraghi cherry picks Plaintiff's claim he was able to remove the lid with one hand, but ignores his own testing which disproved that allegation, along with all of the other facts related to Plaintiff's operation of the pressure cooker. Accordingly, Eshraghi's opinions do not bear any relation to the facts of this case. Eshaghi's opinions violate 702(d).

**C.      Eshraghi is not qualified to provide his pressure cooker design defect opinions.**

Eshraghi's limited experience testing pressure cookers for litigation is insufficient to render him a qualified expert in the area of pressure cooker design since he has no ability to perform a risk-utility analysis, and no specialized knowledge, experience or training in pressure cooker design. For example, in *Folsom v. Kawasaki Motors Corp. U.S.A.*, 509 F. Supp. 2d 1364, 1374-75 & 1377-78 (M.D. Ga. 2007), Plaintiffs experts were not qualified to opine as to the risk-utility of a Kawasaki jet ski design that did not allow for off-throttle steering despite having significant experience in jet ski operation and alternative designs. Off-throttle steering refers to the fact that the jet ski cannot be maneuvered without applying the throttle, and therefore the user must accelerate towards a hazard to steer away from the hazard. *Id*. at 1367. Kawasaki's jet ski was not designed for off-throttle steering because it utilized a jet pump, rather than a propeller, to generate power. Engaging the throttle allows the user to push water through the pump. Without power, the jet ski has little to no ability to maneuver. *Ibid*.

To support their design defect theory, the *Folsom* Plaintiffs retained Ronald Simner, an experienced jet ski operator, who owns a company that specializes in rudders to address the issue of off-throttle steering. *Id*. at 1374. "He holds United States patents on two types of rudders that he specifically designed for use on PWC [(personal watercraft)]. His first rudder design, WaveTrax, has been evaluated by nearly all PWC manufacturers and has been tested under two U.S. Coast Guard grants addressing Off-Throttle Steering Loss [] in Personal Watercraft. (Simner Rule 26 Report 3, Aug. 30, 2005.) Simner also has been a member of the SAE PWC Subcommittee since 2000, and participated in the development of the J2608 standard for PWC off-throttle steering." *Id*. at 1374-75. The *Folsom* Plaintiffs also retained Bradley Cuthbertson, a former professional PWC racer who has "developed safety courses for and lectured on safe [PWC]

operation, and [has] worked with and consulted with a wide range of entities regarding the operation of [PWC], ranging from U.S. Coast Guard, to law enforcement agencies, to manufacturers . . . , to insurance companies, and attorneys." *Id*. at 1375. Simner and Cuthbertson performed collision avoidance testing and determined that the alternative design – with a rudder system – would have avoided the accident. *Ibid*.

Regardless of their qualifications, the Court concluded that neither expert was qualified to testify that the Kawasaki jet ski "contains a product defect because it cannot be steered once the throttle is released, or that . . . rudders are a viable solution to off-throttle steering loss." *Id*. at 1378. The Court reasoned there was no evidence that either expert had the ability to perform a risk-utility analysis of the jet ski's design. *Ibid*. "There is no evidence that either Simner or Cuthbertson possess <u>the knowledge</u>, skill, experience, training, or education necessary <u>to compare</u> <u>the off-throttle steering design to the rudder-equipped model</u> and conclude that off-throttle steering makes the Jet Ski "simply so dangerous that it should not have been made available at all." (Emphasis added).

Comparing *Folsom* to the instant case is helpful. First, the barred experts in *Folsom* had more general experience and knowledge with jet skis than Eshraghi has with pressure cookers. Second, similar to the unqualified experts in *Folsom*, Eshraghi lacks the qualifications to compare one pressure cooker's design against the Tristar pressure cooker design, and Eshraghi - tellingly – does not even attempt to make any such comparison. His "experience" with pressure cookers is derived from speaking with his former supervisor who advised him how to perform pressure cooker tests and how to form his reports. But learning how to conduct tests to measure temperatures, forces upon lids, and the functionality of the locking elements does not pertain to knowledge of a pressure cooker's design and comparing that design to the risks they create. *See*

18

*Folsom*, *supra*, at 1377. ("[Plaintiffs'] argument is that anyone who would use the methodology that [Simner and Cuthbertson] used must [] be qualified[]" to render the opinion that off-throttle steering is a defective design feature of the 1998 900STX Jet Ski. This argument clearly ignore[s] the conceptual distinction between an expert's qualifications and the reliability of his proffered opinion."). *See also Grieco v. Tecumseh Prods. Co*. 2013 U.S. Dist. Lexis 152405 (S.D. Ga. 2013) at *4-9 (barring plaintiff's mechanical engineer from providing opinions regarding the design of a compressor unit used in a walk-in cooler because, although he had practical experience with maintenance of compressor systems, "nothing about his experience gives him the knowledge or skill necessary to testify about compressor design, much like riding a jet ski did not give the supposed experts in *Folsom* the knowledge or skill necessary to design one."); *Walker v. CSX Transp., Inc*., 650 F.3d 1392, 1397 n.19 (11th Cir. 2011) (holding expert opining bulkhead door's locking system was defective was properly barred since he was unqualified to proffer the opinion because, *inter alia*, "he had no experience or training to as to the design or manufacture of bulkhead doors or analyzing the materials used to construct, operate, or secure a bulkhead door system . . . ." ). Accordingly, Eshraghi is unqualified.

Respectfully submitted, this 20th day of February, 2024.

*/s/ Sanjay Ghosh*
Sanjay Ghosh
Georgia Bar No. 141611
Steven H. Campbell
Georgia Bar No. 161457
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street NW | Suite 1700
Atlanta, GA 30363
(404) 322-6000
(404) 322-6050 (fax)
sanjay.ghosh@nelsonmullins.com
steven.campbell@nelsonmullins.com

David S. Osterman
Thaddeus J. Hubert, IV
GOLDBERG SEGALLA
301 Carnegie Center Drive | Suite 200
Princeton, NJ 08540
(609) 986-1386
(609) 986-1301 (fax)
dosterman@goldbergsegalla.com
thubert@goldbergsegalla.com

*Attorneys for Defendant Tristar Products, Inc.*

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the within and foregoing **DEFENDANT TRISTAR PRODUCTS, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF'S EXPERT, DR. SOHEIL ESHRAGHI** with the Clerk of Court utilizing the CM/ECF electronic filing system which will automatically send notification of such filing to all attorneys of record listed below, who are registered participants in the Court's electronic notice and filing system.

W. Carl Reynolds, Esq.
creynolds@rmtriallaw.com
Marty K. Senn, Esq.
msenn@reynoldsinjurylaw.com
Michael G. Horner, Esq.
mhorner@reynoldsinjurylaw.com
REYNOLDS, HORNE & SURVANT
6320 Peake Road
P.O. Box 26610
Macon, GA 31210

*Attorneys for Plaintiffs Edward A. Copeland
and Sheryl Copeland*

This 20th day of February, 2024.

*/s/ Sanjay Ghosh*
Sanjay Ghosh
Georgia Bar No. 141611
Steven H. Campbell
Georgia Bar No. 161457
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street NW | Suite 1700
Atlanta, GA 30363
(404) 322-6000
(404) 322-6050 (fax)
sanjay.ghosh@nelsonmullins.com
steven.campbell@nelsonmullins.com

*Attorneys for Defendant Tristar Products, Inc.*