**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **EDWARD A. COPELAND AND** | ) | |
| **SHERYL COPELAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No: 5:22-cv-00212-CAR** |
| | ) | |
| **TRISTAR PRODUCTS, INC., and** | ) | |
| **ABC, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT TRISTAR PRODUCTS, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Tristar Products, Inc. ("Tristar") files this brief in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1 and 56 as to all of Plaintiffs Edward and Sheryl Copeland's claims against it.

**PRELIMINARY STATEMENT**

This is a product liability action in which Plaintiffs allege they were injured while using a pressure cooker distributed by Tristar. As the name implies, a pressure cooker cooks food under pressure, at temperatures upwards of 230 degrees Fahrenheit. At the end of a cook cycle, however, and once the steam and pressure has been released, the contents will still be hot, but are no longer under pressure.

It is now a conclusively established fact that the pressure cooker was not pressurized when Plaintiffs' accident happened. Plaintiff Edward Copeland admitted this fact in response to Tristar's Request for Admissions, in which he admitted that he "waited until the float valve dropped," indicating that the pressure cooker was not pressurized, "before attempting to remove the lid." Plaintiff's expert, Dr. Soheil Eshraghi, confirmed that no pressure is in the unit when the float

1

valve drops or is in the down position. Plaintiff cannot prove the pressure cooker is defectively designed because Eshraghi opines the pressure cooker is defective because the lid locking mechanism allows the lid to separate from the base <u>while the pressure cooker is still pressurized</u>. Because this testimony contradicts Plaintiff's admission that the pressure cooker was not pressurized when the accident happened, it is inadmissible.

Eshraghi has <u>no</u> opinions alleging the pressure cooker is defective while the unit is not pressurized, and he admits Plaintiff's admissions conclusively establish the pressure cooker was <u>not</u> pressurized. Accordingly, the accident mode admitted to by Plaintiff does not implicate any alleged defect identified by Eshraghi, and therefore there is no evidence of a defect proximately causing Plaintiffs' injuries.

Additionally, summary judgment is warranted because there is no evidence the pressure cooker is defective under Georgia law. First, Plaintiffs must prove the pressure cooker was not reasonably suited to its intended use, and its condition when sold caused the injury. Here, the lock was either broken after being sold but prior to the accident, or the lock was broken because Plaintiffs forced open the unit on the date of the accident in contravention of its intended use. Second, Plaintiffs must prove the risks inherent in the design outweigh the utility or benefit derived from the pressure cooker. The primary issue therefore is whether the design chosen was reasonable, but the reasonableness of the design cannot be evaluated or weighed because Eshraghi did not identify the specific design flaw. Third, Eshraghi must perform a risk-utility analysis, but he did not; and he is not qualified to provide such an analysis. Fourth, without a risk-utility analysis, there is a complete absence of evidence that the pressure cooker's design is defective. There is simply no issue in dispute for the jury to resolve: both parties agree that the pressure cooker is not defective

if it passes UL 136, and it is undisputed the pressure cooker – so long as it has a working lock - passes UL 136.

Finally, assuming Plaintiffs have a valid product liability claim, which they do not, punitive damages are inappropriate because Tristar complied with industry safety standards by having UL test and certify the pressure cooker to UL 136. Punitive damages are typically inappropriate when a defendant complies with industry safety standards, and that general rule is applicable here since Eshraghi concedes the pressure cooker is not defective if it passes UL 136. Additionally, Tristar performed numerous safety and quality control checks, including retaining a third party engineering firm to test the pressure cookers. No defects were ever identified. Finally, punitive damages are not allowed because Tristar warned Plaintiffs of the dangers associated with pressure cookers. The punitive damages claim therefore fails as a matter of law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1177 (11th Cir. 2020). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, at which point the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The

non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In doing so, the court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

## ARGUMENT AND CITATION OF AUTHORITY

**I.      A party cannot contradict its own admissions to create a genuine issue of fact, and Plaintiff's admissions establish that the pressure cooker was not pressurized at the time of the accident.**

While Rule 56 contemplates weighing various evidence, including admissions, to determine whether a genuine issue of fact exists, responses to requests for admissions are qualitatively unique from other discovery, including an admission in a deposition or interrogatory response. They are unique because "[a]dmissions to requests for admission pursuant to Federal Rule of Civil Procedure 36 are controlling in the presence of conflicting subsequent testimony." *Ellis v. Chambers*, 2022 U.S. App. Lexis 34991 at *24 (11th Cir. 2022) (citing *Williams v. City of Dothan*, 818 F.2d 755, 762 (11th Cir. 1987); *see also Jacobs v. Electronics Data Systems Corp.*, 2006 U.S. Dist. Lexis 91706 at *3 (M.D. Ala. Dec. 18, 2006) ("a party cannot rebut its own admissions by introducing evidence that contradicts it.").

