# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| EDWARD A. COPELAND AND SHERYL COPELAND, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TRISTAR PRODUCTS, INC., and ABC, INC., | ) ) ) ) |
| Defendants. | ) |

Case No: 5:22-cv-00212-CAR

## TRISTAR PRODUCTS, INC.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1. Plaintiffs allege they were injured due to a defectively designed Tristar PPC780 pressure cooker when the lid exploded off of the base of the pressure cooker causing hot liquid and steam to burn them. See Plaintiffs' complaint, attached hereto as **Exhibit A**.

2. Tristar distributed the PPC 780 pressure cooker after being approached by a third-party vendor by the name of Cheer Master. See Alex Lozano deposition transcript at page 50:17-19, attached hereto as **Exhibit B**.

3. Cheer master advised TriStar that they had a factory that could make the 770.[1] Id. at 49:4-13.

4. Cheer Master has their own engineering team and advised Tristar how the pressure cooker would be manufactured in China. Tristar inspected the factory and audited the factory to determine it was capable of making the pressure cooker. Id. at 51:20 – 52:14.

5. Tristar audited the factory Cheer Master wanted to use to ensure that the appropriate manufacturing practices were in place and that best practices were followed. Id. at 53:2-14.

6. An audit includes reviewing the factory's inspection procedure, warehouse management, testing procedures and equipment calibration records. Id. at 53:15-19.

7. Tristar performed this audit of the factory in the 2011 timeframe prior to any sale of the unit. Id. at 54:11-13.

---

[1] The 770 was sold first. The 780 is simply a larger version of the 770. See SOF ¶13.

8. Prior to deciding on selecting the manufacturer ("Blossom"), Tristar reviewed three additional factories before giving Blossom the go-ahead to start manufacturing the pressure cooker. Id. at 56:17-25.

9. No pressure cookers were made for Tristar until the audit process was complete. Id. at 56:11-16.

10. After Blossom began manufacturing the pressure cookers, Tristar had another manufacturer, Leeper, also make some pressure cooker units. Leeper became involved after Tristar went through an initial audit and compliance check with Leeper just as it did for Blossom. Id. at 59:2-12 and 61:9-13.

11. After the factories were selected, testing of the units continued to be done during the manufacturing process to ensure quality. Tristar had the factories perform ongoing reliability testing meaning that they verify the unit's capabilities and means of control. This would include testing the thermostat and other operations that control the temperature and operation of the unit. Id. at 61:14 – 62:1.

12. These tests would be performed by the manufacturer and supervised by Tristar. Id. at 62:2 to 5.

13. After Tristar began having the factories make the PPC 770, they began manufacturing a larger unit, the PPC780. When the 780 went into production Tristar repeated the audit and inspection process that it required the factory to for the PPC 770. Id. 68:4-18.

14. Tristar had to make sure that the unit was retested so that it could be certified by Intertek as meeting their manufacturing requirements. Id. at 68:4 – 69:7.

15. Intertek is a third-party quality testing company that a manufacturer and distributor can provide products to ensure it complies with voluntary safety standards. Id. at 32:12 - 21.

16. Intertek will then certify the product complies with the relevant safety standard and allow the manufacturer or distributor to put their mark on the product to show consumers that it satisfies the Intertek testing requirements. Id. at 34:4-8.

17. Additionally, Tristar did its own testing to verify that the pressure cooker met the safety requirements. Id. at 34:9-14.

18. The Intertek mark alerts the consumer that the pot has been through numerous steps for quality assurance. Id. at 63:12-16.

19. Another third-party company, Underwriter Laboratories, also inspected and tested the pressure cooker. Underwriter Laboratories certified that the PPC 780 passed the tests known as UL 136 and UL 1026. Id. at 70:3-14. See Certification of Compliance from Underwriters Laboratories stating that the pressure cooker passed UL 136 and UL 1026, attached hereto as **Exhibit C**.

