**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **EDWARD A. COPELAND AND** **SHERYL COPELAND,** | |
| **Plaintiffs,** | **CIVIL ACTION NO. 5:22-cv-00212-CAR** |
| **vs.** | |
| **TRISTAR PRODUCTS, INC., and** **ABC, INC.,** | |
| **Defendants.** | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT TRISTAR**
**PRODUCTS, INC.'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Defendant Tristar, Inc. ("Tristar") has moved for summary judgment on all of Plaintiffs' claims. However, Tristar's motion only addresses claims regarding a design defect and punitive damages. Tristar does not move for summary judgment in regards to Plaintiffs' claims of a manufacturing defect, warning defect, and breach of warranties. (Doc. 1, ¶ 49-58; ¶ 75-79; ¶ 84-88; ¶ 93-99). Therefore, as a threshold matter, Tristar is not entitled to summary judgment on all of Plaintiffs' claims because those issues were not raised. As such, Plaintiffs will only address the arguments made by Tristar as to claims for design defect and punitive damages.

Tristar essentially argues that Mr. Copeland admitted that the pressure cooker at issue was not pressurized through a response to a request for admission. However, what Tristar is actually asking the Court to do is draw an inference that the pressure cooker was not pressurized because

Mr. Copeland admitted, in his response, that he waited until the float valve dropped before attempting to open the pressure cooker. This is simply an incorrect application of law and fact. Tristar also argues that there is no evidence that the pressure cooker was defective. In support of this assertion, Tristar argues that Plaintiffs' expert (Dr. Eshraghi) did not identify a specific design flaw and did not perform a risk-utility analysis. However, as demonstrated from Tristar's own testimony and documents cited herein, and testimony provided by both Plaintiffs and Dr. Eshraghi, there is ample evidence from which a jury can reasonably conclude that the subject pressure cooker was defective. For reasons explained below, Tristar's motion for summary judgment should be denied in its entirety.

## II.    REVIEW OF STATEMENT OF MATERIAL FACTS[1]

In 2016, Plaintiffs ordered the subject pressure cooker online that was designed, manufactured, marketed, and sold by Tristar. (Doc. 1). Over the next few years, Plaintiffs used the pressure cooker several times and became familiar with its operation. (*Id.*). On July 18, 2020, Plaintiffs were using the subject pressure cooker to cook a chuck roast. Upon completion of the cooking cycle, Mr. Copeland attempted to rotate the lid to the open position, and as soon as he began to turn the lid, it blew off. (Ex. A - Depo. of Sheryl Copeland p. 50, ll 8-10). As a result, the hot contents of the subject pressure cooker caused painful and disfiguring burns to Mr. Copeland's face, torso, neck, arms, hands, and to Mrs. Copeland's breasts, chest, hands, arms, and face. (Doc. 1, ¶¶ 16, 17, 20). Mr. Copeland had to undergo surgery to graph cadaver skin to his body and later endure procedures to debride and remove skin. (*Id.* at ¶ 17). Plaintiffs' medical bills total more than $225,000.00, and Plaintiffs contend the Tristar pressure cooker was defectively designed and/or suffered from a

---

[1] This in an overview of plaintiffs' response to defendant's statement of undisputed material facts and plaintiffs' statement of material facts that accompany this response pursuant to local rule 56.

manufacturing defect, had defective instructions and warnings, and that Tristar breached expressed and implied warranties issued to Plaintiffs. (Doc. 1). It was also alleged that because of its actions and/or inactions, Tristar is liable to Plaintiffs for punitive damages (Doc. 1 ¶¶ 68-70).

As established by the evidence, the subject pressure cooker was pressurized at the time of the explosive event. (Ex. B - Eshraghi Expert Report, p. 4; Ex. C – Giachetti Expert Report, p. 22; Ex. D – Depo. of Giachetti, p. 174, ll 7-8, p. 169, p. 110, ll 3-17; Ex. A, p. 50, ll 8-10). Plaintiffs did not use force to open the subject cooker (Ex. A, p. 50). For the reasons set forth below, Tristar's motion should be denied.

### III.   ARGUMENT AND CITATION OF AUTHORITY

#### A.  Legal Standard

The district court should not grant summary judgment unless "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Maddox v. Stephens*, 727, F.3d 1109, 1118 (11th Cir. 2013). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of a nonmoving party. *Grimes v. Miami-Dade Cty.*, 552 F. App'x 902 (11th Cir. 2014). Here, Tristar has the burden of establishing there is no genuine issue of material facts that should be decided at trial, and all facts are reviewed, and all reasonable inferences are drawn, in the light that is most favorable to plaintiff. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Where there is more than one inference that can be reasonably drawn from the facts and evidence, the issue is properly reserved for the finder of fact, and summary judgment should be denied. *WSB-TV v. Lee*, 842, F.2d 1266, 1270 (11th Cir. 1998).

