**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **EDWARD A. COPELAND AND**<br>**SHERYL COPELAND,** | |
| **Plaintiffs,** | **CIVIL ACTION NO. 5:22-cv-00212-CAR** |
| **vs.** | |
| **TRISTAR PRODUCTS, INC., and**<br>**ABC, INC.,** | |
| **Defendants.** | |

**PLAINTIFFS STATEMENT OF MATERIAL FACTS REPRESENTING GENUINE**
**ISSUES FOR TRIAL**

Plaintiffs submit their own separate and concise statement of material facts, pursuant to Local Rule 56. Plaintiffs show through citations of record that numerous material facts are disputed and present genuine issues for trial, making summary judgment inappropriate.

1. In 2016, Plaintiffs purchased the subject pressure cooker from Tristar Products, Inc. ("Tristar") (Doc.1, § 12).

2. This pressure cooker was designed, manufactured, marketed, and sold by Tristar. (*Id.*).

3. Plaintiffs became familiar with the cooker's methods and modes of operation by reading the owner's manual and having used the subject pressure cooker several times prior to the incident at issue. (*Id.* at ¶ 13).

4. On July 18, 2020, Plaintiffs were using the subject cooker to cook a chuck roast. (*Id.* at ¶ 14).

5.  Plaintiffs filled the cooker with the roast, other ingredients, and water to just below the max fill line. (Ex. A – Depo. of Sheryl Copeland, p. 40, l 14).

6.  During the cooking cycle, Plaintiff sat in the living room and watched television. (*Id.* at p. 42, ll 2-5).

7.  When the cooking cycle was complete, Plaintiffs heard the alarm notifying them the cooking cycle was complete. (*Id.* at 42, ll 18-23).

8.  Plaintiffs went into the kitchen and unplugged the unit to allow it to depressurize. They went back into the living room to watch television. (*Id.*).

9.  They allowed the cooker to rest for approximately 40-45 minutes. (*Id.* at ¶ ll 24-25, ¶ 43 ll 1-3).

10. After completion of the cook cycle, Plaintiffs allowed time for the pressure to release. Once Plaintiffs believed the cooker had time to depressurize, Mr. Copeland attempted to rotate the lid to the open position, but as soon as he attempted to move the lid, the contents of the cooker explosively expelled onto Plaintiffs. (*Id.* at ¶ 15; Ex. A, p. 51, ll 9-14).

11. Plaintiffs did not use force to open the cooker on the day of the incident. (Ex. A, p. 52).

12. Plaintiffs knew not to use force to open the cooker and had never used force to open the cooker in the past. (Ex. A, p. 52-53).

13. Due to the violent lid separation and explosive event, Plaintiffs suffered painful and debilitating burns. Mr. Copeland suffered severe disfiguring burns to his face, torso, neck, arms, and hands. (Doc. 1 ¶ 16, 17, 20). Mr. Copeland had to undergo surgery to graph cadaver skin to his body and later endured procedures to debride and remove skin. (*Id.* at ¶ 17). Mrs. Copeland suffered severe, painful, and disfiguring burns to her breast, upper chest area, hands, arms, and face. (*Id.* at ¶ 20).

14. Mrs. Copeland did not touch the pressure cooker. (Ex. A, p. 49, ll 15-19).

15. Tristar got into the pressure cooker business in 2002. (Ex. B – Depo. of Alex Lazano, p. 42, ll 7-19).

16. Tristar began making the power XL model pressure cookers, which includes the PPC780 that Plaintiffs owned. (*Id.* at p. 43).

17. Tristar was approached by a vendor called Cheer Master about producing a line of pressure cookers. (*Id.* at 50).

18. Tristar began working with different factories in China to produce the cookers. (*Id.* at 50-51).

19. Tristar audited the factory to review their quality and management systems to determine if they had the right manufacturing practices in place. (*Id.* at p. 53).

