Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 1

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
2                     MACON DIVISION
3
   EDWARD A. COPELAND and
4  SHERYL COPELAND,
5             Plaintiffs      Civil Action
                              File No. 5:22-CV-00212-TES
6        v.
7  TRISTAR PRODUCTS, INC.,
   and ABC, INC.,
8
              Defendants.
9  _____
10
              VIDEOTAPED ZOOM DEPOSITION OF
11
               SOHEIL ESHRAGHI, PH.D., P.E
12
                    January 11, 2024
13                      1:01 P.M.
14
15      Lee Ann Barnes, CCR-1852B, RPR, CRR, CRC
16
17
18
19
20
21
22
23                   Exhibit B
24
25

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 2

```
 1                   APPEARANCES OF COUNSEL
 2               (All appearances via Zoom)
 3
 4   On behalf of Plaintiffs:
 5        MARTY K. SENN, ESQ.
          REYNOLDS HORNE & SURVANT
 6        P.O. Box 26610
          Macon, Georgia 31221
 7        478.405.0300
          msenn@reynoldsinjurylaw.com
 8
 9   On behalf of Defendants:
10        THADDEUS J. HUBERT IV, ESQ.
          GOLDBERG SEGALLA
11        301 Carnegie Center Drive | Suite 200
          Princeton, New Jersey 08534
12        609.986.1386
          609.986.1301 (fax)
13        thubert@goldbergsegalla.com
14
15
16   Also Present:
17        Krishan Patel, Videographer
18
19
20
21
22
23
24
25
```

Page 3

1                    INDEX OF EXAMINATION

2    WITNESS:   SOHEIL ESHRAGHI, PH.D., P.E

3    EXAMINATION                                        PAGE

     By Mr. Hubert                                         6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 4

1                        INDEX TO EXHIBITS

2    Defendants'
        Exhibit              Description                Page
3

4    Exhibit 1    UL Certificate of               47
                  Compliance, Bates Number
5                 PPC.780.0001538

6    Exhibit 2    Video                           66

7    Exhibit 3    Video                           81

8    Exhibit 4    Plaintiffs' Responses to        107
                  Tristar's Request for
9                 Admissions

10   Exhibit 5    Report by Robert S.             117
                  Giachetti, Ph.D., Dated June
11                28, 2023, No Bates Numbers

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Soheil Eshraghi , PhD, PE                                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 5

1    Deposition of SOHEIL ESHRAGHI, PH.D., P.E

2                 January 11, 2024

3         (Reporter disclosure made pursuant to

4    Article 8.B of the Rules and Regulations of the

5    Board of Court Reporting of the Judicial

6    Council of Georgia.)

7         VIDEOGRAPHER:  Today's date is January 11,

8    2024, and the time is 1:01 p.m. Eastern time.

9    This will be the remote videotaped deposition

10   of Dr. Soheil Eshraghi, Ph.D., P.E.

11        Will counsel please introduce themselves

12   for the record?

13        MR. SENN:  Marty Senn for the plaintiff.

14        MR. HUBERT:  Ted Hubert, IV, of Goldberg

15   Segalla for defendant, Tristar Products.

16        VIDEOGRAPHER:  Okay.  And the court

17   reporter may proceed.

18        COURT REPORTER:  One moment, please.

19        The attorneys participating in this

20   deposition acknowledge that I am not physically

21   present in the deposition room, and that I will

22   be reporting this deposition remotely.  They

23   further acknowledge that in lieu of an oath

24   administered in person, I will administer the

25   oath remotely.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 6

1          The parties and their counsel further

2      agree that the witness may be in a state where

3      I am not a certified court reporter and

4      stipulate to the witness being sworn in by an

5      out-of-state certified court reporter.  If any

6      party does have an objection to this manner of

7      reporting, please state so now.

8          MR. HUBERT:  No objection.

9          MR. SENN:  No objection.

10     SOHEIL ESHRAGHI, PH.D., P.E., having been first

11  duly sworn, was examined and testified as follows:

12     EXAMINATION

13     BY-MR. HUBERT:

14     Q.   All right, Dr. Eshraghi.  My name is

15  Ted Hubert.  It's afternoon here in New Jersey, but

16  good morning to you out in California.

17     A.   Good morning.

18     Q.   Morning.

19          We're here today to take your deposition.

20  My understanding is that you have been deposed once

21  before.

22          Is that true?

23     A.   I've been deposed three times so far, but

24  one for the forensic engineering job that I have

25  started.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 7

1      Q.    Okay.  And when you say "forensic

2   engineering," you mean as a litigation expert?

3      A.    Yes.

4      Q.    Okay.  And the other two times you were

5   deposed were for what?

6      A.    Job related.

7      Q.    Okay.  Meaning issues came up at your

8   employment and you were deposed?

9      A.    Yes.

10     Q.    And in those two other deps, you were not

11  an expert for litigation; right?

12     A.    That's true.

13     Q.    All right.  I want to give you a few

14  instructions so we're just on the same page today.

15          First, you understand you were just placed

16  under oath, which means you have to tell the truth

17  today just as if you were in a courtroom in front of

18  a judge and a jury; correct?

19     A.    Yes.

20     Q.    All right.  We have a court reporter

21  here -- excuse me.

22          We have a court reporter, so I ask that

23  you allow me to complete my entire question before

24  you provide an answer.  I'll give you the same

25  courtesy when you provide an answer before I ask a

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 8

1    follow-up.  And so, in other words, we don't want to

2    be speaking over one another since the court

3    reporter is taking down what we all say.

4              Understood?

5         A.   Yes.

6         Q.   All right.  I also need verbal responses

7    today because we have a court reporter.  So you

8    can't say "uh-huh" or "uh-huh" or shrug your

9    shoulders or nod your head, even though I may

10   understand what you're saying or you're trying to

11   convey.  If you don't articulate it verbally, we

12   won't be able to have it down -- written down on the

13   transcript.

14             Understood?

15        A.   Yes.

16        Q.   All right.  If you don't understand any of

17   my questions today, let me know and I'll rephrase it

18   or reask the question.

19             Understood?

20        A.   Yes.

21        Q.   If you answer a question that I ask, I'm

22   going to assume that you understood it.

23             Understood?

24        A.   Yes.

25        Q.   Today you're going to be providing various

Page 9

1    expert opinions.

2              Will -- will you agree that if you cannot

3    opine within a reasonable degree of engineering

4    probability as to a specific question or opinion,

5    that you will let us know that?

6         A.   Yes.

7         Q.   And that you understand that your opinions

8    must be within a reasonable degree of engineering

9    probability?

10        A.   Yes.

11        Q.   All right.  If you need to take a break at

12   any time, just let me know.  I just ask that if

13   there's a question pending, that the question be

14   asked and then I'm more than happy to accommodate

15   you on any break you may need.

16        A.   Thank you.

17        Q.   There -- the attorney that retained you on

18   this case is present with you at your home.

19              Is that true?

20        A.   Yes.

21        Q.   Okay.  And is he seated to your left?

22        A.   Yes.

23        Q.   Okay.  You understand that you're not to

24   communicate with him during the depo- -- during the

25   deposition; correct?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 10

```
 1        A.    Yes.

 2        Q.    All right.  Let's talk about your

 3   background.

 4              Have you ever worked for a pressure cooker

 5   manufacturer?

 6              MR. SENN:  Ted, just one second.  Sorry to

 7        interrupt.

 8              Do you want to reserve objections until

 9        first use?

10              MR. HUBERT:  Whatever you want.  I mean,

11        if you want to object to a question, it's fine

12        with me.  However you want to do it.

13              MR. SENN:  How about -- how about we

14        reserve all objections except form of the

15        question and responsiveness of the answer until

16        first use?

17              Will that work?

18              MR. HUBERT:  Yes.

19              MR. SENN:  Okay.

20   BY MR. HUBERT:

21        Q.    Okay.  So, Doctor -- and am I saying your

22   last name correctly?

23              Is it Eshraghi?

24        A.    Yes.

25        Q.    Okay.  Dr. Eshraghi, have you ever worked
```

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 11

1    for a pressure cooker manufacturer?

2         A.    No.

3         Q.    Have you ever worked for a pressure cooker

4    distributor?

5         A.    No.

6         Q.    Have you ever worked or been employed for

7    a retailer that sells pressure cookers?

8         A.    No.

9         Q.    Have you ever designed a pressure cooker?

10        A.    No.

11        Q.    Have you ever worked for a company that

12   performs quality control services for manufacturers

13   or distributors of pressure cookers?

14        A.    No.

15        Q.    Have you ever owned a pressure cooker?

16        A.    No.

17        Q.    Have you ever used a pressure cooker to

18   eat food, meaning not for testing for litigation?

19        A.    No.

20        Q.    Have you -- even if you -- even though you

21   may have never used a pressure cooker yourself to

22   cook a meal, have you ever had a meal cooked by a

23   pressure cooker?

24        A.    No.

25        Q.    Do you know what the benefits are of

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 12

1    cooking a meal with a pressure cooker?

2          A.    Yes.

3          Q.    Okay.  What are some benefits of cooking a

4    meal with a pressure cooker that you are aware of?

5          A.    Speed.

6          Q.    Anything else besides speed?

7          A.    No.

8          Q.    Okay.  And does the pressure that a

9    pressure cooker utilizes help it cook a meal faster

10   than with -- than one would be able to without the

11   pressure?

12         A.    Yes.

13         Q.    Do you have any friends or family members

14   that own a pressure cooker?

15         A.    Not that I recall.

16         Q.    Have you ever given a pressure cooker as a

17   gift?

18         A.    Never.

19         Q.    Have you ever received a pressure cooker

20   as a gift?

21         A.    No.

22         Q.    My understanding is that you have a Ph.D.

23               Is that correct?

24         A.    Yes.

25         Q.    And that Ph.D. is in materials science and

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 13

1    engineering from the University of

2    California-Irvine; true?

3         A.   Yes.

4         Q.   Is it true that your experience with

5    pressure cookers arises solely from you being an

6    expert in cases involving pressure cookers?

7         A.   What do you mean?

8         Q.   Well, you're an -- you're an engineer;

9    correct?

10        A.   Yes.

11        Q.   Okay.  Are you a licensed engineer?

12        A.   Yes.

13        Q.   Is it true that in your professional life

14   as a licensed engineer, your work does not involve

15   designing, manufacturing, testing, or analyzing

16   pressure cookers?

17        A.   Up to 2000, I think '20 or -- I didn't.

18   But since then, I have tested pressure cookers for a

19   few years.

20        Q.   Right.

21             And -- but all that testing was for

22   your -- your role as a litigate -- as a litigation

23   expert; correct?

24        A.   Correct.

25        Q.   So in terms of your professional life as a

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 14

1   licensed engineer, your work does not involve

2   pressure cookers outside of the litigation

3   consulting work you've been doing since 2020?

4        A.   That's correct.

5        Q.   Have you ever -- have you had a chance to

6   testify in court yet?

7        A.   Not yet.

8        Q.   Okay.  How did you get into the field of

9   being an expert witness in litigation?

10       A.   My previous boss was doing this type of

11  work.  And years ago he couldn't go to a testing

12  facility.  He asked me if I wanted to help him.  And

13  then gradually he showed me what was involved.  And

14  I got interested, and I started doing that.

15       Q.   Okay.  And that was in the 2020 time

16  frame?

17       A.   Yes.

18       Q.   And what was -- what was your former

19  boss's name?

20       A.   John Pratt.

21       Q.   Is that Dr. Pratt or Mr. Pratt?

22       A.   Dr. Pratt.

23       Q.   And so did Dr. Pratt ask you to go to a --

24  an inspection for him?

25       A.   Yes.  There was an inspection out of

Soheil Eshraghi , PhD, PE                 January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 15

1    state, and he asked me if I can do that on his

2    behalf.

3         Q.    And were you able to?

4         A.    The way it turned out, I -- I couldn't.

5    But later I got the case, and finally I did as the

6    one who was in charge of the whole case, yes.

7         Q.    Okay.  And did Dr. Pratt educate you on

8    how to be an expert in pressure cooker litigation?

9         A.    He -- he showed me different tests that he

10   would be doing, and he also showed me the format of

11   preparing reports.

12        Q.    What kind of tests did he show you?

13        A.    Measuring temperatures, measuring loads to

14   open the lid, looking for issues, functionality of

15   the locking elements.  Things like that.

16        Q.    Did you ever observe Dr. Pratt remove a

17   lid from a pressure cooker while pressurized?

18        A.    Yes.

19        Q.    How many times did you do that?

20        A.    Maybe three times.

21        Q.    And why did you do that?

22        A.    Just to learn the process.

23        Q.    So you learned the process, learn --

24   learned the -- learned the process or technique of

25   how to open a pressure cooker while it's under

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 16

1  pressure?

2      A.   Well, I was hesitant because I didn't want

3  to get hurt.  So I was going to learn the proper

4  approach to open and not get hurt.

5      Q.   But did he give you advice on how to

6  specifically open a pressure cooker while it's under

7  pressure?

8      A.   No.  He was showing me the -- like, the

9  pieces of equipment he was wearing and what type of

10  gloves to have, what shield to buy.  Things like

11  that.

12      Q.   Okay.  Did he show you how to operate the

13  unit in a way that would allow the pressure cooker

14  to be opened while under pressure?

15      A.   No, no.  I -- I know how -- how that

16  happens.

17      Q.   Prior to your involvement in this case,

18  had you ever inspected a Tristar pressure cooker?

19      A.   Prior to this one, I -- I was engaged on

20  another case, I think, that I was just -- I didn't

21  do any investigation because it was settled before I

22  did something.

23      Q.   Okay.  How many different pressure cooker

24  brands have you -- strike that.

25          Let me ask you a different question.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 17

1            How many different brands of pressure

2     cookers have you inspected?

3            A.    Probably ten.

4            Q.    And are those all electric pressure

5     cookers?

6            A.    No.  There are some stovetop also.

7            Q.    How many electric pressure cooker brands

8     have you reviewed?

9            A.    Maybe six.

10           Q.    And have you ever done any -- do you know

11    what UL 136 is?

12           A.    Yes.

13           Q.    Have you ever tested a pressure cooker to

14    UL 136 standards?

15           A.    Not exactly to UL 136.  To a similar

16    approach that is easier to implement.

17           Q.    Will you agree that UL 136 is an industry

18    standard test?

19           A.    Yes.

20           Q.    How many cases have you been retained to

21    provide opinions on pressure cookers?

22           A.    I -- I made a list for you.  I have to go

23    back and check.  Let me see if I can bring it up

24    because I don't remember.

25                 One second.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 18

1          It says one, two, three, four, five, six,

2     seven, eight, nine.  It's -- it's ten, but some of

3     them are multiple cookers, so maybe 20.  Just

4     approximate numbers.

5          Q.   Did you say 20?

6          A.   Yes.

7          Q.   And in those 20 pressure cooker cases

8     where you were retained, were those all as a --

9     retained by the plaintiff?

10         A.   Yes.

11         Q.   And in any of those pressure cookers that

12    you've had a chance to review or inspect, did -- did

13    you find that any were not defective?

14         A.   Yes.

15         Q.   And how many?

16         A.   I -- one, two.  Two cases I couldn't find

17    anything wrong with it, yes.

18         Q.   And did you write a report in either of

19    those two cases?

20         A.   I submitted my findings, but I didn't do a

21    report.  I just reported my results, and I -- there

22    was nothing else to continue.  I couldn't find the

23    flaw.

24         Q.   Do you know what the brands of pressure

25    cooker those were that were not defective?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 19

1        A.    Well, there was one -- one is T-fal, it's

2    stovetop, that still is under investigation.

3              And there was another one.  I'm looking

4    into my notes.  I think it was an Instant Pot, but I

5    can't -- I can't remember right now.  I have to go

6    check it.

7        Q.    Sure.

8              And can you tell me what it was about the

9    Instant Pot's -- about the Instant Pot's design that

10   did not make it defective?

11       A.    Well, it's not -- it wasn't the design.

12   It was a description of how it happened.

13             So I -- I go with what they tell me, and I

14   try to see how that scenario could have happened.

15   If I cannot produce it...

16             Now, if they gave me the wrong information

17   or something else happened, I don't know.  But I

18   usually try to duplicate and see how that could have

19   happened.  And if I can not find it, then I say I

20   cannot proceed.

21       Q.    Okay.  So if you follow what plaintiff

22   says they -- says happened and you can't duplicate

23   an -- a -- an -- an event that would lead to an

24   injury, you would say no defect; true?

25       A.    Yes.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 20

1      Q.   And same with the -- for the T- -- the
2   T-fal stovetop pressure cooker, was that the same --
3   did the same situation occur where you could not
4   recreate the events as described by plaintiff and
5   therefore you opined it was not defective or
6   concluded it was not defective?
7      A.   No.  Actually in that case, it's -- it's
8   kind of damaged.  So my question back is who damaged
9   it?
10          So if the consumer interfered with it,
11  disassembled it, do -- did something, then it's not
12  manufacturer's issue.  So we are figuring that out.
13          (Simultaneous speakers - unclear.)
14     Q.   I'm sorry.
15     A.   I saw things that were not functioning
16  because of some modifications.
17     Q.   So just to clarify on the -- on the T-fal
18  one, was it modified or was it damaged or both?
19     A.   It -- somehow it was disassembled and
20  assembled back and some things were missing.  So I
21  don't know if the missing part was from the
22  manufacturer or from somebody touched it, so we are
23  investigating.
24     Q.   Understood.
25          Can you identify for me the brands of

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 21

1    pressure cookers that you have inspected that you

2    opine were defective?

3         A.    Yes.  Like, Bella cooker, Cook's,

4    Crock-Pots.

5         Q.    Any other brands that you recall being

6    defective?

7         A.    Philippe Richard.  That was a stovetop.

8         Q.    Any others?

9         A.    No.  Can't remember any more.

10        Q.    How about -- let me see if I can refresh

11   your recollection -- Cuisinart?

12             Have you ever reviewed a Cuisinart

13   pressure cooker?

14        A.    Yes, but I -- I think -- I -- I don't

15   remember that one.  I think I evaluated it while

16   John was testing that one.  So I was just observing.

17        Q.    How about Admiral?

18        A.    No.

19        Q.    Paula Deen?

20        A.    No.

21        Q.    Nuwave?

22        A.    No.

23        Q.    Sunbeam?

24        A.    Sunbeam, yes.

25        Q.    And was that -- and in your opinion,

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 22

1    Sunbeam was defective?

2         A.    The ones I tested.

3         Q.    Cooks Kitchen?

4         A.    Cooks is the same brand as Bella.  I think

5    they are from Sensio.  And, yes.

6         Q.    And how about Fagor, F-a-g-o-r?

7         A.    I haven't touched that one yet.

8         Q.    How about Genie?

9         A.    No.

10        Q.    "No," you didn't review that one, or,

11   "No," you reviewed it and there was no defect?

12        A.    No, I did not review it.

13               I have reviewed also Ninja.  I'm looking

14   here.

15        Q.    And was Ninja defective or no?

16        A.    The one I saw has some indications of some

17   issues, yes.

18        Q.    Gourmia, G-o-u-m -- G-o-u-r-m-i-a?

19        A.    I haven't worked with that.

20        Q.    Maxi-Matic?

21        A.    No, not with...

22        Q.    Cook Prep Eat?

23        A.    No.

24        Q.    Royal Prestige?

25        A.    Royal Prestige, yes.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 23

1      Q.    And was Royal Prestige defective?

2      A.    Let me check.  Hold on.

3            Royal Prestige, I think I didn't find

4   anything wrong with that, for that case.

5      Q.    And what about Casa Maria?

6            Have you inspected a Casa Maria unit?

7      A.    No.

8      Q.    What about COSORI, C-O-S-O-R-I?

9            Have you inspected a COSORI?

10     A.    No.

11     Q.    Wolfgang Puck?

12     A.    No.

13     Q.    Okay.  So it sounds like there's one, two,

14  three, four, five, six -- about seven or eight

15  pressure cooker brands you found defective, not

16  including Tristar; right?

17     A.    Yes.

18           And -- and I -- you know, when I work with

19  this, I consider each one individually.  I am not

20  saying it's a family issue or -- I'm just testing

21  the one I get.

22     Q.    I understand.

23           Do electric pressure cookers all use

24  similar designs in terms of the lid lock mechanism?

25     A.    It -- it looks like they are all using

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 24

1    same concepts.

2          Q.   Can you tell me specifically -- for

3    example, Royal Prestige you said wasn't defective.

4              Can you tell me why?

5          A.   Well, the -- the way the incident

6    happened, I tried to duplicate it.  I couldn't.

7          Q.   It sounds like, except for the T-fal one,

8    in all the other instances where you did not find a

9    defect, it was because you couldn't replicate the

10   incident that plaintiff alleged?

11         A.   Yes.

12         Q.   Is it true that in this case, you opined

13   that the Tristar pressure cooker was defective

14   before you tested the subject unit?

15         A.   No.

16         Q.   Had you tested -- you have a report dated

17   November 21, 2022.

18             Had you inspected the Copeland's pressure

19   cooker at the time you wrote that report?

20         A.   The -- the first report?

21         Q.   Yeah.

22         A.   I'm not sure if we tested that at that

23   time, no, because we --

24             (Simultaneous speakers - unclear.)

25         A.   -- we were going to test it with -- as a

Soheil Eshraghi , PhD, PE                      January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 25

1    group.

2         Q.    Right.

3              So in your first report, you examine the

4    pressure cook- -- you did -- excuse me.

5              You did inspect the pressure cooker

6    because you took photographs of it, but you hadn't

7    done any testing at the time you wrote your first

8    report; correct?

9         A.    Yes.

10        Q.    And in your first report, you do opine

11   that the pressure cooker had design flaws; correct?

12        A.    What -- what -- what I said was if a

13   pressure cooker can explode on the consumer, it has

14   a flaw.  And then I suggested how to test and

15   figured out where the flaw is.

16        Q.    Well, on page 9 you say "Based upon the

17   foregoing analysis, it is my opinion within a

18   reasonable degree of scientific and engineering

19   certainty that Mr. and Mrs. Copeland's Tristar

20   PPC780 pressure cooker had design flaws that allowed

21   its lid to open under pressure to cause the

22   injuries."

23              And you gave that opinion before you

24   tested the unit; correct?

25        A.    That opinion was based on what happened to

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 26

1    the pressure cooker.

2         Q.    But right now the question is did you give

3    that opinion before you tested Mrs. -- Mr. and

4    Mrs. Copeland's pressure cooker?

5              Yes or no?

6         A.    That was before the test.

7         Q.    So that's a "Yes"; correct?

8         A.    Yes.

9         Q.    You gave that opinion before you attempted

10   to -- before you -- before you attempted to do any

11   replication of what they alleged happened; right?

12        A.    Yes.

13        Q.    Have you inspected any other products for

14   the purposes of litigation besides a pressure

15   cooker?

16        A.    Heating pad and a coffee maker, so far.

17        Q.    I'm sorry.  Can you say that again?

18        A.    Heating pad, coffee maker.

19        Q.    Okay.  All right.  So a heating pad and a

20   coffee maker and a pressure cooker.

21             Are -- are those all the products you've

22   reviewed?

23        A.    So far, yes.

24        Q.    Okay.  And was the -- was the heating pad

25   defective?

Soheil Eshraghi , PhD, PE                     January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 27

1         A.    It's under test and evaluation.

2         Q.    What about the -- was it coffee maker, did

3    you say?

4         A.    Yes.  That hasn't started yet.

5         Q.    And were you retained by the plaintiff in

6    the heating pad case?

7         A.    Yes.

8         Q.    Were you retained by the plaintiff in the

9    coffee maker case?

10        A.    Yes.

11        Q.    Have you ever been retained by a defendant

12   in a products liability case?

13        A.    No.

14        Q.    Have you ever been retained by Mr. Senn's

15   law firm before?

16        A.    No.

17        Q.    For your consultant litigation work, do

18   you have a separate -- did you create a business

19   entity separate and apart from your regular

20   employment, like an LLC, for your consulting work?

21        A.    It's individual.  There is no LLC, no.

22        Q.    You -- you charge money for your time in

23   preparing your -- the reports and being retained as

24   an expert; true?

25        A.    That's true.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 28

1       Q.    All right.  And I know you had -- you put

2    it somewhere, but can you tell me what your rate is

3    for reviewing records and preparing a report?

4       A.    It's $350 per hour.

5       Q.    And your deposition -- your time for --

6    for testimony at deposition, is it also $350 an

7    hour?

8       A.    Yes.

9       Q.    And what about trial testimony?  Is that

10   more or also $350 an hour?

11      A.    It's the same.

12      Q.    Can you approximate for me how much you've

13   billed on this case so far?

14      A.    I sent individual invoices.  I don't

15   remember.

16      Q.    The invoices are in the file material you

17   prepared for this deposition?

18      A.    Yes.

19      Q.    When you're examining whether a product is

20   defective, what do you do to eliminate or minimize

21   any potential bias?

22      A.    I -- I only look at design and function

23   and safety, and I go from there.  I don't have any,

24   I guess -- I really don't care about where it came

25   from, who designed it.  I just evaluate the failure.

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 29

1      Q.    Well, in terms of eliminating or
2   minimizing bias, are there any objective standards
3   that are -- that you follow?
4      A.    Yes.  I -- I will not work on any case
5   that I don't believe has an issue.
6      Q.    You mean if you feel there's an -- an
7   issue, you won't take the case?
8      A.    I won't, no.
9      Q.    All right.  Well, that is sub- -- wouldn't
10  you agree that that's subjective, that that's --
11  that's your -- your determination?
12          I'm talking about are there objective
13  engineering standards that you follow in every case?
14     A.    Yeah.  Every -- everything I do is based
15  on evaluation and data and requirements and design.
16  I mean, that's what I have been doing all my career.
17     Q.    Are you familiar with ASTM?
18     A.    Yes.
19     Q.    Okay.  Do you follow any ASTM standards
20  when you test a pressure cooker?
21     A.    If -- if -- if it is called out, we have
22  to.
23     Q.    What does that mean, if it's called out?
24     A.    So there -- there are some requirements
25  for evaluation, testing.  And normally every test

Soheil Eshraghi , PhD, PE                              January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 30

1    has a -- like a standard attached to it.

2          If -- if, for example, I test a fastener

3    for tensile property, there is an NASM document that

4    covers it.  If I am doing a hardness test for some

5    product, it actually specifies what ASTM I should

6    use.  If I'm using a -- if I'm doing a heat treat,

7    there is an ASM document.

8          So there are multiple organizations with

9    multiple requirements for different inspections and

10   processes.  We need to follow them.

11       Q.   And do you follow -- so in terms of

12   pressure cookers, do you follow any industry

13   standards when you perform your tests?

14       A.   Yes.  For example, for locking test, we

15   have the UL 136 that we need to follow.  And when --

16   when we don't have exactly the equipment to do that,

17   we suggest a substitute test that can validate the

18   same thing.  And if everybody agrees, we do that

19   test.

20       Q.   In terms of UL 136, have you ever

21   performed a formal UL 136 test?

22       A.   Not a formal UL, no.

23       Q.   Are you -- are you attempting to obtain

24   the equipment so that you can perform a formal

25   UL 136 test?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 31

1        A.    Well, I -- I try.  And I found issues with

2    that test, so I communicated to UL and I am

3    preparing a proposal to adding another test as a

4    substitute.

5        Q.    What test would that be?

6        A.    Basically to open these pressure cookers,

7    we apply a torque to open it.  The -- the test that

8    is defined by UL, they apply the torque at the

9    outside perimeter where the loads are.  However, if

10   everything is not precisely lined up, there is a

11   binding effect that can influence the results.

12          So when I talked to the people who were in

13   charge, I said, "Why don't we substitute a test that

14   we can use with a torque wrench?"  And they gave me

15   some comments how to do the proposal, and I'm

16   working on it.

17       Q.    And the torque wrench test, you did that

18   in this case; correct?

19       A.    We did it in addition to the load test

20   that was closer to the UL document, yes.

21       Q.    When you say load test is closer to the

22   UL 136 document, you mean closer to the -- the

23   written test that UL outlines?

24       A.    The UL 136 --

25       Q.    Yeah.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 32

1      A.    -- we pull on one side of the lid with --
2    with some mechanism and measure a load versus a
3    torque test that we just use a torque wrench that is
4    centered and has no binding issue.
5      Q.    I just want to clarify that you mentioned
6    that the -- the load test, I think you called it, is
7    closer in spirit to UL 136; true?
8      A.    That's true, yes.
9      Q.    Would you agree with me that if the
10   pressure cooker passes UL 136, the pressure cooker
11   is safe -- reasonably safe and not defective?
12     A.    Reasonably safe, yes.
13     Q.    Have you ever, as an expert, prepared a
14   meal in a pressure cooker?
15     A.    I have done that during testing, yes,
16   because in -- in some cases, I put the exact
17   ingredients that they had done just to make sure I
18   am repeating it.
19          So, yes, I have bought the meat, the
20   ingredients, and I've cooked it in that pressure
21   cooker.
22     Q.    And did you do that in this case?
23     A.    In this case, no.
24     Q.    So in this case, you did not try and
25   recreate what the person said happened by cooking a

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 33

1   meal and following what they said they did?

