Sheryl Copeland                                   June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 1

1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE MIDDLE DISTRICT OF GEORGIA

3                MACON DIVISION

4

5    CIVIL ACTION NUMBER:  5:22-CV-00212-TES

6    EDWARD A. COPELAND

7    and SHERYL COPELAND,

8              Plaintiff(s),

9              vs.

10   TRISTAR PRODUCTS, INC.,

11   and ABC, INC.,

12             Defendant(s).

13

14

15         DEPOSITION TESTIMONY OF:

16            SHERYL COPELAND

17             June 6, 2023

18      VIA REMOTE VIDEO-CONFERENCE

19

20            Exhibit A

21

22

23   COURT REPORTER:

24   Angela Smith McGalliard,

25   RPR, CRR, CCR

Page 2

1              *  *  *  *  *  *  *  *  *  *  *  *  *

2                      I N D E X

3                    EXAMINATION

4                                        PG    LN

5   By Mr. Osterman                       5    15

6             DEFENDANT'S EXHIBITS

7                                        PG    LN

8   Exhibit 2  Photograph                43    15

9   Exhibit 3  Photograph                45    22

10  Exhibit 1  Copy of manual, Power     87    22

11             Pressure Cooker XL,

12             model PPC780

13  Exhibit 4  Answers to                92    19

14             Interrogatories

15  Exhibit 5  Photograph of            100    21

16             pressure cooker

17             *  *  *  *  *  *  *  *  *  *

18

19

20

21

22

23

24

25

                                                        Page 3

1              A P P E A R A N C E S

2          (All counsel attended remotely.)

3

4    FOR THE PLAINTIFF(S):

5                 MARTY K. SENN, ESQUIRE

6                 REYNOLDS HORNE & SURVANT

7                 Macon, Georgia 31221

8                 msenn@reynoldsinjurylaw.com

9

10   FOR THE DEFENDANT(S):

11                DAVID S. OSTERMAN, ESQUIRE

12                GOLDBERG SEGALLA

13                301 Carnegie Center Drive

14                Suite 200

15                Princeton, New Jersey 08534

16                dosterman@goldbergsegalla.com

17

18   VIDEOGRAPHER:

19                Michael Brown - Veritext

20

21

22                (Reporter disclosure made

23   pursuant to Article 8.b of the Rules and

24   Regulations of the Board of Court Reporting

25   of the Judicial Council of Georgia)

Sheryl Copeland                                           June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 4

1              I, Angela Smith McGalliard,

2    Registered Professional Reporter, Certified

3    Realtime Reporter and Certified Court

4    Reporter, duly licensed in the State of

5    Georgia, acting as Commissioner, certify

6    that on this date, as provided by the

7    Federal Rules of Civil Procedure, there

8    came before me via remote video-conference,

9    beginning at 10:02 a.m., Sheryl Copeland,

10   witness in the above cause, for oral

11   examination, whereupon the following

12   proceedings were had:

13              VIDEOGRAPHER:  We're on the

14   Record.  Date is June 6, 2023; time on the

15   video monitor is 10:02 a.m.  This marks the

16   beginning of video number one, deposition

17   of Sheryl Copeland, in the matter Edward

18   Copeland, et al., versus Tristar Products,

19   Incorporated, et al.

20              My name is Mike Brown, I'm

21   representing Veritext Legal Solutions, I'm

22   the videographer.  Our court reporter,

23   Angie McGalliard.

24              Counsel, please state your name

25   for the Record and whom you represent.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 5

```
 1            MR. OSTERMAN:  My name is David

 2   Osterman, I'm an attorney with the firm of

 3   Goldman Segalla.  I'm appearing remotely,

 4   and I represent Defendant Tristar Products,

 5   Incorporated.

 6            MR. SENN:  My name is Marty Senn.

 7   I represent Sheryl Copeland and Sheryl

 8   Copeland as next of kin of Edward Copeland.

 9            VIDEOGRAPHER:  Will the court

10   reporter please swear in the witness.

11                 SHERYL COPELAND,

12   being first duly sworn, was examined and

13   testified as follows:

14                  EXAMINATION

15   BY MR. OSTERMAN:

16       Q.    Mrs. Copeland, my name is David

17   Osterman, we just met moments ago.

18       A.    Yes, sir.

19       Q.    I'm going to be taking your

20   testimony today.  This format is generally

21   known as a deposition.  Have you ever

22   testified at a deposition before?

23       A.    No.

24       Q.    Have you ever testified in any

25   kind of court or legal proceeding where
```

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 6

1    you've been administered a similar oath to

2    what you just took?

3         A.    No.

4         Q.    Let me go over, then, some ground

5    rules for you.  The first thing to know is

6    that the oath that's just been administered

7    is the exact same oath that would be used

8    if you were to testify live in front of a

9    judge and a jury; which means that the

10   testimony that you give here today, even

11   though it's in the informal setting of your

12   attorney's office, it carries with it the

13   same force and effect as if you were to

14   testify live in front of a judge and a

15   jury.

16            Do you understand that?

17        A.    I do.

18        Q.    Okay.  The court reporter, who is

19   in the room there with you, is going to

20   take down everything that is -- that is

21   said, all of my questions and all of your

22   answers, and she's going to transcribe it

23   into a booklet form, that we'll be able to

24   look at and I'll be able to show my client.

25   Or we may use it to read some of the

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 7

1  testimony to the jury at trial.

2      A.    Okay.

3      Q.    Because it's all being

4  transcribed, it's important that we have a

5  couple of ground rules, the first of which

6  is only one of us should talk at a time.

7  I'm going to let you give your full answer,

8  I'm going to do my level best not to

9  interrupt you.  If I do, I assure you it's

10  not on purpose.  And then we'll give you

11  every opportunity to complete any answer

12  you are trying to give.  And I'll ask that

13  you give me the same courtesy of letting me

14  finish my entire question.

15          I'll warn you now that sometimes

16  I pause in the middle of a question as I'm

17  searching for the right words or the right

18  way to phrase it.  Just let me get the

19  whole question out.  Again, when we read

20  the transcript later on, it will be a lot

21  easier to know what the exact question was

22  and what the exact answer was.  It will

23  also make for a much happier court

24  reporter, as the day goes on.  Understood?

25      A.    Understood.

Sheryl Copeland                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 8

1      Q.    I'm also going to ask you to

2   continue doing what you're already doing

3   right now, which is to verbalize your

4   answers.  Say yes or no, rather than

5   nodding your head or shaking your head, or

6   saying things like uh-huh or huh-uh.

7   Again, it makes the Record a lot cleaner,

8   so we know exactly what you are trying to

9   convey.  It also -- It eliminates the

10   guesswork so that the court reporter

11   doesn't have to try to interpret or neither

12   does anyone else have to try to interpret

13   what you meant by any kind of nodding.

14   Even though in ordinary conversation, you

15   and I can see each other just fine, and we

16   can understand each other just fine, for

17   the sake of the Record, we're going to ask

18   that you verbalize your answers.

19            Do you understand that?

20      A.    I understand.

21      Q.    Okay.  I don't want you to guess

22   at things.  But if you feel that you can

23   make a reasonable approximation or an

24   estimate of something, just indicate to us

25   that that's what you're doing and that's

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 9

1   perfectly fine; otherwise, all we want is

2   what you actually know, what your knowledge

3   is.  If you don't know something, feel free

4   to just say I don't know.  Understood?

5        A.    Understood.

6        Q.    All right.  Do you have any

7   questions before we get started?

8        A.    No.  I'm good.

9        Q.    All right.  Have you taken any

10  medication or is there any reason at all

11  why you might not be able to give complete,

12  honest, accurate testimony in this case

13  today?

14       A.    No.

15       Q.    All right.

16            MR. SENN:  David, before you

17  start, are we going to reserve objections

18  until first use or do you want all

19  objections put on this Record now?  How do

20  you want to handle that?

21            MR. OSTERMAN:  That's fine.

22  Thank you for asking.  No.  We can reserve

23  all objections.

24            MR. SENN:  Sounds good to me.

25            MR. OSTERMAN:  All right.  Thank

Sheryl Copeland                                         June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 10

1    you.

2         Q.    Ma'am, give me your full name,

3    beginning with your maiden name.

4         A.    Sheryl Ashmore Copeland.

5         Q.    Was Ashmore your middle name or

6    maiden name?

7         A.    Maiden name.

8         Q.    How old are you?

9         A.    Fifty-nine.

10        Q.    What's your date of birth?

11        A.    12/13/1963.

12        Q.    Where were you born?

13        A.    Tampa, Florida.

14        Q.    How far did you go in school?

15        A.    Twelfth grade.

16        Q.    Where did you graduate?

17        A.    Brandon High School, Brandon,

18   Florida.

19        Q.    Were you ever married?

20        A.    Yes.

21        Q.    Married to anyone other than

22   Edward Copeland?

23        A.    Yes.

24        Q.    Take me through your marital

25   history, please.

Sheryl Copeland                                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 11

1      A.     I was married in 1984 to Edward
2   -- Lawrence Edward Yuravich.
3      Q.     Can you spell that last name,
4   please?
5      A.     Y-U-R-A-V-I-C-H.
6      Q.     When and how did that marriage
7   end?
8      A.     It ended in -- in 1987.
9      Q.     By divorce?
10      A.     Yes, by divorce.
11      Q.     Did you have any children in the
12   marriage with Mr. Yuravich?
13      A.     Yes.
14      Q.     How many?
15      A.     One.
16      Q.     And names -- Name?
17      A.     Elizabeth Denise Yuravich.
18      Q.     And then your next marriage?
19      A.     To John Frese, Junior.  It's
20   F-R-E-S-E.
21      Q.     During what years were you
22   married to John Frese, Junior?
23      A.     Approximately '90 to '93, I
24   believe.
25      Q.     Did you have any children in that

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 12

1    marriage?

2         A.     No.

3         Q.     Did that end by divorce?

4         A.     Yes, by divorce.

5         Q.     Where were you living at the time

6    of the divorce from John Frese?

7         A.     Tampa, Florida.

8         Q.     And were you living in Florida

9    also during the time you were married to

10   Mr. Yuravich?

11        A.     Yes.

12        Q.     What was your next marriage?

13        A.     To Edward Copeland.

14        Q.     When did you and Mr. Copeland get

15   married?

16        A.     2008.

17        Q.     Where?

18        A.     Tampa, Florida.

19        Q.     And I understand he -- Mr.

20   Copeland passed away; is that correct?

21        A.     That is correct.

22        Q.     I'm sorry to hear that.

23        A.     Thank you.

24        Q.     When did Mr. Copeland pass away?

25        A.     December 17th of '22.

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 13

1      Q.    To your knowledge, what was his
2   cause of death?
3      A.    Hypoxia.
4      Q.    Did you have any children from
5   the marriage with Edward Copeland?
6      A.    No.
7      Q.    Do you have any children other
8   than Elizabeth Denise Yuravich?
9      A.    No.
10     Q.    Where do you live presently?
11     A.    Fort Valley, Georgia.
12     Q.    I'm sorry, did you say Fort
13  Valley, with an F?
14     A.    Yes.
15     Q.    How long have you lived in Fort
16  Valley, Georgia?
17     A.    Fourteen years.
18     Q.    Can you give me the address,
19  please?
20     A.    Sure.  389 Borders Road, the ZIP
21  code is 31030.
22     Q.    Are you employed?
23     A.    Yes.
24     Q.    What do you do?
25     A.    I'm a customer service manager

Sheryl Copeland                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 14

1   for Mobley Furniture.

2        Q.    How long have you worked there?

3        A.    Thirteen years.

4        Q.    Was Edward Copeland employed

5   before his death?

6        A.    No.

7        Q.    Am I correct in understanding he

8   was disabled?

9        A.    Yes.

10       Q.    How long had he been disabled?

11       A.    Since 2018.

12       Q.    And what was the nature of the

13  disability, as you understand it?

14       A.    He had severe COPD.

15       Q.    Was -- Did he require oxygen,

16  supplemental oxygen?

17       A.    Yes.

18       Q.    Have you ever been a party to any

19  other lawsuits?

20       A.    No, sir.

21       Q.    To your knowledge, was Edward

22  ever party to any other lawsuits?

23       A.    Not to my knowledge.

24       Q.    Prior to this accident, had you

25  ever suffered any burn injuries of any

Page 15

```
 1   kind?

 2        A.    No, sir.

 3        Q.    To your knowledge, had Edward

 4   ever suffered any burn injuries of any

 5   kind?

 6        A.    No.

 7        Q.    What was the date of the accident

 8   that we're -- that's the subject of this

 9   lawsuit, do you remember?

10        A.    7/18 of '20.

11        Q.    July 18 of 2020?

12        A.    That's correct.

13        Q.    Do you remember what day of the

14   week it was?

15        A.    It was a Saturday.

16        Q.    I understand the product at issue

17   in the lawsuit is a pressure cooker;

18   correct?

19        A.    That's correct.

20        Q.    Do you remember when and where

21   and how you got that pressure cooker?

22        A.    Purchased it in approximately

23   2016 from the Power XL website.

24        Q.    Do you know the specific date

25   when you made the purchase?
```

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 16

1          A.      Not exactly.

2          Q.      Do you have any way of going back

3    and finding a receipt for that or any

4    confirmation of the purchase?

5          A.      I'm sure that I possibly could

6    find it.  I mean, I could attempt to do

7    that, that's for sure.

8          Q.      Okay.  Do you know if it was --

9    Was it purchased in connection with a

10   specific holiday or birthday or was there

11   some specific reason why you bought it at

12   the time you bought it?

13         A.      No.

14         Q.      Had you ever owned a pressure

15   cooker before?

16         A.      Yes.

17         Q.      Was it a stovetop pressure cooker

18   or an electric pressure cooker?

19         A.      Stovetop.

20         Q.      When did you own a stovetop

21   pressure cooker?

22         A.      I would say from 1985 until

23   probably early 2000.

24         Q.      Did you use it frequently?

25         A.      Occasionally.

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 17

1      Q.      About once a month, more than
2  that, less than that?
3      A.      Probably less than that.
4      Q.      What sorts of things did you use
5  your stovetop pressure cooker for?
6      A.      To cook a roast, stew.
7      Q.      Anything else?
8      A.      That's it.
9      Q.      When you were a kid growing up,
10  did your mother or father use a pressure
11  cooker?
12      A.      Yes.
13      Q.      Was it your mother or father or
14  both?
15      A.      Mother.
16      Q.      Did your mother teach you how to
17  cook in a pressure cooker when you were
18  younger?
19      A.      She did.
20      Q.      During what time frame would this
21  have been?
22      A.      The early '80s.
23      Q.      Do you remember what kind of
24  stovetop pressure cooker you owned and used
25  from about 1985 to the early 2000s?

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 18

1       A.      Are you asking for the brand

2    or --

3       Q.      If you know it.

4       A.      Presto.

5       Q.      And what kind of brand pressure

6    cooker did your mom have when you were

7    growing up?

8       A.      The same, Presto.

9       Q.      Was it literally the exact same

10   pressure cooker that she gave to you or did

11   you go out and buy a similar one?

12      A.      It was given to me as a wedding

13   gift.

14      Q.      So you received a brand-new

15   Presto pressure cooker as a wedding gift?

16      A.      That's correct.

17      Q.      And it was the same style or same

18   brand as the one your mom had growing up?

19      A.      That's correct.

20      Q.      What did you like about the

21   stovetop pressure cooker?

22      A.      The ease of being able to

23   tenderize meat.

24      Q.      Generally, how did you use a

25   stovetop pressure cooker?

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 19

1      A.    I would -- Basically, meat,
2  onions, seasonings, and broth, and then you
3  just lock the lid down, put the jigger on
4  the top, and it would do its thing.
5      Q.    Then when it -- When you were
6  done cooking it, what did you do?
7      A.    I would just let it sit there on
8  the stove until it depressurized.
9      Q.    And how would you know when it
10  was depressurized?
11      A.    You could tilt the jigger on the
12  top, and if there was no steam coming out
13  of it, it was depressurized.
14      Q.    Why did you stop using that
15  stovetop pressure cooker in the early
16  2000s?
17      A.    It was just -- I wasn't that
18  comfortable with it, so I just didn't -- It
19  was old, and I just didn't use it as much
20  as I did before.
21      Q.    You say it was old, were some of
22  the parts getting worn?
23      A.    No.  I wouldn't say that.  I
24  would say that, because it was from 1985, I
25  still had the pressure cooker, it just

Sheryl Copeland                                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 20

1   wasn't something that we used anymore.

2       Q.      When you say you were

3   uncomfortable with it, were you

4   uncomfortable with it from a safety

5   perspective, or just because it was -- it

6   was old and worn out?

7       A.      Just because of the age of it.

8       Q.      Okay.  Do you still own that

9   stovetop pressure cooker?

10      A.      No, sir, I don't.

11      Q.      Was the Tristar Power XL Electric

12  Pressure Cooker, the first electric

13  pressure cooker you ever owned?

14      A.      Yes.

15      Q.      Had you ever used an electric

16  pressure cooker before you bought one?

17      A.      No, sir.

18      Q.      Did you have any friends or

19  family who had any experience with it

20  before you bought it?

21      A.      No.

22      Q.      Why did you buy the Power XL

23  Electric Pressure Cooker?

24      A.      I bought it because I was

25  continually seeing an infomercial about it,

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 21

1   and the safety of it.

2       Q.    Were you -- So you had had

3   experience with other pressure cookers.

4   Did you think you would get the same

5   benefits of flavorful, tenderized meat in

6   an electric pressure cooker?

7       A.    Yes.

8       Q.    Was there something convenient

9   about cooking in a pressure cooker compared

10  to other ways that you liked?

11      A.    Just it was easier, as far as

12  being able to just put something in a pot,

13  you set it and within thirty minutes, or

14  forty-five minutes, you would have dinner.

15      Q.    As I understand it, the electric

16  pressure cooker has a feature that the

17  stovetop pressure cooker doesn't have, in

18  that when it's done cooking, it will just

19  go into a heating mode that allows you to

20  cook something and then keep it warm for

21  hours after; is that generally true?

22      A.    Not to my knowledge.  When it --

23  When it was done, it actually would shut

24  itself off.

25      Q.    Did you ever use it sort of in

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 22

```
 1  the manner of a slow cooker?  Did it have a
 2  feature like that that you're aware of?
 3       A.    It did.  It did.  But we never
 4  did.
 5       Q.    What sorts of things did you use
 6  it for, the electric pressure cooker, I'm
 7  talking about?
 8       A.    Okay.  To make roasts or beef
 9  stew.
10       Q.    Anything else?
11       A.    That's it.
12       Q.    Did you ever use, say, the
13  canning function?
14       A.    No.
15       Q.    Did you ever use it to make
16  soups?
17       A.    Yes.  Soup, stew.
18       Q.    Who did the -- most of the
19  cooking in your marriage with Edward
20  Copeland, was it you or was it Mr.
21  Copeland?
22       A.    We shared in that.
23       Q.    What sorts of things did Mr.
24  Copeland use the pressure cooker for?
25       A.    The same, do a roast, beef stew,
```

Page 23

1    some type of soup.

2        Q.    Do you remember whether you

3    acquired the Power XL Pressure Cooker

4    closer to the beginning of the year in 2016

5    or closer to the end of the year?  Do you

6    remember anything about what season it was?

7        A.    I'm not sure.

8        Q.    When you first got it, did you --

9    did you read the instruction manual?

10       A.    Yes.

11       Q.    Did Edward also read the

12   instruction manual?

13       A.    Yes.

14       Q.    Did you believe that you

15   understood it?

16       A.    Yes.

17       Q.    So you knew from cooking with a

18   stovetop pressure cooker that the point of

19   it was to cook under pressure; correct?

20       A.    That's correct.

21       Q.    And you knew that there would be

22   pressure inside the unit and that you

23   needed to have the lid on properly and

24   locked, and you needed to make sure that it

25   was -- the heat source was removed or off

Page 24

1    and all the steam was released before you

2    opened the lid; correct?

3         A.    That's correct.

4         Q.    Was there anything that seemed

5    different or unusual about the electric

6    pressure cooker, compared to your

7    expectations about it, based on your

8    experience and what you had seen?

9         A.    No.

10        Q.    Prior to the accident, did you

11   ever have any problems or issues with it,

12   where the pressure cooker either didn't

13   work or something was broken or it just,

14   for whatever reason, didn't meet your

15   expectations?

