**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **EDWARD A. COPELAND AND SHERYL COPELAND,** | |
| **Plaintiffs,** | **CIVIL ACTION NO. 5:22-cv-00212-CAR** |
| **vs.** | |
| **TRISTAR PRODUCTS, INC., and ABC, INC.,** | |
| **Defendants.** | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT TRISTAR
PRODUCTS, INC.'S MOTION TO BAR PLAINTIFFS' EXPERT, DR. SOHEIL
ESHRAGHI**

### I.   INTRODUCTION

Plaintiffs' respond in opposition to Tristar Products, Inc.'s ("Tristar") Motion to Bar Plaintiffs' Expert, Dr. Soheil Eshraghi ("Dr. Eshraghi") (Doc. 27). Tristar's argument to exclude Dr. Eshraghi essentially asks this Court to weigh the evidence in determining whether the Court finds Dr. Eshraghi's opinions persuasive, which is impermissible pursuant to the Federal Rules of Evidence. Rather, the Court's only assessment is the reliability, relevance, and admissibility of those opinions.

In its motion, Tristar attempts to attack Dr. Eshraghi's testimony based on his qualifications, the reliability of his testing and findings, and the relevance of those findings. While Dr. Eshraghi's qualifications and opinions have never been challenged, this Court, and others, have approved Dr. Eshraghi's supervisor, who was instrumental in training Dr. Eshraghi in the testing

and evaluation of pressure cookers. Dr. Pratt has served as an expert in nationwide class action lawsuits against Tristar, and was previously approved as an expert in this matter by this Court in *Williams v. Tristar Products, Inc.*, 418 F. Supp. 3d 1212 (M.D. Ga. 2019). Furthermore, Tristar bases much of its argument on Plaintiffs' response to a specific request to admit where Mr. Copeland admitted he waited until he thought the float valve fell before opening the cooker. Tristar wants to extrapolate from this admission that there was no pressure inside the cooker when the lid separation occurred. Although this is not an admission that there was no pressure in the cooker, all the other evidence in the case establishes the cooker was pressurized at the time of the incident. Finally, Tristar attempts to convince this Court that Dr. Eshraghi's testing and methodology was unrelated to this particular case and is unreliable.

Tristar disputes almost every aspect of Plaintiffs' case. This includes Plaintiffs description of what happened, all of Dr. Eshraghi's opinions, and that the defects in the cooker caused Plaintiffs' injuries. However, Tristar attempts to make an absolute, although misguided, statement, by repeating it multiple times, that Mr. Copeland's admission conclusively establishes there was no pressure in the cooker at the time of the subject incident. It is not disputed that Plaintiffs believed there was no pressure in the cooker when Mr. Copeland attempted to open the cooker. In fact, Plaintiffs testified that they knew not to use force to open the cooker. (Ex. A – Depo of Sheryl Copeland, p. 50-52). Both experts agree that the incident could not have occurred if the cooker was not pressurized. (Ex. B – Dr. Eshraghi Report; Ex. C – Dr. Giachetti Report; Ex. D – Depo. of Dr. Giachetti, p. 105, ll 2-3). Next, Dr. Eshraghi opines that the pressure cooker was defectively designed because the mechanical locking mechanism (locking pin) failed to prevent the cooker from opening under pressure, that the clamping device of the cooker (locking tabs) failed to prevent opening of the cooker while there was enough pressure inside to cause injury to the user, and that

the cooker was defectively designed because it was difficult for the user to determine if the cooker was pressurized. (Ex. B; Ex. E - Depo. of Dr. Eshraghi, p. 43, ll 20-25, p. 45, ll 1-2, p. 72, p. 115). In fact, Dr. Eshraghi found that it only took 40 pounds of force to open the cooker, and Dr. Giachetti produced a similar result of 45 pounds. (Ex. B; Ex. C). Dr. Eshraghi was also able to demonstrate the defect by pressurizing the cooker and opening it with little effort while there was enough pressure remaining inside to expel the hot contents out of the cooker posing serious risk to a potential user. (Ex. F - Video of Eshraghi Test). Dr. Eshraghi's opinions are relevant because they will assist the jury in understanding the different locking mechanisms of the cooker and how they failed, as well as how other designs could have made this incident avoidable.

