**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **EDWARD A. COPELAND AND SHERYL COPELAND,** | |
| Plaintiffs, | **CIVIL ACTION NO. 5:22-cv-00212-CAR** |
| vs. | |
| **TRISTAR PRODUCTS, INC., and ABC, INC.,** | |
| Defendants. | |

**PLAINTIFFS' BRIEF IN SUPPORT OF ITS MOTION TO WITHDRAW OR AMEND RESPONSES TO REQUEST FOR ADMISSIONS**

Plaintiffs, by and through their undersigned attorneys, file this brief in support of their Motion to Withdraw or Amend Responses to Request for Admissions.

### I.   INTRODUCTION AND FACTUAL BACKGROUND

In 2016, Plaintiffs ordered the subject pressure cooker online that was designed, manufactured, marketed, and sold by Tristar. (Doc. 1). Over the next few years, Plaintiffs used the pressure cooker several times and became familiar with its operation. (*Id.*). On July 18, 2020, Plaintiffs were using the subject pressure cooker to cook a chuck roast. Upon completion of the cooking cycle, Mr. Copeland attempted to rotate the lid to the open position, and as soon as he began to turn the lid, it blew off. (Ex. A - Depo. of Sheryl Copeland p. 50, ll 8-10). As a result, the hot contents of the subject pressure cooker caused painful and disfiguring burns to Mr. Copeland's face, torso, neck, arms, hands, and to Mrs. Copeland's breasts, chest, hands, arms, and face. (Doc.

1, ¶¶ 16, 17, 20). Mr. Copeland had to undergo surgery to graph cadaver skin to his body and later endure procedures to debride and remove skin. (*Id.* at ¶ 17).

On June 13, 2022, Plaintiffs sued Tristar for injuries they sustained alleging that Tristar is strictly liable for the defects in the subject pressure cooker. (Doc. 1). Specifically, Plaintiffs assert that the subject pressure cooker was defective because the lid can be removed or opened while still under pressure. (*Id.*) Furthermore, Plaintiffs allege that Tristar was negligent in the design, manufacture, marketing, and selling of the subject pressure cooker and failed to adequately warn users. (*Id.*)

Plaintiffs' expert, Dr. Soheil Eshraghi, and Tristar's expert, Dr. Robert Giachetti, both agree that the cooker was pressurized at the time of the subject incident. (Ex. B – Dr. Eshraghi Report, p. 4; Ex. C – Dr. Giachetti Report, p. 2; Ex. D – Depo. of Dr. Giachetti, p. 174). During the discovery period, Tristar sent requests for admissions to both Mrs. Copeland and Mr. Copeland. The request for admission at issue is Request for Admission No. 15. That request asks Mr. Copeland to admit "[p]laintiff waited until the float valve dropped, before attempting to remove the lid." (Ex. D – Request for Admissions, no. 15). Mr. Copeland admitted this request.

Tristar then filed a motion for summary judgment largely based on the contention that Mr. Copeland's admission that he waited until the float valve dropped conclusively establishes there was no pressure inside of the cooker. However, such an inference ignores all of the other evidence in the case and makes an extrapolation that is a large leap from what Mr. Copeland actually admitted. Plaintiffs are requesting the Court to deny Tristar's Motion for Summary Judgment for these reasons.

II.     **ARGUMENT AND CITATION OF AUTHORITY**

Rule 36(b) of the Federal Rules of Civil Procedure, states that "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Therefore, this Court may permit withdrawal or amendment of Mr. Copeland's response if it determines that the withdrawal or amendment would promote the presentation of the merit and Tristar does not persuade the Court that they would be prejudiced in maintaining or defending its actions on the merits.

A. **A withdrawal/amendment of Mr. Copeland's admission to Tristar's Request for Admission No. 15 will promote the presentation of the merits of the case because Tristar's interpretation, that Mr. Copeland's admission conclusively establishes that the cooker was not pressurized, is in direct contrast to all of the other evidence in this case.**

The foundation of Tristar's entire argument rests on its contention that a response made by Mr. Copeland to a request for admission establishes that the pressure cooker was not pressurized at the time of the accident. Tristar wants this Court to conclude this establishes that there was no explosive event. However, Mr. Copeland's response does not admit there was no pressure in the cooker at the time of the subject incident. Tristar misstates both facts and law. The request for admission at issue asked Mr. Copeland to admit "[p]laintiff waited until the float valve dropped, before attempting to remove the lid." (Doc. 28, Ex. G, No. 15). Tristar contends that this admission concludes the issue of whether the cooker was pressurized at the time of the incident. However, at most, this admission concludes that Mr. Copeland <u>thought</u> that he waited until the float valve had dropped, which is evidence of the design defect alleged by Plaintiffs. In reality, what Tristar is asking the Court to do is draw an inference that because Mr. Copeland admitted that he thought the float valve had dropped, he is also admitting the cooker was not pressurized. Tristar's very

