**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **EDWARD A. COPELAND AND** | ) | |
| **SHERYL COPELAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No: 5:22-cv-00212-CAR** |
| | ) | |
| **TRISTAR PRODUCTS, INC., and** | ) | |
| **ABC, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT TRISTAR PRODUCTS, INC.'S BRIEF OPPOSING PLAINTIFFS'**
**MOTION TO EXCLUDE OR LIMIT THE OPINIONS OF DR. GIACHETTI**

Defendant Tristar Products, Inc. ("Tristar") files this brief in opposition to Plaintiffs'

motion to exclude or limit the opinions of Tristar's expert, Dr. Giachetti.

**PRELIMINARY STATEMENT**

Dr. Giachetti performed scientifically valid and reliable testing to determine whether the

Tristar PPC 780 was defective. In reaching his conclusion that the pressure cooker is <u>not</u> defective,

he reviewed Plaintiffs' discovery responses (unlike Dr. Eshraghi), attempted to replicate the

incident by following Plaintiffs' discovery responses (unlike Dr. Eshraghi), opined – upon

attempting to replicate the accident – that Plaintiffs' could not have operated the pressure cooker

as alleged since the pressure cooker could not be pressurized if their discovery responses are

accurate (Dr. Eshraghi agrees with this conclusion), and therefore opined Plaintiffs forced open

the pressure cooker while it was still pressurized, based upon, in part, his testing of the pressure

cookers, including an exemplar unit, to UL 136 (unlike Dr. Eshraghi).

Plaintiffs' argument that his opinions are contradictory and confusing, is incorrect. The opinions are not contradictory; Plaintiffs' injury narrative simply contradicts their claim the unit was still pressurized. How a consumer interacts with a product is critical evidence in a product liability case, and the experts are in agreement that no injury from a pressurized event could have occurred when Plaintiffs' conduct is recreated, per Plaintiffs' admissions and discovery responses. Thus, the scientific evidence establishes Plaintiffs interacted with the pressure cooker in a different manner than they allege.

Plaintiffs also move to preclude Dr. Giachetti from testifying that the pressure cooker was forced open once previously. But Plaintiffs' must prove the pressure cooker was in the same condition as sold, and this evidence allows a jury to conclude the pressure cooker was in a different condition on the date of the accident. Alternatively, the evidence allows a jury to conclude Plaintiffs misused the pressure cooker by forcing the lid off on the accident date (or that Plaintiffs spoliated the pressure cooker after the accident). Eshraghi agrees with Giachetti's conclusion that the pressure cooker was forced open once previously, and Plaintiffs' argument to preclude this evidence because it cannot be conclusively determined when the unit was previously forced open ignores that the evidence is relevant no matter what the jury concludes as to when the damage occurred.

Similarly, Plaintiffs' argument to preclude Giachetti from opining the lock's performance was compromised following the forced opening is flawed. Giachetti's opinion is premised upon his experience and knowledge of how the lock functions, and explains in his report how the damage to the lock reduces its ability to withstand force. Further, his testing of exemplar models establishes models which have not been previously forced open are capable of withstanding higher amounts of force than the subject model.

Plaintiffs move to preclude Giachetti from opining that producing 45 pounds of force to open the lid requires significant exertion because the opinion is unreliable, but it is not. Eshraghi conceded at his deposition that significant force is needed to utilize 45 pounds of force. Plaintiffs further argue Giachetti's opinion should be barred because he mistakenly failed to provide an article he cited in his report. This argument rests upon mistaken facts and is an example improper gamesmanship by Plaintiffs' counsel. First, Giachetti provides multiple reasons for his opinion, and only one of the reasons cites to the article. In other words, his rationale is not dependent on the article. Second, Plaintiffs' counsel (a) never asked for the document prior to Giachetti's deposition despite being provided his file three weeks before the deposition; (b) never asked for the document at the deposition, or after the deposition, and never asked to re-depose Giachetti upon receiving the document; (c) never met or conferred with counsel for Tristar regarding this erroneous discovery error; (d) never moved to address this purported discovery error with the Court; and (e) has refused Tristar's overtures to depose Giachetti again on this subject now that Plaintiffs' counsel is in possession of the article. Plaintiffs attempt to turn a *Daubert* motion into a de facto discovery sanction motion while simultaneously deliberately choosing to avoid remedying the issue, is improper.

Finally, Plaintiffs argue Giachetti is not qualified to offer opinions based upon burn patterns and that he provides an unreliable methodology. However, Giachetti has significant education and training in fluid dynamics, and published a peer reviewed article in the Journal of Burns, which sets forth the methodology he employed in this case. Plaintiffs' reliance on a prior order in *Williams v. Tristar Prods.,* 418 F. Supp. 3d 1212 (M.D. Ga. 2019) is misplaced for a variety of reasons, including that the facts and opinions were much different than the present matter, and *Williams* predates Giachetti's peer reviewed article on the subject matter.