Admissions to request for admissions are controlling in the presence of conflicting testimony, because "a matter admitted under [Rule 36] is conclusively established . . . ." Fed. R. Civ. Pro. 36; *see also Whitaker v. White*, 2022 U.S. Dist. Lexis 229693 at *15 (M.D. Ga. Oct. 13, 2022) (Court refused to take Plaintiff's facts in amended complaint as being true on a motion to

dismiss, because these facts were contradicted by responses to request for admissions); *JSM Marine LLC v. Gaughf*, 407 F. Supp. 3d 1358, 1367 (S.D. Ga. 2019) (Holding declarations of witnesses did not create genuine issue of fact for summary judgment motion due to defendant's admissions pursuant to Rule 36). "Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Fed. R. Civ. Pro. 36, notes of Advisory Committee on Rules – 1970 Amendment. This function of Rule 36 "would be defeated if parties were permitted to contest, under FRCP 56, matters already conclusively established under FRCP 36 . . . " Fed. R. Civ. Pro. 36, notes to decisions, section II Summary Judgment, comment 7 (citing *Chicago Dist Council of Carpenters Pension Fund v. P.M.Q.T., Inc.*, 169 F.R.D. 336, 341 (N.D. Ill. 1996) ("Allowing Defendants to even raise issues of fact from affidavits and depositions supporting their response to summary judgment would allow Rule 56 to swallow Rule 36.").

Responses to request for admissions are controlling in light of other evidence, because they are judicial admissions, not evidentiary admissions. *See Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) ("A judicial admission trumps evidence. This is the basis of the principle that a plaintiff can plead himself out of court."); *Albitus v. Farms & Merchants Bank*, 159 Ga. App. 406, 407-08 (1981) (Holding interrogatory answer which contradicted response to request for admissions did not create genuine issue of fact, because a response to a request for admissions is "generally regarded as a judicial admission rather than an evidentiary admission of a party. A judicial admission, unless allowed to be withdrawn by the court, is conclusive whereas an evidentiary admission is not conclusive but is always subject to be contradicted or explained. Thus, it is clear that answers to interrogatories and answers to requests for admissions are not on the

same footing in the eyes of the law."); *AGSouth Genetics, LLC v. Ga Farm Servs.*, LLC, 2013 U.S. Dist. Lexis 152708 at *16 (M.D. Ga. 2013) (Describing requests for admission as a judicial admission).

Thus, even when the party that will be prejudiced by the admissions, provides credible evidence contradicting the admissions, that evidence cannot be considered. "In the Eleventh Circuit, it is reversible error for a district court to discount facts that are conclusively established through Rule 36 admissions, even if it [finds] more credible the evidence of the party against whom the admissions operate." *Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, 2012 U.S. Dist. Lexis 91253 at *7 (N.D. Ala. 2012) (quoting *Williams*, *supra*, at 762).

Here, in his response to request for admissions, Plaintiff Edward Copeland admitted that he waited until the float valve dropped, before attempting to remove the lid. *See* SOF ¶40-41. This admission conclusively establishes that the pressure cooker was not pressurized at the time of the accident. *See* SOF ¶36-45. Plaintiff provided these admissions on November 15, 2022, prior to his death, prior to Eshraghi's reports, prior to the party's depositions – wherein Mrs. Copeland confirmed her husband's version of events[1] - and prior to depositions of the experts. *See* SOF ¶40.

The float valve is a small piston like object which helps seal the pressure cooker, and lock it. *See* SOF ¶42-45. As the pressure cooker heats up and steam rises, the steam pushes the float

---

[1]    When the float valve is down the unit can be opened because the float valve no longer obstructs the locking mechanism and the locking pin can travel freely over the locking tab. Similarly, both Edward and Sheryl Copeland's interrogatories both state "Edward Copeland checked the side of the pressure cooker where the metal safety pin was located. The pin was no longer sticking out, leading Mr. Copeland to believe that there was no steam/pressure inside the pressure cooker." *See* Plaintiffs' Interrogatory answer #2, Exhibit I.  Plaintiff Sheryl Copeland testified at her deposition that this interrogatory answer referred to the locking pin. She testified that when the float valve drops the locking pin goes in, or retracts. In other words, the position of the locking pin is related to the float valve, and so when the float valve is up, you cannot move the pin because it extends out to prevent the pin from traveling over the locking tab. *See* Sheryl Copeland's deposition at 93:13 – 97:1.

valve into the "up" position, pushing it into the locking mechanism. In this position, the float valve restricts the user from being able to rotate the lid. *See* Dr. Giachetti's deposition at 80:11-19. Steam cannot exit the pressure cooker with the float valve in the "up" position, because its base has a rubber gasket. *See* SOF ¶42. When a user hits the pressure release valve, steam escapes from another area of the lid while the float valve remains "up." When the pressure dissipates, the float valve goes "down," and the unit can be opened. *See* SOF ¶45.