20. Plaintiff's expert, Dr. Eshraghi, admitted that if a pressure cooker passes UL 136 it is reasonably safe and is not defective. See Dr. Eshraghi's deposition at 32:9-12; 46:14 – 47:19, attached hereto as **Exhibit D**.

21. UL 136 tests whether a pressure cooker lid will remain connected to the body of the pressure cooker while 100 pounds of force is exerted on the lid. See UL 136, section 9, cover opening test, attached hereto as **Exhibit E**.

22. Additionally, Tristar testified that Intertek performed testing of the lock and lid. See Exhibit B at 185:10-22.

23. Prior to shipment, Tristar engaged a third-party quality assurance company, called Pro QC. Pro QC does engineering services and they perform pre-shipment inspections to verify that the specifications are accurate before a product is sent to the marketplace. Id. at 19:5-15.

24. Pro QC's inspections relate to aesthetics and product functionality. Id. at 19:16 – 20:1. During its review of the units, Pro QC would perform testing on the Tristar pressure cooker and operate the unit to verify that it works properly. Id. at 76:5 – 81:8.

25. After the pressure cookers began to be sold, Tristar did receive complaints of the lid separating from the pressure cooker. However, when Tristar tested the unit and attempted to force the lid open they were only able to do so when there was not enough pressure inside to expel the contents. Id. at 110:4-9.

26. Tristar also witnessed the factory perform tests where it attempted to force open the unit which were unsuccessful i.e., no explosion occurred. Id. at 110:4 to 111:22.

27. After Tristar began receiving customers complaining of the lid coming off the unit, Tristar engaged a third-party engineering firm called SEA to inspect and test the unit. SEA could not identify or determine a scenario that replicated the customer's complaints. Id. at 128:14 – 129:18.

28. Tristar was never able to replicate an incident or explosion and concluded it could not determine what the user was really doing or what happened. Id. at 156:7 – 157:2.

29. Thus, it was Tristar's conclusion that they did not see a defect in the unit, the unit worked as intended and therefore could not verify the customers' complaints. Id. at 157:12-16.

30. Tristar explained they never determined how people were getting injured because they could not find a defect. Id. at 158:9-13.

31. Dr. Eshraghi opines that the PPC780 is defectively designed. He does not opine that the pressure cooker contains a manufacturing defect or warnings defect. See deposition transcript of Dr. Eshraghi at 58:22 – 59:14.

32. Dr. Eshraghi concludes the PPC780 is defectively designed because the pressure cooker's lock should prevent any ordinary human from overcoming the lock while the unit is under

3

pressure. Because he was able to overcome the lock, the pressure cooker is defective. Id. at 59:19 – 60:1.

33. Dr. Eshraghi does not identify in his reports the specific design flaw that makes the PPC 780 defective. See expert reports of Dr. Eshraghi, attached hereto as **Exhibit F**.

34. Dr. Eshraghi has no opinions as to how the lock should be designed. See Exhibit D at 105:10-12.

35. Dr. Eshraghi does not opine that any alternative design should be utilized. Id. at 105:13-16.

36. Dr. Eshraghi admitted that his theory of defect can only cause an injury when the pressure cooker is pressurized. Id. at 105:24 – 106:3.

37. For the pressure cooker to be pressurized, an object known as the float valve must be in the "up" position. Id. at 106:18 – 107:4.

38. When the float valve is in the down position, there is no pressure in the unit and no explosive event can occur. Id. at 40:3-9.

39. Dr. Eshraghi admitted all of his opinions are dependent upon the user attempting to remove the lid while the unit is pressurized. Id. at 106:18 – 107:10.

40. Plaintiff Edward Copeland responded to Tristar's request for admissions on November 15, 2022. See Plaintiff Edward Copeland's response to Tristar's request for admissions, attached hereto as **Exhibit G**.

41. Plaintiff Edward Copeland admitted that he "waited until the float valve dropped, before attempting to remove the lid." Id. at #15.

42. The float valve is a small cylindrical pin that is inside the pressure cooker's lid with a silicone gasket on the bottom, so when it gets pushed up by the steam, the pressure cooker is sealed allowing it to pressurize. See Exhibit D at a 34:33 – 35:24.