Here Tristar simply asserts that summary judgment is proper by stating there is an absence of evidence. However, "[i]t is not enough to move for summary judgment… with a conclusionary assertion that the plaintiff has offered no evidence to prove his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986). Tristar has the burden of proving plaintiffs cannot carry the burden of proof at trial. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 607-608 (11th Cir. 1991).

**B. Plaintiffs' responses to requests for admissions do not conclusively establish that the pressure cooker was not pressurized at the time of the accident.**

The foundation of Tristar's entire argument rests on its contention that a response made by Mr. Copeland to a request for admission establishes that the pressure cooker was not pressurized at the time of the accident. Tristar wants this Court to conclude this establishes that there was no explosive event. However, Mr. Copeland's response does not admit there was no pressure in the cooker at the time of the subject incident. Tristar misstates both facts and law. The request for admission at issue asked Mr. Copeland to admit "[p]laintiff waited until the float valve dropped, before attempting to remove the lid." (Doc. 28, Ex. G, No. 15). Tristar contends that this admission concludes the issue of whether the cooker was pressurized at the time of the incident. However, at most, this admission concludes that Mr. Copeland <u>thought</u> that he waited until the float valve had dropped, which is evidence of the design defect alleged by Plaintiffs. In reality, what Tristar is asking the Court to do is draw an inference that because Mr. Copeland admitted that he thought the float valve had dropped, he is also admitting the cooker was not pressurized. Tristar's very simple analysis ignores the fact that the term "float valve" is not defined in the request and that a jury could conclude that other evidence shows Mr. Copeland could have simply been mistaken regarding whether the float valve had fully dropped. A jury could reasonably conclude he was mistaken and can weigh the evidence for itself. *Lee v. Smith & Wesson Corp.,* 160 F.3d 523, 527

(6th Cir. 2014). Regardless, this admission is not equivalent to an admission that the cooker was not pressurized.

The Eleventh Circuit Court of Appeals has addressed the scope and effect of admissions and the standard for review. While holding that the standard of review is an abuse of discretion standard, the court noted that ambiguity can exist in admissions and the trial court has the discretion to determine the exclusive effect of those admissions. *Johnson v. DeSoto Board of Commissioners*, 204 F.3d 1335 (11th Cir. 2000). The court noted that the conclusive effect of an admission may not be appropriate where requests or the responses are subject to more than one interpretation, that issues change as the case develops, and the relevance of discovery responses are related to their context in the litigation. *Id.* at 1340-41. (citing *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1210 (8th Cir. 1995).

This issue was also addressed in *Talley v. United States of America*, 990 F.2d 695 (1st Cir. 1993). *Talley* involved a dispute over an estate's tax liability and the court addressed the conclusive effect of a request for admission that was deemed admitted by the government's failure to respond. *Id.* The request at issue asked the government to "[a]dmit the payment of Nine Hundred Seventy-seven ($977.65) Dollars and 65/100 by John Talley concerning a Notice with Tax Due dated November 29, 1984, constituted full payment of the balance due on the estate of Percy Talley as set forth in that notice." *Id.* at 699. The court stated that the request was an invitation to confusion and misstates, by implication, the gist of the notice. *Id.* The request would allow one reader to think the admission would concede that the estate had in fact paid the amount set forth in the notice and another reader to think that it would concede the notice correctly stated the estate's tax liability. *Id.* The court found the second reading asked the government to "admit a point that the government could not ever intentionally concede since – apart from inaccuracy - it would give away the

lawsuit." *Id.* The court held "[t]o the extent that the question is ambiguous, that ambiguity is to be construed against *Talley* (whose lawyer drafted the request)." *Id.* The court further stated that "to the extent that common sense is a guide to construction, a reading that trivializes the request is preferred to one that renders the request as absurd… and treating the government as bound by its admission of the request, we believe it admitted only what it never denied: that the $977.65 payment corresponded to the amount set forth in the notice." *Id.*

The Third Circuit has also addressed this issue in an action alleging conversion of a trust fund by corporate officers of a defendant. *Ark-Tenn Distributing Corp. v. Breidt*, 209 F.2d 359 (3rd Cir. 1954). There, plaintiff sued officers of the company alleging the company had defaulted on a contract, and that the officers converted funds. *Id.* Plaintiff asked, through a request for admission, that defendants admit they were officers of the corporation, which they admitted, and objected to the court allowing evidence that the officers did not participate in the management of the company after they admitted they were officers of said company. *Id.* at 360. However, the court found that the defendants only admitted they were officers, and held that an admission that one is an officer of a corporation is a far cry from admitting that one is active in its corporate affairs. *Id.* The court denied plaintiff's attorneys attempt to extrapolate an inference from the admission. Requests for admissions of a fact that relate to a "half truth" are improper and the party making a response to a request for admission of fact under Rule 36(a) "is not deprived of the right to explain, clarify, or elucidate concerning the subject-matter thereof… [and he] may do so either in the response made to requests or by examination or cross-examination of witnesses produced at the trial." *Knowlton v. Atchinson, T&S.F.RY. Co*., 11 F.R.D. 62 (W.D. Missouri 1951).