20. Through that process Tristar requested corrective action for the manufacturing process. (*Id.* at 54-55).

21. As the pressure cookers were being produced, Tristar would do its own independent testing on the cooker and make engineering change requests regarding design components of the pressure cookers. (*Id.* at p. 61-62).

22. Tristar had an engineering team in Asia to oversee the production of the cookers. (*Id.* at 63).

23. Tristar originally produced the PPC770, which was a cooker with the same design as the PPC780 at issue in this litigation, but only differed in size. (*Id.* at 67).

24. Tristar then decided to produce a larger model, the PPC780. (*Id.* at p. 67-68).

25. Tristar sought UL approval, which is approval from Underwriting Laboratories, an independent private company, to use their logo on the Tristar cookers. (*Id.* at 75-76).

26. Tristar acknowledged that UL provides appropriate standards for pressure cookers to meet. (*Id.* at p. 75, ll 8-12).

27. UL 136 states that an ordinary user should not be capable of manually defeating the holding action of the clamping device when the pressure in the cooker reaches a level that would create a risk of injury to the user. (Ex. C – UL 136, § 9.1).

28. UL 136 also provides that if the cooker is provided with a mechanical locking device (locking pin) that prevents opening of the cooker, it shall not be defeated during the opening test.

29. The Tristar pressure cooker is a pressurized vessel with a sealed compartment that uses temperature and pressure to expedite a cooking cycle. (Ex. B, p. 90, ll 9-12).

30. Pressure cookers work by increasing pressure inside the cooker which allows the contents inside to cook at a higher temperature because as pressure rises, the temperature of the contents inside rises as well. (Ex. D - Depo. of Dr. Giachetti, p. 58-60).

31. When the cooker is pressurized, the liquid inside is not boiling because the temperature at which the contents will boil is raised above the normal 212 degrees. (*Id.*).

32. An explosive, or rapid boiling event, occurs when the cooker is suddenly depressurized and liquid inside the cooker is immediately converted to boiling temperatures creating a gas and steam that will violently exit the cooker. (*Id.*).

33. The higher the pressure inside the cooker, the higher the temperature of the contents inside of the cooker. (*Id.* at 59, ll 16-17).

34. An electric cooker only differs from a stove top cooker in its heat source. An electric cooker includes a self-contained heating element as opposed to requiring an external heating source. (Ex. B, p. 90-91).

35. Tristar's cooker is not supposed to pressurize unless its lid is in the locked position. (*Id.* at p. 92, ll 9-12).

36. Inside the handle of the lid, there is a valve referred to by Tristar as the float valve. This valve moves up and down inside the handle. (Ex. B, p. 95, ll 18-25; p. 96, l 1; Ex. E - Depo. of Dr. Eshraghi, p. 35, ll 10-16).

37. This floating valve weighs a few grams. (Ex. E, p. 36, ll 2-11).

38. When the lid is placed on the cooker, gravity holds the float valve in the down position. The minute pressure starts to build inside the unit, that float valve is pushed up to seal a hole in the lid preventing steam from escaping and allowing pressure to build. (*Id.* at p. 35).

39. When pressure pushes the float valve into the up position, it interfaces with a locking mechanism (locking pin) that includes a strike plate and locking pin. (*Id.* at p. 36, ll 16-20).

40. When the lid is moved to the locked position, the locking pin spring retracts the strike plate, which otherwise covers the hole in the lid, to allow the float valve to move through that hole by pressure. (*Id.* at p. 36-37).

41. When the cooker is pressurized, the float valve is supposed to hold the strike plate in place, which is supposed to pull the locking pin into the edge of the cooker so that the lid cannot be rotated and moved past the locking tab. (*Id.* at p. 37).

42. When pressure is released from the cooker, gravity brings the float valve down, which allows the locking pin to move freely over the locking tabs. (*Id.*).

43. The locking tabs, which are tabs on the base of the pot that interact with and connect to tabs on the lid where friction is supposed to prevent the lid from being removed under pressure (clamping device). (*Id.* at p. 38).