2        A.   In this case, we actually followed what

3   the other side was proposing, and we just did that.

4        Q.   But I'm asking you if you -- when you

5   testified earlier that you won't find a pressure

6   cooker defective if you can't replicate what

7   happened.

8             So in this case, did you -- did you cook a

9   meal and attempt to replicate what happened by

10  following what plaintiff said happened?

11       A.   No, I didn't cook the meal in it.  We

12  tested it just by cooking water.

13       Q.   All right.  So you did not try to

14  replicate what the plaintiff said occurred in this

15  case; correct?

16       A.   Not with the meat or ingredients, just the

17  process of heating up and cooling down and opening

18  the lid.

19       Q.   Well, in your first report, you identify

20  on page 4 that the plaintiffs allowed the cooker to

21  be undisturbed upon completion of the cooking cycle

22  for 45 minutes to an hour.

23            So in this case, did you cook a meal and

24  then allow the meal after the cook cycle completed

25  for 45 minutes to 60 minutes and then open it?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 34

1       A.   No.  But I did -- originally I did let it
2   cool down two different times to measure how long it
3   would take for the floating valve to go down.
4       Q.   What was the result of that?
5       A.   I have to check.  It was, like, 45 to
6   55 minutes, I think.
7       Q.   Is that anywhere in your report?
8            (Simultaneous speakers - unclear.)
9       A.   One of my -- I have to find it.  I wrote
10  it somewhere.
11      Q.   Have you ever taken a case where the
12  plaintiff admitted to forcing open the pressure
13  cooker?
14      A.   No.  But I have heard of them.
15      Q.   Yeah.  Let's talk about how the pressure
16  cooker works.
17           On this Tristar unit, when the lid goes
18  into the closed position, can you feel or hear the
19  lid click into place?
20      A.   You -- you can feel that it is in the
21  right position for starting, yes.
22      Q.   All right.  This unit has something called
23  a float valve; true?
24      A.   Yes.
25      Q.   Okay.  And what is the float valve?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 35

1       A.   So in designing these pressure cookers,

2   to -- to make sure the consumer cannot open the

3   pressure cooker prematurely, there is a mechanism

4   design in the lid that locks it in place when it

5   gets pressurized.  So the purpose of the floating

6   valve is to move up to a lock position so it stops

7   the lid from rotating open while it's under

8   pressure.  So it's a lock -- part of the locking

9   mechanism.

10      Q.   And the -- the float valve, it's like a

11  little piston-shaped object; right?

12      A.   It's a cylindrical pin that is inside the

13  lid.  And it's normally by gravity.  It has some

14  weight.  It's -- you know, it's not that heavy.

15  Just a few grams.  It -- it can -- it sits down

16  based on gravity.

17           So the minute the pressure starts to build

18  up, that will be pushed up to seal the hole and

19  locked it in place.

20      Q.   And the float valve has a silicone gasket

21  on the bottom of it; right?

22           So when it gets pushed up, the unit

23  remains sealed so no pressure can escape; right?

24      A.   That's correct.

25      Q.   All right.  And I just want to go over a

Soheil Eshraghi , PhD, PE                         January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 36

1   few things you said about the -- the float valve.

2           One, it's -- it's -- it has a very small

3   amount of weight; true?

4       A.    Yes.

5       Q.    Less -- less than 1 pound; true?

6       A.    Oh, yes.

7       Q.    Less than half a pound?

8       A.    It's -- it's few grams, yeah.

9       Q.    Is -- is a few grams the best way to

10  describe its weight?

11      A.    Yes.

12      Q.    All right.  And so as pressure begins to

13  build in the unit, because it weighs so little, the

14  pressure will push it up; right?

15      A.    Yes.

16      Q.    All right.  And when that pin, the float

17  valve, goes up, it interacts with the locking

18  mechanism so that, as you said, the lid cannot be

19  turned radially; right?

20      A.    That's correct.

21      Q.    What other components make up the locking

22  mechanism when that float valve goes up?

23      A.    So the locking mechanism has a moving

24  strike plate with a -- with a locking pin and some

25  spring attachment.  So basically as we try to close

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 37

1    the lid, this locking pin moves up on one of these

2    locking tabs.  So if you go halfway and it's not in

3    a locked position, it blocks the floating valve to

4    move up and therefore does not allow pressurization.

5    So that's a safety feature of the system.

6            So when we move it further and we bypass

7    the high point, then the -- the locking pin drops to

8    a valley into that form, allows the hole in the

9    strike plate to line up with the hole, with the lid,

10   so the floating valve can penetrate and move up,

11   seal it, and then stop the movement of this locking

12   pin in case somebody wants to open it.

13           So after everything is finished and the

14   pressure drops, this floating valve drops down,

15   allows the strike plate to move so if you rotate the

16   lid, this locking pin now can move up in this high

17   point on these tabs and open freely.

18       Q.    Okay.  So when the pressure is gone,

19   gravity will bring the float valve back down; true?

20       A.    That's true.

21       Q.    All right.  And you mentioned the --

22   there's also something called locking tabs you

23   mentioned in your answer; correct?

24       A.    Yes.

25       Q.    And there's locking tabs on the base of

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 38

1    the unit that will mate with the -- the

2    corresponding spaces or tabs on the lid; right?

3         A.    That's exactly true, yes.

4         Q.    All right.   And -- and what happens to

5    those tabs when pressure -- when the unit becomes,

6    like, fully pressurized?

7         A.    So those tabs are really stopping the

8    explosion of and separation of the lid from the

9    base, because as the pressure builds up, load builds

10   up, so those tabs keep them from separation.

11        Q.    The more pressure in the unit, the more

12   friction or clamping force exists between those

13   tabs; right?

14        A.    So friction is a feature when you move

15   things.   During cooking, there is no movement of the

16   lid, there is no friction force.   The only thing is

17   that those tabs keep the lid intact so it doesn't

18   fly over and explode by itself.   And that's

19   necessary for the proper function of a pressure

20   cooker because we need to keep this together while

21   the pressure is doing its work.

22        Q.    And --

23        A.    But, of course --

24        Q.    Go ahead.

25        A.    -- if you want to rotate the lid open --

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 39

1    if there was no locking system, that extra pressure

2    adds resistance to opening the lid.

3         Q.   When that locking pin has to get in place,

4    it has to go over one of the -- it has to go over a

5    locking tab; right?

6         A.   Yes.

7         Q.   And then to open it, it's got to get over

8    that hump that the tab makes, the locking tab makes,

9    and get past that hump; right?

10        A.   Yes.

11        Q.   All right.  So does that help keep that

12   pin in place if you're trying to open it while

13   pressurized?

14        A.   Well, if -- if it had no locking

15   mechanism, that locking mechanism will not do

16   anything.  It will just rely on friction to open it.

17        Q.   And this -- so the -- the -- the float

18   valve, the strike plate, the locking tabs, the

19   locking pin, all that we've discussed about this

20   Tristar locking mechanism is similar to all of the

21   other electric pressure cookers you've inspected;

22   right?

23        A.   It's very similar.

24        Q.   In other words, this locking mechanism is

25   very similar to all the other pressure cooker

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 40

1    locking mechanisms out on the market; right?

2         A.    Yeah, most of them, yes.

3         Q.    All right.  And so you mentioned that the

4    float valve comes down when there's no pressure

5    remaining in the unit; correct?

6         A.    Correct.

7         Q.    And so if the float valve is in the down

8    position, no explosive event can occur; correct?

9         A.    Correct.

10        Q.    And so pressure plays a role in locking

11   and unlocking the unit; correct?

12        A.    Yes.

13        Q.    Because it's pressure that pushes the

14   float valve up to seal the unit and lock the unit,

15   and then it's the float -- and then when the

16   pressure is gone, the float valve drops down and now

17   the unit can be unlocked?

18        A.    Yes.

19        Q.    When there's no pressure in the unit, can

20   we agree that the handle on the lid can be rotated

21   freely and easily?

22        A.    Yes, it should.  It should, yes.

23        Q.    All right.  And you can rotate -- freely

24   rotate that lid when there's no pressure in the unit

25   with just two or three fingers; right?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 41

1        A.    It should.

2        Q.    The Tristar pressure cooker also has a

3    manual release valve on the lid; correct?

4        A.    Yes.

5        Q.    Okay.  And what that allows a user to do

6    is you rotate the valve on the lid and it -- the --

7    the unit is no longer sealed and the steam will come

8    out of the unit to help it depressurize quickly;

9    right?

10        A.    Yes.  The -- the whole issue with using

11    pressure cookers is speed.  Everybody wants it fast.

12    So if the pressure cookers have to cook fast but

13    take time to cool down, they really eliminate the

14    need to use them.

15              So people are in a rush.  And one way to

16    rush this cooling down is opening up that floating

17    valve or the bubble valve to expedite the

18    depressurization.

19        Q.    All right.  And so if the unit isn't

20    properly sealed, the unit's not going to -- let's

21    back up for a second.

22              If the unit's not properly sealed, you're

23    not going to be able to build pressure; right?

24        A.    Yes.  It has to be sealed.

25        Q.    Right.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 42

1              So if the float valve isn't -- didn't have

2       a gasket on the float valve or the float valve

3       wasn't sealed all the way with that gasket, you

4       would see steam come out of the float valve or the

5       side of the -- the lid; right?

6              A.    Yes.

7              Q.    And as -- as steam continues to escape,

8       you won't be able to fully pressurize the unit;

9       right?

10             A.    That's right.

11             Q.    Now, when the unit is pressurized and the

12      lid is rotated, the user will feel resistance; true?

13             A.    Yes.

14             Q.    What causes the user to feel resistance?

15             A.    So the engagement of the strike plate with

16      the floating valve creates the resistance.  And

17      the -- this -- this lock is not a hundred percent

18      precise lock.  It has some load value attached to

19      it.

20             So if the load is low, the person may not

21      feel that much load.  It may feel like it's catching

22      or something.  But if the load is high, then they

23      cannot overcome it.  And I think the UL requirement

24      of 100 pounds has been designed so majority of

25      people cannot overcome it so they -- they be safe.

Page 43

1     Q.    When the -- can we agree that when the

2     cooker is pressurized, the handle cannot be rotated

3     freely and easily with just two or three fingers?

4     A.    No, it cannot.

5     Q.    At 1 psi will the user feel resistance in

6     the handle?

7     A.    1 psi is not very high.  There -- there

8     should be some resistance, of course, because the

9     floating valve is up.  It -- that -- that -- and so

10    if -- if we add the different loads together, so the

11    load of the pressure is low but the load of the

12    floating valve still is there.  So we have

13    combination effect.

14         As the pressure goes up, we feel more of

15    the resistance of the friction.  But the floating

16    valve, if it is up or down, even without pressure,

17    if you can manually move it up, there is resistance

18    to overcome it, and that is the locking mechanism by

19    itself.

20         So when -- when we design -- when we

21    design these pressure cookers, we need to make sure

22    that the lock is a good lock regardless of pressure

23    because even low pressures can explode and hurt

24    people.  So -- and most of the cases are then

25    because people assume it's clear of pressure, but

Soheil Eshraghi , PhD, PE                          January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 44

1    still there is some left.  And that some is enough

2    to hurt them.

3        Q.   You mention you'd feel resistance at 1 psi

4    because at 1 psi the float valve will still be up;

5    right?

6        A.   Yes.

7        Q.   So as long as there's some p- -- some

8    amount of psi in the unit, the float valve is up and

9    the user will feel resistance; true?

10       A.   Yes.

11       Q.   Can we agree that once pressure is

12   released, the pressure cooker is like a crockpot?

13       A.   What do you mean?

14       Q.   There's no pressure in the unit.  It's

15   just like any other pot with --

16       A.   Yes.

17       Q.   -- with food or liquid in it; right?

18       A.   Yes.

19       Q.   And a pot with hot liquid or stew can

20   cause an injury if spilled or mishandled; right?

21       A.   Yes, it could.

22       Q.   Can the -- can the Tristar pressure cooker

23   be opened at full operating pressure?

24       A.   I -- I didn't attempt it.  I -- I doubt

25   it, but I didn't attempt it.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 45

1        Q.    In your first report and your second

2   report, you've identified the documents you

3   reviewed, and there were four things, I think.  It

4   was -- you have it listed in your -- in -- in your

5   attachment to the report, but I need to pull up.

6             But you didn't mention you reviewed -- in

7   either -- in either report, you did not mention

8   reviewing various documents that Tristar produced in

9   the litigation, but when I got your file, you had --

10  looked like you reviewed just about everything that

11  Tristar produced in the litigation.

12            Is that true?

13       A.    The documents I received, I was looking

14  for -- yeah, I -- I -- I saw them.  I -- I looked at

15  many of them.  I was looking for design FMEA that

16  discusses the severity of explosion and its

17  mitigation, and I was looking for quality

18  conformance testing of that feature that I didn't

19  find.

20            But I did find the certification to UL

21  documents.

22       Q.    You did find -- you said you did find the

23  certification to the UL -- to UL; correct?

24       A.    Yes.

25       Q.    All right.  Did you rely on that document

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 46

1    in formulating your opinions?

2         A.    Well, I work at aerospace industry.  We do

3    qualifications when we create a product.  But during

4    manufacturing, things use full tolerance of the

5    drawings and the specifications, and we need to

6    check them again, make sure they are adhering,

7    especially for critical areas that could harm the

8    consumer, the aircraft can crash or whatever.

9              So what I suggest is that just testing

10   once does not guarantee that the property is there.

11   We need to validate.  So that's what quality

12   conformance tests are.  They are to -- to check

13   those properties.

14        Q.    In your first report on page 8, you state

15   "To investigate further the root cause for this

16   accident, we need to review the following

17   documents...."

18             And one of those documents you identify is

19   "UL Certification Test Results"; true?

20        A.    Yes.

21        Q.    All right.  And can you see my screen?

22        A.    Yes.

23        Q.    Does it -- does it show the UL Certificate

24   of Compliance?

25        A.    Yeah.  Let's -- let's go down to see what

Soheil Eshraghi , PhD, PE                 January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 47

1    document they are mentioning.

2           So this is 1026 and 136.  So they -- they

3    say they met those requirements.

4        Q.   Okay.  Thank you.

5           MR. HUBERT:  And we'll mark this

6        Eshraghi -- we can have this marked as

7        Eshraghi 1.

8           (Defendants' Exhibit 1 was marked for

9        identification.)

10   BY MR. HUBERT:

11       Q.   And so UL has certified that the Tristar

12   pressure cooker sat- -- has been investigated by UL

13   and satisfied UL 1026 and UL 136; correct?

14       A.   Yes.

15       Q.   Give me a second.

16          So that's a document you wanted to see,

17   and that document established that the pressure

18   cooker passed UL 136; true?

19       A.   Yes.

20       Q.   And you testified earlier that if a

21   pressure cooker passes UL 136, it is reasonably safe

22   and not -- and not defective; correct?

23       A.   Yes.  But I also mentioned that through

24   the production of different lots, those properties

25   need to be retested and validated.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 48

1     Q.    And what is -- UL stands for Underwriter

2  Laboratories?

3     A.    Yes.

4     Q.    And what is Underwriter Laboratories?

5     A.    It's a standards group that creates

6  requirements for different products and they propose

7  tests and validation and methods.

8     Q.    UL is an industry leader in the testing of

9  pressure cookers; correct?

10    A.    Yes.

11    Q.    And UL is an industry leader in many

12 industries; right?

13           They don't just test pressure cookers.

14 They test all kinds of consumer goods and other

15 mechanical devices; true?

16    A.    That's true.

17    Q.    And a pressure cooker distributor or

18 manufacturer doesn't -- isn't legally required to

19 have their units or products tested to -- tested by

20 UL; true?

21    A.    Well, they -- they need to test them to

22 make sure they meet those requirements.

23    Q.    Well, are you -- are you claiming that UL

24 is legally -- testing to UL is legally required or

25 is it voluntarily -- is it a voluntary thing a

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 49

1    company can do to show to the public that their

2    units meet the UL standards?

3         A.    Yeah, I don't know the answer to that

4    question.  I don't know if it is legally -- they are

5    legally obligated to do it or not, but those are the

6    tests that tell you that this product is safe to

7    use.

8         Q.    Okay.  So I found it here.

9              So in both of your reports, you mention

10   you reviewed the owner's manual for the 780, the

11   owner's manual for the 772, Tristar's web page, the

12   Consumer Product Safety Commission website, and

13   UL 136.

14             Any reason why you didn't, in your second

15   report, identify you reviewed, for example, the UL

16   certification?

17        A.    Well, in the second report, I -- I went

18   for what was clearly a malfunction reason.  After we

19   did the test, we had two things that we noticed.

20   One was the indication of the pressure cooker opened

21   under pressure at some point, and then the load

22   tests that were not meeting the UL requirement.

23             So for that particular pressure cooker, it

24   didn't matter if you have 10,000 documents that says

25   it meets it when it doesn't.  I mean, I can say I

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 50

1    weigh 100 pounds, but if I go on a scale and I am

2    200 pounds, who cares what that document is?  What

3    is it that I have?

4             And it -- the report also -- my -- my

5    philosophy is simple reporting on critical issues.

6    If, for example, I am a traveler of the Boeing 737

7    Max and the -- the door pops out, I say there's a

8    flaw.  I don't have to know the design parameters.

9    I don't have to know who certified it.  I don't have

10   to know what bolts they used, what loads they should

11   have.  I just know it shouldn't have exploded.  And

12   I say it's flawed because that's what is important.

13   The manufacturer has to go figure out what they did

14   wrong, but the result is obvious.

15            Same in this case.  When we have low loads

16   to open the lid, there is a flaw.  Now --

17       Q.   So are you -- are you opining that as long

18   as the -- as long as the -- as long as a -- the lid

19   comes off, there's a flaw regardless of the

20   circumstance?

21       A.   I -- I'm saying that if the lid is able to

22   open at a low load, that doesn't meet the

23   requirement.  That pot has a -- has a problem.

24   That -- that locking system has a problem, and it

25   needs to be investigated to see where that flaw is

Soheil Eshraghi , PhD, PE                          January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 51

1    coming from.  But from a function point of view, it

2    didn't work.  It should have -- it should have had

3    more than 100 pounds.

4         Q.   Is it your opinion that the user's actions

5    play no role in determining whether a defect exists

6    in this pressure cooker?

7         A.   The -- the user cannot produce defects

8    of -- of such magnitude.  If -- if a user goes and

9    gets a crowbar to open a locked door, locked lid,

10   yes, they -- they are at fault.  But if they are

11   using their hands and they push it open when it

12   shouldn't open, then that's a flaw of the locking

13   system.

14        Q.   All right.  So back to my original

15   question.  I want to estab- -- I just want to

16   establish that in your first report, you said that

17   you were interested in reviewing the UL

18   certification along with other documents.  And then

19   in the second report, you didn't mention that you

20   reviewed the UL certification or those other

21   documents; true?

22        A.   Yes.  But I did.  But I did that report.

23        Q.   What do you mean no, but you did?

24        A.   No.  I said I wanted to review and I saw

25   them, so I did review them.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 52

1      Q.    But you didn't put them in the second

2   report?

3      A.    Yeah.  But I didn't report it because

4   it -- it didn't matter if that particular pot didn't

5   meet the requirement.

6      Q.    You mentioned you work in the airplane or

7   aerospace industry; true?

8      A.    Yes.

9      Q.    And you have -- and you do fastener work

10   in that industry; right?

11      A.    Yes.

12      Q.    And we can agree that products like

13   pressure cookers need to be used in accordance with

14   their instructions; right?

15      A.    Yes.

16      Q.    And you, in your industry, have submitted

17   instructions to airplane manufacturers about how to

18   use your fasteners; right?

19      A.    Yes.

20      Q.    And you expect those users of your

21   products to follow the instructions you provide;

22   true?

23      A.    True.

24      Q.    And so all those documents you reviewed

25   from Tristar, I'm trying to find out if you relied

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 53

1    upon them in coming to your opinions or were they

2    simply just documents you reviewed for background

3    information?

4         A.   No.  I reviewed them.  I reviewed the

5    safety notes.  I reviewed the instructions.  I --

6    but, you know, I -- I cover mistake-proofing

7    concepts in design for our new engineers.  There are

8    different levels of mistake proofing.  For example,

9    putting notes and instruction, those are minimal

10   levels of mistake proofing.

11         And if -- like, for example, if I have an

12   issue that maybe I overcook my food or burn it,

13   okay, a note would be sufficient because there is no

14   harm to the user.  But when we get to this level of

15   explosion and burning and disastrous condition,

16   notes are not sufficient.

17         When we go up the ladder for mistake

18   proofing, the best is elimination of the situation.

19   And that is not possible because you cannot make the

20   pressure cooker to open by itself when it's ready.

21         So the next best thing is prevention,

22   prevention of the user doing something harm to him.

23   So this lock system is designed for prevention,

24   which means that he should not be able to open it if

25   it is under pressure.  So that is the most critical

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 54

1    part of that design.

2           Now, if that locking system is compromised

3    and it's not doing its function, it's faulty.

4       Q.   Well, right now all I'm trying to figure

5    out is what -- I'm trying to figure out if all -- if

6    you relied upon all the documents you reviewed or if

7    you only relied upon certain documents in

8    formulating your opinions.

9       A.   I relied on UL 136 and our test results

10   and the documents I received from Tristar.

11      Q.   In your first report you have, you talk

12   about plaintiffs' version of events.

13           Where did you get that information from?

14      A.   From Marty.

15      Q.   Did you review what's called

16   interrogatories, plaintiffs' responses to written

17   questions about how the accident occurred?

18      A.   I have -- everything that I have received,

19   I have reviewed.  I don't remember from Edward, but

20   recently, I read the deposition of Sheryl.

21      Q.   What about the Plaintiffs' Response to

22   Requests for Admissions?

23           Did you ever review those?

24      A.   I don't remember that document.

25           What was the name of it?

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 55

1      Q.    Plaintiffs' Response to Request for

2  Admissions.

3      A.    I don't see that in my document list.

4      Q.    Okay.  Now, when you got the unit, where

5  did you get it from or who did you get it from?

6      A.    If I remember correctly, it was with

7  John Pratt, and I took it from him.

8      Q.    And do you know if he did any testing or

9  did anything to it?

10     A.    No testing was done.  Everybody was

11  waiting for a group testing.

12     Q.    And can we agree that when you inspected

13  the pressure cooker, the float valve was not

14  clogged?

15     A.    Yes, I think so.

16     Q.    And the manual release valve was not

17  clogged as well; true?

18     A.    That's true, yes.

19     Q.    Okay.  So none of those valves were

20  clogged when you inspected the unit; true?

21     A.    That's true, yes.

22     Q.    Now, the locking tab was damaged; true?

23     A.    Locking tab?

24     Q.    Yes.

25     A.    What is a locking tab?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 56

1      Q.   The tab that the locking pin travels over

2  was damaged; true?

3      A.   Oh.  I don't say damaged.  I say

4  scratched.

5           Damaged means that it's not functioning.

6  It's functioning for holding the thing together, but

7  the top surface was scratched.

8      Q.   The scratch -- you'd agree with me that

9  what you're calling a scratch was evidence of the

10  unit being forced open while under pressure, right,

11  or at least attempted to be forced open while under

12  pressure?

13      A.   Yes.

14      Q.   And --

15      A.   If -- if the -- if the floating valve is

16  down, the locking pin can freely traverse that tab

17  with no pressure on it so they cannot create a

18  scratch.

19      Q.   So that scratch establishes that the unit

20  was attempted to be opened while under pressure at

21  some point in time; true?

22      A.   That's true.

23      Q.   And you don't know when that scratch

24  occurred; true?

25      A.   I have no idea.

Soheil Eshraghi , PhD, PE                                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 57

1    Q.   And your first report does not mention the
2    scratch to the locking tab; true?
3    A.   I -- I have to go look, but if it's not
4    there, it's not there.  Yeah.
5    Q.   Okay.  That's a prelude to this question
6    because I want to know when you first noticed that
7    scratch.
8    A.   After I had done some other test on some
9    other pressure cookers, when I saw that feature, I
10   went back to check it on this one.
11   Q.   Did you review any of Dr. Giachetti's
12   reports in this case?
13   A.   Yes.
14   Q.   Okay.  He -- in his report he mentions the
15   damage to the tab; correct?
16   A.   Yes.
17   Q.   Did you -- were you aware -- did you
18   become aware of that from reviewing his report?
19   A.   No.  Actually, I showed it to him.
20   Q.   Okay.  And so you were aware of it -- were
21   you aware of it before your joint inspection with
22   him?
23   A.   Yes.
24   Q.   And you pointed it out to him at that
25   time?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 58

```
 1          A.    Yes.
 2          Q.    And what -- and what was the -- what was
 3     the date that you guys had the joint inspection?
 4                Do you recall?
 5          A.    I think it was May 2.
 6          Q.    Of this -- of 2023; right?
 7          A.    Yes.
 8          Q.    Okay.  So let's talk about your reports in
 9     some detail now.
10                You prepared two reports for this case?
11          A.    Yes.
12          Q.    And your reports contain all of the
13     opinions you have in this case; correct?
14          A.    Yes.
15          Q.    Your intention was to advise the reader of
16     your opinions; true?
17          A.    Yes.
18          Q.    Which is why your opinions are contained
19     in your reports?
20          A.    Yes.
21          Q.    So...
22                And in your first report, you opine that
23     the 780 had design flaws that allowed its lid to
24     open under pressure to cause the injuries; correct?
25          A.    Yes.
```

Soheil Eshraghi , PhD, PE                         January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 59

1      Q.    Any other opinions in that report that I'm
2   missing?
3      A.    No.  It was just saying that if any
4   pressure cooker can be opened under pressure, it's
5   faulty.
6      Q.    And in your first report, you have this
7   design -- opinion of a design defect.
8           You have no opinions of a warnings defect
9   or a manufacturing defect; correct?
10      A.    That's correct.
11      Q.    And, similarly, in your supplemental
12   report, you opine that there was a design defect;
13   true?
14      A.    Yes.
15      Q.    And in your second report, you don't have
16   any opinions that there was a manufacturing defect
17   or a warnings defect?
18      A.    That's true.
19      Q.    Okay.  So, now, what was your methodology
20   for determining this design defect?
21      A.    So on the design, the components of the
22   locking system as an assembly should produce such a
23   force that no ordinary human being can overcome it.
24   And when we were able to open it under low load, it
25   became clear that that can be opened up by ordinary

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 60

1    human beings.

2         Q.   Well, when you did -- when you were with

3    Dr. Giachetti and you did the torque wrench test and

4    the -- the load -- what do you call the load sensor

5    test?

6              What were you calling it, the --

7              (Simultaneous speakers - unclear.)

8         A.   Yes.  We did the simulation exactly

9    rotating the lid open by pulling on a load cell.

10        Q.   Okay.  Now, how much water was in the unit

11   when you did that?

12        A.   I have to go back to the video.  I think

13   it was almost -- almost to the max level.

14        Q.   When -- when -- it was almost to the max

15   level when you did the test with Giachetti?

16        A.   I -- I have to go back and check.  I -- I

17   cannot tell exactly.

18        Q.   Okay.

19        A.   But we have a video of the process.

20        Q.   And is it true that the pressure at that

21   time in the unit was between 1/2 psi and 1 ps [sic]?

22        A.   So we don't know exactly because what we

23   did, we followed the UL 136 which says the minute

24   the floating valve moves up, you turn off the

25   heating element.  So our only goal was to move the

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 61

1    floating valve up in the locked position and then

2    test it.

3          Q.    So at that point in time, the pressure's

4    going to be low because it -- it's at the -- it's at

5    the moment that the float valve first engages with

6    the strike plate and locking mechanism; right?

7          A.    That's correct.

8          Q.    Okay.  So is it fair to say that the

9    pressure in the unit at that point in time is

10   approximately going to be somewhere between 1/2 psi

11   and 1 ps?

12         A.    It could be 1.  It could be 2.  But it's

13   not maximum.  That's correct.

14         Q.    Okay.  I mean, it's essentially enough

15   pressure to get that float valve up into the locked

16   position; right?

17         A.    Yes.

18         Q.    And because the float valve only weighs a

19   few grams, it -- it can go up -- it can certainly go

20   up into the locked position at less than 1 psi;

21   right?

22         A.    That's correct.

23         Q.    And so if you're to open the unit at less

24   than 1 psi, are you able to have an explosive event?