16        A.    No.

17        Q.    And I understand that you used it

18   -- I think I saw in your discovery

19   responses, your best estimate was forty or

20   fifty times?

21        A.    Over the course of owning it,

22   yes.

23        Q.    So, again, did you use it about

24   as often as you had used your stovetop

25   pressure cooker, about once a month or so?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 25

1      A.    Sometimes we'd use it a little
2   bit more, depending on the month.
3      Q.    Would a good estimate be two or
4   three times a month?
5      A.    In the -- In the fall or later
6   season, yes.
7      Q.    You mean in cooler weather?
8      A.    That's correct.
9      Q.    How would you clean the unit when
10   you were done with it?
11      A.    Wait for everything to cool down,
12   then I would take the inner pot out, wash
13   that, take everything apart from the lid,
14   make sure I washed everything, and then I
15   would set it in the dish drainer to dry.
16      Q.    As I understand it, the lid has
17   an interior piece, I'll use the term lid
18   liner.
19      A.    Yes.
20      Q.    And that lid liner can be
21   removed; correct?
22      A.    That's correct.
23      Q.    And would you typically remove
24   that as part of cleaning it every time you
25   used it?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 26

```
 1        A.    Yes.
 2        Q.    And then you would put the lid
 3   liner -- when it was dry, you would put it
 4   back in place inside the -- inside the lid?
 5        A.    Yes.
 6        Q.    Were you careful to make sure
 7   that it was going in properly, so, in other
 8   words, going in right side up rather than
 9   upside down?
10        A.    Yes.
11        Q.    And there was a way to tell,
12   wasn't there?
13        A.    Yes.
14        Q.    How would you tell if the lid
15   liner was in the proper position?
16        A.    Whether you had it inside or
17   outside, if it was in the right position,
18   there was a little knob sticking out, and
19   that's how you could pull that out of the
20   inside of the lid.
21        Q.    Okay.  So you would always make
22   sure that that little protruding knob was
23   pointing down into the -- into the pot?
24        A.    That's correct.
25        Q.    I've got one handy here, and
```

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 27

1  you're free to -- we had sent an exemplar

2  down, and you're free to look at it

3  yourself if it helps refresh your

4  recollection.

5       A.    Okay.

6       Q.    Once you separate the lid liner

7  from the pot, would you do anything with

8  any of the -- the inside?

9       A.    Just make sure that I cleaned it

10 good.

11      Q.    Okay.  Would you ever disassemble

12 it?

13      A.    No.

14           MR. OSTERMAN:  Counsel, if you

15 would, would you position the exemplar in

16 front of the witness?  I'd like to be able

17 to see it on the camera.

18           MR. SENN:  Okay.  We may have to

19 -- Do you want me to take it out of the

20 box?

21           MR. OSTERMAN:  Yeah, if you don't

22 mind.

23           MR. SENN:  Okay.

24           MR. OSTERMAN:  Mr. Videographer,

25 we may ask you to zoom out just a little

Sheryl Copeland                                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 28

1   bit, if we can get a view of the pressure
2   cooker just on the table with the witness.
3           VIDEOGRAPHER:  I'm recording this
4   by Zoom, I don't have the ability to zoom
5   in or out.  So we'll have to use the
6   witness's camera to get the picture you
7   want.
8           MR. OSTERMAN:  Understood.  Okay.
9   We'll see how it looks when they put it in
10  front of her.
11          MR. SENN:  I'm not sure if you're
12  going to be able to see it like that.
13          MR. OSTERMAN:  Is the camera, are
14  you able to move it back a little bit or am
15  I asking too much to do that?
16          MR. SENN:  No.  Let me see what
17  we can do.  See if there is any room to
18  move it back a little bit.
19          MR. OSTERMAN:  That's fine.
20          MR. SENN:  Does that work right
21  there?
22          MR. OSTERMAN:  Yeah.  That works
23  perfect.  Thank you.
24      Q.    Ma'am, is the pressure cooker
25  that we have in front of you there, is that

Sheryl Copeland                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 29

1   generally what your pressure cooker looked

2   like?

3        A.    Yes.

4        Q.    And that one is not the one that

5   was involved in your accident, but we've

6   tried to find one that is the same make and

7   model of it.  And from what you can tell,

8   it looks substantially similar to yours?

9        A.    It does.

10       Q.    Okay.  And the shape of the

11  handle, that appears to be the same style

12  handle that was on yours?

13       A.    Yes.  Uh-huh.

14       Q.    Okay.  And so did you -- Can you

15  demonstrate for me, how would you typically

16  put the lid on?

17       A.    You basically position it, it

18  goes down inside, and then you tilt -- turn

19  it to the locked position.

20       Q.    Okay.  And when you say the

21  locked position, there's words on the -- on

22  the handle that's facing closest to you,

23  and there's something sticking out, so when

24  you rotate it, you can see if it's locked

25  or unlocked; correct?

Page 30

1      A.    That's correct.

2      Q.    And when you put it on, you did

3  it with just one hand, and it looked like

4  you were just turning it with your fingers;

5  is that correct?

6      A.    I mean, I had ahold of it like

7  this (indicating).  But, yes.  It's not

8  hard to do.

9      Q.    Okay.  So take me through the

10  steps.  If you'll start -- If you'll remove

11  the lid.  Take me through the steps of, you

12  know, when you would typically cook a

13  roast, what would you do and in what order?

14      A.    Okay.  Put the roast in, had an

15  onion quartered, put it in, salt, pepper,

16  Italian seasoning, or some other type of

17  seasoning, that day I used Italian

18  seasoning, and take a carton of beef broth

19  pour that in and then I would put water in

20  that carton and fill it up just below the

21  line.

22      Q.    So there's a line in there that's

23  the -- is it called the max fill line; is

24  that right?

25      A.    Yes, it is.

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 31

1    Q.    Okay.  And you understood the
2    importance of keeping it below the max fill
3    line?
4    A.    Yes, sir.
5    Q.    Okay.  So you would fill it up,
6    keep it below the max fill line, then what
7    would you do?
8    A.    I would attach the cord, plug it
9    into the wall, then I would set -- there's
10   a meat button here.
11   Q.    Uh-huh.
12   A.    Push that button, and then it
13   allowed you to select if you wanted it
14   basically on low, medium, or high.  Click
15   medium or well.  And I would click it to
16   the medium.  And then it would start
17   building pressure which --
18   Q.    At what point would you put the
19   lid on?
20   A.    I put the lid on -- Right after I
21   put everything in, put -- put the lid on --
22   oops, I've got it wrong.  Put the lid on
23   (indicating), lock it, then I would hit the
24   button, put it to the medium cook time,
25   then I would just let it go.

Page 32

1      Q.      Okay.  You demonstrated for us,

2  and I recognize you're sitting down.

3      A.      Uh-huh.

4      Q.      But you would normally be

5  standing up at a counter when you would do

6  it; correct?

7      A.      That's correct.

8      Q.      And you put it on with one hand.

9  And it looks like when you turned it, you

10  turned until it won't turn anymore;

11  correct?

12      A.      That's correct.  When it's in the

13  locked position, it doesn't turn anymore.

14      Q.      So you can kind of feel it when

15  it hits the end of its travel; correct?

16      A.      Yes.

17      Q.      It also makes a clicking sound as

18  you click it into position?

19      A.      Yes.

20      Q.      Okay.  And then -- Then you punch

21  in what you're cooking there on the LED

22  screen?

23      A.      Yes.

24      Q.      And you told me that you

25  typically would select medium for the

Page 33

1    cooking of the meat?

2        A.    Yes.

3        Q.    And then what would the LED

4    screen do when it was ready to start?

5        A.    It would kind of -- There's like

6    a little thing that goes around and around

7    while it's building pressure.

8        Q.    Uh-huh.

9        A.    And it actually doesn't start the

10   timer until the pressure is built up in the

11   pot.

12       Q.    Okay.  And how long would that

13   take, usually, to build up the pressure?

14       A.    Probably about fifteen to twenty

15   minutes.

16       Q.    Okay.  And when the pressure

17   builds up and it engages, what would happen

18   to the LED screen then?

19       A.    The timer would start.

20       Q.    All right.  And then would the

21   meal that you were cooking on the day of

22   the accident, how long was the timer, do

23   you remember?

24       A.    Thirty minutes.

25       Q.    Okay.  Is that an estimate or do

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 34

1   you have a clear recollection it was thirty

2   minutes?

3        A.    That's an estimate.

4        Q.    Okay.  And what would happen when

5   it counted down from thirty to zero?

6        A.    It would beep to let you know

7   that it was done.

8        Q.    Was it a continuous alarm or was

9   it just it would beep once or twice?

10       A.    It would beep -- Once or twice it

11  would beep.

12       Q.    Okay.

13       A.    Then I would go in -- I always

14  unplugged it, and then we let it sit there

15  for thirty, forty-five minutes, before we

16  would even attempt to open the lid.

17       Q.    And that's just an old habit you

18  had picked up from using the stovetop

19  pressure cooker; correct?

20       A.    That's correct.

21       Q.    All right.  Do you know if Edward

22  had ever used a stovetop pressure cooker?

23       A.    Yes.

24       Q.    He had grown up using one as

25  well?

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 35

1       A.      That's correct.

2       Q.      And when you and he got married,

3   did he have one of his own?

4       A.      He didn't have anything, due to a

5   divorce.

6       Q.      Okay.  Had Edward ever owned or

7   used an electric pressure cooker before you

8   bought this one?

9       A.      No.

10      Q.      Once the -- Once you waited the

11  thirty or forty-five minutes, how would you

12  open it up?  What was your normal practice?

13      A.      First thing we would do would be

14  to open up the valve.

15      Q.      If you could move it closer to

16  the middle of the -- I can't quite see it.

17  I want to make sure I see it.

18      A.      Sure.

19      Q.      Okay.

20      A.      There's a valve here

21  (indicating) --

22      Q.      Yeah.

23      A.      -- that opens.  It's closed --

24      Q.      It has like a little diagram on

25  it that indicates --

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

                                                    Page 36

1       A.     Yeah.   Like steam -- like steam

2    coming up.

3       Q.     Yeah.

4       A.     Okay.   So you open it to that

5    point, and if there was any steam left in

6    the pot, it would let the pressure off

7    there in the steam.

8       Q.     And that's something, when the

9    steam was coming out, you could see it;

10   correct?

11      A.     That's correct.

12      Q.     You could probably also hear it;

13   right?

14      A.     Yes.

15      Q.     And if you wanted to, you could

16   kind of run your fingers through it to feel

17   it, too; right?

18      A.     I never attempted to do that, but

19   I'm sure you could.

20      Q.     Because you read our manual.

21             Okay.   All right.   So if there

22   was any steam, what would you do if you saw

23   steam or heard steam?

24      A.     Just let it continue to do what

25   it -- let the steam out until there wasn't

Page 37

1    any steam left coming out.

2         Q.    And, again, that was because you

3    understood the instructions and the general

4    safety rules associated with it; correct?

5         A.    That's correct.

6         Q.    Okay.  And then how would you

7    open it after you released the steam?

8         A.    All you would have to do is put

9    your hand here (indicating) and open the

10   lid.

11        Q.    Again, this is my

12   characterization, but it looks relatively

13   easy, you're just doing that with one hand

14   turning it; correct?

15        A.    That's correct.

16        Q.    And, again, on all of the days

17   before the accident, was it that easy to

18   put the lid on and lock it into place and

19   then to open it when you were done?

20        A.    That's correct.

21        Q.    Okay.  So let's talk now

22   specifically about the day of the accident.

23   All right?

24        A.    Okay.

25        Q.    You told me it was a Saturday, I

Page 38

1    think you said?

2         A.    Yes.

3         Q.    And about what time was it when

4    you began to cook with the pressure cooker?

5         A.    I'm not exactly sure of the time,

6    but late afternoon.

7         Q.    Do you recall what you had been

8    doing earlier that day?

9         A.    Yes.

10        Q.    What?

11        A.    Cleaning house.

12        Q.    Anything else?

13        A.    Just typical chores.

14        Q.    Okay.   What was -- What was

15    Edward doing?

16        A.    Watching TV.

17        Q.    Who was cooking the meal that

18    night?

19        A.    I started the meal.

20        Q.    Was Edward watching TV when you

21    started the meal?

22        A.    Yes.

23        Q.    Had you worked at all that day?

24        A.    No.

25        Q.    Had you had anything to drink

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 39

1    that day?

2         A.    No.

3         Q.    Had Edward had anything to drink

4    that day?

5         A.    No.

6         Q.    And I assume Edward had not

7    worked that day; correct?

8         A.    That's correct.

9         Q.    Was anyone else at the house,

10   other than you and Edward, when the

11   accident happened?

12        A.    No.

13        Q.    Was anyone else at the house when

14   you and Edward -- I'm sorry, when you

15   started to cook the meal?

16        A.    No.

17        Q.    Had you gone shopping that day to

18   get any of the ingredients for the meal?

19        A.    No.

20        Q.    Do you recall if you left the

21   house for any reason that day?

22        A.    No.

23        Q.    Did you follow your normal recipe

24   as you detailed it for me before for making

25   a roast?

Sheryl Copeland                                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 40

1        A.      Yes.

2        Q.      Do you remember how big a roast

3    you put in there?

4        A.      It was about four and a half

5    pounds.

6        Q.      And is that the normal size roast

7    you would make for you and Edward?

8        A.      Yes.

9        Q.      And, again, your best

10   recollection is you filled it up with the

11   other ingredients and water, and made sure

12   to keep it below the max fill line;

13   correct?

14       A.      That's correct.

15       Q.      Was it close to the max fill

16   line?

17       A.      About an inch.

18       Q.      So about one inch below the max

19   fill line?

20       A.      That's correct.

21       Q.      Did you have any difficulty

22   putting the lid on?

23       A.      No.

24       Q.      And was the lid fully -- fully

25   locked?

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 41

1        A.    Yes.

2        Q.    So you put it on the way you

3    always do, you had no difficulty, and you

4    turned it until it stopped turning, you

5    could hear it, see it, and feel that it was

6    locked; correct?

7        A.    Correct.

8        Q.    And were you the one who set the

9    buttons on the LED screen?

10       A.    Yes.

11       Q.    And did you observe that it began

12   to cycle as pressure began to build?

13       A.    Yes.

14       Q.    Did you at some point observe

15   that it had fully pressurized and had gone

16   into the countdown mode?

17       A.    Yes, I did.

18       Q.    What's your best recollection of

19   how long the cook cycle was on that day?

20       A.    While it was pressurizing, about

21   fifteen minutes, and I would say

22   approximately thirty minutes for the actual

23   cook time.

24       Q.    Thirty minutes once it was

25   pressurized; correct?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 42

1    A.    That's correct.

2    Q.    What were you doing during that

3    approximate forty-five minutes?

4    A.    I went and sat down with my

5    husband in the living room and watched TV.

6    Q.    Do you remember anything about

7    what you were watching?

8    A.    Something on Netflix.

9    Q.    Something good?

10    A.    I -- I can't remember.

11    Q.    Not all of it is.

12    A.    I wish I could.

13    Q.    Okay.  Did you hear it when it

14    indicated that the cook cycle was over?

15    A.    Yes.

16    Q.    So you heard one or two beeps?

17    A.    That's correct.

18    Q.    What did you do after you heard

19    the beeps?

20    A.    Went into the kitchen, unplugged,

21    and let it sit there.  Went back, sat in my

22    chair, and finished watching whatever show

23    it was we were watching.

24    Q.    What's your best estimate of how

25    long you let it sit there after unplugging

Veritext Legal Solutions

800.808.4958                                    770.343.9696

Page 43

1    before making any attempt to open it?

2        A.    About forty -- Approximately

3    forty, forty-five minutes.

4        Q.    So to be clear, you unplugged it,

5    went back and sat and watched TV with your

6    husband for about forty to forty-five

7    minutes; correct?

8        A.    That's correct.

9        Q.    All right.  And all that time,

10   the pressure cooker was sitting on the

11   counter?

12       A.    Yes.

13                    (Defendant's Exhibit

14                     2 was marked for

15                     identification.)

16       Q.    I want to show you some photos,

17   if you don't mind.  I've marked as Exhibit

18   2, I'm going to share my screen if it will

19   let me.

20            MR. SENN:  Can we move the pot or

21   do you want me to leave it there?

22            MR. OSTERMAN:  You can move the

23   pot -- Yeah.  You can move it.  I may have

24   you go back to it.

25            MR. SENN:  Yeah.  I'm going to

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 44

1  set it out of the way right now.

2          MR. OSTERMAN:  You bet.

3      Q.    Are you able to see this

4  photograph?

5      A.    Yes.

6      Q.    And I can zoom in on any of it if

7  you want, but I'll scroll down.  We put a

8  label on it, we call it Defendant's Exhibit

9  2.

10      A.    Uh-huh.

11      Q.    I'm going to scroll up so I can

12  kind of get a better view of the -- there's

13  a freestanding oven/range, generally to the

14  center but center right of the photo.

15          Is this a photo of your kitchen?

16      A.    Yes.

17      Q.    And does this show us how your

18  kitchen looked on the day of the accident?

19      A.    Yes.

20      Q.    Where was the pressure cooker

21  when you -- when you set it up?

22      A.    To the right of the stove, on the

23  counter.

24      Q.    To the right of the stove, okay.

25  So in this photograph, do we see the area

Page 45

1  where it was?

2        A.    Yes.

3        Q.    Okay.  There's a -- It looks like

4  two jars, a small one and a larger one, to

5  the right of the stove.  Do you see that?

6        A.    Yes.

7        Q.    Is that the area where the

8  pressure cooker was?

9        A.    It was in the open area, in front

10  of the jars, closer to the stove.

11        Q.    Okay.  So there's a drawer

12  immediately to the right of the stove.  Was

13  it sort of above that drawer?

14        A.    That's correct.

15        Q.    Okay.  And it was closer to the

16  front of the countertop than to the back?

17        A.    It was probably about, my

18  guesstimate, five or six inches from the

19  edge.

20                          (Defendant's Exhibit

21                           3 was marked for

22                           identification.)

23        Q.    Okay.  I've got another picture

24  here that we've marked as Defendant's

25  Exhibit 3, that appears to show the area

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 46

1   more to the right of the range.  And we can

2   see that there's a kitchen sink there --

3        A.    Yes.

4        Q.    -- in the center.  There's a pot

5   positioned in this picture.  Do you see

6   that?

7        A.    I do.

8        Q.    What's your best recollection of

9   where the pressure cooker was, relative to

10  that pot?

11       A.    To the left.

12       Q.    To the left of that.

13       A.    Yes.

14       Q.    Okay.  All right.  Thank you.

15  I'm going to take this off the screen.

16       A.    Okay.

17       Q.    All right.  So back to your

18  testimony about the day of the accident.

19       A.    Uh-huh.

20       Q.    So after waiting about forty to

21  forty-five minutes from the time you

22  unplugged the pressure cooker, what did you

23  do next?

24       A.    Oh.  Edward and I got up, went

25  into the kitchen, I was standing at the

Page 47

1   sink, we checked the pressure, the release

2   valve, and then once we knew that there was

3   no more steam, he reached up to open the

4   lid.

5        Q.    Okay.  So why did both of you go

6   in to open the pressure cooker?

7        A.    I went to the kitchen sink, he

8   was right there.  Again, we shared

9   everything, doing a lot of the cooking and

10  stuff.  So . . .

11       Q.    Had you made any attempt to open

12  the pressure cooker yourself before Edward

13  did?

14       A.    No.

15       Q.    Do you recall any conversation

16  with Edward before he attempted to open the

17  pressure cooker?

18       A.    No.

19       Q.    What were you doing at the sink

20  when he attempted to open the pressure

21  cooker?

22       A.    We had a few dishes there and I

23  -- I was just -- actually, I was standing

24  kind of -- kind of facing him at the sink,

25  turned kind of facing him at the sink while

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 48

1   he was undoing the pressure pot.

2       Q.    Okay.  So you were standing --

3   like, were you positioned in the center of

4   the sink?

5       A.    To the left side, the right side

6   of Mr. Copeland.

7       Q.    Okay.  So, again, I'll go back to

8   this photo.

9       A.    Uh-huh.

10      Q.    It looks like you have a dual

11  sink; correct?