Absent from Tristar's motion is any mention that Dr. Eshraghi's opinions are consistent with how Plaintiffs have classified the defect from the beginning of this lawsuit. The defect is threefold: (1) the mechanical locking device (locking pin) failed because it is undisputed that the cooker was opened while under pressure, either prior to the subject incident or during the subject incident itself (either establishes that the lock did not perform consistent with industry standards or with Tristar's affirmative statement in its user manual that the lid safety mechanism prevents the lid from being opened while pressurized, (2) the clamping device (locking tabs) of the subject cooker failed to perform to industry standards because the cooker was able to be opened while applying less than half of the minimum force required to pass the industry standard test and can be opened with enough pressure remaining inside to create a risk of injury to the user, and (3) the pressure cooker was defectively designed in a manner that created confusion to the user as to whether the cooker was pressurized. (Ex. B). As explained below, all of Tristar's arguments address the weight of the evidence rather than the qualifications, reliability, and relevance of Dr. Eshraghi and his opinions. What Tristar is actually doing is asking the Court to act as a fact finder

to determine which opinion is more believable, a duty that rests solely with the fact finder. Therefore, this Court should deny Tristar's motion.

## II.   STANDARD OF REVIEW

Expert testimony is that which is designed to aid the trier of fact in making a determination on questions of technical and scientific nature. Federal Rule of Evidence 702 provides that a witness may be qualified as an expert by several different methods including knowledge, skill, experience, training, or education. Once qualified, the Court looks to make sure the testimony is (1) based on sufficient facts or data, (2) the product of reliable principles and methods, and (3) a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702. The court must serve as the gatekeeper to keep out irrelevant or unreliable expert opinions. *United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (citing *Kumho Tire v. Carmichael*, 526 U.S. 137, 145 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). The district court, in performing this gatekeeper function, must not make conclusions as to the persuasiveness of the evidence. *Quiet Tech. D.C.-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). The trial court must not supplant the adversary system or invade on the role of the jury, as cross examination, presentation of contrary evidence, and instructions on the burden of proof are the appropriate means of attacking otherwise admissible evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311-12 (11th Cir. 1999) (citing *Daubert*, 509 U.S. at 596).

In addressing the trial court's role as the gatekeeper of expert testimony, the Eleventh Circuit Court of Appeals found that expert testimony is admissible when (1) the expert is qualified to testify, (2) the methodology used by the expert in reaching his conclusion is reliable as determined by the sort in inquiry mandated in *Daubert*, and (3) the testimony, through the application of scientific or technical expertise, assists the trier of fact to understand evidence or

determine a fact issue. *Allison*, 184 F.3d at 1309. These factors are also known as qualification, reliability, and relevance.

In its brief, Tristar also argues that there have been amendments to Rule 702 of the Federal Rules of Evidence. Tristar argues that the amendment to that rule provides that expert testimony must not be admitted unless the opponent demonstrates it is more likely than not that the testimony meets the admissibility requirements as set forth in the rule. Tristar also contends that the amendment requires the expert opinion to stay within the bounds of what he can conclude from the reliable application of his methodology. Although Dr. Eshraghi's testimony meets both of those elements, it is important to note that the amendments to Rule 702 did not go into effect until December 1, 2023 (only 3 months ago). (Doc. 27 - Ex. K, p. 3). Furthermore, the order enacting those rules states "[t]he foregoing amendments to the Federal Rules of Evidence shall take effect on December 1, 2023, and shall govern all proceedings thereafter commenced, and, **so far as just and practicable,** all proceeding then pending. (*Id.*) (emphasis added). This lawsuit was filed on June 13, 2022, a year and a half prior to amendments to the Rules of Evidence. Furthermore, both experts were retained well before December 1, 2023. Testing and analysis of the subject pressure cooker was performed in May of 2023. As such, to the extent this Court may determine the experts in this case do not meet the requirements set forth in the amendments, it will not be just or practicable to apply the amendments to the Rule, since they were only enacted three months ago. Regardless, Tristar makes no argument as to why Dr. Eshraghi's opinions does not comply with the amendment relating to Rule 702.

### III.    ARGUMENT AND CITATION OF AUTHORITY

#### A.  Dr. Eshraghi is qualified to offer opinions regarding the defects of the subject Tristar pressure cooker.

Although Tristar addresses Dr. Eshraghi's qualifications at the end of its brief, Plaintiffs will address Dr. Eshaghi's qualifications first. The basis for Tristar's argument that Dr. Eshraghi is not qualified is that he does not specifically work in the pressure cooker industry. In advancing this argument, Tristar ignores the fact that its own expert does not work in the pressure cooker industry. In fact, other than short stints working with lifting equipment, and recoil machinery, Dr. Giachetti, Tristar's expert, has spent his entire career in consulting. (Ex. D, p. 13-22). In that role, only about 10 % of his work is non-litigation consulting. All of his other experience in pressure cookers comes from litigation. (*Id.* at p. 24, ll 8-15). Regardless, it is not a requirement that an expert be employed with a manufacturer of the product he is evaluating.