-3-

simple analysis ignores the fact that the term "float valve" is not defined in the request and that a jury could conclude that other evidence shows Mr. Copeland could have simply been mistaken regarding whether the float valve had fully dropped. A jury could reasonably conclude he was mistaken and can weigh the evidence for itself. *Lee v. Smith & Wesson Corp.,* 160 F.3d 523, 527 (6th Cir. 2014). Regardless, this admission is not equivalent to an admission that the cooker was not pressurized.

The Eleventh Circuit Court of Appeals has addressed the scope and effect of admissions and the standard for review where it has indicated the district court, absent an abuse of discretion, has broad authority to determine whether a party can withdraw its response to a request for admission and the conclusive effect of an admission. *See Smith v. First Nat. Bank of America*, 837 F.2d 1575, 1577-78 (11th Cir. 1988); *Johnson v. DeSoto Board of Commissioners*, 204 F.3d 1335, 1340-41 (11th Cir. 2000). In *Smith*, the Eleventh Circuit held the district court did not err in allowing a defendant to withdraw its admission where a late response was inadvertent and the plaintiff could not demonstrate she would be prejudiced by the withdrawal. *Id.* at 1577-78. The Court in *Smith* cited several cases exemplifying appropriate reasons to permit the withdrawal of responses to requests for admissions including a "faulty assumption" as well as "inadvertence." *Id.* at 1577 (citing *Reyes v. Vantage S.S. Co., Inc.*, 672 F.2d 556, 557-58 (5th Cir. 1982)). In addition to these factual justifications, the Northern District Court of Georgia added a withdrawal of an admission is permitted when an admission is no longer true after additional evidence is presented. *Atakpa v. Perimeter OB-GYN Associates, P.C.*, 912 F. Supp. 1566, 1581 (N.D. Ga. 1994) (allowing an admission to be amended or withdrawn where the opposing party was attempting to "obscure the matter being admitted" and the responding party offered testimony conflicting with the conclusion the opposing party was attempting to draw).

In addition, the Eleventh Circuit has noted that ambiguity can exist in admissions and the trial court has the discretion to determine the exclusive effect of those admissions. *Johnson*, 204 F.3d at 1335, 1340-41. The court noted that the conclusive effect of an admission may not be appropriate where requests or the responses are subject to more than one interpretation, that issues change as the case develops, and the relevance of discovery responses are related to their context in the litigation. *Id.* at 1340-41. (citing *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1210 (8th Cir. 1995).

This issue was also addressed in *Talley v. United States of America*, 990 F.2d 695 (1st Cir. 1993). *Talley* involved a dispute over an estate's tax liability and the court addressed the conclusive effect of a request for admission that was deemed admitted by the government's failure to respond. *Id.* The request at issue asked the government to "[a]dmit the payment of Nine Hundred Seventy-seven ($977.65) Dollars and 65/100 by John Talley concerning a Notice with Tax Due dated November 29, 1984, constituted full payment of the balance due on the estate of Percy Talley as set forth in that notice." *Id.* at 699. The court stated that the request was an invitation to confusion and misstates, by implication, the gist of the notice. *Id.* The request would allow one reader to think the admission would concede that the estate had in fact paid the amount set forth in the notice and another reader to think that it would concede the notice correctly stated the estate's tax liability. *Id.*

The court found the second reading asked the government to "admit a point that the government could not ever intentionally concede since – apart from inaccuracy - it would give away the lawsuit." *Id.* The court held "[t]o the extent that the question is ambiguous, that ambiguity is to be construed against *Talley* (whose lawyer drafted the request)." *Id.* The court further stated that "to the extent that common sense is a guide to construction, a reading that trivializes the

-5-

request is preferred to one that renders the request as absurd… and treating the government as bound by its admission of the request, we believe it admitted only what it never denied: that the $977.65 payment corresponded to the amount set forth in the notice." *Id.*