## FACTUAL BACKGROUND

Dr. Giachetti is a Ph.D., educated mechanical engineer who focuses his work on biomechanics i.e., how humans interact with objects. His work particularly emphasizes "dynamic systems, experimental methods & measurement, design, [and] human performance." *See* Giachetti CV at 2, attached hereto as **Exhibit A**. Likewise, his research involves "human performance and effort generation[,]" including "human upright postural control." *Ibid*. Giachetti testified "all of the research that I have done in graduate school has basically been biomechanical related." *See* deposition transcript of Dr. Giachetti at 43:15-21, attached hereto as **Exhibit B**. Giachetti's Ph.D., "look[ed] at the control scheme of how we command our joints to make force." *Id*. at 43:22 – 44:10. "Biomechanical [engineering] is essentially using the tools of mechanical engineering looking at the human body . . . ." *Id*. at 44:1-3.

He "has applied these specialties to cases involving human-machine interaction, evaluation and testing of consumer products, acute and repetitive stress injuries, accident investigation, human performance testing [and] failure analysis." *See* Exhibit A at 1. He is licensed in Illinois and Oklahoma, and is a member of ASTM International and ASME (American Society of Mechanical Engineers). *Id.* at 2. Giachetti "is an active member in ASTM and ASME committees related to sports equipment, consumer products, and power transmission and gearing." *Id*. at 1.

He utilizes his education and experience as mechanical engineer to assist companies in designing products before they are sold, including pressure cookers. *Id*. at 22:6-21; 45:7-20; 72:6-21. He has been retained as an expert in pressure cooker litigation by both Tristar and Sensio. *Id*. at 45:7-13. He has previously been qualified by a Court to opine as an expert for Tristar. *Id*. at 32:23 – 33:14.

Because his expertise involves the fields of mechanical and biomechanical engineering in the context of how humans interact with consumer products, he published a peer reviewed article in the Journal of Burns, analyzing how water/fluid acts when released from a pressure cooker. *Id*. at 50:21 – 53:17; 176:14-23. Giachetti explained "one aspect of the paper is how do contents go from inside the pot to the person and what are the characteristics of that . . . ." *Id*. at 52:7-13. "The second part is how does the fill level in the pressure cooker, how does that affect how those contents come out . . . . *Id*. at 52:14-16. "The third part would be what does it take for someone to get burned and how do their clothes influence [their burns] . . . ." *Id*. at 52:17-19. "And then the fourth part is how fast does this happen . . . is it possible for someone to change what they're doing before the contents touch them. *Id*. at 52:20-23.

The tests were performed in a manner so that the pressure cooker lid could be removed without the need for a human. The pressure cooker was placed on a table with the same height as a standard countertop and with a mannequin standing in front of the pressure cooker (a PPC 780 was tested, the same a model at issue in this litigation). *See* Journal of Burns, *Characterization of the release of heated and pressurized water from a pressure cooker*, at 2-3, attached hereto as **Exhibit C**. The pressure releases of water were recorded using five different cameras, including a thermal camera to measure thermal data. *Id*. at 3.

The tests revealed how the water exited the pressure cooker at different levels of pressure with varying amounts of water in the pressure cooker. Tests with higher pressure and with a fully filled pressure cooker resulted in a larger displacement of water than those tests with lower levels of pressure with a less than fully filled pressure cooker. *See* chart below.[1]

---

[1] The chart uses various terms to characterize how the water exited from the pressure cooker. The meanings of those terms can be found on page 6 of the article. For example, the term "column" means "liquid travels upward and above the rim of the vessel." *Id*. at 6.

| Table 1 – Qualitative visual results. Color coding provides an indication of how much water contacted the mannequin surface/shirt from arm's length away. | | | | |
| --- | --- | --- | --- | --- |
| Nominal volume (cups) | Pressure (PSIg) | | | |
| | 1 | 2 | 3 | 4 |
| 4 | No expulsion, lid remains on top of pressure cooker | Not performed[a] | Splash, no surge. Droplets on chest. | Spatter on chest, neck, face. Column. |
| 6 | No expulsion, lid remains on top of pressure cooker | Droplets on hands. Splash, but, no surge. | Splash. Droplets on chest, neck, face, & arms. Column. | Spatter on chest, neck, face. Column. |
| 10 (half full) | Several droplets of water contact torso area. | Surge. Droplets on arms. Water disperses in all directions. | Spatter on face neck chest & shoulders. Chest wetted. Column | Spatter on face, neck, chest shoulders. Column. |
| 20 | Wetted lower torso and arms. Surge on sides of unit. | Wetted Chest, neck, face, shoulders. Column. | Wetted Chest shoulders neck face. Column. | Wetted Chest, face, neck, arms. Column. |
| [a] Trial eliminated due to results of 6 Cups @2 PSIg; color represents worst-case based on known information. | | | | |

[*Id.* at 4.]