Eshraghi confirmed at his deposition that there would be no pressure in the pressure cooker if the float valve was down. *See* SOF ¶38. Thus, Plaintiff's admission conclusively establishes the pressure cooker was depressurized at the time of the accident.

## II. Summary judgment is appropriate because Plaintiffs have no evidence (through expert testimony or otherwise) that the pressure cooker's alleged defects proximately caused Plaintiffs' injuries.

Under Georgia law, "whether proceeding under a strict liability or a negligence theory, proximate cause is a necessary element of a product liability case." *Hoffman v. Ac&S Inc*., 248 Ga. App. 608, 610 (2001); *See also Ogletree v. Navistar Int'l Transp. Corp*., 245 Ga. App. 1, 6 (2000); OCGA §51-1-11(b)(1). Summary judgment on proximate cause is merited in "plain and undisputed" cases where, as here, the evidence shows "clearly and palpably that the jury could draw but one conclusion, that the defendant's acts were not the proximate cause of the injury." *See Walker v. CSX Transp., Inc.*, 650 F.3d 1392, 1399–1400 (11th Cir. 2011) (affirming district court's grant of summary judgment for defendant on proximate cause where the evidence did not "reasonably connect" the plaintiff's injury "to a defect in the" defendant's product).

Here, Plaintiffs have no evidence—let alone expert testimony—establishing causation. Plaintiff's judicial admission conclusively establishes the pressure cooker was not pressurized, and Eshraghi has no opinions that the pressure cooker is defective while depressurized. *See* SOF ¶39.

Nor does Eshraghi opine Plaintiff's injuries were caused due to a depressurized unit. Instead, all of Eshraghi's opinions are dependent on the pressure cooker being pressurized at the time of the accident. *See* SOF ¶39. Thus, Eshraghi's opinions only allow for an inference that hot contents from the pressure cooker caused Plaintiffs' injuries, but "that inference does not extend to the cause being the result of a design defect." *See Sheffield v. Conair Corp.*, 821 S.E.2d 93, 97 (Ga. App. 2018). Eshraghi's opinions are "insufficient as a matter of law to establish the causal connection between the design of [the pressure cooker] and . . . [the plaintiff's] damages." *Ibid.* Accordingly, there is no evidence the Tristar pressure cooker's alleged defects proximately caused Plaintiff's injury.

## III. Summary judgment is appropriate because there is no evidence that the pressure cooker's design is defective.

To prove a design defect claim, Plaintiff must establish the product "when sold . . . was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained." O.C.G.A. §51-1-11(b)(1). Specifically, plaintiffs must establish the PPC 780 pressure cooker's design is defective and the defective design caused their injuries.

"Under Georgia law, a product design is defective if the risks inherent in the design outweigh the utility or benefit derived from the product. Although many relevant factors inform this risk-utility analysis,[2] the most important factor is 'whether the design chosen was a reasonable one from among the feasible choices of which the manufacturer was aware or should have been aware'; this factor is the 'heart' of design defect cases." *See Bryant v. BGHA, Inc.*, 9 F. Supp. 3d

---

[2]    Some of the relevant factors include the availability of other alternative designs, the user's knowledge of the product, common knowledge and the expectation of danger; the user's ability to avoid danger, and compliance with industry-wide practices. *Banks v. ICI Ams., Inc.*, 264 Ga. 732, 736 n.6 (1994).

1374, 1383 (M.D. Ga. 2014) (quoting *Banks v. ICI Ams., Inc*., 264 Ga. 732, 736 (1994) (emphasis added).

"When faced with a summary judgment motion, plaintiffs 'have the burden to demonstrate a genuine issue of material fact that the product is defectively designed; to do this, they must produce evidence from an expert who is qualified to conduct the risk-utility analysis and to opine that the risks inherent in [the product's] design outweigh the utility or benefit derived from the product.'" *Bryant*, *supra*, at 1383 (quoting *In re Mentor Crop. ObTape Transobturator Sling products Liab. Litig*., 711 F. Supp. 2d. 1348, 1365 (M.D. Ga. 2010).