43. The float valve weights just a few grams. Id. at 35:25 – 36:11.

44. When the pressure begins to build in the unit, the pressure will push the float valve into the up position helping to lock the lid in place. Id. at 36:12-20.

45. When the pressure is gone inside the pressure cooker, gravity will bring the float valve back into the down position. Id. at 37:18-20; 43:3-18.

46. In addition to his conclusion that a pressure cooker is not defective if it passes UL 136, Dr. Eshraghi testified that he will not find a defect in a product if he cannot replicate what Plaintiff claimed occurred. Id. at 32:9-12; 24:2-11; 19:21-25.

4

47. Dr. Eshraghi admitted that he did not attempt to replicate or recreate what Plaintiff did in this case. <u>Id.</u> at 33:4-12.

48. Dr. Eshraghi did not perform a formal UL 136 test in this case. <u>Id.</u> at 30:20-22.

49. Instead, Dr. Eshraghi tested the subject unit using an analogous test to UL 136. <u>Id.</u> at 30:11-19.

50. However, the subject unit was forced open at some point in time prior to Dr. Eshraghi's test due to the presence of scratch over a locking tab. <u>Id.</u> at 55:20 – 56:25; 119:20 – 120:2.

51. Dr. Giachetti, Tristar's engineering expert, opines that forcing open the unit degrades the ability of the locking mechanism. <u>See</u> Dr. Giachetti's 6.28.23 report at 19-21, attached hereto as **Exhibit H**.

52. Dr. Giachetti explains that "because tolerances are small and material is lost on the locking tab when the lock is forcefully overcome . . . the loss in the distance the locking pin needs to travel around the locking tab . . . reduces the ability of the lock to withstand external opening force." <u>Id.</u> at 20.

53. Dr. Eshraghi has no opinion on whether forcing open the pressure cooker degrades the lock's ability to withstand external opening force. <u>See</u> Exhibit D at 125:11-21.

54. Dr. Eshraghi concluded the subject pressure cooker will open at 40-45 pounds, not 100 pounds. <u>Id.</u> at 69:15-20.

55. Dr. Eshraghi did not test any exemplar units. <u>Id.</u> at 66:21-25.

56. Dr. Eshraghi admitted he does not know if the reason he was able to open the pressure cooker at 40-45 pounds versus 100 pounds was because the lock had been already degraded from being forced open previously since he did not test any exemplar units. <u>Id.</u> at 121:5 – 122:10.

57. Plaintiff alleges that he cooked boneless chucked roast in the pressure cooker. He cooked it for 40-45 minutes, the cook cycle automatically ended, and Plaintiff waited 45 minutes before checking the contents of the pressure cooker. <u>See</u> Plaintiffs' answers to interrogatories at #2, attached hereto as **Exhibit I**.

58. Plaintiff then opened the pressure cooker with only his right hand touching the pressure cooker. <u>See</u> deposition transcript of Sheryl Copeland at 50:3-10; 51:19 – 52:10, attached hereto as **Exhibit J**.

59. While Dr. Eshraghi did not recreate the incident to see if an accident would occur, Dr. Giachetti did. Dr. Giachetti recreated Plaintiff's recipe and conduct and found that the pressure cooker was not pressurized after 45 minutes. <u>See</u> 6.28.23 Giachetti report at 19.

5

60. Dr. Eshraghi did admit that a user would probably need significant force to open the subject pressure cooker with just one hand while it was pressurized. See Dr. Eshraghi's deposition transcript at 125:22 – 126:2.

61. He admitted you would need two hands to open the unit. Id. at 126:3-12.

62. Dr. Eshraghi admitted that a person can exert up to 200 pounds of force by using two hands. Id. at 70:9-21.

63. Dr. Eshraghi also performed a test on the subject unit his backyard, where he was able to open the unit under pressure. However, he admitted this is not a U L136 test. Id. at 96:5-12.