Here, Tristar's request to admit at issue is a prime example of the gamesmanship and half-truths described above. Plaintiffs' admission is nothing more than an admission that he thought he

had waited until the float valve dropped. However, Tristar's request is a loaded question. Had Plaintiff denied this request, Tristar undoubtedly would have urged this Court to infer from that response that Plaintiff misused the cooker. Mr. Copeland's admission that he thought the float valve had dropped does not equate to a conclusive admission that the pressure cooker was not pressurized at the time of the accident. As explained above, Plaintiffs are allowed to explain and clarify that response through other evidence, and there is ample evidence that a jury may consider to conclude that Mr. Copeland was simply mistaken and the cooker was in fact under pressure. Such a finding would be supported by all of the evidence available, including Tristar's own expert's opinion and testimony. (Ex. C, p. 22; Ex. D, p. 174). Dr. Eshraghi also opines that the cooker was under pressure at the time of the incident and that Mr. Copeland simply could have been mistaken about the float valve due to the design of the pressure cooker, which is part of the ultimate issue. (Ex. B, p. 4). In fact, Dr. Eshraghi was asked about the request for admission at issue and he testified "that's what they say [b]ut I don't know if they know what they are talking about or if he could see it well (Ex. E - Depo. of Eshraghi, p. 108, ll 21-25).

Dr. Eshraghi also testified that the time in which the float valve can drop varies between 45 and 55 minutes, and regardless he assured the cooker was pressurized. (*Id.* at 9. 111-112) Dr. Giachetti also testified that if Plaintiffs were mistaken or off on some of their timing, the cooker could have been pressurized. (Ex. D, p. 104). Finally, Alex Lazano, Tristar's corporate representative, who is also a mechanical engineer, testified that the float valve is recessed and that you have to look down into the handle to see if the valve is up or down. (Ex. F - Depo of Alex Lazano, p. 218, ll 8-15). The float valve is the same color as the surroundings in which it is housed and the distance in travel between the up and down position is only about an 1/8 of an inch. (*Id.* at p. 217). Importantly, Tristar testified that the purpose of the float valve is to allow the cooker to

pressurize, not to alert the user as to whether the cooker is pressurized. (Ex. F, p. 220, ll 5-14). All evidence that is only proper for a jury to consider.

The ambiguity and possibility of multiple interpretations is further highlighted in both Mrs. Copeland's deposition and footnote 1 of Tristar's brief. Mrs. Copeland testified that:

> A. And the pin – When the valve drops the pin goes in (indicating).
>
> Q. So the – Oh, okay. So in other words, the position of the pin is related to that float valve?
>
> A. Yeah. That's part of the locking system.
>
> Q. Okay. And so did you typically make an observation to confirm that the float valve was down before opening?
>
> A. Well, it's kind of hard to see that part of it because it's down inside of a hole. So it's really not that visible seeing that, but the pin itself.
>
> Q. And you can see that the pin is in a different position when it drops down?
>
> A. When the valve is up where the pressure is on it, you can't move this pin.

(Ex. A, p. 96, ll 2-19). As explained in footnote 1 of Tristar's brief, Mr. Copeland checked the side of the pressure cooker where the locking pin was located, not what Tristar called the float valve. The pin was no longer sticking out, leaving Mr. Copeland to believe there was no steam/pressure inside the pressure cooker. (Doc. 28, p. 6, n. 1). This evidence shows that the Copelands may have been confused about the locking pin on the side of the pressure cooker lid and how it interacts with the float valve. A jury could conclude that Mr. Copeland thought because the locking pin was in, that meant the float valve was down. Tristar wants this Court to make a leap from this admission to conclude Mr. Copeland admits the cooker was not pressurized, which he cannot concede because it is undisputed that the cooker was pressurized. As stated above, common sense should

be a guide to construction, and Tristar's extrapolation of this admission is absurd according to *Talley*. As such, Tristar's motion on these issues should be denied.

### C. There is ample evidence that a reasonable jury could consider to conclude Plaintiffs injuries were proximately caused by the cooker's defects.