44. Tristar testified that the primary purpose of the float valve is to allow pressurization in the locked position. (Ex. B, p. 100, ll 2-8).

45. Tristar testified that the secondary purpose of the float valve is to lock the lid into place when its pressurized. (*Id.* at ll 16-21).

46. Tristar testified that the lid should also be locked into place by the friction created on the locking tabs from the pressure inside the cooker. (*Id.* at p. 100-101).

47. Tristar testified that the friction created by the locking tabs (clamping device) is the primary locking mechanism. (Ex. B, p. 102, ll 16-19).

48. Tristar's expert disagrees with Tristar's position that the friction of the locking tabs (clamping device) is the primary locking mechanism. (Ex. D, p. 85, ll 12-15).

49. The mechanical locking mechanism (the locking pin) is not as strong at low pressure because at lower pressure the float valve can tip a little bit and allow the strike plate to move further out which reduces how hard it is to turn the lid. (Ex. D, p. 82, ll 10-24; p. 83, ll 1-5).

50. This means the float valve can wiggle a little reducing the strength of the locking mechanism. (*Id.* at p. 83, ll 6-11).

51. As pressure decreases in the cooker, the mechanical locking mechanism becomes weaker. (*Id.* at p. 8, ll 21-24).

6

52. The resistance to turning the lid will also decrease because the locking mechanism is reduced, and clamping forces created by the locking tab is reduced as well. (*Id.* at p. 84, ll 5-8).

53. The entire distance the float valve travels between the up and down position is only 1/8 of an inch. (Ex. B, p. 217, ll 13-16).

54. The float valve is recessed into the handle of the cooker, and it is not separated from its housing by color or any other identifying mark. (*Id.* at p. 217; ll 18-24).

55. Tristar testified that the purpose of the float valve is not to convey to the customer that the cooker is depressurized. (*Id.* at p. 219, ll 23-25, p. 220, ll 1-4). In fact, Tristar testified that the user should really go by the cooking cycle and the audible alarm on the panel. (*Id.* at p. 220, ll 5-14).

56. Plaintiffs heard the audible alarm indicating the cook cycle was over. (Ex. A, p. 42, ll 13-15).

57. Dr. Eshraghi opines that the float valve is difficult to see, and it is difficult to determine whether is it in the up or down position because of its position inside the handle. (Ex. F – Dr. Eshraghi Report, p. 6).

58. He has identified other designs for pressure cookers that include a red pressure indicator that is not recessed and a magnetic sensor to make sure the lid is in the correct position. (*Id.*).

59. Plaintiffs' injuries were caused by defects in the subject pressure cooker, including design defects, manufacturing defects, warning defects, and breaches of warranties. (Doc. 1).

60. Dr. Giachetti opines that Plaintiffs forced open the pressure cooker while it was under pressure. (Ex. G - Dr. Giachetti Report, p. 22).

61. However, the record does not support this conclusion as Plaintiffs have unequivocally testified that they never forced open the cooker. (Ex. A, p. 51-52).

62. At the inspection of the subject cooker, both experts noted the existence of a scratch on the locking tab that interfaces with the locking pin. (Ex. F, p. 8; Ex. D, p. 16).

63. Both experts agree this indicates the cooker was opened under pressure at some point in time. (*Id.*).

64. Both experts also agree that the scratch on the locking tab could have occurred when the cooker opened under pressure during the subject incident. (Ex. E, p. 56; Ex. D, p. 112).

65. Dr. Eshraghi opines that because the lock was defeated either at some point in the past or during the subject incident, this was evidence that the lock was defective. (Ex. F, p. 9).

66. Tristar's user manual states that the lid safety device prevents the lid from being opened until all pressure is released from the unit. (Ex. H - Owner's Manual, p. 5).

67. Tristar designed and authored the user manual. (Ex. B, p. 138, ll 15-20).

68. Dr. Giachetti acknowledges Tristar's statement that the lid safety device prevents the lid from opening until all pressure is released and conceded that safety mechanism did not prevent the lid from opening in this case. (Ex. D; p. 166, ll 16- 22).