25         A.    I -- I think at very low pressures you

Soheil Eshraghi , PhD, PE                          January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 62

1   probably will not have an explosive event.  So it

2   has to be maybe -- we have to test, but maybe 1, 2

3   psi to create such a condition.

4        Q.    Now, is it true that when -- when

5   looking -- looking at whether a pressure cooker is

6   defective, you want to know if the unit can heat up

7   and pressurize if the lid is only partially engaged?

8        A.    That -- that's another aspect.  There are

9   many tests for making sure a pressure cooker is

10  functioning.  One of them is that, that it should

11  not pressurize if the lid is not in the right place.

12       Q.    Did you do any testing in this case to see

13  if the unit could heat up and pressurize when the

14  lid is partially engaged?

15       A.    I don't remember.

16       Q.    Okay.  It's not in either of your reports;

17  correct?

18       A.    No.

19       Q.    Right.

20             And we -- we discussed how your opinions

21  are in your reports; correct?

22       A.    Yes.  Because the -- the story was that

23  the users made sure the lid was in the locked

24  position at the right place.  So I didn't check any

25  other condition.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 63

1        Q.    Okay.  So you did not test in this case

2    that -- to determine whether the pressure cooker

3    could be pressurized if the lid is partially

4    engaged; correct?

5        A.    Yeah, I don't remember doing that.

6        Q.    And you didn't do it in this -- well, we

7    can confirm you didn't do it in this case because if

8    you had done it, you would have mentioned it in your

9    reports; right?

10       A.    Yes.

11       Q.    And another thing you looked for is

12   whether pressurization can occur if the lid is not

13   properly secured in the correct locked position;

14   true?

15       A.    That's something I do with the cases that

16   I know that could be a potential failure, and if the

17   people who got hurt, they mention that they don't

18   know what they did, they were in a rush, I would

19   test that.

20       Q.    And you didn't test that in this case;

21   right?

22       A.    No, I didn't.

23       Q.    So is that another way of saying you did

24   not determine to see if the float -- float valve

25   engaged improperly -- partially with the locking

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 64

1    mechanism?

2         A.    That may -- I may have done because one of

3    the things that I can do without testing is rotating

4    the lid and looking at the hole in the handle.  And

5    if you see the strike plate blocking the floating

6    valve, you know it cannot happen.  So that is a -- a

7    visual check that I do any -- any time.  But if

8    everything is okay, I don't have to report anything

9    because it's functioning as supposed to.

10        Q.    So did -- did you do that in this case and

11   you found no issue with it or you don't know if you

12   did?

13        A.    I -- I don't know, but I'm -- I'm sure I

14   had looked at it.

15        Q.    But -- but you didn't -- you didn't put it

16   in your report, so I'm assuming there was no issue

17   with it; right?

18        A.    Yeah.  Because that wasn't the scenario I

19   was investigating.

20        Q.    Okay.  And you also looked to see if

21   there's any broken components or sections in the

22   engaging elements?

23        A.    Yes.

24        Q.    And did you do that in this case?

25        A.    Yes.

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 65

1          Q.    And was everything fine there?

2          A.    Yes.

3          Q.    And is it true that you've never been able

4    to get a lid misaligned and have the pressure cooker

5    pressurize?

6          A.    I did not do that test.

7          Q.    But is it true that you've never been

8    able -- when you have done it or attempted to do it,

9    is it true that you've never been able to get a lid

10   misaligned and have the pressure cooker pressurize?

11         A.    Well, you have to test for it.  I -- I

12   didn't have them misaligned.  I went to the locked

13   end and then tested it.  That's how we tested it.

14         Q.    I'm just discussing -- not in this case

15   but, like, generally.

16               Generally speaking --

17         A.    Generally, there are some cases -- there

18   are some pressure cookers that actually can heat up

19   when the lid is in the wrong place and they are

20   recalled for it.  And I test for that, yes.

21         Q.    But you didn't do that in this case;

22   right?

23         A.    Not in this case.

24         Q.    Okay.  So let's look at some videos that

25   you provided.

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 66

1              Okay.  Dr. Eshraghi, can you see my

2      screen?

3          A.   Yes.

4          Q.   Okay.  And I received two videos from you.

5              Does that sound right, that you had two

6      videos created?

7          A.   Yes.

8          Q.   All right.  The first one is the one

9      that's on the screen.  We'll mark this as

10     Eshraghi -- we'll have this marked as Eshraghi 2.

11     It's a 9-minute-and-21-second video.

12              (Defendants' Exhibit 2 was marked for

13              identification.)

14     BY MR. HUBERT:

15         Q.   Do you know what this video shows?

16         A.   Yes.  This is a test of the pressure

17     cooker with the load cell to open the lid.

18         Q.   Okay.  And so this is the test that

19     Dr. Giachetti performed; correct?

20         A.   Correct.

21         Q.   And by the way, did you do any testing --

22     I know you tested -- you tested the incident unit.

23              Did you do any testing on any exemplar

24     units?

25         A.   No, I didn't.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 67

1      Q.   All right.  I'm going to hit play, and

2   then we'll watch it for a little bit.  And I'll

3   pause it, ask you questions, and kind of repeat that

4   until we're finished with the video; okay?

5      A.   Okay.

6           (Video played.)

7      Q.   All right.  And so in the clip that we saw

8   so far, Dr. Giachetti is testing how much force it

9   takes to get the lid off; right?

10     A.   Yes.

11     Q.   And this is -- this is -- I asked you how

12  much water was in it, and you think -- and you said

13  all the way, right, to the best of your

14  recollection?

15     A.   To the max line, I think.

16     Q.   Yeah.

17     A.   We have pictures of that.  We can look at

18  it.

19     Q.   Okay.  And then did you observe

20  Dr. Giachetti's hand, slash, the device he's holding

21  was shaking as he applied the torque or pressure or

22  force to the lid?

23     A.   Yes.

24     Q.   Okay.  And so it wasn't easy for

25  Dr. Giachetti to get up to the amount of force

Soheil Eshraghi , PhD, PE                        January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 68

1    needed to open the unit; correct?

2          A.    No.  He -- he was trying to make sure that

3    the line of pulling is always tangent to the radius.

4    So he was trying to move himself around and keep

5    that pulling, and he also didn't want to overcome it

6    fast and hit the stop point.  So he's trying to

7    manage the movement to get a load but not create a

8    damage to the other side.

9          Q.    UL 136 requires that the force or load be

10   applied tangentially; right?

11         A.    Yes.

12         Q.    So that's one -- that's -- so that's

13   why -- as you mentioned, that's what Dr. Giachetti

14   is trying to accomplish; correct?

15         A.    Correct.

16         Q.    And then UL 136 also says not to abruptly

17   jerk or pull the force.  It's supposed to be more

18   gradual; right?

19         A.    Yes.

20         Q.    Nevertheless, is it true that during the

21   first 11 seconds here, we see resistance and his arm

22   steadily moving forward as the apparatus he's

23   holding shakes?

24               (Video played.)

25         A.    Yeah.  There is resistance, of course.

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 69

1      Q.    And then you recorded the results; true?

2      A.    Yes.

3      Q.    All right.  Now, I've -- do we see your

4   testing with the torque wrench on this video?

5      A.    I -- I don't know.

6      Q.    Because I -- I looked at it the other day

7   and I didn't -- I didn't see it.

8      A.    Yeah, I -- I don't know if we recorded

9   that.

10     Q.    Was your test -- you -- oh, you don't know

11   if your test was recorded?

12     A.    Yeah.  I have to look at the video, but I

13   have pictures of the load and when we did it

14   together.

15     Q.    So, now, on your torque wrench, it took

16   40 pounds of force.  And on Dr. Giachetti's

17   methodology or version, it took 45 pounds, right?

18          You document -- I think you document that

19   in your report?

20     A.    Yes.

21     Q.    All right.  And so can we agree that 40 to

22   45 pounds of -- of torque or force is a -- a

23   significant amount of force?

24     A.    Well, every -- every pressure cooker

25   design has different shapes and forms for the

Soheil Eshraghi , PhD, PE                     January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 70

1    handle.  So some handles can take more load to open,

2    some less based on the design.

3              But what the UL standards committee has

4    agreed on is that 100 pounds minimum is what is

5    required for safety.  So 40, 45 pounds is not

6    sufficient.

7        Q.   My question wasn't whether it was

8    sufficient.

9              I'm asking you if -- if it takes a

10   significant amount of force to build up to 40 to

11   45 pounds of force.

12             To exert that amount of force is

13   significant; right?

14       A.   No.  Depends --

15       Q.   No?

16       A.   Depends how you do it.  If -- if I am

17   holding one end of the bottom handle and I'm pushing

18   on the top, human beings can push a -- a lot of

19   force when they are pushing and pulling.

20             So it's nothing, and somebody could apply

21   200 pounds.

22       Q.   Right.

23             Because pushing and -- pushing and pulling

24   creates a lever effect, doesn't it?

25       A.   Yes.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 71

1      Q.    And you as an engineer know that, don't

2   you?

3      A.    What we are saying to the handle, the

4   design, not -- not adding any equipment, we are just

5   saying that with the design of the PPC780, if you

6   hold the pressure cooker and push on the handle, you

7   may not feel it --

8      Q.    Now --

9      A.    -- when it was 40 pounds.

10      Q.    Now, going back to the video.

11            (Video played.)

12      Q.    When Dr. Giachetti opens the lid, does any

13   water come out?

14      A.    No.

15      Q.    So the -- the unit is filled to the max

16   with water, and after exerting 45 pounds of force,

17   no water comes out; right?

18      A.    Yes, that's correct.

19      Q.    Now, isn't it true that UL 136 requires

20   that the pressure cooker be half filled with water?

21      A.    Yes.

22      Q.    And then the heat is to be -- strike that.

23            And then in section 9 of UL 136, it says

24   "An ordinary user shall not be capable of manually

25   defeating the holding action of the clamping device

Soheil Eshraghi , PhD, PE                          January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 72

1    when the pressure in the cooker reaches a value that

2    creates a risk of injury to persons."

3              True?

4         A.    True.

5         Q.    And can we agree that there's no -- no

6    risk of injury to persons when no water can come

7    out?

8         A.    That's true.

9         Q.    And in UL 136, if the lid opens and no

10   water comes out, that is a pass; true?

11        A.    No.  If it -- if it doesn't reach 100 --

12   if the 100 pounds -- it -- it actually says that

13   that floating device, that locking mechanism shall

14   not be defeated.

15             Because we -- we don't know what the users

16   do.  I mean, we have a test.  The user may go to max

17   fill line.  That's a possibility.  And they --

18   mostly the people do.  They want a lot of food

19   served.  They fill it up.

20        Q.    In -- let me rephrase that question.

21             Well -- and you -- the way a formal UL 136

22   test is done is that you go -- you go all the way to

23   full, maximum operating pressure and then you do

24   100 pounds, and that 100 pounds is continuously or

25   gradually applied to the unit as the unit

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 73

1    depressurizes; correct?

2          A.    Yes.

3          Q.    And so when that pressure starts getting

4    into that lower range at that 2 psi, 1 psi, less

5    than 1 psi, if the unit -- if the lid becomes

6    displaced but no water comes out, that is a pass;

7    true?

8          A.    No.  It should not fail the load itself.

9                Let me see what section of it mentions it.

10               So if you look at section 9.6 of the UL,

11   the last sentence says "If the handle breaks...." --

12   okay.  That's one thing.  Hold on.  I have to find

13   that.

14               So section 9.5 says "If the pressure

15   cooker is provided with a mechanical locking device,

16   locking pin, that prevents the opening of the cover

17   under pressure, then the source of it may be turned

18   off as soon as activation of the locking can be

19   detected."

20               Now I'm looking for what is acceptable.

21               So Locking Operation Test.

22               So 9.9 says that "This locking feature

23   shall not be defeated."

24               So this 100 pounds shall not be defeated.

25         Q.    What section are you looking at?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 74

1        A.    9.9.

2        Q.    Doesn't 9.9 say "While conducting the

3    cover opening test, the pressure within the cooker

4    may be reduced by following the instructions in the

5    instruction manual, lifting the primary leaf --

6    relief device, having a fan blow air onto it, or any

7    other method as long as the safety features of the

8    cooker are not defeated, causing the cover to open"?

9        A.    Yes.  So --

10       Q.    That means -- that means -- that means the

11   person who's doing the testing cannot defeat the --

12   cannot test the unit with safety features defeated

13   or disabled; right?

14       A.    Yes.  So -- so in these conditions because

15   any small pressure can hurt people, that 100 pounds

16   is our minimum requirement for the locking

17   capability.

18       Q.    Okay.  So let's -- let's -- do you see my

19   screen here, section 9, "Cover Opening Test"?

20       A.    I see something else.  I see "Moving

21   Forward."

22       Q.    All right.  How about now?

23       A.    Yes.

24       Q.    All right.  So 9.1 "An ordinary user shall

25   not be capable of manually defeating the holding

Page 75

```
 1    action of the clamping device when the pressure in

 2    the cooker reaches a value that creates a risk of

 3    injury to persons."

 4         A.   Yes.

 5         Q.   Okay.  So doesn't that tell us that the

 6    test is whether an ordinary -- an ordinary user

 7    shall not be able to defeat the pressure cooker's

 8    safety mechanism when the pressure in the cooker

 9    reaches a value that creates a risk of injury to

10    persons?

11         A.   Yeah, that's what it's saying.  Yes.

12    It's --

13              (Simultaneous speakers - unclear.)

14         Q.   So -- so if no -- and -- and we've already

15    established that when no water comes out, there's no

16    risk of injury to a person.

17              So what UL is saying is that if you open

18    the unit but no water comes out, there is no risk

19    and it passes; true?

20         A.   No, no.  What I'm saying is that if the

21    consumer can fill up to max line and can overcome

22    the lock and it explodes on him, it's not allowed.

23         Q.   Right.

24         A.   It's -- it's a failed design.

25         Q.   Right.
```

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 76

1          But 9.1 is saying that the pressure cooker

2     can be opened under pressure, and the unit passes so

3     long as when it opens, it does not create a risk of

4     injury to persons because the pressure at that point

5     is so low that no water's going to come out; right?

6          A.    There -- there are cases that the

7     attempted opening is at very, very low pressure.  So

8     then they don't get hurt; right?

9          Q.    Right.

10         A.    But there are --

11         Q.    And I want -- and now I want your opinion.

12    I want -- is it -- is it your opinion that a

13    pressure cooker is reasonably safe if it can be

14    opened while still technically having some pressure

15    inside it but no water can escape or comes out?

16         A.    Okay.  I -- I want -- I can't answer that

17    because that's a particular case of a general case.

18    So when -- when we design a product, we want to

19    cover all the conditions, not just one particular

20    condition and say it's safe.

21              So, for example, if -- if the consumer can

22    fill up to, say, max line and then let's say at

23    2 psi can open this lid and get hurt, that design is

24    no good.  But, yes, if I tested it with no water and

25    just a few drops and then go to the -- a .02 psi and

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 77

1    nothing happens, I don't say that's a good design.

2    That just worked in the extreme good behavior of

3    this.  But in -- in the other side, it didn't

4    perform.

5              So we need to look at the whole options

6    that presents itself and then say if it's a good

7    design or a bad design.

8         Q.   Does a -- now that we've looked at

9    section 9.1, is it true that a pressure cooker

10   passes the cover opening test even if it's opened

11   under pressure so long as no -- that when it's open

12   so long as no risk of injury to persons is present?

13        A.   These are accumulative.  So this is one

14   requirement.  The 100-pound is one requirement.  All

15   of them have to be met.

16        Q.   Okay.  So I'm looking for a yes or a no.

17             Yes or no?  Does a pressure cooker pass

18   UL 136 even if it's opened, but when it's opened, it

19   does not create a risk -- opened under pressure --

20   but when it's opened, does not create a risk of

21   injury to persons?

22        A.   If it met the 100 pounds, you're correct.

23   If not, you are not correct.

24        Q.   But the 100-pound test, the 100 pounds is

25   with -- is in section 9, the Cover Opening Test;

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 78

1    right?

2         A.   Yes.

3         Q.   And 9.1 is telling you that you can defeat

4    the clamping device so long as when it's defeated,

5    it does not create -- the pressure cooker does not

6    create a risk of injury to persons; right?

7         A.   Let -- let's just say that we are

8    designing this test with this in mind, but the test

9    itself says it has to meet 100 pounds.

10        Q.   So now going back to --

11        A.   You cannot just pick one section of the

12   whole thing and say, well, I'm done with this test

13   because I didn't do this and did this.  The whole

14   thing is a test.

15        Q.   Going back to your -- we saw the video

16   with Dr. Giachetti.  And when Dr. Giachetti got up

17   to 45 pounds of pressure or force, there was no

18   water coming out of your completely filled pressure

19   cooker; right?

20        A.   Yes.

21        Q.   And when you did your test with the torque

22   wrench, when you got up to 40 pounds of force, no

23   water came out of your completely filled pressure

24   cooker; true?

25        A.   Yes.  But you know what, it shouldn't have

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 79

1    come, but we also made sure that the lid doesn't

2    open.  We put a stop at the end of the movement, so

3    as we got the maximum load, the tabs did not

4    disengage.

5         Q.    Right.  No, I understand that.

6              But that's why I asked you earlier, that

7    the -- the -- the amount of psi, the amount of

8    pressure in the pressure cooker was so low at that

9    time that the water could not come out even if you

10   didn't have that key or lock --

11        A.    No.

12             MR. SENN:  Let -- let me just object to

13        the extent it misstates his testimony.

14             But you can answer.

15             THE WITNESS:  Yeah.  So -- so what I'm

16        saying is that the way we did that test, we

17        made sure that the lid doesn't disengage for

18        any potential explosive behavior.

19             So what we did, we put a stop to the

20        rotation of the lid.  And then as we opened it,

21        we took the maximum force, but it never went

22        beyond a point of separation.  So it was always

23        locked in place.

24   BY MR. HUBERT:

25        Q.    I understand that.

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 80

1            And -- and you did testify earlier that

2     when you -- that water will not come out of the --

3     of the unit when opened under pressure if the

4     pressure is very low, at, say, 1 psi or less than

5     1 psi; right?

6         A.   Yes.

7            MR. SENN:  Ted, we've been going about

8         two hours.  Would this be a good time to take

9         just a five-minute restroom break?

10           MR. HUBERT:  Yeah.  You can take

11        ten minutes.  Ten minutes is fine.  I don't

12        care.

13           VIDEOGRAPHER:  Okay.  The time is

14        2:55 p.m.  We're off the record.

15           (Off the record.)

16           VIDEOGRAPHER:  The time is 3:05 p.m.

17        We're on the record.

18    BY MR. HUBERT:

19        Q.   All right.  Dr. Eshraghi, we're back on

20    the record.  I want -- we talked about that first

21    video.  Now I want to talk to you about the second

22    video you provided.

23           And that's a video of you with a pressure

24    cooker in your backyard; correct?

25        A.   Yes.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 81

1              MR. HUBERT:  Okay.  So I think that brings

2         us up to Eshraghi 4; is that right?

3              Anyone?

4              MR. SENN:  I thought it was 3, but...

5              MR. HUBERT:  Okay.  Yeah.  1 was UL; 2 was

6         the first video; and so we're 3.  Okay.  Thank

7         you.

8              (Defendants' Exhibit 3 was marked for

9         identification.)

10             (Video played.)

11   BY MR. HUBERT:

12        Q.   Okay.  Can you see the -- the video,

13   Doctor?

14        A.   Yes.

15        Q.   All right.  When was this test performed?

16        A.   May 2.

17        Q.   Was it performed with Dr. Giachetti being

18   there or was he not -- not there?

19        A.   No.  After he left.

20        Q.   Was there any particular reason why you

21   waited to perform this test after he left?

22        A.   I wasn't sure if we should do it or not do

23   it.  So after he left, we discussed, we said, "Why

24   not.  Do it."

25        Q.   You said "Why not."

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 82

1          Did you -- did you have a conversation

2    with someone about to do it after he left?

3          A.   We were talking to Marty.

4          Q.   So after talking to Marty, you decided to

5    do the test after Dr. Giachetti left?

6          A.   Yes.

7          Q.   Don't you think it would have been better

8    if you did it in the presence of Dr. Giachetti?

9          A.   I -- I don't know.

10         Q.   Did you give any notice to Tristar that

11   you were going to do this test?

12         A.   We suggested it at the beginning.  They

13   didn't show much interest.

14         Q.   You suggested it to Dr. Giachetti at the

15   beginning?

16         A.   Yes.

17         Q.   Did you have a written protocol for this

18   test?

19         A.   I had submitted a protocol in advance when

20   we were discussing how to do it.

21         Q.   Okay.  So do you have a written -- do you

22   still have that written protocol for this test?

23         A.   I think so.

24              MR. HUBERT:  Marty, I don't know if I have

25         that.  If not, I -- I'm requesting it.

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 83

1          MR. SENN:  I -- I think that was in email

2      correspondence between Stephen and I.

3          MR. HUBERT:  Okay.

4          MR. SENN:  I'll -- I'll look at it today.

5  BY MR. HUBERT:

6      Q.   All right.  And -- and when you mentioned

7  this test to Dr. Giachetti, why did -- why was he

8  hesitant to do it?

9          MR. SENN:  Object to the extent it calls

10     for speculation.

11         THE WITNESS:  He -- he was done with his

12     tests.  He had his own number.  This was extra.

13  BY MR. HUBERT:

14     Q.   Well, I thought you mentioned that you

15  were going to do this test to Dr. Giachetti.

16         Is that true or false?

17     A.   No.  Originally we said, "Can we do this?

18  Can we do this?"

19         He -- he said, "If you want."  At that

20  time he said, "Okay.  There is no need because we

21  already got the numbers."

22     Q.   I see.

23         From the prior test?

24     A.   Yes.

25     Q.   Why did you want to do the test in this

Soheil Eshraghi , PhD, PE                            January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 84

1    video?

2        A.    I -- I wasn't sure about how 40, 45 pounds

3    relate to the actual opening.

4        Q.    That's why you wanted -- what do you mean

5    by that?

6        A.    I was testing myself to see if -- I -- I

7    don't have big muscles.  I just wanted to know how

8    easy that 40-pound was.

9        Q.    Now, the -- the test that you did in this

10   video, was this taught to you by someone?

11       A.    This is the test that I was telling you

12   that John Pratt used to do.

13       Q.    So John Pratt told you how to do this

14   test; true?

15       A.    John?  Not this test.  But originally,

16   years ago, when he was showing me this test, I was

17   always worried about getting hurt.  So I was

18   hesitant.  But then after I bought the proper

19   equipment and I did some trials in the past, I felt

20   safe to do it.

21       Q.    You have a video camera set up on another

22   platform.

23              Is that true?

24       A.    It's a tripod, yeah.

25       Q.    All right.  And how far away was the video

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 85

1    camera from the pressure cooker?

2        A.    6 foot, maybe 8 foot.  I'm not sure.

3        Q.    And why -- why did you -- why did you set

4    it -- set the camera 6 to 8 feet away?

5        A.    Oh, in case it gets wet.

6        Q.    Did it occur to you that it might be more

7    probative or helpful if the camera was closer?

8        A.    Well, it has zoom, so it's capturing it.

9        Q.    Have you produced the zoom feature of the

10   camera?

11       A.    This is it.  This is a -- this is it.

12       Q.    Okay.  So this is the only version that

13   you have?

14       A.    Yes, that's it.

15       Q.    All right.  The video is only 19 seconds

16   long or about that; right?

17       A.    Yes.

18       Q.    Okay.  So the video doesn't show you what

19   you did in getting the pressure cooker ready; right?

20       A.    No, it doesn't.

21       Q.    Okay.  So what did you put in the pressure

22   cooker?

23             Water?

24       A.    Water.

25       Q.    And how much?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 86

1           Did you fill it up all the way?

2      A.    To the max line.

3      Q.    And how long did you allow the unit to

4  pressurize?

5      A.    I think it -- after the floating went up,

6  I waited a few, 10 seconds, 20 seconds before I

7  turned it off.

8      Q.    And why did you wait 10 to 20 seconds

9  before turning off -- why did you wait 10 to

10  20 seconds after the float valve went up to turn the

11  pressure off?

12      A.    Because if -- if you have -- if you have

13  no time, there -- really there is not much pressure

14  in there.

15      Q.    Did you measure how much pressure was in

16  there when you opened it?

17      A.    Oh, I -- I -- no, I don't have a -- I

18  didn't have it attached to a pressure sensor at the

19  time.

20      Q.    But you have done that?

21      A.    For other tests, yes.  I -- I use the

22  bubble valve on top.  I can attach a pressure sensor

23  and measure pressure.

24      Q.    And so you don't show how you put the lid

25  on the unit; right?

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 87

1        A.    The lid is on the locked position, same

2    as -- well, it should be a normal operation.

3        Q.    My question is you don't show us on the

4    video putting the lid on the unit; correct?

5        A.    No, no.  It's already -- the minute I

6    started to open, I videoed it.

7        Q.    And you didn't show us the position of the

8    lid liner inside the lid before you put the lid on

9    the unit in the video; right?

10       A.    No.

11       Q.    All right.  Let's play the video for a

12   second and I'll ask you a question.

13             (Video played.)

14       A.    Okay.

15       Q.    As you approach the unit, do you hear a

16   hissing sound?

17       A.    No.  This is after -- this is after I

18   turned it off.

19       Q.    Right.

20             And as -- and on the video, I hear a

21   hissing sound.

22             Can you hear that hissing sound?

23       A.    I'm not hearing anything.

24       Q.    Can you turn your speakers all the way up

25   and then I'll replay the video?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 88

```
 1        A.    Okay.
 2              MR. SENN:  I think you just have to do it
 3        from your general speaker volume, not inside
 4        the video player.
 5              THE WITNESS:  It's maximum.
 6              Okay.  Go ahead.
 7              (Video played.)
 8  BY MR. HUBERT:
 9        Q.    Did you hear that hissing sound when you
10  approach the unit?
11        A.    No.  Actually, I don't.  I have to -- I
12  don't hear anything coming from the video.
13              VIDEOGRAPHER:  I didn't hear anything
14        either, Counsel.  You may have to --
15              MR. HUBERT:  Okay.  Yeah.
16              VIDEOGRAPHER:  -- share the audio at the
17        top.
18              MR. HUBERT:  Yes.  Let's see.
19              MR. SENN:  I mean, we -- we can hear --
20              (Simultaneous speakers - unclear.)
21              MR. HUBERT:  Hold on.
22              MR. SENN:  -- video audio.
23              MR. HUBERT:  How do I do this again?
24        Remember, anyone?
25              VIDEOGRAPHER:  Would you like to go off
```

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 89

1        record, Counsel?

2              MR. HUBERT:  Yeah.  Let's go off the

3        record for a sec.

4              VIDEOGRAPHER:  Okay.  The time is

5        3:15 p.m.  We're off the record.

6              (Off the record.)

7              VIDEOGRAPHER:  The time is -- the time is

8        3:16 p.m.  We're on the record.

9    BY MR. HUBERT:

10        Q.   Dr. Eshraghi, I'm going to play the video

11   for a few seconds and then I -- I'll stop it.  And

12   my question to you is do you hear any hissing -- a

13   hissing sound?

14              (Video played.)

15        Q.   Did you hear the hissing sound?

16        A.   Yeah.  I don't know what that sound is.

17        Q.   Okay.  Does steam make a hissing sound as

18   it escapes from pressure cooker?

19        A.   It will, yes.

20        Q.   And was there steam escaping from the

21   float valve or the side of the pressure cooker when

22   you approached the unit?

23        A.   No.

24        Q.   So no steam according to you, but we did

25   hear a hissing sound which steam makes; right?

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 90

1      A.    Yeah, but this is open space.  I don't
2  know where that sound was coming from.
3      Q.    Yeah.
4            And it was you who put the pressure cooker
5  in an open space in your backyard; correct?
6      A.    Yes.
7      Q.    And if the camera was closer, we could
8  objectively determine whether there was any steam
9  coming out of the unit; right?
10      A.    You -- yeah, if the zoom -- if it was
11  zoomed in, we could have seen more, yes.
12      Q.    And you were the one who was in control of
13  operating the camera, right, and positioning it?
14      A.    Camera actually in -- in this camera, I --
15  I -- I am thinking that Marty was helping me with
16  taking the video.
17      Q.    Oh.  So someone else was with you at the
18  time of this -- this occurred?
19      A.    Yes.
20      Q.    All right.  And was -- was -- was
21  plaintiffs' counsel assisting you with the video?
22      A.    Yes.
23      Q.    All right.  And did he have any protective
24  gear on or no?
25      A.    No.  He was way back.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 91

1      Q.   Way back; right?

2           6 to 8 feet back; right?

3      A.   Maybe even more.  I -- I have to go

4  measure the distance.

5      Q.   All right.  I noticed that there's some

6  water or some liquid that is on the ground.