12      A.    That's correct.

13      Q.    And you were standing more to the

14  left side, which would be the side with

15  this bottle of detergent, the tall bottle

16  of detergent, on the left side; correct?

17      A.    Yes.

18      Q.    And you were standing -- You were

19  close enough to easily touch Mr. Copeland;

20  correct?

21      A.    That is correct.

22      Q.    And you were turned and facing

23  him; correct?

24      A.    That's correct.

25      Q.    And where was he standing?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 49

1      A.    In front of the pot.

2      Q.    So closer to the -- by that first

3   drawer to the right of the range?

4      A.    That's correct.

5      Q.    I'm going to take the picture

6   down.

7            Did you at any point put your

8   hands on the pressure cooker?

9      A.    No.

10     Q.    Were you holding the pressure

11  cooker -- or holding the base of the

12  pressure cooker as he attempted to remove

13  the lid?

14     A.    No.

15     Q.    What were you -- Where -- What

16  were you doing with your hands?

17     A.    I don't recall exactly what I was

18  doing with them, but I wasn't touching the

19  pressure cooker.

20     Q.    Okay.  You don't have a

21  recollection of holding anything in either

22  hand; correct?

23     A.    No.

24     Q.    What -- So he's standing in front

25  of the pressure cooker and he's facing the

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 50

1    pressure cooker?

2         A.    That's correct.

3         Q.    And what was he doing with his

4    hands?

5         A.    He reached up, turned the valve

6    like we always do, make sure all the steam

7    was out, and then he one-handedly grabbed

8    ahold of it (indicating).  And when he went

9    to just barely turn the lid, which turned

10   freely, it blew off.

11        Q.    So you demonstrated with your

12   right hand?

13        A.    Yes.

14        Q.    Were you demonstrating to me that

15   he used his right hand --

16        A.    Yes.

17        Q.    -- to open the valve?

18        A.    Yes.  He was right-handed.

19              MR. OSTERMAN:  Okay.  Counsel,

20   can you position the pressure cooker back

21   in front of the witness?

22              MR. SENN:  Sure.

23        Q.    And do you have a recollection of

24   how the pressure cooker was oriented?  In

25   other words, was the LED screen facing out

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 51

1    so that he could read it?

2        A.    Yes.

3        Q.    Okay.  And is that how it's

4    positioned in front of you right now?

5        A.    Yes.

6        Q.    Okay.  And demonstrate for me, if

7    you would, what you recall seeing Edward do

8    when he released the steam.

9        A.    Okay.  Reached over, released the

10   steam, there was nothing there, nothing

11   really came out, he waited a moment, put

12   his hand on the top, started to turn the

13   handle, and the -- and it blew off.

14       Q.    So, again, you demonstrated both

15   using your right hand.  Is it your

16   recollection that he used his right hand

17   to --

18       A.    Most definitely.

19       Q.    Okay.  And could you see what he

20   was doing with his left hand?

21       A.    I don't remember what he was

22   doing with his left hand.

23       Q.    Do you remember if he was holding

24   anything in his left hand?

25       A.    No.  He might have had it on the

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 52

1    counter or next to his side.  I'm not

2    positive.

3         Q.    Do you recall his placing his

4    left hand on the -- any of the side handle

5    of the pressure cooker?

6         A.    No, I don't.

7         Q.    Do you believe he was gripping

8    the side handle in order to get some extra

9    leverage as he twisted the top open?

10        A.    No.

11        Q.    Do you believe that he knew not

12   to force the lid open?

13        A.    Yes.  He knew.

14        Q.    And certainly you knew not to try

15   to do that; correct?

16        A.    That's correct.

17        Q.    And you knew from experience that

18   when the pressure is released, you could

19   literally open it with one hand and you

20   wouldn't feel any resistance?

21        A.    That's correct.

22        Q.    Did you ever, in all the times

23   you've ever used the pressure cooker, did

24   you ever have to use two hands to open that

25   -- the lid?

Page 53

1        A.      No.

2        Q.      Do you ever recall seeing Edward

3    use two hands to open the lid?

4        A.      No.

5        Q.      When Edward opened the valve to

6    release the steam, I think you used the

7    word -- I don't want to mischaracterize it.

8    Tell me again, what, if anything, did you

9    see and hear coming out of the pressure

10   valve?

11       A.      There was nothing coming out.

12       Q.      So you didn't hear any whooshing

13   of steam or any sound at all?

14       A.      No.

15       Q.      And did you see any amount of

16   steam at all coming out?

17       A.      No.

18       Q.      Again, I just want to be clear.

19   It's not like you saw a little bit and you

20   interpreted that as just about done.

21   You're saying there was none at all coming

22   out?

23       A.      That's correct.

24       Q.      So Edward had his right hand on

25   the handle?

Sheryl Copeland                                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 54

1        A.      Right.

2        Q.      And you said it -- when the

3    explosion happened, what happened to the

4    lid?  Did it stay in his hand or fly out of

5    his hand?

6        A.      It flew out of his hand.

7        Q.      How far did it go and where did

8    it go?

9        A.      It went up.  And I honestly don't

10   know how high up it went, because when the

11   lid blew off -- all the contents in the pot

12   blew out of the pot all over us.

13       Q.      Where on your body did the

14   contents strike you?

15       A.      My side of my head right here

16   (indicating), my hands, mostly my breasts,

17   and my upper abdomen.

18       Q.      What were you wearing?  And you

19   can move the pressure cooker aside.

20       A.      A shirt like what I have on

21   today.

22       Q.      Okay.  So open at the collar, you

23   know, about three-quarter sleeve?

24       A.      Yes.

25       Q.      Which hands did it hit?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 55

1      A.     Both.

2      Q.     What were you -- What were you

3  wearing, in terms of pants, shoes, et

4  cetera?

5      A.     I had on just regular pull-on

6  pants, just trousers, and I had probably no

7  shoes on because I was in the house.

8      Q.     Did you suffer any -- Did the

9  contents strike your skin below your waist

10  or feet?

11      A.     No.

12      Q.     Did the contents strike your

13  pants or shoes?

14      A.     No.

15      Q.     And you said it struck you on --

16  you gestured to your right temple where

17  it --

18      A.     Yes.

19      Q.     Did any of the roast come out of

20  the pot?

21      A.     Most all of it.

22      Q.     Where did the roast end up?

23      A.     On the floor, on the counter.

24      Q.     When you say on the floor, how

25  far from where -- the front of that cabinet

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 56

```
 1   are we talking about?  Within a foot of
 2   that, within five feet of that, ten feet of
 3   that?
 4        A.    I'm not exactly sure.  I would
 5   tell you that I would think maybe about a
 6   couple of feet, but I'm not -- I can't tell
 7   you for sure.
 8        Q.    Okay.  Was there any on your
 9   ceiling?
10        A.    Yes.
11        Q.    What's the height of the ceiling
12   in your kitchen?
13        A.    I would say probably about nine
14   feet.
15        Q.    Was there any physical damage to
16   the ceiling, perhaps if the lid hit the
17   ceiling --
18        A.    No.
19        Q.    -- for example, or something
20   else, was there any damage there?
21        A.    No.
22        Q.    Were any of -- Did any of the
23   contents splash onto the ceiling?
24        A.    Yes.
25        Q.    How could you tell that?
```

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 57

1      A.    I have popcorn ceiling, and you
2   can see where it wet the ceiling.
3      Q.    So there was a wet mark on the
4   ceiling --
5      A.    Yeah.  Like little -- little
6   spots.
7      Q.    Like splatter?
8      A.    That's correct.
9      Q.    Did you at any point get
10  photographs of the -- of where all the
11  contents had splattered?
12     A.    No, I did not.
13     Q.    Where did the contents strike Mr.
14  Copeland, if you know?
15     A.    From his upper lip, all the way
16  down his torso, both arms.
17     Q.    How tall was Mr. Copeland?
18     A.    Five-eleven, I think.
19     Q.    What was he wearing?
20     A.    He had on a pair of pants and no
21  shirt.
22     Q.    Was he wearing long pants or
23  short pants?
24     A.    Long.
25     Q.    Any shoes?

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 58

1      A.      No.

2      Q.      Did he normally wear glasses?

3      A.      Just to read.

4      Q.      You're wearing glasses today,

5   were you wearing glasses at the time of the

6   accident?

7      A.      Yes, sir.

8      Q.      You told me that he was oxygen

9   dependent.  Was he using any supplemental

10  oxygen at the time of the accident?

11     A.      No.  He actually took it off.

12     Q.      What do you mean, he took it off?

13     A.      Just took it off momentarily, to

14  help in the kitchen.

15     Q.      So what type of system was he

16  using on the day of the accident?

17     A.      Portable.

18     Q.      And was it positioned near his

19  chair in the living room where he was

20  watching TV?

21     A.      Yes.

22     Q.      So when you say he took it off,

23  he disconnected from that --

24     A.      The cannula.

25     Q.      Took the cannula off so that he

Sheryl Copeland                                        June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 59

1    could come help you in the kitchen?

2        A.    That's correct.

3        Q.    Why did he perceive that he

4    needed to help you in the kitchen?

5        A.    That was Mr. Copeland.

6        Q.    Again, was there -- At any point

7    did you say to him:  Hey, could you help me

8    open this lid, it's stuck?

9        A.    No.

10       Q.    Had you made any effort at any

11   point to try to open that steam release

12   valve yourself?

13       A.    No.

14       Q.    Had you made any effort to try to

15   open the lid before the accident?

16       A.    No.

17       Q.    What did you do immediately after

18   the contents blew out?

19       A.    Ran to the showers.

20       Q.    Both of you did?

21       A.    Yes.

22       Q.    Then what did you do?

23       A.    Stayed in the shower trying to

24   cool the burns down.  We did that for quite

25   a while.

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 60

1      Q.    Then what?

2      A.    We got some clothes back on.  I

3  went out and got some aloe from a big plant

4  that we have and started putting that on

5  us.

6      Q.    So you had an aloe plant in or

7  around the house?

8      A.    Yes.  Outside.

9      Q.    What did you do next?

10     A.    Just kind of tried to sit down

11 and calm ourselves down from the incident.

12     Q.    How long did you try to calm down

13 for?

14     A.    Probably thirty, forty-five

15 minutes.

16     Q.    What's the next thing you did

17 that you remember?

18     A.    Got up and cleaned up a mess.

19     Q.    Did you call anyone to come

20 assist?

21     A.    No.

22     Q.    You and your husband both cleaned

23 it up or just one of you did?

24     A.    Just me.

25     Q.    What did Edward do when you

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 61

1    cleaned up the mess?

2         A.    He was sitting in his chair with

3    the oxygen.

4         Q.    Do you remember where you saw the

5    top to the pressure cooker?

6         A.    It was laying on the counter.

7         Q.    Where on the counter?

8         A.    To the right of where the

9    pressure pot was at, closer to the sink.

10        Q.    Was it right side up or upside

11   down when you saw it?

12        A.    It was with the handle up.

13        Q.    Do you believe that either you or

14   Edward placed it in that position or do you

15   believe it landed there on its own that

16   way?

17        A.    I believe it landed there on its

18   own that way.

19        Q.    Aside from cleaning up the food

20   and contents, did you clean out the

21   pressure cooker?

22        A.    No.  I just sat it down in the

23   sink.

24        Q.    Did you make any observations

25   from -- of the inside of the lid when you

Page 62

1    looked at it?

2         A.    I really didn't.  At the time, I

3    was just trying to clean up and I was in a

4    lot of pain, so -- from the burns.

5         Q.    Did you at any point go back and

6    kind of more closely examine the pressure

7    cooker?

8         A.    No.

9         Q.    Did you at any point make any

10   observations about the inside of the lid,

11   the lid liner, anything like that?

12        A.    I didn't.

13        Q.    Do you know if Edward did?

14        A.    No, I don't.

15        Q.    Did either you or he remove the

16   lid liner to look underneath?

17        A.    No.

18        Q.    At any point, whether that day or

19   any other day, did you or Edward clean out

20   the pressure cooker?

21        A.    No.

22        Q.    What -- How long did the pressure

23   cooker stay there in that condition in the

24   sink?

25        A.    I don't exactly remember how many

Page 63

1    days that it was there.  But we took -- We
2    put it in a plastic bag.
3         Q.    Why did you do that?
4         A.    To -- Just to keep everything
5    safe, like it was, so that when we -- We
6    had discussed whether or not we were going
7    to do anything.  We didn't want it
8    disturbed.
9         Q.    When you say you discussed
10   whether or not to do anything, you mean you
11   discussed whether or not you might make
12   some sort of claim or file a possible
13   lawsuit?
14        A.    That's correct.
15        Q.    Did you discuss that that night
16   with Edward?
17        A.    No.  No.
18        Q.    Did you discuss that within the
19   next day or two?
20        A.    No.
21        Q.    When did you first consider that
22   yourself?
23        A.    After he had been to Augusta, to
24   the burn center.
25        Q.    Did you or Edward seek any

Page 64

1    medical attention from a doctor or

2    healthcare provider on the day of the

3    accident?

4         A.    No.

5         Q.    Do you recall what time the

6    accident happened?

7         A.    It was early evening.

8         Q.    Is that --

9         A.    Not an exact time.  I'm not

10   exactly sure.

11        Q.    What would you define as the

12   range of early evening?

13        A.    Six to eight, somewhere in that.

14        Q.    When is the first time you or

15   Edward sought medical attention?

16        A.    On the Monday morning, we went to

17   the ER.

18        Q.    How were you doing that Saturday

19   night when you went to bed?

20        A.    We were uncomfortable and

21   hurting, but Mr. Copeland wanted to try to

22   tough it out, so . . .

23        Q.    How were you doing the next day?

24        A.    Not good.  He still was adamant

25   he didn't want to go anywhere.

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 65

1      Q.    Describe your observation of his
2   injuries.
3      A.    Burns to the lip, above the lip,
4   the lips, his chin, under the chin, both of
5   his arms, and his stomach, down past his
6   belly button, chest, stomach.
7      Q.    Were these blisters, was it
8   bright red?  What did it look like?
9      A.    It was bright red, there was some
10  blistering.  Monday morning, there was
11  blisters hanging from his arms.
12     Q.    And how were -- How were yours?
13     A.    Bright red.  There was a little
14  bit of blistering.
15     Q.    I take it yours were not as
16  serious as his?
17     A.    That's correct.
18         MR. SENN:  David, I'm sorry to
19  interrupt you.  Would this be an okay point
20  to take a restroom break?
21         MR. OSTERMAN:  You bet.  We'll
22  take a ten-minute break.  Does that work?
23         MR. SENN:  Sure.  That works for
24  me.
25         VIDEOGRAPHER:  Off the Record at

Page 66

1    11:28.

2                      (Recess taken.)

3              VIDEOGRAPHER:  Back on the

4    Record.  The time is 11:38.

5        Q.    Okay.  The day after the

6    accident, did you or Edward have any

7    conversations about what had happened and

8    how it happened?

9        A.    I'm sure we did.  I don't really

10   recall a specific conversation about it.

11       Q.    That was going to be my question.

12   Do you have any recollection of what was

13   said?

14       A.    We were -- We pretty much didn't

15   say too much that day.

16       Q.    And, again, that whole day on

17   Sunday, you just let the pressure cooker

18   just sit in the sink as it was?

19       A.    That's correct.

20       Q.    And, again, after you had cleaned

21   up everything else, why -- why didn't you

22   do anything else with the pressure cooker?

23   Why did you just leave it sitting in the

24   sink?  What was your thinking?

25       A.    I'm not sure what I was thinking,

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 67

1   honestly.  I was more concerned with

2   cleaning up the floor and stuff.

3        Q.    And the same on Sunday, did you

4   give any thought to cleaning up the

5   pressure cooker --

6        A.    No.

7        Q.    -- or doing anything with it?

8        A.    (Witness shakes head in the

9   negative.)

10        Q.    So you told me on Monday morning

11   when Edward woke up, some of the blistering

12   and skin was sloughing off his arm?

13        A.    He had large blisters hanging

14   from his arm.

15        Q.    Okay.  Did you-all seek medical

16   attention at that point?

17        A.    Yes.

18        Q.    Where did you go?

19        A.    First, we went to our primary

20   care doctor who took one look at us and

21   said:  Go to the emergency room.

22        Q.    Who was that doctor?

23        A.    Lomboy.

24        Q.    Can you spell it for me?

25        A.    L-O-M-B-O-Y.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 68

1       Q.      Where is Dr. Lomboy located?

2       A.      Perry, Georgia.

3       Q.      Which hospital did you go to?

4       A.      Perry Hospital.

5       Q.      How far is Perry Hospital from

6    where you live?

7       A.      Twenty minutes.

8       Q.      How did you get to Perry

9    Hospital?

10      A.      I drove.

11      Q.      Tell me what you recall happening

12   and being done for you-all when you arrived

13   at Perry Hospital?

14      A.      They -- We went to the emergency

15   room.  They called us to the back; took a

16   look at me, decided I didn't need to be

17   transported, but Mr. Copeland needed to be

18   transported to Augusta.

19      Q.      How did he get transported to

20   Augusta?

21      A.      By ambulance.

22      Q.      How far away is Augusta from

23   Perry Hospital?

24      A.      Probably -- I'm guessing,

25   honestly, it's about a two-hour ride, I

Page 69

1  think, hour and a half, two hours.

2      Q.    Did you go with him or did you

3  drive a separate car to Augusta?

4      A.    I drove my car.

5      Q.    Tell me what you recall happening

6  when you arrived at the hospital in

7  Augusta.

8      A.    Well, he arrived by ambulance, so

9  he was already inside.  When I got there,

10  they told me that I couldn't go in; that

11  they had an appointment set for me the

12  following morning to be seen.

13      Q.    So they would not let you go back

14  to see your husband?

15      A.    That's correct.

16      Q.    Did you speak to him that day

17  after he got to Augusta?

18      A.    Yes.  I had a -- A nurse came

19  down and got his cell phone and took it

20  back up to him so that I could speak to

21  him.

22      Q.    Tell me what you recall about

23  what he said when you spoke to him.

24      A.    Just -- I mean, we -- I honestly

25  don't remember --

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 70

1          Q.      You just --

2          A.      -- what our exact conversation

3     was.

4          Q.      Understood.  Did he describe what

5     treatment, if any, they gave to him or were

6     giving to him that first day at Augusta?

7          A.      At that point, I don't believe he

8     knew what was going on, because it was

9     right after he arrived.  But they did end

10    up having to do debridement on him and

11    cadaver.

12         Q.      What do you mean by cadaver?

13         A.      They had to put cadaver skin over

14    his burns.

15         Q.      Like a skin graft?

16         A.      Correct.

17         Q.      Was that a surgical procedure?

18         A.      Yes.

19         Q.      And the skin was cadaver skin, it

20    was not skin taken from a donor site on his

21    body, that's what you're telling me?

22         A.      That's correct.

23         Q.      And what part of his body was

24    covered with the cadaver skin?

25         A.      Parts of his chest, belly, and

Sheryl Copeland                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 71

1    his arms.

2         Q.    To your knowledge, when did they

3    do that procedure?

4         A.    It was either that evening or the

5    following morning.

6         Q.    I take it you had to turn around

7    and drive all the way back home, after

8    driving all the way to Augusta?

9         A.    Well, I got a hotel room.

10        Q.    So the next day, I take it, would

11   have been a Tuesday, you went in -- back to

12   the hospital in Augusta?

13        A.    Yes.

14        Q.    Tell me all that you recall about

15   that day.

16        A.    I went in and was seen.  He was

17   -- They were in the process of taking him

18   to do the debridement and the skin grafts.

19   They checked me to -- all over, to see

20   where my blisters and stuff were at.  And

21   they gave me medication and some gloves to

22   put on my hands for compression.

23        Q.    Which part of your hands were

24   burned?