Dr. Eshraghi has a Ph.D. in Mechanical Engineering and has worked in the areas of fasteners and mechanisms related to equipment for the aerospace and automotive industry for over 40 years. (Ex. E, p. 3). As a senior engineer executive for two aerospace hardware companies, he was responsible for reviewing the design and product development and overseeing design reviews. (*Id.*). Dr. Eshraghi is the named inventor of twelve United States patents. (*Id.).* He has been involved in designing products, tooling, and machines, and has performed kinematics and stress test analysis. (*Id.*). He was also responsible for overseeing the development of the certification and design allowables for fasteners in military and commercial aircraft, and oversaw research and design laboratories for aerospace companies. (*Id.*). He has performed static and dynamic testing of parts, and performed metallurgical evaluations. (*Id.*). Dr. Eshraghi's entire 40-year career has involved designing, and testing the design and functionality of products, specifically including fasteners, which is a knowledge and skill usually applied to the clamping and fastening aspects of pressure cooker lids. He has also been responsible for working directly with consumers regarding design expectations, managing product liability, and developing specifications and qualifications

testing. Specifically, he has been responsible for the development of new aerospace and commercial fasteners. (*Id.*; *Id.* at 11-15). He also holds certificates in design of experiments, quality engineering, defective problem-solving techniques, fundamentals of plastics, and Six Sigma Black Belt, which is a problem-solving course applying the D.M.A.I.C. (define, measure, analyze, improve, and control) methodology. (*Id.* at p. 15). It is hard to imagine a person more qualified to offer testimony on the design, functionality, and control of fastening and clamping devices.

Dr. Eshraghi has been testing and evaluating pressure cookers for several years. (Ex. E, p. 13, ll 18-19). It is irrelevant whether he acquired his knowledge and expertise through employment with a pressure cooker company or otherwise, as long as he is qualified by knowledge, skill, or experience. Dr. Eshraghi originally got into the pressure cooker field when he was asked by his supervisor, Dr. John Pratt, to attend a product inspection. Dr. John Pratt is a mechanical engineer who has previously been approved by this Court as an expert to testify as to defects in pressure cookers. *Williams v. Tristar Products, Inc.* 418 F. Supp.3d 1212 (M.D. Ga. 2019). Dr. Pratt worked in the same aerospace industry as Dr. Eshraghi, doing the same type of work. Dr. Pratt has experience in the development of products, fasteners, and locking and latching devices. *Id. at 1222.* Tristar attempts to claim the inspection with Dr. Pratt is the only experience Dr. Eshraghi has regarding pressure cookers. Since that time, Dr. Eshraghi has reviewed the design and functionality of approximately 20 pressure cookers from several different brands including Tristar, Bella, Cooks, Crock-Pot, Philippe Richard, Cuisinart, Ninja, and Royal Prestige. (Ex. E, p. 21-22). As a

part of that process, he has become familiar with UL 136 standards, which are accepted as industry standards for pressure cookers.[1] (Ex. E, p. 17, ll 10-12).

Here, Dr. Eshraghi has offered his opinion that if the cooker can be opened while under pressure, it is defective. He goes further and opines that the mechanical locking mechanism (the locking pin), was defective because it is undisputed that the cooker was opened under pressure at some point prior to the inspection. He also opines that the clamping device (locking tabs) of the cooker (regardless of the broken mechanical lock) was defective because the cooker's lid only withstands 40-45 pounds of force when UL 136 requires the lid to withstand 100 pounds of force. Dr. Eshraghi also relies on his experience and knowledge in evaluating other pressure cooker designs to opine that the design of the float valve and lid render it difficult/or impossible for a user to determine from a visual inspection whether there is pressure inside of the cooker. (Ex. B, p. 6).

Tristar's arguments reflect a simplified analysis, or a misunderstanding of Dr. Eshraghi's opinions. In support of its argument, Tristar relies on *Folsom v. Kawasaki Motors Corp. U.S.A.*, 509 F.Supp. 2d 1364 (M.D. Ga. 2007). In *Folsom*, Plaintiffs allege that a Kawasaki Jet Ski was defective because the Jet Ski was unable to be steered without positive propulsion, which would necessarily require an increase in speed toward a potential hazard in order to then steer away from the hazard. (*Id.* at 1370). In support of his claim, Plaintiff identified two witnesses as expert witnesses. *Id.* at 1374. The Court found neither potential experts were qualified to testify as to the Jet Ski design. *Id.* at 1378. In doing so, the Court noted the witnesses had no specific training or

---

[1] Although Tristar criticizes Dr. Eshraghi's methodology for what it considers does not comply with UL 136, Tristar also has presented conflicting evidence as to whether it believes UL 136 applies to electric pressure cookers. Tristar's corporate representative testified that UL 136 is the appropriate industry standard for electric pressure cookers. (Ex. G - Depo of Lazano, p. 75, ll 8-13). However, Dr. Giachetti opines that UL 136 is not the industry standard for electric pressure cookers, but was unable to identify any other standard that applies. (Ex. D, p. 157, ll 8-15).