The Third Circuit has also addressed this issue in an action alleging conversion of a trust fund by corporate officers of a defendant. *Ark-Tenn Distributing Corp. v. Breidt*, 209 F.2d 359 (3rd Cir. 1954). There, plaintiff sued officers of the company alleging the company had defaulted on a contract, and that the officers converted funds. *Id.* Plaintiff asked, through a request for admission, that defendants admit they were officers of the corporation, which they admitted, and objected to the court allowing evidence that the officers did not participate in the management of the company after they admitted they were officers of said company. *Id.* at 360. However, the court found that the defendants only admitted they were officers, and held that an admission that one is an officer of a corporation is a far cry from admitting that one is active in its corporate affairs. *Id.* The court denied plaintiff's attorneys attempt to extrapolate an inference from the admission. Requests for admissions of a fact that relate to a "half truth" are improper and the party making a response to a request for admission of fact under Rule 36(a) "is not deprived of the right to explain, clarify, or elucidate concerning the subject-matter thereof… [and he] may do so either in the response made to requests or by examination or cross-examination of witnesses produced at the trial." *Knowlton v. Atchinson, T&S.F.RY. Co.*, 11 F.R.D. 62 (W.D. Missouri 1951).

Here, Tristar's request to admit at issue is a prime example of the gamesmanship and half-truths described above. Plaintiffs' admission is nothing more than an admission that he thought he had waited until the float valve dropped. However, Tristar's request is a loaded question. Had Plaintiff denied this request, Tristar undoubtedly would have urged this Court to infer from that response that Plaintiff misused the cooker. Mr. Copeland's admission that he thought the float

-6-

valve had dropped does not equate to a conclusive admission that the pressure cooker was not pressurized at the time of the accident. As explained above, Plaintiffs are allowed to explain and clarify that response through other evidence, and there is ample evidence that a jury may consider to conclude that Mr. Copeland was simply mistaken and the cooker was in fact under pressure. Such a finding would be supported by all of the evidence available, including Tristar's own expert's opinion and testimony. (Ex. C, p. 22; Ex. D, p. 174). Dr. Eshraghi also opines that the cooker was under pressure at the time of the incident and that Mr. Copeland simply could have been mistaken about the float valve due to the design of the pressure cooker, which is part of the ultimate issue. (Ex. B, p. 4). In fact, Dr. Eshraghi was asked about the request for admission at issue and he testified "that's what they say [b]ut I don't know if they know what they are talking about or if he could see it well (Ex. E - Depo. of Eshraghi, p. 108, ll 21-25).

     Dr. Eshraghi also testified that the time in which the float valve can drop varies between 45 and 55 minutes, and regardless he assured the cooker was pressurized. (*Id.* at 9. 111-112) Dr. Giachetti also testified that if Plaintiffs were mistaken or off on some of their timing, the cooker could have been pressurized. (Ex. D, p. 104). Finally, Alex Lazano, Tristar's corporate representative, who is also a mechanical engineer, testified that the float valve is recessed and that you have to look down into the handle to see if the valve is up or down. (Ex. F - Depo of Alex Lazano, p. 218, ll 8-15). The float valve is the same color as the surroundings in which it is housed and the distance in travel between the up and down position is only about an 1/8 of an inch. (*Id.* at p. 217). Importantly, Tristar testified that the purpose of the float valve is to allow the cooker to pressurize, not to alert the user as to whether the cooker is pressurized. (Ex. F, p. 220, ll 5-14). All evidence that is only proper for a jury to consider.

The ambiguity and possibility of multiple interpretations is further highlighted in both Mrs. Copeland's deposition and footnote 1 of Tristar's brief. Mrs. Copeland testified that:

> A. And the pin – When the valve drops the pin goes in (indicating).
>
> Q. So the – Oh, okay. So in other words, the position of the pin is related to that float valve?
>
> A. Yeah. That's part of the locking system.
>
> Q. Okay. And so did you typically make an observation to confirm that the float valve was down before opening?
>
> A. Well, it's kind of hard to see that part of it because it's down inside of a hole. So it's really not that visible seeing that, but the pin itself.
>
> Q. And you can see that the pin is in a different position when it drops down?
>
> A. When the valve is up where the pressure is on it, you can't move this pin.

(Ex. A, p. 96, ll 2-19). As explained in footnote 1 of Tristar's brief, Mr. Copeland checked the side of the pressure cooker where the locking pin was located, not what Tristar called the float valve. The pin was no longer sticking out, leaving Mr. Copeland to believe there was no steam/pressure inside the pressure cooker. (Doc. 28, p. 6, n. 1). This evidence shows that the Copelands may have been confused about the locking pin on the side of the pressure cooker lid and how it interacts with the float valve. A jury could conclude that Mr. Copeland thought because the locking pin was in, that meant the float valve was down. Tristar wants this Court to make a leap from this admission to conclude Mr. Copeland admits the cooker was not pressurized, which he cannot concede because it is undisputed that the cooker was pressurized. As stated above, common sense should be a guide to construction, and Tristar's extrapolation of this admission is absurd according to *Talley*.