The difference in how the water is expelled from the pressure cooker is best understood from the visual documentation provided by the cameras. For example, we can see that 20 cups of water escapes much differently from the pressure cooker at 1 psi than it does at 2, 3 or 4 psi. *See* photographic chart below.



[*Id*. at 5.]

Based upon the testing and documentation, Giachetti concluded "the study found that both pressure and volume play a role in the features of water dispersion after opening. Conditions with higher fill volumes and/or higher pressures resulted in more contents being ejected from the pressure cooker. These instances confirmed the symmetric dispersion of liquid that traveled at speeds in excess of human reflexes." *Id*. at 11. The study also concluded clothing may keep the hot liquid in contact with the skin for longer periods of time and is expected to worsen burn injuries. *Ibid*.

For his opinions in this case, Giachetti reviewed Plaintiffs' interrogatories, admissions and deposition testimony. *See* Giachetti's 6.28.23 report at 2, attached hereto as **Exhibit D**. "The testimony and admissions in this matter all state that the float valve on the unit was down  . . . this is consistent with my test where I cooked 4.5 pounds of boneless chuck roast according to the Copeland recipe and found that the unit had completely depressurized 45 minutes after the cook cycle had completed and was unplugged." *Id*. at 19. Giachetti opened the pressure cooker after 45 minutes because Plaintiffs' interrogatories state the unit was allowed to sit for 45-60 minutes after the cook cycle completed. *Id*. at 9.

His review of the subject pressure cooker revealed "physical evidence on the pressure cooker itself indicates that the lid had been forcefully opened at least one time." *Id*. at 19; 16. Further, the "locking pin of the pressure cooker was not within the same tolerances as the exemplar that I reviewed . . . ." *Id*. at 20. Testing of exemplar units proved that the PPC 780 passes UL 136 when the lock has not been previously forced open. *Id*. at 17-19. "I reviewed the locking mechanism on the incident unit and found that it was degraded." *Id* at 20. Dr. Giachetti explains that "because tolerances are small and material is lost on the locking tab when the lock is forcefully

overcome . . . the loss in the distance the locking pin needs to travel around the locking tab . . . reduces the ability of the lock to withstand external opening force." *Ibid.*

Giachetti's testing of the subject pressure cooker established 45 pounds of force is needed to open the subject unit, and "45 pounds of force is a significant amount of force to apply, and if Mr. Copeland only had one hand on the lid holding the handle, consistent with Mr. Copeland's testimony, it would require more than 45 pounds because the lid handle has approximately 5/6[th] of the mechanical advantage for lid turning as compared to the lid edge."

In laymen's terms, if the handle was on the edge of the lid, one could get leverage and open it easier while under pressure. However, the handle is situated on the center of the lid, reducing the leverage. In numerical terms, with the handle being centered on the lid, the user has 5/6 of the mechanical advantage for turning the lid as compared to the handle being on the lid's edge. *See* declaration of Robert Giachetti at ¶10-11. In perhaps a more familiar context, imagine trying to loosen a lug nut from a car wheel using a two inch wrench. It would be very difficult. However, when using a 14 inch lug wrench it is much easier. With the 14 inch lug wrench, the user exerts force far outside the center of the bolt and this creates more leverage. Thus, the pressure cooker handle's location requires the user to input more than 45 pounds of force with one hand.

Giachetti ultimately opines (1) when he recreated the recipe per Plaintiffs' discovery responses, the unit is not pressurized; (2) Plaintiffs' narrative is therefore inconsistent with a pressurized unit; (3) no evidence exists establishing that the pressure cooker is defective, rather exemplars pass UL 136 – and even with a broken lock – significant force is needed to open the subject unit; and (4) the burns observed on Mr. Copeland's arms are consistent with the unit being forced open while pressurized. *Id*. at 21-22.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    Giachetti's opinion that Plaintiffs' conduct would result in a non-pressurized pressure cooker satisfies rule 401, rule 702, and does not violate rule 403.**

Plaintiffs' argument to exclude Giachetti's opinions that Plaintiffs' narrative is inconsistent with a pressurized unit lacks merit. We know this because Eshraghi agrees with Giachetti that if the float valve was down, as Plaintiffs repeatedly allege, the unit must be depressurized. *See* deposition testimony of Dr. Eshraghi at 37:18-20; 40:3-9; 43:3-18; attached hereto as **Exhibit E**.[2] Giachetti further confirmed the unit would not be pressurized by recreating Plaintiff's recipe, and conduct by waiting 45 minutes before checking the unit to see if it was still pressurized. It was not. *See* Exhibit D at 19.