"In general, weighing the risk-utility analysis is left to the jury." *Bryant*, *supra*, at 1383. "Indeed, judgment as a matter of law 'will rarely be granted in design defect cases where any of [the] elements is disputed. To prevail at summary judgment, a defendant must 'show plainly and indisputably an absence of any evidence that a product as designed is defective.'" *Ibid*. (Quoting *Ogletree v. Navistar Int'l Transp. Corp*., 271 Ga. 644, 646 (1999)).

A.   **Summary judgment is proper because Plaintiffs do not identify a specific design defect. Without evidence of a specific design defect, Plaintiffs cannot establish the chosen design was unreasonable.**

Summary judgment is appropriate because Eshraghi does not identify a specific design defect and this failure precludes Plaintiffs from arguing, let alone establishing, the pressure cooker's design outweighs its benefits. This is because a product is only defectively designed if the risks inherent in the design outweigh the utility or benefit derived from the product. *Banks*, *supra*, at 736. Without identifying the specific design flaw, Plaintiffs cannot establish a risk exists in the pressure cooker's design, and the jury cannot weigh the (alleged) risk created by the design against the pressure cooker's utility or benefits. In other words, the reasonableness of the design cannot be weighed without first identifying the specific flaw in the pressure cooker's design

because "[w]hen a jury decides that the risk of harm outweighs the utility of a <u>particular design</u> (that the product is not as safe as it should be), it is saying that <u>in choosing the particular design</u> and cost trade-offs, the manufacturer exposed the consumer to greater risk of danger than he should have. Conceptually, and analytically, this approach bespeaks negligence." *Id*. at 735. (Emphasis added).

> **B.**    **Summary judgment is proper because Eshraghi does not perform a risk-utility analysis nor is he qualified to conduct a risk-utility analysis.**

Eshraghi did not, and could not have conducted a risk-utility analysis, without first identifying the specific design flaw. Eshraghi merely opines the pressure cooker is defective because he was able to open it while pressurized. This opinion is not a risk-utility analysis. It does not address the design, what would make the design safer, identify any inherent risks in the pressure cooker, or address plaintiff's understanding of the pressure cooker, or discuss how common sense plays a role in precluding this type of accident. *See Banks*, *supra*, at 736, n.6. Instead, the opinion is solely premised on being able to force open the lid while ignoring the amount of force needed to open the lid and all other applicable risk-utility factors, especially plaintiff's understanding of how the pressure cooker works and common sense.

Moreover, Eshraghi's conclusion ignores his own understanding of what makes a pressure cooker reasonably safe and not defective. Eshraghi's acceptance of UL 136 as the standard for determining whether a pressure cooker is defective or not, necessarily also establishes that Eshraghi recognizes there are scenarios where the pressure cooker's lid can be forced off which do not establish a design defect. For example, UL 136 only provides a force up to 100 pounds, but Eshragi admitted he could utilize two hands to create force up to 200 pounds. Accordingly, claiming the pressure cooker is defective because it can be forced off – particularly when no

specific design flaw has been identified - fails to identify the design's risks and weigh them against the design's benefits.

Further, Eshraghi did not perform a risk-utility analysis because he is not qualified to perform any such analysis. *See* SOF ¶¶33-35; and Exhibit F. He has never been qualified by a Court as being an expert in pressure cooker design, or the risks or benefits of a given pressure cooker design. *See* SOF ¶97. Eshraghi's education and work experience as an engineer do not involve designing, testing or reviewing pressure cookers rather it involves work for airplanes. *See* SOF ¶¶91-96.  He has never worked or consulted for a pressure cooker manufacturer, retailor or distributor. *See* SOF ¶91. He has never performed a formal UL 136 test. *See* SOF ¶48. With respect to using a pressure cooker either as an expert or consumer, Eshraghi has never cooked a meal in a pressure cooker. *See* SOF ¶94. And he failed to provide any benefits the pressure cooker's design provided other than allowing meals to be cooked faster. *See* SOF ¶95. He provided no benefits the design creates in terms of safety, or risks for that matter. The benefit of speed does not relate to the design of the pressure cooker's lock. Instead, speed is a generic benefit all pressure cookers provide regardless of their lock's design because it is pressure which allows the food to cook faster. In short, Eshraghi lacks the ability to weigh the pressure cooker's risks against its benefits.