64. During this "backyard" test, Dr. Eshraghi admitted he needed two hands to open the pressure cooker. Id. at 96:17 – 97:1

65. Dr. Giachetti testified that the tests Dr. Eshraghi testified performed do not analyze whether the pressure cooker's design satisfies UL 136. In other words, those tests are not scientifically valid for determining whether the pressure cooker passes UL136. See Dr. Giachetti's deposition at 189:8 – 190:8, attached hereto as **Exhibit K**.

66. Dr. Giachetti explained that the subject unit had a broken lock which degraded the lock's ability to withstand external opening force. Thus, testing the subject unit does not tell you whether the design is sufficient to pass UL 136. Id. at 188:23 – 190:8.

67. Dr. Giachetti testified that when UL performs the UL136 test, UL tests new units, not broken units. Id. at 190:6-8.

68. Dr. Giachetti testified the purpose for testing the subject unit was to understand how much force would be needed to open a unit with a degraded and broken lock. Id. at 198:17 – 199:2.

69. With respect to the "backyard test" performed by Dr. Eshraghi, Dr. Giachetti agreed with Dr. Eshraghi's testimony that the "backyard" test is not a UL136 test and is not scientifically valid to determine whether unit's design passes UL 136. Id. at 195:9-12; 192:7-13.

70. Dr. Giachetti opined the "backyard" test is not a UL 136 test because the water in the unit was not filled halfway, Eshraghi did not unplug the unit as soon as the float vale raised or allow it to pressurize until the timer starts for the cook cycle, and UL does not use two hands to attempt to open the lid, and the unit should be restrained by the handles on the base, which did not occur, and the unit was broken. Id. at 192:7 – 193:8.

71. With respect to the torque wrench test performed by Dr. Eshraghi and the force gauge test performed by Dr. Giachetti, Dr. Giachetti opined the pressure in the unit during these tests was so low that no explosive event could have occurred. Id. at 199:16 – 200:9; UL 9.1;9.5.

6

72. Dr. Giachetti testified that Eshraghi's torque wrench test does not inform us whether the design will pass UL 136 because the lock was broken. Id. at 198:17-22.

73. None of the testing performed by Eshraghi informs us whether the unit's design is sufficient to pass UL 136. Id. at 199:3-6.

74. The UL certificate does tell us that the unit's design passes UL 136. Id. at 199:7-9.

75. Dr. Giachetti performed UL 136 tests on exemplar units and they passed. Id. at 199:7-15.

76. Dr. Giachetti opined the pressure in the unit was less than one psi for the torque wrench and force gauge tests performed on the subject unit. Id. at 199:16-19.

77. The unit had less than one psi because Dr. Eshraghi and Dr. Giachetti unplugged the unit as soon as the float vale was raised, which occurs at about a quarter of a psi. Id. at 124:21 – 125:3; 99:11-16.

78. Dr. Eshraghi admitted that no explosive event can occur at less than 1 psi. See Dr. Eshraghi's deposition testimony, at 61:23 – 62:3.

79. Dr. Eshraghi admitted the float valve is raised at less than one psi. Id. at 61:18-22.

80. Dr. Eshraghi did not know how much pressure was in the unit when he performed his torque wrench test and when Dr. Giachetti performed his force gauge test on the subject unit. Id. at 60:20 – 61:2.

81. Dr. Giachetti opined that if the unit is only filled halfway – which follows UL 136 instructions – there is no risk of an explosive event and 45 pound of force is still needed to open the unit with a broken lock. See Exhibit K at 199:16 – 200:9.

82. The Tristar owner's manual instructs users to read it prior to using the pressure cooker. See owner's manual, at 1 (the cover page), attached hereto as **Exhibit L**.

83. Plaintiff Edward Copeland admitted he read the owner's manual thoroughly. *See* Exhibit G at #4.

84. Plaintiff Edward Copeland admitted he used the pressure cooker multiple times between 2016 and 2020, and that is operated as Plaintiff expected and intended. *Id*. at #8 & 9

85. Tristar testified that it expects consumers to follow the instructions in the owner's manual. *See* Exhibit B at 215:7-10; 213:6-8.