Tristar contends that Plaintiffs have not met their burden of proving the cooker was defective or that the defect proximately caused their injuries. This Court has recognized that Georgia law is clear that expert testimony is not always required to establish proximate cause in products liability cases where jurors are capable of determining whether injuries were caused by alleged defects in a product based on their own experiences. *Williams v. Tristar Products, Inc.*, 418 F.Supp. 3d 1212, 1228 (M.D. Ga. 2019). In *Williams*, this Court further stated that "[u]nlike factual cause, true proximate cause has nothing to do with factual issues of cause and effect… [and] [i]t is sufficient if, in ordinary prudence, the defendant might have foreseen that some injury would result from his act or omission." *Id.* at 1228. "When a negligent act so operates upon a normal situation of prudently conducted activities as to produce through it an injury which, according to the law of ordinary human probability, would not otherwise have happened, and no other wrongful act is found among the nearby activity which have joined in bringing about the injury, the negligence act is be regarding as the sole and proximate cause of the injury" *Williams*, 418 F.Supp.3d at 1228 (quoting *Atlantic Coast Line R. Co. v. Daniels*, 8 Ga. App. 775, 778 (1911). Furthermore, in Georgia "it is axiomatic that questions regarding proximate cause are undeniably a jury question and may only be determined by the courts in plain and undisputed cases. *Williams*, 418 F.Supp.3d at 1228 (citing *Sanders v. Lull International, Inc.*, 411 F.3d 1266, 1271 (11th Cir. 2005). *Sewing Machine v. Smith*, 275 Ga. 683, 687 (2002).

Here, Plaintiffs have presented evidence that a jury may consider to conclude their injuries were proximately caused by the defect in the pressure cooker. Mrs. Copeland testified that Mr. Copeland had burns to his lip, above his lip, on his chin, under his chin, on both of his arms, on his stomach, and chests. (Ex. A, p. 65 ll 1-6). She also testified that when the lid blew off all the contents in the pot blew all over her and Mr. Copeland and struck her on the side of her head, her hands, breasts, and upper abdomen. (*Id.* at p. 54, ll 9-17). Dr. Eshraghi also opines, in his report, that the subject pressure cooker had design flaws that allowed its lid to open under pressure to cause the injuries sustained by Plaintiffs. (Ex. B, p. 10; Ex. E, p. 58). Tristar's own expert testified "[i]f you look at their injuries, it is likely that there was some pressure in the pressure cooker." (Ex. C, p. 105, ll 2-3). Plaintiffs' medical records also show burn injuries consistent with an explosive event. (Ex. G – Plaintiffs' Medical Records – due to the amount of records, only select records are attached). A jury could also conclude that the cooker was defectively designed in a manner that caused Mr. Copeland to believe there was no pressure in the cooker as discussed in the next section. Given the evidence available, and the injuries themselves, a jury could certainly conclude that a defect in the pressure cooker proximately caused Plaintiffs' injuries. As the holdings in *Williams explained*, the jury could determine if Plaintiff was mistaken as to whether the float valve had dropped, and it is clear from other evidence that the cooker was pressurized, meaning that the defect in the pressure cooker proximately caused Plaintiffs' injuries. Therefore, Tristar's motion for summary judgment should be denied on this issue.

**D. Tristar incorrectly asserts there is no evidence that the pressure cooker's design is defective and misstates applicable law in asserting that summary judgment is proper because there is no evidence of a specific design defect, and that Dr. Eshraghi does not perform a risk-utility analysis.**

Georgia law requires a product manufacturer to use reasonable care and skill in designing a product so that it is reasonably safe for the purposes for which it is intended and for other uses which are foreseeable. *Williams*, 418 F.Supp. *Id.* at 1227 (citing *Dorsey Trailers SE., Inc. v. Brackett*, 185 Ga. App. 172, 174 (1987). Tristar's motion for summary judgment only addresses Plaintiffs' design defect claim, so Plaintiffs will only address that claim here.

"To recover on a design defect claim, Plaintiff must show (1) that Defendant's design is defective and (2) that defective design caused Plaintiffs' injuries. *Williams,* 418 F.Supp. 3d at 1227 (citing *Folsom v. Kawasaki Motors Corp. U.S.A.*, 509 F.Supp. 2d 1364, 1374 (N.D. GA. 2007). In a design defect case, a risk-utility test is applied to determine if the risk inherent in a design outweighs the utility or benefit derived from a product. *Williams,* 418 F.Supp. *Id.* at 1227. However, the Georgia Supreme Court has held that "we can no longer accept the position that a manufacturer cannot be liable for injuries proximately caused by a product that functions for its intended use, regardless of the risks associated with the product and its utility to the public or plaintiff's ability to adduce evidence that a feasible alternative design, which could have prevented or minimized plaintiff's injuries, was available at the time the manufacturer made its design, manufacturing, and marketing decisions. *Banks v. ICI Americas, Inc.*, 264 Ga. 732 (1994). *Banks* set forth a non-exhaustive list of factors for the jury to consider when applying risk-utility analysis. *Id.* at 736. This necessarily requires weighing the evidence, which is the role of the fact finder. Some of those factors that are relevant here include the gravity and severity of the danger posed by the design, the likelihood of that danger, the avoidability of that danger, the efficacy of warnings, and the ability to eliminate danger without impairing the usefulness of the product or making it too expensive. *Id.* at 736, n.6. "[I]n *Banks,* [the court] indicated that it is for the trier fact to consider the numerous factors which are pertinent in balancing the risk of a product against its