69. Both experts attended the product inspection. (Ex. F; Ex. G).

70. The experts pressurized the cooker and measured the force required to open the cooker. (*Id.*).

71. Dr. Eshraghi found, in his test using a torque wrench, that 40 pounds of force was required to remove the lid. Dr. Giachetti, using a similar test called a load test, found it required 45 pounds of force. (Ex. F, p. 9; Ex. G, p. 15).

72. UL standards require that the lid not open with less than 100 pounds of force applied. (Ex. C).

73. Dr. Giachetti opines that 45 pounds of force is a significant amount of force. (Ex. G, p. 21).

74. Dr. Eshraghi disagreed and was able to demonstrate that he was easily able to open the subject cooker while there was enough pressure in the cooker to cause the contents to be explosively expelled. (Ex. I - Video of Dr. Eshraghi Test).

75. As early as 2015, Tristar began to receive complaints that the PPC780 cookers were experiencing explosions and violent lid separations causing injury to users. (Ex. B, p. 147).

76. Tristar was also notified by the United States Consumer Products Safety Commission that it was investigating complaints regarding its cookers, and Tristar was involved in those investigations. (Ex. B, p. 160-70).

77. Dr. Eshraghi opines that the clamping device (locking tabs) was defective because the cooker was able to be opened with less than 100 pounds of force. (Ex. F, p. 8-9).

78. Dr. Eshraghi also opined that the clamping device (locking tabs) was defective because it was able to be opened with enough pressure inside to expel the hot contents causing risk of injury to users. (*Id.* at p. 10).

79. Dr. Eshraghi also opined that the mechanical lock (locking pin) was defective because it was able to be overcome by an ordinary user. (Ex. E, p. 73; Ex. F, p. 8).

80. Dr. Eshraghi also opined that the design of the lid and float valve were defective because it is difficult for a user to determine whether the float valve is up or down. (Ex. F, p. 6).

81. Dr. Eshraghi has opined that the cooker is defective because it did not withstand affirmative design parameters set by Tristar that the lid safety mechanism prevents opening while the cooker is pressurized. (*Id.*).

This 11th day of March, 2024.

                                    Respectfully submitted,

**REYNOLDS, HORNE & SURVANT**        */s/ Marty K. Senn*
6320 Peake Road                            MARTY K. SENN
P.O. Box 26610                             Georgia Bar No.: 513896
Macon, Georgia 31210                 *Attorney for Plaintiff Edward A. Copeland and*
Telephone: (478) 405-0300            *Sheryl Copeland*
Facsimile: (478) 405-0550
msenn@reynoldsinjurylaw.com

## CERTIFICATE OF SERVICE

This is to certify that on this date, the undersigned served a true and correct copy of the foregoing

pleading with the Clerk of Court using the CM/ECF system and served all parties of record via

electronic service through the CM/ECF system to:

Sanjay Ghosh
Steven H. Campbell
Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
sanjay.ghosh@nelsonmullins.com
steven.campbell@nelsonmullins.com
*Attorneys for Defendant*

David S. Osterman, Esq.
Thaddeus J. Hubert, IV, Esq.
Goldberg Segalla
301 Carnegie Center, Suite 200
Princeton, NJ 08540
dosterman@goldbergsegalla.com
thubert@goldbergsegalla.com
*Attorneys for Defendant*

This 11th day of March 2024.

**REYNOLDS, HORNE & SURVANT**

6320 Peake Road                          */s/ Marty K. Senn*
P.O. Box 26610                           MARTY K. SENN
Macon, Georgia 31210                     Georgia Bar No.: 513896
Telephone: (478) 405-0300                *Attorney for Plaintiffs Edward A. Copeland and*
Facsimile: (478) 405-0550                *Sheryl Copeland*
msenn@reynoldsinjurylaw.com