7           What is that?

8      A.   Maybe when I was filling it up.  I don't

9  remember if it -- if it dropped out or not.

10     Q.   There seems to be -- hold on.

11          Okay.  There seems to be some water on the

12 table, too.

13          Is that true?

14     A.   Yes.

15     Q.   And do you know what that's from?

16     A.   No.  Maybe when I was filling it up.  I

17 don't remember.

18     Q.   Was anyone with you besides plaintiffs'

19 counsel?

20     A.   No.

21     Q.   And so if there was steam coming out of

22 the units when you go to open it, that would mean

23 that there's not a complete seal; correct?

24     A.   If that's the case, yes.

25     Q.   Which means that pressure is escaping as

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 92

1    you're trying to open it; correct?

2         A.    Yeah, but it wasn't.

3         Q.    And that would make it easier to open,

4    wouldn't it?

5         A.    You know, I'm -- I'm trying to -- I'm

6    trying to open it when the floating valve is up.  So

7    that -- that condition exists.  If the floating

8    valve is up and there is some pressure in it and

9    it's -- it's not releasing anything, because if --

10   if that happened, it would drop and then become a

11   useless test.

12        Q.    But if the float valve isn't up all the

13   way, it's not completely engaging with the locking

14   mechanism; true?

15        A.    Floating valve is either up or down.

16        Q.    So in your opinion, it doesn't matter if

17   the float valve is only -- so in your opinion,

18   the -- there's no impact on the locking mechanism if

19   the float valve is only, say, a half or

20   three-quarters of the way up?

21        A.    Floating valve stays up and then it drops.

22        Q.    If the float valve is all the way up, then

23   there shouldn't be steam coming out of the unit;

24   right?

25        A.    No.  And it wasn't.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 93

1          Q.    Now, let's play it some more.  I'll play

2    it past the point of this happening at, and I'll ask

3    you some more questions; all right?

4          A.    Yep.

5                (Video played.)

6          Q.    What are you doing with your right hand

7    there?

8          A.    I -- I was moving it.  And I think I was

9    holding the wrong side for opening.  So I had to go

10   back to the right side -- to the other side.

11               (Video played.)

12         Q.    Okay.  Now, with your left hand, you're

13   holding down the pressure cooker; true?

14         A.    Yes.  I am holding and rotating from me.

15         Q.    And we see the top of your thumb here;

16   true?

17         A.    I am holding the top handle.

18         Q.    Right.

19               And you're -- you've gripped the top

20   handle, but you also have your thumb extended to

21   help create a lever; right?

22         A.    I'm -- I'm trying to manage the opening

23   without jumping.  So I was looking to see when that

24   the lock is only going over the top of the tab and

25   not go too far.  So I'm trying to be very much in

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 94

1    control.

2         Q.    Your -- your thumb is on the lid; true?

3         A.    My whole hand is.  Yes.

4         Q.    Your whole hand -- you have both hand --

5    you have -- your -- your right hand is on the lid

6    with your -- with your thumb on the lid as well;

7    true?

8         A.    Yeah.  That's how I hold it, yes.

9         Q.    Okay.  And then you have your left hand on

10   the lid as well; true?

11        A.    Yes.  I'm -- I'm holding it from turning

12   from me, yes.

13        Q.    Was there any testimony in this case that

14   the plaintiff used two hands to open the pressure

15   cooker?

16        A.    I -- I saw that Sheryl wasn't sure, at the

17   last questions they were asking her, she wasn't sure

18   where the other hand was.

19        Q.    Didn't she testify that only his right

20   hand was grasping the lid?

21        A.    At the beginning I think she said that.

22        Q.    So there's no evidence in this case that

23   Mr. Copeland was using two hands to open the lid in

24   the manner in which you are attempting to do in this

25   video; right?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 95

1          A.    Yes.   And as I mentioned before, the way

2     these handles are designed, some -- some don't have

3     the side handle, so you can't hold it anyway.   Some

4     have something to hold onto to make sure you don't

5     turn it or rotate it.   And probably for these

6     designs of PPC780, I would say majority will use two

7     hands to make sure it doesn't turn from them.

8          Q.    My question is, simply, there's no

9     testimony or evidence in this case that Mr. Copeland

10    was using two hands to open the pressure cooker like

11    we see you using in the video; right?

12         A.    No.   The only thing was, as I mentioned,

13    that she didn't know where the other hand was.

14              (Video played.)

15         Q.    Now, you just had the lid move -- you --

16    we just saw the lid move; correct?

17         A.    Yes, yes.

18         Q.    And -- and so at that point in time --

19    now, no water came out when you did that; right?

20         A.    No.   Because it's halfway up the tab --

21    sorry.   That's what I was mentioning.   I didn't want

22    it to push all the way.   I wanted to be in control

23    so I can hold the lid down and it doesn't jump on

24    me.

25         Q.    And so now you know that the unit is

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 96

1    partially unlocked or unlocked; right?

2         A.    Yes, yes.

3         Q.    And so you were able to unlock it without

4    any water coming out; right?

5         A.    Yeah.  Because I didn't open it.

6               (Video played.)

7         Q.    You tried to open it just then when I --

8    when I played it again.  You couldn't; right?

9               And so that's why you -- with only one

10   hand, so you had to bring your second hand back in,

11   right, to hold it down, the whole unit down?

12        A.    So -- so what happened was, it's

13   already -- the lock is already moved up to the tab.

14   But as you know, it's pressurized.  So I thought it

15   was going to open, but because it's turning, to stop

16   the turning, we have to hold it somehow.

17        Q.    Are you saying at that point in time, the

18   locking pin had already gone over that locking tab?

19        A.    Yes.

20        Q.    And -- and even with that pin past the

21   locking tab, you still needed two hands to

22   eventually open it; right?

23        A.    Yeah.  I had to keep it from rotating.

24        Q.    In order -- you had to keep it from

25   rotating in order to open it; right?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 97

1        A.    Yes.

2              (Video played.)

3        Q.    All right.  And then you opened it; right?

4        A.    Yes.

5        Q.    All right.  So that test, the test that

6   you performed, where you use -- the way you use your

7   hands and what you did isn't recognized in the -- by

8   UL; right?

9        A.    No.

10       Q.    In -- in other words, what we saw in the

11  video is not a UL 136; true?

12       A.    No, not at all.

13       Q.    And so that test that you performed on

14  the -- on that second video we just watched is not

15  recognized by the pressure cooker industry; correct?

16       A.    I don't know that part.  I think pressure

17  cooker manufacturers probably do these kinds of

18  tests to see what is the capability of normal people

19  opening their pressure cookers.

20       Q.    You don't know what manufacturing --

21  manufacturers do or don't do because you've never

22  worked for one, employed by one, or been consulted

23  by one; right -- or consulted for one?

24       A.    That's not -- I am suggesting that that

25  could be used as a method of getting firsthand

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 98

1    information.

2         Q.    Can we agree that forcing a pressure

3    cooker lid off is an unforeseeable misuse?

4         A.    I -- I -- I don't know how much force is

5    misuse.

6         Q.    Can we agree -- earlier you testified that

7    you expect your airplane manufacturers that you

8    provide instructions to to follow the instructions;

9    right?

10        A.    Yes.

11        Q.    So can we agree that it's unforeseeable

12   for someone to not follow the instructions to a

13   product?

14        A.    Yes.  But because we don't define exactly

15   how much force is force, so to everyone, that force

16   has a different meaning.

17             For example, a child may apply 2 pounds

18   and say, "Oh, this is too much force I'm applying."

19   And a body builder can apply 100 pounds and say,

20   "That's not too much force.  That's just my hand.

21   I'm -- I'm using my hands to open."

22             So it's kind of not precise.

23             So whenever we say in generality you

24   shouldn't apply force, it could be interpreted as

25   the force that may bother someone, not that is

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 99

1    comfortable for them.

2              So that's where the issue is.  The issue

3    is what is that?

4              And that's -- that's why the UL has a

5    specific number to achieve.  So --

6              (Simultaneous speakers - unclear.)

7         Q.    I'm sorry.  Do you need to finish?

8         A.    Yeah.  I'm saying that's why UL has a

9    specific number so there is no more personal

10   interpretation of what is the force.

11        Q.    My question is it's unforeseeable to a --

12   whether it's a product distributor, a manufacturer,

13   or someone like yourself, an engineer, who provides

14   fasteners to airplane manufacturers for the

15   receiving party to not follow the instructions on

16   how to use the product or device; correct?

17             MR. SENN:  Object to the extent it's asked

18        and answered.

19             But you can answer.

20             THE WITNESS:  Let me give you another

21        example.  If -- if I want to torque a bolt to a

22        specific number and not overtorque, like for

23        your car, for the wheel, you -- you give them a

24        torque wrench because strong people will apply

25        too much and not so strong people apply less

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 100

1           because to them, definition of force has
2           different value.
3      BY MR. HUBERT:
4           Q.    Not -- I'm not talking about force.
5                 Yes or no?  It's unforeseeable for someone
6      to not follow the instructions that are provided
7      with a product or device?
8           A.    If -- even in that, when I was reading the
9      deposition from Sheryl, I noticed that even when
10     they mentioned they read the instructions, they were
11     looking at the locking pin by mistake as a way of
12     figuring out if the pressure is done or not.  So
13     instructions by themselves, if they are not clear
14     and not understood, can be misinterpreted.  That's
15     why the design has to be --
16          Q.    You --
17          A.    -- stay-proof.
18          Q.    You're not a human factors expert;
19     correct?
20          A.    To what level you're talking about?
21     Because --
22          Q.    You don't -- you don't have any opinions
23     in this case on warnings.
24                We've already established that; true?
25          A.    No.  I always have opinions on warnings.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 101

1              What do you mean?

2        Q.   You -- you testified earlier today that

3   you had no opinions on a warnings defect; true?

4        A.   I don't remember that.

5        Q.   In your reports, you have no opinions that

6   there's a warning defect.

7              Your only opinion is that there's a design

8   defect; true?

9        A.   True, yes.

10       Q.   Okay.  You testified earlier that you

11   expect your -- your airplane manufacturer clients to

12   follow your instructions; true?

13       A.   True.

14       Q.   And because you expect them to follow

15   you -- your instructions, you would not foresee them

16   not following your instructions; true?

17       A.   I -- I believe they should follow

18   instructions.

19       Q.   All right.  These photographs you sent

20   me --

21            MR. HUBERT:  And, Marty, this is more for

22       you, I suppose.  I'm not able to look at these

23       images.  So perhaps --

24            (Simultaneous speakers - unclear.)

25            MR. HUBERT:  -- perhaps there's another

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 102

1        format you can send them to me.

2             THE WITNESS:  I have to export them to

3        JPEG.  I can send you.

4             MR. SENN:  Yeah, I think you have to

5        download them.  And once you get that link,

6        Ted, I think you have to then download the

7        files from the link.

8             MR. HUBERT:  Okay.

9             MR. SENN:  Then they should -- they should

10       pop up, or you should be able to open them

11       after that.

12            MR. HUBERT:  All right.  I'll look into

13       that.

14            Stop share.

15  BY MR. HUBERT:

16       Q.   All right.  In your -- okay.  In your

17  report you mentioned some alternative designs that

18  was on a different Tristar pressure cooker.

19            Why do you mention those?

20       A.   I have to look at it.  Did -- did I give

21  you alternative designs?

22       Q.   Sure.

23            So on page 6 of your report, you say you

24  searched the Internet for the 780.  Couldn't find

25  it.  You say the model was discontinued and replaced

Soheil Eshraghi , PhD, PE                          January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 103

1   with an improved version, the PPC772.  And you

2   mention the 772 has a magnetic sensor to make sure

3   the lid is in the proper locked position, and it

4   also has a red pressure indicated -- indicator pin.

5            And then you conclude that the designs

6   were implemented to improve the safety of the

7   pressure cooker.

8        A.   So I didn't propose these things.  I

9   reported them.  When I looked at the PPC772, I

10  noticed these upgrades to the design.  And these are

11  additional features that can make the pressure

12  cooker safer for the consumer.

13       Q.   Are -- are you opining that the -- that

14  the acts and -- would not have occurred if these

15  alternative designs were implemented in the 780?

16       A.   No, I'm not saying that.  I'm saying that

17  each design, as it goes through usage, there are

18  additional safety and ease-of-use features that are

19  added to it to make it better.  And these are --

20  these are going to make it better.

21           But -- but these additional features

22  cannot compensate if the locking system is not

23  properly designed.  So that's a separate thing.

24           But, for example, if I can see the

25  floating valve more clearly, if it is up or down,

Page 104

1    then as a consumer, I may not try to open it versus

2    a design that I don't know if it is up or down

3    because it's buried in the handle.  So that helps.

4           Like the magnetic sensor will guarantee

5    that it's in the proper location to start.  So these

6    are all good things.

7        Q.   Page 6, you say "The design updates were

8    implemented to improve the safety of the pressure

9    cooker."

10          What's the basis for that statement?

11       A.   The understanding of the functions.

12       Q.   You don't -- you don't -- you don't

13   actually know -- you're not aware of any statements

14   that Tristar has made as to why those design

15   features were implemented, do you?

16       A.   Well, I -- I am sure because the -- there

17   are other manufacturers who have done the same

18   things to improve their safety.

19       Q.   So the basis for the statement that the

20   designs were implemate- -- implemented to improve

21   the safety of the pressure cooker is an assumption

22   on your part; true?

23       A.   I -- I go based on function and

24   performance and I form my opinion, because if it was

25   just for beauty -- because what is this for?  Is it

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 105

1    cost reduction?  Is it cosmetic for people to buy it

2    because it looks better?

3              It's for safety.

4         Q.   You're not basing that statement that the

5    design updates were implemented to improve the

6    safety of the pressure cooker on any statements that

7    Tristar has made; true?

8         A.   I have not seen any statement from Tristar

9    that talks about this.

10        Q.   All right.  In your reports you don't

11   opine how the lock should be designed; true?

12        A.   True.

13        Q.   Okay.  So you're opining a design defect

14   in this case, but you don't opine what the

15   alternative design should be; true?

16        A.   True.

17        Q.   I want to show you what we'll mark as

18   Eshraghi 4 in a second.

19              Before I do that, all your opinions in

20   this case involve defects while -- a defect while

21   the unit is pressurized with the float valve up;

22   correct?

23        A.   Yes.

24        Q.   All right.  And this alleged defect can

25   only manifest if someone forces open or -- or

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 106

1    attempts to open the pressure cooker while still

2    pressurized; right?

3        A.    Correct.

4        Q.    And so your opinion in this case is

5    dependent upon the float valve being up; correct?

6        A.    Yes.

7        Q.    And your opinion is dependent upon the

8    float valve -- excuse me, on the unit being

9    pressurized?

10       A.    Okay.  We have to separate the float valve

11   performance versus the pressure that could cause

12   harm.  I know they are related to some -- at some

13   ranges, but as we discussed before, if the pressure

14   is very high, probably nobody can open the lid.  And

15   if the pressure is very low, there may not be an

16   explosion.  So there is a range that these two will

17   have a potential for harming people.

18       Q.    All I'm -- all I'm saying is that your

19   opinions are dependent on the unit being

20   pressurized?

21       A.    For the float valve to be up, there has to

22   be --

23       Q.    No, no.

24       A.    -- some pressure.

25       Q.    Yeah.  And -- and what I'm -- yeah, right.

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 107

1           And what I'm saying is, for the defect to

2   have caused the injury in this case, the unit had to

3   be under pressure?

4       A.   Yes.

5       Q.   So you have no opinions that there is a

6   defect which -- strike that.

7           In other words, all your opinions are

8   dependent upon a user attempting to remove the lid

9   while the unit is pressurized; right?

10      A.   Yes.

11      Q.   Okay.  I'm showing you what we'll mark as

12  Eshraghi 4.

13          (Defendants' Exhibit 4 was marked for

14          identification.)

15  BY MR. HUBERT:

16      Q.   These are Plaintiffs' Responses to

17  Tristar's Request for Admissions.

18          Can you see my screen?

19      A.   Yes.

20      Q.   All right.  So we asked the plaintiff to

21  admit or deny various facts in the case.  You'll see

22  Number 2 -- Number 1 -- we'll start with 1.  One is

23  "The accident occurred on July 18, 2020.  Admit."

24          Number 2 is "On July 18, 2020, they were

25  using the 780 pressure cooker."

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 108

1            And it was admitted.

2            Do you see that?

3       A.   Yes.

4       Q.   So coming down to Number 15 here, it says

5   "Plaintiff waited until the float valve dropped

6   before attempting to remove the lid."

7            And it says "Admitted."

8            Do you see that?

9       A.   Yes.

10      Q.   All right.  So you've confirmed for us

11  already today, right, that if the float valve is

12  down, there is no pressure in the unit; correct?

13      A.   Correct.

14      Q.   So according to this, according to

15  Number 15, when plaintiff opened the pressure

16  cooker, there was no pressure in the unit; correct?

17      A.   Not correct.  Because they say when they

18  try to open it, it exploded.  So there was pressure

19  in the cooker.

20      Q.   Right.  No.

21           But in Number 15, it says that the float

22  valve was down; correct?

23      A.   Yes, that's what they say.  But I don't

24  know if they know what they are talking about or if

25  they could see it well.  I don't know any of that.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 109

1      Q.   All right.  But you see that it's admitted
2  here; true?
3      A.   Yes, of course.
4      Q.   Okay.  And Number 14 establishes --
5  Number 14 says "Plaintiff turned the pressure
6  release valve to release the steam inside the
7  pressure cooker..."
8           True?
9      A.   True.
10     Q.   And Number 13 says that they "placed the
11 lid on the pressure cooker... depicted in the
12 general operating instructions section of the
13 owner's manual."
14          And it says "No exhibit was attached but
15 admitted as pled."
16          True?
17     A.   That's what I see, yes.
18     Q.   And you understand that the plaintiffs
19 used the pressure cooker about 40 or 50 times before
20 the accident occurred?
21     A.   Yes, yes.
22     Q.   All right.  And you don't explain in your
23 reports how it is that the pressure cooker was able
24 to be used 40 to 50 times without any type of
25 incident; right?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 110

1          A.    No.

2          Q.    Now, just based upon those admissions we

3    saw where the plaintiff said the float valve was

4    down, you'd agree with me that the accident could

5    not have occurred that way, right, if the float

6    valve was down?

7          A.    Yeah.  So -- so what I see or what I hear

8    or what I understand is that they say things, but

9    then they had a pressure cooker that exploded.  And

10   the explosion tells me there was pressure inside the

11   cooker.

12         Q.    Now, the -- there was also testimony in

13   the deposition and interrogatories that they waited

14   about 45 to 60 minutes before they attempted to open

15   the pressure cooker; right?

16         A.    Yes.

17         Q.    And when the cook cycle completed, they

18   unplugged the unit; right?

19         A.    I don't remember that.  But as -- as you

20   say, if they said it, that's true.

21         Q.    So, now, when you unplug the unit, the --

22   it's no longer going to be in the "keep warm" mode

23   and the pressure will dissipate over time; right?

24         A.    That's correct.

25         Q.    All right.  And so is it true that in your

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 111

1    reports, you don't do any analysis or there's no

2    statements in your reports indicating that after

3    45 minutes, based upon what plaintiffs cooked and

4    put into the pressure cooker, that there would still

5    be pressure at that point in time; right?

6         A.    Yeah.  So -- so normally, depending on the

7    outside temperature of the environment, these

8    pressure cookers should go to no pressure in those

9    times.  But I don't know how hot they had, and I

10   don't know how precisely they were measuring time.

11        So, again, with everything they said,

12   there was pressure in the pressure cooker.  So all I

13   go -- I'll go with that.  I -- I know they said all

14   of this information, but somehow the pressure cooker

15   was pressured and when they opened it, it exploded.

16        So we know it should have been this way or

17   should have been that way, but it wasn't.  And I

18   don't know how precise these guys were looking at

19   their watch or doing their things.  I don't know

20   that.  Maybe --

21        Q.    Now --

22        A.    Maybe it was 30 minutes.  I don't know

23   that.

24        Q.    Now, in this case, you did not put in

25   their recipe, cook it, unplug the unit, and wait

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 112

1    45 minutes and see if it would still be pressurized?

2         A.   I did just water, and I -- if I remember

3    right, in -- in my environment, in my garage, the

4    floating valve will go down between 45 and

5    55 minutes.

6         Q.   Did you unplug the unit?

7         A.   Yes.

8         Q.   And how much water did you have in the

9    unit?

10        A.   I think it was to the max line.

11        Q.   And why isn't this in your report?

12        A.   Because it wasn't important for my

13   finding.

14        Q.   And isn't it -- wouldn't the time be

15   different depend -- isn't the time different

16   depending on what's inside the -- the unit?

17        A.   I haven't done extensive studies to

18   measure the time that it goes down and up.  But

19   most -- the easiest way to test is water.  And, you

20   know, it -- if -- if it has, like, meat in it still,

21   it displaces water.  So I think that should be

22   close, but I haven't done the studies to know.

23             I just wanted to get a sense of timing and

24   duration.  So I -- I -- I think 45 minutes to

25   55 minutes is reasonable.

Page 113

1      Q.   Did you measure how much pressure was left

2   at 45 minutes when you did your test?

3      A.   It -- it was nothing because the floater

4   dropped in.  So I -- I -- I measured time for the

5   floating valve to drop.

6      Q.   So at 45 minutes, had the float valve

7   dropped?

8      A.   Yes.  And I tested a few times.  So it was

9   45 to 55 minutes.

10     Q.   So you're saying you tested a few times.

11  So at some -- at -- at least one time, the float

12  valve was dropped at 45 minutes?

13     A.   Yes.

14     Q.   Are you saying at -- are you saying at

15  another time, at 49 minutes, the float valve was

16  still up and then dropped at 50 minutes?

17     A.   Yes.  So the -- the worst was 55 minutes.

18  I have to check my notes, but I think that's what I

19  measured.

20     Q.   All right.  And now I want to know if

21  you -- if you documented the amount of pressure that

22  was in the unit when the float valve was up at, say,

23  45 minutes, 50 minutes, 55 minutes?

24     A.   No, I didn't do that.

25     Q.   So you don't know if the pressure at that

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 114

1    point in time would be significant enough to cause

2    an explosion; right?

3            A.   No, I don't.

4            Q.   You've referenced a few times today about

5    your notes.  And so if you have notes, I'd like you

6    to give them to your coun- -- to -- not your

7    counsel, but to -- to Mr. Senn and -- and I'll

8    request them from him; okay?

9            A.   Okay.  Yeah.  I think what I did was in my

10   email.  I have to find it.

11           Q.   So you don't know -- you don't know if

12   what plaintiff is alleging is accurate in terms of

13   waiting 45 to 60 minutes and having an explosive

14   event because you didn't measure that data when you

15   did it; right?

16           A.   I -- I really don't know if they are

17   telling the truth, they know their times.  I have no

18   idea.

19                What I tried to establish is that is it

20   possible for that scenario to happen?  So forgetting

21   about everything they said, I was testing and

22   evaluating, can this condition happen?

23                And then when we measured the critical

24   features of the lock that can be overcome and -- and

25   knowing that even at low pressures we can overcome

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 115

1    this lock, it -- it is a scenario that can happen.

2            I don't know if it happened or not.  I

3    just know that this pressure cooker can be opened at

4    a low enough pressure to explode with hot water.

5        Q.    You read -- you reviewed the instructions

6    to the pressure cooker; correct?

7        A.    Yes.

8        Q.    And they explain not to force open the

9    pressure cooker and if you feel resistance, to

10   not -- to not open it; right?

11       A.    Yes.

12       Q.    Can we agree that if you -- if the

13   instructions are followed, an injury will not occur?

14       A.    Yes.  The -- the only qualifier is that --

15   this discussion about force.  Force to different

16   people means different things.  So when you say

17   "don't open under force," you know, is 1 pound too

18   much?  2 pounds too much?  30 pounds too much?  I

19   don't know how they perceive it and how they react

20   to it.

21       Q.    But in terms of force, what we do know is

22   that on the video that we watched with -- the second

23   video we talked about today, you know, it required

24   you to use two hands to -- to open the unit; right?

25       A.    Yes.  And -- and I have to say, that

Soheil Eshraghi , PhD, PE                        January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 116

1    design, that handle design, pushes you to use two

2    hands because the easiest way to open it.

3         Q.    And that's an opinion that's not in your

4    report; correct?

5         A.    No, no, no.  I'm just saying that it has

6    handles for one hand and handle for the other hand.

7    So it's a natural way of opening it.

8              The -- the only pots that say use one hand

9    is normal pots because there is no engagement of the

10   lid to the pot.  You just lift it.  But with

11   pressure cookers, you have to disengage and you have

12   to rotate one versus the other.  So if you don't

13   hold one, it's really hard to just separate them.  I

14   don't know.

15        Q.    All right.  Can we agree based upon the --

16   what you call a scratch to the locking tab, the

17   pressure cooker was not in the same condition as it

18   was when it was first sold?

19        A.    A -- a new pressure cooker will not have a

20   scratch.

21        Q.    And when you received the pressure cooker,

22   you took photographs of it.

23              Is that true?

24        A.    Yes.

25        Q.    Did you fill out any paperwork or see any

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 117

1    paperwork regarding a chain of custody?

2         A.   Maybe.  I have to look back.  This was

3    done a long time ago.  I have to check.

4         Q.   And you took the photographs to document

5    the physical condition?

6         A.   Yes.  And actually I -- I submitted that

7    in my submittals.

8         Q.   Okay.  Let's take a look at the

9    photographs that are in Dr. Giachetti's report from

10   June of 2023.

11        Do you see his report?

12        We're looking at page 16.  This -- this

13   will be Eshraghi 5, I believe.

14            (Defendants' Exhibit 5 was marked for

15        identification.)

16            THE WITNESS:  Okay.

17   BY MR. HUBERT:

18        Q.   All right.  Do you see -- do you see the

19   photographs?

20        A.   Yes.

21        Q.   All right.  The first photograph at top

22   shows, again, what you called the scratch to the

23   locking tab; right?

24        A.   Yes.

25        Q.   And the photos immediately below it,

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 118

1    there's two of them, show -- show that in more

2    detail with some other damage in closer detail;

3    true?

4        A.   Yes.  It's very difficult to photograph

5    these conditions because of reflection.  So we have

6    to take pictures from different angles to show it.

7        Q.   And this -- then we have the float valve

8    here at the bottom; true?

9        A.   Yes.

10       Q.   And it also shows multiple scratch marks;

11   true?

12       A.   Yes.

13       Q.   And all those markings to the tab and --

14   the locking tab and the float valve are from someone

15   trying to open it while it's under pressure;

16   correct?

17       A.   Yes.  I would say while it's locked.

18       Q.   While it's locked.  All right.

19            And so now I want to ask -- I'm going to

20   ask you a few questions.  I want to know if you

21   agree or disagree with -- with some of

22   Dr. Giachetti's opinions; all right?

23       A.   Okay.

24       Q.   Dr. Giachetti opines that the float valve

25   on the unit -- or strike that.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 119

1            Dr. Giachetti opines that the lid had been

2     forcefully opened at least one time.

3            Do you agree with that?

4        A.    Yes.

5        Q.    He also opines that there were multiple

6     instances of attempted forced openings.

7            Do you agree with that?

8        A.    It could be.  We don't know.

9        Q.    So in your mind --

10           (Simultaneous speakers - unclear.)

11       Q.    In your mind, it's at least once, not sure

12     if it's more?

13       A.    But it could be, yes.

14       Q.    Right.  Could be.  All right.

15           And that's -- and it could be because you

16     see those multiple marks on the float valve; right?

17       A.    Yeah.  I -- I suggest that when someone

18     opens a locked lid, they assume that's a normal

19     force, and they may do it again and again.

20       Q.    Okay.  And is it true that we can't tell

21     if the forced openings, or opening, was successful?

22       A.    Well, for that long scratch to happen, it

23     was a successful opening.

24       Q.    All right.  So you think -- you think the

25     long scratch on the locking tab establishes it was

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 120

1    successfully opened at some point in time?

2         A.   Yes.  Especially the last time.

3         Q.   Even though you were able to get -- on the

4    video, you were able to get the pin over the locking

5    tab's hump without it opening?

6         A.   You -- you have to -- that -- that's a --

7    so let me say this way.  Most of the load is going

8    over the first angle to the tab.  After it goes over

9    the first few degrees, the remaining is just going

10   for the ride.  So if you can come up to the top, you

11   can open it.

12        Q.   Is it true you don't have an opinion if --

13   when the -- I think we already covered this, but I

14   know you're saying it was forced open on the day of

15   the accident.

16             You don't know if it was forced open

17   before the date of the accident; right?

18        A.   No, I don't know.

19        Q.   If it was forced open before the date of

20   the accident, the forcing it open would degrade the

21   locking mechanism; true?