25        A.    Mostly the fingers.

Sheryl Copeland                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 72

1      Q.    Just the top or on the palm side
2   of the hand too?
3      A.    No.  Mostly just the -- just the
4   top of my fingers.
5      Q.    Was your thumb burned?
6      A.    No.  Not to my recollection.
7      Q.    So it was the four other fingers
8   on each hand?
9      A.    I would -- I would say three to
10  four.  There might have been one that got
11  missed, but I pretty much had the burns on
12  all of my fingers.
13     Q.    Were you admitted to the
14  hospital, or just treated and released
15  there that day?
16     A.    Treated and released.
17     Q.    But your husband had to stay in
18  the hospital?
19     A.    That's correct.
20     Q.    How long was he admitted and
21  stayed in the hospital?
22     A.    I think three days.
23     Q.    Did you stay down at a hotel in
24  Augusta until he was discharged?
25     A.    Yes, I did.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 73

1      Q.    It was somewhere in the middle of
2   the week, Wednesday or Thursday, he was
3   discharged from the hospital; is that your
4   recollection?
5      A.    That's correct.  I believe it was
6   the 23rd.
7      Q.    Of July?
8      A.    Yes.
9      Q.    How was he doing at that point?
10     A.    He was a mess.  And they had him
11  completely covered.  I had to -- He wasn't
12  allowed to be in sunlight.  He went home
13  kind of looking like a mummy.
14     Q.    In other words, the bandaging was
15  wrapping on his chest?
16     A.    His head, his chest, his arms.
17     Q.    Did anyone get any photographs of
18  the burn injuries on you or on Edward right
19  around this time, July 20 to 23?
20     A.    Yes.
21     Q.    Who took the photos?
22     A.    I did.
23     Q.    Did you use your cell phone?
24     A.    Yes.
25     Q.    Why did you take the pictures?

Sheryl Copeland                                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 74

1       A.    I just took the pictures because
2   I wanted to take the pictures.  I'm not
3   sure --
4       Q.    Did --
5       A.    He looked like a mummy, and I
6   took the pictures of him.  So . . .
7       Q.    Were any pictures taken of you
8   and your burns at this time?
9       A.    Yes.
10      Q.    Who took those pictures?
11      A.    They took some pictures at the
12  hospital, and then I also took pictures of
13  my burns.
14      Q.    Where were you when you took
15  those photos?
16      A.    I was at home.
17      Q.    When you got back home, was the
18  pressure cooker still in the sink?
19      A.    Yes, it was.
20      Q.    It appeared to be untouched from
21  when you last saw it?
22      A.    Yes.
23      Q.    How long did it stay in the sink
24  in that condition?
25      A.    A few days.  I was more concerned

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 75

1    with helping to take care of him than I was
2    worried about the pressure cooker --
3         Q.    Understood.
4         A.    -- being in the sink.  So . . .
5         Q.    So at some point later that week,
6    did you do something with the pressure
7    cooker?
8         A.    Yeah.  I put it in a plastic
9    trash bag, and just closed it, because it
10   smelled.
11        Q.    It smelled because the food
12   hadn't been cleaned out; right?
13        A.    Right.  Right.
14        Q.    Did you disassemble any part of
15   it before putting it in the bag?
16        A.    No.
17        Q.    Then where did you put the bag
18   with the pressure cooker?
19        A.    I left it in the sink.
20        Q.    And, again, why did you do that?
21   Why would you leave it in a bag in the sink
22   in the kitchen?
23        A.    I just -- I wasn't going outside.
24   I wasn't going to throw it away at that
25   point.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 76

1      Q.     Why not put it in the garage or
2   outside the house, just to --
3      A.     We don't have a garage.
4      Q.     How long did it stay in a bag in
5   your sink?
6      A.     Probably until the first part of
7   the week.  I don't exactly remember when we
8   -- Honestly, I can't tell you.
9      Q.     Okay.  When did you first reach
10  out to an attorney?
11     A.     I don't remember the exact date.
12     Q.     Would it -- Would it be within a
13  week of the accident?
14     A.     Or it could have been a little
15  longer than that.  Like I said, I don't
16  remember.  We were going through the
17  process of taking him back and forth to
18  Augusta.
19     Q.     How many times did he go back and
20  forth to Augusta for treatment relating to
21  these burn injuries?
22     A.     I don't remember the exact number
23  without looking at notes, but I would say
24  four to five times.
25     Q.     How about you?  How many times

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 77

1    did you have to go back to Augusta for

2    treatment for your injuries?

3        A.    I think there was four times that

4    they saw me.  And they just made the

5    appointments with his.

6        Q.    Were there any complications that

7    you're aware of in the treatment or

8    recovery of his burn injuries?

9        A.    He had permanent -- permanent

10   scarring from it.  And I'm not sure what

11   else you're asking.

12       Q.    Well, that's a good distinction,

13   so thank you for raising that.

14           No, I was more concerned with

15   some -- anything that seemed unexpected or

16   out of the ordinary, in terms of the

17   medical treatment; a complication, an

18   infection, anything like that relating to

19   it?

20       A.    No.

21       Q.    And how about with respect to

22   your recovery from your injuries?

23       A.    My recovery was -- You know, I

24   had went from super red, and then blisters,

25   and everything looked kind of healed up,

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 78

1   was getting better, lighter.  And I ended
2   up having a -- in October, I had what I
3   thought was a spider bite at the time, or
4   some type of a bite.  I went to the doctor,
5   and they told me that I had necrosis, the
6   flesh was dying on my chest, and it
7   happened to be right where one of the burns
8   was at.
9        Q.    So you went in believing that you
10  had suffered a spider bite?
11       A.    Yeah.  I wasn't sure exactly what
12  -- they said it kind of resembled that.  It
13  started out like a little blister, and then
14  it just got worse.
15       Q.    Did anyone -- Did any doctor ever
16  tell you that it was not a spider bite?
17       A.    Not specifically, no.
18       Q.    Did any doctor ever tell you that
19  it was related to the burn injury?
20       A.    No.
21       Q.    In either event, you developed
22  this necrosis.  And what did that look
23  like?  What were the symptoms of that?
24       A.    I had a spot that came up, and
25  then I had -- it was like a place that

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 79

1   looked like it was caving in.  And then it
2   got really red around it.  You could tell
3   that there was something going on.
4        Q.    And what, if anything, was the
5   treatment for that?
6        A.    I went to the -- Dr. Lomboy, and
7   he took a look at it, drew a circle around
8   where the redness was, and told me that if
9   the redness was outside of that line the
10  next day, that I had to go into the
11  hospital.
12       Q.    And the next day, was it outside
13  that line?
14       A.    Yes, it was.
15       Q.    Which hospital did you go to?
16       A.    Perry Hospital.
17       Q.    Were you admitted there?
18       A.    Yes.
19       Q.    How long were you admitted for?
20       A.    I think it was about two to three
21  days.
22       Q.    What's your understanding of what
23  they did for you there?
24       A.    They cut about a five-inch place
25  on my chest, took out the infection, took

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 80

1    out the tissue that was dead.

2        Q.    Was this on your right or left

3    breast?

4        A.    Left.

5        Q.    Were there any complications

6    related to that or was -- in other words,

7    for the treatment, did the treatment go as

8    they and you had hoped it would go?

9        A.    Yes, it did.

10       Q.    Is that fully healed now?

11       A.    It is.

12       Q.    And you have a scar in that area?

13       A.    Yes, I do.

14       Q.    And I'm not going to ask you to

15   show it to me, but generally how would you

16   describe it?

17       A.    It's big.  It's raised a little

18   bit.

19       Q.    You're talking specifically the

20   area where they surgically removed the

21   abscess?

22       A.    Yes.  And that area of my breast

23   is caved in a little bit where they took

24   out the tissue.

25       Q.    How have your -- the scars from

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 81

1    the -- the burns that you suffered, how

2    have those healed?

3         A.    Relatively well.

4         Q.    Are there any scars that are

5    raised scars?

6         A.    No.

7         Q.    Is there any discoloration?

8         A.    Yes.

9         Q.    How would you describe it?  Is it

10   slight, moderate, severe discoloration, in

11   your own words?

12        A.    Slight.

13        Q.    And where is the -- is this

14   discoloration most pronounced, in your

15   mind?

16        A.    On my shoulder (indicating),

17   there was a little place on my shoulder,

18   and a little bit on my breast.

19        Q.    You're touching your left

20   shoulder?

21        A.    That's correct.

22        Q.    And which breast?

23        A.    Left.

24        Q.    Are you making a claim that

25   Edward's death is related to this accident?

Page 82

1       A.      No.

2       Q.      How did Edward's burn injuries

3   heal up?

4       A.      He had permanent scarring, his

5   arms, the inside of his arms, he had pretty

6   severe; and on his chest; underneath his

7   chin, on his chin, those were the worst

8   areas that scarred.

9       Q.      And on his arms, were they on

10  both arms?

11      A.      Yes.

12      Q.      And where, specifically, on the

13  arms, do you remember?

14      A.      On the inside of the arm.

15      Q.      So the forearm, the meaty part of

16  the forearm, or the --

17      A.      Yes, the forearm.

18      Q.      And you're gesturing -- You know,

19  sometimes people talk about the top of the

20  forearm and the inside of the forearm, you

21  know, if the continuation from the palm of

22  your hand down to your elbow, is that the

23  area where it was?

24      A.      Yes, sir.

25      Q.      The side of his forearm?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 83

1       A.      Yes.

2       Q.      Were any of his scars raised?

3       A.      Yes.  On his arms.  And he had a

4   couple of places on his belly that were

5   raised.

6       Q.      Were those areas the areas where

7   they put -- they applied any of the cadaver

8   skin?

9       A.      I'm not sure.  One of the areas

10  is where he had had open-heart surgery, so

11  he had the big scar there, and it made it

12  worse, the scar.

13      Q.      The open-heart surgery scar?

14      A.      Yes.

15      Q.      You said that both you and he

16  went back to Augusta hospital about four

17  times for follow-up treatment?

18      A.      I think it was about four times.

19      Q.      After that, were you or he

20  treated for your burn injuries anywhere

21  else?

22      A.      No.

23      Q.      Were your medical bills covered

24  by insurance?

25      A.      Yes.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 84

1       Q.    Was there any part of your
2   medical bills that -- that were not covered
3   by insurance, that you paid out of your own
4   pocket?
5       A.    Yes.
6       Q.    And what was that?
7       A.    I don't have the specific
8   amounts.
9       Q.    About how much and what kind of
10  things -- Were these, like, for copayments,
11  were these --
12      A.    Copayments and -- His basically
13  was covered, because of the amount of money
14  that was there for his injury, he had
15  Medicare, and they -- they covered it.
16      Q.    When you say the amount of money
17  set aside for his injuries, what are you
18  referring to?
19      A.    No.  That his -- His doctor bills
20  were over two hundred thousand dollars, so
21  he was well beyond any deductibles or --
22      Q.    Okay.  And he was -- He was
23  receiving Medicare?
24      A.    Yes.
25      Q.    What insurance covered you?

Sheryl Copeland                                     June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 85

1      A.    My insurance is United

2   Healthcare.

3      Q.    And were you on United Healthcare

4   at the time of the accident?

5      A.    Yes.

6      Q.    You get that through work?

7      A.    I do.

8      Q.    Have you been to see any other

9   doctors relating to the burn injuries you

10  suffered, other than Dr. Lomboy and the

11  doctors at, first, Perry and then Augusta

12  Hospital?

13     A.    No.

14     Q.    To your knowledge, did anyone

15  other than those same doctors treat your

16  husband?

17     A.    They -- That's correct.

18     Q.    At some point in time you moved

19  the pressure cooker from your -- the bag in

20  the kitchen to somewhere else?

21     A.    Yeah.  In our laundry room.

22     Q.    Do you remember when that was?

23     A.    Not off the top of my head, no.

24     Q.    Then where did it go?

25     A.    Once we seeked counsel, it came

Page 86

1   to the lawyer's office.

2        Q.    Was it ever in the possession of

3   any lawyer other than your current lawyer?

4        A.    No.

5        Q.    Do you remember approximately

6   when it was when you delivered it to your

7   current lawyer?

8        A.    I don't remember the exact date.

9        Q.    Can you approximate for me?

10       A.    Sometime in 2020, after the

11  accident.  I'm not exactly sure of the

12  date.

13       Q.    Would it have been during the

14  summer?

15       A.    I don't recollect.

16       Q.    Okay.  At any point before you

17  brought it to the attorney, did anyone open

18  that bag and clean up or disassemble or

19  inspect the pressure cooker?

20       A.    No.

21       Q.    When you brought it to your

22  attorney, did you see anybody disassemble,

23  clean it, or take anything out of the

24  pressure cooker?

25       A.    No.

Sheryl Copeland                           June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 87

1      Q.    As far as you know, when you

2   delivered the pressure cooker to your

3   attorney, it was in the same condition as

4   it was when you first put it in the sink;

5   correct?

6      A.    That's correct.

7      Q.    Did you ever -- You told me

8   before that when you got it you read a

9   product manual that came with it; correct?

10     A.    Yes.

11     Q.    Did you save that product manual?

12     A.    Yes.

13     Q.    And where is that product manual

14  today?

15     A.    The attorney has it.

16     Q.    Did you at any point call or

17  communicate with Tristar about your

18  accident?

19     A.    No.

20                        (Defendant's Exhibit

21                         1 was marked for

22                         identification.)

23     Q.    I have marked as an exhibit, I

24  just want to show it to you, so let me

25  share my screen here.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 88

1              I've put up on my screen, are you

2    able to see this document?

3        A.    Yes.

4        Q.    And it's labeled Defendant's

5    Exhibit 1, and it's a copy of a pressure

6    cooker for model PPC780.  Does this

7    generally look like the manual for the

8    pressure cooker that you received with the

9    product?

10       A.    Yes, it does.

11       Q.    Okay.  And inside on what's

12   labeled page one, there's a page here, and

13   I'll zoom in on the top, it says:

14   Important Safeguards.  When using

15   electrical appliances, basic safety

16   precautions should always be followed,

17   including the following.  Then it has a

18   bunch of instructions there, and bullet

19   points.

20       A.    Yes.

21       Q.    Do you remember reading this page

22   of the instructions?

23       A.    I do.

24       Q.    Did you have any problem

25   understanding any of them?

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 89

1       A.      No.

2       Q.      They, for the most part, seemed

3    like common sense to you?

4       A.      Yes.

5       Q.      There's -- In the first column

6    down here, third bullet point from the

7    bottom, it says, and I can zoom in on that:

8    This appliance cooks under pressure.

9    Improper use may result in scalding injury.

10   Make certain unit is properly closed before

11   operating.  See instructions for use.

12           Do you remember reading that?

13      A.      Yes.

14      Q.      And then the next one is an

15   instruction about never fill the unit above

16   the max line in the inner pot.

17           You had -- You had read that and

18   you understood that and you followed that

19   instruction; correct?

20      A.      That's correct.

21      Q.      And then second column, second

22   bullet point, says:  Do not open the

23   Pressure Cooker XL unit.  The unit -- I'm

24   sorry, until the unit has cooled and all

25   internal pressure has been released.  If

Page 90

1    the unit is difficult to open, this

2    indicates that the pressure cooker is still

3    pressurized.  Do not force it open.  Any

4    pressure in the cooker can be hazardous.

5    See instructions for use.

6              Do you remember reading that one?

7         A.    Yes.

8         Q.    And that, again, was something

9    you knew and understood from your years of

10   using the old stovetop pressure cooker; is

11   that correct?

12        A.    That's correct.  Yes.

13        Q.    And then down here, it looks like

14   fourth from the bottom on the right, in all

15   capital letters, it says:  Never force open

16   the Power Pressure Cooker XL.  If you need

17   to open the Power Pressure Cooker XL, press

18   the keep warm/cancel button, and using

19   tongs or a kitchen tool, rotate the

20   pressure valve to the open position to

21   fully release the building pressure inside

22   the cooker.  Make sure all steam has

23   dissipated from the cooker.  Carefully turn

24   the handle clockwise to open.  Always open

25   the lid away from you to avoid skin contact

Page 91

1   with any remaining heat or steam.

2              You had read that?

3       A.    Yes.

4       Q.    And you understood that?

5       A.    Yes.

6       Q.    And again from your prior

7   experience, that was common sense to you;

8   correct?

9       A.    That's correct.

10      Q.    Okay.  I'll take that down.  And

11  the -- I think you told me -- I apologize

12  if you said this before, I just don't

13  remember.  Your general practice was to

14  clean the unit, including the lid liner,

15  each time -- after each time you used it?

16      A.    That's correct.

17      Q.    So on the day of the accident,

18  when you went to use it, it was -- it was

19  clean; correct?

20      A.    That's correct, yes.

21      Q.    The lid liner inside was not

22  clogged, it was not dirty, it was clean;

23  correct?

24      A.    That's correct.

25      Q.    And, in fact, the last time you

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 92

1    had used it, you would have removed the lid

2    liner and cleaned out the underside of the

3    lid itself; correct?

4         A.    That's correct.

5         Q.    With the -- On the top of the lid

6    there's this -- the round device --

7         A.    Uh-huh.

8         Q.    -- that's the thing that you

9    would turn to release the pressure.

10        A.    Yes.

11        Q.    That snaps off.  Did you ever

12   remove that for cleaning also?

13        A.    Yes.

14        Q.    And is that something you would

15   do each time you would use it?

16        A.    I did.

17                         (Defendant's Exhibit

18                          4 was marked for

19                          identification.)

20        Q.    And I marked as Exhibit 4, and I

21   will show it to you first, these are --

22   it's a document that we attorneys call

23   answers to interrogatories.  These are

24   written questions --

25        A.    Uh-huh.

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 93

1      Q.     -- that my client sent to your
2   attorney with the intention that you would
3   provide written answers, so that we would
4   have some understanding of what your claim
5   was before we got to this deposition.
6           Do you remember providing answers
7   to those questions?
8      A.    Yes.
9      Q.    Okay.  And did you -- Did you
10  review those answers and then sign it at
11  the end of the document?
12     A.    Yes.
13     Q.    So I've marked this as
14  Defendant's Exhibit 4, and it's entitled
15  Plaintiff's Objections and Responses to
16  Defendant Tristar Products, Inc.'s,
17  Interrogatories to Plaintiff Sheryl
18  Copeland.
19          And I'm going to scroll down,
20  interrogatory number two -- and I'll zoom
21  in on this, it said -- the question was:
22  Describe in detail Plaintiff's version of
23  the accident, setting forth the date,
24  location, time, surroundings, and
25  identifying all other people present when

Sheryl Copeland                         June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 94

1    the accident occurred.

2              And then there is an objection

3    asserted, I assume by your attorney, and

4    then beginning on -- let me scroll down.

5    This is -- Well, the page isn't numbered.

6    But in this answer it says:  Subject to and

7    without waiving any objection, Plaintiffs

8    Edward and Sheryl Copeland were at home

9    preparing dinner on the evening of July 18.

10   Then it goes on and it describes how you

11   prepared the meal.

12             I'll jump down to this sentence

13   here:  Plaintiff Edward Copeland slightly

14   jiggled the pressure valve at the top of

15   the pressure cooker to release any steam

16   that might still be inside the pressure

17   cooker.  No steam released, leading Mr.

18   Copeland to believe the pressure had

19   escaped from the pressure cooker.

20   Plaintiff Edward Copeland then checked the

21   side of the pressure cooker where the metal

22   safety pin was located.  The pin was no

23   longer sticking out, leading Mr. Copeland

24   to believe there was no steam/pressure

25   inside the pressure cooker.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 95

1          Do you remember that part of the
2    answer?

3          A.    Yes.

4          Q.    Okay.  I'm going to take this
5    down now just for a moment.  I just want to
6    make sure I understood what you were
7    referring to as the safety pin.

8                There is -- You have the -- If
9    you could take the lid, just the lid to the
10   pressure cooker is all you need.  Is there
11   a caution label on your lid?

12         A.    Yes.

13         Q.    And can you read -- How many
14   instructions are there under the word
15   "caution"?

16         A.    Four.

17         Q.    And if -- Read me what the number
18   three instruction is on your caution label?

19         A.    Once the floating valve has
20   dropped, the lid may be removed.

21         Q.    Okay.  Is that what you were
22   referring to as the -- when -- as the
23   safety pin in that answer?

24         A.    Well, the floating valve is
25   inside here (indicating).

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 96

1       Q.    Yeah.

2       A.    And the pin -- When the valve

3    drops, the pin goes in (indicating).

4       Q.    So the -- Oh, okay.  So in other

5    words, the position of the pin is related

6    to that float valve?

7       A.    Yeah.  That's part of the locking

8    system.

9       Q.    Okay.  And so did you typically

10   make an observation to confirm that the

11   float valve was down before opening?

12      A.    Well, it's kind of hard to see

13   that part of it, because it's down inside

14   of a hole.  So it's really not that visible

15   seeing that, but the pin itself.