education in accident reconstruction of biomechanics, and that they had no knowledge, skill, experience, training, or education in boat design or naval architecture. *Id.* at 1377. Furthermore, their Jet Ski experience was limited to test riding and aftermarket rudder design. *Id.* The Court also noted that one of the experts was employed as a tour boat operator in Hawaii. *Id.* The Court found there was no evidence that either witness possessed the knowledge, skill, experience, training, or education necessary to opine the off-throttle steering design at issue made the Jet Ski so dangerous that it should not have been made available at all. *Id.* at 1378. Their sole experience with Jet Skis consisted of riding Jet Skis and in designing riding courses for Jet Skis. Tristar argues that the witnesses in *Folsom* have more general knowledge than Dr. Eshraghi does in pressure cookers. This is simply not true. The proposed witnesses in *Folsom* are familiar with riding Jet Skis but have no engineering experience or education in how to apply that knowledge to defects. Dr. Eshraghi, as illustrated above, has both extensive experience in evaluating pressure cookers and other similar clamping and fastening devices, and has a very advanced education, in Mechanical Engineering.

Applying *Folsom* to this case is like comparing apples to oranges. It is equivalent to comparing the experience of riding a Jet Ski to an advanced degree in engineering and 40 years of experience in designing, evaluating, and testing fastening and clamping devices. *Folsom* would be analogous if Dr. Eshraghi's only knowledge of pressure cookers came from cooking with one, which is not the case. Just as this Court held that Dr. Pratt was qualified to offer his opinions as to the pressure cooker in *Williams*, Dr. Eshraghi is qualified to offer all of these opinions here. He has formed his opinions using sufficient, reliable methodology that includes familiarity with industry standards, extensive experience with testing similar devices as well as multiple pressure cookers, and performing a sound engineering differential analysis such as evaluating the physical

evidence, considering plaintiffs testimony, considering the lack of evidence that any force was used to open the cooker, and eliminating other possible explanations to arrive at these conclusions.

### B. Dr. Eshraghi's engineering opinions are sufficiently reliable.

Federal Rule of Evidence 702 requires that an expert testimony be supported by appropriate validation, meaning based on good ground according to what is known. In *Re Scrap Metal Anti Trust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008) (citing *Daubert*, 509 U.S. at 590). A court should not attempt to determine whether expert testimony is correct or true, but only that it rests upon a reliable foundation as opposed to unsupported speculation. In *Re Scrap Metal Anti Trust Litig.*, 527 F.3d at 529. In making this determination, a court may consider whether the experts methodology has been tested or is capable of being tested, whether the technique is subject to peer review, the known or potential error rate, and whether the technique has been generally accepted in the scientific community. *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). (citing *Daubert*, 509 U.S. at 593-94). None of these factors are conclusive and the list is not exhaustive. *Seamon v. Remington Arms Co., LLC*, 813 f.3d 93, 988 (11th Cir. 2016). The "primary focus would be solely on principles and methodology, not the conclusions that they may generate." *Allison,* 184 F.3d (quoting *Daubert*, 509 U.S. at 595). The proponent of the testimony does not have prove that is it is scientifically correct, only that it is reliable. *Allison,* 184, F.3d at 1312.

Again, Tristar begins is reliability argument by stating that Dr. Eshraghi's opinions are not reliable because it has been conclusively established that the pressure cooker was not pressurized. For purposes of efficiency, Plaintiffs incorporate their arguments regarding the request for admission at issue that is discussed in Plaintiffs' responses to Tristar's motion for summary judgment (Doc. 29, p. 4-9). Tristar wants this Court to infer that the response to the request at issue, that Mr. Copeland thought he waited until the float valve dropped to attempt to open the

cooker, is a conclusive admission that the cooker was not pressurized. However, as explained in

Plaintiffs response to Tristar's motion for summary judgment, this Court has broad discretion in

determining the effect of said admission, particularly when the response is subject to different

interpretations. Regardless, the response only admits simply that Mr. Copeland thought the float

valve had dropped. The evidence, taken as a whole, establishes that the cooker was pressurized at

the time of the subject incident. (Ex. B, p. 4; Ex. C, p. 22, Ex. D, p. 174, ll 7-8, p. 169, p. 110, ll

3-17; Ex. A, p. 50, ll 8-10). Regardless, Tristar's argument that Dr. Eshraghi's opinions are not

reliable because they may contradict Plaintiffs recollection of events is misguided. Although not

binding on this Court, the Sixth Circuit Court of Appeals has held that a discrepancy between an

expert description and the plaintiff's description of the relevant facts does not warrant excluding

the expert's testimony. *Lee v. Smith and Wesson Corp.*, 760 F.3d 523 (6th Cir. 2014). In *Lee*, the

plaintiff was injured by a revolver that was manufactured, designed, and distributed by Smith and

Wesson, Corp. *Id.* at 524. The gun discharged improperly, seriously injuring plaintiff, and

according to plaintiff's sworn testimony, the gun cylinder swung open during this third shot after

he completely closed it. *Id.* at 524-25. The Plaintiff's hired a mechanical engineer who opined that

the gun could have been cocked and fired without its cylinder closed and locked. *Id.* at 25.