For these reasons, Tristar's Motion for Summary Judgment should be denied by the Court. Nevertheless, in order to resolve any misunderstanding or inconsistencies with Mr. Copeland's admission and the established evidence, Plaintiffs move the Court to allow Mr. Copeland's response to Tristar's Request for Admission No. 15 be amended to the following:

> Amended Response to Request for Admission No. 15: Denied as stated. Mr. Copeland waited until he thought the float valve dropped before attempting to open the lid. Mr. Copeland did not utilize the float valve as the sole indicator to determine whether the cooker was pressurized.

**B. Tristar cannot show it will be prejudiced by the withdrawal/amendment of Plaintiff's admission to Request for Admission No. 15.**

Pursuant to Rule 36(b) of the Federal Rules of Civil Procedure, this Court is permitted to allow a responding party to amend or withdraw its response to a request for admission if the party who sent the request is not prejudiced by the withdrawal/amendment. The Eleventh Circuit in *Smith* provided an explanation of precisely how prejudice to the requesting party should be evaluated:

> The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions.

*Id.* at 1578 (quoting *Brook Village North Assox. V. General Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982).

Tristar will not be prejudiced by the withdrawal of Request for Admission No. 15 because the evidence in the case has already established that the cooker was pressurized and Tristar's convenient and misleading argument for purposes of its summary judgment motion is in direct contrast to its theory of the case. Because Tristar has taken the position that the cooker was pressurized at the time of the accident, it cannot be prejudiced by a withdrawal of the response at

-9-

issue or an amendment to said response reflecting what Mr. Copeland actually admitted - that he thought the float valve was in the down position. The withdrawal/amendment will in no way change Tristar's trial strategy and will not require it to complete any additional discovery. Simply put, Tristar will not be prejudiced by Plaintiffs' withdrawal/amendment to Tristar's Request for Admission No. 15.

### III.   CONCLUSION

As explained above, allowing the amendment or withdrawal of the response at issue would promote the presentation of the merits of the action, because Tristar's interpretation, that Mr. Copeland's admission conclusively establishes that the cooker was not pressurized, is in direct contrast to all of the other evidence in this case, including the physical evidence. Further, Tristar's extrapolation of this response stands in direct contrast to its own theory of how the subject incident occurred and cannot be prejudiced by an amendment to said admission reflecting what Mr. Copeland actually admitted - that he thought the float valve was in the down position.

Therefore, Plaintiffs request that the Court grant their Motion to Withdraw or Amend Responses to Request for Admissions.

Respectfully submitted,

This 11th day of March, 2024.

**REYNOLDS, HORNE & SURVANT**
6320 Peake Road
P.O. Box 26610
Macon, Georgia 31210
Telephone: (478) 405-0300
Facsimile: (478) 405-0550
msenn@reynoldsinjurylaw.com

*/s/ Marty K. Senn*
MARTY K. SENN
Georgia Bar No.: 513896
*Attorney for Plaintiff Edward A. Copeland and Sheryl Copeland*

**CERTIFICATE OF SERVICE**

This is to certify that on this date, the undersigned served a true and correct copy of the foregoing pleading with the Clerk of Court using the CM/ECF system and served all parties of record via electronic service through the CM/ECF system to:

Sanjay Ghosh
Steven H. Campbell
Nelson Mullins Riley & Scarborough LLP
201 17th Street NW, Suite 1700
Atlanta, GA 30363
sanjay.ghosh@nelsonmullins.com
steven.campbell@nelsonmullins.com
*Attorneys for Defendant*

David S. Osterman, Esq.
Thaddeus J. Hubert, IV, Esq.
Goldberg Segalla
301 Carnegie Center, Suite 200
Princeton, NJ 08540
dosterman@goldbergsegalla.com
thubert@goldbergsegalla.com
*Attorneys for Defendant*

This 11th day of March 2024.

**REYNOLDS, HORNE & SURVANT**
6320 Peake Road
P.O. Box 26610
Macon, Georgia 31210
Telephone: (478) 405-0300
Facsimile: (478) 405-0550
msenn@reynoldsinjurylaw.com

*/s/ Marty K. Senn*
MARTY K. SENN
Georgia Bar No.: 513896
*Attorney for Plaintiffs Edward A. Copeland and Sheryl Copeland*