Giachetti's attempt to recreate what Plaintiffs claim they did is relevant because it tends to disprove how Plaintiffs claim they interacted with the unit. *See* FRE 401 ("evidence is relevant if it had any tendency to make a fact more or less probable than it would without the evidence and the fact is of consequence in determining the action."). And it supports Tristar's argument that the unit was forced open while pressurized in contravention of the owner's manual, Plaintiffs' prior use and experience with the unit and common sense. Stated simply, Giachetti's analysis allows him to opine the accident could not have happened as Plaintiffs allege.

This opinion – combined with Giachetti's other opinions – allows him to explain to the jury what did not happen and what did happen in a forensic, scientific manner based upon his various testing (recreating the recipe, UL 136 testing), and Plaintiffs' admissions and testimony. Thus, his opinions help the trier of fact understand the evidence and facts in issue (what did Plaintiffs do with the pressure cooker); the testimony is based on sufficient facts and data

---

[2] Eshraghi failed to review relevant data and performed less testing than Giachetti. Eshraghi did not review Plaintiffs' response to request for admissions; did not attempt to replicate what Plaintiffs claim occurred; and did not perform a UL 136 test or test an exemplar unit. *Id.* at 54:21 – 55:3; 32:24 – 33:18; 17:10-16; 30:20-22; 66:23-25.

(Plaintiffs' admissions and testimony; forensic testing); the opinion is reliable as both experts agree the unit could not be pressurized per Plaintiffs' admission and is consistent with how the pressure cooker works; and the opinion that the pressure cooker could not be pressurized per Plaintiffs' discovery is reliably applied to the facts of the case because Giachetti is utilizing what Plaintiffs claim occurred and applying his scientific knowledge and testing to determine if those assertions are valid. Thus, rule 702 is satisfied.

Giachetti's opinion that Plaintiffs' narrative is inconsistent with a pressurized unit does not confuse or mislead the jury in violation of 403. As stated above, Giachetti's opinion helps the jury understand the accident could not have occurred as Plaintiffs claim.

Plaintiffs obviously have a strong motive to preclude opinions which dispute their version of events, but they lack any legal grounds for doing so, and willingly ignore their own expert's admissions on the topic in making this argument.

## II.    The condition of the pressure cooker is relevant and helpful to the jury regardless of whether the pressure cooker was damaged before the accident or on the date of the accident.

Plaintiffs' argument to preclude Giachetti from opining as to the condition of the pressure cooker lacks merit. Both experts agree that the pressure cooker was previously forced open. *See* Exhibit E at 58:6-18; Exhibit D at 14. The testimony is relevant because it tends to prove that Plaintiffs either (1) forced open the unit prior to the accident, or (2) forced open the unit on the day of the accident. If the jury concludes Plaintiffs forced open the unit prior to the accident, and accepts Giachetti's opinion that such conduct degrades the lock, Plaintiffs cannot prove their case. *See* O.C.G.A. §51-1-11(b)(1) ("The manufacturer . . . shall be liable in tort . . . who suffers injury . . . because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury

sustained."). Alternatively, if the jury finds Plaintiffs forced open the unit on the day of the accident, such a finding would support Tristar's misuse defense. Thus, the failure to precisely determine when the unit was damaged does not make the opinion unreliable.[3]

Plaintiffs further argue that Giachetti should be precluded from discussing that marks on the float valve indicate that the lid was turned several times while the unit was under pressure. Plaintiffs argue that because Giachetti concedes it is unknown whether these openings were actual attempts to force open the lid, or merely an attempt to verify if the unit was still pressurized, with the user stopping his or her actions after encountering resistance, the opinion is unreliable. But Giachetti's concession is what helps make this opinion reliable because he is not speculating what occurred. He is simply explaining the two possibilities that exist for the creation of the marks to the float valve.

This opinion is helpful to the jury because it allows the jury to understand what damage a forceful opening does to the unit versus a non-forceful attempt, and assists the jury in understanding why forcefully opening the unit degrades the locking mechanism whereas a non-forceful attempt would not. The opinion also serves to educate the jury on how the lock functions. Moreover, the opinion allows the jury to conclude that Plaintiff struggled to open the unit several times before he successfully forced it off, a key issue in this litigation.

For example, when the lid is merely turned while the unit is pressurized, the float valve will contact the strike plate and cause witness marks. *See* Exhibit D at 16; exhibit B at 118:5-11. If the user does not continue to open the lid after encountering resistance, no other damage will occur. But when the user persists after encountering resistance and the lid is forced off, not only

---

[3] A third option is that the unit was forced open after the accident and the evidence was spoliated, which would give rise to an adverse inference instruction given the fact that exemplar units passed UL 136.

will the float valve have damage, but so too will the locking tab. *Ibid.* The float valve - when in the up position - precludes the locking pin from traveling over the locking tab keeping the unit locked. *Id.* at 8. When opened under pressure, the float valve is defeated and the locking pin becomes compressed into the locking tab since the float valve is trying restrain it, and subsequently causes damage to the locking tab. *Id.* at 9. When the pin is not restrained, it travels freely over the locking tab.