Eshraghi's limited experience testing pressure cookers for litigation is insufficient to render him a qualified expert in the area of pressure cooker design since he has no ability to perform a risk-utility analysis. For example, in *Folsom v. Kawasaki Motors Corp. U.S.A.*, 509 F. Supp. 2d 1364, 1374-75 & 1377-78 (M.D. Ga. 2007), Plaintiffs experts were not qualified to opine as to the risk-utility of a Kawasaki jet ski design that did not allow for off-throttle steering despite having significant experience in jet ski operation and alternative designs. Off-throttle steering refers to the fact that the jet ski cannot be maneuvered without applying the throttle, and therefore the user must

accelerate towards a hazard to steer away from the hazard. *Id.* at 1367. Kawasaki's jet ski was not designed for off-throttle steering because it utilized a jet pump, rather than a propeller, to generate power. Engaging the throttle allows the user to push water through the pump. Without power, the jet ski has little to no ability to maneuver. *Ibid.*

To support their design defect theory, the *Folsom* Plaintiffs retained Ronald Simner, an experienced jet ski operator, who owns a company that specializes in rudders to address the issue of off-throttle steering. *Id.* at 1374. "He holds United States patents on two types of rudders that he specifically designed for use on PWC [(personal watercraft)]. His first rudder design, WaveTrax, has been evaluated by nearly all PWC manufacturers and has been tested under two U.S. Coast Guard grants addressing Off-Throttle Steering Loss [] in Personal Watercraft. (Simner Rule 26 Report 3, Aug. 30, 2005.) Simner also has been a member of the SAE PWC Subcommittee since 2000, and participated in the development of the J2608 standard for PWC off-throttle steering." *Id.* at 1374-75. The Folsom Plaintiffs also retained Bradley Cuthbertson, a former professional PWC racer who has "developed safety courses for and lectured on safe [PWC] operation, and [has] worked with and consulted with a wide range of entities regarding the operation of [PWC], ranging from U.S. Coast Guard, to law enforcement agencies, to manufacturers . . . , to insurance companies, and attorneys." *Id.* at 1375.Simner and Cuthbertson performed collision avoidance testing and determined that the alternative design – with a rudder system – would have avoided the accident. *Ibid.*

Regardless of their qualifications, the Court concluded that neither expert was qualified to testify that the Kawasaki jet ski "contains a product defect because it cannot be steered once the throttle is released, or that . . . rudders are a viable solution to off-throttle steering loss." *Id.* at 1378. The Court reasoned there was no evidence that either expert had the ability to perform a

risk-utility analysis of the jet ski's design. *Ibid.* "There is no evidence that either Simner or Cuthbertson possess <u>the knowledge</u>, skill, experience, training, or education necessary <u>to compare the off-throttle steering design to the rudder-equipped model</u> and conclude that off-throttle steering makes the Jet Ski "simply so dangerous that it should not have been made available at all." (Emphasis added).

Comparing *Folsom* to the instant case is helpful. First, the barred experts in *Folsom* had more general experience and knowledge with jet skis than Eshraghi has with pressure cookers. Second, similar to the unqualified experts in *Folsom*, Eshraghi lacks the qualifications to compare one pressure cooker's design against the Tristar pressure cooker design, and Eshraghi - tellingly – does not even attempt to make any such comparison. His "experience" with pressure cookers is derived from speaking with his former supervisor who advised him how to perform pressure cooker tests and how to form his reports. *See* SOF ¶98-99. But learning how to conduct tests to measure temperatures, forces upon lids, and the functionality of the locking elements does not pertain to knowledge of a pressure cooker's design and comparing that design to the risks they create. *See Folsom*, *supra*, at 1377. ("[Plaintiffs'] argument is that anyone who would use the methodology that [Simner and Cuthbertson] used must [] be qualified[]" to render the opinion that off-throttle steering is a defective design feature of the 1998 900STX Jet Ski. This argument clearly ignore[s] the conceptual distinction between an expert's qualifications and the reliability of his proffered opinion."). *See also Grieco v. Tecumseh Prods. Co.* 2013 U.S. Dist. Lexis 152405 (S.D. Ga. 2013) at *4-9 (barring plaintiff's mechanical engineer from providing opinions regarding the design of a compressor unit used in a walk-in cooler because, although he had practical experience with maintenance of compressor systems, "nothing about his experience gives him the knowledge or skill necessary to testify about compressor design, much like riding a jet ski did not give the

supposed experts in *Folsom* the knowledge or skill necessary to design one."); *Walker v. CSX Transp., Inc.*, 650 F.3d 1392, 1397 n.19 (11th Cir. 2011) (holding expert opining bulkhead door's locking system was defective was properly barred since he was unqualified to proffer the opinion because, *inter alia*, "he had no experience or training to as to the design or manufacture of bulkhead doors or analyzing the materials used to construct, operate, or secure a bulkhead door system . . . .").

### C.    Summary judgment is proper because there is a complete absence of evidence that the pressure cooker as designed is defective.

First, without identifying a specific design flaw or conducting a risk-utility analysis, there is a complete absence of evidence that the pressure cooker as designed is defective.