86. The owner's manual instructs users to not force open the lid and that if the unit is difficult to open, it is still pressurized. See Exhibit M at 3, under heading "Important Safeguards."

7

87. This warning is repeated with the language "never force open" the Power Pressure cooker XL. *Ibid*.

88. Plaintiff Sheryl Copeland testified she knew from her prior experience and common sense not to force open the pressure cooker. *See* Exhibit J at 87:23 – 91:9.

89. She knew from using the pressure cooker that when the pressure is released she would not feel any resistance and could open it with one hand. Id. at 52:17-21.

90. Plaintiff Sheryl Copeland testified that her husband knew not to force open the pressure cooker. *See* Exhibit J at 52:11-16.

91. Dr. Eshraghi has never worked for a pressure cooker manufacturer, distributor or a retailer that sells pressure cookers. *See* Exhibit D at 10:25 – 11:8.

92. Dr. Eshraghi has never designed a pressure cooker. Id. at 11:9-10.

93. Dr. Eshraghi has never worked for a company that performs quality control services for manufacturers or distributors of pressure cookers. Id. at 11:11-14.

94. Dr. Eshraghi has never owned a pressure cooker or used a pressure cooker to eat food. Id. at 11:15-19.

95. Dr. Eshraghi could not identify any benefits of using a pressure cooker other than speed. Id. at 11:25 – 12:7.

96. Dr. Eshraghi's professional work as an engineer does not involve pressure cookers. He works in the airplane industry. Id. at 13:25 – 14:4; 52:6-11.

97. No court has ever qualified Dr. Eshraghi as being an expert in the design of a pressure cooker. Id. at 14:5-7.

98. Dr. Eshraghi became involved in pressure cooker litigation after his former boss asked him to go to a pressure cooker inspection. Id. at 14:8 – 15:2.

99. Dr. Eshraghi's former boss educated Dr. Eshraghi different tests to perform and how to prepare reports. Id. at 15:7-15.

8

Respectfully submitted, this 20th day of February, 2024.

    */s/ Sanjay Ghosh*
Sanjay Ghosh
Georgia Bar No. 141611
Steven H. Campbell
Georgia Bar No. 161457
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street NW | Suite 1700
Atlanta, GA 30363
(404) 322-6000
(404) 322-6050 (fax)
sanjay.ghosh@nelsonmullins.com
steven.campbell@nelsonmullins.com

David S. Osterman
Thaddeus J. Hubert, IV
GOLDBERG SEGALLA
301 Carnegie Center Drive | Suite 200
Princeton, NJ 08540
(609) 986-1386
(609) 986-1301 (fax)
dosterman@goldbergsegalla.com
thubert@goldbergsegalla.com

*Attorneys for Defendant Tristar Products, Inc.*

**CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the within and foregoing **TRISTAR PRODUCTS, INC.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court utilizing the CM/ECF electronic filing system which will automatically send notification of such filing to all attorneys of record listed below, who are registered participants in the Court's electronic notice and filing system.

W. Carl Reynolds, Esq.
creynolds@rmtriallaw.com
Marty K. Senn, Esq.
msenn@reynoldsinjurylaw.com
Michael G. Horner, Esq.
mhorner@reynoldsinjurylaw.com
REYNOLDS, HORNE & SURVANT
6320 Peake Road
P.O. Box 26610
Macon, GA 31210

*Attorneys for Plaintiffs Edward A. Copeland
and Sheryl Copeland*

This 20th day of February, 2024.

> */s/ Sanjay Ghosh*
> Sanjay Ghosh
> Georgia Bar No. 141611
> Steven H. Campbell
> Georgia Bar No. 161457
> NELSON MULLINS RILEY & SCARBOROUGH LLP
> 201 17th Street NW | Suite 1700
> Atlanta, GA 30363
> (404) 322-6000
> (404) 322-6050 (fax)
> sanjay.ghosh@nelsonmullins.com
> steven.campbell@nelsonmullins.com
>
> *Attorneys for Defendant Tristar Products, Inc.*