utility or benefit." *Ogletree v. Navistar International Transportation Corporation*, 271 Ga. 644, 646 (1999). The determination of a product's risks and benefits as a matter of law will rarely be granted in design defects when any of the elements are disputed. *Id.* at 646. In fact, "the adoption of the risk-utility analysis in [Georgia] has actually increased the burden of a defendant in seeking a judgment as a matter of law, to show plainly and undisputedly an absence of ***any*** evidence that a product as designed is defective." *Id.* Moreover, even if the facts in a case are entirely uncontradicted and uncontroverted, where reasonable people may differ in opinion as to whether negligence should be conferred, the right to draw that inference belongs to the jury. *Id.* at 647. Where there is some evidence, the issue of negligent design cannot be decided as a matter of law. *Id.* at 645.

In support of its argument, Tristar simply asserts there is no evidence of a specific design defect and spends much time arguing that Dr. Eshraghi did not perform a risk-utility analysis because he is not qualified to do so. This ignores both the plethora of evidence in this case regarding the design defect and Dr. Eshraghi's actual risk-utility analysis. Furthermore, Plaintiffs incorporate herein their arguments set forth in Plaintiffs' response to Tristar's Motion to Bar Plaintiffs' Expert. (Doc. 27). Tristar states that Dr. Eshraghi does not address the design or what would make the design safer. Additionally, while advancing the position that UL 136 is not the industry standard applied to pressure cookers, Tristar argues that Dr. Eshraghi does not apply the principles set forth in UL 136. Tristar also adds that Dr. Eshraghi's opinions conflict with the standards set forth in UL 136. However, this simply demonstrates a misunderstanding of Dr. Eshraghi's opinions, and goes to the weight of the evidence.

As more fully set forth in Plaintiffs' response to Tristar's motion to exclude Dr. Eshraghi, Dr. Eshraghi is qualified to testify regarding the foundation, design, and safety of the subject

pressure cooker. Dr. Eshraghi has a Ph.D. in Mechanical Engineering, and has worked in the area of fasteners, mechanisms, and related tooling and equipment for the aerospace and automotive industry for over 40 years. (Ex. B, p. 3). He has extensive experience performing kinematics, stress analysis, and static and dynamic testing of parts, and was responsible for overseeing the certification standards and design allowables for fasteners on aircraft. (*Id.*). Contrary to Tristar's arguments, he has also investigated the design and manufacture failures of multiple pressure cookers (Ex. B, p. 13). In fact, Dr. Eshraghi was specifically trained in how to apply his engineering knowledge to pressure cookers by Dr. John Pratt, who has previously been certified as an expert by this Court.

Dr. Eshraghi has identified multiple design defects of the subject cooker, and in its argument, Tristar ignores all these opinions. First, Dr. Eshraghi opines that a pressure cooker that can be opened while still pressurized is unreasonably dangerous and cannot be safely used for the purpose for which it is intended. (Ex. B, p. 10). In support of his opinion, Dr. Eshraghi relies on his own experience in evaluating pressure cookers and on UL 136, § 9.1. That section states "an ordinary user should not be capable of manually defeating the holding action of the clamping device on the pressure cooker when the pressure in the cooker reaches a value that creates a risk of injury to persons… [and] [t]he propelling of a loosened cover and the escape of steam or hot water are examples of this risk. (A copy of UL 136 was identified by Dr. Giachetti as Ex. 4 to his deposition and is attached hereto as Ex. H). That is exactly what happened in this case. The holding action of the clamping device was defeated, and the cover and contents propelled out and onto

Plaintiffs. Dr. Eshraghi identified this as a failure in the design of the cooker.[2] Dr. Eshraghi was also able to show that the holding action of the clamping device was able to be manually defeated in the tests he performed. (Ex. B; Ex. I – video of Dr. Eshraghi opening the subject cooker under pressure).