22        A.   It could.  But I don't know by how much.

23        Q.   In your report you don't give any opinions

24   about whether the lock was degraded and, if so, by

25   how much; right?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 121

1    A.    No, I don't.

2    Q.    And you testified earlier today that you

3    didn't test any exemplars; right?

4    A.    That's correct.

5    Q.    So you don't know if -- you don't know if

6    the reason why you got this unit to open at, say, 40

7    to 45 pounds versus 100 pounds is because the unit

8    had already been degraded to some degree; correct?

9    A.    Yes.  But I read the deposition from the

10   design engineer of Tristar, and I saw somewhere that

11   he mentions these units are designed to carry 40 to

12   50 pounds.  So maybe that's the design parameter.

13        MR. HUBERT:  Sorry.  Can the court

14        reporter repeat the witness' answer?

15        COURT REPORTER:  One moment, please.

16        (Whereupon, the record was read by the

17        reporter as follows:

18             "Answer:  Yes.  But I read the

19        deposition from the design engineer of Tristar,

20        and I saw somewhere that he mentions these

21        units are designed to carry 40 to 50 pounds.

22        So maybe that's the design parameter.")

23   BY MR. HUBERT:

24   Q.    Didn't -- you're talking about the

25   deposition of Alex Losano; correct?

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 122

1      A.    Yes.

2      Q.    Didn't Alex Losano testify that the unit

3  is tested to UL 136?

4      A.    Yes.

5      Q.    Yeah.

6            Wasn't he shown by Mr. Senn the

7  Certificate of Compliance by UL 136 that we looked

8  at today?

9      A.    Yes.  Maybe I misread it, but it's in --

10  in there.  You can check.

11      Q.    All right.  Dr. Giachetti says that "The

12  locking pin of the pressure cooker was not within

13  the same tolerances as the exemplar that he

14  reviewed."

15            You don't have any opinion on that because

16  you didn't analyze the effect that the locks -- you

17  didn't -- you didn't -- you didn't analyze the

18  effect of the forced opening played on the ability

19  of the lock on the subject unit; true?

20      A.    That's true.  But if there are variations

21  from part to part, that could be variations from the

22  manufacturing process also.

23      Q.    Right.

24            But Dr. Giachetti makes that opinion --

25  makes that state- -- makes that opinion in the

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 123

1    context of that the locking mechanism on the

2    incident unit was degraded.

3            Did you make any opinions that the locking

4    unit was degraded, or did you just generically --

5    just generically agree with me that because it was

6    forced open, it would have some -- some limited

7    ability to lock the unit, but you don't know how

8    much?

9        A.    Yeah.  So my -- my opinion is that at any

10   point, there is a first to open that lock under

11   locked condition.  And if that was opened by a

12   normal person, that lock was faulty.

13       Q.    Right.

14           My question, though, is you didn't perform

15   any measurements -- you didn't perform any

16   measurements or do any comparison with other

17   exemplar units to determine the tolerances or the

18   impact that the forced opening on the unit would

19   have on the tolerance of the locking pin and locking

20   mechanism; true?

21       A.    That's true.

22       Q.    All right.  And Dr. Giachetti opined that

23   45 pounds -- using 45 pounds to open the -- the lid

24   is significant effort.

25           Do you agree that that is significant

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 124

1    effort?

2         A.    No.   Because I opened it with very minimal

3    effort.

4         Q.    Okay.  But he -- I'm -- I'm asking you

5    about 45 pounds.  He measured 45 pounds.

6              So is 45 pounds of force significant

7    effort -- significant effort?

8         A.    Depends how it's applied.  No.

9         Q.    You say it depends how it's applied?

10        A.    Yes.  So if -- if you --

11        Q.    How you -- how you position your hands?

12   Is that what you're saying?

13        A.    How you position your hands, how the

14   handle shape is, how you hold it.

15        Q.    So -- so how -- so it could be significant

16   force is your opinion; true?

17        A.    Depends -- again, depends on the design of

18   the cooker and the way we open it.  If you don't

19   allow for the hands to be so close and be separated,

20   maybe it needs more force to open.  And if they

21   are -- can be close together and separate -- not

22   separated, maybe not.  Maybe it's not -- not a force

23   at all.

24        Q.    Do you agree that -- well, let me ask --

25   let me rephrase the question.

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 125

1            Dr. Giachetti says "Because tolerances are

2     small and material is lost on the locking tab when

3     the lock is forcefully overcome plowing material

4     from the locking tab, the loss in the distance the

5     locking pin needs to travel around the locking tab

6     also reduces the ability of the lock to withstand

7     external opening force."

8            Do you agree with that statement?

9        A.    Can you read it one more time?

10       Q.    Sure.

11           "Because tolerances are small and material

12    is lost on the locking tab when the lock is

13    forcefully overcome plowing material from the

14    locking tab, the loss in the distance the locking

15    pin needs to travel around the locking tab also

16    reduces the ability of the lock to withstand

17    external opening force."

18       A.    I don't know that.

19       Q.    So you have -- you have no opinion on that

20    statement?

21       A.    No.

22       Q.    If Mr. Copeland only had one hand on the

23    lid holding the handle, would it -- would

24    significant force be needed to get up to 45 pounds?

25       A.    Probably.

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 126

1      Q.   Did you say "probably"?

2      A.   Yes.

3      Q.   Mr. -- Dr. Giachetti says "If Mr. Copeland

4  only had one hand on the lid holding the handle,

5  consistent with Mrs. Copeland's testimony, it would

6  require more than 45 pounds because the lid handle

7  has approximately 5/6 of the mechanical advantage

8  for lid turning as compared to the lid edge."

9          Do you agree with that opinion?

10     A.   So I say that if you want to rotate the

11 handle and not the base, you probably need two

12 hands.

13     Q.   But you did admit earlier today that when

14 the unit is not pressurized, the lid rotates freely

15 and easily with just two to three fingers; correct?

16     A.   Yes.

17     Q.   So back to my original question.

18         Do you agree with Dr. Giachetti's opinion

19 here where he says if you only use one hand "...it

20 would require more than 45 pounds because the lid

21 handle has approximately 5/6 of the mechanical

22 advantage for lid turning as compared to the lid

23 edge"?

24     A.   So I -- I see it differently.  I -- I

25 don't say you need more load.  I'm saying you need a

Page 127

1    counteracting load.

2              So if you don't stop the base from

3    turning, you still need 45 pounds, but that

4    45 pounds can turn it.  So it becomes a rotating

5    part.  So we are going to -- we are just needing

6    something to stop the base from rotating.

7              For example, if -- if I had a fixture on

8    the countertop stopping the base from to move, you

9    could do it with 40 -- 45 pounds and open it.  But

10   just lack of that stop -- stopping point for

11   rotation is the issue.

12        Q.   All right.  Dr. Giachetti gives an opinion

13   as to the -- what the burn patterns mean in terms of

14   how plaintiff was holding the unit.

15              Is it true that you have no opinions

16   regarding burn patterns?

17        A.   Not -- not to the degree of doing finite

18   element analysis or what.  But if -- if the lid

19   explodes, as we saw in the video, the water is kind

20   of exploding in all directions at the level of the

21   lid.  So you will have a lot of area of exposure.

22        Q.   Right.

23              But in your opinion -- in your reports,

24   you don't provide any analysis of the burn patterns;

25   true?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 128

1      A.    That's true.

2      Q.    All right.  Do you know how many Tristar

3  units of the 780 were sold versus the amount of

4  complaints?

5      A.    No.  I have no idea.

6            MR. HUBERT:  All right.  Let me just --

7       why don't we take five minutes.  I'm going to

8       review my notes and might be done.

9            VIDEOGRAPHER:  Okay.  The time is

10      4:12 p.m.  We're off the record.

11           (Off the record.)

12           VIDEOGRAPHER:  The time is 4:19 p.m.

13      We're on the record.

14  BY MR. HUBERT:

15      Q.    Dr. Eshraghi, on page 8 of your first

16  report, you say you'll -- "We will perform the

17  following tests."

18           And the first thing you noted -- note is

19  "Opening the lid when locked with no pressure inside

20  the cooker and measuring the force to open it."

21           Did you ever do that test?

22      A.    No.

23      Q.    And any -- any particular reason why not?

24      A.    Because when we were doing it together, we

25  decided, instead of pulling it up, we just

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 129

1    pressurize it for it to go up and would be the same.

2    It would be similar test.

3         Q.    And then the third one says -- you have

4    three bullet points on page 8.  And then on the

5    third one, it says "Checking the placement of the

6    lid to see if it is possible for it to start heating

7    and pressurizing when the lid is not locked

8    properly."

9              I think you told me you didn't do that;

10   right?

11        A.    No, I didn't.  Because the -- that wasn't

12   the scenario they were talking about.

13        Q.    All right.  Doctor, I don't have any other

14   questions for you.  Thank you.

15        A.    Okay.

16             MR. SENN:  I don't have anything either.

17             We haven't discussed reading and signing.

18             Dr. Eshraghi, you can -- you have the

19        right to read this deposition and check it for

20        accuracy.  You can make changes to things like

21        spelling, dates, but you can't change anything

22        substantively, or you can waive that right.

23             Do you want to read the transcript and

24        sign off on it or do you want to waive that?

25             THE WITNESS:  What do you suggest?

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 130

1          MR. SENN:  I -- I don't think there's a

2     reason you need to read unless you just want

3     to.

4          THE WITNESS:  No, I don't.

5          MR. SENN:  Okay.  We'll -- we'll waive

6     signature.

7          COURT REPORTER:  Okay.

8          VIDEOGRAPHER:  Okay.  This -- this

9     concludes today's deposition.  The time is

10    4:21 p.m., and we're off the video record.

11         (Deposition concluded at 4:21 p.m.)

12         (Pursuant to Rule 30(e) of the Federal

13    Rules of Civil Procedure and/or O.C.G.A.

14    9-11-30(e), signature of the witness has been

15    waived.)

16

17

18

19

20

21

22

23

24

25

Soheil Eshraghi , PhD, PE                          January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 131

1                    C E R T I F I C A T E
2
3

 STATE OF GEORGIA:
4
 COUNTY OF FULTON:
5
6

 I hereby certify that the foregoing transcript was
7 taken down, as stated in the caption, and the
 questions and answers thereto were reduced to
8 typewriting under my direction; that the foregoing
 pages represent a true, complete, and correct
9 transcript of the evidence given upon said hearing,
 and I further certify that I am not of kin or
10 counsel to the parties in the case; am not in the
 regular employ of counsel for any of said parties;
11 nor am I in anywise interested in the result of said
 case.
12
13
14
15        *Lee Ann Barnes*
16
 LEE ANN BARNES, CCR B-1852, RPR, CRR, CRC
17
18
19
20
21
22
23
24
25

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

Page 132

```
1                    COURT REPORTER DISCLOSURE
2
3    Pursuant to Article 10.B. of the Rules and
     Regulations of the Board of Court Reporting of the
4    Judicial Council of Georgia which states: "Each
     court reporter shall tender a disclosure form at the
5    time of the taking of the deposition stating the
     arrangements made for the reporting services of the
6    certified court reporter, by the certified court
     reporter, the court reporter's employer, or the
7    referral source for the deposition, with any party
     to the litigation, counsel to the parties or other
8    entity. Such form shall be attached to the
     deposition transcript," I make the following
9    disclosure:
10
11   I am a Georgia Certified Court Reporter. I am here
     as a representative of Veritext Legal Solutions.
12   Veritext Legal Solutions was contacted to provide
     court reporting services for the deposition.
13   Veritext Legal Solutions will not be taking this
     deposition under any contract that is prohibited by
14   O.C.G.A. 9-11-28 (c).
15
16   Veritext Legal Solutions has no contract/agreement
     to provide reporting services with any party to the
17   case, any counsel in the case, or any reporter or
     reporting agency from whom a referral might have
18   been made to cover this deposition. Veritext Legal
     Solutions will charge its usual and customary rates
19   to all parties in the case, and a financial discount
     will not be given to any party to this litigation.
20
21
22   Lee Ann Barnes
23   LEE ANN BARNES, CCR B-1852B, RPR, CRR, CRC
24
25
```

Soheil Eshraghi , PhD, PE
January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[& - 609.986.1301]**                                                        Page 1

**&**

**&**   2:5

**0**

**00212**   1:5
**02**   76:25
**08534**   2:11

**1**

**1**   4:4 36:5 43:5
43:7 44:3,4
47:7,8 60:21
61:11,12,20,24
62:2 73:4,5
80:4,5 81:5
107:22,22
115:17
**1/2**   60:21 61:10
**10**   86:6,8,9
**10,000**   49:24
**10.b.**   132:3
**100**   42:24 50:1
51:3 70:4
72:11,12,24,24
73:24 74:15
77:14,22,24,24
78:9 98:19
121:7
**1026**   47:2,13
**107**   4:8
**11**   1:12 5:2,7
68:21
**117**   4:10
**12034**   131:16
132:22

**13**   109:10
**136**   17:11,14,15
17:17 30:15,20
30:21,25 31:22
31:24 32:7,10
47:2,13,18,21
49:13 54:9
60:23 68:9,16
71:19,23 72:9
72:21 77:18
97:11 122:3,7
**14**   109:4,5
**15**   108:4,15,21
**16**   117:12
**18**   107:23,24
**1852**   131:16
**1852b**   1:15
132:23
**19**   85:15
**1:01**   1:13 5:8

**2**

**2**   4:6 58:5
61:12 62:2
66:10,12 73:4
76:23 81:5,16
98:17 107:22
107:24 115:18
**20**   13:17 18:3,5
18:7 86:6,8,10
**200**   2:11 50:2
70:21
**2000**   13:17
**2020**   14:3,15
107:23,24

**2022**   24:17
**2023**   4:11 58:6
117:10
**2024**   1:12 5:2,8
**21**   24:17 66:11
**26610**   2:6
**28**   4:11
**2:55**   80:14

**3**

**3**   4:7 81:4,6,8
**30**   111:22
115:18 130:12
**301**   2:11
**31221**   2:6
**350**   28:4,6,10
**3:05**   80:16
**3:15**   89:5
**3:16**   89:8

**4**

**4**   4:8 33:20
81:2 105:18
107:12,13
**40**   69:16,21
70:5,10 71:9
78:22 84:2,8
109:19,24
121:6,11,21
127:9
**45**   33:22,25
34:5 69:17,22
70:5,11 71:16
78:17 84:2
110:14 111:3
112:1,4,24

113:2,6,9,12,23
114:13 121:7
123:23,23
124:5,5,6
125:24 126:6
126:20 127:3,4
127:9
**47**   4:4
**478.405.0300**
2:7
**49**   113:15
**4:12**   128:10
**4:19**   128:12
**4:21**   130:10,11

**5**

**5**   4:10 117:13
117:14
**5/6**   126:7,21
**50**   109:19,24
113:16,23
121:12,21
**55**   34:6 112:5
112:25 113:9
113:17,23
**5:22**   1:5

**6**

**6**   3:3 85:2,4
91:2 102:23
104:7
**60**   33:25
110:14 114:13
**609.986.1301**
2:12

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[609.986.1386 - alleged]**                                    Page 2

| | | | |
|---|---|---|---|
| **609.986.1386** 2:12 | **able** 8:12 12:10 15:3 41:23 42:8 50:21 53:24 59:24 61:24 65:3,8,9 75:7 96:3 101:22 102:10 109:23 120:3,4 | **acts** 103:14 | **advise** 58:15 |
| **66** 4:6 | | **actual** 84:3 | **aerospace** 46:2 52:7 |
| **7** | | **actually** 20:7 30:5 33:2 57:19 65:18 72:12 88:11 90:14 104:13 117:6 | **afternoon** 6:15 |
| **737** 50:6 | | | **agency** 132:17 |
| **772** 49:11 103:2 | | | **ago** 14:11 84:16 117:3 |
| **780** 49:10 58:23 102:24 103:15 107:25 128:3 | **abruptly** 68:16 | **add** 43:10 | **agree** 6:2 9:2 17:17 29:10 32:9 40:20 43:1 44:11 52:12 55:12 56:8 69:21 72:5 98:2,6,11 110:4 115:12 116:15 118:21 119:3,7 123:5 123:25 124:24 125:8 126:9,18 |
| | **acceptable** 73:20 | **added** 103:19 | |
| | **accident** 46:16 54:17 107:23 109:20 110:4 120:15,17,20 | **adding** 31:3 71:4 | |
| **8** | | **addition** 31:19 | |
| **8** 46:14 85:2,4 91:2 128:15 129:4 | **accommodate** 9:14 | **additional** 103:11,18,21 | |
| **8.b** 5:4 | **accomplish** 68:14 | **adds** 39:2 | |
| **81** 4:7 | **accordance** 52:13 | **adhering** 46:6 | **agreed** 70:4 |
| **9** | | **administer** 5:24 | **agreement** 132:16 |
| **9** 25:16 66:11 71:23 74:19 77:25 | **accumulative** 77:13 | **administered** 5:24 | **agrees** 30:18 |
| **9-11-28** 132:14 | **accuracy** 129:20 | **admiral** 21:17 | **ahead** 38:24 88:6 |
| **9-11-30** 130:14 | **accurate** 114:12 | **admissions** 4:9 54:22 55:2 107:17 110:2 | **air** 74:6 |
| **9.1** 74:24 76:1 77:9 78:3 | **achieve** 99:5 | **admit** 107:21 107:23 126:13 | **aircraft** 46:8 |
| **9.5** 73:14 | **acknowledge** 5:20,23 | **admitted** 34:12 108:1,7 109:1 109:15 | **airplane** 52:6 52:17 98:7 99:14 101:11 |
| **9.6** 73:10 | **action** 1:5 71:25 75:1 | **advance** 82:19 | **alex** 121:25 122:2 |
| **9.9** 73:22 74:2 | **actions** 51:4 | **advantage** 126:7,22 | **alleged** 24:10 26:11 105:24 |
| **9.9.** 74:1 | **activation** 73:18 | **advice** 16:5 | |
| **a** | | | |
| **abc** 1:7 | | | |
| **ability** 122:18 123:7 125:6,16 | | | |

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[alleging - based]**                                                           Page 3

**alleging**  114:12
**allow**  7:23
    16:13 33:24
    37:4 86:3
    124:19
**allowed**  25:20
    33:20 58:23
    75:22
**allows**  37:8,15
    41:5
**alternative**
    102:17,21
    103:15 105:15
**amount**  36:3
    44:8 67:25
    69:23 70:10,12
    79:7,7 113:21
    128:3
**analysis**  25:17
    111:1 127:18
    127:24
**analyze**  122:16
    122:17
**analyzing**
    13:15
**angle**  120:8
**angles**  118:6
**ann**  1:15
    131:16 132:23
**answer**  7:24,25
    8:21 10:15
    37:23 49:3
    76:16 79:14
    99:19 121:14
    121:18

**answered**
    99:18
**answers**  131:7
**anyway**  95:3
**anywise**  131:11
**apart**  27:19
**apparatus**
    68:22
**appearances**
    2:1,2
**applied**  67:21
    68:10 72:25
    124:8,9
**apply**  31:7,8
    70:20 98:17,19
    98:24 99:24,25
**applying**  98:18
**approach**  16:4
    17:16 87:15
    88:10
**approached**
    89:22
**approximate**
    18:4 28:12
**approximately**
    61:10 126:7,21
**area**  127:21
**areas**  46:7
**arises**  13:5
**arm**  68:21
**arrangements**
    132:5
**article**  5:4
    132:3

**articulate**  8:11
**asked**  9:14
    14:12 15:1
    67:11 79:6
    99:17 107:20
**asking**  33:4
    70:9 94:17
    124:4
**asm**  30:7
**aspect**  62:8
**assembled**
    20:20
**assembly**  59:22
**assisting**  90:21
**assume**  8:22
    43:25 119:18
**assuming**  64:16
**assumption**
    104:21
**astm**  29:17,19
    30:5
**attach**  86:22
**attached**  30:1
    42:18 86:18
    109:14 132:8
**attachment**
    36:25 45:5
**attempt**  33:9
    44:24,25
**attempted**  26:9
    26:10 56:11,20
    65:8 76:7
    110:14 119:6
**attempting**
    30:23 94:24

    107:8 108:6
**attempts**  106:1
**attorney**  9:17
**attorneys**  5:19
**audio**  88:16,22
**aware**  12:4
    57:17,18,20,21
    104:13

**b**

**b**  131:16
    132:23
**back**  17:23
    20:8,20 37:19
    41:21 51:14
    57:10 60:12,16
    71:10 78:10,15
    80:19 90:25
    91:1,2 93:10
    96:10 117:2
    126:17
**background**
    10:3 53:2
**backyard**
    80:24 90:5
**bad**  77:7
**barnes**  1:15
    131:16 132:23
**base**  37:25 38:9
    126:11 127:2,6
    127:8
**based**  25:16,25
    29:14 35:16
    70:2 104:23
    110:2 111:3
    116:15

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[basically - catching]**                                                    Page 4

| | | | |
|---|---|---|---|
| **basically**  31:6 36:25 | **blow**  74:6 | **bullet**  129:4 | **career**  29:16 |
| **basing**  105:4 | **board**  5:5 132:3 | **buried**  104:3 | **cares**  50:2 |
| **basis**  104:10,19 | **body**  98:19 | **burn**  53:12 127:13,16,24 | **carnegie**  2:11 |
| **bates**  4:4,11 | **boeing**  50:6 | **burning**  53:15 | **carry**  121:11 121:21 |
| **beauty**  104:25 | **bolt**  99:21 | **business**  27:18 | **casa**  23:5,6 |
| **beginning**  82:12,15 94:21 | **bolts**  50:10 | **buy**  16:10 105:1 | **case**  9:18 15:5 15:6 16:17,20 |
| **begins**  36:12 | **boss**  14:10 | **bypass**  37:6 | 20:7 23:4 |
| **behalf**  2:4,9 15:2 | **boss's**  14:19 | **c** | 24:12 27:6,9 27:12 28:13 |
| **behavior**  77:2 79:18 | **bother**  98:25 | **c**  23:8 131:1,1 132:14 | 29:4,7,13 31:18 32:22,23 |
| **beings**  60:1 70:18 | **bottom**  35:21 70:17 118:8 | **california**  6:16 13:2 | 32:24 33:2,8 33:15,23 34:11 |
| **believe**  29:5 101:17 117:13 | **bought**  32:19 84:18 | **call**  60:4 116:16 | 37:12 50:15 57:12 58:10,13 |
| **bella**  21:3 22:4 | **box**  2:6 | **called**  29:21,23 32:6 34:22 | 62:12 63:1,7 63:20 64:10,24 |
| **benefits**  11:25 12:3 | **brand**  22:4 | 37:22 54:15 117:22 | 65:14,21,23 76:17,17 85:5 |
| **best**  36:9 53:18 53:21 67:13 | **brands**  16:24 17:1,7 18:24 20:25 21:5 23:15 | **calling**  56:9 60:6 | 91:24 94:13,22 95:9 100:23 |
| **better**  82:7 103:19,20 105:2 | **break**  9:11,15 80:9 | **calls**  83:9 | 105:14,20 106:4 107:2,21 |
| **beyond**  79:22 | **breaks**  73:11 | **camera**  84:21 85:1,4,7,10 90:7,13,14,14 | 111:24 131:10 131:11 132:17 |
| **bias**  28:21 29:2 | **bring**  17:23 37:19 96:10 | **capability**  74:17 97:18 | 132:17,19 |
| **big**  84:7 | **brings**  81:1 | **capable**  71:24 74:25 | **cases**  13:6 17:20 18:7,16 |
| **billed**  28:13 | **broken**  64:21 | **caption**  131:7 | 18:19 32:16 43:24 63:15 |
| **binding**  31:11 32:4 | **bubble**  41:17 86:22 | **capturing**  85:8 | 65:17 76:6 |
| **bit**  67:2 | **build**  35:17 36:13 41:23 70:10 | **car**  99:23 | **catching**  42:21 |
| **blocking**  64:5 | **builder**  98:19 | **care**  28:24 80:12 | |
| **blocks**  37:3 | **builds**  38:9,9 | | |

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[cause - conducting]**                                                   Page 5

| | | | |
|---|---|---|---|
| **cause**  25:21 44:20 46:15 58:24 106:11 114:1 | 60:16 62:24 64:7 113:18 117:3 122:10 129:19 | **combination** 43:13 | **complaints** 128:4 |
| **caused**  107:2 | **checking**  129:5 | **come**  41:7 42:4 71:13 72:6 76:5 79:1,9 80:2 120:10 | **complete**  7:23 91:23 131:8 |
| **causes**  42:14 | **child**  98:17 | | **completed** 33:24 110:17 |
| **causing**  74:8 | **circumstance** 50:20 | **comes**  40:4 50:19 71:17 72:10 73:6 75:15,18 76:15 | **completely** 78:18,23 92:13 |
| **ccr**  1:15 131:16 132:23 | **civil**  1:5 130:13 | | **completion** 33:21 |
| **cell**  60:9 66:17 | **claiming**  48:23 | **comfortable** 99:1 | **compliance**  4:4 46:24 122:7 |
| **center**  2:11 | **clamping**  38:12 71:25 75:1 78:4 | **coming**  51:1 53:1 78:18 88:12 90:2,9 91:21 92:23 96:4 108:4 | **components** 36:21 59:21 64:21 |
| **centered**  32:4 | | | **compromised** 54:2 |
| **certain**  54:7 | **clarify**  20:17 32:5 | | **concepts**  24:1 53:7 |
| **certainly**  61:19 | | **comments** 31:15 | |
| **certainty**  25:19 | **clear**  43:25 59:25 100:13 | **commission** 49:12 | **conclude**  103:5 |
| **certificate**  4:4 46:23 122:7 | **clearly**  49:18 103:25 | **committee**  70:3 | **concluded**  20:6 130:11 |
| **certification** 45:20,23 46:19 49:16 51:18,20 | **click**  34:19 | **communicate** 9:24 | **concludes** 130:9 |
| | **clients**  101:11 | **communicated** 31:2 | |
| **certified**  6:3,5 47:11 50:9 132:6,6,11 | **clip**  67:7 | | **condition**  53:15 62:3,25 76:20 92:7 114:22 116:17 117:5 123:11 |
| | **clogged**  55:14 55:17,20 | **company**  11:11 49:1 | |
| **certify**  131:6,9 | **close**  36:25 112:22 124:19 124:21 | **compared** 126:8,22 | |
| **chain**  117:1 | | | **conditions** 74:14 76:19 118:5 |
| **chance**  14:5 18:12 | **closed**  34:18 | **comparison** 123:16 | |
| **change**  129:21 | **closer**  31:20,21 31:22 32:7 85:7 90:7 118:2 | **compensate** 103:22 | **conducting** 74:2 |
| **changes**  129:20 | | | |
| **charge**  15:6 27:22 31:13 132:18 | | | |
| **check**  17:23 19:6 23:2 34:5 46:6,12 57:10 | **coffee**  26:16,18 26:20 27:2,9 | | |