16      Q.    And you can see that that pin is

17   in a different position when it drops down?

18      A.    When the valve is up or the

19   pressure is on it, you can't move this pin.

20      Q.    Okay.

21      A.    When the pressure is down, the

22   pin is released.

23      Q.    So was it -- You're demonstrating

24   by pinching the pin from the side and

25   pulling it out?

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 97

1      A.    Yeah.  You can actually tell.
2    But I mean, there's not much -- There's not
3    much different when the valve float -- when
4    it's under pressure and when it's not under
5    pressure, because all of that is, like I
6    said, down in the hole.
7      Q.    Okay.  Well, that was my
8    question.  Did you, as a normal practice,
9    or did your husband, typically look down
10   into the hole to see the position of the
11   float pin or did you --
12     A.    I don't think you could really --
13   you can't -- I mean, you can't really see
14   down -- That hole is pretty deep, so --
15     Q.    Okay.
16     A.    It doesn't move enough.  I don't
17   really think you would notice it from that.
18   More the pressure valve itself --
19     Q.    Okay.
20     A.    -- the release.
21     Q.    You mean the side locking pin?
22     A.    That, and then checking this
23   (indicating).
24     Q.    Okay.  So did your husband do
25   what you demonstrated; in other words, pull

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 98

1  that side pin away --

2       A.    I doubt that he did, because the

3  pot was still hot.

4       Q.    Got it.  Okay.  So when you say

5  he checked the side of the pressure cooker

6  where the metal safety pin was located; the

7  pin was no longer sticking out.  Why was --

8  What pin --

9       A.    Okay.  Of course, this is cold,

10  so it's not quite the same.  But when this

11  is engaged (indicating), this pin doesn't

12  move.  When it's disengaged, it really -- I

13  mean, it really doesn't move that much.  I

14  don't know that there's enough of a

15  difference here that you can -- that you

16  can tell.

17       Q.    That's what I was just trying to

18  understand your answer, why you --

19       A.    Yeah.

20       Q.    What was it he was checking and

21  why did he assume there was no pressure in

22  it based just on the physical location of

23  it.

24       A.    Right.

25       Q.    You know, because I -- It's --

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 99

1  Candidly, I don't think the position is
2  going to change unless you move the lid,
3  the position of the side pin.
4       A.   Uh-huh.
5       Q.   But the float valve will go up
6  and down with pressure.  And so that's why
7  I was trying to understand in your answer.
8  Are you able to -- Do you think he was
9  saying in the answer that he looked at the
10 float valve, looked down there?
11      A.   Yes.
12           MR. OSTERMAN:  Okay.  All right.
13 Let's take a -- Actually, give me just a
14 moment.  I think I'm just about -- I think
15 I'm just about done.
16           Why don't we take just like a
17 five-minute break, and I'll look back
18 through my notes and I'll let you know if I
19 have any more questions.  Okay?
20           THE WITNESS:  Okay.
21           VIDEOGRAPHER:  Off the Record,
22 12:26.
23                  (Recess taken.)
24           VIDEOGRAPHER:  Back on the
25 Record.  The time, 12:33.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 100

1      Q.    Ma'am, I just have -- I have just
2   a couple more questions.
3      A.    Okay.
4      Q.    There was a photo that was
5   produced.  I did not premark it, but I'll
6   represent to you that it was given to us in
7   -- with your discovery responses.  It
8   appears to be a picture of the pressure
9   cooker and it's on a table.
10          Do you know any -- Can you
11  recognize if this picture was taken at your
12  house?
13     A.    No.  It was not taken at my
14  house.  I don't -- I don't recognize that.
15     Q.    Okay.  Do you know any of the
16  details of when or how or who took that
17  picture?
18     A.    I have no idea.
19                    (Defendant's Exhibit
20                     5 was marked for
21                     identification.)
22     Q.    Okay.  I'll forward this and we
23  can mark it for the Record.  But I'll just
24  describe it.  It's a picture of the
25  underside of the lid with the lid liner

Sheryl Copeland                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 101

1  removed, it's on a white table, there

2  appears to be a brick or cinder block wall

3  in the top center of the photograph behind

4  the white table.

5           MR. OSTERMAN:  Ma'am, those are

6  all the questions that I have.  I thank you

7  very much for your patience and endurance

8  in going through this.

9           THE WITNESS:  No problem.

10          MR. SENN:  I don't have any

11  questions.

12          VIDEOGRAPHER:  Off the Record,

13  12:35.

14          COURT REPORTER:  Do we want to

15  read and sign or waive?

16          MR. SENN:  We talked about this

17  before.  You have the right to read this

18  deposition transcript and check it for

19  accuracy, you can change things like

20  misspellings and dates and things like

21  that, can't change anything substantively,

22  or you can waive that right.  It's your

23  choice.  I don't see any reason why you

24  need to read and sign, unless you want to.

25  Are you okay waiving?

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 102

1            THE WITNESS:  Yeah.

2            MR. SENN:  We'll waive.

3    (The deposition was concluded at 12:35

4    p.m., June 6,2023.)

5

6            (Signature waived.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 103

```
 1                REPORTER DISCLOSURES
 2           The following representations and
 3   Disclosures are made in compliance with
 4   Georgia Law, more specifically:
 5           Article 10(B) of the Rules and
 6   Regulations of the Board of Court Reporting
 7   (Disclosure forms).
 8           OCGA section 9-11-28(c)
 9   (disqualification of reporter for financial
10   interest).
11           OCGA sections 15-14-37 (a) and (b)
12   (Prohibitions against contracts except on
13   case-by-case basis).
14           I am a certified court reporter in
15   the State of Georgia.
16           I am a subcontractor for Veritext
17   Legal Solutions.  I have been assigned to
18   make a complete and accurate record of
19   these proceedings.
20           I have no relationship of interest
21   in the matter on which I am about to report
22   which would disqualify me from making a
23   verbatim record or maintaining my
24   obligation of impartiality in compliance
25   with the Code of Professional Ethics.
```

Page 104

1        I have no direct contract with any

2   party in this action and my compensation is

3   determined solely by the terms of my

4   subcontract agreement.

5                    FIRM DISCLOSURES

6            Veritext Legal Solutions was

7   Contacted to provide reporting services by

8   the noticing or taking attorney in this

9   matter.  There is no agreement in place

10  that is prohibited by OCGA 15-14-37 (a) and

11  (b).  Any case-specific discounts are

12  automatically applied to all parties, at

13  such time as any party receives a discount.

14           Transcripts:  The transcript of

15  this proceeding as produced will be a true,

16  correct, and complete record of the

17  colloquies, questions and answers as

18  submitted by the certified court reporter.

19           Exhibits:  No changes will be made

20  to the exhibits as submitted by the

21  reporter, attorneys or witnesses.

22           Password-Protected Access:

23  Transcripts and exhibits relating to this

24  proceeding will be uploaded to a

25  password-protected repository, to which all

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 105

1    ordering parties will have access.

2               REPORTER'S CERTIFICATE

3               I hereby certify that the above

4    and foregoing deposition was taken down

5    stenographically, and that the colloquies,

6    the questions and answers thereto were

7    transcribed by means of computer-aided

8    transcription; that the transcript is a

9    true and correct record of the evidence

10   given upon said proceeding.  I have no

11   relationship of interest in this matter

12   which would disqualify me from maintaining

13   my obligation of impartiality in compliance

14   with the Code of Professional Ethics.

15              I have no direct contract with any

16   party in this action and my compensation is

17   based solely on the terms of my

18   subcontractor agreement.  Nothing in the

19   arrangements made for this proceeding

20   impacts my absolute commitment to serve all

21   parties as an impartial officer of the

22   court.

23

     ANGELA SMITH MCGALLIARD, RPR, CRR, CCR

24   Georgia Cert. No.: 4599-7151-4544-9472

     Expiration 4/1/2024

25   Notary Expiration 8/13/2024

Sheryl Copeland                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[& - afternoon]**                                           Page 1

| & | | |
|---|---|---|
| **&**   3:6 | | |

**0**

**00212**   1:5
**08534**   3:15

**1**

**1**   2:10 87:21
  88:5
**10**   103:5
**100**   2:15
**10:02**   4:9,15
**11:28**   66:1
**11:38**   66:4
**12/13/1963**
  10:11
**12:26**   99:22
**12:33**   99:25
**15**   2:5,8
**15-14-37**
  103:11 104:10
**17th**   12:25
**18**   15:11 94:9
**18307**   105:23
**19**   2:13
**1984**   11:1
**1985**   16:22
  17:25 19:24
**1987**   11:8

**2**

**2**   2:8 43:14,18
  44:9
**20**   15:10 73:19
**200**   3:14

**2000**   16:23
**2000s**   17:25
  19:16
**2008**   12:16
**2016**   15:23
  23:4
**2018**   14:11
**2020**   15:11
  86:10
**2023**   1:17 4:14
**21**   2:15
**22**   2:9,10 12:25
**23**   73:19
**23rd**   73:6

**3**

**3**   2:9 45:21,25
**301**   3:13
**31030**   13:21
**31221**   3:7
**389**   13:20

**4**

**4**   2:13 92:18,20
  93:14
**4/1/2024**
  105:24
**43**   2:8
**45**   2:9
**4599-7151-4...**
  105:24

**5**

**5**   2:5,15 100:20
**5:22**   1:5

**6**

**6**   1:17 4:14
**6,2023**   102:4

**7**

**7/18**   15:10

**8**

**8.b**   3:23
**8/13/2024**
  105:25
**80s**   17:22
**87**   2:10

**9**

**9-11-28**   103:8
**90**   11:23
**92**   2:13
**93**   11:23

**a**

**a.m.**   4:9,15
**abc**   1:11
**abdomen**   54:17
**ability**   28:4
**able**   6:23,24
  9:11 18:22
  21:12 27:16
  28:12,14 44:3
  88:2 99:8
**above**   4:10
  45:13 65:3
  89:15 105:3
**abscess**   80:21
**absolute**
  105:20

**access**   104:22
  105:1
**accident**   14:24
  15:7 24:10
  29:5 33:22
  37:17,22 39:11
  44:18 46:18
  58:6,10,16
  59:15 64:3,6
  66:6 76:13
  81:25 85:4
  86:11 87:18
  91:17 93:23
  94:1
**accuracy**
  101:19
**accurate**   9:12
  103:18
**acquired**   23:3
**acting**   4:5
**action**   1:5
  104:2 105:16
**actual**   41:22
**actually**   9:2
  21:23 33:9
  47:23 58:11
  97:1 99:13
**adamant**   64:24
**address**   13:18
**administered**
  6:1,6
**admitted**   72:13
  72:20 79:17,19
**afternoon**   38:6

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

**[age - based]**

Page 2

age 20:7
ago 5:17
agreement
104:4,9 105:18
ahold 30:6 50:8
aided 105:7
al 4:18,19
alarm 34:8
allowed 31:13
73:12
allows 21:19
aloe 60:3,6
ambulance
68:21 69:8
amount 53:15
84:13,16
amounts 84:8
angela 1:24 4:1
105:23
angie 4:23
answer 7:7,11
7:22 94:6 95:2
95:23 98:18
99:7,9
answers 2:13
6:22 8:4,18
92:23 93:3,6
93:10 104:17
105:6
anybody 86:22
anymore 20:1
32:10,13
apart 25:13
apologize 91:11

appeared 74:20
appearing 5:3
appears 29:11
45:25 100:8
101:2
appliance 89:8
appliances
88:15
applied 83:7
104:12
appointment
69:11
appointments
77:5
approximate
42:3 86:9
approximately
11:23 15:22
41:22 43:2
86:5
approximation
8:23
area 44:25 45:7
45:9,25 80:12
80:20,22 82:23
areas 82:8 83:6
83:6,9
arm 67:12,14
82:14
arms 57:16
65:5,11 71:1
73:16 82:5,5,9
82:10,13 83:3
arrangements
105:19

arrived 68:12
69:6,8 70:9
article 3:23
103:5
ashmore 10:4,5
aside 54:19
61:19 84:17
asking 9:22
18:1 28:15
77:11
asserted 94:3
assigned
103:17
assist 60:20
associated 37:4
assume 39:6
94:3 98:21
assure 7:9
attach 31:8
attempt 16:6
34:16 43:1
47:11
attempted
36:18 47:16,20
49:12
attended 3:2
attention 64:1
64:15 67:16
attorney 5:2
76:10 86:17,22
87:3,15 93:2
94:3 104:8
attorney's 6:12
attorneys 92:22
104:21

augusta 63:23
68:18,20,22
69:3,7,17 70:6
71:8,12 72:24
76:18,20 77:1
83:16 85:11
automatically
104:12
avoid 90:25
aware 22:2
77:7

**b**

b 67:25 103:5
103:11 104:11
back 16:2 26:4
28:14,18 42:21
43:5,24 45:16
46:17 48:7
50:20 60:2
62:5 66:3
68:15 69:13,20
71:7,11 74:17
76:17,19 77:1
83:16 99:17,24
bag 63:2 75:9
75:15,17,21
76:4 85:19
86:18
bandaging
73:14
barely 50:9
base 49:11
based 24:7
98:22 105:17

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

**[basic - care]**

Page 3

| | | | |
|---|---|---|---|
| **basic** 88:15 | **bills** 83:23 84:2 | **brand** 18:1,5 | **burned** 71:24 |
| **basically** 19:1 | 84:19 | 18:14,18 | 72:5 |
| 29:17 31:14 | **birth** 10:10 | **brandon** 10:17 | **burns** 59:24 |
| 84:12 | **birthday** 16:10 | 10:17 | 62:4 65:3 |
| **basis** 103:13 | **bit** 25:2 28:1,14 | **break** 65:20,22 | 70:14 72:11 |
| **bed** 64:19 | 28:18 53:19 | 99:17 | 74:8,13 78:7 |
| **beef** 22:8,25 | 65:14 80:18,23 | **breast** 80:3,22 | 81:1 |
| 30:18 | 81:18 | 81:18,22 | **button** 31:10 |
| **beep** 34:6,9,10 | **bite** 78:3,4,10 | **breasts** 54:16 | 31:12,24 65:6 |
| 34:11 | 78:16 | **brick** 101:2 | 90:18 |
| **beeps** 42:16,19 | **blew** 50:10 | **bright** 65:8,9 | **buttons** 41:9 |
| **began** 38:4 | 51:13 54:11,12 | 65:13 | **buy** 18:11 |
| 41:11,12 | 59:18 | **broken** 24:13 | 20:22 |
| **beginning** 4:9 | **blister** 78:13 | **broth** 19:2 | |
| 4:16 10:3 23:4 | **blistering** | 30:18 | |
| 94:4 | 65:10,14 67:11 | **brought** 86:17 | **c** |
| **believe** 11:24 | **blisters** 65:7,11 | 86:21 | **c** 3:1 11:5 103:8 |
| 23:14 52:7,11 | 67:13 71:20 | **brown** 3:19 | **cabinet** 55:25 |
| 61:13,15,17 | 77:24 | 4:20 | **cadaver** 70:11 |
| 70:7 73:5 | **block** 101:2 | **build** 33:13 | 70:12,13,19,24 |
| 94:18,24 | **board** 3:24 | 41:12 | 83:7 |
| **believing** 78:9 | 103:6 | **building** 31:17 | **call** 44:8 60:19 |
| **belly** 65:6 | **body** 54:13 | 33:7 90:21 | 87:16 92:22 |
| 70:25 83:4 | 70:21,23 | **builds** 33:17 | **called** 30:23 |
| **benefits** 21:5 | **booklet** 6:23 | **built** 33:10 | 68:15 |
| **best** 7:8 24:19 | **borders** 13:20 | **bullet** 88:18 | **calm** 60:11,12 |
| 40:9 41:18 | **born** 10:12 | 89:6,22 | **camera** 27:17 |
| 42:24 46:8 | **bottle** 48:15,15 | **bunch** 88:18 | 28:6,13 |
| **bet** 44:2 65:21 | **bottom** 89:7 | **burn** 14:25 | **cancel** 90:18 |
| **better** 44:12 | 90:14 | 15:4 63:24 | **candidly** 99:1 |
| 78:1 | **bought** 16:11 | 73:18 76:21 | **canning** 22:13 |
| **beyond** 84:21 | 16:12 20:16,20 | 77:8 78:19 | **cannula** 58:24 |
| **big** 40:2 60:3 | 20:24 35:8 | 82:2 83:20 | 58:25 |
| 80:17 83:11 | **box** 27:20 | 85:9 | **capital** 90:15 |
| | | | **car** 69:3,4 |
| | | | **care** 67:20 75:1 |

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[careful - concluded]**                                Page 4

| | | | |
|---|---|---|---|
| **careful** 26:6 | **change** 99:2 | **cleaner** 8:7 | **coming** 19:12 |
| **carefully** 90:23 | 101:19,21 | **cleaning** 25:24 | 36:2,9 37:1 |
| **carnegie** 3:13 | **changes** 104:19 | 38:11 61:19 | 53:9,11,16,21 |
| **carries** 6:12 | **characterizati...** | 67:2,4 92:12 | **commissioner** |
| **carton** 30:18,20 | 37:12 | **clear** 34:1 43:4 | 4:5 |
| **case** 9:12 | **check** 101:18 | 53:18 | **commitment** |
| 103:13,13 | **checked** 47:1 | **click** 31:14,15 | 105:20 |
| 104:11 | 71:19 94:20 | 32:18 | **common** 89:3 |
| **cause** 4:10 13:2 | 98:5 | **clicking** 32:17 | 91:7 |
| **caution** 95:11 | **checking** 97:22 | **client** 6:24 93:1 | **communicate** |
| 95:15,18 | 98:20 | **clockwise** | 87:17 |
| **caved** 80:23 | **chest** 65:6 | 90:24 | **compared** 21:9 |
| **caving** 79:1 | 70:25 73:15,16 | **clogged** 91:22 | 24:6 |
| **ccr** 1:25 105:23 | 78:6 79:25 | **close** 40:15 | **compensation** |
| **ceiling** 56:9,11 | 82:6 | 48:19 | 104:2 105:16 |
| 56:16,17,23 | **children** 11:11 | **closed** 35:23 | **complete** 7:11 |
| 57:1,2,4 | 11:25 13:4,7 | 75:9 89:10 | 9:11 103:18 |
| **cell** 69:19 73:23 | **chin** 65:4,4 | **closely** 62:6 | 104:16 |
| **center** 3:13 | 82:7,7 | **closer** 23:4,5 | **completely** |
| 44:14,14 46:4 | **choice** 101:23 | 35:15 45:10,15 | 73:11 |
| 48:3 63:24 | **chores** 38:13 | 49:2 61:9 | **compliance** |
| 101:3 | **cinder** 101:2 | **closest** 29:22 | 103:3,24 |
| **cert** 105:24 | **circle** 79:7 | **clothes** 60:2 | 105:13 |
| **certain** 89:10 | **civil** 1:5 4:7 | **code** 13:21 | **complication** |
| **certainly** 52:14 | **claim** 63:12 | 103:25 105:14 | 77:17 |
| **certificate** | 81:24 93:4 | **cold** 98:9 | **complications** |
| 105:2 | **clean** 25:9 | **collar** 54:22 | 77:6 80:5 |
| **certified** 4:2,3 | 61:20 62:3,19 | **colloquies** | **compression** |
| 103:14 104:18 | 86:18,23 91:14 | 104:17 105:5 | 71:22 |
| **certify** 4:5 | 91:19,22 | **column** 89:5,21 | **computer** |
| 105:3 | **cleaned** 27:9 | **come** 55:19 | 105:7 |
| **cetera** 55:4 | 60:18,22 61:1 | 59:1 60:19 | **concerned** 67:1 |
| **chair** 42:22 | 66:20 75:12 | **comfortable** | 74:25 77:14 |
| 58:19 61:2 | 92:2 | 19:18 | **concluded** |
| | | | 102:3 |