Defendants moved to exclude plaintiff's expert because his opinion contradicted Plaintiffs sworn

testimony and that the opinions did not "fit" the facts of the case. *Id.* at 525-26. In reversing the

district court, the 6th Circuit held that the district court abused its discretion in excluding the expert

testimony. The court reasoned that plaintiff could have been mistaken as to whether the gun

cylinder was closed. *Id.* at 527. The court further held that a witnesses' testimony, whether as fact

or expert opinion, is a question of credibility for a jury to decide, and the jury could conclude that

plaintiff's memory was faulty. *Id.* at 27. The Northern and Southern Districts of Georgia have also

addressed this issue and held that where an expert's opinions are contrary to deposition testimony there is a factual determination for a jury, and the expert's inconsistency with the facts of the case is simply not a proper basis for exclusion. *Cameron v. Teeberry Logistics, LLC*, 2013 WL 7874709 (N.D. Ga. 2013); Tristar "is free to identify flawed data or facts relied upon by [Dr. Eshraghi], upon cross-examination, but such reliance at this stage does not render expert testimony inadmissible under *Daubert*." *McGarity v. FM Carriers, Inc.*, 2012 WL 1028593 (S.D. Ga. 2012). This Court also agreed with this premise in *Williams,* and held that "weighing competing evidence is for the jury, not the court." 418 F.Supp. 3d at 1223.

### C. Tristar's position that Dr. Eshraghi's opinions are not reliable because they do not establish the pressure cooker fails UL 136 are both incorrect and misapply the appropriate analysis to the reliability standard.

As stated above, whether an expert's opinions and methodology are reliable does not depend on whether the Court believes his findings are correct or true because that is for a jury to decide. Tristar seeks to have this Court exclude Dr. Eshraghi simply because Tristar disagrees with his opinion. Tristar incorrectly states that Dr. Eshraghi's opinions do not establish that the pressure cooker does not meet UL 136 standards. Although this is a products liability case, Dr. Eshraghi's opinions are relatively straightforward. He opines that (1) the mechanical lock (locking pin) on the pressure cooker failed, which does not comply with industry standard or UL 136, and makes the pressure cooker unreasonable dangerous, (2) the pressure cooker clamping device (locking tabs) failed to withstand 100 pounds of pressure in violation of both industry standards and UL 136, and (3) that the float valve and lid design are confusing to the user.

A brief explanation of the relevant parts of the cooker may be helpful. What has been identified as the float valve is a cylindrical valve that weighs a few grams and is held in the down position by gravity (Ex. E, p. 35). The purpose of the float valve is to move into the up position to

seal the cooker and stop the lid from rotating while the cooker is pressurized. (*Id.*). When pressure starts to build inside the cooker, the steam pushes the float valve up through a hole that is recessed into the handle. (*Id.*). The lid of the cooker also contains a locking pin that is connected by a spring to a strike plate. (Ex. G, p. 96-100). Once the locking pin moves behind the locking tab on the base, the strike plate is retracted so that the float valve can move up through the hole that was previously covered by the strike plate. (*Id.*). Once the float valve moves into the up position, the float valve prevents the strike plate from moving, and while the strike plate is retracted the locking pin on the side of the lid is pulled against the locking tab on the base, holding the lid in place. (*Id.*). The cooker also contains a separate clamping mechanism that is supposed to prevent opening while pressurized. The lid has tabs (locking tabs) that interface with corresponding locking tabs on the base of the cooker. (*Id.* at 100-102). When pressure builds inside the cooker, the friction increases against those locking tabs to keep the lid from separating from the base while under pressure. (*Id.*). This is the clamping device that is also supposed to keep the lid from separating from the base while under pressure. (*Id.*).