**III.    Giachetti's opinion that 45 pounds is significant force is confirmed by Eshraghi and is not dependent upon any specific article. Further, Plaintiffs' attempt to exclude expert testimony for a discovery error they never sought to cure and have refused Tristar's attempt to remedy, is improper gamesmanship.**

   **a.    Plaintiffs' substantive argument fails.**

Plaintiffs argue Giachetti's opinion that utilizing 45 pounds of force requires significant effort is unreliable. This argument lacks merit. First, Plaintiff's own expert concedes that 45 pounds is significant force. *See* Exhibit E at 125:22-25.  The issue is undisputed and the opinion is reliable.

   Second, Giachetti's opinion is well within his knowledge, experience and research in biomechanics and the application of force, as well as his experience with the PPC 780. *See* Exhibit B at 133:2-17; 144:5-17. With respect to his experience with the unit, Giachetti explained "if there is no pressure in this unit, you can rotate it open and closed with a couple of things [sic], maybe even one finger. So that's the threshold of force that's required when it's not pressurized and having measured it on other units, that two-finger force is somewhere around like a twentieth of a

pound. So now we're measuring a force that's 40, 45 pounds so that we're talking, you know, hundreds of times more effort required." *Id*. at 133:8-17. His reasoning is not dependent upon a specific article.

Third, Plaintiffs' argument is premised upon cherry picking portions of his report. But Giachetti provides the reasoning for his opinion in his report without citing to or relying upon the article Plaintiffs did not have. The highlighted portion of his report – wherein Dr. Giachetti explains the location of the lid's handle would require more than 45 pounds of force to remove with just one hand - makes this clear. *See also* declaration of Robert Giachetti at ¶10-13.

> edge would be required to overcome the lock. 45 pounds of force is a significant amount of force to apply, and if Mr. Copeland only had one hand on the lid holding the handle, consistent with Mrs. Copeland's testimony, it would require more than 45 pounds because the lid handle has approximately 5/6th of the mechanical advantage for lid turning as compared to the lid edge. 45 pounds represents a substantial effort to generate, this amount of force represents approximately 58% of the mean maximum effort of one-handed pushing ability of 23 year old males when pushing at elbow height, and 66% of the mean maximum effort in pushes exerted at shoulder height.[2] Increases in internal pressure is also expected to increase the amount of effort required to open the lid.

[Exhibit D at 20.[4]]

Further, the reliability of his rationale is undisputed. Eshraghi agrees with Giachetti's proposition that it would be difficult to open the lid with one hand given the location of the lid's handle. In fact, because it is so difficult, Eshraghi concedes two hands would be needed. *See* Exhibit D at 126:3-12.

---

[4] The article is cited to provide statistics of a study showing that to apply 45 pounds of force would take about 60% of a young male's maximum effort or ability. *See* Adult Data, The Handbook of Adult Anthropometric and Strength Measurements, attached hereto as **Exhibit F**.

```
3       Q.  Mr. -- Dr. Giachetti says "If Mr. Copeland
4   only had one hand on the lid holding the handle,
5   consistent with Mrs. Copeland's testimony, it would
6   require more than 45 pounds because the lid handle
7   has approximately 5/6 of the mechanical advantage
8   for lid turning as compared to the lid edge."
9       Do you agree with that opinion?
10      A.  So I say that if you want to rotate the
11  handle and not the base, you probably need two
12  hands.
```

Fifth, Plaintiffs argue Giachetti's opinion is unreliable because he agreed with counsel a person's perception of how much force they exert is subjective. *See* Pl. br. at 10. But this is an accurate statement as are the following: a person's perception of pain is subjective, and so is a person's belief the temperature is hot or cold. Opinions based upon human perception are inherently subjective, but Giachetti's opinion is not that perception is subjective, it is that scientists have developed how to objectively quantify how much force must be applied to open an object regardless of the person's subjective perception. Giachetti's testimony makes this abundantly clear. *Id.* at 145:6-19.

Plaintiffs essentially argue because Mr. Copeland said it was easy to open the pressure cooker, and because Giachetti agreed a person's perception is subjective, Giachetti's opinion therefore must be unreliable. But Giachetti's opinion is simply that the use of force can be quantified regardless of what a person perceives, and from a scientific, objective analysis, 45 pounds if not easy or effortless force. *See also* Exhibit E at 125:22-25.

**b.  Plaintiffs' discovery argument fails.**

Plaintiff improperly raises an alleged discovery error in a *Daubert* motion in order to obtain a draconian punishment against Tristar. Rather than work with Tristar to remedy a discrete discovery error, Plaintiffs desire to bar portions of Giachetti's testimony and exclude relevant

testimony to gain an advantage at trial. Plaintiffs' argument is nothing more than superficial "gotcha" game in which Plaintiffs are actively refusing to accept Tristar's attempt to remedy any potential prejudice to Plaintiffs.