Second, the testing performed by Eshraghi and Giachetti establish there is no evidence of a design defect in a Tristar Y6D-36 pressure cooker when in its original condition at the time of manufacture. To prove a defect, Eshraghi was required to test a unit that was not damaged because the subject unit's damage impacted the ability of its lock. Giachetti's opinion that the pressure cooker's lock was degraded is undisputed and therefore should be accepted by the Court. *See United States v. McCray*, 2021 U.S. Dist. Lexis 199082 at *77 (N.D. Ga. 2021) ("the Court is not free to disregard without adequate reasons the undisputed expert opinion that McCray suffers from significant cognitive deficiencies such that he likely could not assist his lawyer at trial without accommodations."); *see also* Federal Rule of Civil Procedure 56; *Schilling v. O'Day*, 2011 Ga. State Lexis 248 at *5 ( Fulton County State Court 2011) (granting defendant's motion for summary judgment because the undisputed expert opinion established plaintiff's injury was caused by glaucoma, not medical malpractice); *In the Complaint of Arden A. Johnson*, 2006 U.S. Dist. Lexis 1027 at *13 (S.D. Ala. 2006) (denying summary judgment because unchallenged expert opinion created genuine issue of material fact).

Giachetti's testing of exemplar units – which had working locks - explains why those units passed UL 136, but the subject unit only withstood 40-45 pounds of force. If a design defect exists, the defect would exist in all Y6D-36 units. Thus, the subject unit's broken lock explains why it could not withstand 100 pounds of force but exemplar units tested by Giachetti and UL pass. Accordingly, Eshraghi's testing confirms Giachetti's opinion regarding the efficacy of the broken lock and that there is no evidence of a defect. The record establishes the Y6D-36 pressure cooker passes UL 136 unless the lock is broken.

### D. Summary judgment is proper because an unforeseeable misuse, and not a defect in the pressure cooker, was a proximate cause of the accident.

Summary judgment is warranted because there is no evidence that the pressure cooker's lock was in the same condition on the day of the accident as it was when sold. Both Eshraghi and Giachetti agree that the condition of the locking tab proves the unit was successfully forced open at some prior point in time, but neither expert could opine when this event occurred. *See* SOF ¶50; *see also* Dr. Giachetti's 6.28.23 report at 14; 21. Thus, if Plaintiffs forced open the lock before the accident it was not in the same condition as it was when sold.

Alternatively, Plaintiffs forced open the unit on the day of the accident which is not evidence that that the pressure cooker is not reasonably suited for its intended use. O.C.G.A. §51-1-11(b)(1). The pressure cooker is intended to be opened only when all pressure has dissipated. If the unit is difficult to open the unit is still pressurized. When the unit is not pressurized, the user will not feel any resistance and the unit can be opened with one hand.

Instead, a pressure cooker opened while still under pressure is an unforeseeable misuse that is not foreseeable to Tristar. *See also Woods v. A.R.E. Accessories*, 345 Ga. App. 887, 891 (Ct. App. 2018) (granting summary judgment due to unforeseeable misuse because "a product manufacturer has no duty to design or warn against harm caused by an unforeseeable misuse of its

product, and a product that causes harm as a result of unforeseeable misuse is not defective."); *see also Thornton v. E.I. Du Pont De Nemours and Co., Inc*., 22 F.3d 284, 288 (11th Cir. 1994) ("Product misuse is defined as use of a product in a manner that could not reasonably be foreseen by the defendant. Misuse of a product may bar recovery against the manufacturer where misuse is the sole proximate cause of damage, or where it is the intervening or superseding cause. A manufacturer is not liable for injuries resulting from abnormal use of the product.").

Tristar testified it expects consumers to follow the instructions in the owner's manual, and the owner's manual instructs users to not force open the lid while pressurized. *See* SOF ¶85-87. The owner's manual instructs users to read it prior to using the pressure cooker, and Plaintiff admitted he read the owner's manual thoroughly prior to using the pressure cooker on the date of the accident. *See* SOF ¶82-83. The owner's manual instructs users to "do not open the Power Pressure Cooker XL until the unit has cooled and all internal pressure has been released. If the unit is difficult to open, this indicates the cooker is still pressurized – do not force it open." *See* SOF ¶86. This warning is repeated on the same page – "NEVER FORCE OPEN" – followed by a step-by-step process if the pressure cooker needs to be suddenly opened. *See* SOF ¶87.