In addition, Dr. Giachetti's own test results proved that the holding action of the clamping device was able to be defeated. This test does not depend on whether the mechanical lock (locking pin) was damaged. The clamping device (the locking tabs) is separate and distinct from the mechanical lock (locking pin). Specifically, the pressure cooker was opened at less than 50% of the minimum requirement of 100 pounds set forth in UL 136, meaning the clamping device was defective. (Ex. B; Ex. C). Furthermore, as set forth in Dr. Eshraghi's opinion, the scratch on the locking tab that Dr. Giachetti uses as a basis for his opinion that the lock was compromised, is actually evidence that the cooker was able to be opened under pressure at some point in the past. Both experts agree on this, and it is evidence of the defect identified by Plaintiffs. Tristar makes much of the fact that the testing was not a formal UL 136 test, but UL 136, § 9.3 simply offers suggestions on how it would perform the test. (Ex. H). Dr. Eshraghi testified that he believes his test method may provide better results than the test suggested by UL. He explained that during the test suggested by UL there may be binding on the lid that can influence the results and explains he has actually been in communication with UL about proposing and developing a test using the torque wrench as he did in this case. (Ex. E, p. 31). Regardless, Tristar agrees that Dr. Eshraghi's test was analogous to a UL test. (Doc. 28, ¶ 49). A load test was also performed by Dr. Giachetti,

---

[2] The term "design defect" is an expression of a legal conclusion, and not a test for that conclusion. Ga. Products Liability Law 7:1. As such, just because Dr. Eshraghi may not always use the terms "design defect" or "manufacturing defect" does not mean a jury could not evaluate the evidence to conclude either existed.

which produced results similar to those found by Dr. Eshraghi (Ex. D, p. 129). Tristar also argues that Dr. Eshraghi's opinions are inconsistent because the pressure cooker design was certified by UL (again, while also advancing the position that UL 136 does not control). However, Dr. Eshraghi never agreed that the subject cooker itself was tested by UL. In fact, Dr. Eshraghi testified due to the production of different lots, there needs to be continual testing of the product. (Ex. E, p. 47).

Next, Dr. Eshraghi opines that the mechanical lock (locking pin) should not be able to be defeated. (Ex. B, p. 5). In support, he points to UL 136, § 9.8, which states, "[i]f the pressure cooker is provided with mechanical locking device (e.g. a locking pin) that prevents the opening of the cover under pressure, it shall not be defeated during the cover opening test." (Ex. H). Section 9.5 of UL 136 also states that if the pressure cooker is provided with a mechanical locking device (locking pin), the source of the heat may be turned off as soon as the locking device is activated (the float valve is raised). (Ex. H). This is acceptable because the locking pin only requires pressure to be activated but does not depend on increased pressure to function as it should. This is exactly the test that was performed by Dr. Eshraghi and Dr. Giachetti. Both Dr. Eshraghi and Dr. Giachetti agree that the cooker opened while under pressure at some point. (Ex. E, p. 49; Ex. D, p. 112). Both experts also agree that the scratch on the locking tab could have resulted from the pressure cooker opening under pressure during the subject incident. (Ex. D, p. 12; Ex. E, p. 56). As pointed out by Dr. Eshraghi, the fact that the lock failed either at some point prior to the subject incident or during the subject incident is evidence of the defect. Dr. Eshraghi testified the locking mechanism has to function properly because even at low pressure the cooker can explode and hurt people. (Ex. E, p. 43, ll 20-25). All of this, together with Mrs. Copeland's testimony that Plaintiffs did not use force to open the pressure cooker during the subject incident, or any time before,

provides ample evidence a jury could consider in applying the risk-utility analysis to determine there was a design defect.

Dr. Eshraghi also points out that the owner's manual states "Lid Safety Device; … prevents lid from opening until all pressure is released." (Ex. B, p. 6). Here, the cooker was clearly able to be opened while under pressure, which is a failure of the design as affirmatively set forth by Tristar in its manual. (Ex. B, p. 6). Finally, Dr. Eshraghi does offer reasonable design alternatives which is not an element that is required under Geogia law. *Williams,* 418 F.Supp. 3d at 1229. Dr. Eshraghi points out that a later version of the pressure cooker contains design modifications and safety measures that were not present on the subject cooker. This improved version has an added magnetic sensor that makes sure the lid is in a proper locked position before pressurization, and has added a red pressure indicator pin for positive identification of pressurization because the floating valve that was hidden in the handle of the subject pressure cooker was never very visible. (Ex. B, p. 6). This is evidence of alternative designs for the jury to consider. Dr. Eshraghi has testified regarding the severity of the danger posed by the design, and the ability to eliminate that danger without impairing the usefulness of the product. Where there is *any* evidence a jury can consider regarding these elements, judgement as a matter of law is not appropriate. *Banks,* 264 Ga. 732; *Ogletree,* 271 Ga. 644. Tristar is essentially asking the court to weigh the evidence, which is not the appropriate standard for summary judgment. As such, its motion should be denied.

### E. Tristar's position that summary judgment is proper because plaintiffs' injuries were caused by an unforeseeable misuse fails because there is no evidence of misuse.