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[confirm - correct]**                                                    Page 6

| | | | |
|---|---|---|---|
| **confirm**  63:7 | **conversation** | 69:24 71:6,20 | **cooking**  12:1,3 |
| **confirmed** | 82:1 | 72:1 73:15 | 32:25 33:12,21 |
| 108:10 | **convey**  8:11 | 74:3,8 75:2,8 | 38:15 |
| **conformance** | **cook**  11:22 12:9 | 76:1,13 77:9 | **cooks**  22:3,4 |
| 45:18 46:12 | 22:22 25:4 | 77:17 78:5,19 | **cool**  34:2 41:13 |
| **consider**  23:19 | 33:8,11,23,24 | 78:24 79:8 | **cooling**  33:17 |
| **consistent** | 41:12 110:17 | 80:24 85:1,19 | 41:16 |
| 126:5 | 111:25 | 85:22 89:18,21 | **copeland**  1:3,4 |
| **consultant** | **cook's**  21:3 | 90:4 93:13 | 94:23 95:9 |
| 27:17 | **cooked**  11:22 | 94:15 95:10 | 125:22 126:3 |
| **consulted** | 32:20 111:3 | 97:15,17 98:3 | **copeland's** |
| 97:22,23 | **cooker**  10:4 | 102:18 103:7 | 24:18 25:19 |
| **consulting**  14:3 | 11:1,3,9,15,17 | 103:12 104:9 | 26:4 126:5 |
| 27:20 | 11:21,23 12:1 | 104:21 105:6 | **correct**  7:18 |
| **consumer** | 12:4,9,14,16,19 | 106:1 107:25 | 9:25 12:23 |
| 20:10 25:13 | 15:8,17,25 | 108:16,19 | 13:9,23,24 |
| 35:2 46:8 | 16:6,13,18,23 | 109:7,11,19,23 | 14:4 25:8,11 |
| 48:14 49:12 | 17:7,13 18:7 | 110:9,11,15 | 25:24 26:7 |
| 75:21 76:21 | 18:25 20:2 | 111:4,12,14 | 31:18 33:15 |
| 103:12 104:1 | 21:3,13 23:15 | 115:3,6,9 | 35:24 36:20 |
| **contacted** | 24:13,19 25:5 | 116:17,19,21 | 37:23 40:5,6,8 |
| 132:12 | 25:11,13,20 | 122:12 124:18 | 40:9,11 41:3 |
| **contain**  58:12 | 26:1,4,15,20 | 128:20 | 45:23 47:13,22 |
| **contained** | 29:20 32:10,10 | **cooker's**  75:7 | 48:9 57:15 |
| 58:18 | 32:14,21 33:6 | **cookers**  11:7,13 | 58:13,24 59:9 |
| **context**  123:1 | 33:20 34:13,16 | 13:5,6,16,18 | 59:10 61:7,13 |
| **continue**  18:22 | 35:3 38:20 | 14:2 17:2,5,21 | 61:22 62:17,21 |
| **continues**  42:7 | 39:25 41:2 | 18:3,11 21:1 | 63:4,13 66:19 |
| **continuously** | 43:2 44:12,22 | 23:23 30:12 | 66:20 68:1,14 |
| 72:24 | 47:12,18,21 | 31:6 35:1 | 68:15 71:18 |
| **contract** | 48:17 49:20,23 | 39:21 41:11,12 | 73:1 77:22,23 |
| 132:13,16 | 51:6 53:20 | 43:21 48:9,13 | 80:24 87:4 |
| **control**  11:12 | 55:13 59:4 | 52:13 57:9 | 90:5 91:23 |
| 90:12 94:1 | 62:5,9 63:2 | 65:18 97:19 | 92:1 95:16 |
| 95:22 | 65:4,10 66:17 | 111:8 116:11 | 97:15 99:16 |

Soheil Eshraghi , PhD, PE                         January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[correct - degree]**                                                    Page 7

100:19 105:22
106:3,5 108:12
108:13,16,17
108:22 110:24
115:6 116:4
118:16 121:4,8
121:25 126:15
131:8
**correctly**  10:22
55:6
**corresponden...**
83:2
**corresponding**
38:2
**cosmetic**  105:1
**cosori**  23:8,9
**cost**  105:1
**coun**  114:6
**council**  5:6
132:4
**counsel**  2:1
5:11 6:1 88:14
89:1 90:21
91:19 114:7
131:10,10
132:7,17
**counteracting**
127:1
**countertop**
127:8
**county**  131:4
**course**  38:23
43:8 68:25
109:3

**court**  1:1 5:5
5:16,18 6:3,5
7:20,22 8:2,7
14:6 121:13,15
130:7 132:1,3
132:4,6,6,6,11
132:12
**courtesy**  7:25
**courtroom**  7:17
**cover**  53:6
73:16 74:3,8
74:19 76:19
77:10,25
132:18
**covered**  120:13
**covers**  30:4
**crash**  46:8
**crc**  1:15 131:16
132:23
**create**  27:18
46:3 56:17
62:3 68:7 76:3
77:19,20 78:5
78:6 93:21
**created**  66:6
**creates**  42:16
48:5 70:24
72:2 75:2,9
**critical**  46:7
50:5 53:25
114:23
**crock**  21:4
**crockpot**  44:12
**crowbar**  51:9

**crr**  1:15 131:16
132:23
**cuisinart**  21:11
21:12
**custody**  117:1
**customary**
132:18
**cv**  1:5
**cycle**  33:21,24
110:17
**cylindrical**
35:12

**d**

**damage**  57:15
68:8 118:2
**damaged**  20:8
20:8,18 55:22
56:2,3,5
**data**  29:15
114:14
**date**  5:7 58:3
120:17,19
**dated**  4:10
24:16
**dates**  129:21
**day**  69:6
120:14
**decided**  82:4
128:25
**deen**  21:19
**defeat**  74:11
75:7 78:3
**defeated**  72:14
73:23,24 74:8
74:12 78:4

**defeating**  71:25
74:25
**defect**  19:24
22:11 24:9
51:5 59:7,8,9
59:12,16,17,20
101:3,6,8
105:13,20,24
107:1,6
**defective**  18:13
18:25 19:10
20:5,6 21:2,6
22:1,15 23:1
23:15 24:3,13
26:25 28:20
32:11 33:6
47:22 62:6
**defects**  51:7
105:20
**defendant**  5:15
27:11
**defendants**  1:8
2:9 4:2 47:8
66:12 81:8
107:13 117:14
**define**  98:14
**defined**  31:8
**definition**
100:1
**degrade**  120:20
**degraded**
120:24 121:8
123:2,4
**degree**  9:3,8
25:18 121:8

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[degree - doctor]**                                                  Page 8

127:17

**degrees** 120:9
**deny** 107:21
**depend** 112:15
**dependent**
  106:5,7,19
  107:8
**depending**
  111:6 112:16
**depends** 70:14
  70:16 124:8,9
  124:17,17
**depicted**
  109:11
**depo** 9:24
**deposed** 6:20
  6:23 7:5,8
**deposition** 1:10
  5:1,9,20,21,22
  6:19 9:25 28:5
  28:6,17 54:20
  100:9 110:13
  121:9,19,25
  129:19 130:9
  130:11 132:5,7
  132:8,12,13,18
**depressurizat...**
  41:18
**depressurize**
  41:8
**depressurizes**
  73:1
**deps** 7:10
**describe** 36:10

**described** 20:4
**description** 4:2
  19:12
**design** 19:9,11
  25:11,20 28:22
  29:15 35:4
  43:20,21 45:15
  50:8 53:7 54:1
  58:23 59:7,7
  59:12,20,21
  69:25 70:2
  71:4,5 75:24
  76:18,23 77:1
  77:7,7 100:15
  101:7 103:10
  103:17 104:2,7
  104:14 105:5
  105:13,15
  116:1,1 121:10
  121:12,19,22
  124:17
**designed** 11:9
  28:25 42:24
  53:23 95:2
  103:23 105:11
  121:11,21
**designing**
  13:15 35:1
  78:8
**designs** 23:24
  95:6 102:17,21
  103:5,15
  104:20
**detail** 58:9
  118:2,2

**detected** 73:19
**determination**
  29:11
**determine** 63:2
  63:24 90:8
  123:17
**determining**
  51:5 59:20
**device** 67:20
  71:25 72:13
  73:15 74:6
  75:1 78:4
  99:16 100:7
**devices** 48:15
**different** 15:9
  16:23,25 17:1
  30:9 34:2
  43:10 47:24
  48:6 53:8
  69:25 98:16
  100:2 102:18
  112:15,15
  115:15,16
  118:6
**differently**
  126:24
**difficult** 118:4
**direction** 131:8
**directions**
  127:20
**disabled** 74:13
**disagree**
  118:21
**disassembled**
  20:11,19

**disastrous**
  53:15
**disclosure** 5:3
  132:1,4,9
**discontinued**
  102:25
**discount**
  132:19
**discussed** 39:19
  62:20 81:23
  106:13 129:17
**discusses** 45:16
**discussing**
  65:14 82:20
**discussion**
  115:15
**disengage** 79:4
  79:17 116:11
**displaced** 73:6
**displaces**
  112:21
**dissipate**
  110:23
**distance** 91:4
  125:4,14
**distributor**
  11:4 48:17
  99:12
**distributors**
  11:13
**district** 1:1,1
**division** 1:2
**doctor** 10:21
  81:13 129:13

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[document - escapes]**                                                   Page 9

| | | | |
|---|---|---|---|
| **document** 30:3 30:7 31:20,22 45:25 47:1,16 47:17 50:2 54:24 55:3 69:18,18 117:4 | 89:10 117:9 118:22,24 119:1 122:11 122:24 123:22 125:1 126:3,18 127:12 128:15 129:18 | **easily** 40:21 43:3 126:15 **eastern** 5:8 **easy** 67:24 84:8 **eat** 11:18 22:22 **edge** 126:8,23 **educate** 15:7 | **employ** 131:10 **employed** 11:6 97:22 **employer** 132:6 **employment** 7:8 27:20 **engaged** 16:19 |
| **documented** 113:21 | **drawings** 46:5 **drive** 2:11 | **edward** 1:3 54:19 | 62:7,14 63:4 63:25 |

document 30:3 30:7 31:20,22 45:25 47:1,16 47:17 50:2 54:24 55:3 69:18,18 117:4
documented 113:21
documents 45:2,8,13,21 46:17,18 49:24 51:18,21 52:24 53:2 54:6,7,10
doing 14:3,10 14:14 15:10 29:16 30:4,6 38:21 53:22 54:3 63:5 74:11 93:6 111:19 127:17 128:24
door 50:7 51:9
doubt 44:24
download 102:5,6
dr 5:10 6:14 10:25 14:21,22 14:23 15:7,16 57:11 60:3 66:1,19 67:8 67:20,25 68:13 69:16 71:12 78:16,16 80:19 81:17 82:5,8 82:14 83:7,15

89:10 117:9 118:22,24 119:1 122:11 122:24 123:22 125:1 126:3,18 127:12 128:15 129:18
drawings 46:5
drive 2:11
drop 92:10 113:5
dropped 91:9 108:5 113:4,7 113:12,16
drops 37:7,14 37:14 40:16 76:25 92:21
duly 6:11
duplicate 19:18 19:22 24:6
duration 112:24

**e**

e 130:12,14 131:1,1
earlier 33:5 47:20 79:6 80:1 98:6 101:2,10 121:2 126:13
ease 103:18
easier 17:16 92:3
easiest 112:19 116:2

easily 40:21 43:3 126:15
eastern 5:8
easy 67:24 84:8
eat 11:18 22:22
edge 126:8,23
educate 15:7
edward 1:3 54:19
effect 31:11 43:13 70:24 122:16,18
effort 123:24 124:1,3,7,7
eight 18:2 23:14
either 18:18 45:7,7 62:16 88:14 92:15 129:16
electric 17:4,7 23:23 39:21
element 60:25 127:18
elements 15:15 64:22
eliminate 28:20 41:13
eliminating 29:1
elimination 53:18
email 83:1 114:10

employ 131:10
employed 11:6 97:22
employer 132:6
employment 7:8 27:20
engaged 16:19 62:7,14 63:4 63:25
engagement 42:15 116:9
engages 61:5
engaging 64:22 92:13
engineer 13:8 13:11,14 14:1 71:1 99:13 121:10,19
engineering 6:24 7:2 9:3,8 13:1 25:18 29:13
engineers 53:7
entire 7:23
entity 27:19 132:8
environment 111:7 112:3
equipment 16:9 30:16,24 71:4 84:19
escape 35:23 42:7 76:15
escapes 89:18

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[escaping - fan]**                                                    Page 10

escaping  89:20
91:25
eshraghi  1:11
3:2 5:1,10 6:10
6:14 10:23,25
47:6,7 66:1,10
66:10 80:19
81:2 89:10
105:18 107:12
117:13 128:15
129:18
especially  46:7
120:2
esq  2:5,10
essentially
61:14
estab  51:15
establish  51:16
114:19
established
47:17 75:15
100:24
establishes
56:19 109:4
119:25
evaluate  28:25
evaluated
21:15
evaluating
114:22
evaluation  27:1
29:15,25
event  19:23
40:8 61:24
62:1 114:14

events  20:4
54:12
eventually
96:22
everybody
30:18 41:11
55:10
evidence  56:9
94:22 95:9
131:9
exact  32:16
exactly  17:15
30:16 38:3
60:8,17,22
98:14
examination
3:1,3 6:12
examine  25:3
examined  6:11
examining
28:19
example  24:3
30:2,14 49:15
50:6 53:8,11
76:21 98:17
99:21 103:24
127:7
except  10:14
24:7
excuse  7:21
25:4 106:8
exemplar  66:23
122:13 123:17
exemplars
121:3

exert  70:12
exerting  71:16
exhibit  4:2,4,6
4:7,8,10 47:8
66:12 81:8
107:13 109:14
117:14
exhibits  4:1
exists  38:12
51:5 92:7
expect  52:20
98:7 101:11,14
expedite  41:17
experience  13:4
expert  7:2,11
9:1 13:6,23
14:9 15:8
27:24 32:13
100:18
explain  109:22
115:8
explode  25:13
38:18 43:23
115:4
exploded  50:11
108:18 110:9
111:15
explodes  75:22
127:19
exploding
127:20
explosion  38:8
45:16 53:15
106:16 110:10
114:2

explosive  40:8
61:24 62:1
79:18 114:13
export  102:2
exposure
127:21
extended  93:20
extensive
112:17
extent  79:13
83:9 99:17
external  125:7
125:17
extra  39:1
83:12
extreme  77:2

**f**

f  22:6 131:1
facility  14:12
factors  100:18
facts  107:21
fagor  22:6
fail  73:8
failed  75:24
failure  28:25
63:16
fair  61:8
fal  19:1 20:2,17
24:7
false  83:16
familiar  29:17
family  12:13
23:20
fan  74:6

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[far - food]**                                                    Page 11

**far**  6:23 26:16
  26:23 28:13
  67:8 84:25
  93:25
**fast**  41:11,12
  68:6
**fastener**  30:2
  52:9
**fasteners**  52:18
  99:14
**faster**  12:9
**fault**  51:10
**faulty**  54:3
  59:5 123:12
**fax**  2:12
**feature**  37:5
  38:14 45:18
  57:9 73:22
  85:9
**features**  74:7
  74:12 103:11
  103:18,21
  104:15 114:24
**federal**  130:12
**feel**  29:6 34:18
  34:20 42:12,14
  42:21,21 43:5
  43:14 44:3,9
  71:7 115:9
**feet**  85:4 91:2
**felt**  84:19
**field**  14:8
**figure**  50:13
  54:4,5

**figured**  25:15
**figuring**  20:12
  100:12
**file**  1:5 28:16
  45:9
**files**  102:7
**fill**  72:17,19
  75:21 76:22
  86:1 116:25
**filled**  71:15,20
  78:18,23
**filling**  91:8,16
**finally**  15:5
**financial**
  132:19
**find**  18:13,16
  18:22 19:19
  23:3 24:8 33:5
  34:9 45:19,20
  45:22,22 52:25
  73:12 102:24
  114:10
**finding**  112:13
**findings**  18:20
**fine**  10:11 65:1
  80:11
**fingers**  40:25
  43:3 126:15
**finish**  99:7
**finished**  37:13
  67:4
**finite**  127:17
**firm**  27:15
**first**  6:10 7:15
  10:9,16 24:20

25:3,7,10
33:19 45:1
46:14 51:16
54:11 57:1,6
58:22 59:6
61:5 66:8
68:21 80:20
81:6 116:18
117:21 120:8,9
123:10 128:15
128:18
**firsthand**  97:25
**five**  18:1 23:14
  80:9 128:7
**fixture**  127:7
**flaw**  18:23
  25:14,15 50:8
  50:16,19,25
  51:12
**flawed**  50:12
**flaws**  25:11,20
  58:23
**float**  34:23,25
  35:10,20 36:1
  36:16,22 37:19
  39:17 40:4,7
  40:14,15,16
  42:1,2,2,4 44:4
  44:8 55:13
  61:5,15,18
  63:24,24 86:10
  89:21 92:12,17
  92:19,22
  105:21 106:5,8
  106:10,21

108:5,11,21
110:3,5 113:6
113:11,15,22
118:7,14,24
119:16
**floater**  113:3
**floating**  34:3
  35:5 37:3,10
  37:14 41:16
  42:16 43:9,12
  43:15 56:15
  60:24 61:1
  64:5 72:13
  86:5 92:6,7,15
  92:21 103:25
  112:4 113:5
**fly**  38:18
**fmea**  45:15
**follow**  8:1
  19:21 29:3,13
  29:19 30:10,11
  30:12,15 52:21
  98:8,12 99:15
  100:6 101:12
  101:14,17
**followed**  33:2
  60:23 115:13
**following**  33:1
  33:10 46:16
  74:4 101:16
  128:17 132:8
**follows**  6:11
  121:17
**food**  11:18
  44:17 53:12

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[food - go]**                                                        Page 12

72:18
**foot**  85:2,2
**force**  38:12,16
    59:23 67:8,22
    67:25 68:9,17
    69:16,22,23
    70:10,11,12,19
    71:16 78:17,22
    79:21 98:4,15
    98:15,15,18,20
    98:24,25 99:10
    100:1,4 115:8
    115:15,15,17
    115:21 119:19
    124:6,16,20,22
    125:7,17,24
    128:20
**forced**  56:10,11
    119:6,21
    120:14,16,19
    122:18 123:6
    123:18
**forcefully**
    119:2 125:3,13
**forces**  105:25
**forcing**  34:12
    98:2 120:20
**foregoing**
    25:17 131:6,8
**forensic**  6:24
    7:1
**foresee**  101:15
**forgetting**
    114:20

**form**  10:14
    37:8 104:24
    132:4,8
**formal**  30:21
    30:22,24 72:21
**format**  15:10
    102:1
**former**  14:18
**forms**  69:25
**formulating**
    46:1 54:8
**forward**  68:22
    74:21
**found**  23:15
    31:1 49:8
    64:11
**four**  18:1 23:14
    45:3
**frame**  14:16
**freely**  37:17
    40:21,23 43:3
    56:16 126:14
**friction**  38:12
    38:14,16 39:16
    43:15
**friends**  12:13
**front**  7:17
**full**  44:23 46:4
    72:23
**fully**  38:6 42:8
**fulton**  131:4
**function**  28:22
    38:19 51:1
    54:3 104:23

**functionality**
    15:14
**functioning**
    20:15 56:5,6
    62:10 64:9
**functions**
    104:11
**further**  5:23
    6:1 37:6 46:15
    131:9

**g**

**g**  22:6,18,18
**garage**  112:3
**gasket**  35:20
    42:2,3
**gear**  90:24
**general**  76:17
    88:3 109:12
**generality**
    98:23
**generally**  65:15
    65:16,17
**generically**
    123:4,5
**genie**  22:8
**georgia**  1:1 2:6
    5:6 131:3
    132:4,11
**getting**  73:3
    84:17 85:19
    97:25
**giachetti**  4:10
    60:3,15 66:19
    67:8,25 68:13
    71:12 78:16,16

81:17 82:5,8
82:14 83:7,15
118:24 119:1
122:11,24
123:22 125:1
126:3 127:12
**giachetti's**
    57:11 67:20
    69:16 117:9
    118:22 126:18
**gift**  12:17,20
**give**  7:13,24
    16:5 26:2
    47:15 82:10
    99:20,23
    102:20 114:6
    120:23
**given**  12:16
    131:9 132:19
**gives**  127:12
**gloves**  16:10
**go**  14:11,23
    17:22 19:5,13
    28:23 34:3
    35:25 37:2
    38:24 39:4,4
    46:25 50:1,13
    53:17 57:3
    60:12,16 61:19
    61:19 72:16,22
    72:22 76:25
    88:6,25 89:2
    91:3,22 93:9
    93:25 104:23
    111:8,13,13

Soheil Eshraghi , PhD, PE                          January 11, 2024
Copeland, Edward A., Et Al. Vs. Tristar Products, Inc., Et Al.

**[go - holding]**                                                    Page 13

112:4 129:1
**goal** 60:25
**goes** 34:17
  36:17,22 43:14
  51:8 103:17
  112:18 120:8
**going** 8:22,25
  16:3 24:25
  41:20,23 61:4
  61:10 67:1
  71:10 76:5
  78:10,15 80:7
  82:11 83:15
  89:10 93:24
  96:15 103:20
  110:22 118:19
  120:7,9 127:5
  128:7
**goldberg** 2:10
  5:14
**goldbergsega...**
  2:13
**good** 6:16,17
  43:22 76:24
  77:1,2,6 80:8
  104:6
**goods** 48:14
**gourmia** 22:18
**gradual** 68:18
**gradually**
  14:13 72:25
**grams** 35:15
  36:8,9 61:19
**grasping** 94:20

**gravity** 35:13
  35:16 37:19
**gripped** 93:19
**ground** 91:6
**group** 25:1
  48:5 55:11
**guarantee**
  46:10 104:4
**guess** 28:24
**guys** 58:3
  111:18

**h**

**half** 36:7 71:20
  92:19
**halfway** 37:2
  95:20
**hand** 67:20
  93:6,12 94:3,4
  94:4,5,9,18,20
  95:13 96:10,10
  98:20 116:6,6
  116:8 125:22
  126:4,19
**handle** 40:20
  43:2,6 64:4
  70:1,17 71:3,6
  73:11 93:17,20
  95:3 104:3
  116:1,6 124:14
  125:23 126:4,6
  126:11,21
**handles** 70:1
  95:2 116:6
**hands** 51:11
  94:14,23 95:7

95:10 96:21
97:7 98:21
115:24 116:2
124:11,13,19
126:12
**happen** 64:6
  114:20,22
  115:1 119:22
**happened**
  19:12,14,17,19
  19:22 24:6
  25:25 26:11
  32:25 33:7,9
  33:10 92:10
  96:12 115:2
**happening** 93:2
**happens** 16:16
  38:4 77:1
**happy** 9:14
**hard** 116:13
**hardness** 30:4
**harm** 46:7
  53:14,22
  106:12
**harming**
  106:17
**head** 8:9
**hear** 34:18
  87:15,20,22
  88:9,12,13,19
  89:12,15,25
  110:7
**heard** 34:14
**hearing** 87:23
  131:9

**heat** 30:6 62:6
  62:13 65:18
  71:22
**heating** 26:16
  26:18,19,24
  27:6 33:17
  60:25 129:6
**heavy** 35:14
**help** 12:9 14:12
  39:11 41:8
  93:21
**helpful** 85:7
**helping** 90:15
**helps** 104:3
**hesitant** 16:2
  83:8 84:18
**high** 37:7,16
  42:22 43:7
  106:14
**hissing** 87:16
  87:21,22 88:9
  89:12,13,15,17
  89:25
**hit** 67:1 68:6
**hold** 23:2 71:6
  73:12 88:21
  91:10 94:8
  95:3,4,23
  96:11,16
  116:13 124:14
**holding** 56:6
  67:20 68:23
  70:17 71:25
  74:25 93:9,13
  93:14,17 94:11

Soheil Eshraghi , PhD, PE                                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[holding - intact]**                                                      Page 14

125:23 126:4
127:14
**hole**  35:18 37:8
37:9 64:4
**home**  9:18
**horne**  2:5
**hot**  44:19 111:9
115:4
**hour**  28:4,7,10
33:22
**hours**  80:8
**hubert**  2:10 3:3
5:14,14 6:8,13
6:15 10:10,18
10:20 47:5,10
66:14 79:24
80:10,18 81:1
81:5,11 82:24
83:3,5,13 88:8
88:15,18,21,23
89:2,9 100:3
101:21,25
102:8,12,15
107:15 117:17
121:13,23
128:6,14
**huh**  8:8,8
**human**  59:23
60:1 70:18
100:18
**hump**  39:8,9
120:5
**hundred**  42:17
**hurt**  16:3,4
43:23 44:2

63:17 74:15
76:8,23 84:17

**i**

**idea**  56:25
114:18 128:5
**identification**
47:9 66:13
81:9 107:14
117:15
**identified**  45:2
**identify**  20:25
33:19 46:18
49:15
**images**  101:23
**immediately**
117:25
**impact**  92:18
123:18
**implemate**
104:20
**implement**
17:16
**implemented**
103:6,15 104:8
104:15,20
105:5
**important**
50:12 112:12
**improperly**
63:25
**improve**  103:6
104:8,18,20
105:5
**improved**
103:1

**incident**  24:5
24:10 66:22
109:25 123:2
**including**  23:16
**index**  3:1 4:1
**indicated**  103:4
**indicating**
111:2
**indication**
49:20
**indications**
22:16
**indicator**  103:4
**individual**
27:21 28:14
**individually**
23:19
**industries**
48:12
**industry**  17:17
30:12 46:2
48:8,11 52:7
52:10,16 97:15
**influence**  31:11
**information**
19:16 53:3
54:13 98:1
111:14
**ingredients**
32:17,20 33:16
**injuries**  25:22
58:24
**injury**  19:24
44:20 72:2,6
75:3,9,16 76:4

77:12,21 78:6
107:2 115:13
**inside**  35:12
76:15 87:8
88:3 109:6
110:10 112:16
128:19
**inspect**  18:12
25:5
**inspected**  16:18
17:2 21:1 23:6
23:9 24:18
26:13 39:21
55:12,20
**inspection**
14:24,25 57:21
58:3
**inspections**
30:9
**instances**  24:8
119:6
**instant**  19:4,9,9
**instruction**
53:9 74:5
**instructions**
7:14 52:14,17
52:21 53:5
74:4 98:8,8,12
99:15 100:6,10
100:13 101:12
101:15,16,18
109:12 115:5
115:13
**intact**  38:17

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[intention - left]**                                                    Page 15

| | | | |
|---|---|---|---|
| **intention**  58:15 | **issue**  20:12 | **k** | 106:12 108:24 |
| **interacts**  36:17 | 23:20 29:5,7 | | 108:24,25 |
| **interest**  82:13 | 32:4 41:10 | **k**  2:5 | 111:9,10,13,16 |
| **interested** | 53:12 64:11,16 | **keep**  38:10,17 | 111:18,19,22 |
| 14:14 51:17 | 99:2,2 127:11 | 38:20 39:11 | 112:20,22 |
| 131:11 | **issues**  7:7 15:14 | 68:4 96:23,24 | 113:20,25 |
| **interfered** | 22:17 31:1 | 110:22 | 114:11,11,16 |
| 20:10 | 50:5 | **key**  79:10 | 114:17 115:2,3 |
| **internet**  102:24 | **iv**  2:10 5:14 | **kin**  131:9 | 115:17,19,21 |
| **interpretation** | | **kind**  15:12 20:8 | 115:23 116:14 |
| 99:10 | **j** | 67:3 98:22 | 118:20 119:8 |
| **interpreted** | | 127:19 | 120:14,16,18 |
| 98:24 | **j**  2:10 | **kinds**  48:14 | 120:22 121:5,5 |
| **interrogatories** | **january**  1:12 | 97:17 | 123:7 125:18 |
| 54:16 110:13 | 5:2,7 | **kitchen**  22:3 | 128:2 |
| **interrupt**  10:7 | **jerk**  68:17 | **know**  8:17 9:5 | **knowing** |
| **introduce**  5:11 | **jersey**  2:11 | 9:12 11:25 | 114:25 |
| **investigate** | 6:15 | 16:15 17:10 | **krishan**  2:17 |
| 46:15 | **job**  6:24 7:6 | 18:24 19:17 | |
| **investigated** | **john**  14:20 | 20:21 23:18 | **l** |
| 47:12 50:25 | 21:16 55:7 | 28:1 35:14 | |
| **investigating** | 84:12,13,15 | 49:3,4 50:8,9 | **laboratories** |
| 20:23 64:19 | **joint**  57:21 | 50:10,11 53:6 | 48:2,4 |
| **investigation** | 58:3 | 55:8 56:23 | **lack**  127:10 |
| 16:21 19:2 | **jpeg**  102:3 | 57:6 60:22 | **ladder**  53:17 |
| **invoices**  28:14 | **judge**  7:18 | 62:6 63:16,18 | **law**  27:15 |
| 28:16 | **judicial**  5:5 | 64:6,11,13 | **lead**  19:23 |
| **involve**  13:14 | 132:4 | 66:15,22 69:5 | **leader**  48:8,11 |
| 14:1 105:20 | **july**  107:23,24 | 69:8,10 71:1 | **leaf**  74:5 |
| **involved**  14:13 | **jump**  95:23 | 72:15 78:25 | **learn**  15:22,23 |
| **involvement** | **jumping**  93:23 | 82:9,24 84:7 | 16:3 |
| 16:17 | **june**  4:10 | 89:16 90:2 | **learned**  15:23 |
| **involving**  13:6 | 117:10 | 91:15 92:5 | 15:24,24 |
| **irvine**  13:2 | **jury**  7:18 | 95:13,25 96:14 | **lee**  1:15 131:16 |
| | | 97:16,20 98:4 | 132:23 |
| | | 104:2,13 | **left**  9:21 44:1 |
| | | | 81:19,21,23 |