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

**[condition - counsel]**

Page 5

| | | | |
|---|---|---|---|
| **condition** 62:23 | **conversations** | 90:2,4,10,16,17 | 15:12,18,19 |
| 74:24 87:3 | 66:7 | 90:22,23 94:15 | 18:16,19 23:19 |
| **conference** | **convey** 8:9 | 94:17,19,21,25 | 23:20 24:2,3 |
| 1:18 4:8 | **cook** 17:6,17 | 95:10 98:5 | 25:8,21,22 |
| **confirm** 96:10 | 21:20 23:19 | 100:9 | 26:24 29:25 |
| **confirmation** | 30:12 31:24 | **cookers** 21:3 | 30:1,5 32:6,7 |
| 16:4 | 38:4 39:15 | **cooking** 19:6 | 32:11,12,15 |
| **connection** | 41:19,23 42:14 | 21:9,18 22:19 | 34:19,20 35:1 |
| 16:9 | **cooker** 2:11,16 | 23:17 32:21 | 36:10,11 37:4 |
| **consider** 63:21 | 15:17,21 16:15 | 33:1,21 38:17 | 37:5,14,15,20 |
| **contact** 90:25 | 16:17,18,21 | 47:9 | 39:7,8 40:13 |
| **contacted** | 17:5,11,17,24 | **cooks** 89:8 | 40:14,20 41:6 |
| 104:7 | 18:6,10,15,21 | **cool** 25:11 | 41:7,25 42:1 |
| **contents** 54:11 | 18:25 19:15,25 | 59:24 | 42:17 43:7,8 |
| 54:14 55:9,12 | 20:9,12,13,16 | **cooled** 89:24 | 45:14 48:11,12 |
| 56:23 57:11,13 | 20:23 21:6,9 | **cooler** 25:7 | 48:16,20,21,23 |
| 59:18 61:20 | 21:16,17 22:1 | **copayments** | 48:24 49:4,22 |
| **continually** | 22:6,24 23:3 | 84:10,12 | 50:2 52:15,16 |
| 20:25 | 23:18 24:6,12 | **copd** 14:14 | 52:21 53:23 |
| **continuation** | 24:25 28:2,24 | **copeland** 1:6,7 | 57:8 59:2 |
| 82:21 | 29:1 34:19,22 | 1:16 4:9,17,18 | 63:14 65:17 |
| **continue** 8:2 | 35:7 38:4 | 5:7,8,8,11,16 | 66:19 69:15 |
| 36:24 | 43:10 44:20 | 10:4,22 12:13 | 70:16,22 72:19 |
| **continuous** | 45:8 46:9,22 | 12:14,20,24 | 73:5 81:21 |
| 34:8 | 47:6,12,17,21 | 13:5 14:4 | 85:17 87:5,6,9 |
| **contract** 104:1 | 49:8,11,12,19 | 22:20,21,24 | 89:19,20 90:11 |
| 105:15 | 49:25 50:1,20 | 48:6,19 57:14 | 90:12 91:8,9 |
| **contracts** | 50:24 52:5,23 | 57:17 59:5 | 91:16,19,20,23 |
| 103:12 | 54:19 61:5,21 | 64:21 68:17 | 91:24 92:3,4 |
| **convenient** | 62:7,20,23 | 93:18 94:8,13 | 104:16 105:9 |
| 21:8 | 66:17,22 67:5 | 94:18,20,23 | **council** 3:25 |
| **conversation** | 74:18 75:2,7 | **copy** 2:10 88:5 | **counsel** 3:2 |
| 8:14 47:15 | 75:18 85:19 | **cord** 31:8 | 4:24 27:14 |
| 66:10 70:2 | 86:19,24 87:2 | **correct** 12:20 | 50:19 85:25 |
| | 88:6,8 89:23 | 12:21 14:7 | |

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

[countdown - disclosures]

Page 6

**countdown**
  41:16
**counted**  34:5
**counter**  32:5
  43:11 44:23
  52:1 55:23
  61:6,7
**countertop**
  45:16
**couple**  7:5 56:6
  83:4 100:2
**course**  24:21
  98:9
**court**  1:1,23
  3:24 4:3,22 5:9
  5:25 6:18 7:23
  8:10 101:14
  103:6,14
  104:18 105:22
**courtesy**  7:13
**covered**  70:24
  73:11 83:23
  84:2,13,15,25
**crr**  1:25 105:23
**current**  86:3,7
**customer**  13:25
**cut**  79:24
**cv**  1:5
**cycle**  41:12,19
  42:14

**d**

**d**  2:2
**damage**  56:15
  56:20

**date**  4:6,14
  10:10 15:7,24
  76:11 86:8,12
  93:23
**dates**  101:20
**david**  3:11 5:1
  5:16 9:16
  65:18
**day**  7:24 15:13
  30:17 33:21
  37:22 38:8,23
  39:1,4,7,17,21
  41:19 44:18
  46:18 58:16
  62:18,19 63:19
  64:2,23 66:5
  66:15,16 69:16
  70:6 71:10,15
  72:15 79:10,12
  91:17
**days**  37:16 63:1
  72:22 74:25
  79:21
**dead**  80:1
**death**  13:2 14:5
  81:25
**debridement**
  70:10 71:18
**december**
  12:25
**decided**  68:16
**deductibles**
  84:21
**deep**  97:14

**defendant**  1:12
  3:10 5:4 93:16
**defendant's**  2:6
  43:13 44:8
  45:20,24 87:20
  88:4 92:17
  93:14 100:19
**define**  64:11
**definitely**  51:18
**delivered**  86:6
  87:2
**demonstrate**
  29:15 51:6
**demonstrated**
  32:1 50:11
  51:14 97:25
**demonstrating**
  50:14 96:23
**denise**  11:17
  13:8
**dependent**  58:9
**depending**  25:2
**deposition**  1:15
  4:16 5:21,22
  93:5 101:18
  102:3 105:4
**depressurized**
  19:8,10,13
**describe**  65:1
  70:4 80:16
  81:9 93:22
  100:24
**describes**  94:10
**detail**  93:22

**detailed**  39:24
**details**  100:16
**detergent**
  48:15,16
**determined**
  104:3
**developed**
  78:21
**device**  92:6
**diagram**  35:24
**difference**
  98:15
**different**  24:5
  96:17 97:3
**difficult**  90:1
**difficulty**  40:21
  41:3
**dinner**  21:14
  94:9
**direct**  104:1
  105:15
**dirty**  91:22
**disability**  14:13
**disabled**  14:8
  14:10
**disassemble**
  27:11 75:14
  86:18,22
**discharged**
  72:24 73:3
**disclosure**  3:22
  103:7
**disclosures**
  103:1,3 104:5

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

**[discoloration - estimate]**

Page 7

discoloration
81:7,10,14
disconnected
58:23
discount
104:13
discounts
104:11
discovery
24:18 100:7
discuss  63:15
63:18
discussed  63:6
63:9,11
disengaged
98:12
dish  25:15
dishes  47:22
disqualificati...
103:9
disqualify
103:22 105:12
dissipated
90:23
distinction
77:12
district  1:1,2
disturbed  63:8
division  1:3
divorce  11:9,10
12:3,4,6 35:5
doctor  64:1
67:20,22 78:4
78:15,18 84:19

doctors  85:9,11
85:15
document  88:2
92:22 93:11
doing  8:2,2,25
37:13 38:8,15
42:2 47:9,19
49:16,18 50:3
51:20,22 64:18
64:23 67:7
73:9
dollars  84:20
donor  70:20
dosterman
3:16
doubt  98:2
dr  68:1 79:6
85:10
drainer  25:15
drawer  45:11
45:13 49:3
drew  79:7
drink  38:25
39:3
drive  3:13 69:3
71:7
driving  71:8
dropped  95:20
drops  96:3,17
drove  68:10
69:4
dry  25:15 26:3
dual  48:10
due  35:4

duly  4:4 5:12
dying  78:6

**e**

e  2:2 3:1,1
11:20,20
earlier  38:8
early  16:23
17:22,25 19:15
64:7,12
ease  18:22
easier  7:21
21:11
easily  48:19
easy  37:13,17
edge  45:19
edward  1:6
4:17 5:8 10:22
11:1,2 12:13
13:5 14:4,21
15:3 22:19
23:11 34:21
35:6 38:15,20
39:3,6,10,14
40:7 46:24
47:12,16 51:7
53:2,5,24
60:25 61:14
62:13,19 63:16
63:25 64:15
66:6 67:11
73:18 94:8,13
94:20
edward's  81:25
82:2

effect  6:13
effort  59:10,14
eight  64:13
either  24:12
49:21 61:13
62:15 71:4
78:21
elbow  82:22
electric  16:18
20:11,12,15,23
21:6,15 22:6
24:5 35:7
electrical  88:15
eleven  57:18
eliminates  8:9
elizabeth  11:17
13:8
emergency
67:21 68:14
employed
13:22 14:4
ended  11:8
78:1
endurance
101:7
engaged  98:11
engages  33:17
entire  7:14
entitled  93:14
er  64:17
escaped  94:19
esquire  3:5,11
estimate  8:24
24:19 25:3
33:25 34:3

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

[estimate - forth]

Page 8

42:24
**et**  4:18,19 55:3
**ethics**  103:25
  105:14
**evening**  64:7,12
  71:4 94:9
**event**  78:21
**evidence**  105:9
**exact**  6:7 7:21
  7:22 18:9 64:9
  70:2 76:11,22
  86:8
**exactly**  8:8 16:1
  38:5 49:17
  56:4 62:25
  64:10 76:7
  78:11 86:11
**examination**
  2:3 4:11 5:14
**examine**  62:6
**examined**  5:12
**example**  56:19
**except**  103:12
**exemplar**  27:1
  27:15
**exhibit**  2:8,9,10
  2:13,15 43:13
  43:17 44:8
  45:20,25 87:20
  87:23 88:5
  92:17,20 93:14
  100:19
**exhibits**  2:6
  104:19,20,23

**expectations**
  24:7,15
**experience**
  20:19 21:3
  24:8 52:17
  91:7
**expiration**
  105:24,25
**explosion**  54:3
**extra**  52:8

**f**

**f**  11:20 13:13
**facing**  29:22
  47:24,25 48:22
  49:25 50:25
**fact**  91:25
**fall**  25:5
**family**  20:19
**far**  10:14 21:11
  54:7 55:25
  68:5,22 87:1
**father**  17:10,13
**feature**  21:16
  22:2
**federal**  4:7
**feel**  8:22 9:3
  32:14 36:16
  41:5 52:20
**feet**  55:10 56:2
  56:2,6,14
**fifteen**  33:14
  41:21
**fifty**  10:9 24:20
**file**  63:12

**fill**  30:20,23
  31:2,5,6 40:12
  40:15,19 89:15
**filled**  40:10
**financial**  103:9
**find**  16:6 29:6
**finding**  16:3
**fine**  8:15,16 9:1
  9:21 28:19
**fingers**  30:4
  36:16 71:25
  72:4,7,12
**finish**  7:14
**finished**  42:22
**firm**  5:2 104:5
**first**  5:12 6:5
  7:5 9:18 20:12
  23:8 35:13
  49:2 63:21
  64:14 67:19
  70:6 76:6,9
  85:11 87:4
  89:5 92:21
**five**  21:14
  34:15 35:11
  42:3 43:3,6
  45:18 46:21
  56:2 57:18
  60:14 76:24
  79:24 99:17
**flavorful**  21:5
**flesh**  78:6
**flew**  54:6
**float**  96:6,11
  97:3,11 99:5

99:10
**floating**  95:19
  95:24
**floor**  55:23,24
  67:2
**florida**  10:13
  10:18 12:7,8
  12:18
**fly**  54:4
**follow**  39:23
  83:17
**followed**  88:16
  89:18
**following**  4:11
  69:12 71:5
  88:17 103:2
**follows**  5:13
**food**  61:19
  75:11
**foot**  56:1
**force**  6:13
  52:12 90:3,15
**forearm**  82:15
  82:16,17,20,20
  82:25
**foregoing**
  105:4
**form**  6:23
**format**  5:20
**forms**  103:7
**fort**  13:11,12
  13:15
**forth**  76:17,20
  93:23

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

**[forty - happen]**

Page 9

**forty** 21:14 24:19 34:15 35:11 42:3 43:2,3,3,6,6 46:20,21 60:14
**forward** 100:22
**four** 40:4 72:7 72:10 76:24 77:3 83:16,18 95:16
**fourteen** 13:17
**fourth** 90:14
**frame** 17:20
**free** 9:3 27:1,2
**freely** 50:10
**freestanding** 44:13
**frequently** 16:24
**frese** 11:19,22 12:6
**friends** 20:18
**front** 6:8,14 27:16 28:10,25 45:9,16 49:1 49:24 50:21 51:4 55:25
**full** 7:7 10:2
**fully** 40:24,24 41:15 80:10 90:21
**function** 22:13
**furniture** 14:1

**g**

**garage** 76:1,3
**general** 37:3 91:13
**generally** 5:20 18:24 21:21 29:1 44:13 80:15 88:7
**georgia** 1:2 3:7 3:25 4:5 13:11 13:16 68:2 103:4,15 105:24
**gestured** 55:16
**gesturing** 82:18
**getting** 19:22 78:1
**gift** 18:13,15
**give** 6:10 7:7,10 7:12,13 9:11 10:2 13:18 67:4 99:13
**given** 18:12 100:6 105:10
**giving** 70:6
**glasses** 58:2,4,5
**gloves** 71:21
**go** 6:4 10:14 18:11 21:19 31:25 34:13 43:24 47:5 48:7 54:7,8 62:5 64:25 67:18,21 68:3 69:2,10,13

76:19 77:1 79:10,15 80:7 80:8 85:24 99:5
**goes** 7:24 29:18 33:6 94:10 96:3
**going** 5:19 6:19 6:22 7:7,8 8:1 8:17 9:17 16:2 26:7,8 28:12 43:18,25 44:11 46:15 49:5 63:6 66:11 70:8 75:23,24 76:16 79:3 80:14 93:19 95:4 99:2 101:8
**goldberg** 3:12
**goldbergsega...** 3:16
**goldman** 5:3
**good** 9:8,24 25:3 27:10 42:9 64:24 77:12
**grabbed** 50:7
**grade** 10:15
**graduate** 10:16
**graft** 70:15
**grafts** 71:18
**gripping** 52:7
**ground** 6:4 7:5

**growing** 17:9 18:7,18
**grown** 34:24
**guess** 8:21
**guessing** 68:24
**guesstimate** 45:18
**guesswork** 8:10

**h**

**h** 11:5
**habit** 34:17
**half** 40:4 69:1
**hand** 30:3 32:8 37:9,13 49:22 50:12,15 51:12 51:15,16,20,22 51:24 52:4,19 53:24 54:4,5,6 72:2,8 82:22
**handed** 50:18
**handedly** 50:7
**handle** 9:20 29:11,12,22 51:13 52:4,8 53:25 61:12 90:24
**hands** 49:8,16 50:4 52:24 53:3 54:16,25 71:22,23
**handy** 26:25
**hanging** 65:11 67:13
**happen** 33:17 34:4

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[happened - inner]**                                    Page 10

**happened**
39:11 54:3,3
64:6 66:7,8
78:7
**happening**
68:11 69:5
**happier** 7:23
**hard** 30:8
96:12
**hazardous** 90:4
**head** 8:5,5
54:15 67:8
73:16 85:23
**heal** 82:3
**healed** 77:25
80:10 81:2
**healthcare** 64:2
85:2,3
**hear** 12:22
36:12 41:5
42:13 53:9,12
**heard** 36:23
42:16,18
**heart** 83:10,13
**heat** 23:25 91:1
**heating** 21:19
**height** 56:11
**help** 58:14 59:1
59:4,7
**helping** 75:1
**helps** 27:3
**hey** 59:7
**high** 10:17
31:14 54:10

**history** 10:25
**hit** 31:23 54:25
56:16
**hits** 32:15
**holding** 49:10
49:11,21 51:23
**hole** 96:14 97:6
97:10,14
**holiday** 16:10
**home** 71:7
73:12 74:16,17
94:8
**honest** 9:12
**honestly** 54:9
67:1 68:25
69:24 76:8
**hoped** 80:8
**horne** 3:6
**hospital** 68:3,4
68:5,9,13,23
69:6 71:12
72:14,18,21
73:3 74:12
79:11,15,16
83:16 85:12
**hot** 98:3
**hotel** 71:9
72:23
**hour** 68:25
69:1
**hours** 21:21
69:1
**house** 38:11
39:9,13,21
55:7 60:7 76:2

100:12,14
**huh** 8:6,6 29:13
31:11 32:3
33:8 44:10
46:19 48:9
92:7,25 99:4
**hundred** 84:20
**hurting** 64:21
**husband** 42:5
43:6 60:22
69:14 72:17
85:16 97:9,24
**hypoxia** 13:3

**i**

**idea** 100:18
**identification**
43:15 45:22
87:22 92:19
100:21
**identifying**
93:25
**immediately**
45:12 59:17
**impacts** 105:20
**impartial**
105:21
**impartiality**
103:24 105:13
**importance**
31:2
**important** 7:4
88:14
**improper** 89:9
**inc.'s** 93:16

**inch** 40:17,18
79:24
**inches** 45:18
**incident** 60:11
**including** 88:17
91:14
**incorporated**
4:19 5:5
**indicate** 8:24
**indicated** 42:14
**indicates** 35:25
90:2
**indicating** 30:7
31:23 35:21
37:9 50:8
54:16 81:16
95:25 96:3
97:23 98:11
**infection** 77:18
79:25
**infomercial**
20:25
**informal** 6:11
**ingredients**
39:18 40:11
**injuries** 14:25
15:4 65:2
73:18 76:21
77:2,8,22 82:2
83:20 84:17
85:9
**injury** 78:19
84:14 89:9
**inner** 25:12
89:16

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[inside - letting]**

Page 11

inside  23:22
  26:4,4,16,20
  27:8 29:18
  61:25 62:10
  69:9 82:5,14
  82:20 88:11
  90:21 91:21
  94:16,25 95:25
  96:13
inspect  86:19
instruction
  23:9,12 89:15
  89:19 95:18
instructions
  37:3 88:18,22
  89:11 90:5
  95:14
insurance
  83:24 84:3,25
  85:1
intention  93:2
interest  103:10
  103:20 105:11
interior  25:17
internal  89:25
interpret  8:11
  8:12
interpreted
  53:20
interrogatories
  2:14 92:23
  93:17
interrogatory
  93:20

interrupt  7:9
  65:19
involved  29:5
issue  15:16
issues  24:11
italian  30:16,17

**j**

jars  45:4,10
jersey  3:15
jigger  19:3,11
jiggled  94:14
john  11:19,22
  12:6
judge  6:9,14
judicial  3:25
july  15:11 73:7
  73:19 94:9
jump  94:12
june  1:17 4:14
  102:4
junior  11:19,22
jury  6:9,15 7:1

**k**

k  3:5
keep  21:20 31:6
  40:12 63:4
  90:18
keeping  31:2
kid  17:9
kin  5:8
kind  5:25 8:13
  15:1,5 17:23
  18:5 32:14
  33:5 36:16

44:12 47:24,24
  47:25 60:10
  62:6 73:13
  77:25 78:12
  84:9 96:12
kitchen  42:20
  44:15,18 46:2
  46:25 47:7
  56:12 58:14
  59:1,4 75:22
  85:20 90:19
knew  23:17,21
  47:2 52:11,13
  52:14,17 70:8
  90:9
knob  26:18,22
know  6:5 7:21
  8:8 9:2,3,4
  15:24 16:8
  18:3 19:9
  30:12 34:6,21
  54:10,23 57:14
  62:13 77:23
  82:18,21 87:1
  98:14,25 99:18
  100:10,15
knowledge  9:2
  13:1 14:21,23
  15:3 21:22
  71:2 85:14
known  5:21

**l**

l  67:25
label  44:8
  95:11,18

labeled  88:4,12
landed  61:15
  61:17
large  67:13
larger  45:4
late  38:6
laundry  85:21
law  103:4
lawrence  11:2
lawsuit  15:9,17
  63:13
lawsuits  14:19
  14:22
lawyer  86:3,3,7
lawyer's  86:1
laying  61:6
leading  94:17
  94:23
leave  43:21
  66:23 75:21
led  32:21 33:3
  33:18 41:9
  50:25
left  36:5 37:1
  39:20 46:11,12
  48:5,14,16
  51:20,22,24
  52:4 75:19
  80:2,4 81:19
  81:23
legal  4:21 5:25
  103:17 104:6
letters  90:15
letting  7:13