Dr. Eshraghi opines that the mechanical lock (locking pin) was defective because the locking mechanism was defeated at some time while the cooker was under pressure. That opinion is undisputed and is evidenced by a scratch mark on the locking tab that interfaces with the locking pin showing an opening while the cooker was under pressure. (Ex. E, p. 54, ll 2-3, p. 73, ll 14-23). Tristar incorrectly asserts that this is an unreliable opinion because the lock was no longer in the same condition as it was when manufactured. However, there is no evidence that the lock was not in the same condition as the day of the subject incident as it was when manufactured. The only evidence available establishes that the lock had been compromised at some point prior to product inspection. Both experts agree that the scratch on the locking tab could have occurred during the

13

incident at issue. (Ex. E, p. 56, ll 23-28; Ex. D, p. 112, ll 21-24, p. 113, ll 1-3). Tristar relies on Dr. Giachetti's opinion that the lock was previously opened under pressure to advance its argument that the lock was degraded prior to the incident at issue. However, as established, there is no evidence that this occurred prior to the incident at issue. Even if it did, Dr. Eshraghi's opinion is still reliable because Tristar admits that the locked failed while under pressure at some point. (Ex. D, p. 112). This is further evidence corroborating Dr. Eshraghi's opinion, because if the lock failed at any time, it was defective, and if it failed prior to the subject incident that defect that would have caused the lock to be compromised allowing the lid to be opened while pressurized during the subject incident.

In reaching that conclusion, Dr. Eshraghi relies on standards set forth in UL 136. Both Dr. Eshraghi and Tristar's corporate representative agree that UL 136 standards control the subject cooker. (Ex. G, p. 75, ll 1-13). Dr. Giachetti is the only person who disagrees, although he cannot provide any other standards for electric pressure cookers and has never sought clarification from Underwriters Laboratories (UL). (Ex. D, p. 160, ll 9-24, p. 161 l 1) UL 136 states "[i]f the pressure cooker is provided with a mechanical locking device (e.g. a locking pin) that prevents the opening of the cover under pressure, it shall not be defeated during the cover opening test." (Ex. H - UL 136 § 9.8). Using that standard, Dr. Eshraghi opines that if the locking mechanism is able to be defeated it is defective. By applying the facts of what happened in this case, and inspecting the subject cooker for signs of a defeated locking mechanism, Dr. Eshraghi was able to reach the conclusion that the cooker had been opened under pressure and the locking pin had failed to prevent that opening. (Ex. B, Ex. E, p. 50, ll 23-25). Dr. Giachetti agreed. (Ex. D, p. 112, ll 21-24). Although not needed, Dr. Eshraghi went one step further and tested the mechanical locking pin during the product inspection. (Ex. B). UL 136 states that "[i]f the pressure cooker is provided

with a mechanical locking device (e.g. a locking pin) that prevents the opening of a cover under pressure, then the source of the heat may be turned off as soon as the activation of the locking device can be detected." (Ex. H, § 9.5). The activation of the locking device occurs when the float valve moves to the up position. During testing, as soon as the float valve raised, the pressure cooker was turned off and Dr. Eshraghi attempted to open the lid with the locking mechanism activated. (Ex. B). He was successful in doing so with as little as 40 pounds of pressure, that same test was verified by Tristar's expert, the only difference being he found that it took 45 pounds of pressure to open the cooker. (Ex. C). The amount of force it took to open the lid is irrelevant when analyzing the mechanical locking mechanism because UL clearly states that the mechanical locking mechanism (locking pin) should not be defeated at all. Here, Dr. Eshraghi (1) identified a possible defect (mechanical lock failure), (2) found and applied the appropriate industry standard criteria, and (3) proved, both by testing and inspection of the locking tabs, that the mechanical lock failed at some point while the cooker was under pressure.

Next, Dr. Eshraghi opines that the clamping device (locking tabs) of the cooker is defective. The clamping device is a separate and distinct locking mechanism from the mechanical locking device previously discussed. UL 136 states "[a]n ordinary user shall not be capable of manually defeating the holding action of the clamping device when the pressure in the cooker reaches a value that creates a risk of injury to persons…[and] [t]he propelling of a loosened cover and the escape of steam or hot water are examples of this risk. (Ex. H, § 9.1). Tristar's expert confirmed that the clamping device should prevent the cooker from opening while pressurized even if there was no mechanical lock, or if that lock was broken. (Ex. D, p. 100, ll 17-21). UL 136 also states the clamping device should be able to withstand 100 pounds of force, while pressurized, without opening. (*Id.* at 9.3). Again, the fact that the cooker opened and hot contents were expelled