For example, Tristar provided Giachetti's file on 1/12/24. At that time, Tristar advised Plaintiffs' counsel Giachetti was in the hospital awaiting the premature birth of daughter, and was unsure if his entire file had been produced. *See* 1/12/24 email, attached hereto as **Exhibit G**. Between 1/12 and 1/31/24, the date of Giachetti's deposition, Plaintiffs' counsel never advised he was missing any documents from Giachetti's file. At Giachetti's deposition, Plaintiffs' counsel acknowledged – through his questioning of Giachetti – that Plaintiffs' counsel knew the document had not been supplied. *See* Exhibit B at 141:18-23. During the remainder of the deposition, Plaintiffs' counsel did not approach Tristar's counsel or Giachetti for the document. Plaintiff did not pause the deposition so that Giachetti could email the document. Plaintiffs' counsel did not ask for the article after the deposition and did not meet and confer with Tristar to remedy the erroneous discovery error. Nor did Plaintiffs' counsel file a discovery motion to obtain the article and re-depose Giachetti on this limited issue. Instead, Plaintiffs' first and only move was to bar the opinion.

Upon receiving Plaintiffs' motion, Tristar reached out to Plaintiffs' counsel, provided him with the article (which is publicly available), and advised him he could re-depose Giachetti on the article. *See* email dated 2/22/24, attached hereto as **Exhibit H**. Plaintiffs' counsel responded "I am certainly no trying to be difficult, but have a trial starting on the 11th, so I don't have any availability between now and the response dates." *See* 2/28/24 email from Plaintiffs' counsel to Tristar's counsel, attached hereto as **Exhibit I**. Thus, Plaintiffs' counsel agrees in principle with Tristar's remedy and Tristar has acknowledged it will accommodate Plaintiffs' counsel and make

Giachetti available after the return date of this motion. *See* 2/28/24 email from Tristar to Plaintiffs'
counsel, attached hereto as **Exhibit J**. Plaintiffs' counsel has not responded to Tristar's email as
to which dates work for him to re-depose Giachetti.

Assuming Plaintiffs' counsel has not responded to Tristar's latest email because he has no
sincere desire to remedy this issue, his litigation tactic runs counter to the purpose of discovery
and the procedure for curing discovery violations. Parties conduct discovery so that trials may be
decided on their merits. If a party is not provided discovery that it is owed, the federal rules of civil
procedure provide several remedies to alleviate this prejudice, which Plaintiffs' counsel has not
availed himself of i.e., following up for the discovery, meeting and conferring, and filing a motion
to compel if necessary. *See* FRCP 37(a)(B)(iv). If a party remains delinquent with providing
discovery after an order to compel is granted, the party seeking discovery may move for sanctions,
and those sanctions include striking certain defenses or prohibiting the delinquent party "from
introducing designated matters in evidence." *See* FRCP 37(b)(2)(A)(ii). But Plaintiffs' counsel
chose to skip all these steps and make a de facto discovery sanction argument in a *Daubert* motion
despite Tristar's attempt to remedy the matter. Plaintiffs' argument is meritless.

IV.    **Giachetti's opinion that the burns observed on Mr. Copeland's arms are
consistent with the unit being forced open while pressurized satisfies 702.**

a.    **Giachetti is qualified.**

Plaintiff argues Giachetti is not qualified to opine the location of the burns is consistent
with a pressurized release requiring force. Specifically, Plaintiffs argue Giachetti must be a
medical doctor to make this opinion. *See* Pl. Br. at 11. But his qualifications are demonstrated in
his CV and his peer reviewed article where he describes testing how fluid escapes from the pressure

cooker and his education and experience in dynamics.[5] The burns to Mr. Copeland went up to his chest, chin and neck consistent with a pressurized release. *See* Exhibit D at 13. Plaintiffs fail to explain how a medical doctor would have the requisite expertise to discuss how contents escape from a pressure cooker at different pressures, but a mechanical engineer who focuses on dynamics, biomechanics and pressure cookers, like Giachetti, does not.

Mechanical engineers with experience in biomechanics routinely opine as to the movement of humans or the location of humans while interacting with machines to determine causation or to reconstruct an accident. *See Bowers v. Norfolk S. Corp*., 537 F. Supp. 2d 1343, 1377 (M.D. Ga. 2007) ("Biomechanical engineers apply 'the principles in mechanics to the facts of a specific accident and provide information about the forces generated in that accident.' *Smelser v. Norfolk S. Ry. Co*., 105 F.3d 299, 305 (6th Cir. 1997), *abrogated on other grounds*, *Morales v. Am. Honda Motor Co*., 151 F.3d 500, 515 & n.4 (6th Cir. 1998). They may also 'explain how the body moves in response to those forces, and . . . determine what types of injuries would result from the forces generated.' *Id*. Thus, biomechanical engineering is closely related to, and may sometimes overlap with, the field of medicine."). "In the context of litigation, therefore, biomechanical engineers typically are found to be qualified to render an opinion as to the forces generated in a particular accident and the general types of injuries those forces may generate." *Bowers*, *supra*, at 1377.