Plaintiff Sheryl Copeland testified she read the warnings contained in the owner's manual to not force open the lid, and confirmed she knew not to do that from her prior experience with pressure cookers and common sense. *See* SOF ¶88. She knew from her prior experience that when the pressure is released, she could open the unit with one hand and would not feel any resistance. *See* SOF ¶89. She also testified that her husband knew not to force open the lid. *See* SOF ¶90. Thus, failure to follow the owner's manual is unforeseeable to Tristar – both generally and in this case specifically - since forcing open the unit violates the owner's manual, Plaintiff's experience

with the unit, including her knowledge of how easy the unit is to open when no pressure remains, and common sense. *See* SOF ¶¶88-90.

Furthermore, the misuse in this case is the sole proximate cause of the accident. The pressure cooker's design passes UL 136 and therefore is not defective. Plaintiff's use of over 100 pounds of force to open the unit, is evidence of misuse causing the injuries, not a product defect.

## IV.    Plaintiffs have no evidence to support a punitive damages claim because Tristar's pressure cooker passed UL 136 and complied with industry standards.

Under Georgia law, "the term 'punitive damages' is synonymous with the terms 'vindictive damages,' 'exemplary damages,' and other descriptions of additional damages awarded because of aggravating circumstances in order to penalize, punish or deter a defendant. *See* § O.C.G.A. 51-12-5.1(a). A Plaintiff is only entitled to punitive damages when it is proven by "clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." *See* § O.C.G.A. 51-12-5.1(b). A party's negligence, even gross negligence, is insufficient to support an award of punitive damages. *See Troutman v. B.C.B. Co., Inc*., 209 Ga. App. 166, 168 (1993). Punitive damages are a derivative claim and may only survive if the underlying tort claims survive. *Lewis v. Meredith Corp*., 293 Ga. App. 747, 750, (2008).

Punitive damages are generally inappropriate where a defendant complied with industry-wide practices, the state of the art, or federal regulations. *See Barger v. Garden Way, Inc*., 231 Ga. App. 723, 728 (Ga. Ct. App. 1998) (citing *Stone Man, Inc. v. Green*, 263 Ga. 470, 471-72 (1993)). *See also Bryant v. BGHA, Inc*., 9 F. Supp. 3d 1374, 1396 (M.D. Ga. 2014) "This is because such compliance does tend to show that there is no clear and convincing evidence of willful misconduct,

malice, fraud, oppression, or that entire want of care which would raise the presumption of [a] conscious indifference to [the] consequences." *Barger, supra*, at 728.

While an award of punitive damages is not precluded "where, notwithstanding the compliance with applicable safety regulations, there is other evidence showing culpable behavior," see *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 447 (Ga. Ct. App. 1994), *abrogated on other grounds*, 269 Ga. 191 (Ga. 1998), imposing liability despite compliance with industry or federal regulations has been limited to "narrow exceptions*." See Hernandez v. Crown Equip. Corp*., 92 F. Supp. 3d 1325, 1356 (M.D. Ga. 2015). For example:

> a punitive damages award against General Motors was upheld despite its compliance with safety standards because there was evidence that it had rejected safer designs for the fuel tanks on its full-sized pickup trucks because of economic considerations. *General Motors Corp. v. Moseley*, 213 Ga. App. 875, 884—85, 447 (1994), *abrogated on other grounds by Webster v. Boyett*, 269 Ga. 191, 196 (1998). Likewise, a tire manufacturer's motion for summary judgment on a punitive damages claim was denied because, even though it complied with the relevant federal safety standards, there was evidence it knew of separation defects with its tires' treads, had "refused to implement simple, relatively inexpensive solutions" because of profit margin concerns, and other tire manufacturers had adopted the safer designs. *Mascarenas v. Cooper Tire & Rubber Co*., 643 F. Supp. 2d 1363, 1374 (S.D. Ga. 2009).

*Hernandez, supra*, at 1356.

"The Georgia Court of Appeals has also indicated, in dicta, that 'evidence that the manufacturer engaged in a deliberate course of conduct which knowingly endangered those using the product" would be sufficient to overcome the rule.' *Ibid*. (Quoting *Uniroyal Goodrich Tire Co. v. Ford*, 218 Ga. App. 248, 254—55 (1995), *rev'd in part on other grounds by Ford v. Uniroyal Goodrich Tire Co*., 267 Ga. 226 (1996).

Compliance with safety regulations will also not shield a distributor from a punitive damages claim if those standards "merely reflect an industry's laxness, inefficiency, or inattention to innovation." *Elliot v. Brunswick Corp*., 903 F.2d 1505, 1508 (11th Cir. 1990). Furthermore, the eleventh circuit has "repeatedly held that the issue of punitive damages should not go to the jury when a manufacturer takes steps to warn the plaintiff of the potential danger that injured him; such acts bar a finding of wantonness." *Richards v. Michelin Tire Corp*., 21 F.3d 1048, 1059 (11th Cir. 1994).