Tristar states that there is no evidence that the pressure cooker's lock was in the same condition on the date of the accident as it was when it was sold. To the contrary, the evidence conclusively shows the lock was in the same condition on the day of the incident as it was when it

was sold. There is no evidence there were any modifications done to the cooker and no evidence that the cooker was forced open at any time, much less prior to the incident at issue. As set forth above, Mrs. Copeland testified that neither she nor Mr. Copeland ever used force to open the pressure cooker, and they both knew not to use force to open the cooker while under pressure. (Ex. A, p. 51-52, p. 90). Tristar argues that "**if** Plaintiffs forced open the lock before the accident it was not in the same condition as it was when sold." (Doc. 28, p. 15) (emphasis added). The qualifying statement undermines Tristar's position that it is entitled to summary judgment on this matter. There is no evidence Plaintiffs forced the lock open, but even if there was, whether plaintiffs forced the lock open before or during the incident at issue is ultimately an issue for a jury.

Secondly, Tristar contends that Plaintiffs forced open the unit on the day of the incident at issue, despite the fact that there is no evidence of such. Tristar points to the scratch on the locking tabs for support. The only thing the scratch on the locking tab proves is that the cooker was pressurized when the lid came off, which in itself is evidence of the defect. However, nothing about the scratch on the locking tab proves that plaintiffs exerted any force to open the cooker lid. Dr. Giachetti testified that the burns on Mr. Copeland's body indicate, to him, that Plaintiff had both hands on the cooker. However, as set for in Plaintiffs' brief to exclude the testimony of Dr. Giachetti (Doc. 26), Dr. Giachetti concedes that nothing about the placement of the hands proves that Mr. Copeland used force when opening the cooker. (Ex. D, p. 173). Furthermore, even if the locking mechanism had been defeated at some time prior to this incident, that is evidence a jury could use to conclude that the lock was defective, but it does not prove misuse.

In its brief, not only does Tristar fail to set forth any evidence that there was misuse, it points out that Mrs. Copeland testified that she read the warnings and owner's manual, and that both she and her husband knew from prior experience not to force open the cooker while under

pressure. Dr. Giachetti's opinion that plaintiffs used force to open the cooker is in direct contrast to their consistent testimony. In *Williams,* this Court found that Dr. Giachetti's opinion that the pressure cooker was forced open would conflict directly with plaintiffs consistent and repeated testimony casting doubt about Dr. Giachetti's opinion. *Williams*, 418 F.Supp. 3d at 1224. Likewise, here, Dr. Giachetti's opinion is in direct conflict with Plaintiffs' consistent testimony that they never used force to open the cooker. Therefore, Tristar is not entitled to summary judgment on this issue.

> **F. Tristar's contention that Plaintiffs have no evidence to support a punitive damages claim because Tristar's cooker passed UL 136 and complies with industry standards is both inaccurate as to the evidence available and misstates applicable law.**

In *Banks*, the court declared that "compliance with industry-wide practices… does not eliminate conclusively [a manufacturer's] liability for its design of an allegedly defective product. (264 Ga. at 738, n. 6). As such, Tristar's assertion that the pressure cooker passed UL 136 is not conclusive as to Tristar's liability or whether punitive damages may apply. Here, Tristar wishes to impose a double standard. Tristar's own expert offers his opinion that UL 136 does not provide the standard for electric pressure cookers. However, Tristar now argues to this Court that because this pressure cooker's design initially passed UL 136, it should be absolved from liability and punitive damages. It is important to note that this specific cooker at issue was not subjected to UL 136 testing. Regardless, UL 136 testing is simply one element of the design defect alleged by Plaintiffs. Tristar goes into some explanation regarding Y6D-36 units, which does not appear to apply in this case. It states that the records establish that Y6D-36 cookers pass UL 136 unless the lock is broken. Assuming that Tristar meant to refer to the 780-model pressure cooker, that further supports plaintiffs' position that the product was defective. The lock was defeated, either prior to

the incident or during the incident and the clamping device undisputably failed during the subject incident. Either would allow the jury to find that there was a defect in the product.

As to the punitive damages claim, "it is important to remember that the issue of '[p]unitive damages is usually a matter for the jury.'" *Williams*, 418 F.Supp. 3d at 1230 (citing *Reid v. BMW North America*, 430 F.Supp. 2d 1365, 1374 (N.D. Ga. 2006). In its response to discovery requests and in Tristar's deposition, a Product Incident Report was identified. (Ex. F, p. 147, Ex. 7, Ex. 8; Ex. J – Product Incident Report). These documents show at least 25 known incidences between 2015 and 2018 where the Tristar PPC780 exploded or experienced a violent lid separation causing injury to a user. (*Id.*). A jury could consider this as both punitive damages and as evidence of the defect as well. *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 686 (11th Cir. 1984). These reports concern only the 780, and do not even address other models that had identical designs and only differed in size. Tristar was also involved with investigations by the Consumer Product Safety Commission regarding injuries reported that were caused by Tristar's cookers (Ex. F, p. 160-70). Furthermore, there have been a multitude of lawsuits filed regarding Tristar's cookers, so a jury could also certainly decide, from the evidence available, that punitive damages are appropriate. [3] This Court, in *Williams,* held that plaintiff had put forth ample evidence that would subject defendant Tristar to consideration of punitive damages, based on knowledge of injuries caused by