Soheil Eshraghi , PhD, PE                          January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[left - long]**                                                    Page 16

| | | | |
|---|---|---|---|
| 82:2,5 93:12 | 86:24 87:1,4,8 | 27:17 45:9,11 | 87:1 103:3 |
| 94:9 113:1 | 87:8,8 94:2,5,6 | 132:7,19 | 118:17,18 |
| **legal**   132:11,12 | 94:10,20,23 | **little**   35:11 | 119:18 123:11 |
| 132:13,16,18 | 95:15,16,23 | 36:13 67:2 | 128:19 129:7 |
| **legally**   48:18 | 98:3 103:3 | **llc**   27:20,21 | **locking**   15:15 |
| 48:24,24 49:4 | 106:14 107:8 | **load**   31:19,21 | 30:14 35:8 |
| 49:5 | 108:6 109:11 | 32:2,6 38:9 | 36:17,21,23,24 |
| **level**   53:14 | 116:10 119:1 | 42:18,20,21,22 | 37:1,2,7,11,16 |
| 60:13,15 | 119:18 123:23 | 43:11,11 49:21 | 37:22,25 39:1 |
| 100:20 127:20 | 125:23 126:4,6 | 50:22 59:24 | 39:3,5,8,14,15 |
| **levels**   53:8,10 | 126:8,8,14,20 | 60:4,4,9 66:17 | 39:18,19,20,24 |
| **lever**   70:24 | 126:22,22 | 68:7,9 69:13 | 40:1,10 43:18 |
| 93:21 | 127:18,21 | 70:1 73:8 79:3 | 50:24 51:12 |
| **liability**   27:12 | 128:19 129:6,7 | 120:7 126:25 | 54:2 55:22,23 |
| **licensed**   13:11 | **lieu**   5:23 | 127:1 | 55:25 56:1,16 |
| 13:14 14:1 | **life**   13:13,25 | **loads**   15:13 | 57:2 59:22 |
| **lid**   15:14,17 | **lift**   116:10 | 31:9 43:10 | 61:6 63:25 |
| 23:24 25:21 | **lifting**   74:5 | 50:10,15 | 72:13 73:15,16 |
| 32:1 33:18 | **limited**   123:6 | **location**   104:5 | 73:18,21,22 |
| 34:17,19 35:4 | **line**   37:9 67:15 | **lock**   23:24 35:6 | 74:16 92:13,18 |
| 35:7,13 36:18 | 68:3 72:17 | 35:8 40:14 | 96:18,18,21 |
| 37:1,9,16 38:2 | 75:21 76:22 | 42:17,18 43:22 | 100:11 103:22 |
| 38:8,16,17,25 | 86:2 112:10 | 43:22 53:23 | 116:16 117:23 |
| 39:2 40:20,24 | **lined**   31:10 | 75:22 79:10 | 118:14 119:25 |
| 41:3,6 42:5,12 | **liner**   87:8 | 93:24 96:13 | 120:4,21 |
| 50:16,18,21 | **link**   102:5,7 | 105:11 114:24 | 122:12 123:1,3 |
| 51:9 58:23 | **liquid**   44:17,19 | 115:1 120:24 | 123:19,19 |
| 60:9 62:7,11 | 91:6 | 122:19 123:7 | 125:2,4,5,5,12 |
| 62:14,23 63:3 | **list**   17:22 55:3 | 123:10,12 | 125:14,14,15 |
| 63:12 64:4 | **listed**   45:4 | 125:3,6,12,16 | **locks**   35:4 |
| 65:4,9,19 | **litigate**   13:22 | **locked**   35:19 | 122:16 |
| 66:17 67:9,22 | **litigation**   7:2 | 37:3 51:9,9 | **long**   34:2 44:7 |
| 71:12 72:9 | 7:11 11:18 | 61:1,15,20 | 50:17,18,18 |
| 73:5 76:23 | 13:22 14:2,9 | 62:23 63:13 | 74:7 76:3 |
| 79:1,17,20 | 15:8 26:14 | 65:12 79:23 | 77:11,12 78:4 |

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[long - mean]**                                                      Page 17

85:16 86:3
117:3 119:22
119:25
**longer**  41:7
110:22
**look**  28:22 57:3
65:24 67:17
69:12 73:10
77:5 83:4
101:22 102:12
102:20 117:2,8
**looked**  45:10
45:14 63:11
64:14,20 69:6
77:8 103:9
122:7
**looking**  15:14
19:3 22:13
45:13,15,17
62:5,5 64:4
73:20,25 77:16
93:23 100:11
111:18 117:12
**looks**  23:25
105:2
**losano**  121:25
122:2
**loss**  125:4,14
**lost**  125:2,12
**lot**  70:18 72:18
127:21
**lots**  47:24
**low**  42:20
43:11,23 50:15
50:22 59:24

61:4,25 76:5,7
79:8 80:4
106:15 114:25
115:4
**lower**  73:4

**m**

**m**  22:18,18
**macon**  1:2 2:6
**made**  5:3 17:22
62:23 79:1,17
104:14 105:7
132:5,18
**magnetic**  103:2
104:4
**magnitude**
51:8
**majority**  42:24
95:6
**make**  19:10
32:17 35:2
36:21 43:21
46:6 48:22
53:19 68:2
89:17 92:3
95:4,7 103:2
103:11,19,20
123:3 129:20
132:8
**maker**  26:16,18
26:20 27:2,9
**makes**  39:8,8
89:25 122:24
122:25,25
**making**  62:9

**malfunction**
49:18
**manage**  68:7
93:22
**manifest**
105:25
**manner**  6:6
94:24
**manual**  41:3
49:10,11 55:16
74:5 109:13
**manually**  43:17
71:24 74:25
**manufacturer**
10:5 11:1
20:22 48:18
50:13 99:12
101:11
**manufacturer's**
20:12
**manufacturers**
11:12 52:17
97:17,21 98:7
99:14 104:17
**manufacturing**
13:15 46:4
59:9,16 97:20
122:22
**maria**  23:5,6
**mark**  47:5 66:9
105:17 107:11
**marked**  47:6,8
66:10,12 81:8
107:13 117:14

**market**  40:1
**markings**
118:13
**marks**  118:10
119:16
**marty**  2:5 5:13
54:14 82:3,4
82:24 90:15
101:21
**mate**  38:1
**material**  28:16
125:2,3,11,13
**materials**  12:25
**matic**  22:20
**matter**  49:24
52:4 92:16
**max**  50:7 60:13
60:14 67:15
71:15 72:16
75:21 76:22
86:2 112:10
**maxi**  22:20
**maximum**
61:13 72:23
79:3,21 88:5
**meal**  11:22,22
12:1,4,9 32:14
33:1,9,11,23,24
**mean**  7:2 10:10
13:7 29:6,16
29:23 31:22
44:13 49:25
51:23 61:14
72:16 84:4
88:19 91:22

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[mean - name]**                                                    Page 18

101:1 127:13
**meaning**  7:7
  11:18 98:16
**means**  7:16
  53:24 56:5
  74:10,10,10
  91:25 115:16
**measure**  32:2
  34:2 86:15,23
  91:4 112:18
  113:1 114:14
**measured**
  113:4,19
  114:23 124:5
**measurements**
  123:15,16
**measuring**
  15:13,13
  111:10 128:20
**meat**  32:19
  33:16 112:20
**mechanical**
  48:15 73:15
  126:7,21
**mechanism**
  23:24 32:2
  35:3,9 36:18
  36:22,23 39:15
  39:15,20,24
  43:18 61:6
  64:1 72:13
  75:8 92:14,18
  120:21 123:1
  123:20

**mechanisms**
  40:1
**meet**  48:22
  49:2 50:22
  52:5 78:9
**meeting**  49:22
**meets**  49:25
**members**  12:13
**mention**  44:3
  45:6,7 49:9
  51:19 57:1
  63:17 102:19
  103:2
**mentioned**  32:5
  37:21,23 40:3
  47:23 52:6
  63:8 68:13
  83:6,14 95:1
  95:12 100:10
  102:17
**mentioning**
  47:1 95:21
**mentions**  57:14
  73:9 121:11,20
**met**  47:3 77:15
  77:22
**method**  74:7
  97:25
**methodology**
  59:19 69:17
**methods**  48:7
**middle**  1:1
**mind**  78:8
  119:9,11

**minimal**  53:9
  124:2
**minimize**  28:20
**minimizing**
  29:2
**minimum**  70:4
  74:16
**minute**  35:17
  60:23 66:11
  80:9 87:5
**minutes**  33:22
  33:25,25 34:6
  80:11,11
  110:14 111:3
  111:22 112:1,5
  112:24,25
  113:2,6,9,12,15
  113:16,17,23
  113:23,23
  114:13 128:7
**misaligned**
  65:4,10,12
**mishandled**
  44:20
**misinterpreted**
  100:14
**misread**  122:9
**missing**  20:20
  20:21 59:2
**misstates**  79:13
**mistake**  53:6,8
  53:10,17
  100:11
**misuse**  98:3,5

**mitigation**
  45:17
**mode**  110:22
**model**  102:25
**modifications**
  20:16
**modified**  20:18
**moment**  5:18
  61:5 121:15
**money**  27:22
**morning**  6:16
  6:17,18
**move**  35:6 37:4
  37:6,10,15,16
  38:14 43:17
  60:25 68:4
  95:15,16 127:8
**moved**  96:13
**movement**
  37:11 38:15
  68:7 79:2
**moves**  37:1
  60:24
**moving**  36:23
  68:22 74:20
  93:8
**msenn**  2:7
**multiple**  18:3
  30:8,9 118:10
  119:5,16
**muscles**  84:7

**n**

**name**  6:14
  10:22 14:19
  54:25

Soheil Eshraghi , PhD, PE                January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[nasm - open]**                                                    Page 19

**nasm**  30:3
**natural**  116:7
**necessary**
  38:19
**need**  8:6 9:11
  9:15 30:10,15
  38:20 41:14
  43:21 45:5
  46:5,11,16
  47:25 48:21
  52:13 77:5
  83:20 99:7
  126:11,25,25
  127:3 130:2
**needed**  68:1
  96:21 125:24
**needing**  127:5
**needs**  50:25
  124:20 125:5
  125:15
**never**  11:21
  12:18 65:3,7,9
  79:21 97:21
**nevertheless**
  68:20
**new**  2:11 6:15
  53:7 116:19
**nine**  18:2
**ninja**  22:13,15
**nod**  8:9
**normal**  87:2
  97:18 116:9
  119:18 123:12
**normally**  29:25
  35:13 111:6

**note**  53:13
  128:18
**noted**  128:18
**notes**  19:4 53:5
  53:9,16 113:18
  114:5,5 128:8
**notice**  82:10
**noticed**  49:19
  57:6 91:5
  100:9 103:10
**november**
  24:17
**number**  4:4
  83:12 99:5,9
  99:22 107:22
  107:22,24
  108:4,15,21
  109:4,5,10
**numbers**  4:11
  18:4 83:21
**nuwave**  21:21

**o**

**o**  22:6,18,18
  23:8,8
**o.c.g.a.**  130:13
  132:14
**oath**  5:23,25
  7:16
**object**  10:11
  35:11 79:12
  83:9 99:17
**objection**  6:6,8
  6:9
**objections**  10:8
  10:14

**objective**  29:2
  29:12
**objectively**
  90:8
**obligated**  49:5
**observe**  15:16
  67:19
**observing**
  21:16
**obtain**  30:23
**obvious**  50:14
**occur**  20:3 40:8
  63:12 85:6
  115:13
**occurred**  33:14
  54:17 56:24
  90:18 103:14
  107:23 109:20
  110:5
**oh**  36:6 56:3
  69:10 85:5
  86:17 90:17
  98:18
**okay**  5:16 7:1,4
  7:7 9:21,23
  10:19,21,25
  12:3,8 13:11
  14:8,15 15:7
  16:12,23 19:21
  23:13 26:19,24
  29:19 34:25
  37:18 41:5
  47:4 49:8
  53:13 55:4,19
  57:5,14,20

**58:8 59:19**
  60:10,18 61:8
  61:14 62:16
  63:1 64:8,20
  65:24 66:1,4
  66:18 67:4,5
  67:19,24 73:12
  74:18 75:5
  76:16 77:16
  80:13 81:1,5,6
  81:12 82:21
  83:3,20 85:12
  85:18,21 87:14
  88:1,6,15 89:4
  89:17 91:11
  93:12 94:9
  101:10 102:8
  102:16 105:13
  106:10 107:11
  109:4 114:8,9
  117:8,16
  118:23 119:20
  124:4 128:9
  129:15 130:5,7
  130:8
**once**  6:20 44:11
  46:10 102:5
  119:11
**ones**  22:2
**open**  15:14,25
  16:4,6 25:21
  31:6,7 33:25
  34:12 35:2,7
  37:12,17 38:25
  39:7,12,16

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[open - paperwork]**                                        Page 20

50:16,22 51:9
51:11,12 53:20
53:24 56:10,11
58:24 59:24
60:9 61:23
66:17 68:1
70:1 74:8
75:17 76:23
77:11 79:2
87:6 90:1,5
91:22 92:1,3,6
94:14,23 95:10
96:5,7,15,22,25
98:21 102:10
104:1 105:25
106:1,14
108:18 110:14
115:8,10,17,24
116:2 118:15
120:11,14,16
120:19,20
121:6 123:6,10
123:23 124:18
124:20 127:9
128:20
**opened** 16:14
44:23 49:20
56:20 59:4,25
76:2,14 77:10
77:18,18,19,20
79:20 80:3
86:16 97:3
108:15 111:15
115:3 119:2
120:1 123:11

124:2
**opening** 33:17
39:2 41:16
73:16 74:3,19
76:7 77:10,25
84:3 93:9,22
97:19 116:7
119:21,23
120:5 122:18
123:18 125:7
125:17 128:19
**openings** 119:6
119:21
**opens** 71:12
72:9 76:3
119:18
**operate** 16:12
**operating**
44:23 72:23
90:13 109:12
**operation**
73:21 87:2
**opine** 9:3 21:2
25:10 58:22
59:12 105:11
105:14
**opined** 20:5
24:12 123:22
**opines** 118:24
119:1,5
**opining** 50:17
103:13 105:13
**opinion** 9:4
21:25 25:17,23
25:25 26:3,9

51:4 59:7
76:11,12 92:16
92:17 101:7
104:24 106:4,7
116:3 120:12
122:15,24,25
123:9 124:16
125:19 126:9
126:18 127:12
127:23
**opinions** 9:1,7
17:21 46:1
53:1 54:8
58:13,16,18
59:1,8,16
62:20 100:22
100:25 101:3,5
105:19 106:19
107:5,7 118:22
120:23 123:3
127:15
**options** 77:5
**order** 96:24,25
**ordinary** 59:23
59:25 71:24
74:24 75:6,6
**organizations**
30:8
**original** 51:14
126:17
**originally** 34:1
83:17 84:15
**outlines** 31:23
**outside** 14:2
31:9 111:7

**overcome**
42:23,25 43:18
59:23 68:5
75:21 114:24
114:25 125:3
125:13
**overcook** 53:12
**overtorque**
99:22
**own** 12:14
83:12
**owned** 11:15
**owner's** 49:10
49:11 109:13

**p**

**p** 44:7
**p.e** 1:11 3:2 5:1
**p.e.** 5:10 6:10
**p.m.** 1:13 5:8
80:14,16 89:5
89:8 128:10,12
130:10,11
**p.o.** 2:6
**pad** 26:16,18
26:19,24 27:6
**page** 3:3 4:2
7:14 25:16
33:20 46:14
49:11 102:23
104:7 117:12
128:15 129:4
**pages** 131:8
**paperwork**
116:25 117:1

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[parameter - played]**                                          Page 21

| | | | |
|---|---|---|---|
| **parameter** 121:12,22 | **pause** 67:3 | **ph.d.** 1:11 3:2 4:10 5:1,10 6:10 12:22,25 | **placed** 7:15 109:10 |
| **parameters** 50:8 | **pending** 9:13 | **philippe** 21:7 | **placement** 129:5 |
| **part** 20:21 35:8 54:1 97:16 104:22 122:21 122:21 127:5 | **penetrate** 37:10 | **philosophy** 50:5 | **plaintiff** 5:13 18:9 19:21 20:4 24:10 27:5,8 33:10 33:14 34:12 94:14 107:20 108:5,15 109:5 110:3 114:12 127:14 |
| **partially** 62:7 62:14 63:3,25 96:1 | **people** 31:12 41:15 42:25 43:24,25 63:17 72:18 74:15 97:18 99:24,25 105:1 106:17 115:16 | **photograph** 117:21 118:4 | |
| **participating** 5:19 | **perceive** 115:19 | **photographs** 25:6 101:19 116:22 117:4,9 117:19 | |
| **particular** 49:23 52:4 76:17,19 81:20 128:23 | **percent** 42:17 | **photos** 117:25 | **plaintiffs** 1:5 2:4 4:8 33:20 54:12,16,21 55:1 90:21 91:18 107:16 109:18 111:3 |
| **parties** 6:1 131:10,10 132:7,19 | **perform** 30:13 30:24 77:4 81:21 123:14 123:15 128:16 | **physical** 117:5 **physically** 5:20 **pick** 78:11 **pictures** 67:17 69:13 118:6 **pieces** 16:9 | |
| **party** 6:6 99:15 132:7,16,19 | **performance** 104:24 106:11 | **pin** 35:12 36:16 36:24 37:1,7 37:12,16 39:3 39:12,19 56:1 56:16 73:16 96:18,20 100:11 103:4 120:4 122:12 123:19 125:5 125:15 | **plate** 36:24 37:9,15 39:18 42:15 61:6 64:5 |
| **pass** 72:10 73:6 77:17 | **performed** 30:21 66:19 81:15,17 97:6 97:13 | | **platform** 84:22 **play** 51:5 67:1 87:11 89:10 93:1,1 |
| **passed** 47:18 **passes** 32:10 47:21 75:19 76:2 77:10 | **performs** 11:12 **perimeter** 31:9 **person** 5:24 32:25 42:20 74:11 75:16 123:12 | **piston** 35:11 **place** 34:19 35:4,19 39:3 39:12 62:11,24 65:19 79:23 | **played** 67:6 68:24 71:11 81:10 87:13 88:7 89:14 93:5,11 95:14 96:6,8 97:2 122:18 |
| **past** 39:9 84:19 93:2 96:20 | | | |
| **patel** 2:17 **patterns** 127:13,16,24 **paula** 21:19 | **personal** 99:9 **persons** 72:2,6 75:3,10 76:4 77:12,21 78:6 | | |

Soheil Eshraghi , PhD, PE

January 11, 2024

Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[player - pressure]**

Page 22

| | | | |
|---|---|---|---|
| **player** 88:4 | 52:4 116:10 | **precise** 42:18 | 31:6 32:10,10 |
| **plays** 40:10 | **pot's** 19:9,9 | 98:22 111:18 | 32:14,20 33:5 |
| **please** 5:11,18 | **potential** 28:21 | **precisely** 31:10 | 34:12,15 35:1 |
| 6:7 121:15 | 63:16 79:18 | 111:10 | 35:3,8,17,23 |
| **pled** 109:15 | 106:17 | **prelude** 57:5 | 36:12,14 37:14 |
| **plowing** 125:3 | **pots** 21:4 116:8 | **prematurely** | 37:18 38:5,9 |
| 125:13 | 116:9 | 35:3 | 38:11,19,21 |
| **point** 37:7,17 | **pound** 36:5,7 | **prep** 22:22 | 39:1,21,25 |
| 49:21 51:1 | 77:14,24 84:8 | **prepared** 28:17 | 40:4,10,13,16 |
| 56:21 61:3,9 | 115:17 | 32:13 58:10 | 40:19,24 41:2 |
| 68:6 76:4 | **pounds** 42:24 | **preparing** | 41:11,12,23 |
| 79:22 93:2 | 50:1,2 51:3 | 15:11 27:23 | 43:11,14,16,21 |
| 95:18 96:17 | 69:16,17,22 | 28:3 31:3 | 43:22,25 44:11 |
| 111:5 114:1 | 70:4,5,11,21 | **presence** 82:8 | 44:12,14,22,23 |
| 120:1 123:10 | 71:9,16 72:12 | **present** 2:16 | 47:12,17,21 |
| 127:10 | 72:24,24 73:24 | 5:21 9:18 | 48:9,13,17 |
| **pointed** 57:24 | 74:15 77:22,24 | 77:12 | 49:20,21,23 |
| **points** 129:4 | 78:9,17,22 | **presents** 77:6 | 51:6 52:13 |
| **pop** 102:10 | 84:2 98:17,19 | **pressure** 10:4 | 53:20,25 55:13 |
| **pops** 50:7 | 115:18,18 | 11:1,3,7,9,13 | 56:10,12,17,20 |
| **position** 34:18 | 121:7,7,12,21 | 11:15,17,21,23 | 57:9 58:24 |
| 34:21 35:6 | 123:23,23 | 12:1,4,8,9,11 | 59:4,4 60:20 |
| 37:3 40:8 61:1 | 124:5,5,6 | 12:14,16,19 | 61:9,15 62:5,9 |
| 61:16,20 62:24 | 125:24 126:6 | 13:5,6,16,18 | 63:2 65:4,10 |
| 63:13 87:1,7 | 126:20 127:3,4 | 14:2 15:8,17 | 65:18 66:16 |
| 103:3 124:11 | 127:9 | 15:25 16:1,6,7 | 67:21 69:24 |
| 124:13 | **ppc.780.0001...** | 16:13,14,18,23 | 71:6,20 72:1 |
| **positioning** | 4:5 | 17:1,4,7,13,21 | 72:23 73:3,14 |
| 90:13 | **ppc772** 103:1,9 | 18:7,11,24 | 73:17 74:3,15 |
| **possibility** | **ppc780** 25:20 | 20:2 21:1,13 | 75:1,7,8 76:1,2 |
| 72:17 | 71:5 95:6 | 23:15,23 24:13 | 76:4,7,13,14 |
| **possible** 53:19 | **pratt** 14:20,21 | 24:18 25:4,5 | 77:9,11,17,19 |
| 114:20 129:6 | 14:21,22,23 | 25:11,13,20,21 | 78:5,17,18,23 |
| **pot** 19:4 44:15 | 15:7,16 55:7 | 26:1,4,14,20 | 79:8,8 80:3,4 |
| 44:19 50:23 | 84:12,13 | 29:20 30:12 | 80:23 85:1,19 |

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[pressure - pulling]**                                    Page 23

85:21 86:11,13
86:15,18,22,23
89:18,21 90:4
91:25 92:8
93:13 94:14
95:10 97:15,16
97:19 98:2
100:12 102:18
103:4,7,11
104:8,21 105:6
106:1,11,13,15
106:24 107:3
107:25 108:12
108:15,16,18
109:5,7,11,19
109:23 110:9
110:10,15,23
111:4,5,8,8,12
111:12,14
113:1,21,25
115:3,4,6,9
116:11,17,19
116:21 118:15
122:12 128:19
**pressure's**  61:3
**pressured**
  111:15
**pressures**
  43:23 61:25
  114:25
**pressurization**
  37:4 63:12
**pressurize**  42:8
  62:7,11,13
  65:5,10 86:4

129:1
**pressurized**
  15:17 35:5
  38:6 39:13
  42:11 43:2
  63:3 96:14
  105:21 106:2,9
  106:20 107:9
  112:1 126:14
**pressurizing**
  129:7
**prestige**  22:24
  22:25 23:1,3
  24:3
**prevention**
  53:21,22,23
**prevents**  73:16
**previous**  14:10
**primary**  74:5
**princeton**  2:11
**prior**  16:17,19
  83:23
**probability**  9:4
  9:9
**probably**  17:3
  62:1 95:5
  97:17 106:14
  125:25 126:1
  126:11
**probative**  85:7
**problem**  50:23
  50:24
**procedure**
  130:13

**proceed**  5:17
  19:20
**process**  15:22
  15:23,24 33:17
  60:19 122:22
**processes**  30:10
**produce**  19:15
  51:7 59:22
**produced**  45:8
  45:11 85:9
**product**  28:19
  30:5 46:3 49:6
  49:12 76:18
  98:13 99:12,16
  100:7
**production**
  47:24
**products**  1:7
  5:15 26:13,21
  27:12 48:6,19
  52:12,21
**professional**
  13:13,25
**prohibited**
  132:13
**proof**  100:17
**proofing**  53:6,8
  53:10,18
**proper**  16:3
  38:19 84:18
  103:3 104:5
**properly**  41:20
  41:22 63:13
  103:23 129:8

**properties**
  46:13 47:24
**property**  30:3
  46:10
**proposal**  31:3
  31:15
**propose**  48:6
  103:8
**proposing**  33:3
**protective**
  90:23
**protocol**  82:17
  82:19,22
**provide**  7:24,25
  17:21 52:21
  98:8 127:24
  132:12,16
**provided**  65:25
  73:15 80:22
  100:6
**provides**  99:13
**providing**  8:25
**ps**  60:21 61:11
**psi**  43:5,7 44:3
  44:4,8 60:21
  61:10,20,24
  62:3 73:4,4,5
  76:23,25 79:7
  80:4,5
**public**  49:1
**puck**  23:11
**pull**  32:1 45:5
  68:17
**pulling**  60:9
  68:3,5 70:19

Soheil Eshraghi , PhD, PE                         January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[pulling - releasing]**                                              Page 24

70:23 128:25
**purpose**  35:5
**purposes**  26:14
**pursuant**  5:3
  130:12 132:3
**push**  36:14
  51:11 70:18
  71:6 95:22
**pushed**  35:18
  35:22
**pushes**  40:13
  116:1
**pushing**  70:17
  70:19,23,23
**put**  28:1 32:16
  52:1 64:15
  79:2,19 85:21
  86:24 87:8
  90:4 111:4,24
**putting**  53:9
  87:4

**q**

**qualifications**
  46:3
**qualifier**
  115:14
**quality**  11:12
  45:17 46:11
**quarters**  92:20
**question**  7:23
  8:18,21 9:4,13
  9:13 10:11,15
  16:25 20:8
  26:2 49:4
  51:15 57:5

70:7 72:20
  87:3,12 89:12
  95:8 99:11
  123:14 124:25
  126:17
**questions**  8:17
  54:17 67:3
  93:3 94:17
  118:20 129:14
  131:7
**quickly**  41:8

**r**

**r**  22:6,18 23:8
  131:1
**radially**  36:19
**radius**  68:3
**range**  73:4
  106:16
**ranges**  106:13
**rate**  28:2
**rates**  132:18
**reach**  72:11
**reaches**  72:1
  75:2,9
**react**  115:19
**read**  54:20
  100:10 115:5
  121:9,16,18
  125:9 129:19
  129:23 130:2
**reader**  58:15
**reading**  100:8
  129:17
**ready**  53:20
  85:19

**really**  28:24
  38:7 41:13
  86:13 114:16
  116:13
**reask**  8:18
**reason**  49:14
  49:18 81:20
  121:6 128:23
  130:2
**reasonable**  9:3
  9:8 25:18
  112:25
**reasonably**
  32:11,12 47:21
  76:13
**recall**  12:15
  21:5 58:4
**recalled**  65:20
**received**  12:19
  45:13 54:10,18
  66:4 116:21
**receiving**  99:15
**recently**  54:20
**recipe**  111:25
**recognized**
  97:7,15
**recollection**
  21:11 67:14
**record**  5:12
  80:14,15,17,20
  89:1,3,5,6,8
  121:16 128:10
  128:11,13
  130:10

**recorded**  69:1
  69:8,11
**records**  28:3
**recreate**  20:4
  32:25
**red**  103:4
**reduced**  74:4
  131:7
**reduces**  125:6
  125:16
**reduction**
  105:1
**referenced**
  114:4
**referral**  132:7
  132:17
**reflection**
  118:5
**refresh**  21:10
**regarding**
  117:1 127:16
**regardless**
  43:22 50:19
**regular**  27:19
  131:10
**regulations**  5:4
  132:3
**relate**  84:3
**related**  7:6
  106:12
**release**  41:3
  55:16 109:6,6
**released**  44:12
**releasing**  92:9

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[relied - reviewing]**                                      Page 25

**relied** 52:25
54:6,7,9
**relief** 74:6
**rely** 39:16
45:25
**remaining** 40:5
120:9
**remains** 35:23
**remember**
17:24 19:5
21:9,15 28:15
54:19,24 55:6
62:15 63:5
88:24 91:9,17
101:4 110:19
112:2
**remote** 5:9
**remotely** 5:22
5:25
**remove** 15:16
107:8 108:6
**repeat** 67:3
121:14
**repeating**
32:18
**rephrase** 8:17
72:20 124:25
**replaced**
102:25
**replay** 87:25
**replicate** 24:9
33:6,9,14
**replication**
26:11

**report** 4:10
18:18,21 24:16
24:19,20 25:3
25:8,10 28:3
33:19 34:7
45:1,2,5,7
46:14 49:15,17
50:4 51:16,19
51:22 52:2,3
54:11 57:1,14
57:18 58:22
59:1,6,12,15
64:8,16 69:19
102:17,23
112:11 116:4
117:9,11
120:23 128:16
**reported** 18:21
103:9
**reporter** 5:3,17
5:18 6:3,5 7:20
7:22 8:3,7
121:14,15,17
130:7 132:1,4
132:6,6,11,17
**reporter's**
132:6
**reporting** 5:5
5:22 6:7 50:5
132:3,5,12,16
132:17
**reports** 15:11
27:23 49:9
57:12 58:8,10
58:12,19 62:16