Sheryl Copeland                                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[level - marked]**                                                  Page 12

| | | | |
|---|---|---|---|
| **level**  7:8 | **literally**  18:9 | 62:22 72:20 | 103:3 104:19 |
| **leverage**  52:9 | 52:19 | 74:23 76:4 | 105:19 |
| **licensed**  4:4 | **little**  25:1 26:18 | 79:19 | **maiden**  10:3,6 |
| **lid**  19:3 23:23 | 26:22 27:25 | **longer**  76:15 | 10:7 |
| 24:2 25:13,16 | 28:14,18 33:6 | 94:23 98:7 | **maintaining** |
| 25:17,20 26:2 | 35:24 53:19 | **look**  6:24 27:2 | 103:23 105:12 |
| 26:4,14,20 | 57:5,5 65:13 | 62:16 65:8 | **make**  7:23 8:23 |
| 27:6 29:16 | 76:14 78:13 | 67:20 68:16 | 22:8,15 23:24 |
| 30:11 31:19,20 | 80:17,23 81:17 | 78:22 79:7 | 25:14 26:6,21 |
| 31:21,22 34:16 | 81:18 | 88:7 97:9 | 27:9 29:6 |
| 37:10,18 40:22 | **live**  6:8,14 | 99:17 | 35:17 40:7 |
| 40:24 47:4 | 13:10 68:6 | **looked**  29:1 | 50:6 61:24 |
| 49:13 50:9 | **lived**  13:15 | 30:3 44:18 | 62:9 63:11 |
| 52:12,25 53:3 | **living**  12:5,8 | 62:1 74:5 | 89:10 90:22 |
| 54:4,11 56:16 | 42:5 58:19 | 77:25 79:1 | 95:6 96:10 |
| 59:8,15 61:25 | **ln**  2:4,7 | 99:9,10 | 103:18 |
| 62:10,11,16 | **located**  68:1 | **looking**  73:13 | **makes**  8:7 |
| 90:25 91:14,21 | 94:22 98:6 | 76:23 | 32:17 |
| 92:1,3,5 95:9,9 | **location**  93:24 | **looks**  28:9 29:8 | **making**  39:24 |
| 95:11,20 99:2 | 98:22 | 32:9 37:12 | 43:1 81:24 |
| 100:25,25 | **lock**  19:3 31:23 | 45:3 48:10 | 103:22 |
| **lighter**  78:1 | 37:18 | 90:13 | **manager**  13:25 |
| **liked**  21:10 | **locked**  23:24 | **lot**  7:20 8:7 | **manner**  22:1 |
| **line**  30:21,22 | 29:19,21,24 | 47:9 62:4 | **manual**  2:10 |
| 30:23 31:3,6 | 32:13 40:25 | **low**  31:14 | 23:9,12 36:20 |
| 40:12,16,19 | 41:6 | | 87:9,11,13 |
| 79:9,13 89:16 | **locking**  96:7 | **m** | 88:7 |
| **liner**  25:18,20 | 97:21 | | **marital**  10:24 |
| 26:3,15 27:6 | **lomboy**  67:23 | **m**  67:25 | **mark**  57:3 |
| 62:11,16 91:14 | 68:1 79:6 | **ma'am**  10:2 | 100:23 |
| 91:21 92:2 | 85:10 | 28:24 100:1 | **marked**  43:14 |
| 100:25 | **long**  13:15 14:2 | 101:5 | 43:17 45:21,24 |
| **lip**  57:15 65:3,3 | 14:10 33:12,22 | **macon**  1:3 3:7 | 87:21,23 92:18 |
| **lips**  65:4 | 41:19 42:25 | **made**  3:22 | 92:20 93:13 |
| | 57:22,24 60:12 | 15:25 40:11 | 100:20 |
| | | 47:11 59:10,14 | |
| | | 77:4 83:11 | |

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.
June 6, 2023

**[marks - notary]**

Page 13

**marks** 4:15
**marriage** 11:6
  11:12,18 12:1
  12:12 13:5
  22:19
**married** 10:19
  10:21 11:1,22
  12:9,15 35:2
**marty** 3:5 5:6
**matter** 4:17
  103:21 104:9
  105:11
**max** 30:23 31:2
  31:6 40:12,15
  40:18 89:16
**mcgalliard**
  1:24 4:1,23
  105:23
**meal** 33:21
  38:17,19,21
  39:15,18 94:11
**mean** 16:6 25:7
  30:6 58:12
  63:10 69:24
  70:12 97:2,13
  97:21 98:13
**means** 6:9
  105:7
**meant** 8:13
**meat** 18:23
  19:1 21:5
  31:10 33:1
**meaty** 82:15
**medical** 64:1
  64:15 67:15

77:17 83:23
  84:2
**medicare** 84:15
  84:23
**medication**
  9:10 71:21
**medium** 31:14
  31:15,16,24
  32:25
**meet** 24:14
**mess** 60:18
  61:1 73:10
**met** 5:17
**metal** 94:21
  98:6
**michael** 3:19
**middle** 1:2 7:16
  10:5 35:16
  73:1
**mike** 4:20
**mind** 27:22
  43:17 81:15
**minute** 65:22
  99:17
**minutes** 21:13
  21:14 33:15,24
  34:2,15 35:11
  41:21,22,24
  42:3 43:3,7
  46:21 60:15
  68:7
**mischaracteri...**
  53:7
**missed** 72:11

**misspellings**
  101:20
**mobley** 14:1
**mode** 21:19
  41:16
**model** 2:12
  29:7 88:6
**moderate** 81:10
**mom** 18:6,18
**moment** 51:11
  95:5 99:14
**momentarily**
  58:13
**moments** 5:17
**monday** 64:16
  65:10 67:10
**money** 84:13
  84:16
**monitor** 4:15
**month** 17:1
  24:25 25:2,4
**morning** 64:16
  65:10 67:10
  69:12 71:5
**mother** 17:10
  17:13,15,16
**move** 28:14,18
  35:15 43:20,22
  43:23 54:19
  96:19 97:16
  98:12,13 99:2
**moved** 85:18
**msenn** 3:8
**mummy** 73:13
  74:5

**n**

**n** 2:2 3:1
**name** 4:20,24
  5:1,6,16 10:2,3
  10:5,6,7 11:3
  11:16
**names** 11:16
**nature** 14:12
**near** 58:18
**necrosis** 78:5
  78:22
**need** 68:16
  90:16 95:10
  101:24
**needed** 23:23
  23:24 59:4
  68:17
**negative** 67:9
**neither** 8:11
**netflix** 42:8
**never** 22:3
  36:18 89:15
  90:15
**new** 3:15 18:14
**night** 38:18
  63:15 64:19
**nine** 10:9 56:13
**nodding** 8:5,13
**normal** 35:12
  39:23 40:6
  97:8
**normally** 32:4
  58:2
**notary** 105:25

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[notes - part]**                                              Page 14

| | | | |
|---|---|---|---|
| **notes** 76:23 99:18 | 22:8 26:21 | **onion** 30:15 | 43:22 44:2 |

notes 76:23
99:18
notice 97:17
noticing 104:8
number 1:5
4:16 76:22
93:20 95:17
numbered 94:5
nurse 69:18

**o**

o 67:25,25
oath 6:1,6,7
objection 94:2
94:7
objections 9:17
9:19,23 93:15
obligation
103:24 105:13
observation
65:1 96:10
observations
61:24 62:10
observe 41:11
41:14
occasionally
16:25
occurred 94:1
ocga 103:8,11
104:10
october 78:2
office 6:12 86:1
officer 105:21
oh 46:24 96:4
okay 6:18 7:2
8:21 16:8 20:8

22:8 26:21
27:5,11,18,23
28:8 29:10,14
29:20 30:9,14
31:1,5 32:1,20
33:12,16,25
34:4,12 35:6
35:19 36:4,21
37:6,21,24
38:14 42:13
44:24 45:3,11
45:15,23 46:14
46:16 47:5
48:2,7 49:20
50:19 51:3,6,9
51:19 54:22
56:8 65:19
66:5 67:15
76:9 84:22
86:16 88:11
91:10 93:9
95:4,21 96:4,9
96:20 97:7,15
97:19,24 98:4
98:9 99:12,19
99:20 100:3,15
100:22 101:25
old 10:8 19:19
19:21 20:6
34:17 90:10
once 17:1 24:25
27:6 34:9,10
35:10,10 41:24
47:2 85:25
95:19

onion 30:15
onions 19:2
oops 31:22
open 34:16
35:12,14 36:4
37:7,9,19 43:1
45:9 47:3,6,11
47:16,20 50:17
52:9,12,19,24
53:3 54:22
59:8,11,15
83:10,13 86:17
89:22 90:1,3
90:15,17,20,24
90:24
opened 24:2
53:5
opening 96:11
opens 35:23
operating
89:11
opportunity
7:11
oral 4:10
order 30:13
52:8
ordering 105:1
ordinary 8:14
77:16
oriented 50:24
osterman 2:5
3:11 5:1,2,15
5:17 9:21,25
27:14,21,24
28:8,13,19,22

43:22 44:2
50:19 65:21
99:12 101:5
outside 26:17
60:8 75:23
76:2 79:9,12
oven 44:13
own 16:20 20:8
35:3 61:15,18
81:11 84:3
owned 16:14
17:24 20:13
35:6
owning 24:21
oxygen 14:15
14:16 58:8,10
61:3

**p**

p 3:1,1
p.m. 102:4
page 88:12,12
88:21 94:5
paid 84:3
pain 62:4
pair 57:20
palm 72:1
82:21
pants 55:3,6,13
57:20,22,23
part 25:24
70:23 71:23
75:14 76:6
82:15 84:1
89:2 95:1 96:7
96:13

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[parties - pressure]**                                         Page 15

| | | | |
|---|---|---|---|
| **parties** 104:12 105:1,21 | **photographs** 57:10 73:17 | **plaintiffs** 94:7 | **possession** 86:2 |
| **parts** 19:22 70:25 | **photos** 43:16 73:21 74:15 | **plant** 60:3,6 | **possible** 63:12 |
| **party** 14:18,22 104:2,13 105:16 | **phrase** 7:18 | **plastic** 63:2 75:8 | **possibly** 16:5 |
| **pass** 12:24 | **physical** 56:15 98:22 | **please** 4:24 5:10 10:25 11:4 13:19 | **pot** 21:12 25:12 26:23 27:7 33:11 36:6 43:20,23 46:4 46:10 48:1 49:1 54:11,12 55:20 61:9 89:16 98:3 |
| **passed** 12:20 | **picked** 34:18 | **plug** 31:8 | **pounds** 40:5 |
| **password** 104:22,25 | **picture** 28:6 45:23 46:5 49:5 100:8,11 100:17,24 | **pocket** 84:4 | **pour** 30:19 |
| **past** 65:5 | | **point** 23:18 31:18 36:5 41:14 49:7 57:9 59:6,11 62:5,9,18 65:19 67:16 70:7 73:9 75:5 75:25 85:18 86:16 87:16 89:6,22 | **power** 2:10 15:23 20:11,22 23:3 90:16,17 |
| **patience** 101:7 | **pictures** 73:25 74:1,2,6,7,10 74:11,12 | | **ppc780** 2:12 88:6 |
| **pause** 7:16 | **piece** 25:17 | | **practice** 35:12 91:13 97:8 |
| **people** 82:19 93:25 | **pin** 94:22,22 95:7,23 96:2,3 96:5,15,16,19 96:22,24 97:11 97:21 98:1,6,7 98:8,11 99:3 | **pointing** 26:23 | **precautions** 88:16 |
| **pepper** 30:15 | | **points** 88:19 | **premark** 100:5 |
| **perceive** 59:3 | | **popcorn** 57:1 | **prepared** 94:11 |
| **perfect** 28:23 | | **portable** 58:17 | **preparing** 94:9 |
| **perfectly** 9:1 | **pinching** 96:24 | **position** 26:15 26:17 27:15 29:17,19,21 32:13,18 50:20 61:14 90:20 96:5,17 97:10 99:1,3 | **present** 93:25 |
| **permanent** 77:9,9 82:4 | **place** 26:4 37:18 78:25 79:24 81:17 104:9 | | **presently** 13:10 |
| **perry** 68:2,4,5 68:8,13,23 79:16 85:11 | | | **press** 90:17 |
| **perspective** 20:5 | **placed** 61:14 | **positioned** 46:5 48:3 51:4 58:18 | **pressure** 2:11 2:16 15:17,21 16:14,17,18,21 17:5,10,17,24 18:5,10,15,21 18:25 19:15,25 20:9,12,13,16 |
| **pg** 2:4,7 | **places** 83:4 | | |
| **phone** 69:19 73:23 | **placing** 52:3 | **positive** 52:2 | |
| **photo** 44:14,15 48:8 100:4 | **plaintiff** 1:8 3:4 93:17 94:13,20 | | |
| **photograph** 2:8 2:9,15 44:4,25 101:3 | **plaintiff's** 93:15,22 | | |

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

**[pressure - r]**

Page 16

| | | | |
|---|---|---|---|
| 20:23 21:3,6,9 | **pressurized** | 88:9 | **push** 31:12 |
| 21:16,17 22:6 | 41:15,25 90:3 | **products** 1:10 | **put** 9:19 19:3 |
| 22:24 23:3,18 | **pressurizing** | 4:18 5:4 93:16 | 21:12 26:2,3 |
| 23:19,22 24:6 | 41:20 | **professional** | 28:9 29:16 |
| 24:12,25 28:1 | **presto** 18:4,8 | 4:2 103:25 | 30:2,14,15,19 |
| 28:24 29:1 | 18:15 | 105:14 | 31:18,20,21,21 |
| 31:17 33:7,10 | **pretty** 66:14 | **prohibited** | 31:21,22,24 |
| 33:13,16 34:19 | 72:11 82:5 | 104:10 | 32:8 37:8,18 |
| 34:22 35:7 | 97:14 | **prohibitions** | 40:3 41:2 44:7 |
| 36:6 38:4 | **primary** 67:19 | 103:12 | 49:7 51:11 |
| 41:12 43:10 | **princeton** 3:15 | **pronounced** | 63:2 70:13 |
| 44:20 45:8 | **prior** 14:24 | 81:14 | 71:22 75:8,17 |
| 46:9,22 47:1,6 | 24:10 91:6 | **proper** 26:15 | 76:1 83:7 87:4 |
| 47:12,17,20 | **probably** 16:23 | **properly** 23:23 | 88:1 |
| 48:1 49:8,10 | 17:3 33:14 | 26:7 89:10 | **putting** 40:22 |
| 49:12,19,25 | 36:12 45:17 | **protected** | 60:4 75:15 |
| 50:1,20,24 | 55:6 56:13 | 104:22,25 | |
| 52:5,18,23 | 60:14 68:24 | **protruding** | **q** |
| 53:9 54:19 | 76:6 | 26:22 | **quarter** 54:23 |
| 61:5,9,21 62:6 | **problem** 88:24 | **provide** 93:3 | **quartered** |
| 62:20,22 66:17 | 101:9 | 104:7 | 30:15 |
| 66:22 67:5 | **problems** 24:11 | **provided** 4:6 | **question** 7:14 |
| 74:18 75:2,6 | **procedure** 4:7 | **provider** 64:2 | 7:16,19,21 |
| 75:18 85:19 | 70:17 71:3 | **providing** 93:6 | 66:11 93:21 |
| 86:19,24 87:2 | **proceeding** | **pull** 26:19 55:5 | 97:8 |
| 88:5,8 89:8,23 | 5:25 104:15,24 | 97:25 | **questions** 6:21 |
| 89:25 90:2,4 | 105:10,19 | **pulling** 96:25 | 9:7 92:24 93:7 |
| 90:10,16,17,20 | **proceedings** | **punch** 32:20 | 99:19 100:2 |
| 90:21 92:9 | 4:12 103:19 | **purchase** 15:25 | 101:6,11 |
| 94:14,15,16,18 | **process** 71:17 | 16:4 | 104:17 105:6 |
| 94:19,21,24,25 | 76:17 | **purchased** | **quite** 35:16 |
| 95:10 96:19,21 | **produced** | 15:22 16:9 | 59:24 98:10 |
| 97:4,5,18 98:5 | 100:5 104:15 | **purpose** 7:10 | |
| 98:21 99:6 | **product** 15:16 | **pursuant** 3:23 | **r** |
| 100:8 | 87:9,11,13 | | **r** 3:1 11:5,20 |

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

**[raised - resembled]**

Page 17

| | | | |
|---|---|---|---|
| **raised** 80:17 | 69:5,22 71:14 | **refresh** 27:3 | 88:21 89:12 |
| 81:5 83:2,5 | **receipt** 16:3 | **registered** 4:2 | 90:6 91:13 |
| **raising** 77:13 | **received** 18:14 | **regular** 55:5 | 93:6 95:1 |
| **ran** 59:19 | 88:8 | **regulations** | **remote** 1:18 4:8 |
| **range** 44:13 | **receives** 104:13 | 3:24 103:6 | **remotely** 3:2 |
| 46:1 49:3 | **receiving** 84:23 | **related** 78:19 | 5:3 |
| 64:12 | **recess** 66:2 | 80:6 81:25 | **remove** 25:23 |
| **rather** 8:4 26:8 | 99:23 | 96:5 | 30:10 49:12 |
| **reach** 76:9 | **recipe** 39:23 | **relating** 76:20 | 62:15 92:12 |
| **reached** 47:3 | **recognize** 32:2 | 77:18 85:9 | **removed** 23:25 |
| 50:5 51:9 | 100:11,14 | 104:23 | 25:21 80:20 |
| **read** 6:25 7:19 | **recollect** 86:15 | **relationship** | 92:1 95:20 |
| 23:9,11 36:20 | **recollection** | 103:20 105:11 | 101:1 |
| 51:1 58:3 87:8 | 27:4 34:1 | **relative** 46:9 | **report** 103:21 |
| 89:17 91:2 | 40:10 41:18 | **relatively** 37:12 | **reporter** 1:23 |
| 95:13,17 | 46:8 49:21 | 81:3 | 3:22 4:2,3,4,22 |
| 101:15,17,24 | 50:23 51:16 | **release** 47:1 | 5:10 6:18 7:24 |
| **reading** 88:21 | 66:12 72:6 | 53:6 59:11 | 8:10 101:14 |
| 89:12 90:6 | 73:4 | 90:21 92:9 | 103:1,9,14 |
| **ready** 33:4 | **record** 4:14,25 | 94:15 97:20 | 104:18,21 |
| **really** 51:11 | 8:7,17 9:19 | 96:22 | **reporter's** |
| 62:2 66:9 79:2 | 65:25 66:4 | **released** 24:1 | 105:2 |
| 96:14 97:12,13 | 99:21,25 | 37:7 51:8,9 | **reporting** 3:24 |
| 97:17 98:12,13 | 100:23 101:12 | 52:18 72:14,16 | 103:6 104:7 |
| **realtime** 4:3 | 103:18,23 | 89:25 94:17 | **repository** |
| **reason** 9:10 | 104:16 105:9 | 96:22 | 104:25 |
| 16:11 24:14 | **recording** 28:3 | **remaining** 91:1 | **represent** 4:25 |
| 39:21 101:23 | **recovery** 77:8 | **remember** 15:9 | 5:4,7 100:6 |
| **reasonable** | 77:22,23 | 15:13,20 17:23 | **representations** |
| 8:23 | **red** 65:8,9,13 | 23:2,6 33:23 | 103:2 |
| **recall** 38:7 | 77:24 79:2 | 40:2 42:6,10 | **representing** |
| 39:20 47:15 | **redness** 79:8,9 | 51:21,23 60:17 | 4:21 |
| 49:17 51:7 | **referring** 84:18 | 61:4 62:25 | **require** 14:15 |
| 52:3 53:2 64:5 | 95:7,22 | 69:25 76:7,11 | **resembled** |
| 66:10 68:11 | | 76:16,22 82:13 | 78:12 |
| | | 85:22 86:5,8 | |