corroborates Dr. Eshraghi's opinion that the clamping device of the cooker was defective, because UL states that the clamping device shall not be defeated when there is pressure inside the cooker that would pose a risk to its user. (*Id.* at 9.1). The test explained above also tested Dr. Eshraghi's opinion regarding the defect in the clamping device. He was able to open the cooker applying only 40 pounds of force, and that was corroborated by Tristar's expert, the only difference being that it took him 45 pounds of force. (Ex. C). Tristar's expert agreed that the test was acceptable, and the findings were similar enough as to not be of significance. (Ex. D, p. 78, ll 22-24). However, Tristar then takes issue with Dr. Eshraghi's testing methodology because it argues that it is not a UL 136 test. UL 136 only supplies suggested testing criteria and, as Dr. Eshraghi explained, he believes the test suggested by UL could influence results by causing a binding effect on the lid. (Ex. E, p. 31, ll 1-16). In fact, Dr. Eshraghi has been working with UL to develop testing, similar to the test performed during the subject inspection, that will produce better results. (*Id.*). Tristar also ignores the fact that its own expert did not perform a test pursuant to the exact specifications suggested by UL 136, and that Tristar maintains that UL 136 does not control. Tristar admits that the test performed by Dr. Eshraghi is analogous to the test provided by UL 136 (Doc. 28-2, ¶ 49).

Tristar also ignores that Dr. Eshraghi went a step further in performing an additional test to test his theory that the clamping device of the cooker was defective. (Ex. F). During this test, Dr. Eshraghi pressurized the subject cooker with water inside and allowed it to pressurize. The video clearly shows Dr. Eshraghi easily rotating the lid open while the cooker maintained enough pressure to expel the hot contents. (*Id.*). Tristar argues that this is not a UL 136 test for various reasons including that Dr. Eshraghi did not measure the amount of water or pressure in the cooker. However, Dr. Eshraghi's theory was that he believed the clamping device of the cooker was defective and that it could be opened with enough pressure inside the cooker to expel the contents

16

and cause injury to a user as set forth by UL 136, which he was able to prove through testing. Tristar's critique of this method is simply red herrings, and at best, go the weight of the evidence and not to the reliability. Dr. Eshraghi was able to produce results that do not comply with UL 136 standards. (Ex. F).

Dr. Eshraghi also opines that the design of the lid handle and float valve are defective because it does not allow a user to clearly determine whether the cooker was under pressure. (Ex. B, p. 6). In evaluating this defect, Dr. Eshraghi relied on his experience in evaluating other pressure cookers. Dr. Eshraghi opines that the float valve is very difficult to see, and it is even more difficult to determine whether the float valve is up or down because the valve is recessed into the handle and the distance of travel between the up and down position is very small. (Ex. C, p. 6). There is also no discussion in the owner's manual regarding how to determine, by looking at the float valve, whether the cooker is pressurized. (Ex. I – Owners' Manual). Dr. Eshraghi then compared the subject cooker's design to other cookers and even to a later model (PPC772) Tristar cooker. He noted that the later model includes a red pressure indicator and magnetic sensor to confirm that the lid is in a locked position. Dr. Eshraghi is certainly qualified to make that opinion based on his experience and knowledge gained from inspecting pressure cookers.

> **D. Dr. Eshraghi's testimony and opinions are relevant and will assist the jury in understanding how the subject cooker functions, why it does not meet standards, how it is defective, and what could have been done differently by Tristar.**

Expert testimony is relevant if it "will help the trier of fact to understand evidence or to determine a fact in issue." Fed. R. Evid. 702 (A). The ultimate issue here is whether there are facts or evidence that will support a theory that the lid of the pressure cooker exploded or separated from the base, or do the facts and evidence support Tristar's theory that Plaintiffs forced open the

lid during the subject incident. Dr. Eshraghi's opinions are inarguably relevant under Rule 702 because they will help the jury understand the evidence and determine material issues of fact.

First, Tristar argues that Dr. Eshraghi's testimony will not be helpful to a jury because it conflicts with Plaintiffs' recollection. This argument has been disposed of in previous sections. Tristar also argues that Dr. Eshraghi's testing of the subject incident has not been peer reviewed or published as being reliable. However, acceptable standards have been established by UL 136 as explained above. Dr. Eshraghi tested his theories against UL requirements showing that the pressure cooker did not meet those requirements. If Tristar disagrees with Dr. Eshraghi's findings, it is free to explore that through cross-examination and through the presentation of other evidence, but it does not make the testimony irrelevant. Tristar also argues that Dr. Eshraghi should be prevented from testifying because he did not replicate what Plaintiffs claimed occurred here. However, Dr. Eshraghi was not asked to replicate exactly what Plaintiffs claimed occurred. Dr. Eshraghi's methodology and resulting testimony involve testing his theories that the pressure cooker was defective because it did not comply with industry standards and was not reasonably safe. He was able to prove that as described above. In its brief, Tristar states that it is known in the pressure cooker community that Dr. Eshraghi's methodology is invalid and not accepted, but cites to no authority for that position, nor does it expand on that argument in any way. It simply makes that assertion based on the incorrect assumption that the lock was not in the same condition as it was when manufactured.