Thus, in *O'Neal v. Norfolk Southern R.R. CO*., 2018 U.S. Dist. Lexis 112185 at *1-2; 11-16 (M.D. Ga. 2018), the Court allowed a mechanical engineer with a biomechanical background to provide an opinion disputing plaintiff's characterization regarding the manner in which he fell from a chair.

---

[5] *See* declaration of Robert Giachetti at ¶6-9.

Here, Giachetti, similar to the expert in *O'Neal*, disputes Plaintiff's version of events and opines Plaintiff could not have generated enough force with one hand to open the pressure cooker. He further opines that the location of the burns are indicative of using more than one hand to open a pressurized pressure cooker. *See* Giachetti's deposition transcript at 175:9 – 178:8; 172:17 – 173:11. Giachetti's reconstruction of the accident to opine upon causation is entirely within his knowledge and experience, and are the sort of opinions engineers regularly provide, and his opinions do not include any medical diagnosis. *See Bowers*, *supra*, at 1377. ("[U]nlike medical doctors, biomechanical engineers normally do not "diagnos[e] and treat[] human physical ailments, conditions, diseases, pain, and infirmities.").[6]

### b.    Giachetti's methodology is based upon his peer reviewed article.

Plaintiffs claim Giachetti's methodology is unreliable because he did not use any formulas or equations to arrive at his conclusion. *See* Pl. Br. at 12. But Plaintiffs do not explain why a formula or equation is necessary, and this argument contradicts their prior argument that a medical doctor is needed to make these opinions since they do not utilize equations. Giachetti's peer reviewed article makes clear formulas and equations are not needed to opine the unit was pressurized.[7] The photographic data from his tests supports his opinion that burns to Mr. Copeland's chin and neck - in comparison to his stature and relative location to the pressure cooker - is evidence of a pressurized event.

---

[6] Giachetti reviewed the photographs of the burns and the medical records, which includes the doctors' medical diagnoses, to determine the location of the burns since the location of the burns are relevant to recreating the accident. He did not independently diagnose the location of Plaintiff's burns or the severity of the burns. Further, the location of the burns are not the subject of any dispute. *See* declaration of Robert Giachetti at ¶14. *See also* Giachetti's report at 2.

[7] Plaintiffs allege the unit was pressurized so the purpose of Plaintiffs' argument to preclude Giachetti from making this opinion is unclear.

c.      **Giachetti's methodology is based upon his testing, expertise, and Eshraghi's testing.**

Plaintiffs appear to seek to preclude Giachetti from opining as to the location of Plaintiffs' hands at the time of the accident. *See* Pl. Br. at 11-12. Plaintiffs clearly do not want Giachetti to opine that Mr. Copeland used two hands, because such a fact suggests he forced open the pressure cooker. Giachetti's opinion as to the location of Plaintiff's hands rests upon four separate grounds. First, his testing shows significant force is needed to open a pressurized unit – whether it be the subject unit with a broken lock (45 pounds) or an exemplar (more than 100 pounds). Second, Eshraghi's testing – which Giachetti reviewed – shows two hands are needed to open the unit under pressure.[8] Giachetti opined Mr. Copeland's second hand acted as a counterbalance to help open the pressure cooker and Eshraghi's testing confirmed Mr. Copeland would need to do that. *See* Exhibit B at 170:12 – 173:11. Third, Giachetti's experience informed him the unit cannot be opened with one hand while under pressure because the base will rotate away, and Eshraghi's testing confirmed what he believed from his prior experience. "I've seen from – well, it was my experience beforehand that you can't just turn the lid because the whole base will rotate or move away, and Dr. Eshraghi showed that. So you're going to need to exert force to keep that pressure cooker from moving around on you." *Id.* at 173:6-11. Fourth, the location of the burns informs Giachetti where Mr. Copeland's hands were positioned. *Id.* at 173:12 – 175:7.

d.      **Plaintiffs' argument that Giachetti has no methodology to support his opinion that force is needed to remove the pressure cooker ignores his objective, scientific testing.**

---

[8] Eshraghi manually opened the subject pressure cooker while pressurized. His testing revealed that he was unable to open it with one hand. He could only open it with two hands. *See* Exhibit E at 93:6 – 97:1; 115:21 – 116:2.