Here, UL tested the subject pressure cooker to UL 136 prior to selling the pressure cooker, and it passed. *See* SOF ¶19. UL's finding that the pressure cooker passed UL 136 negates Plaintiffs' ability to prove willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences by clear and convincing evidence.[3] This is particularly true since it undisputed amongst the parties that passing UL 136 – the applicable industry standard – establishes the pressure cooker is not defective.

While punitive damages are warranted when a defendant has knowledge of a defect but persist with the defective design for financial reasons, there is no evidence in this case that Tristar knew of a design defect and refused to improve the design because of financial considerations. *Hernandez*, *supra*, at 1356. Instead, Tristar testified – through its corporate representative Alex Lozano – that Tristar tested units it received from customers following complaints and could never replicate the customer's accident, similar to Eshraghi's inability to remove the pressure cooker with one hand during his testing. *See* SOF ¶25-30. Furthermore, Tristar engaged SEA – a third

---

[3]  Eshraghi's unreliable opinion that the pressure cooker does not pass UL 136 is not a basis for imposing punitive damages against Tristar because that opinion post-dates Plaintiffs' accident. Prior to Plaintiffs' accident, UL concluded the pressure cooker passed UL 136.

party engineering firm – to review the pressure cookers and no defects were ever identified. *See* SOF ¶27. These facts stand in stark contrast to the conduct by the defendants in *Moseley, Mascarenas*, or *Uniroyal* where punitive damages were either allowed to be decided by a jury or upheld as matter of law despite defendants' compliance with various safety regulations.

Here, there is no evidence Tristar's design was defective nor is there evidence an alternative design existed that needed to be compared to Tristar's design.[4] *See Hernandez, supra*, at 1356-57 (punitive damages were not warranted because defendant's decision to stay with the original design was reasonable – despite the present design creating risk (and over 700 prior accidents) - given the risks associated with other designs). The record establishes no improper motivation for selling the pressure cooker existed and therefore the elements of a punitive damage claim cannot be satisfied as a matter of law.

Finally, Tristars owner's manual instructs users how to operate the pressure cooker and not to force open the unit while pressurized. Because Tristar warned of the danger that harmed Plaintiff, punitive damages are inappropriate because the warning negates Plaintiffs' ability to establish that Tristar acted maliciously or with extreme indifference to a risk of harm.

---

[4]    The record also reveals Tristar performed various quality control procedures, or had other entities perform quality control, prior to selling the pressure cooker. The pre and post-sale evidence reveals Tristar utilized multiple forms of safety checks and quality control, and its conduct was the antithesis of willful or wanton conduct, malice, fraud or conscious indifference to likely danger. *See* SOF ¶2-19; 22-26.

Respectfully submitted, this 20th day of February, 2024.

/s/ Sanjay Ghosh
Sanjay Ghosh
Georgia Bar No. 141611
Steven H. Campbell
Georgia Bar No. 161457
NELSON MULLINS RILEY & SCARBOROUGH
LLP
201 17th Street NW | Suite 1700
Atlanta, GA 30363
(404) 322-6000
(404) 322-6050 (fax)
sanjay.ghosh@nelsonmullins.com
steven.campbell@nelsonmullins.com

David S. Osterman
Thaddeus J. Hubert, IV
GOLDBERG SEGALLA
301 Carnegie Center Drive | Suite 200
Princeton, NJ 08540
(609) 986-1386
(609) 986-1301 (fax)
dosterman@goldbergsegalla.com
thubert@goldbergsegalla.com

*Attorneys for Defendant Tristar Products, Inc.*

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the within and foregoing **DEFENDANT TRISTAR PRODUCTS, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court utilizing the CM/ECF electronic filing system which will automatically send notification of such filing to all attorneys of record listed below, who are registered participants in the Court's electronic notice and filing system.

W. Carl Reynolds, Esq.
creynolds@rmtriallaw.com
Marty K. Senn, Esq.
msenn@reynoldsinjurylaw.com
Michael G. Horner, Esq.
mhorner@reynoldsinjurylaw.com
REYNOLDS, HORNE & SURVANT
6320 Peake Road
P.O. Box 26610
Macon, GA 31210

*Attorneys for Plaintiffs Edward A. Copeland
and Sheryl Copeland*

This 20th day of February, 2024.

/s/ Sanjay Ghosh
Sanjay Ghosh
Georgia Bar No. 141611
Steven H. Campbell
Georgia Bar No. 161457
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street NW | Suite 1700
Atlanta, GA 30363
(404) 322-6000
(404) 322-6050 (fax)
sanjay.ghosh@nelsonmullins.com
steven.campbell@nelsonmullins.com

*Attorneys for Defendant Tristar Products, Inc.*