---

[3] The amount of lawsuits filed against Tristar is staggering. Those suits include, but are not limited to *Vasquez v. Tristar Products, Inc.* (S.D. Tx 2016), *Tchernykh and Bekteva v. Tristar Products, Inc. et al* (S.D. Fl 2015), *Frias v. Tristar Products, Inc.* (W.D. Tx 2016), *Carroll v. Tristar Products, Inc.* (N.D. Tn 2016), *Landrum v. Tristar Products, Inc.* (E.D. Mi 2016), *Mack, Individually and NFO a minor v. Tristar Products, Inc.* (E.D. Mi 2016), *Allen v. Tristar Products, Inc.* (N.D. Ga 2016), *DLP, a minor v. Tristar Products, Inc.* (N.D. Ga 2016), *Haines v. Tristar Products, Inc.* (S.D. Tx 2016), *Marcotte v. Tristar Products, Inc.* (W.D. La 2017), *Johnston and Mayberry v. Tristar Products, Inc. et al* (N.J. 2017), *Morales v. Tristar Products, Inc.* (S.D. Fl 2017), *Chainy and Burnett v. Tristar Products, Inc.* (N.D. Fl 2017), *Komertz and Miller v. Tristar Products, Inc.* (N.D. Fl 2017), *Pina v. Tristar Products, Inc. et al* (N.J. 2017), *Marroquin v. Tristar Products, Inc. et al* (N.J. 2018), *Williams v. Tristar Products, Inc.* (M.D. Ga 2017), and *Prater v. Tristar Products, Inc.* (N.J. 2018). This is not a complete list and does not even include cases filed in state courts across the country. All of these cases involve injury sustained when Tristar's pressure cooker exploded or had a violent lid separation.

19

its cookers. 418 F.Supp. 3d at 1230. A jury could find that such failure to act reached a level of bad faith or conscious indifference to consequences. (*Id.*). Tristar's motion should be denied on this issue.

## IV.    **CONCLUSION**

Tristar has asked this Court for a motion for summary judgment on all of Plaintiffs' claims. However, as a threshold matter, Tristar's motion fails because the motion for summary judgment does not address several of Plaintiffs' claims including manufacturing defect, warning defect, and breaches of warranties. As to the matters raised, Tristar's reliance on a response to a request for admission fails because that admission does not conclusively establish that there was no pressure in the cooker at the time of the incident at issue. As such, the remainder of Tristar's argument fails because they are based on this premise. As set forth above, Plaintiffs have provided the Court with a plethora of evidence that would allow a jury to conclude that Tristar's cooker was defective. Where there is any evidence that the cooker was defective then the summary judgment is not appropriate. Because there are genuine issues of material fact in dispute regarding the claims as described above, Tristar's motion for summary judgment as to those claims should be denied in full.

Respectfully submitted,

This 11th day of March, 2024.

**REYNOLDS, HORNE & SURVANT**
6320 Peake Road                              */s/ Marty K. Senn*
P.O. Box 26610                               MARTY K. SENN
Macon, Georgia 31210                         Georgia Bar No.: 513896
Telephone: (478) 405-0300                    *Attorney for Plaintiff Edward A. Copeland and*
msenn@reynoldsinjurylaw.com                  *Sheryl Copeland*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this date, the undersigned served a true and correct copy of the foregoing

pleading with the Clerk of Court using the CM/ECF system and served all parties of record via

electronic service through the CM/ECF system to:

Sanjay Ghosh
Steven H. Campbell
Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
sanjay.ghosh@nelsonmullins.com
steven.campbell@nelsonmullins.com
*Attorneys for Defendant*

David S. Osterman, Esq.
Thaddeus J. Hubert, IV, Esq.
Goldberg Segalla
301 Carnegie Center, Suite 200
Princeton, NJ 08540
dosterman@goldbergsegalla.com
thubert@goldbergsegalla.com
*Attorneys for Defendant*

This 11th day of March 2024.

**REYNOLDS, HORNE & SURVANT**

| | |
|---|---|
| 6320 Peake Road | */s/ Marty K. Senn* |
| P.O. Box 26610 | MARTY K. SENN |
| Macon, Georgia 31210 | Georgia Bar No.: 513896 |
| Telephone: (478) 405-0300 | *Attorney for Plaintiffs Edward A. Copeland and* |
| Facsimile: (478) 405-0550 | *Sheryl Copeland* |
| msenn@reynoldsinjurylaw.com | |