62:21 63:9
101:5 105:10
109:23 111:1,2
127:23
**represent**
131:8
**representative**
132:11
**request** 4:8
55:1 107:17
114:8
**requesting**
82:25
**requests** 54:22
**require** 126:6
126:20
**required** 48:18
48:24 70:5
115:23
**requirement**
42:23 49:22
50:23 52:5
74:16 77:14,14
**requirements**
29:15,24 30:9
47:3 48:6,22
**requires** 68:9
71:19
**reserve** 10:8,14
**resistance** 39:2
42:12,14,16
43:5,8,15,17
44:3,9 68:21
68:25 115:9

**response** 54:21
55:1
**responses** 4:8
8:6 54:16
107:16
**responsiveness**
10:15
**restroom** 80:9
**result** 34:4
50:14 131:11
**results** 18:21
31:11 46:19
54:9 69:1
**retailer** 11:7
**retained** 9:17
17:20 18:8,9
27:5,8,11,14,23
**retested** 47:25
**review** 18:12
22:10,12 46:16
51:24,25 54:15
54:23 57:11
128:8
**reviewed** 17:8
21:12 22:11,13
26:22 45:3,6
45:10 49:10,15
51:20 52:24
53:2,4,4,5 54:6
54:19 115:5
122:14
**reviewing** 28:3
45:8 51:17
57:18

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[reynolds - saying]**                                              Page 26

| | | | **s** |
|---|---|---|---|

**reynolds** 2:5
**reynoldsinjur...**
  2:7
**richard** 21:7
**ride** 120:10
**right** 6:14 7:11
  7:13,20 8:6,16
  9:11 10:2
  13:20 19:5
  23:16 25:2
  26:2,11,19
  28:1 29:9
  33:13 34:21,22
  35:11,21,23,25
  36:12,14,16,19
  37:21 38:2,4
  38:13 39:5,9
  39:11,22 40:1
  40:3,23,25
  41:9,19,23,25
  42:5,9,10 44:5
  44:17,20 45:25
  46:21 48:12
  51:14 52:10,14
  52:18 54:4
  56:10 58:6
  61:6,16,21
  62:11,19,24
  63:9,21 64:17
  65:22 66:5,8
  67:1,7,9,13
  68:10,18 69:3
  69:17,21 70:13
  70:22 71:17
  74:13,22,24

75:23,25 76:5
76:8,9 78:1,6
78:19 79:5
80:5,19 81:2
81:15 83:6
84:25 85:15,16
85:19 86:25
87:9,11,19
89:25 90:9,13
90:20,23 91:1
91:2,5 92:24
93:3,6,10,18,21
94:5,19,25
95:11,19 96:1
96:4,8,11,22,25
97:3,3,5,8,23
98:9 101:19
102:12,16
105:10,24
106:2,25 107:9
107:20 108:10
108:11,20
109:1,22,25
110:5,15,18,23
110:25 111:5
112:3 113:20
114:2,15
115:10,24
116:15 117:18
117:21,23
118:18,22
119:14,14,16
119:24 120:17
120:25 121:3
122:11,23

123:13,22
127:12,22
128:2,6 129:10
129:13,19,22
**risk** 72:2,6 75:2
  75:9,16,18
  76:3 77:12,19
  77:20 78:6
**robert** 4:10
**role** 13:22
  40:10 51:5
**room** 5:21
**root** 46:15
**rotate** 37:15
  38:25 40:23,24
  41:6 95:5
  116:12 126:10
**rotated** 40:20
  42:12 43:2
**rotates** 126:14
**rotating** 35:7
  60:9 64:3
  93:14 96:23,25
  127:4,6
**rotation** 79:20
  127:11
**royal** 22:24,25
  23:1,3 24:3
**rpr** 1:15 131:16
  132:23
**rule** 130:12
**rules** 5:4
  130:13 132:3
**rush** 41:15,16
  63:18

**s** 4:10 23:8
**safe** 32:11,11
  32:12 42:25
  47:21 49:6
  76:13,20 84:20
**safer** 103:12
**safety** 28:23
  37:5 49:12
  53:5 70:5 74:7
  74:12 75:8
  103:6,18 104:8
  104:18,21
  105:3,6
**sat** 47:12
**satisfied** 47:13
**saw** 20:15
  22:16 45:14
  51:24 57:9
  67:7 78:15
  94:16 95:16
  97:10 110:3
  121:10,20
  127:19
**saying** 8:10
  10:21 23:20
  50:21 59:3
  63:23 71:3,5
  75:11,17,20
  76:1 79:16
  96:17 99:8
  103:16,16
  106:18 107:1
  113:10,14,14
  116:5 120:14

Case 5:22-cv-00212-CAR    Document 29-14    Filed 03/11/24    Page 159 of 169

Soheil Eshraghi , PhD, PE                                    January 11, 2024

Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

[saying - showing]                                                  Page 27

124:12 126:25

**says**  18:1 19:22
19:22 49:24
60:23 68:16
71:23 72:12
73:11,14,22
78:9 108:4,7
108:21 109:5
109:10,14
122:11 125:1
126:3,19 129:3
129:5

**scale**  50:1

**scenario**  19:14
64:18 114:20
115:1 129:12

**science**  12:25

**scientific**  25:18

**scratch**  56:8,9
56:18,19,23
57:2,7 116:16
116:20 117:22
118:10 119:22
119:25

**scratched**  56:4
56:7

**screen**  46:21
66:2,9 74:19
107:18

**seal**  35:18
37:11 40:14
91:23

**sealed**  35:23
41:7,20,22,24
42:3

**searched**
102:24

**seated**  9:21

**sec**  89:3

**second**  10:6
17:25 41:21
45:1 47:15
49:14,17 51:19
52:1 59:15
66:11 80:21
87:12 96:10
97:14 105:18
115:22

**seconds**  68:21
85:15 86:6,6,8
86:10 89:11

**section**  71:23
73:9,10,14,25
74:19 77:9,25
78:11 109:12

**sections**  64:21

**secured**  63:13

**see**  17:23 19:14
19:18 21:10
42:4 46:21,25
47:16 50:25
55:3 62:12
63:24 64:5,20
66:1 68:21
69:3,7 73:9
74:18,20,20
81:12 83:22
84:6 88:18
93:15,23 95:11
97:18 103:24

107:18,21
108:2,8,25
109:1,17 110:7
112:1 116:25
117:11,18,18
119:16 126:24
129:6

**seems**  91:10,11

**seen**  90:11
105:8

**segalla**  2:10
5:15

**sells**  11:7

**send**  102:1,3

**senn**  2:5 5:13
5:13 6:9 10:6
10:13,19 79:12
80:7 81:4 83:1
83:4,9 88:2,19
88:22 99:17
102:4,9 114:7
122:6 129:16
130:1,5

**senn's**  27:14

**sense**  112:23

**sensio**  22:5

**sensor**  60:4
86:18,22 103:2
104:4

**sent**  28:14
101:19

**sentence**  73:11

**separate**  27:18
27:19 103:23
106:10 116:13

124:21

**separated**
124:19,22

**separation**  38:8
38:10 79:22

**served**  72:19

**services**  11:12
132:5,12,16

**set**  84:21 85:3,4

**settled**  16:21

**seven**  18:2
23:14

**severity**  45:16

**shakes**  68:23

**shaking**  67:21

**shape**  124:14

**shaped**  35:11

**shapes**  69:25

**share**  88:16
102:14

**sheryl**  1:4
54:20 94:16
100:9

**shield**  16:10

**shoulders**  8:9

**show**  15:12
16:12 46:23
49:1 82:13
85:18 86:24
87:3,7 105:17
118:1,1,6

**showed**  14:13
15:9,10 57:19

**showing**  16:8
84:16 107:11

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[shown - stop]**                                               Page 28

**shown**  122:6
**shows**  66:15
  117:22 118:10
**shrug**  8:8
**sic**  60:21
**side**  32:1 33:3
  42:5 68:8 77:3
  89:21 93:9,10
  93:10 95:3
**sign**  129:24
**signature**  130:6
  130:14 131:16
  132:22
**significant**
  69:23 70:10,13
  114:1 123:24
  123:25 124:6,7
  124:15 125:24
**signing**  129:17
**silicone**  35:20
**similar**  17:15
  23:24 39:20,23
  39:25 129:2
**similarly**  59:11
**simple**  50:5
**simply**  53:2
  95:8
**simulation**  60:8
**simultaneous**
  20:13 24:24
  34:8 60:7
  75:13 88:20
  99:6 101:24
  119:10

**sits**  35:15
**situation**  20:3
  53:18
**six**  17:9 18:1
  23:14
**slash**  67:20
**small**  36:2
  74:15 125:2,11
**soheil**  1:11 3:2
  5:1,10 6:10
**sold**  116:18
  128:3
**solely**  13:5
**solutions**
  132:11,12,13
  132:16,18
**somebody**
  20:22 37:12
  70:20
**soon**  73:18
**sorry**  10:6
  20:14 26:17
  95:21 99:7
  121:13
**sound**  66:5
  87:16,21,22
  88:9 89:13,15
  89:16,17,25
  90:2
**sounds**  23:13
  24:7
**source**  73:17
  132:7
**space**  90:1,5

**spaces**  38:2
**speaker**  88:3
**speakers**  20:13
  24:24 34:8
  60:7 75:13
  87:24 88:20
  99:6 101:24
  119:10
**speaking**  8:2
  65:16
**specific**  9:4
  99:5,9,22
**specifically**
  16:6 24:2
**specifications**
  46:5
**specifies**  30:5
**speculation**
  83:10
**speed**  12:5,6
  41:11
**spelling**  129:21
**spilled**  44:20
**spirit**  32:7
**spring**  36:25
**standard**  17:18
  30:1
**standards**
  17:14 29:2,13
  29:19 30:13
  48:5 49:2 70:3
**stands**  48:1
**start**  104:5
  107:22 129:6

**started**  6:25
  14:14 27:4
  87:6
**starting**  34:21
**starts**  35:17
  73:3
**state**  6:2,5,7
  15:1 46:14
  122:25 131:3
**stated**  131:7
**statement**
  104:10,19
  105:4,8 125:8
  125:20
**statements**
  104:13 105:6
  111:2
**states**  1:1 132:4
**stating**  132:5
**stay**  100:17
**stays**  92:21
**steadily**  68:22
**steam**  41:7 42:4
  42:7 89:17,20
  89:24,25 90:8
  91:21 92:23
  109:6
**stephen**  83:2
**stew**  44:19
**stipulate**  6:4
**stop**  37:11 68:6
  79:2,19 89:11
  96:15 102:14
  127:2,6,10

Soheil Eshraghi , PhD, PE                                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[stopping - terms]**                                                    Page 29

**stopping** 38:7
  127:8,10
**stops** 35:6
**story** 62:22
**stovetop** 17:6
  19:2 20:2 21:7
**strike** 16:24
  36:24 37:9,15
  39:18 42:15
  61:6 64:5
  71:22 107:6
  118:25
**strong** 99:24,25
**studies** 112:17
  112:22
**sub** 29:9
**subject** 24:14
  122:19
**subjective**
  29:10
**submittals**
  117:7
**submitted**
  18:20 52:16
  82:19 117:6
**substantively**
  129:22
**substitute**
  30:17 31:4,13
**successful**
  119:21,23
**successfully**
  120:1
**sufficient** 53:13
  53:16 70:6,8

**suggest** 30:17
  46:9 119:17
  129:25
**suggested**
  25:14 82:12,14
**suggesting**
  97:24
**suite** 2:11
**sunbeam** 21:23
  21:24 22:1
**supplemental**
  59:11
**suppose** 101:22
**supposed** 64:9
  68:17
**sure** 19:7 24:22
  32:17 35:2
  43:21 46:6
  48:22 62:9,23
  64:13 68:2
  79:1,17 81:22
  84:2 85:2
  94:16,17 95:4
  95:7 102:22
  103:2 104:16
  119:11 125:10
**surface** 56:7
**survant** 2:5
**sworn** 6:4,11
**system** 37:5
  39:1 50:24
  51:13 53:23
  54:2 59:22
  103:22

**t**

**t** 19:1 20:1,2,17
  24:7 131:1,1
**tab** 39:5,8,8
  55:22,23,25
  56:1,16 57:2
  57:15 93:24
  95:20 96:13,18
  96:21 116:16
  117:23 118:13
  118:14 119:25
  120:8 125:2,4
  125:5,12,14,15
**tab's** 120:5
**table** 91:12
**tabs** 37:2,17,22
  37:25 38:2,5,7
  38:10,13,17
  39:18 79:3
**take** 6:19 9:11
  29:7 34:3
  41:13 70:1
  80:8,10 117:8
  118:6 128:7
**taken** 34:11
  131:7
**takes** 67:9 70:9
**talk** 10:2 34:15
  54:11 58:8
  80:21
**talked** 31:12
  80:20 115:23
**talking** 29:12
  82:3,4 100:4
  100:20 108:24

  121:24 129:12
**talks** 105:9
**tangent** 68:3
**tangentially**
  68:10
**taught** 84:10
**technically**
  76:14
**technique**
  15:24
**ted** 5:14 6:15
  10:6 80:7
  102:6
**tell** 7:16 19:8
  19:13 24:2,4
  28:2 49:6
  60:17 75:5
  119:20
**telling** 78:3
  84:11 114:17
**tells** 110:10
**temperature**
  111:7
**temperatures**
  15:13
**ten** 17:3 18:2
  80:11,11
**tender** 132:4
**tensile** 30:3
**terms** 13:25
  23:24 29:1
  30:11,20
  114:12 115:21
  127:13

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[tes - times]**                                                Page 30

**tes** 1:5
**test** 17:18
24:25 25:14
26:6 27:1
29:20,25 30:2
30:4,14,17,19
30:21,25 31:2
31:3,5,7,13,17
31:19,21,23
32:3,6 46:19
48:13,14,21
49:19 54:9
57:8 60:3,5,15
61:2 62:2 63:1
63:19,20 65:6
65:11,20 66:16
66:18 69:10,11
72:16,22 73:21
74:3,12,19
75:6 77:10,24
77:25 78:8,8
78:12,14,21
79:16 81:15,21
82:5,11,18,22
83:7,15,23,25
84:9,11,14,15
84:16 92:11
97:5,5,13
112:19 113:2
121:3 128:21
129:2
**tested** 13:18
17:13 22:2
24:14,16,22
25:24 26:3

33:12 48:19,19
65:13,13 66:22
66:22 76:24
113:8,10 122:3
**testified** 6:11
33:5 47:20
98:6 101:2,10
121:2
**testify** 14:6
80:1 94:19
122:2
**testimony** 28:6
28:9 79:13
94:13 95:9
110:12 126:5
**testing** 11:18
13:15,21 14:11
21:16 23:20
25:7 29:25
32:15 45:18
46:9 48:8,24
55:8,10,11
62:12 64:3
66:21,23 67:8
69:4 74:11
84:6 114:21
**tests** 15:9,12
30:13 46:12
48:7 49:6,22
62:9 83:12
86:21 97:18
128:17
**thaddeus** 2:10
**thank** 9:16 47:4
81:6 129:14

**thereto** 131:7
**thing** 30:18
38:16 48:25
53:21 56:6
63:11 73:12
78:12,14 95:12
103:23 128:18
**things** 15:15
16:10 20:15,20
36:1 38:15
45:3 46:4
49:19 64:3
103:8 104:6,18
110:8 111:19
115:16 129:20
**think** 13:17
16:20 19:4
21:14,15 22:4
23:3 32:6 34:6
42:23 45:3
55:15 58:5
60:12 61:25
67:12,15 69:18
81:1 82:7,23
83:1 86:5 88:2
93:8 94:21
97:16 102:4,6
112:10,21,24
113:18 114:9
119:24,24
120:13 129:9
130:1
**thinking** 90:15
**third** 129:3,5

**thought** 81:4
83:14 96:14
**three** 6:23
15:20 18:1
23:14 40:25
43:3 92:20
126:15 129:4
**thubert** 2:13
**thumb** 93:15
93:20 94:2,6
**time** 5:8,8 9:12
14:15 24:19,23
25:7 27:22
28:5 41:13
56:21 57:25
60:21 61:3,9
64:7 79:9 80:8
80:13,16 83:20
86:13,19 89:4
89:7,7 90:18
95:18 96:17
110:23 111:5
111:10 112:14
112:15,18
113:4,11,15
114:1 117:3
119:2 120:1,2
125:9 128:9,12
130:9 132:5
**times** 6:23 7:4
15:19,20 34:2
109:19,24
111:9 113:8,10
114:4,17

Soheil Eshraghi , PhD, PE                     January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[timing - typewriting]**                                          Page 31

| | | | |
|---|---|---|---|
| **timing**  112:23 | **transcript**  8:13 | 47:18 48:15,16 | **try**  19:14,18 |
| **today**  6:19 7:14 | 129:23 131:6,9 | 48:20 51:21 | 31:1 32:24 |
| 7:17 8:7,17,25 | 132:8 | 52:7,22,23 | 33:13 36:25 |
| 83:4 101:2 | **travel**  125:5,15 | 55:17,18,20,21 | 104:1 108:18 |
| 108:11 114:4 | **traveler**  50:6 | 55:22 56:2,21 | **trying**  8:10 |
| 115:23 121:2 | **travels**  56:1 | 56:22,24 57:2 | 39:12 52:25 |
| 122:8 126:13 | **traverse**  56:16 | 58:16 59:13,18 | 54:4,5 68:2,4,6 |
| **today's**  5:7 | **treat**  30:6 | 60:20 62:4 | 68:14 92:1,5,6 |
| 130:9 | **trial**  28:9 | 63:14 65:3,7,9 | 93:22,25 |
| **together**  38:20 | **trials**  84:19 | 68:20 69:1 | 118:15 |
| 43:10 56:6 | **tried**  24:6 96:7 | 71:19 72:3,4,8 | **turn**  60:24 |
| 69:14 124:21 | 114:19 | 72:10 73:7 | 86:10 87:24 |
| 128:24 | **tripod**  84:24 | 75:19 77:9 | 95:5,7 127:4 |
| **told**  84:13 | **tristar**  1:7 5:15 | 78:24 83:16 | **turned**  15:4 |
| 129:9 | 16:18 23:16 | 84:14,23 91:13 | 36:19 73:17 |
| **tolerance**  46:4 | 24:13 25:19 | 92:14 93:13,16 | 86:7 87:18 |
| 123:19 | 34:17 39:20 | 94:2,7,10 | 109:5 |
| **tolerances** | 41:2 44:22 | 97:11 100:24 | **turning**  86:9 |
| 122:13 123:17 | 45:8,11 47:11 | 101:3,8,9,12,13 | 94:11 96:15,16 |
| 125:1,11 | 52:25 54:10 | 101:16 104:22 | 126:8,22 127:3 |
| **took**  25:6 55:7 | 82:10 102:18 | 105:7,11,12,15 | **two**  7:4,10 18:1 |
| 69:15,17 79:21 | 104:14 105:7,8 | 105:16 109:2,8 | 18:16,16,19 |
| 116:22 117:4 | 121:10,19 | 109:9,16 | 23:13 34:2 |
| **top**  56:7 70:18 | 128:2 | 110:20,25 | 40:25 43:3 |
| 86:22 88:17 | **tristar's**  4:8 | 116:23 118:3,8 | 49:19 58:10 |
| 93:15,17,19,24 | 49:11 107:17 | 118:11 119:20 | 66:4,5 80:8 |
| 117:21 120:10 | **true**  6:22 7:12 | 120:12,21 | 94:14,23 95:6 |
| **torque**  31:7,8 | 9:19 13:2,4,13 | 122:19,20 | 95:10 96:21 |
| 31:14,17 32:3 | 19:24 24:12 | 123:20,21 | 106:16 115:24 |
| 32:3 60:3 | 27:24,25 32:7 | 124:16 127:15 | 116:1 118:1 |
| 67:21 69:4,15 | 32:8 34:23 | 127:25 128:1 | 126:11,15 |
| 69:22 78:21 | 36:3,5 37:19 | 131:8 | **type**  14:10 16:9 |
| 99:21,24 | 37:20 38:3 | **truth**  7:16 | 109:24 |
| **touched**  20:22 | 42:12 44:9 | 114:17 | **typewriting** |
| 22:7 | 45:12 46:19 | | 131:8 |

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[u - using]**                                                           Page 32

| | | | |
|---|---|---|---|
| **u** | | | |

**u**  22:18,18
**uh**  8:8,8
**ul**  4:4 17:11,14
17:15,17 30:15
30:20,21,22,25
31:2,8,20,22,23
31:24 32:7,10
42:23 45:20,23
45:23 46:19,23
47:11,12,13,13
47:18,21 48:1
48:8,11,20,23
48:24 49:2,13
49:15,22 51:17
51:20 54:9
60:23 68:9,16
70:3 71:19,23
72:9,21 73:10
75:17 77:18
81:5 97:8,11
99:4,8 122:3,7
**unclear**  20:13
24:24 34:8
60:7 75:13
88:20 99:6
101:24 119:10
**under**  7:16
15:25 16:6,14
19:2 25:21
27:1 35:7
49:21 53:25
56:10,11,20
58:24 59:4,24
73:17 76:2

77:11,19 80:3
107:3 115:17
118:15 123:10
131:8 132:13
**understand**
7:15 8:10,16
9:7,23 23:22
79:5,25 109:18
110:8
**understanding**
6:20 12:22
104:11
**understood**  8:4
8:14,19,22,23
20:24 100:14
**underwriter**
48:1,4
**undisturbed**
33:21
**unforeseeable**
98:3,11 99:11
100:5
**unit**  16:13 23:6
24:14 25:24
34:17,22 35:22
36:13 38:1,5
38:11 40:5,11
40:14,14,17,19
40:24 41:7,8
41:19 42:8,11
44:8,14 55:4
55:20 56:10,19
60:10,21 61:9
61:23 62:6,13
66:22 68:1

71:15 72:25,25
73:5 74:12
75:18 76:2
80:3 86:3,25
87:4,9,15
88:10 89:22
90:9 92:23
95:25 96:11
105:21 106:8
106:19 107:2,9
108:12,16
110:18,21
111:25 112:6,9
112:16 113:22
115:24 118:25
121:6,7 122:2
122:19 123:2,4
123:7,18
126:14 127:14
**unit's**  41:20,22
**united**  1:1
**units**  48:19
49:2 66:24
91:22 121:11
121:21 123:17
128:3
**university**  13:1
**unlock**  96:3
**unlocked**  40:17
96:1,1
**unlocking**
40:11
**unplug**  110:21
111:25 112:6

**unplugged**
110:18
**updates**  104:7
105:5
**upgrades**
103:10
**usage**  103:17
**use**  10:9,16
23:23 30:6
31:14 32:3
41:14 46:4
49:7 52:18
86:21 95:6
97:6,6 99:16
103:18 115:24
116:1,8 126:19
**used**  11:17,21
50:10 52:13
84:12 94:14
97:25 109:19
109:24
**useless**  92:11
**user**  41:5 42:12
42:14 43:5
44:9 51:7,8
53:14,22 71:24
72:16 74:24
75:6 107:8
**user's**  51:4
**users**  52:20
62:23 72:15
**using**  23:25
30:6 41:10
51:11 94:23
95:10,11 98:21

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[using - water]**                                                    Page 33

107:25 123:23
**usual**  132:18
**usually**  19:18
**utilizes**  12:9

**v**

**v**  1:6
**validate**  30:17
  46:11
**validated**  47:25
**validation**  48:7
**valley**  37:8
**value**  42:18
  72:1 75:2,9
  100:2
**valve**  34:3,23
  34:25 35:6,10
  35:20 36:1,17
  36:22 37:3,10
  37:14,19 39:18
  40:4,7,14,16
  41:3,6,17,17
  42:1,2,2,4,16
  43:9,12,16
  44:4,8 55:13
  55:16 56:15
  60:24 61:1,5
  61:15,18 63:24
  64:6 86:10,22
  89:21 92:6,8
  92:12,15,17,19
  92:21,22
  103:25 105:21
  106:5,8,10,21
  108:5,11,22
  109:6 110:3,6

112:4 113:5,6
113:12,15,22
118:7,14,24
119:16
**valves**  55:19
**variations**
  122:20,21
**various**  8:25
  45:8 107:21
**verbal**  8:6
**verbally**  8:11
**veritext**  132:11
  132:12,13,16
  132:18
**version**  54:12
  69:17 85:12
  103:1
**versus**  32:2
  104:1 106:11
  116:12 121:7
  128:3
**video**  4:6,7
  60:12,19 66:11
  66:15 67:4,6
  68:24 69:4,12
  71:10,11 78:15
  80:21,22,23
  81:6,10,12
  84:1,10,21,25
  85:15,18 87:4
  87:9,11,13,20
  87:25 88:4,7
  88:12,22 89:10
  89:14 90:16,21
  93:5,11 94:25

95:11,14 96:6
97:2,11,14
115:22,23
120:4 127:19
130:10
**videoed**  87:6
**videographer**
  2:17 5:7,16
  80:13,16 88:13
  88:16,25 89:4
  89:7 128:9,12
  130:8
**videos**  65:24
  66:4,6
**videotaped**
  1:10 5:9
**view**  51:1
**visual**  64:7
**volume**  88:3
**voluntarily**
  48:25
**voluntary**
  48:25

**w**

**wait**  86:8,9
  111:25
**waited**  81:21
  86:6 108:5
  110:13
**waiting**  55:11
  114:13
**waive**  129:22
  129:24 130:5
**waived**  130:15

**want**  7:13 8:1
  10:8,10,11,12
  16:2 32:5
  35:25 38:25
  51:15,15 57:6
  62:6 68:5
  72:18 76:11,11
  76:12,16,18
  80:20,21 83:19
  83:25 95:21
  99:21 105:17
  113:20 118:19
  118:20 126:10
  129:23,24
  130:2
**wanted**  14:12
  47:16 51:24
  84:4,7 95:22
  112:23
**wants**  37:12
  41:11
**warm**  110:22
**warning**  101:6
**warnings**  59:8
  59:17 100:23
  100:25 101:3
**watch**  67:2
  111:19
**watched**  97:14
  115:22
**water**  33:12
  60:10 67:12
  71:13,16,17,20
  72:6,10 73:6
  75:15,18 76:15

Soheil Eshraghi , PhD, PE                    January 11, 2024
Copeland, Edward A., Et Al.  Vs. Tristar Products, Inc., Et Al.

**[water - zoomed]**                                             Page 34

76:24 78:18,23
79:9 80:2
85:23,24 91:6
91:11 95:19
96:4 112:2,8
112:19,21
115:4 127:19
**water's** 76:5
**way** 15:4 16:13
24:5 36:9
41:15 42:3
63:23 66:21
67:13 72:21,22
79:16 86:1
87:24 90:25
91:1 92:13,20
92:22 95:1,22
97:6 100:11
110:5 111:16
111:17 112:19
116:2,7 120:7
124:18
**we've** 39:19
75:14 77:8
80:7 100:24
**wearing** 16:9
**web** 49:11
**website** 49:12
**weigh** 50:1
**weighs** 36:13
61:18
**weight** 35:14
36:3,10
**went** 49:17
57:10 65:12

79:21 86:5,10
**wet** 85:5
**wheel** 99:23
**withstand**
125:6,16
**witness** 3:2 6:2
6:4 14:9 79:15
83:11 88:5
99:20 102:2
117:16 121:14
129:25 130:4
130:14
**wolfgang** 23:11
**words** 8:1
39:24 97:10
107:7
**work** 10:17
13:14 14:1,3
14:11 23:18
27:17,20 29:4
38:21 46:2
51:2 52:6,9
**worked** 10:4,25
11:3,6,11
22:19 77:2
97:22
**working** 31:16
**works** 34:16
**worried** 84:17
**worst** 113:17
**wrench** 31:14
31:17 32:3
60:3 69:4,15
78:22 99:24

**write** 18:18
**written** 8:12
31:23 54:16
82:17,21,22
**wrong** 18:17
19:16 23:4
50:14 65:19
93:9
**wrote** 24:19
25:7 34:9

**y**

**yeah** 24:21
29:14 31:25
34:15 36:8
40:2 45:14
46:25 49:3
52:3 57:4 63:5
64:18 67:16
68:25 69:8,12
75:11 79:15
80:10 81:5
84:24 88:15
89:2,16 90:1,3
90:10 92:2
94:8 96:5,23
99:8 102:4
106:25,25
110:7 111:6
114:9 119:17
122:5 123:9
**years** 13:19
14:11 84:16
**yep** 93:4

**z**

**zoom** 1:10 2:2
85:8,9 90:10
**zoomed** 90:11

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2) Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.