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

**[reserve - senn]**                                                    Page 18

| | | | |
|---|---|---|---|
| **reserve** 9:17,22 | **road** 13:20 | **save** 87:11 | **section** 103:8 |
| **resistance** | **roast** 17:6 | **saw** 24:18 | **sections** 103:11 |
| 52:20 | 22:25 30:13,14 | 36:22 53:19 | **see** 8:15 27:17 |
| **respect** 77:21 | 39:25 40:2,6 | 61:4,11 74:21 | 28:9,12,16,17 |
| **responses** | 55:19,22 | 77:4 | 29:24 35:16,17 |
| 24:19 93:15 | **roasts** 22:8 | **saying** 8:6 | 36:9 41:5 44:3 |
| 100:7 | **room** 6:19 | 53:21 99:9 | 44:25 45:5 |
| **restroom** 65:20 | 28:17 42:5 | **says** 88:13 89:7 | 46:2,5 51:19 |
| **result** 89:9 | 58:19 67:21 | 89:22 90:15 | 53:9,15 57:2 |
| **review** 93:10 | 68:15 71:9 | 94:6 | 69:14 71:19 |
| **reynolds** 3:6 | 85:21 | **scalding** 89:9 | 85:8 86:22 |
| **reynoldsinjur...** | **rotate** 29:24 | **scar** 80:12 | 88:2 89:11 |
| 3:8 | 90:19 | 83:11,12,13 | 90:5 96:12,16 |
| **ride** 68:25 | **round** 92:6 | **scarred** 82:8 | 97:10,13 |
| **right** 7:17,17 | **rpr** 1:25 105:23 | **scarring** 77:10 | 101:23 |
| 8:3 9:6,9,15,25 | **rules** 3:23 4:7 | 82:4 | **seeing** 20:25 |
| 26:8,17 28:20 | 6:5 7:5 37:4 | **scars** 80:25 | 51:7 53:2 |
| 30:24 31:20 | 103:5 | 81:4,5 83:2 | 96:15 |
| 33:20 34:21 | **run** 36:16 | **school** 10:14,17 | **seek** 63:25 |
| 36:13,17,21 | | **screen** 32:22 | 67:15 |
| 37:23 43:9 | **s** | 33:4,18 41:9 | **seeked** 85:25 |
| 44:1,14,22,24 | **s** 1:8,12 3:1,4 | 43:18 46:15 | **seemed** 24:4 |
| 45:5,12 46:1 | 3:10,11 11:20 | 50:25 87:25 | 77:15 89:2 |
| 46:14,17 47:8 | **safe** 63:5 | 88:1 | **seen** 24:8 69:12 |
| 48:5 49:3 | **safeguards** | **scroll** 44:7,11 | 71:16 |
| 50:12,15,18 | 88:14 | 93:19 94:4 | **segalla** 3:12 5:3 |
| 51:4,15,16 | **safety** 20:4 | **searching** 7:17 | **select** 31:13 |
| 53:24 54:1,15 | 21:1 37:4 | **season** 23:6 | 32:25 |
| 55:16 61:8,10 | 88:15 94:22 | 25:6 | **senn** 3:5 5:6,6 |
| 70:9 73:18 | 95:7,23 98:6 | **seasoning** | 9:16,24 27:18 |
| 75:12,13,13 | **sake** 8:17 | 30:16,17,18 | 27:23 28:11,16 |
| 78:7 80:2 | **salt** 30:15 | **seasonings** 19:2 | 28:20 43:20,25 |
| 90:14 98:24 | **sat** 42:4,21 43:5 | **second** 89:21 | 50:22 65:18,23 |
| 99:12 101:17 | 61:22 | 89:21 | 101:10,16 |
| 101:22 | **saturday** 15:15 | | 102:2 |
| | 37:25 64:18 | | |

Sheryl Copeland                                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[sense - start]**                                                    Page 19

| | | | |
|---|---|---|---|
| **sense** 89:3 91:7 | **shoulder** 81:16 | **sit** 19:7 34:14 | **sorts** 17:4 22:5 |
| **sent** 27:1 93:1 | 81:17,20 | 42:21,25 60:10 | 22:23 |
| **sentence** 94:12 | **show** 6:24 | 66:18 | **sought** 64:15 |
| **separate** 27:6 | 42:22 43:16 | **site** 70:20 | **sound** 32:17 |
| 69:3 | 44:17 45:25 | **sitting** 32:2 | 53:13 |
| **serious** 65:16 | 80:15 87:24 | 43:10 61:2 | **sounds** 9:24 |
| **serve** 105:20 | 92:21 | 66:23 | **soup** 22:17 |
| **service** 13:25 | **shower** 59:23 | **six** 45:18 64:13 | 23:1 |
| **services** 104:7 | **showers** 59:19 | **size** 40:6 | **soups** 22:16 |
| **set** 21:13 25:15 | **shut** 21:23 | **skin** 55:9 67:12 | **source** 23:25 |
| 31:9 41:8 44:1 | **side** 26:8 48:5,5 | 70:13,15,19,19 | **speak** 69:16,20 |
| 44:21 69:11 | 48:14,14,16 | 70:20,24 71:18 | **specific** 15:24 |
| 84:17 | 52:1,4,8 54:15 | 83:8 90:25 | 16:10,11 66:10 |
| **setting** 6:11 | 61:10 72:1 | **sleeve** 54:23 | 84:7 104:11 |
| 93:23 | 82:25 94:21 | **slight** 81:10,12 | **specifically** |
| **severe** 14:14 | 96:24 97:21 | **slightly** 94:13 | 37:22 78:17 |
| 81:10 82:6 | 98:1,5 99:3 | **sloughing** | 80:19 82:12 |
| **shakes** 67:8 | **sign** 93:10 | 67:12 | 103:4 |
| **shaking** 8:5 | 101:15,24 | **slow** 22:1 | **spell** 11:3 67:24 |
| **shape** 29:10 | **signature** 102:6 | **small** 45:4 | **spider** 78:3,10 |
| **share** 43:18 | 105:23 | **smelled** 75:10 | 78:16 |
| 87:25 | **similar** 6:1 | 75:11 | **splash** 56:23 |
| **shared** 22:22 | 18:11 29:8 | **smith** 1:24 4:1 | **splatter** 57:7 |
| 47:8 | **sink** 46:2 47:1 | 105:23 | **splattered** |
| **sheryl** 1:7,16 | 47:7,19,24,25 | **snaps** 92:11 | 57:11 |
| 4:9,17 5:7,7,11 | 48:4,11 61:9 | **solely** 104:3 | **spoke** 69:23 |
| 10:4 93:17 | 61:23 62:24 | 105:17 | **spot** 78:24 |
| 94:8 | 66:18,24 74:18 | **solutions** 4:21 | **spots** 57:6 |
| **shirt** 54:20 | 74:23 75:4,19 | 103:17 104:6 | **standing** 32:5 |
| 57:21 | 75:21 76:5 | **sorry** 12:22 | 46:25 47:23 |
| **shoes** 55:3,7,13 | 87:4 | 13:12 39:14 | 48:2,13,18,25 |
| 57:25 | **sir** 5:18 14:20 | 65:18 89:24 | 49:24 |
| **shopping** 39:17 | 15:2 20:10,17 | **sort** 21:25 | **start** 9:17 |
| **short** 57:23 | 31:4 58:7 | 45:13 63:12 | 30:10 31:16 |
| | 82:24 | | 33:4,9,19 |

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

**[started - term]**

Page 20

| | | | |
|---|---|---|---|
| **started** 9:7 | **stovetop** 16:17 | **sunlight** 73:12 | 30:9,11,18 |
| 38:19,21 39:15 | 16:19,20 17:5 | **super** 77:24 | 33:13 46:15 |
| 51:12 60:4 | 17:24 18:21,25 | **supplemental** | 49:5 65:15,20 |
| 78:13 | 19:15 20:9 | 14:16 58:9 | 65:22 71:6,10 |
| **state** 4:4,24 | 21:17 23:18 | **sure** 13:20 16:5 | 73:25 74:2 |
| 103:15 | 24:24 34:18,22 | 16:7 23:7,24 | 75:1 86:23 |
| **states** 1:1 | 90:10 | 25:14 26:6,22 | 91:10 95:4,9 |
| **stay** 54:4 62:23 | **strike** 54:14 | 27:9 28:11 | 99:13,16 |
| 72:17,23 74:23 | 55:9,12 57:13 | 35:17,18 36:19 | **taken** 9:9 66:2 |
| 76:4 | **struck** 55:15 | 38:5 40:11 | 70:20 74:7 |
| **stayed** 59:23 | **stuck** 59:8 | 50:6,22 56:4,7 | 99:23 100:11 |
| 72:21 | **stuff** 47:10 67:2 | 64:10 65:23 | 100:13 105:4 |
| **steam** 19:12 | 71:20 | 66:9,25 74:3 | **talk** 7:6 37:21 |
| 24:1 36:1,1,5,7 | **style** 18:17 | 77:10 78:11 | 82:19 |
| 36:9,22,23,23 | 29:11 | 83:9 86:11 | **talked** 101:16 |
| 36:25 37:1,7 | **subcontract** | 90:22 95:6 | **talking** 22:7 |
| 47:3 50:6 51:8 | 104:4 | **surgery** 83:10 | 56:1 80:19 |
| 51:10 53:6,13 | **subcontractor** | 83:13 | **tall** 48:15 57:17 |
| 53:16 59:11 | 103:16 105:18 | **surgical** 70:17 | **tampa** 10:13 |
| 90:22 91:1 | **subject** 15:8 | **surgically** | 12:7,18 |
| 94:15,17,24 | 94:6 | 80:20 | **teach** 17:16 |
| **stenographic...** | **submitted** | **surroundings** | **tell** 26:11,14 |
| 105:5 | 104:18,20 | 93:24 | 29:7 53:8 56:5 |
| **steps** 30:10,11 | **substantially** | **survant** 3:6 | 56:6,25 68:11 |
| **stew** 17:6 22:9 | 29:8 | **swear** 5:10 | 69:5,22 71:14 |
| 22:17,25 | **substantively** | **sworn** 5:12 | 76:8 78:16,18 |
| **sticking** 26:18 | 101:21 | **symptoms** | 79:2 97:1 |
| 29:23 94:23 | **suffer** 55:8 | 78:23 | 98:16 |
| 98:7 | **suffered** 14:25 | **system** 58:15 | **telling** 70:21 |
| **stomach** 65:5,6 | 15:4 78:10 | 96:8 | **temple** 55:16 |
| **stop** 19:14 | 81:1 85:10 | | **ten** 56:2 65:22 |
| **stopped** 41:4 | **suite** 3:14 | **t** | **tenderize** 18:23 |
| **stove** 19:8 | **summer** 86:14 | **table** 28:2 | **tenderized** 21:5 |
| 44:22,24 45:5 | **sunday** 66:17 | 100:9 101:1,4 | **term** 25:17 |
| 45:10,12 | 67:3 | **take** 6:20 10:24 | |
| | | 25:12,13 27:19 | |

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

**[terms - turn]**

Page 21

| | | | |
|---|---|---|---|
| **terms** 55:3 77:16 104:3 105:17 | **thirty** 21:13 33:24 34:1,5 34:15 35:11 41:22,24 60:14 | **today** 5:20 6:10 9:13 54:21 58:4 87:14 | **transcription** 105:8 |
| **tes** 1:5 | **thought** 67:4 78:3 | **told** 32:24 37:25 58:8 67:10 69:10 78:5 79:8 87:7 91:11 | **transcripts** 104:14,23 |

**terms** 55:3
77:16 104:3
105:17
**tes** 1:5
**testified** 5:13
5:22,24
**testify** 6:8,14
**testimony** 1:15
5:20 6:10 7:1
9:12 46:18
**thank** 9:22,25
12:23 28:23
46:14 77:13
101:6
**thereto** 105:6
**thing** 6:5 19:4
33:6 35:13
60:16 92:8
**things** 8:6,22
17:4 22:5,23
84:10 101:19
101:20
**think** 21:4
24:18 38:1
53:6 56:5
57:18 69:1
72:22 77:3
79:20 83:18
91:11 97:12,17
99:1,8,14,14
**thinking** 66:24
66:25
**third** 89:6
**thirteen** 14:3

**thirty** 21:13
33:24 34:1,5
34:15 35:11
41:22,24 60:14
**thought** 67:4
78:3
**thousand** 84:20
**three** 25:4
54:23 72:9,22
79:20 95:18
**throw** 75:24
**thumb** 72:5
**thursday** 73:2
**tilt** 19:11 29:18
**time** 4:14 7:6
12:5,9 16:12
17:20 25:24
31:24 38:3,5
41:23 43:9
46:21 58:5,10
62:2 64:5,9,14
66:4 73:19
74:8 78:3 85:4
85:18 91:15,15
91:25 92:15
93:24 99:25
104:13
**timer** 33:10,19
33:22
**times** 24:20
25:4 52:22
76:19,24,25
77:3 83:17,18
**tissue** 80:1,24

**today** 5:20 6:10
9:13 54:21
58:4 87:14
**told** 32:24
37:25 58:8
67:10 69:10
78:5 79:8 87:7
91:11
**tongs** 90:19
**took** 6:2 58:11
58:12,13,22,25
63:1 67:20
68:15 69:19
73:21 74:1,6
74:10,11,12,14
79:7,25,25
80:23 100:16
**tool** 90:19
**top** 19:4,12
51:12 52:9
61:5 72:1,4
82:19 85:23
88:13 92:5
94:14 101:3
**torso** 57:16
**touch** 48:19
**touching** 49:18
81:19
**tough** 64:22
**transcribe** 6:22
**transcribed** 7:4
105:7
**transcript** 7:20
101:18 104:14
105:8

**transcription**
105:8
**transcripts**
104:14,23
**transported**
68:17,18,19
**trash** 75:9
**travel** 32:15
**treat** 85:15
**treated** 72:14
72:16 83:20
**treatment** 70:5
76:20 77:2,7
77:17 79:5
80:7,7 83:17
**trial** 7:1
**tried** 29:6
60:10
**tristar** 1:10
4:18 5:4 20:11
87:17 93:16
**trousers** 55:6
**true** 21:21
104:15 105:9
**try** 8:11,12
52:14 59:11,14
60:12 64:21
**trying** 7:12 8:8
59:23 62:3
98:17 99:7
**tuesday** 71:11
**turn** 29:18
32:10,13 50:9
51:12 71:6
90:23 92:9

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

[turned - vs]

Page 22

| | | | |
|---|---|---|---|
| **turned** 32:9,10 41:4 47:25 48:22 50:5,9 | **under** 23:19 65:4 89:8 95:14 97:4,4 | 43:4 46:22 | **usually** 33:13 |
| **turning** 30:4 37:14 41:4 | **underneath** 62:16 82:6 | **unplugging** 42:25 | **v** |
| **tv** 38:16,20 42:5 43:5 58:20 | **underside** 92:2 100:25 | **untouched** 74:20 | **v** 11:5 |
| **twelfth** 10:15 | **understand** 6:16 8:16,19 8:20 12:19 14:13 15:16 21:15 24:17 25:16 98:18 99:7 | **unusual** 24:5 | **valley** 13:11,13 13:16 |
| **twenty** 33:14 68:7 | | **uploaded** 104:24 | **valve** 35:14,20 47:2 50:5,17 53:5,10 59:12 90:20 94:14 95:19,24 96:2 96:6,11,18 97:3,18 99:5 99:10 |
| **twice** 34:9,10 | | **upper** 54:17 57:15 | |
| **twisted** 52:9 | | **upside** 26:9 61:10 | |
| **two** 25:3 42:16 45:4 52:24 53:3 63:19 68:25 69:1 79:20 84:20 93:20 | **understanding** 14:7 79:22 88:25 93:4 | **use** 6:25 9:18 16:24 17:4,10 18:24 19:19 21:25 22:5,12 22:15,24 24:23 25:1,17 28:5 52:24 53:3 73:23 89:9,11 90:5 91:18 92:15 | |
| | **understood** 7:24,25 9:4,5 23:15 28:8 31:1 37:3 70:4 75:3 89:18 90:9 91:4 95:6 | | **verbalize** 8:3 8:18 |
| | | | **verbatim** 103:23 |
| **type** 23:1 30:16 58:15 78:4 | | | **veritext** 3:19 4:21 103:16 104:6 |
| **typical** 38:13 | | | **version** 93:22 |
| **typically** 25:23 29:15 30:12 32:25 96:9 97:9 | **undoing** 48:1 | **used** 6:7 17:24 20:1,15 24:17 24:24 25:25 30:17 34:22 35:7 50:15 51:16 52:23 53:6 91:15 92:1 | **versus** 4:18 |
| | **unexpected** 77:15 | | **video** 1:18 4:8 4:15,16 |
| | **unit** 23:22 25:9 89:10,15,23,23 89:24 90:1 91:14 | | **videographer** 3:18 4:13,22 5:9 27:24 28:3 65:25 66:3 99:21,24 101:12 |
| **u** | | | |
| **u** 11:5 | **united** 1:1 85:1 85:3 | **using** 19:14 34:18,24 51:15 58:9,16 88:14 90:10,18 | **view** 28:1 44:12 |
| **uh** 8:6,6 29:13 31:11 32:3 33:8 44:10 46:19 48:9 92:7,25 99:4 | **unlocked** 29:25 | | **visible** 96:14 |
| | **unplugged** 34:14 42:20 | | **vs** 1:9 |
| **uncomfortable** 20:3,4 64:20 | | | |

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

**[waist - zoom]**

Page 23

| w | | | |
|---|---|---|---|
| **waist** 55:9 | **way** 7:18 16:2 | **wish** 42:12 | **wrong** 31:22 |
| **wait** 25:11 | 26:11 41:2 | **witness** 4:10 | **x** |
| **waited** 35:10 | 44:1 57:15 | 5:10 27:16 | **x** 2:2 |
| 51:11 | 61:16,18 71:7 | 28:2 50:21 | **xl** 2:11 15:23 |
| **waiting** 46:20 | 71:8 | 67:8 99:20 | 20:11,22 23:3 |
| **waive** 101:15 | **ways** 21:10 | 101:9 102:1 | 89:23 90:16,17 |
| 101:22 102:2 | **we've** 29:5 | **witness's** 28:6 | **y** |
| **waived** 102:6 | 45:24 | **witnesses** | **y** 11:5 67:25 |
| **waiving** 94:7 | **wear** 58:2 | 104:21 | **yeah** 27:21 |
| 101:25 | **wearing** 54:18 | **woke** 67:11 | 28:22 35:22 |
| **wall** 31:9 101:2 | 55:3 57:19,22 | **word** 53:7 | 36:1,3 43:23 |
| **want** 8:21 9:1 | 58:4,5 | 95:14 | 43:25 57:5 |
| 9:18,20 27:19 | **weather** 25:7 | **words** 7:17 | 75:8 78:11 |
| 28:7 35:17 | **website** 15:23 | 26:8 29:21 | 85:21 96:1,7 |
| 43:16,21 44:7 | **wedding** 18:12 | 50:25 73:14 | 97:1 98:19 |
| 53:7,18 63:7 | 18:15 | 80:6 81:11 | 102:1 |
| 64:25 87:24 | **wednesday** | 96:5 97:25 | **year** 23:4,5 |
| 95:5 101:14,24 | 73:2 | **work** 24:13 | **years** 11:21 |
| **wanted** 31:13 | **week** 15:14 | 28:20 65:22 | 13:17 14:3 |
| 36:15 64:21 | 73:2 75:5 76:7 | 85:6 | 90:9 |
| 74:2 | 76:13 | **worked** 14:2 | **younger** 17:18 |
| **warm** 21:20 | **went** 42:4,20 | 38:23 39:7 | **yuravich** 11:2 |
| 90:18 | 42:21 43:5 | **works** 28:22 | 11:12,17 12:10 |
| **warn** 7:15 | 46:24 47:7 | 65:23 | 13:8 |
| **wash** 25:12 | 50:8 54:9,10 | **worn** 19:22 | **z** |
| **washed** 25:14 | 60:3 64:16,19 | 20:6 | **zero** 34:5 |
| **watched** 42:5 | 67:19 68:14 | **worried** 75:2 | **zip** 13:20 |
| 43:5 | 71:11,16 73:12 | **worse** 78:14 | **zoom** 27:25 |
| **watching** 38:16 | 77:24 78:4,9 | 83:12 | 28:4,4 44:6 |
| 38:20 42:7,22 | 79:6 83:16 | **worst** 82:7 | 88:13 89:7 |
| 42:23 58:20 | 91:18 | **wrapping** | 93:20 |
| **water** 30:19 | **wet** 57:2,3 | 73:15 | |
| 40:11 | **white** 101:1,4 | **written** 92:24 | |
| | **whooshing** | 93:3 | |
| | 53:12 | | |

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.