Tristar also incorrectly argues that Dr. Eshraghi's opinions are not helpful because they are inconsistent. Tristar states that Dr. Eshraghi testified that he will not opine a pressure cooker is defectively designed if he cannot replicate what Plaintiffs claim occurred. However, this mischaracterizes Dr. Eshraghi's testimony on this matter. Dr. Eshaghi testified that if a pressure

cooker passes UL 136, he would consider it reasonably safe. However, he was stating that if the specific cooker at issue had passed UL 136, he would deem it reasonably safe. (Ex. E, p. 32). He also testified that, in regard to other pressure cookers, he has previously opined that there was no defect because he could not replicate what Plaintiff claimed occurred, not that he would categorically state that replicating the events is a conclusive test. (Ex. E, p. 24, ll 5-10). He did not testify that in every case, if he cannot replicate what Plaintiffs claims occurred, he would deem a product safe. In order to test his theory, Dr. Eshraghi did not need to replicate exactly what Plaintiffs claimed occurred. He only needed to test whether the pressure cooker could be opened under pressure when it should not be able to be opened. Tristar also states that Dr. Eshraghi claims he opened the cooker with only one hand, when his test confirmed he needed two hands to open the cooker despite its broken lock. Again, this misstates Dr. Eshraghi's testimony. Dr. Eshraghi testified that he did not use two hands to open the cooker during his test, but that he used one hand to open the cooker and simply used the other hand to keep the base from rotating. (Ex. E, p. 126-27). Regardless, again, this evaluation of Dr. Eshraghi's findings goes to the weight of the evidence for the jury to consider and not to the admissibility analysis. Finally, Tristar argues that Dr. Eshraghi does not attempt to compare Tristar's cooker design with that of other cookers. As explained above, this is simply incorrect as shown by Dr. Eshraghi's testimony and his report.

## IV. CONCLUSION

Here, Dr. Eshraghi has the appropriate qualifications, used reliable methods to test his theories and renders his opinions based on physical evidence within the confines of mechanical engineering. He reviewed the evidence in this case, tested and inspected the subject pressure cooker, and reviewed applicable requirements and standards pursuant to industry requirements. He then applied his findings to those standards. It is undisputed that the injuries suffered by

Plaintiffs could not have occurred if the cooker was not pressurized. However, even if there is discrepancy between Plaintiffs recollection and understanding, and Dr. Eshraghi's opinions, Dr. Eshraghi's opinions are still admissible. Tristar's issues with Dr. Eshraghi's findings go to the weight of the evidence and not to the admissibility standards. His findings will help a jury to understand the purpose and function of the different components of the cooker and its locking systems and how there are failures rendering the cooker defective. Therefore, Tristar's arguments are without merit. Plaintiffs have sufficiently carried their burden of demonstrating that Dr. Eshraghi's opinions are admissible under Federal Rule of Evidence 702 and *Daubert*. Dr. Eshaghi is qualified to offer his opinions, the opinions are based on sufficiently reliable methodology, and the opinions are relevant to assist the jury in understanding Plaintiffs theories of liability against Tristar. Therefore, Dr. Eshraghi should be allowed to testify, and Tristar's motion to exclude Dr. Eshraghi's testimony should be denied.

      Respectfully submitted,

      This 11th day of March, 2024.

**REYNOLDS, HORNE & SURVANT**          */s/ Marty K. Senn*
6320 Peake Road                                              MARTY K. SENN
P.O. Box 26610                                              Georgia Bar No.: 513896
Macon, Georgia 31210                                    *Attorney for Plaintiff Edward A. Copeland and*
Telephone: (478) 405-0300                           *Sheryl Copeland*
Facsimile: (478) 405-0550
msenn@reynoldsinjurylaw.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this date, the undersigned served a true and correct copy of the foregoing

pleading with the Clerk of Court using the CM/ECF system and served all parties of record via

electronic service through the CM/ECF system to:

Sanjay Ghosh
Steven H. Campbell
Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
sanjay.ghosh@nelsonmullins.com
steven.campbell@nelsonmullins.com
*Attorneys for Defendant*

David S. Osterman, Esq.
Thaddeus J. Hubert, IV, Esq.
Goldberg Segalla
301 Carnegie Center, Suite 200
Princeton, NJ 08540
dosterman@goldbergsegalla.com
thubert@goldbergsegalla.com
*Attorneys for Defendant*

This 11th day of March 2024.

**REYNOLDS, HORNE & SURVANT**

6320 Peake Road                              */s/ Marty K. Senn*

P.O. Box 26610                               MARTY K. SENN

Macon, Georgia 31210                         Georgia Bar No.: 513896

Telephone: (478) 405-0300                    *Attorney for Plaintiffs Edward A. Copeland and*

Facsimile: (478) 405-0550                    *Sheryl Copeland*

msenn@reynoldsinjurylaw.com