Plaintiffs transform their argument from claiming Giachetti cannot opine about as to the location of Plaintiff's hands to "Giachetti opines that they did force it open because it was under pressure, but offers no methodology to support that opinion." See Pl. Br. at 13. This argument is blatantly incorrect. First, Giachetti tested the subject unit (with its broken lock) and found it was difficult to open (45 pounds of force). Second, Giachetti tested an exemplar unit and found that it passed UL 136 i.e., it withstood 100 pounds of force at the edge of the lid. Third, Eshraghi opines the unit is not defective if it passes UL 136. See Exhibit E at 32:9-12. Fourth, both experts agree UL tested the PPC 780 and UL certified that it passed. Id. at 46:14 – 47:19; Exhibit B at 191:8-20. See also UL certificate of compliance, attached hereto as **Exhibit K**.

  e. **Plaintiffs' reliance on _Williams_ ignores that the facts of this case differ from _Williams_ and so do Giachetti's opinions.**

The dispute in _Williams_ was whether Plaintiff spilled the contents of a Tristar Wal1/TRI6 pressure cooker after forcibly removing the lid while nominal pressure remained resulting in a spill or whether the lid explosively separated from the base without plaintiff touching the lid. This issue is not present in the current litigation nor is the pressure cooker model the same. _See Williams v. Tristar Prods.,_ 418 F. Supp. 3d 1212, 1218, 1223 (M.D. Ga. 2019). Thus, the _Williams_ Court barred Giachetti from opining that "Plaintiff's burns were caused from the contents of the pressure cooker spilling onto her after attempting to open the pressure cooker . . . ." _Id_. at 1223. (Emphasis added). Here, Giachetti is not opining a spill occurred and the methodology he utilized to reach his opinion – which the Court found unreliable – is not at issue.

Further, the Court barred Giachetti's opinion that the pressure cooker was forcibly opened since it contradicted plaintiff's testimony, and he could not contradict her testimony "[w]ithout affirmative scientific or physical evidence that the pressure cooker lid was forced opened [because without such evidence], this opinion is mere speculation." _Ibid_. Here, Giachetti has ample

scientific and physical evidence to contradict Plaintiff's assertion that it was easy to open the pressure cooker.

Giachetti's opinion that Plaintiff forced open the pressure cooker is premised upon scientific and physical evidence. His testing of the unit, and an exemplar unit proves substantial force is needed to open the pressure cooker. Even Eshraghi conceded the subject unit was difficult to open necessitating the use of two hands. And we know UL certified that the pressure cooker passes UL 136. Moreover, inspection of the subject pressure cooker established damage to the locking tab which occurs from forcing the unit open.

Respectfully submitted, this 12th day of March, 2024.

> */s/ Sanjay Ghosh*
> Sanjay Ghosh
> Georgia Bar No. 141611
> Steven H. Campbell
> Georgia Bar No. 161457
> NELSON MULLINS RILEY & SCARBOROUGH LLP
> 201 17th Street NW | Suite 1700
> Atlanta, GA 30363
> (404) 322-6000
> (404) 322-6050 (fax)
> sanjay.ghosh@nelsonmullins.com
> steven.campbell@nelsonmullins.com
>
> David S. Osterman
> Thaddeus J. Hubert, IV
> GOLDBERG SEGALLA
> 301 Carnegie Center Drive | Suite 200
> Princeton, NJ 08540
> (609) 986-1386
> (609) 986-1301 (fax)
> dosterman@goldbergsegalla.com
> thubert@goldbergsegalla.com
>
> *Attorneys for Defendant Tristar Products, Inc.*

**CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the within and foregoing **DEFENDANT TRISTAR PRODUCTS, INC.'S BRIEF OPPOSING PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT THE OPINIONS OF DR. GIACHETTI** with the Clerk of Court utilizing the CM/ECF electronic filing system which will automatically send notification of such filing to all attorneys of record listed below, who are registered participants in the Court's electronic notice and filing system.

W. Carl Reynolds, Esq.
creynolds@rmtriallaw.com
Marty K. Senn, Esq.
msenn@reynoldsinjurylaw.com
Michael G. Horner, Esq.
mhorner@reynoldsinjurylaw.com
REYNOLDS, HORNE & SURVANT
6320 Peake Road
P.O. Box 26610
Macon, GA 31210

*Attorneys for Plaintiffs Edward A. Copeland*
*and Sheryl Copeland*

This 12th day of March, 2024.

/s/ Sanjay Ghosh
Sanjay Ghosh
Georgia Bar No. 141611
Steven H. Campbell
Georgia Bar No. 161457
NELSON MULLINS RILEY & SCARBOROUGH LLP
201 17th Street NW | Suite 1700
Atlanta, GA 30363
(404) 322-6000
(404) 322-6050 (fax)
sanjay.ghosh@nelsonmullins.com
steven.campbell@nelsonmullins.com

*Attorneys for Defendant Tristar Products, Inc.*