Page 1

1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE MIDDLE DISTRICT OF GEORGIA

3               MACON DIVISION

4

5   CIVIL ACTION NUMBER:  5:22-CV-00212-TES

6   EDWARD A. COPELAND

7   and SHERYL COPELAND,

8            Plaintiff(s),

9            vs.

10  TRISTAR PRODUCTS, INC.,

11  and ABC, INC.,

12           Defendant(s).

13

14

15        DEPOSITION TESTIMONY OF:

16            SHERYL COPELAND

17            June 6, 2023

18     VIA REMOTE VIDEO-CONFERENCE

19

20            Exhibit C

21

22

23  COURT REPORTER:

24  Angela Smith McGalliard,

25  RPR, CRR, CCR

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 2

1              *  *  *  *  *  *  *  *  *  *  *  *  *

2                        I  N  D  E  X

3                       EXAMINATION

4                                            PG    LN

5       By Mr. Osterman                       5    15

6              DEFENDANT'S EXHIBITS

7                                            PG    LN

8       Exhibit 2   Photograph               43    15

9       Exhibit 3   Photograph               45    22

10      Exhibit 1   Copy of manual, Power    87    22

11                  Pressure Cooker XL,

12                  model PPC780

13      Exhibit 4   Answers to               92    19

14                  Interrogatories

15      Exhibit 5   Photograph of           100    21

16                  pressure cooker

17              *  *  *  *  *  *  *  *  *  *

18

19

20

21

22

23

24

25

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 3

1               A P P E A R A N C E S

2          (All counsel attended remotely.)

3

4    FOR THE PLAINTIFF(S):

5               MARTY K. SENN, ESQUIRE

6               REYNOLDS HORNE & SURVANT

7               Macon, Georgia 31221

8               msenn@reynoldsinjurylaw.com

9

10   FOR THE DEFENDANT(S):

11              DAVID S. OSTERMAN, ESQUIRE

12              GOLDBERG SEGALLA

13              301 Carnegie Center Drive

14              Suite 200

15              Princeton, New Jersey 08534

16              dosterman@goldbergsegalla.com

17

18   VIDEOGRAPHER:

19              Michael Brown - Veritext

20

21

22              (Reporter disclosure made

23   pursuant to Article 8.b of the Rules and

24   Regulations of the Board of Court Reporting

25   of the Judicial Council of Georgia)

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 4

1              I, Angela Smith McGalliard,

2    Registered Professional Reporter, Certified

3    Realtime Reporter and Certified Court

4    Reporter, duly licensed in the State of

5    Georgia, acting as Commissioner, certify

6    that on this date, as provided by the

7    Federal Rules of Civil Procedure, there

8    came before me via remote video-conference,

9    beginning at 10:02 a.m., Sheryl Copeland,

10   witness in the above cause, for oral

11   examination, whereupon the following

12   proceedings were had:

13              VIDEOGRAPHER:  We're on the

14   Record.  Date is June 6, 2023; time on the

15   video monitor is 10:02 a.m.  This marks the

16   beginning of video number one, deposition

17   of Sheryl Copeland, in the matter Edward

18   Copeland, et al., versus Tristar Products,

19   Incorporated, et al.

20              My name is Mike Brown, I'm

21   representing Veritext Legal Solutions, I'm

22   the videographer.  Our court reporter,

23   Angie McGalliard.

24              Counsel, please state your name

25   for the Record and whom you represent.

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 5

1          MR. OSTERMAN:  My name is David

2    Osterman, I'm an attorney with the firm of

3    Goldman Segalla.  I'm appearing remotely,

4    and I represent Defendant Tristar Products,

5    Incorporated.

6          MR. SENN:  My name is Marty Senn.

7    I represent Sheryl Copeland and Sheryl

8    Copeland as next of kin of Edward Copeland.

9          VIDEOGRAPHER:  Will the court

10   reporter please swear in the witness.

11              SHERYL COPELAND,

12   being first duly sworn, was examined and

13   testified as follows:

14                  EXAMINATION

15   BY MR. OSTERMAN:

16      Q.    Mrs. Copeland, my name is David

17   Osterman, we just met moments ago.

18      A.    Yes, sir.

19      Q.    I'm going to be taking your

20   testimony today.  This format is generally

21   known as a deposition.  Have you ever

22   testified at a deposition before?

23      A.    No.

24      Q.    Have you ever testified in any

25   kind of court or legal proceeding where

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 6

1    you've been administered a similar oath to

2    what you just took?

3        A.    No.

4        Q.    Let me go over, then, some ground

5    rules for you.  The first thing to know is

6    that the oath that's just been administered

7    is the exact same oath that would be used

8    if you were to testify live in front of a

9    judge and a jury; which means that the

10    testimony that you give here today, even

11    though it's in the informal setting of your

12    attorney's office, it carries with it the

13    same force and effect as if you were to

14    testify live in front of a judge and a

15    jury.

16            Do you understand that?

17        A.    I do.

18        Q.    Okay.  The court reporter, who is

19    in the room there with you, is going to

20    take down everything that is -- that is

21    said, all of my questions and all of your

22    answers, and she's going to transcribe it

23    into a booklet form, that we'll be able to

24    look at and I'll be able to show my client.

25    Or we may use it to read some of the

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 7

1    testimony to the jury at trial.

2         A.    Okay.

3         Q.    Because it's all being

4    transcribed, it's important that we have a

5    couple of ground rules, the first of which

6    is only one of us should talk at a time.

7    I'm going to let you give your full answer,

8    I'm going to do my level best not to

9    interrupt you.  If I do, I assure you it's

10   not on purpose.  And then we'll give you

11   every opportunity to complete any answer

12   you are trying to give.  And I'll ask that

13   you give me the same courtesy of letting me

14   finish my entire question.

15              I'll warn you now that sometimes

16   I pause in the middle of a question as I'm

17   searching for the right words or the right

18   way to phrase it.  Just let me get the

19   whole question out.  Again, when we read

20   the transcript later on, it will be a lot

21   easier to know what the exact question was

22   and what the exact answer was.  It will

23   also make for a much happier court

24   reporter, as the day goes on.  Understood?

25        A.    Understood.

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 8

1    Q.    I'm also going to ask you to

2    continue doing what you're already doing

3    right now, which is to verbalize your

4    answers.  Say yes or no, rather than

5    nodding your head or shaking your head, or

6    saying things like uh-huh or huh-uh.

7    Again, it makes the Record a lot cleaner,

8    so we know exactly what you are trying to

9    convey.  It also -- It eliminates the

10   guesswork so that the court reporter

11   doesn't have to try to interpret or neither

12   does anyone else have to try to interpret

13   what you meant by any kind of nodding.

14   Even though in ordinary conversation, you

15   and I can see each other just fine, and we

16   can understand each other just fine, for

17   the sake of the Record, we're going to ask

18   that you verbalize your answers.

19        Do you understand that?

20   A.    I understand.

21   Q.    Okay.  I don't want you to guess

22   at things.  But if you feel that you can

23   make a reasonable approximation or an

24   estimate of something, just indicate to us

25   that that's what you're doing and that's

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 9

1  perfectly fine; otherwise, all we want is

2  what you actually know, what your knowledge

3  is.  If you don't know something, feel free

4  to just say I don't know.  Understood?

5      A.    Understood.

6      Q.    All right.  Do you have any

7  questions before we get started?

8      A.    No.  I'm good.

9      Q.    All right.  Have you taken any

10  medication or is there any reason at all

11  why you might not be able to give complete,

12  honest, accurate testimony in this case

13  today?

14      A.    No.

15      Q.    All right.

16          MR. SENN:  David, before you

17  start, are we going to reserve objections

18  until first use or do you want all

19  objections put on this Record now?  How do

20  you want to handle that?

21          MR. OSTERMAN:  That's fine.

22  Thank you for asking.  No.  We can reserve

23  all objections.

24          MR. SENN:  Sounds good to me.

25          MR. OSTERMAN:  All right.  Thank

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 10

```
 1   you.
 2        Q.    Ma'am, give me your full name,
 3   beginning with your maiden name.
 4        A.    Sheryl Ashmore Copeland.
 5        Q.    Was Ashmore your middle name or
 6   maiden name?
 7        A.    Maiden name.
 8        Q.    How old are you?
 9        A.    Fifty-nine.
10        Q.    What's your date of birth?
11        A.    12/13/1963.
12        Q.    Where were you born?
13        A.    Tampa, Florida.
14        Q.    How far did you go in school?
15        A.    Twelfth grade.
16        Q.    Where did you graduate?
17        A.    Brandon High School, Brandon,
18   Florida.
19        Q.    Were you ever married?
20        A.    Yes.
21        Q.    Married to anyone other than
22   Edward Copeland?
23        A.    Yes.
24        Q.    Take me through your marital
25   history, please.
```

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 11

1        A.    I was married in 1984 to Edward

2    -- Lawrence Edward Yuravich.

3        Q.    Can you spell that last name,

4    please?

5        A.    Y-U-R-A-V-I-C-H.

6        Q.    When and how did that marriage

7    end?

8        A.    It ended in -- in 1987.

9        Q.    By divorce?

10       A.    Yes, by divorce.

11       Q.    Did you have any children in the

12   marriage with Mr. Yuravich?

13       A.    Yes.

14       Q.    How many?

15       A.    One.

16       Q.    And names -- Name?

17       A.    Elizabeth Denise Yuravich.

18       Q.    And then your next marriage?

19       A.    To John Frese, Junior.  It's

20   F-R-E-S-E.

21       Q.    During what years were you

22   married to John Frese, Junior?

23       A.    Approximately '90 to '93, I

24   believe.

25       Q.    Did you have any children in that

Sheryl Copeland                                  June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 12

1   marriage?

2        A.    No.

3        Q.    Did that end by divorce?

4        A.    Yes, by divorce.

5        Q.    Where were you living at the time

6   of the divorce from John Frese?

7        A.    Tampa, Florida.

8        Q.    And were you living in Florida

9   also during the time you were married to

10  Mr. Yuravich?

11       A.    Yes.

12       Q.    What was your next marriage?

13       A.    To Edward Copeland.

14       Q.    When did you and Mr. Copeland get

15  married?

16       A.    2008.

17       Q.    Where?

18       A.    Tampa, Florida.

19       Q.    And I understand he -- Mr.

20  Copeland passed away; is that correct?

21       A.    That is correct.

22       Q.    I'm sorry to hear that.

23       A.    Thank you.

24       Q.    When did Mr. Copeland pass away?

25       A.    December 17th of '22.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 13

1       Q.      To your knowledge, what was his

2    cause of death?

3       A.      Hypoxia.

4       Q.      Did you have any children from

5    the marriage with Edward Copeland?

6       A.      No.

7       Q.      Do you have any children other

8    than Elizabeth Denise Yuravich?

9       A.      No.

10      Q.      Where do you live presently?

11      A.      Fort Valley, Georgia.

12      Q.      I'm sorry, did you say Fort

13   Valley, with an F?

14      A.      Yes.

15      Q.      How long have you lived in Fort

16   Valley, Georgia?

17      A.      Fourteen years.

18      Q.      Can you give me the address,

19   please?

20      A.      Sure.  389 Borders Road, the ZIP

21   code is 31030.

22      Q.      Are you employed?

23      A.      Yes.

24      Q.      What do you do?

25      A.      I'm a customer service manager

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

                                                        Page 14

1    for Mobley Furniture.

2         Q.    How long have you worked there?

3         A.    Thirteen years.

4         Q.    Was Edward Copeland employed

5    before his death?

6         A.    No.

7         Q.    Am I correct in understanding he

8    was disabled?

9         A.    Yes.

10        Q.    How long had he been disabled?

11        A.    Since 2018.

12        Q.    And what was the nature of the

13   disability, as you understand it?

14        A.    He had severe COPD.

15        Q.    Was -- Did he require oxygen,

16   supplemental oxygen?

17        A.    Yes.

18        Q.    Have you ever been a party to any

19   other lawsuits?

20        A.    No, sir.

21        Q.    To your knowledge, was Edward

22   ever party to any other lawsuits?

23        A.    Not to my knowledge.

24        Q.    Prior to this accident, had you

25   ever suffered any burn injuries of any

Page 15

1  kind?

2      A.    No, sir.

3      Q.    To your knowledge, had Edward

4  ever suffered any burn injuries of any

5  kind?

6      A.    No.

7      Q.    What was the date of the accident

8  that we're -- that's the subject of this

9  lawsuit, do you remember?

10     A.    7/18 of '20.

11     Q.    July 18 of 2020?

12     A.    That's correct.

13     Q.    Do you remember what day of the

14  week it was?

15     A.    It was a Saturday.

16     Q.    I understand the product at issue

17  in the lawsuit is a pressure cooker;

18  correct?

19     A.    That's correct.

20     Q.    Do you remember when and where

21  and how you got that pressure cooker?

22     A.    Purchased it in approximately

23  2016 from the Power XL website.

24     Q.    Do you know the specific date

25  when you made the purchase?

Page 16

1      A.      Not exactly.

2      Q.      Do you have any way of going back

3   and finding a receipt for that or any

4   confirmation of the purchase?

5      A.      I'm sure that I possibly could

6   find it.  I mean, I could attempt to do

7   that, that's for sure.

8      Q.      Okay.  Do you know if it was --

9   Was it purchased in connection with a

10  specific holiday or birthday or was there

11  some specific reason why you bought it at

12  the time you bought it?

13     A.      No.

14     Q.      Had you ever owned a pressure

15  cooker before?

16     A.      Yes.

17     Q.      Was it a stovetop pressure cooker

18  or an electric pressure cooker?

19     A.      Stovetop.

20     Q.      When did you own a stovetop

21  pressure cooker?

22     A.      I would say from 1985 until

23  probably early 2000.

24     Q.      Did you use it frequently?

25     A.      Occasionally.

Page 17

1      Q.     About once a month, more than

2   that, less than that?

3      A.     Probably less than that.

4      Q.     What sorts of things did you use

5   your stovetop pressure cooker for?

6      A.     To cook a roast, stew.

7      Q.     Anything else?

8      A.     That's it.

9      Q.     When you were a kid growing up,

10  did your mother or father use a pressure

11  cooker?

12     A.     Yes.

13     Q.     Was it your mother or father or

14  both?

15     A.     Mother.

16     Q.     Did your mother teach you how to

17  cook in a pressure cooker when you were

18  younger?

19     A.     She did.

20     Q.     During what time frame would this

21  have been?

22     A.     The early '80s.

23     Q.     Do you remember what kind of

24  stovetop pressure cooker you owned and used

25  from about 1985 to the early 2000s?

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 18

1      A.     Are you asking for the brand
2   or --
3      Q.     If you know it.
4      A.     Presto.
5      Q.     And what kind of brand pressure
6   cooker did your mom have when you were
7   growing up?
8      A.     The same, Presto.
9      Q.     Was it literally the exact same
10  pressure cooker that she gave to you or did
11  you go out and buy a similar one?
12     A.     It was given to me as a wedding
13  gift.
14     Q.     So you received a brand-new
15  Presto pressure cooker as a wedding gift?
16     A.     That's correct.
17     Q.     And it was the same style or same
18  brand as the one your mom had growing up?
19     A.     That's correct.
20     Q.     What did you like about the
21  stovetop pressure cooker?
22     A.     The ease of being able to
23  tenderize meat.
24     Q.     Generally, how did you use a
25  stovetop pressure cooker?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 19

1     A.    I would -- Basically, meat,

2  onions, seasonings, and broth, and then you

3  just lock the lid down, put the jigger on

4  the top, and it would do its thing.

5     Q.    Then when it -- When you were

6  done cooking it, what did you do?

7     A.    I would just let it sit there on

8  the stove until it depressurized.

9     Q.    And how would you know when it

10  was depressurized?

11     A.    You could tilt the jigger on the

12  top, and if there was no steam coming out

13  of it, it was depressurized.

14     Q.    Why did you stop using that

15  stovetop pressure cooker in the early

16  2000s?

17     A.    It was just -- I wasn't that

18  comfortable with it, so I just didn't -- It

19  was old, and I just didn't use it as much

20  as I did before.

21     Q.    You say it was old, were some of

22  the parts getting worn?

23     A.    No.  I wouldn't say that.  I

24  would say that, because it was from 1985, I

25  still had the pressure cooker, it just

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 20

1    wasn't something that we used anymore.

2        Q.    When you say you were

3    uncomfortable with it, were you

4    uncomfortable with it from a safety

5    perspective, or just because it was -- it

6    was old and worn out?

7        A.    Just because of the age of it.

8        Q.    Okay.  Do you still own that

9    stovetop pressure cooker?

10       A.    No, sir, I don't.

11       Q.    Was the Tristar Power XL Electric

12   Pressure Cooker, the first electric

13   pressure cooker you ever owned?

14       A.    Yes.

15       Q.    Had you ever used an electric

16   pressure cooker before you bought one?

17       A.    No, sir.

18       Q.    Did you have any friends or

19   family who had any experience with it

20   before you bought it?

21       A.    No.

22       Q.    Why did you buy the Power XL

23   Electric Pressure Cooker?

24       A.    I bought it because I was

25   continually seeing an infomercial about it,

Case 5:22-cv-00212-CAR    Document 37-3    Filed 03/26/24    Page 21 of 130

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 21

1    and the safety of it.

2        Q.    Were you -- So you had had

3    experience with other pressure cookers.

4    Did you think you would get the same

5    benefits of flavorful, tenderized meat in

6    an electric pressure cooker?

7        A.    Yes.

8        Q.    Was there something convenient

9    about cooking in a pressure cooker compared

10   to other ways that you liked?

11       A.    Just it was easier, as far as

12   being able to just put something in a pot,

13   you set it and within thirty minutes, or

14   forty-five minutes, you would have dinner.

15       Q.    As I understand it, the electric

16   pressure cooker has a feature that the

17   stovetop pressure cooker doesn't have, in

18   that when it's done cooking, it will just

19   go into a heating mode that allows you to

20   cook something and then keep it warm for

21   hours after; is that generally true?

22       A.    Not to my knowledge.  When it --

23   When it was done, it actually would shut

24   itself off.

25       Q.    Did you ever use it sort of in

Page 22

1  the manner of a slow cooker?  Did it have a

2  feature like that that you're aware of?

3      A.    It did.  It did.  But we never

4  did.

5      Q.    What sorts of things did you use

6  it for, the electric pressure cooker, I'm

7  talking about?

8      A.    Okay.  To make roasts or beef

9  stew.

10      Q.    Anything else?

11      A.    That's it.

12      Q.    Did you ever use, say, the

13  canning function?

14      A.    No.

15      Q.    Did you ever use it to make

16  soups?

17      A.    Yes.  Soup, stew.

18      Q.    Who did the -- most of the

19  cooking in your marriage with Edward

20  Copeland, was it you or was it Mr.

21  Copeland?

22      A.    We shared in that.

23      Q.    What sorts of things did Mr.

24  Copeland use the pressure cooker for?

25      A.    The same, do a roast, beef stew,

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 23

1    some type of soup.

2        Q.    Do you remember whether you

3    acquired the Power XL Pressure Cooker

4    closer to the beginning of the year in 2016

5    or closer to the end of the year?  Do you

6    remember anything about what season it was?

7        A.    I'm not sure.

8        Q.    When you first got it, did you --

9    did you read the instruction manual?

10       A.    Yes.

11       Q.    Did Edward also read the

12   instruction manual?

13       A.    Yes.

14       Q.    Did you believe that you

15   understood it?

16       A.    Yes.

17       Q.    So you knew from cooking with a

18   stovetop pressure cooker that the point of

19   it was to cook under pressure; correct?

20       A.    That's correct.

21       Q.    And you knew that there would be

22   pressure inside the unit and that you

23   needed to have the lid on properly and

24   locked, and you needed to make sure that it

25   was -- the heat source was removed or off

Sheryl Copeland                                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 24

1   and all the steam was released before you

2   opened the lid; correct?

3       A.    That's correct.

4       Q.    Was there anything that seemed

5   different or unusual about the electric

6   pressure cooker, compared to your

7   expectations about it, based on your

8   experience and what you had seen?

9       A.    No.

10      Q.    Prior to the accident, did you

11  ever have any problems or issues with it,

12  where the pressure cooker either didn't

13  work or something was broken or it just,

14  for whatever reason, didn't meet your

15  expectations?

16      A.    No.

17      Q.    And I understand that you used it

18  -- I think I saw in your discovery

19  responses, your best estimate was forty or

20  fifty times?

21      A.    Over the course of owning it,

22  yes.

23      Q.    So, again, did you use it about

24  as often as you had used your stovetop

25  pressure cooker, about once a month or so?

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 25

 1       A.    Sometimes we'd use it a little
 2   bit more, depending on the month.
 3       Q.    Would a good estimate be two or
 4   three times a month?
 5       A.    In the -- In the fall or later
 6   season, yes.
 7       Q.    You mean in cooler weather?
 8       A.    That's correct.
 9       Q.    How would you clean the unit when
10   you were done with it?
11       A.    Wait for everything to cool down,
12   then I would take the inner pot out, wash
13   that, take everything apart from the lid,
14   make sure I washed everything, and then I
15   would set it in the dish drainer to dry.
16       Q.    As I understand it, the lid has
17   an interior piece, I'll use the term lid
18   liner.
19       A.    Yes.
20       Q.    And that lid liner can be
21   removed; correct?
22       A.    That's correct.
23       Q.    And would you typically remove
24   that as part of cleaning it every time you
25   used it?

Sheryl Copeland                                     June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 26

1        A.      Yes.

2        Q.      And then you would put the lid

3    liner -- when it was dry, you would put it

4    back in place inside the -- inside the lid?

5        A.      Yes.

6        Q.      Were you careful to make sure

7    that it was going in properly, so, in other

8    words, going in right side up rather than

9    upside down?

10       A.      Yes.

11       Q.      And there was a way to tell,

12   wasn't there?

13       A.      Yes.

14       Q.      How would you tell if the lid

15   liner was in the proper position?

16       A.      Whether you had it inside or

17   outside, if it was in the right position,

18   there was a little knob sticking out, and

19   that's how you could pull that out of the

20   inside of the lid.

21       Q.      Okay.  So you would always make

22   sure that that little protruding knob was

23   pointing down into the -- into the pot?

24       A.      That's correct.

25       Q.      I've got one handy here, and

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 27

1    you're free to -- we had sent an exemplar

2    down, and you're free to look at it

3    yourself if it helps refresh your

4    recollection.

5         A.    Okay.

6         Q.    Once you separate the lid liner

7    from the pot, would you do anything with

8    any of the -- the inside?

9         A.    Just make sure that I cleaned it

10   good.

11        Q.    Okay.  Would you ever disassemble

12   it?

13        A.    No.

14             MR. OSTERMAN:  Counsel, if you

15   would, would you position the exemplar in

16   front of the witness?  I'd like to be able

17   to see it on the camera.

18             MR. SENN:  Okay.  We may have to

19   -- Do you want me to take it out of the

20   box?

21             MR. OSTERMAN:  Yeah, if you don't

22   mind.

23             MR. SENN:  Okay.

24             MR. OSTERMAN:  Mr. Videographer,

25   we may ask you to zoom out just a little

Sheryl Copeland                                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 28

1    bit, if we can get a view of the pressure

2    cooker just on the table with the witness.

3              VIDEOGRAPHER:  I'm recording this

4    by Zoom, I don't have the ability to zoom

5    in or out.  So we'll have to use the

6    witness's camera to get the picture you

7    want.

8              MR. OSTERMAN:  Understood.  Okay.

9    We'll see how it looks when they put it in

10   front of her.

11             MR. SENN:  I'm not sure if you're

12   going to be able to see it like that.

13             MR. OSTERMAN:  Is the camera, are

14   you able to move it back a little bit or am

15   I asking too much to do that?

16             MR. SENN:  No.  Let me see what

17   we can do.  See if there is any room to

18   move it back a little bit.

19             MR. OSTERMAN:  That's fine.

20             MR. SENN:  Does that work right

21   there?

22             MR. OSTERMAN:  Yeah.  That works

23   perfect.  Thank you.

24       Q.    Ma'am, is the pressure cooker

25   that we have in front of you there, is that

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 29

1   generally what your pressure cooker looked

2   like?

3        A.    Yes.

4        Q.    And that one is not the one that

5   was involved in your accident, but we've

6   tried to find one that is the same make and

7   model of it.  And from what you can tell,

8   it looks substantially similar to yours?

9        A.    It does.

10       Q.    Okay.  And the shape of the

11  handle, that appears to be the same style

12  handle that was on yours?

13       A.    Yes.  Uh-huh.

14       Q.    Okay.  And so did you -- Can you

15  demonstrate for me, how would you typically

16  put the lid on?

17       A.    You basically position it, it

18  goes down inside, and then you tilt -- turn

19  it to the locked position.

20       Q.    Okay.  And when you say the

21  locked position, there's words on the -- on

22  the handle that's facing closest to you,

23  and there's something sticking out, so when

24  you rotate it, you can see if it's locked

25  or unlocked; correct?

Sheryl Copeland                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 30

1        A.      That's correct.

2        Q.      And when you put it on, you did

3    it with just one hand, and it looked like

4    you were just turning it with your fingers;

5    is that correct?

6        A.      I mean, I had ahold of it like

7    this (indicating).  But, yes.  It's not

8    hard to do.

9        Q.      Okay.  So take me through the

10   steps.  If you'll start -- If you'll remove

11   the lid.  Take me through the steps of, you

12   know, when you would typically cook a

13   roast, what would you do and in what order?

14       A.      Okay.  Put the roast in, had an

15   onion quartered, put it in, salt, pepper,

16   Italian seasoning, or some other type of

17   seasoning, that day I used Italian

18   seasoning, and take a carton of beef broth

19   pour that in and then I would put water in

20   that carton and fill it up just below the

21   line.

22       Q.      So there's a line in there that's

23   the -- is it called the max fill line; is

24   that right?

25       A.      Yes, it is.

Sheryl Copeland                           June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 31

1      Q.    Okay.  And you understood the

2  importance of keeping it below the max fill

3  line?

4      A.    Yes, sir.

5      Q.    Okay.  So you would fill it up,

6  keep it below the max fill line, then what

7  would you do?

8      A.    I would attach the cord, plug it

9  into the wall, then I would set -- there's

10  a meat button here.

11      Q.    Uh-huh.

12      A.    Push that button, and then it

13  allowed you to select if you wanted it

14  basically on low, medium, or high.  Click

15  medium or well.  And I would click it to

16  the medium.  And then it would start

17  building pressure which --

18      Q.    At what point would you put the

19  lid on?

20      A.    I put the lid on -- Right after I

21  put everything in, put -- put the lid on --

22  oops, I've got it wrong.  Put the lid on

23  (indicating), lock it, then I would hit the

24  button, put it to the medium cook time,

25  then I would just let it go.

Sheryl Copeland                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 32

1     Q.     Okay.  You demonstrated for us,
2   and I recognize you're sitting down.
3     A.     Uh-huh.
4     Q.     But you would normally be
5   standing up at a counter when you would do
6   it; correct?
7     A.     That's correct.
8     Q.     And you put it on with one hand.
9   And it looks like when you turned it, you
10  turned until it won't turn anymore;
11  correct?
12    A.     That's correct.  When it's in the
13  locked position, it doesn't turn anymore.
14    Q.     So you can kind of feel it when
15  it hits the end of its travel; correct?
16    A.     Yes.
17    Q.     It also makes a clicking sound as
18  you click it into position?
19    A.     Yes.
20    Q.     Okay.  And then -- Then you punch
21  in what you're cooking there on the LED
22  screen?
23    A.     Yes.
24    Q.     And you told me that you
25  typically would select medium for the

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 33

1   cooking of the meat?

2       A.    Yes.

3       Q.    And then what would the LED

4   screen do when it was ready to start?

5       A.    It would kind of -- There's like

6   a little thing that goes around and around

7   while it's building pressure.

8       Q.    Uh-huh.

9       A.    And it actually doesn't start the

10  timer until the pressure is built up in the

11  pot.

12      Q.    Okay.  And how long would that

13  take, usually, to build up the pressure?

14      A.    Probably about fifteen to twenty

15  minutes.

16      Q.    Okay.  And when the pressure

17  builds up and it engages, what would happen

18  to the LED screen then?

19      A.    The timer would start.

20      Q.    All right.  And then would the

21  meal that you were cooking on the day of

22  the accident, how long was the timer, do

23  you remember?

24      A.    Thirty minutes.

25      Q.    Okay.  Is that an estimate or do

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 34

1   you have a clear recollection it was thirty

2   minutes?

3        A.    That's an estimate.

4        Q.    Okay.  And what would happen when

5   it counted down from thirty to zero?

6        A.    It would beep to let you know

7   that it was done.

8        Q.    Was it a continuous alarm or was

9   it just it would beep once or twice?

10       A.    It would beep -- Once or twice it

11  would beep.

12       Q.    Okay.

13       A.    Then I would go in -- I always

14  unplugged it, and then we let it sit there

15  for thirty, forty-five minutes, before we

16  would even attempt to open the lid.

17       Q.    And that's just an old habit you

18  had picked up from using the stovetop

19  pressure cooker; correct?

20       A.    That's correct.

21       Q.    All right.  Do you know if Edward

22  had ever used a stovetop pressure cooker?

23       A.    Yes.

24       Q.    He had grown up using one as

25  well?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 35

1      A.    That's correct.

2      Q.    And when you and he got married,

3  did he have one of his own?

4      A.    He didn't have anything, due to a

5  divorce.

6      Q.    Okay.  Had Edward ever owned or

7  used an electric pressure cooker before you

8  bought this one?

9      A.    No.

10     Q.    Once the -- Once you waited the

11  thirty or forty-five minutes, how would you

12  open it up?  What was your normal practice?

13     A.    First thing we would do would be

14  to open up the valve.

15     Q.    If you could move it closer to

16  the middle of the -- I can't quite see it.

17  I want to make sure I see it.

18     A.    Sure.

19     Q.    Okay.

20     A.    There's a valve here

21  (indicating) --

22     Q.    Yeah.

23     A.    -- that opens.  It's closed --

24     Q.    It has like a little diagram on

25  it that indicates --

Page 36

1    A.    Yeah.  Like steam -- like steam

2   coming up.

3    Q.    Yeah.

4    A.    Okay.  So you open it to that

5   point, and if there was any steam left in

6   the pot, it would let the pressure off

7   there in the steam.

8    Q.    And that's something, when the

9   steam was coming out, you could see it;

10   correct?

11   A.    That's correct.

12   Q.    You could probably also hear it;

13   right?

14   A.    Yes.

15   Q.    And if you wanted to, you could

16   kind of run your fingers through it to feel

17   it, too; right?

18   A.    I never attempted to do that, but

19   I'm sure you could.

20   Q.    Because you read our manual.

21          Okay.  All right.  So if there

22   was any steam, what would you do if you saw

23   steam or heard steam?

24   A.    Just let it continue to do what

25   it -- let the steam out until there wasn't

Page 37

1   any steam left coming out.

2        Q.    And, again, that was because you

3   understood the instructions and the general

4   safety rules associated with it; correct?

5        A.    That's correct.

6        Q.    Okay.  And then how would you

7   open it after you released the steam?

8        A.    All you would have to do is put

9   your hand here (indicating) and open the

10  lid.

11       Q.    Again, this is my

12  characterization, but it looks relatively

13  easy, you're just doing that with one hand

14  turning it; correct?

15       A.    That's correct.

16       Q.    And, again, on all of the days

17  before the accident, was it that easy to

18  put the lid on and lock it into place and

19  then to open it when you were done?

20       A.    That's correct.

21       Q.    Okay.  So let's talk now

22  specifically about the day of the accident.

23  All right?

24       A.    Okay.

25       Q.    You told me it was a Saturday, I

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 38

1    think you said?

2        A.    Yes.

3        Q.    And about what time was it when

4    you began to cook with the pressure cooker?

5        A.    I'm not exactly sure of the time,

6    but late afternoon.

7        Q.    Do you recall what you had been

8    doing earlier that day?

9        A.    Yes.

10       Q.    What?

11       A.    Cleaning house.

12       Q.    Anything else?

13       A.    Just typical chores.

14       Q.    Okay.  What was -- What was

15   Edward doing?

16       A.    Watching TV.

17       Q.    Who was cooking the meal that

18   night?

19       A.    I started the meal.

20       Q.    Was Edward watching TV when you

21   started the meal?

22       A.    Yes.

23       Q.    Had you worked at all that day?

24       A.    No.

25       Q.    Had you had anything to drink

Sheryl Copeland                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 39

1    that day?

2        A.    No.

3        Q.    Had Edward had anything to drink

4    that day?

5        A.    No.

6        Q.    And I assume Edward had not

7    worked that day; correct?

8        A.    That's correct.

9        Q.    Was anyone else at the house,

10   other than you and Edward, when the

11   accident happened?

12       A.    No.

13       Q.    Was anyone else at the house when

14   you and Edward -- I'm sorry, when you

15   started to cook the meal?

16       A.    No.

17       Q.    Had you gone shopping that day to

18   get any of the ingredients for the meal?

19       A.    No.

20       Q.    Do you recall if you left the

21   house for any reason that day?

22       A.    No.

23       Q.    Did you follow your normal recipe

24   as you detailed it for me before for making

25   a roast?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 40

1      A.      Yes.

2      Q.      Do you remember how big a roast

3  you put in there?

4      A.      It was about four and a half

5  pounds.

6      Q.      And is that the normal size roast

7  you would make for you and Edward?

8      A.      Yes.

9      Q.      And, again, your best

10  recollection is you filled it up with the

11  other ingredients and water, and made sure

12  to keep it below the max fill line;

13  correct?

14      A.      That's correct.

15      Q.      Was it close to the max fill

16  line?

17      A.      About an inch.

18      Q.      So about one inch below the max

19  fill line?

20      A.      That's correct.

21      Q.      Did you have any difficulty

22  putting the lid on?

23      A.      No.

24      Q.      And was the lid fully -- fully

25  locked?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 41

1        A.    Yes.

2        Q.    So you put it on the way you

3    always do, you had no difficulty, and you

4    turned it until it stopped turning, you

5    could hear it, see it, and feel that it was

6    locked; correct?

7        A.    Correct.

8        Q.    And were you the one who set the

9    buttons on the LED screen?

10       A.    Yes.

11       Q.    And did you observe that it began

12   to cycle as pressure began to build?

13       A.    Yes.

14       Q.    Did you at some point observe

15   that it had fully pressurized and had gone

16   into the countdown mode?

17       A.    Yes, I did.

18       Q.    What's your best recollection of

19   how long the cook cycle was on that day?

20       A.    While it was pressurizing, about

21   fifteen minutes, and I would say

22   approximately thirty minutes for the actual

23   cook time.

24       Q.    Thirty minutes once it was

25   pressurized; correct?

Page 42

1      A.     That's correct.

2      Q.     What were you doing during that

3   approximate forty-five minutes?

4      A.     I went and sat down with my

5   husband in the living room and watched TV.

6      Q.     Do you remember anything about

7   what you were watching?

8      A.     Something on Netflix.

9      Q.     Something good?

10     A.     I -- I can't remember.

11     Q.     Not all of it is.

12     A.     I wish I could.

13     Q.     Okay.  Did you hear it when it

14  indicated that the cook cycle was over?

15     A.     Yes.

16     Q.     So you heard one or two beeps?

17     A.     That's correct.

18     Q.     What did you do after you heard

19  the beeps?

20     A.     Went into the kitchen, unplugged,

21  and let it sit there.  Went back, sat in my

22  chair, and finished watching whatever show

23  it was we were watching.

24     Q.     What's your best estimate of how

25  long you let it sit there after unplugging

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 43

1  before making any attempt to open it?

2       A.    About forty -- Approximately

3  forty, forty-five minutes.

4       Q.    So to be clear, you unplugged it,

5  went back and sat and watched TV with your

6  husband for about forty to forty-five

7  minutes; correct?

8       A.    That's correct.

9       Q.    All right.  And all that time,

10  the pressure cooker was sitting on the

11  counter?

12      A.    Yes.

13                       (Defendant's Exhibit

14                        2 was marked for

15                        identification.)

16      Q.    I want to show you some photos,

17  if you don't mind.  I've marked as Exhibit

18  2, I'm going to share my screen if it will

19  let me.

20           MR. SENN:  Can we move the pot or

21  do you want me to leave it there?

22           MR. OSTERMAN:  You can move the

23  pot -- Yeah.  You can move it.  I may have

24  you go back to it.

25           MR. SENN:  Yeah.  I'm going to

Page 44

```
 1   set it out of the way right now.

 2            MR. OSTERMAN:  You bet.

 3       Q.    Are you able to see this

 4   photograph?

 5       A.    Yes.

 6       Q.    And I can zoom in on any of it if

 7   you want, but I'll scroll down.  We put a

 8   label on it, we call it Defendant's Exhibit

 9   2.

10       A.    Uh-huh.

11       Q.    I'm going to scroll up so I can

12   kind of get a better view of the -- there's

13   a freestanding oven/range, generally to the

14   center but center right of the photo.

15            Is this a photo of your kitchen?

16       A.    Yes.

17       Q.    And does this show us how your

18   kitchen looked on the day of the accident?

19       A.    Yes.

20       Q.    Where was the pressure cooker

21   when you -- when you set it up?

22       A.    To the right of the stove, on the

23   counter.

24       Q.    To the right of the stove, okay.

25   So in this photograph, do we see the area
```

Page 45

```
 1   where it was?

 2        A.    Yes.

 3        Q.    Okay.  There's a -- It looks like

 4   two jars, a small one and a larger one, to

 5   the right of the stove.  Do you see that?

 6        A.    Yes.

 7        Q.    Is that the area where the

 8   pressure cooker was?

 9        A.    It was in the open area, in front

10   of the jars, closer to the stove.

11        Q.    Okay.  So there's a drawer

12   immediately to the right of the stove.  Was

13   it sort of above that drawer?

14        A.    That's correct.

15        Q.    Okay.  And it was closer to the

16   front of the countertop than to the back?

17        A.    It was probably about, my

18   guesstimate, five or six inches from the

19   edge.

20                         (Defendant's Exhibit

21                          3 was marked for

22                          identification.)

23        Q.    Okay.  I've got another picture

24   here that we've marked as Defendant's

25   Exhibit 3, that appears to show the area
```

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 46

1    more to the right of the range.  And we can

2    see that there's a kitchen sink there --

3        A.    Yes.

4        Q.    -- in the center.  There's a pot

5    positioned in this picture.  Do you see

6    that?

7        A.    I do.

8        Q.    What's your best recollection of

9    where the pressure cooker was, relative to

10   that pot?

11       A.    To the left.

12       Q.    To the left of that.

13       A.    Yes.

14       Q.    Okay.  All right.  Thank you.

15   I'm going to take this off the screen.

16       A.    Okay.

17       Q.    All right.  So back to your

18   testimony about the day of the accident.

19       A.    Uh-huh.

20       Q.    So after waiting about forty to

21   forty-five minutes from the time you

22   unplugged the pressure cooker, what did you

23   do next?

24       A.    Oh.  Edward and I got up, went

25   into the kitchen, I was standing at the

Page 47

1    sink, we checked the pressure, the release

2    valve, and then once we knew that there was

3    no more steam, he reached up to open the

4    lid.

5        Q.    Okay.  So why did both of you go

6    in to open the pressure cooker?

7        A.    I went to the kitchen sink, he

8    was right there.  Again, we shared

9    everything, doing a lot of the cooking and

10   stuff.  So . . .

11       Q.    Had you made any attempt to open

12   the pressure cooker yourself before Edward

13   did?

14       A.    No.

15       Q.    Do you recall any conversation

16   with Edward before he attempted to open the

17   pressure cooker?

18       A.    No.

19       Q.    What were you doing at the sink

20   when he attempted to open the pressure

21   cooker?

22       A.    We had a few dishes there and I

23   -- I was just -- actually, I was standing

24   kind of -- kind of facing him at the sink,

25   turned kind of facing him at the sink while

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 48

1    he was undoing the pressure pot.

2         Q.    Okay.  So you were standing --

3    like, were you positioned in the center of

4    the sink?

5         A.    To the left side, the right side

6    of Mr. Copeland.

7         Q.    Okay.  So, again, I'll go back to

8    this photo.

9         A.    Uh-huh.

10        Q.    It looks like you have a dual

11   sink; correct?

12        A.    That's correct.

13        Q.    And you were standing more to the

14   left side, which would be the side with

15   this bottle of detergent, the tall bottle

16   of detergent, on the left side; correct?

17        A.    Yes.

18        Q.    And you were standing -- You were

19   close enough to easily touch Mr. Copeland;

20   correct?

21        A.    That is correct.

22        Q.    And you were turned and facing

23   him; correct?

24        A.    That's correct.

25        Q.    And where was he standing?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 49

```
 1        A.    In front of the pot.
 2        Q.    So closer to the -- by that first
 3   drawer to the right of the range?
 4        A.    That's correct.
 5        Q.    I'm going to take the picture
 6   down.
 7              Did you at any point put your
 8   hands on the pressure cooker?
 9        A.    No.
10        Q.    Were you holding the pressure
11   cooker -- or holding the base of the
12   pressure cooker as he attempted to remove
13   the lid?
14        A.    No.
15        Q.    What were you -- Where -- What
16   were you doing with your hands?
17        A.    I don't recall exactly what I was
18   doing with them, but I wasn't touching the
19   pressure cooker.
20        Q.    Okay.  You don't have a
21   recollection of holding anything in either
22   hand; correct?
23        A.    No.
24        Q.    What -- So he's standing in front
25   of the pressure cooker and he's facing the
```

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 50

1    pressure cooker?

2         A.    That's correct.

3         Q.    And what was he doing with his

4    hands?

5         A.    He reached up, turned the valve

6    like we always do, make sure all the steam

7    was out, and then he one-handedly grabbed

8    ahold of it (indicating).  And when he went

9    to just barely turn the lid, which turned

10   freely, it blew off.

11        Q.    So you demonstrated with your

12   right hand?

13        A.    Yes.

14        Q.    Were you demonstrating to me that

15   he used his right hand --

16        A.    Yes.

17        Q.    -- to open the valve?

18        A.    Yes.  He was right-handed.

19             MR. OSTERMAN:  Okay.  Counsel,

20   can you position the pressure cooker back

21   in front of the witness?

22             MR. SENN:  Sure.

23        Q.    And do you have a recollection of

24   how the pressure cooker was oriented?  In

25   other words, was the LED screen facing out

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 51

1    so that he could read it?

2        A.    Yes.

3        Q.    Okay.  And is that how it's

4    positioned in front of you right now?

5        A.    Yes.

6        Q.    Okay.  And demonstrate for me, if

7    you would, what you recall seeing Edward do

8    when he released the steam.

9        A.    Okay.  Reached over, released the

10   steam, there was nothing there, nothing

11   really came out, he waited a moment, put

12   his hand on the top, started to turn the

13   handle, and the -- and it blew off.

14       Q.    So, again, you demonstrated both

15   using your right hand.  Is it your

16   recollection that he used his right hand

17   to --

18       A.    Most definitely.

19       Q.    Okay.  And could you see what he

20   was doing with his left hand?

21       A.    I don't remember what he was

22   doing with his left hand.

23       Q.    Do you remember if he was holding

24   anything in his left hand?

25       A.    No.  He might have had it on the

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 52

1   counter or next to his side.  I'm not

2   positive.

3       Q.    Do you recall his placing his

4   left hand on the -- any of the side handle

5   of the pressure cooker?

6       A.    No, I don't.

7       Q.    Do you believe he was gripping

8   the side handle in order to get some extra

9   leverage as he twisted the top open?

10      A.    No.

11      Q.    Do you believe that he knew not

12  to force the lid open?

13      A.    Yes.  He knew.

14      Q.    And certainly you knew not to try

15  to do that; correct?

16      A.    That's correct.

17      Q.    And you knew from experience that

18  when the pressure is released, you could

19  literally open it with one hand and you

20  wouldn't feel any resistance?

21      A.    That's correct.

22      Q.    Did you ever, in all the times

23  you've ever used the pressure cooker, did

24  you ever have to use two hands to open that

25  -- the lid?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 53

1        A.      No.

2        Q.      Do you ever recall seeing Edward

3    use two hands to open the lid?

4        A.      No.

5        Q.      When Edward opened the valve to

6    release the steam, I think you used the

7    word -- I don't want to mischaracterize it.

8    Tell me again, what, if anything, did you

9    see and hear coming out of the pressure

10   valve?

11       A.      There was nothing coming out.

12       Q.      So you didn't hear any whooshing

13   of steam or any sound at all?

14       A.      No.

15       Q.      And did you see any amount of

16   steam at all coming out?

17       A.      No.

18       Q.      Again, I just want to be clear.

19   It's not like you saw a little bit and you

20   interpreted that as just about done.

21   You're saying there was none at all coming

22   out?

23       A.      That's correct.

24       Q.      So Edward had his right hand on

25   the handle?

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 54

1      A.      Right.

2      Q.      And you said it -- when the

3  explosion happened, what happened to the

4  lid?  Did it stay in his hand or fly out of

5  his hand?

6      A.      It flew out of his hand.

7      Q.      How far did it go and where did

8  it go?

9      A.      It went up.  And I honestly don't

10  know how high up it went, because when the

11  lid blew off -- all the contents in the pot

12  blew out of the pot all over us.

13      Q.      Where on your body did the

14  contents strike you?

15      A.      My side of my head right here

16  (indicating), my hands, mostly my breasts,

17  and my upper abdomen.

18      Q.      What were you wearing?  And you

19  can move the pressure cooker aside.

20      A.      A shirt like what I have on

21  today.

22      Q.      Okay.  So open at the collar, you

23  know, about three-quarter sleeve?

24      A.      Yes.

25      Q.      Which hands did it hit?

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 55

1      A.      Both.

2      Q.      What were you -- What were you

3  wearing, in terms of pants, shoes, et

4  cetera?

5      A.      I had on just regular pull-on

6  pants, just trousers, and I had probably no

7  shoes on because I was in the house.

8      Q.      Did you suffer any -- Did the

9  contents strike your skin below your waist

10 or feet?

11     A.      No.

12     Q.      Did the contents strike your

13 pants or shoes?

14     A.      No.

15     Q.      And you said it struck you on --

16 you gestured to your right temple where

17 it --

18     A.      Yes.

19     Q.      Did any of the roast come out of

20 the pot?

21     A.      Most all of it.

22     Q.      Where did the roast end up?

23     A.      On the floor, on the counter.

24     Q.      When you say on the floor, how

25 far from where -- the front of that cabinet

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 56

1  are we talking about?  Within a foot of

2  that, within five feet of that, ten feet of

3  that?

4      A.    I'm not exactly sure.  I would

5  tell you that I would think maybe about a

6  couple of feet, but I'm not -- I can't tell

7  you for sure.

8      Q.    Okay.  Was there any on your

9  ceiling?

10     A.    Yes.

11     Q.    What's the height of the ceiling

12 in your kitchen?

13     A.    I would say probably about nine

14 feet.

15     Q.    Was there any physical damage to

16 the ceiling, perhaps if the lid hit the

17 ceiling --

18     A.    No.

19     Q.    -- for example, or something

20 else, was there any damage there?

21     A.    No.

22     Q.    Were any of -- Did any of the

23 contents splash onto the ceiling?

24     A.    Yes.

25     Q.    How could you tell that?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 57

1      A.    I have popcorn ceiling, and you
2    can see where it wet the ceiling.
3      Q.    So there was a wet mark on the
4    ceiling --
5      A.    Yeah.  Like little -- little
6    spots.
7      Q.    Like splatter?
8      A.    That's correct.
9      Q.    Did you at any point get
10   photographs of the -- of where all the
11   contents had splattered?
12     A.    No, I did not.
13     Q.    Where did the contents strike Mr.
14   Copeland, if you know?
15     A.    From his upper lip, all the way
16   down his torso, both arms.
17     Q.    How tall was Mr. Copeland?
18     A.    Five-eleven, I think.
19     Q.    What was he wearing?
20     A.    He had on a pair of pants and no
21   shirt.
22     Q.    Was he wearing long pants or
23   short pants?
24     A.    Long.
25     Q.    Any shoes?

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 58

1       A.      No.

2       Q.      Did he normally wear glasses?

3       A.      Just to read.

4       Q.      You're wearing glasses today,

5  were you wearing glasses at the time of the

6  accident?

7       A.      Yes, sir.

8       Q.      You told me that he was oxygen

9  dependent.  Was he using any supplemental

10 oxygen at the time of the accident?

11      A.      No.  He actually took it off.

12      Q.      What do you mean, he took it off?

13      A.      Just took it off momentarily, to

14 help in the kitchen.

15      Q.      So what type of system was he

16 using on the day of the accident?

17      A.      Portable.

18      Q.      And was it positioned near his

19 chair in the living room where he was

20 watching TV?

21      A.      Yes.

22      Q.      So when you say he took it off,

23 he disconnected from that --

24      A.      The cannula.

25      Q.      Took the cannula off so that he

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 59

1    could come help you in the kitchen?

2         A.    That's correct.

3         Q.    Why did he perceive that he

4    needed to help you in the kitchen?

5         A.    That was Mr. Copeland.

6         Q.    Again, was there -- At any point

7    did you say to him:  Hey, could you help me

8    open this lid, it's stuck?

9         A.    No.

10        Q.    Had you made any effort at any

11   point to try to open that steam release

12   valve yourself?

13        A.    No.

14        Q.    Had you made any effort to try to

15   open the lid before the accident?

16        A.    No.

17        Q.    What did you do immediately after

18   the contents blew out?

19        A.    Ran to the showers.

20        Q.    Both of you did?

21        A.    Yes.

22        Q.    Then what did you do?

23        A.    Stayed in the shower trying to

24   cool the burns down.  We did that for quite

25   a while.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 60

1      Q.     Then what?

2      A.     We got some clothes back on.  I

3   went out and got some aloe from a big plant

4   that we have and started putting that on

5   us.

6      Q.     So you had an aloe plant in or

7   around the house?

8      A.     Yes.  Outside.

9      Q.     What did you do next?

10      A.     Just kind of tried to sit down

11   and calm ourselves down from the incident.

12      Q.     How long did you try to calm down

13   for?

14      A.     Probably thirty, forty-five

15   minutes.

16      Q.     What's the next thing you did

17   that you remember?

18      A.     Got up and cleaned up a mess.

19      Q.     Did you call anyone to come

20   assist?

21      A.     No.

22      Q.     You and your husband both cleaned

23   it up or just one of you did?

24      A.     Just me.

25      Q.     What did Edward do when you

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 61

1    cleaned up the mess?

2         A.     He was sitting in his chair with

3    the oxygen.

4         Q.     Do you remember where you saw the

5    top to the pressure cooker?

6         A.     It was laying on the counter.

7         Q.     Where on the counter?

8         A.     To the right of where the

9    pressure pot was at, closer to the sink.

10        Q.     Was it right side up or upside

11   down when you saw it?

12        A.     It was with the handle up.

13        Q.     Do you believe that either you or

14   Edward placed it in that position or do you

15   believe it landed there on its own that

16   way?

17        A.     I believe it landed there on its

18   own that way.

19        Q.     Aside from cleaning up the food

20   and contents, did you clean out the

21   pressure cooker?

22        A.     No.  I just sat it down in the

23   sink.

24        Q.     Did you make any observations

25   from -- of the inside of the lid when you

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 62

1    looked at it?

2         A.    I really didn't.  At the time, I

3    was just trying to clean up and I was in a

4    lot of pain, so -- from the burns.

5         Q.    Did you at any point go back and

6    kind of more closely examine the pressure

7    cooker?

8         A.    No.

9         Q.    Did you at any point make any

10   observations about the inside of the lid,

11   the lid liner, anything like that?

12        A.    I didn't.

13        Q.    Do you know if Edward did?

14        A.    No, I don't.

15        Q.    Did either you or he remove the

16   lid liner to look underneath?

17        A.    No.

18        Q.    At any point, whether that day or

19   any other day, did you or Edward clean out

20   the pressure cooker?

21        A.    No.

22        Q.    What -- How long did the pressure

23   cooker stay there in that condition in the

24   sink?

25        A.    I don't exactly remember how many

Sheryl Copeland                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 63

1    days that it was there.  But we took -- We

2    put it in a plastic bag.

3         Q.    Why did you do that?

4         A.    To -- Just to keep everything

5    safe, like it was, so that when we -- We

6    had discussed whether or not we were going

7    to do anything.  We didn't want it

8    disturbed.

9         Q.    When you say you discussed

10   whether or not to do anything, you mean you

11   discussed whether or not you might make

12   some sort of claim or file a possible

13   lawsuit?

14        A.    That's correct.

15        Q.    Did you discuss that that night

16   with Edward?

17        A.    No.  No.

18        Q.    Did you discuss that within the

19   next day or two?

20        A.    No.

21        Q.    When did you first consider that

22   yourself?

23        A.    After he had been to Augusta, to

24   the burn center.

25        Q.    Did you or Edward seek any

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 64

1    medical attention from a doctor or

2    healthcare provider on the day of the

3    accident?

4        A.    No.

5        Q.    Do you recall what time the

6    accident happened?

7        A.    It was early evening.

8        Q.    Is that --

9        A.    Not an exact time.  I'm not

10   exactly sure.

11       Q.    What would you define as the

12   range of early evening?

13       A.    Six to eight, somewhere in that.

14       Q.    When is the first time you or

15   Edward sought medical attention?

16       A.    On the Monday morning, we went to

17   the ER.

18       Q.    How were you doing that Saturday

19   night when you went to bed?

20       A.    We were uncomfortable and

21   hurting, but Mr. Copeland wanted to try to

22   tough it out, so . . .

23       Q.    How were you doing the next day?

24       A.    Not good.  He still was adamant

25   he didn't want to go anywhere.

Copeland, Edward A. Vs. Tristar Products, Inc.

Page 65

1      Q.    Describe your observation of his

2   injuries.

3      A.    Burns to the lip, above the lip,

4   the lips, his chin, under the chin, both of

5   his arms, and his stomach, down past his

6   belly button, chest, stomach.

7      Q.    Were these blisters, was it

8   bright red?  What did it look like?

9      A.    It was bright red, there was some

10  blistering.  Monday morning, there was

11  blisters hanging from his arms.

12     Q.    And how were -- How were yours?

13     A.    Bright red.  There was a little

14  bit of blistering.

15     Q.    I take it yours were not as

16  serious as his?

17     A.    That's correct.

18           MR. SENN:  David, I'm sorry to

19  interrupt you.  Would this be an okay point

20  to take a restroom break?

21           MR. OSTERMAN:  You bet.  We'll

22  take a ten-minute break.  Does that work?

23           MR. SENN:  Sure.  That works for

24  me.

25           VIDEOGRAPHER:  Off the Record at

Sheryl Copeland                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 66

1    11:28.

2                            (Recess taken.)

3              VIDEOGRAPHER:  Back on the

4    Record.  The time is 11:38.

5         Q.    Okay.  The day after the

6    accident, did you or Edward have any

7    conversations about what had happened and

8    how it happened?

9         A.    I'm sure we did.  I don't really

10   recall a specific conversation about it.

11        Q.    That was going to be my question.

12   Do you have any recollection of what was

13   said?

14        A.    We were -- We pretty much didn't

15   say too much that day.

16        Q.    And, again, that whole day on

17   Sunday, you just let the pressure cooker

18   just sit in the sink as it was?

19        A.    That's correct.

20        Q.    And, again, after you had cleaned

21   up everything else, why -- why didn't you

22   do anything else with the pressure cooker?

23   Why did you just leave it sitting in the

24   sink?  What was your thinking?

25        A.    I'm not sure what I was thinking,

Page 67

1  honestly.  I was more concerned with

2  cleaning up the floor and stuff.

3      Q.    And the same on Sunday, did you

4  give any thought to cleaning up the

5  pressure cooker --

6      A.    No.

7      Q.    -- or doing anything with it?

8      A.    (Witness shakes head in the

9  negative.)

10      Q.    So you told me on Monday morning

11  when Edward woke up, some of the blistering

12  and skin was sloughing off his arm?

13      A.    He had large blisters hanging

14  from his arm.

15      Q.    Okay.  Did you-all seek medical

16  attention at that point?

17      A.    Yes.

18      Q.    Where did you go?

19      A.    First, we went to our primary

20  care doctor who took one look at us and

21  said:  Go to the emergency room.

22      Q.    Who was that doctor?

23      A.    Lomboy.

24      Q.    Can you spell it for me?

25      A.    L-O-M-B-O-Y.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 68

1      Q.      Where is Dr. Lomboy located?

2      A.      Perry, Georgia.

3      Q.      Which hospital did you go to?

4      A.      Perry Hospital.

5      Q.      How far is Perry Hospital from

6   where you live?

7      A.      Twenty minutes.

8      Q.      How did you get to Perry

9   Hospital?

10     A.      I drove.

11     Q.      Tell me what you recall happening

12  and being done for you-all when you arrived

13  at Perry Hospital?

14     A.      They -- We went to the emergency

15  room.  They called us to the back; took a

16  look at me, decided I didn't need to be

17  transported, but Mr. Copeland needed to be

18  transported to Augusta.

19     Q.      How did he get transported to

20  Augusta?

21     A.      By ambulance.

22     Q.      How far away is Augusta from

23  Perry Hospital?

24     A.      Probably -- I'm guessing,

25  honestly, it's about a two-hour ride, I

Sheryl Copeland                                            June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 69

1   think, hour and a half, two hours.

2        Q.    Did you go with him or did you

3   drive a separate car to Augusta?

4        A.    I drove my car.

5        Q.    Tell me what you recall happening

6   when you arrived at the hospital in

7   Augusta.

8        A.    Well, he arrived by ambulance, so

9   he was already inside.  When I got there,

10  they told me that I couldn't go in; that

11  they had an appointment set for me the

12  following morning to be seen.

13       Q.    So they would not let you go back

14  to see your husband?

15       A.    That's correct.

16       Q.    Did you speak to him that day

17  after he got to Augusta?

18       A.    Yes.  I had a -- A nurse came

19  down and got his cell phone and took it

20  back up to him so that I could speak to

21  him.

22       Q.    Tell me what you recall about

23  what he said when you spoke to him.

24       A.    Just -- I mean, we -- I honestly

25  don't remember --

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 70

1      Q.    You just --

2      A.    -- what our exact conversation

3  was.

4      Q.    Understood.  Did he describe what

5  treatment, if any, they gave to him or were

6  giving to him that first day at Augusta?

7      A.    At that point, I don't believe he

8  knew what was going on, because it was

9  right after he arrived.  But they did end

10  up having to do debridement on him and

11  cadaver.

12      Q.    What do you mean by cadaver?

13      A.    They had to put cadaver skin over

14  his burns.

15      Q.    Like a skin graft?

16      A.    Correct.

17      Q.    Was that a surgical procedure?

18      A.    Yes.

19      Q.    And the skin was cadaver skin, it

20  was not skin taken from a donor site on his

21  body, that's what you're telling me?

22      A.    That's correct.

23      Q.    And what part of his body was

24  covered with the cadaver skin?

25      A.    Parts of his chest, belly, and

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 71

1  his arms.

2      Q.    To your knowledge, when did they

3  do that procedure?

4      A.    It was either that evening or the

5  following morning.

6      Q.    I take it you had to turn around

7  and drive all the way back home, after

8  driving all the way to Augusta?

9      A.    Well, I got a hotel room.

10     Q.    So the next day, I take it, would

11 have been a Tuesday, you went in -- back to

12 the hospital in Augusta?

13     A.    Yes.

14     Q.    Tell me all that you recall about

15 that day.

16     A.    I went in and was seen.  He was

17 -- They were in the process of taking him

18 to do the debridement and the skin grafts.

19 They checked me to -- all over, to see

20 where my blisters and stuff were at.  And

21 they gave me medication and some gloves to

22 put on my hands for compression.

23     Q.    Which part of your hands were

24 burned?

25     A.    Mostly the fingers.

Sheryl Copeland                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 72

1      Q.     Just the top or on the palm side
2    of the hand too?
3      A.     No.  Mostly just the -- just the
4    top of my fingers.
5      Q.     Was your thumb burned?
6      A.     No.  Not to my recollection.
7      Q.     So it was the four other fingers
8    on each hand?
9      A.     I would -- I would say three to
10   four.  There might have been one that got
11   missed, but I pretty much had the burns on
12   all of my fingers.
13     Q.     Were you admitted to the
14   hospital, or just treated and released
15   there that day?
16     A.     Treated and released.
17     Q.     But your husband had to stay in
18   the hospital?
19     A.     That's correct.
20     Q.     How long was he admitted and
21   stayed in the hospital?
22     A.     I think three days.
23     Q.     Did you stay down at a hotel in
24   Augusta until he was discharged?
25     A.     Yes, I did.

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 73

1        Q.    It was somewhere in the middle of
2    the week, Wednesday or Thursday, he was
3    discharged from the hospital; is that your
4    recollection?
5        A.    That's correct.  I believe it was
6    the 23rd.
7        Q.    Of July?
8        A.    Yes.
9        Q.    How was he doing at that point?
10       A.    He was a mess.  And they had him
11   completely covered.  I had to -- He wasn't
12   allowed to be in sunlight.  He went home
13   kind of looking like a mummy.
14       Q.    In other words, the bandaging was
15   wrapping on his chest?
16       A.    His head, his chest, his arms.
17       Q.    Did anyone get any photographs of
18   the burn injuries on you or on Edward right
19   around this time, July 20 to 23?
20       A.    Yes.
21       Q.    Who took the photos?
22       A.    I did.
23       Q.    Did you use your cell phone?
24       A.    Yes.
25       Q.    Why did you take the pictures?

Page 74

1      A.    I just took the pictures because

2   I wanted to take the pictures.  I'm not

3   sure --

4      Q.    Did --

5      A.    He looked like a mummy, and I

6   took the pictures of him.  So . . .

7      Q.    Were any pictures taken of you

8   and your burns at this time?

9      A.    Yes.

10     Q.    Who took those pictures?

11     A.    They took some pictures at the

12  hospital, and then I also took pictures of

13  my burns.

14     Q.    Where were you when you took

15  those photos?

16     A.    I was at home.

17     Q.    When you got back home, was the

18  pressure cooker still in the sink?

19     A.    Yes, it was.

20     Q.    It appeared to be untouched from

21  when you last saw it?

22     A.    Yes.

23     Q.    How long did it stay in the sink

24  in that condition?

25     A.    A few days.  I was more concerned

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 75

1    with helping to take care of him than I was

2    worried about the pressure cooker --

3        Q.    Understood.

4        A.    -- being in the sink.  So . . .

5        Q.    So at some point later that week,

6    did you do something with the pressure

7    cooker?

8        A.    Yeah.  I put it in a plastic

9    trash bag, and just closed it, because it

10   smelled.

11       Q.    It smelled because the food

12   hadn't been cleaned out; right?

13       A.    Right.  Right.

14       Q.    Did you disassemble any part of

15   it before putting it in the bag?

16       A.    No.

17       Q.    Then where did you put the bag

18   with the pressure cooker?

19       A.    I left it in the sink.

20       Q.    And, again, why did you do that?

21   Why would you leave it in a bag in the sink

22   in the kitchen?

23       A.    I just -- I wasn't going outside.

24   I wasn't going to throw it away at that

25   point.

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 76

1      Q.      Why not put it in the garage or
2    outside the house, just to --
3      A.      We don't have a garage.
4      Q.      How long did it stay in a bag in
5    your sink?
6      A.      Probably until the first part of
7    the week.  I don't exactly remember when we
8    -- Honestly, I can't tell you.
9      Q.      Okay.  When did you first reach
10    out to an attorney?
11      A.      I don't remember the exact date.
12      Q.      Would it -- Would it be within a
13    week of the accident?
14      A.      Or it could have been a little
15    longer than that.  Like I said, I don't
16    remember.  We were going through the
17    process of taking him back and forth to
18    Augusta.
19      Q.      How many times did he go back and
20    forth to Augusta for treatment relating to
21    these burn injuries?
22      A.      I don't remember the exact number
23    without looking at notes, but I would say
24    four to five times.
25      Q.      How about you?  How many times

Sheryl Copeland                                        June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 77

1    did you have to go back to Augusta for

2    treatment for your injuries?

3        A.    I think there was four times that

4    they saw me.  And they just made the

5    appointments with his.

6        Q.    Were there any complications that

7    you're aware of in the treatment or

8    recovery of his burn injuries?

9        A.    He had permanent -- permanent

10   scarring from it.  And I'm not sure what

11   else you're asking.

12       Q.    Well, that's a good distinction,

13   so thank you for raising that.

14             No, I was more concerned with

15   some -- anything that seemed unexpected or

16   out of the ordinary, in terms of the

17   medical treatment; a complication, an

18   infection, anything like that relating to

19   it?

20       A.    No.

21       Q.    And how about with respect to

22   your recovery from your injuries?

23       A.    My recovery was -- You know, I

24   had went from super red, and then blisters,

25   and everything looked kind of healed up,

Sheryl Copeland                                                   June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 78

1  was getting better, lighter.  And I ended
2  up having a -- in October, I had what I
3  thought was a spider bite at the time, or
4  some type of a bite.  I went to the doctor,
5  and they told me that I had necrosis, the
6  flesh was dying on my chest, and it
7  happened to be right where one of the burns
8  was at.
9      Q.    So you went in believing that you
10  had suffered a spider bite?
11      A.    Yeah.  I wasn't sure exactly what
12  -- they said it kind of resembled that.  It
13  started out like a little blister, and then
14  it just got worse.
15      Q.    Did anyone -- Did any doctor ever
16  tell you that it was not a spider bite?
17      A.    Not specifically, no.
18      Q.    Did any doctor ever tell you that
19  it was related to the burn injury?
20      A.    No.
21      Q.    In either event, you developed
22  this necrosis.  And what did that look
23  like?  What were the symptoms of that?
24      A.    I had a spot that came up, and
25  then I had -- it was like a place that

Page 79

1    looked like it was caving in.  And then it

2    got really red around it.  You could tell

3    that there was something going on.

4        Q.    And what, if anything, was the

5    treatment for that?

6        A.    I went to the -- Dr. Lomboy, and

7    he took a look at it, drew a circle around

8    where the redness was, and told me that if

9    the redness was outside of that line the

10   next day, that I had to go into the

11   hospital.

12       Q.    And the next day, was it outside

13   that line?

14       A.    Yes, it was.

15       Q.    Which hospital did you go to?

16       A.    Perry Hospital.

17       Q.    Were you admitted there?

18       A.    Yes.

19       Q.    How long were you admitted for?

20       A.    I think it was about two to three

21   days.

22       Q.    What's your understanding of what

23   they did for you there?

24       A.    They cut about a five-inch place

25   on my chest, took out the infection, took

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 80

1    out the tissue that was dead.

2         Q.    Was this on your right or left

3    breast?

4         A.    Left.

5         Q.    Were there any complications

6    related to that or was -- in other words,

7    for the treatment, did the treatment go as

8    they and you had hoped it would go?

9         A.    Yes, it did.

10        Q.    Is that fully healed now?

11        A.    It is.

12        Q.    And you have a scar in that area?

13        A.    Yes, I do.

14        Q.    And I'm not going to ask you to

15   show it to me, but generally how would you

16   describe it?

17        A.    It's big.  It's raised a little

18   bit.

19        Q.    You're talking specifically the

20   area where they surgically removed the

21   abscess?

22        A.    Yes.  And that area of my breast

23   is caved in a little bit where they took

24   out the tissue.

25        Q.    How have your -- the scars from

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 81

1    the -- the burns that you suffered, how

2    have those healed?

3         A.    Relatively well.

4         Q.    Are there any scars that are

5    raised scars?

6         A.    No.

7         Q.    Is there any discoloration?

8         A.    Yes.

9         Q.    How would you describe it?  Is it

10   slight, moderate, severe discoloration, in

11   your own words?

12        A.    Slight.

13        Q.    And where is the -- is this

14   discoloration most pronounced, in your

15   mind?

16        A.    On my shoulder (indicating),

17   there was a little place on my shoulder,

18   and a little bit on my breast.

19        Q.    You're touching your left

20   shoulder?

21        A.    That's correct.

22        Q.    And which breast?

23        A.    Left.

24        Q.    Are you making a claim that

25   Edward's death is related to this accident?

Page 82

1      A.      No.

2      Q.      How did Edward's burn injuries

3   heal up?

4      A.      He had permanent scarring, his

5   arms, the inside of his arms, he had pretty

6   severe; and on his chest; underneath his

7   chin, on his chin, those were the worst

8   areas that scarred.

9      Q.      And on his arms, were they on

10  both arms?

11     A.      Yes.

12     Q.      And where, specifically, on the

13  arms, do you remember?

14     A.      On the inside of the arm.

15     Q.      So the forearm, the meaty part of

16  the forearm, or the --

17     A.      Yes, the forearm.

18     Q.      And you're gesturing -- You know,

19  sometimes people talk about the top of the

20  forearm and the inside of the forearm, you

21  know, if the continuation from the palm of

22  your hand down to your elbow, is that the

23  area where it was?

24     A.      Yes, sir.

25     Q.      The side of his forearm?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 83

1      A.    Yes.

2      Q.    Were any of his scars raised?

3      A.    Yes.  On his arms.  And he had a

4   couple of places on his belly that were

5   raised.

6      Q.    Were those areas the areas where

7   they put -- they applied any of the cadaver

8   skin?

9      A.    I'm not sure.  One of the areas

10  is where he had had open-heart surgery, so

11  he had the big scar there, and it made it

12  worse, the scar.

13     Q.    The open-heart surgery scar?

14     A.    Yes.

15     Q.    You said that both you and he

16  went back to Augusta hospital about four

17  times for follow-up treatment?

18     A.    I think it was about four times.

19     Q.    After that, were you or he

20  treated for your burn injuries anywhere

21  else?

22     A.    No.

23     Q.    Were your medical bills covered

24  by insurance?

25     A.    Yes.

Sheryl Copeland                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 84

1        Q.      Was there any part of your

2   medical bills that -- that were not covered

3   by insurance, that you paid out of your own

4   pocket?

5        A.      Yes.

6        Q.      And what was that?

7        A.      I don't have the specific

8   amounts.

9        Q.      About how much and what kind of

10   things -- Were these, like, for copayments,

11   were these --

12       A.      Copayments and -- His basically

13   was covered, because of the amount of money

14   that was there for his injury, he had

15   Medicare, and they -- they covered it.

16       Q.      When you say the amount of money

17   set aside for his injuries, what are you

18   referring to?

19       A.      No.  That his -- His doctor bills

20   were over two hundred thousand dollars, so

21   he was well beyond any deductibles or --

22       Q.      Okay.  And he was -- He was

23   receiving Medicare?

24       A.      Yes.

25       Q.      What insurance covered you?

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 85

1        A.     My insurance is United

2    Healthcare.

3        Q.     And were you on United Healthcare

4    at the time of the accident?

5        A.     Yes.

6        Q.     You get that through work?

7        A.     I do.

8        Q.     Have you been to see any other

9    doctors relating to the burn injuries you

10   suffered, other than Dr. Lomboy and the

11   doctors at, first, Perry and then Augusta

12   Hospital?

13       A.     No.

14       Q.     To your knowledge, did anyone

15   other than those same doctors treat your

16   husband?

17       A.     They -- That's correct.

18       Q.     At some point in time you moved

19   the pressure cooker from your -- the bag in

20   the kitchen to somewhere else?

21       A.     Yeah.  In our laundry room.

22       Q.     Do you remember when that was?

23       A.     Not off the top of my head, no.

24       Q.     Then where did it go?

25       A.     Once we seeked counsel, it came

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 86

1    to the lawyer's office.

2        Q.    Was it ever in the possession of

3    any lawyer other than your current lawyer?

4        A.    No.

5        Q.    Do you remember approximately

6    when it was when you delivered it to your

7    current lawyer?

8        A.    I don't remember the exact date.

9        Q.    Can you approximate for me?

10       A.    Sometime in 2020, after the

11   accident.  I'm not exactly sure of the

12   date.

13       Q.    Would it have been during the

14   summer?

15       A.    I don't recollect.

16       Q.    Okay.  At any point before you

17   brought it to the attorney, did anyone open

18   that bag and clean up or disassemble or

19   inspect the pressure cooker?

20       A.    No.

21       Q.    When you brought it to your

22   attorney, did you see anybody disassemble,

23   clean it, or take anything out of the

24   pressure cooker?

25       A.    No.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 87

1        Q.      As far as you know, when you
2    delivered the pressure cooker to your
3    attorney, it was in the same condition as
4    it was when you first put it in the sink;
5    correct?
6        A.      That's correct.
7        Q.      Did you ever -- You told me
8    before that when you got it you read a
9    product manual that came with it; correct?
10       A.      Yes.
11       Q.      Did you save that product manual?
12       A.      Yes.
13       Q.      And where is that product manual
14   today?
15       A.      The attorney has it.
16       Q.      Did you at any point call or
17   communicate with Tristar about your
18   accident?
19       A.      No.
20                           (Defendant's Exhibit
21                            1 was marked for
22                            identification.)
23       Q.      I have marked as an exhibit, I
24   just want to show it to you, so let me
25   share my screen here.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 88

1            I've put up on my screen, are you

2    able to see this document?

3        A.    Yes.

4        Q.    And it's labeled Defendant's

5    Exhibit 1, and it's a copy of a pressure

6    cooker for model PPC780.  Does this

7    generally look like the manual for the

8    pressure cooker that you received with the

9    product?

10       A.    Yes, it does.

11       Q.    Okay.  And inside on what's

12   labeled page one, there's a page here, and

13   I'll zoom in on the top, it says:

14   Important Safeguards.  When using

15   electrical appliances, basic safety

16   precautions should always be followed,

17   including the following.  Then it has a

18   bunch of instructions there, and bullet

19   points.

20       A.    Yes.

21       Q.    Do you remember reading this page

22   of the instructions?

23       A.    I do.

24       Q.    Did you have any problem

25   understanding any of them?

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 89

1      A.    No.

2      Q.    They, for the most part, seemed

3   like common sense to you?

4      A.    Yes.

5      Q.    There's -- In the first column

6   down here, third bullet point from the

7   bottom, it says, and I can zoom in on that:

8   This appliance cooks under pressure.

9   Improper use may result in scalding injury.

10   Make certain unit is properly closed before

11   operating.  See instructions for use.

12          Do you remember reading that?

13      A.    Yes.

14      Q.    And then the next one is an

15   instruction about never fill the unit above

16   the max line in the inner pot.

17          You had -- You had read that and

18   you understood that and you followed that

19   instruction; correct?

20      A.    That's correct.

21      Q.    And then second column, second

22   bullet point, says:  Do not open the

23   Pressure Cooker XL unit.  The unit -- I'm

24   sorry, until the unit has cooled and all

25   internal pressure has been released.  If

Case 5:22-cv-00212-CAR    Document 37-3    Filed 03/26/24    Page 90 of 130
Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 90

1    the unit is difficult to open, this

2    indicates that the pressure cooker is still

3    pressurized.  Do not force it open.  Any

4    pressure in the cooker can be hazardous.

5    See instructions for use.

6              Do you remember reading that one?

7        A.    Yes.

8        Q.    And that, again, was something

9    you knew and understood from your years of

10   using the old stovetop pressure cooker; is

11   that correct?

12       A.    That's correct.  Yes.

13       Q.    And then down here, it looks like

14   fourth from the bottom on the right, in all

15   capital letters, it says:  Never force open

16   the Power Pressure Cooker XL.  If you need

17   to open the Power Pressure Cooker XL, press

18   the keep warm/cancel button, and using

19   tongs or a kitchen tool, rotate the

20   pressure valve to the open position to

21   fully release the building pressure inside

22   the cooker.  Make sure all steam has

23   dissipated from the cooker.  Carefully turn

24   the handle clockwise to open.  Always open

25   the lid away from you to avoid skin contact

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 91

1    with any remaining heat or steam.

2              You had read that?

3        A.    Yes.

4        Q.    And you understood that?

5        A.    Yes.

6        Q.    And again from your prior

7    experience, that was common sense to you;

8    correct?

9        A.    That's correct.

10       Q.    Okay.  I'll take that down.  And

11   the -- I think you told me -- I apologize

12   if you said this before, I just don't

13   remember.  Your general practice was to

14   clean the unit, including the lid liner,

15   each time -- after each time you used it?

16       A.    That's correct.

17       Q.    So on the day of the accident,

18   when you went to use it, it was -- it was

19   clean; correct?

20       A.    That's correct, yes.

21       Q.    The lid liner inside was not

22   clogged, it was not dirty, it was clean;

23   correct?

24       A.    That's correct.

25       Q.    And, in fact, the last time you

Sheryl Copeland                                   June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 92

1    had used it, you would have removed the lid
2    liner and cleaned out the underside of the
3    lid itself; correct?
4         A.    That's correct.
5         Q.    With the -- On the top of the lid
6    there's this -- the round device --
7         A.    Uh-huh.
8         Q.    -- that's the thing that you
9    would turn to release the pressure.
10        A.    Yes.
11        Q.    That snaps off.  Did you ever
12   remove that for cleaning also?
13        A.    Yes.
14        Q.    And is that something you would
15   do each time you would use it?
16        A.    I did.
17                        (Defendant's Exhibit
18                         4 was marked for
19                         identification.)
20        Q.    And I marked as Exhibit 4, and I
21   will show it to you first, these are --
22   it's a document that we attorneys call
23   answers to interrogatories.  These are
24   written questions --
25        A.    Uh-huh.

Sheryl Copeland                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 93

1        Q.     -- that my client sent to your

2    attorney with the intention that you would

3    provide written answers, so that we would

4    have some understanding of what your claim

5    was before we got to this deposition.

6              Do you remember providing answers

7    to those questions?

8        A.     Yes.

9        Q.     Okay.  And did you -- Did you

10   review those answers and then sign it at

11   the end of the document?

12       A.     Yes.

13       Q.     So I've marked this as

14   Defendant's Exhibit 4, and it's entitled

15   Plaintiff's Objections and Responses to

16   Defendant Tristar Products, Inc.'s,

17   Interrogatories to Plaintiff Sheryl

18   Copeland.

19             And I'm going to scroll down,

20   interrogatory number two -- and I'll zoom

21   in on this, it said -- the question was:

22   Describe in detail Plaintiff's version of

23   the accident, setting forth the date,

24   location, time, surroundings, and

25   identifying all other people present when

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 94

1    the accident occurred.

2              And then there is an objection

3    asserted, I assume by your attorney, and

4    then beginning on -- let me scroll down.

5    This is -- Well, the page isn't numbered.

6    But in this answer it says:  Subject to and

7    without waiving any objection, Plaintiffs

8    Edward and Sheryl Copeland were at home

9    preparing dinner on the evening of July 18.

10   Then it goes on and it describes how you

11   prepared the meal.

12             I'll jump down to this sentence

13   here:  Plaintiff Edward Copeland slightly

14   jiggled the pressure valve at the top of

15   the pressure cooker to release any steam

16   that might still be inside the pressure

17   cooker.  No steam released, leading Mr.

18   Copeland to believe the pressure had

19   escaped from the pressure cooker.

20   Plaintiff Edward Copeland then checked the

21   side of the pressure cooker where the metal

22   safety pin was located.  The pin was no

23   longer sticking out, leading Mr. Copeland

24   to believe there was no steam/pressure

25   inside the pressure cooker.

Sheryl Copeland                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 95

1          Do you remember that part of the
2    answer?
3        A.    Yes.
4        Q.    Okay.  I'm going to take this
5    down now just for a moment.  I just want to
6    make sure I understood what you were
7    referring to as the safety pin.
8              There is -- You have the -- If
9    you could take the lid, just the lid to the
10   pressure cooker is all you need.  Is there
11   a caution label on your lid?
12       A.    Yes.
13       Q.    And can you read -- How many
14   instructions are there under the word
15   "caution"?
16       A.    Four.
17       Q.    And if -- Read me what the number
18   three instruction is on your caution label?
19       A.    Once the floating valve has
20   dropped, the lid may be removed.
21       Q.    Okay.  Is that what you were
22   referring to as the -- when -- as the
23   safety pin in that answer?
24       A.    Well, the floating valve is
25   inside here (indicating).

Page 96

```
 1        Q.     Yeah.

 2        A.     And the pin -- When the valve

 3   drops, the pin goes in (indicating).

 4        Q.     So the -- Oh, okay.  So in other

 5   words, the position of the pin is related

 6   to that float valve?

 7        A.     Yeah.  That's part of the locking

 8   system.

 9        Q.     Okay.  And so did you typically

10   make an observation to confirm that the

11   float valve was down before opening?

12        A.     Well, it's kind of hard to see

13   that part of it, because it's down inside

14   of a hole.  So it's really not that visible

15   seeing that, but the pin itself.

16        Q.     And you can see that that pin is

17   in a different position when it drops down?

18        A.     When the valve is up or the

19   pressure is on it, you can't move this pin.

20        Q.     Okay.

21        A.     When the pressure is down, the

22   pin is released.

23        Q.     So was it -- You're demonstrating

24   by pinching the pin from the side and

25   pulling it out?
```

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 97

1      A.    Yeah.  You can actually tell.
2    But I mean, there's not much -- There's not
3    much different when the valve float -- when
4    it's under pressure and when it's not under
5    pressure, because all of that is, like I
6    said, down in the hole.
7      Q.    Okay.  Well, that was my
8    question.  Did you, as a normal practice,
9    or did your husband, typically look down
10   into the hole to see the position of the
11   float pin or did you --
12     A.    I don't think you could really --
13   you can't -- I mean, you can't really see
14   down -- That hole is pretty deep, so --
15     Q.    Okay.
16     A.    It doesn't move enough.  I don't
17   really think you would notice it from that.
18   More the pressure valve itself --
19     Q.    Okay.
20     A.    -- the release.
21     Q.    You mean the side locking pin?
22     A.    That, and then checking this
23   (indicating).
24     Q.    Okay.  So did your husband do
25   what you demonstrated; in other words, pull

Page 98

1    that side pin away --

2         A.    I doubt that he did, because the

3    pot was still hot.

4         Q.    Got it.  Okay.  So when you say

5    he checked the side of the pressure cooker

6    where the metal safety pin was located; the

7    pin was no longer sticking out.  Why was --

8    What pin --

9         A.    Okay.  Of course, this is cold,

10   so it's not quite the same.  But when this

11   is engaged (indicating), this pin doesn't

12   move.  When it's disengaged, it really -- I

13   mean, it really doesn't move that much.  I

14   don't know that there's enough of a

15   difference here that you can -- that you

16   can tell.

17        Q.    That's what I was just trying to

18   understand your answer, why you --

19        A.    Yeah.

20        Q.    What was it he was checking and

21   why did he assume there was no pressure in

22   it based just on the physical location of

23   it.

24        A.    Right.

25        Q.    You know, because I -- It's --

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 99

1    Candidly, I don't think the position is
2    going to change unless you move the lid,
3    the position of the side pin.
4         A.    Uh-huh.
5         Q.    But the float valve will go up
6    and down with pressure.  And so that's why
7    I was trying to understand in your answer.
8    Are you able to -- Do you think he was
9    saying in the answer that he looked at the
10   float valve, looked down there?
11        A.    Yes.
12             MR. OSTERMAN:  Okay.  All right.
13   Let's take a -- Actually, give me just a
14   moment.  I think I'm just about -- I think
15   I'm just about done.
16             Why don't we take just like a
17   five-minute break, and I'll look back
18   through my notes and I'll let you know if I
19   have any more questions.  Okay?
20             THE WITNESS:  Okay.
21             VIDEOGRAPHER:  Off the Record,
22   12:26.
23                  (Recess taken.)
24             VIDEOGRAPHER:  Back on the
25   Record.  The time, 12:33.

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 100

1      Q.    Ma'am, I just have -- I have just
2   a couple more questions.
3      A.    Okay.
4      Q.    There was a photo that was
5   produced.  I did not premark it, but I'll
6   represent to you that it was given to us in
7   -- with your discovery responses.  It
8   appears to be a picture of the pressure
9   cooker and it's on a table.
10          Do you know any -- Can you
11  recognize if this picture was taken at your
12  house?
13     A.    No.  It was not taken at my
14  house.  I don't -- I don't recognize that.
15     Q.    Okay.  Do you know any of the
16  details of when or how or who took that
17  picture?
18     A.    I have no idea.
19                     (Defendant's Exhibit
20                      5 was marked for
21                      identification.)
22     Q.    Okay.  I'll forward this and we
23  can mark it for the Record.  But I'll just
24  describe it.  It's a picture of the
25  underside of the lid with the lid liner

Sheryl Copeland                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 101

1   removed, it's on a white table, there

2   appears to be a brick or cinder block wall

3   in the top center of the photograph behind

4   the white table.

5           MR. OSTERMAN:  Ma'am, those are

6   all the questions that I have.  I thank you

7   very much for your patience and endurance

8   in going through this.

9           THE WITNESS:  No problem.

10          MR. SENN:  I don't have any

11  questions.

12          VIDEOGRAPHER:  Off the Record,

13  12:35.

14          COURT REPORTER:  Do we want to

15  read and sign or waive?

16          MR. SENN:  We talked about this

17  before.  You have the right to read this

18  deposition transcript and check it for

19  accuracy, you can change things like

20  misspellings and dates and things like

21  that, can't change anything substantively,

22  or you can waive that right.  It's your

23  choice.  I don't see any reason why you

24  need to read and sign, unless you want to.

25  Are you okay waiving?

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 102

1            THE WITNESS:  Yeah.

2            MR. SENN:   We'll waive.

3    (The deposition was concluded at 12:35

4    p.m., June 6,2023.)

5

6            (Signature waived.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 103

1              REPORTER DISCLOSURES

2              The following representations and

3    Disclosures are made in compliance with

4    Georgia Law, more specifically:

5              Article 10(B) of the Rules and

6    Regulations of the Board of Court Reporting

7    (Disclosure forms).

8              OCGA section 9-11-28(c)

9    (disqualification of reporter for financial

10   interest).

11             OCGA sections 15-14-37 (a) and (b)

12   (Prohibitions against contracts except on

13   case-by-case basis).

14             I am a certified court reporter in

15   the State of Georgia.

16             I am a subcontractor for Veritext

17   Legal Solutions.  I have been assigned to

18   make a complete and accurate record of

19   these proceedings.

20             I have no relationship of interest

21   in the matter on which I am about to report

22   which would disqualify me from making a

23   verbatim record or maintaining my

24   obligation of impartiality in compliance

25   with the Code of Professional Ethics.

Sheryl Copeland                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

Page 104

1          I have no direct contract with any

2    party in this action and my compensation is

3    determined solely by the terms of my

4    subcontract agreement.

5                    FIRM DISCLOSURES

6          Veritext Legal Solutions was

7    Contacted to provide reporting services by

8    the noticing or taking attorney in this

9    matter.  There is no agreement in place

10   that is prohibited by OCGA 15-14-37 (a) and

11   (b).  Any case-specific discounts are

12   automatically applied to all parties, at

13   such time as any party receives a discount.

14         Transcripts:  The transcript of

15   this proceeding as produced will be a true,

16   correct, and complete record of the

17   colloquies, questions and answers as

18   submitted by the certified court reporter.

19         Exhibits:  No changes will be made

20   to the exhibits as submitted by the

21   reporter, attorneys or witnesses.

22         Password-Protected Access:

23   Transcripts and exhibits relating to this

24   proceeding will be uploaded to a

25   password-protected repository, to which all

Page 105

1    ordering parties will have access.

2                 REPORTER'S CERTIFICATE

3                 I hereby certify that the above

4    and foregoing deposition was taken down

5    stenographically, and that the colloquies,

6    the questions and answers thereto were

7    transcribed by means of computer-aided

8    transcription; that the transcript is a

9    true and correct record of the evidence

10   given upon said proceeding.  I have no

11   relationship of interest in this matter

12   which would disqualify me from maintaining

13   my obligation of impartiality in compliance

14   with the Code of Professional Ethics.

15                 I have no direct contract with any

16   party in this action and my compensation is

17   based solely on the terms of my

18   subcontractor agreement.  Nothing in the

19   arrangements made for this proceeding

20   impacts my absolute commitment to serve all

21   parties as an impartial officer of the

22   court.

23

     ANGELA SMITH MCGALLIARD, RPR, CRR, CCR

24   Georgia Cert. No.: 4599-7151-4544-9472

     Expiration 4/1/2024

25   Notary Expiration 8/13/2024

Sheryl Copeland                                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

[& - afternoon]                                                    Page 1

| & | | | |
| --- | --- | --- | --- |

**&**

**&** 3:6

**0**

**00212** 1:5
**08534** 3:15

**1**

**1** 2:10 87:21
 88:5
**10** 103:5
**100** 2:15
**10:02** 4:9,15
**11:28** 66:1
**11:38** 66:4
**12/13/1963**
 10:11
**12:26** 99:22
**12:33** 99:25
**15** 2:5,8
**15-14-37**
 103:11 104:10
**17th** 12:25
**18** 15:11 94:9
**18307** 105:23
**19** 2:13
**1984** 11:1
**1985** 16:22
 17:25 19:24
**1987** 11:8

**2**

**2** 2:8 43:14,18
 44:9
**20** 15:10 73:19
**200** 3:14

**2000** 16:23
**2000s** 17:25
 19:16
**2008** 12:16
**2016** 15:23
 23:4
**2018** 14:11
**2020** 15:11
 86:10
**2023** 1:17 4:14
**21** 2:15
**22** 2:9,10 12:25
**23** 73:19
**23rd** 73:6

**3**

**3** 2:9 45:21,25
**301** 3:13
**31030** 13:21
**31221** 3:7
**389** 13:20

**4**

**4** 2:13 92:18,20
 93:14
**4/1/2024**
 105:24
**43** 2:8
**45** 2:9
**4599-7151-4...**
 105:24

**5**

**5** 2:5,15 100:20
**5:22** 1:5

**6**

**6** 1:17 4:14
**6,2023** 102:4

**7**

**7/18** 15:10

**8**

**8.b** 3:23
**8/13/2024**
 105:25
**80s** 17:22
**87** 2:10

**9**

**9-11-28** 103:8
**90** 11:23
**92** 2:13
**93** 11:23

**a**

**a.m.** 4:9,15
**abc** 1:11
**abdomen** 54:17
**ability** 28:4
**able** 6:23,24
 9:11 18:22
 21:12 27:16
 28:12,14 44:3
 88:2 99:8
**above** 4:10
 45:13 65:3
 89:15 105:3
**abscess** 80:21
**absolute**
 105:20

**access** 104:22
 105:1
**accident** 14:24
 15:7 24:10
 29:5 33:22
 37:17,22 39:11
 44:18 46:18
 58:6,10,16
 59:15 64:3,6
 66:6 76:13
 81:25 85:4
 86:11 87:18
 91:17 93:23
 94:1
**accuracy**
 101:19
**accurate** 9:12
 103:18
**acquired** 23:3
**acting** 4:5
**action** 1:5
 104:2 105:16
**actual** 41:22
**actually** 9:2
 21:23 33:9
 47:23 58:11
 97:1 99:13
**adamant** 64:24
**address** 13:18
**administered**
 6:1,6
**admitted** 72:13
 72:20 79:17,19
**afternoon** 38:6

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[age - based]**                                          Page 2

| | | | |
|---|---|---|---|
| **age** 20:7 | **appeared** 74:20 | **arrived** 68:12 | **augusta** 63:23 |
| **ago** 5:17 | **appearing** 5:3 | 69:6,8 70:9 | 68:18,20,22 |
| **agreement** | **appears** 29:11 | **article** 3:23 | 69:3,7,17 70:6 |
| 104:4,9 105:18 | 45:25 100:8 | 103:5 | 71:8,12 72:24 |
| **ahold** 30:6 50:8 | 101:2 | **ashmore** 10:4,5 | 76:18,20 77:1 |
| **aided** 105:7 | **appliance** 89:8 | **aside** 54:19 | 83:16 85:11 |
| **al** 4:18,19 | **appliances** | 61:19 84:17 | **automatically** |
| **alarm** 34:8 | 88:15 | **asking** 9:22 | 104:12 |
| **allowed** 31:13 | **applied** 83:7 | 18:1 28:15 | **avoid** 90:25 |
| 73:12 | 104:12 | 77:11 | **aware** 22:2 |
| **allows** 21:19 | **appointment** | **asserted** 94:3 | 77:7 |
| **aloe** 60:3,6 | 69:11 | **assigned** | **b** |
| **ambulance** | **appointments** | 103:17 | |
| 68:21 69:8 | 77:5 | **assist** 60:20 | **b** 67:25 103:5 |
| **amount** 53:15 | **approximate** | **associated** 37:4 | 103:11 104:11 |
| 84:13,16 | 42:3 86:9 | **assume** 39:6 | **back** 16:2 26:4 |
| **amounts** 84:8 | **approximately** | 94:3 98:21 | 28:14,18 42:21 |
| **angela** 1:24 4:1 | 11:23 15:22 | **assure** 7:9 | 43:5,24 45:16 |
| 105:23 | 41:22 43:2 | **attach** 31:8 | 46:17 48:7 |
| **angie** 4:23 | 86:5 | **attempt** 16:6 | 50:20 60:2 |
| **answer** 7:7,11 | **approximation** | 34:16 43:1 | 62:5 66:3 |
| 7:22 94:6 95:2 | 8:23 | 47:11 | 68:15 69:13,20 |
| 95:23 98:18 | **area** 44:25 45:7 | **attempted** | 71:7,11 74:17 |
| 99:7,9 | 45:9,25 80:12 | 36:18 47:16,20 | 76:17,19 77:1 |
| **answers** 2:13 | 80:20,22 82:23 | 49:12 | 83:16 99:17,24 |
| 6:22 8:4,18 | **areas** 82:8 83:6 | **attended** 3:2 | **bag** 63:2 75:9 |
| 92:23 93:3,6 | 83:6,9 | **attention** 64:1 | 75:15,17,21 |
| 93:10 104:17 | **arm** 67:12,14 | 64:15 67:16 | 76:4 85:19 |
| 105:6 | 82:14 | **attorney** 5:2 | 86:18 |
| **anybody** 86:22 | **arms** 57:16 | 76:10 86:17,22 | **bandaging** |
| **anymore** 20:1 | 65:5,11 71:1 | 87:3,15 93:2 | 73:14 |
| 32:10,13 | 73:16 82:5,5,9 | 94:3 104:8 | **barely** 50:9 |
| **apart** 25:13 | 82:10,13 83:3 | **attorney's** 6:12 | **base** 49:11 |
| **apologize** 91:11 | **arrangements** | **attorneys** 92:22 | **based** 24:7 |
| | 105:19 | 104:21 | 98:22 105:17 |

Sheryl Copeland
June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[basic - care]**

Page 3

| | | | |
|---|---|---|---|
| **basic** 88:15 | **bills** 83:23 84:2 | **brand** 18:1,5 | **burned** 71:24 |
| **basically** 19:1 | 84:19 | 18:14,18 | 72:5 |
| 29:17 31:14 | **birth** 10:10 | **brandon** 10:17 | **burns** 59:24 |
| 84:12 | **birthday** 16:10 | 10:17 | 62:4 65:3 |
| **basis** 103:13 | **bit** 25:2 28:1,14 | **break** 65:20,22 | 70:14 72:11 |
| **bed** 64:19 | 28:18 53:19 | 99:17 | 74:8,13 78:7 |
| **beef** 22:8,25 | 65:14 80:18,23 | **breast** 80:3,22 | 81:1 |
| 30:18 | 81:18 | 81:18,22 | **button** 31:10 |
| **beep** 34:6,9,10 | **bite** 78:3,4,10 | **breasts** 54:16 | 31:12,24 65:6 |
| 34:11 | 78:16 | **brick** 101:2 | 90:18 |
| **beeps** 42:16,19 | **blew** 50:10 | **bright** 65:8,9 | **buttons** 41:9 |
| **began** 38:4 | 51:13 54:11,12 | 65:13 | **buy** 18:11 |
| 41:11,12 | 59:18 | **broken** 24:13 | 20:22 |
| **beginning** 4:9 | **blister** 78:13 | **broth** 19:2 | |
| 4:16 10:3 23:4 | **blistering** | 30:18 | **c** |
| 94:4 | 65:10,14 67:11 | **brought** 86:17 | **c** 3:1 11:5 103:8 |
| **believe** 11:24 | **blisters** 65:7,11 | 86:21 | **cabinet** 55:25 |
| 23:14 52:7,11 | 67:13 71:20 | **brown** 3:19 | **cadaver** 70:11 |
| 61:13,15,17 | 77:24 | 4:20 | 70:12,13,19,24 |
| 70:7 73:5 | **block** 101:2 | **build** 33:13 | 83:7 |
| 94:18,24 | **board** 3:24 | 41:12 | **call** 44:8 60:19 |
| **believing** 78:9 | 103:6 | **building** 31:17 | 87:16 92:22 |
| **belly** 65:6 | **body** 54:13 | 33:7 90:21 | **called** 30:23 |
| 70:25 83:4 | 70:21,23 | **builds** 33:17 | 68:15 |
| **benefits** 21:5 | **booklet** 6:23 | **built** 33:10 | **calm** 60:11,12 |
| **best** 7:8 24:19 | **borders** 13:20 | **bullet** 88:18 | **camera** 27:17 |
| 40:9 41:18 | **born** 10:12 | 89:6,22 | 28:6,13 |
| 42:24 46:8 | **bottle** 48:15,15 | **bunch** 88:18 | **cancel** 90:18 |
| **bet** 44:2 65:21 | **bottom** 89:7 | **burn** 14:25 | **candidly** 99:1 |
| **better** 44:12 | 90:14 | 15:4 63:24 | **canning** 22:13 |
| 78:1 | **bought** 16:11 | 73:18 76:21 | **cannula** 58:24 |
| **beyond** 84:21 | 16:12 20:16,20 | 77:8 78:19 | 58:25 |
| **big** 40:2 60:3 | 20:24 35:8 | 82:2 83:20 | **capital** 90:15 |
| 80:17 83:11 | **box** 27:20 | 85:9 | **car** 69:3,4 |
| | | | **care** 67:20 75:1 |

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

**[careful - concluded]**

Page 4

| | | | |
|---|---|---|---|
| **careful** 26:6 | **change** 99:2 | **cleaner** 8:7 | **coming** 19:12 |
| **carefully** 90:23 | 101:19,21 | **cleaning** 25:24 | 36:2,9 37:1 |
| **carnegie** 3:13 | **changes** 104:19 | 38:11 61:19 | 53:9,11,16,21 |
| **carries** 6:12 | **characterizati...** | 67:2,4 92:12 | **commissioner** |
| **carton** 30:18,20 | 37:12 | **clear** 34:1 43:4 | 4:5 |
| **case** 9:12 | **check** 101:18 | 53:18 | **commitment** |
| 103:13,13 | **checked** 47:1 | **click** 31:14,15 | 105:20 |
| 104:11 | 71:19 94:20 | 32:18 | **common** 89:3 |
| **cause** 4:10 13:2 | 98:5 | **clicking** 32:17 | 91:7 |
| **caution** 95:11 | **checking** 97:22 | **client** 6:24 93:1 | **communicate** |
| 95:15,18 | 98:20 | **clockwise** | 87:17 |
| **caved** 80:23 | **chest** 65:6 | 90:24 | **compared** 21:9 |
| **caving** 79:1 | 70:25 73:15,16 | **clogged** 91:22 | 24:6 |
| **ccr** 1:25 105:23 | 78:6 79:25 | **close** 40:15 | **compensation** |
| **ceiling** 56:9,11 | 82:6 | 48:19 | 104:2 105:16 |
| 56:16,17,23 | **children** 11:11 | **closed** 35:23 | **complete** 7:11 |
| 57:1,2,4 | 11:25 13:4,7 | 75:9 89:10 | 9:11 103:18 |
| **cell** 69:19 73:23 | **chin** 65:4,4 | **closely** 62:6 | 104:16 |
| **center** 3:13 | 82:7,7 | **closer** 23:4,5 | **completely** |
| 44:14,14 46:4 | **choice** 101:23 | 35:15 45:10,15 | 73:11 |
| 48:3 63:24 | **chores** 38:13 | 49:2 61:9 | **compliance** |
| 101:3 | **cinder** 101:2 | **closest** 29:22 | 103:3,24 |
| **cert** 105:24 | **circle** 79:7 | **clothes** 60:2 | 105:13 |
| **certain** 89:10 | **civil** 1:5 4:7 | **code** 13:21 | **complication** |
| **certainly** 52:14 | **claim** 63:12 | 103:25 105:14 | 77:17 |
| **certificate** | 81:24 93:4 | **cold** 98:9 | **complications** |
| 105:2 | **clean** 25:9 | **collar** 54:22 | 77:6 80:5 |
| **certified** 4:2,3 | 61:20 62:3,19 | **colloquies** | **compression** |
| 103:14 104:18 | 86:18,23 91:14 | 104:17 105:5 | 71:22 |
| **certify** 4:5 | 91:19,22 | **column** 89:5,21 | **computer** |
| 105:3 | **cleaned** 27:9 | **come** 55:19 | 105:7 |
| **cetera** 55:4 | 60:18,22 61:1 | 59:1 60:19 | **concerned** 67:1 |
| **chair** 42:22 | 66:20 75:12 | **comfortable** | 74:25 77:14 |
| 58:19 61:2 | 92:2 | 19:18 | **concluded** |
| | | | 102:3 |

Sheryl Copeland                                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[condition - counsel]**                                      Page 5

**condition** 62:23
  74:24 87:3
**conference**
  1:18 4:8
**confirm** 96:10
**confirmation**
  16:4
**connection**
  16:9
**consider** 63:21
**contact** 90:25
**contacted**
  104:7
**contents** 54:11
  54:14 55:9,12
  56:23 57:11,13
  59:18 61:20
**continually**
  20:25
**continuation**
  82:21
**continue** 8:2
  36:24
**continuous**
  34:8
**contract** 104:1
  105:15
**contracts**
  103:12
**convenient**
  21:8
**conversation**
  8:14 47:15
  66:10 70:2

**conversations**
  66:7
**convey** 8:9
**cook** 17:6,17
  21:20 23:19
  30:12 31:24
  38:4 39:15
  41:19,23 42:14
**cooker** 2:11,16
  15:17,21 16:15
  16:17,18,21
  17:5,11,17,24
  18:6,10,15,21
  18:25 19:15,25
  20:9,12,13,16
  20:23 21:6,9
  21:16,17 22:1
  22:6,24 23:3
  23:18 24:6,12
  24:25 28:2,24
  29:1 34:19,22
  35:7 38:4
  43:10 44:20
  45:8 46:9,22
  47:6,12,17,21
  49:8,11,12,19
  49:25 50:1,20
  50:24 52:5,23
  54:19 61:5,21
  62:7,20,23
  66:17,22 67:5
  74:18 75:2,7
  75:18 85:19
  86:19,24 87:2
  88:6,8 89:23

  90:2,4,10,16,17
  90:22,23 94:15
  94:17,19,21,25
  95:10 98:5
  100:9
**cookers** 21:3
**cooking** 19:6
  21:9,18 22:19
  23:17 32:21
  33:1,21 38:17
  47:9
**cooks** 89:8
**cool** 25:11
  59:24
**cooled** 89:24
**cooler** 25:7
**copayments**
  84:10,12
**copd** 14:14
**copeland** 1:6,7
  1:16 4:9,17,18
  5:7,8,8,11,16
  10:4,22 12:13
  12:14,20,24
  13:5 14:4
  22:20,21,24
  48:6,19 57:14
  57:17 59:5
  64:21 68:17
  93:18 94:8,13
  94:18,20,23
**copy** 2:10 88:5
**cord** 31:8
**correct** 12:20
  12:21 14:7

  15:12,18,19
  18:16,19 23:19
  23:20 24:2,3
  25:8,21,22
  26:24 29:25
  30:1,5 32:6,7
  32:11,12,15
  34:19,20 35:1
  36:10,11 37:4
  37:5,14,15,20
  39:7,8 40:13
  40:14,20 41:6
  41:7,25 42:1
  42:17 43:7,8
  45:14 48:11,12
  48:16,20,21,23
  48:24 49:4,22
  50:2 52:15,16
  52:21 53:23
  57:8 59:2
  63:14 65:17
  66:19 69:15
  70:16,22 72:19
  73:5 81:21
  85:17 87:5,6,9
  89:19,20 90:11
  90:12 91:8,9
  91:16,19,20,23
  91:24 92:3,4
  104:16 105:9
**council** 3:25
**counsel** 3:2
  4:24 27:14
  50:19 85:25

Sheryl Copeland                                              June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[countdown - disclosures]**                              Page 6

**countdown**
  41:16
**counted**  34:5
**counter**  32:5
  43:11 44:23
  52:1 55:23
  61:6,7
**countertop**
  45:16
**couple**  7:5 56:6
  83:4 100:2
**course**  24:21
  98:9
**court**  1:1,23
  3:24 4:3,22 5:9
  5:25 6:18 7:23
  8:10 101:14
  103:6,14
  104:18 105:22
**courtesy**  7:13
**covered**  70:24
  73:11 83:23
  84:2,13,15,25
**crr**  1:25 105:23
**current**  86:3,7
**customer**  13:25
**cut**  79:24
**cv**  1:5
**cycle**  41:12,19
  42:14

**d**

**d**  2:2
**damage**  56:15
  56:20

**date**  4:6,14
  10:10 15:7,24
  76:11 86:8,12
  93:23
**dates**  101:20
**david**  3:11 5:1
  5:16 9:16
  65:18
**day**  7:24 15:13
  30:17 33:21
  37:22 38:8,23
  39:1,4,7,17,21
  41:19 44:18
  46:18 58:16
  62:18,19 63:19
  64:2,23 66:5
  66:15,16 69:16
  70:6 71:10,15
  72:15 79:10,12
  91:17
**days**  37:16 63:1
  72:22 74:25
  79:21
**dead**  80:1
**death**  13:2 14:5
  81:25
**debridement**
  70:10 71:18
**december**
  12:25
**decided**  68:16
**deductibles**
  84:21
**deep**  97:14

**defendant**  1:12
  3:10 5:4 93:16
**defendant's**  2:6
  43:13 44:8
  45:20,24 87:20
  88:4 92:17
  93:14 100:19
**define**  64:11
**definitely**  51:18
**delivered**  86:6
  87:2
**demonstrate**
  29:15 51:6
**demonstrated**
  32:1 50:11
  51:14 97:25
**demonstrating**
  50:14 96:23
**denise**  11:17
  13:8
**dependent**  58:9
**depending**  25:2
**deposition**  1:15
  4:16 5:21,22
  93:5 101:18
  102:3 105:4
**depressurized**
  19:8,10,13
**describe**  65:1
  70:4 80:16
  81:9 93:22
  100:24
**describes**  94:10
**detail**  93:22

**detailed**  39:24
**details**  100:16
**detergent**
  48:15,16
**determined**
  104:3
**developed**
  78:21
**device**  92:6
**diagram**  35:24
**difference**
  98:15
**different**  24:5
  96:17 97:3
**difficult**  90:1
**difficulty**  40:21
  41:3
**dinner**  21:14
  94:9
**direct**  104:1
  105:15
**dirty**  91:22
**disability**  14:13
**disabled**  14:8
  14:10
**disassemble**
  27:11 75:14
  86:18,22
**discharged**
  72:24 73:3
**disclosure**  3:22
  103:7
**disclosures**
  103:1,3 104:5

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.
June 6, 2023

**[discoloration - estimate]**                                          Page 7

discoloration
81:7,10,14
disconnected
58:23
discount
104:13
discounts
104:11
discovery
24:18 100:7
discuss 63:15
63:18
discussed 63:6
63:9,11
disengaged
98:12
dish 25:15
dishes 47:22
disqualificati...
103:9
disqualify
103:22 105:12
dissipated
90:23
distinction
77:12
district 1:1,2
disturbed 63:8
division 1:3
divorce 11:9,10
12:3,4,6 35:5
doctor 64:1
67:20,22 78:4
78:15,18 84:19

doctors 85:9,11
85:15
document 88:2
92:22 93:11
doing 8:2,2,25
37:13 38:8,15
42:2 47:9,19
49:16,18 50:3
51:20,22 64:18
64:23 67:7
73:9
dollars 84:20
donor 70:20
dosterman
3:16
doubt 98:2
dr 68:1 79:6
85:10
drainer 25:15
drawer 45:11
45:13 49:3
drew 79:7
drink 38:25
39:3
drive 3:13 69:3
71:7
driving 71:8
dropped 95:20
drops 96:3,17
drove 68:10
69:4
dry 25:15 26:3
dual 48:10
due 35:4

duly 4:4 5:12
dying 78:6

**e**

e 2:2 3:1,1
11:20,20
earlier 38:8
early 16:23
17:22,25 19:15
64:7,12
ease 18:22
easier 7:21
21:11
easily 48:19
easy 37:13,17
edge 45:19
edward 1:6
4:17 5:8 10:22
11:1,2 12:13
13:5 14:4,21
15:3 22:19
23:11 34:21
35:6 38:15,20
39:3,6,10,14
40:7 46:24
47:12,16 51:7
53:2,5,24
60:25 61:14
62:13,19 63:16
63:25 64:15
66:6 67:11
73:18 94:8,13
94:20
edward's 81:25
82:2

effect 6:13
effort 59:10,14
eight 64:13
either 24:12
49:21 61:13
62:15 71:4
78:21
elbow 82:22
electric 16:18
20:11,12,15,23
21:6,15 22:6
24:5 35:7
electrical 88:15
eleven 57:18
eliminates 8:9
elizabeth 11:17
13:8
emergency
67:21 68:14
employed
13:22 14:4
ended 11:8
78:1
endurance
101:7
engaged 98:11
engages 33:17
entire 7:14
entitled 93:14
er 64:17
escaped 94:19
esquire 3:5,11
estimate 8:24
24:19 25:3
33:25 34:3

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

**[estimate - forth]**

Page 8

42:24

**et** 4:18,19 55:3
**ethics** 103:25
  105:14
**evening** 64:7,12
  71:4 94:9
**event** 78:21
**evidence** 105:9
**exact** 6:7 7:21
  7:22 18:9 64:9
  70:2 76:11,22
  86:8
**exactly** 8:8 16:1
  38:5 49:17
  56:4 62:25
  64:10 76:7
  78:11 86:11
**examination**
  2:3 4:11 5:14
**examine** 62:6
**examined** 5:12
**example** 56:19
**except** 103:12
**exemplar** 27:1
  27:15
**exhibit** 2:8,9,10
  2:13,15 43:13
  43:17 44:8
  45:20,25 87:20
  87:23 88:5
  92:17,20 93:14
  100:19
**exhibits** 2:6
  104:19,20,23

**expectations**
  24:7,15
**experience**
  20:19 21:3
  24:8 52:17
  91:7
**expiration**
  105:24,25
**explosion** 54:3
**extra** 52:8

**f**

**f** 11:20 13:13
**facing** 29:22
  47:24,25 48:22
  49:25 50:25
**fact** 91:25
**fall** 25:5
**family** 20:19
**far** 10:14 21:11
  54:7 55:25
  68:5,22 87:1
**father** 17:10,13
**feature** 21:16
  22:2
**federal** 4:7
**feel** 8:22 9:3
  32:14 36:16
  41:5 52:20
**feet** 55:10 56:2
  56:2,6,14
**fifteen** 33:14
  41:21
**fifty** 10:9 24:20
**file** 63:12

**fill** 30:20,23
  31:2,5,6 40:12
  40:15,19 89:15
**filled** 40:10
**financial** 103:9
**find** 16:6 29:6
**finding** 16:3
**fine** 8:15,16 9:1
  9:21 28:19
**fingers** 30:4
  36:16 71:25
  72:4,7,12
**finish** 7:14
**finished** 42:22
**firm** 5:2 104:5
**first** 5:12 6:5
  7:5 9:18 20:12
  23:8 35:13
  49:2 63:21
  64:14 67:19
  70:6 76:6,9
  85:11 87:4
  89:5 92:21
**five** 21:14
  34:15 35:11
  42:3 43:3,6
  45:18 46:21
  56:2 57:18
  60:14 76:24
  79:24 99:17
**flavorful** 21:5
**flesh** 78:6
**flew** 54:6
**float** 96:6,11
  97:3,11 99:5

99:10

**floating** 95:19
  95:24
**floor** 55:23,24
  67:2
**florida** 10:13
  10:18 12:7,8
  12:18
**fly** 54:4
**follow** 39:23
  83:17
**followed** 88:16
  89:18
**following** 4:11
  69:12 71:5
  88:17 103:2
**follows** 5:13
**food** 61:19
  75:11
**foot** 56:1
**force** 6:13
  52:12 90:3,15
**forearm** 82:15
  82:16,17,20,20
  82:25
**foregoing**
  105:4
**form** 6:23
**format** 5:20
**forms** 103:7
**fort** 13:11,12
  13:15
**forth** 76:17,20
  93:23

Sheryl Copeland                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[forty - happen]**                                          Page 9

**forty**  21:14
24:19 34:15
35:11 42:3
43:2,3,3,6,6
46:20,21 60:14
**forward**  100:22
**four**  40:4 72:7
72:10 76:24
77:3 83:16,18
95:16
**fourteen**  13:17
**fourth**  90:14
**frame**  17:20
**free**  9:3 27:1,2
**freely**  50:10
**freestanding**
44:13
**frequently**
16:24
**frese**  11:19,22
12:6
**friends**  20:18
**front**  6:8,14
27:16 28:10,25
45:9,16 49:1
49:24 50:21
51:4 55:25
**full**  7:7 10:2
**fully**  40:24,24
41:15 80:10
90:21
**function**  22:13
**furniture**  14:1

**g**

**garage**  76:1,3
**general**  37:3
91:13
**generally**  5:20
18:24 21:21
29:1 44:13
80:15 88:7
**georgia**  1:2 3:7
3:25 4:5 13:11
13:16 68:2
103:4,15
105:24
**gestured**  55:16
**gesturing**  82:18
**getting**  19:22
78:1
**gift**  18:13,15
**give**  6:10 7:7,10
7:12,13 9:11
10:2 13:18
67:4 99:13
**given**  18:12
100:6 105:10
**giving**  70:6
**glasses**  58:2,4,5
**gloves**  71:21
**go**  6:4 10:14
18:11 21:19
31:25 34:13
43:24 47:5
48:7 54:7,8
62:5 64:25
67:18,21 68:3
69:2,10,13

76:19 77:1
79:10,15 80:7
80:8 85:24
99:5
**goes**  7:24 29:18
33:6 94:10
96:3
**going**  5:19 6:19
6:22 7:7,8 8:1
8:17 9:17 16:2
26:7,8 28:12
43:18,25 44:11
46:15 49:5
63:6 66:11
70:8 75:23,24
76:16 79:3
80:14 93:19
95:4 99:2
101:8
**goldberg**  3:12
**goldbergsega...**
3:16
**goldman**  5:3
**good**  9:8,24
25:3 27:10
42:9 64:24
77:12
**grabbed**  50:7
**grade**  10:15
**graduate**  10:16
**graft**  70:15
**grafts**  71:18
**gripping**  52:7
**ground**  6:4 7:5

**growing**  17:9
18:7,18
**grown**  34:24
**guess**  8:21
**guessing**  68:24
**guesstimate**
45:18
**guesswork**  8:10

**h**

**h**  11:5
**habit**  34:17
**half**  40:4 69:1
**hand**  30:3 32:8
37:9,13 49:22
50:12,15 51:12
51:15,16,20,22
51:24 52:4,19
53:24 54:4,5,6
72:2,8 82:22
**handed**  50:18
**handedly**  50:7
**handle**  9:20
29:11,12,22
51:13 52:4,8
53:25 61:12
90:24
**hands**  49:8,16
50:4 52:24
53:3 54:16,25
71:22,23
**handy**  26:25
**hanging**  65:11
67:13
**happen**  33:17
34:4

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.

June 6, 2023

**[happened - inner]**

Page 10

**happened**
39:11 54:3,3
64:6 66:7,8
78:7
**happening**
68:11 69:5
**happier** 7:23
**hard** 30:8
96:12
**hazardous** 90:4
**head** 8:5,5
54:15 67:8
73:16 85:23
**heal** 82:3
**healed** 77:25
80:10 81:2
**healthcare** 64:2
85:2,3
**hear** 12:22
36:12 41:5
42:13 53:9,12
**heard** 36:23
42:16,18
**heart** 83:10,13
**heat** 23:25 91:1
**heating** 21:19
**height** 56:11
**help** 58:14 59:1
59:4,7
**helping** 75:1
**helps** 27:3
**hey** 59:7
**high** 10:17
31:14 54:10

**history** 10:25
**hit** 31:23 54:25
56:16
**hits** 32:15
**holding** 49:10
49:11,21 51:23
**hole** 96:14 97:6
97:10,14
**holiday** 16:10
**home** 71:7
73:12 74:16,17
94:8
**honest** 9:12
**honestly** 54:9
67:1 68:25
69:24 76:8
**hoped** 80:8
**horne** 3:6
**hospital** 68:3,4
68:5,9,13,23
69:6 71:12
72:14,18,21
73:3 74:12
79:11,15,16
83:16 85:12
**hot** 98:3
**hotel** 71:9
72:23
**hour** 68:25
69:1
**hours** 21:21
69:1
**house** 38:11
39:9,13,21
55:7 60:7 76:2

100:12,14
**huh** 8:6,6 29:13
31:11 32:3
33:8 44:10
46:19 48:9
92:7,25 99:4
**hundred** 84:20
**hurting** 64:21
**husband** 42:5
43:6 60:22
69:14 72:17
85:16 97:9,24
**hypoxia** 13:3

**i**

**idea** 100:18
**identification**
43:15 45:22
87:22 92:19
100:21
**identifying**
93:25
**immediately**
45:12 59:17
**impacts** 105:20
**impartial**
105:21
**impartiality**
103:24 105:13
**importance**
31:2
**important** 7:4
88:14
**improper** 89:9
**inc.'s** 93:16

**inch** 40:17,18
79:24
**inches** 45:18
**incident** 60:11
**including** 88:17
91:14
**incorporated**
4:19 5:5
**indicate** 8:24
**indicated** 42:14
**indicates** 35:25
90:2
**indicating** 30:7
31:23 35:21
37:9 50:8
54:16 81:16
95:25 96:3
97:23 98:11
**infection** 77:18
79:25
**infomercial**
20:25
**informal** 6:11
**ingredients**
39:18 40:11
**injuries** 14:25
15:4 65:2
73:18 76:21
77:2,8,22 82:2
83:20 84:17
85:9
**injury** 78:19
84:14 89:9
**inner** 25:12
89:16

Sheryl Copeland                                June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[inside - letting]**                                    Page 11

| | | | |
|---|---|---|---|
| **inside** 23:22 | **interrupt** 7:9 | 44:12 47:24,24 | **labeled** 88:4,12 |
| 26:4,4,16,20 | 65:19 | 47:25 60:10 | **landed** 61:15 |
| 27:8 29:18 | **involved** 29:5 | 62:6 73:13 | 61:17 |
| 61:25 62:10 | **issue** 15:16 | 77:25 78:12 | **large** 67:13 |
| 69:9 82:5,14 | **issues** 24:11 | 84:9 96:12 | **larger** 45:4 |
| 82:20 88:11 | **italian** 30:16,17 | **kitchen** 42:20 | **late** 38:6 |
| 90:21 91:21 | | 44:15,18 46:2 | **laundry** 85:21 |
| 94:16,25 95:25 | **j** | 46:25 47:7 | **law** 103:4 |
| 96:13 | | 56:12 58:14 | **lawrence** 11:2 |
| **inspect** 86:19 | **jars** 45:4,10 | 59:1,4 75:22 | **lawsuit** 15:9,17 |
| **instruction** | **jersey** 3:15 | 85:20 90:19 | 63:13 |
| 23:9,12 89:15 | **jigger** 19:3,11 | **knew** 23:17,21 | **lawsuits** 14:19 |
| 89:19 95:18 | **jiggled** 94:14 | 47:2 52:11,13 | 14:22 |
| **instructions** | **john** 11:19,22 | 52:14,17 70:8 | **lawyer** 86:3,3,7 |
| 37:3 88:18,22 | 12:6 | 90:9 | **lawyer's** 86:1 |
| 89:11 90:5 | **judge** 6:9,14 | **knob** 26:18,22 | **laying** 61:6 |
| 95:14 | **judicial** 3:25 | **know** 6:5 7:21 | **leading** 94:17 |
| **insurance** | **july** 15:11 73:7 | 8:8 9:2,3,4 | 94:23 |
| 83:24 84:3,25 | 73:19 94:9 | 15:24 16:8 | **leave** 43:21 |
| 85:1 | **jump** 94:12 | 18:3 19:9 | 66:23 75:21 |
| **intention** 93:2 | **june** 1:17 4:14 | 30:12 34:6,21 | **led** 32:21 33:3 |
| **interest** 103:10 | 102:4 | 54:10,23 57:14 | 33:18 41:9 |
| 103:20 105:11 | **junior** 11:19,22 | 62:13 77:23 | 50:25 |
| **interior** 25:17 | **jury** 6:9,15 7:1 | 82:18,21 87:1 | **left** 36:5 37:1 |
| **internal** 89:25 | | 98:14,25 99:18 | 39:20 46:11,12 |
| **interpret** 8:11 | **k** | 100:10,15 | 48:5,14,16 |
| 8:12 | | **knowledge** 9:2 | 51:20,22,24 |
| **interpreted** | **k** 3:5 | 13:1 14:21,23 | 52:4 75:19 |
| 53:20 | **keep** 21:20 31:6 | 15:3 21:22 | 80:2,4 81:19 |
| **interrogatories** | 40:12 63:4 | 71:2 85:14 | 81:23 |
| 2:14 92:23 | 90:18 | **known** 5:21 | **legal** 4:21 5:25 |
| 93:17 | **keeping** 31:2 | | 103:17 104:6 |
| **interrogatory** | **kid** 17:9 | **l** | **letters** 90:15 |
| 93:20 | **kin** 5:8 | | **letting** 7:13 |
| | **kind** 5:25 8:13 | **l** 67:25 | |
| | 15:1,5 17:23 | **label** 44:8 | |
| | 18:5 32:14 | 95:11,18 | |
| | 33:5 36:16 | | |

Sheryl Copeland                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[level - marked]**                                    Page 12

| | | | |
|---|---|---|---|
| **level** 7:8 | **literally** 18:9 | 62:22 72:20 | 103:3 104:19 |
| **leverage** 52:9 | 52:19 | 74:23 76:4 | 105:19 |
| **licensed** 4:4 | **little** 25:1 26:18 | 79:19 | **maiden** 10:3,6 |
| **lid** 19:3 23:23 | 26:22 27:25 | **longer** 76:15 | 10:7 |
| 24:2 25:13,16 | 28:14,18 33:6 | 94:23 98:7 | **maintaining** |
| 25:17,20 26:2 | 35:24 53:19 | **look** 6:24 27:2 | 103:23 105:12 |
| 26:4,14,20 | 57:5,5 65:13 | 62:16 65:8 | **make** 7:23 8:23 |
| 27:6 29:16 | 76:14 78:13 | 67:20 68:16 | 22:8,15 23:24 |
| 30:11 31:19,20 | 80:17,23 81:17 | 78:22 79:7 | 25:14 26:6,21 |
| 31:21,22 34:16 | 81:18 | 88:7 97:9 | 27:9 29:6 |
| 37:10,18 40:22 | **live** 6:8,14 | 99:17 | 35:17 40:7 |
| 40:24 47:4 | 13:10 68:6 | **looked** 29:1 | 50:6 61:24 |
| 49:13 50:9 | **lived** 13:15 | 30:3 44:18 | 62:9 63:11 |
| 52:12,25 53:3 | **living** 12:5,8 | 62:1 74:5 | 89:10 90:22 |
| 54:4,11 56:16 | 42:5 58:19 | 77:25 79:1 | 95:6 96:10 |
| 59:8,15 61:25 | **ln** 2:4,7 | 99:9,10 | 103:18 |
| 62:10,11,16 | **located** 68:1 | **looking** 73:13 | **makes** 8:7 |
| 90:25 91:14,21 | 94:22 98:6 | 76:23 | 32:17 |
| 92:1,3,5 95:9,9 | **location** 93:24 | **looks** 28:9 29:8 | **making** 39:24 |
| 95:11,20 99:2 | 98:22 | 32:9 37:12 | 43:1 81:24 |
| 100:25,25 | **lock** 19:3 31:23 | 45:3 48:10 | 103:22 |
| **lighter** 78:1 | 37:18 | 90:13 | **manager** 13:25 |
| **liked** 21:10 | **locked** 23:24 | **lot** 7:20 8:7 | **manner** 22:1 |
| **line** 30:21,22 | 29:19,21,24 | 47:9 62:4 | **manual** 2:10 |
| 30:23 31:3,6 | 32:13 40:25 | **low** 31:14 | 23:9,12 36:20 |
| 40:12,16,19 | 41:6 | | 87:9,11,13 |
| 79:9,13 89:16 | **locking** 96:7 | **m** | 88:7 |
| **liner** 25:18,20 | 97:21 | | **marital** 10:24 |
| 26:3,15 27:6 | **lomboy** 67:23 | **m** 67:25 | **mark** 57:3 |
| 62:11,16 91:14 | 68:1 79:6 | **ma'am** 10:2 | 100:23 |
| 91:21 92:2 | 85:10 | 28:24 100:1 | **marked** 43:14 |
| 100:25 | **long** 13:15 14:2 | 101:5 | 43:17 45:21,24 |
| **lip** 57:15 65:3,3 | 14:10 33:12,22 | **macon** 1:3 3:7 | 87:21,23 92:18 |
| **lips** 65:4 | 41:19 42:25 | **made** 3:22 | 92:20 93:13 |
| | 57:22,24 60:12 | 15:25 40:11 | 100:20 |
| | | 47:11 59:10,14 | |
| | | 77:4 83:11 | |

Sheryl Copeland                                          June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[marks - notary]**                                    Page 13

| | | | **n** |
|---|---|---|---|

**marks**  4:15
**marriage**  11:6
  11:12,18 12:1
  12:12 13:5
  22:19
**married**  10:19
  10:21 11:1,22
  12:9,15 35:2
**marty**  3:5 5:6
**matter**  4:17
  103:21 104:9
  105:11
**max**  30:23 31:2
  31:6 40:12,15
  40:18 89:16
**mcgalliard**
  1:24 4:1,23
  105:23
**meal**  33:21
  38:17,19,21
  39:15,18 94:11
**mean**  16:6 25:7
  30:6 58:12
  63:10 69:24
  70:12 97:2,13
  97:21 98:13
**means**  6:9
  105:7
**meant**  8:13
**meat**  18:23
  19:1 21:5
  31:10 33:1
**meaty**  82:15
**medical**  64:1
  64:15 67:15

77:17 83:23
  84:2
**medicare**  84:15
  84:23
**medication**
  9:10 71:21
**medium**  31:14
  31:15,16,24
  32:25
**meet**  24:14
**mess**  60:18
  61:1 73:10
**met**  5:17
**metal**  94:21
  98:6
**michael**  3:19
**middle**  1:2 7:16
  10:5 35:16
  73:1
**mike**  4:20
**mind**  27:22
  43:17 81:15
**minute**  65:22
  99:17
**minutes**  21:13
  21:14 33:15,24
  34:2,15 35:11
  41:21,22,24
  42:3 43:3,7
  46:21 60:15
  68:7
**mischaracteri...**
  53:7
**missed**  72:11

**misspellings**
  101:20
**mobley**  14:1
**mode**  21:19
  41:16
**model**  2:12
  29:7 88:6
**moderate**  81:10
**mom**  18:6,18
**moment**  51:11
  95:5 99:14
**momentarily**
  58:13
**moments**  5:17
**monday**  64:16
  65:10 67:10
**money**  84:13
  84:16
**monitor**  4:15
**month**  17:1
  24:25 25:2,4
**morning**  64:16
  65:10 67:10
  69:12 71:5
**mother**  17:10
  17:13,15,16
**move**  28:14,18
  35:15 43:20,22
  43:23 54:19
  96:19 97:16
  98:12,13 99:2
**moved**  85:18
**msenn**  3:8
**mummy**  73:13
  74:5

**n**  2:2 3:1
**name**  4:20,24
  5:1,6,16 10:2,3
  10:5,6,7 11:3
  11:16
**names**  11:16
**nature**  14:12
**near**  58:18
**necrosis**  78:5
  78:22
**need**  68:16
  90:16 95:10
  101:24
**needed**  23:23
  23:24 59:4
  68:17
**negative**  67:9
**neither**  8:11
**netflix**  42:8
**never**  22:3
  36:18 89:15
  90:15
**new**  3:15 18:14
**night**  38:18
  63:15 64:19
**nine**  10:9 56:13
**nodding**  8:5,13
**normal**  35:12
  39:23 40:6
  97:8
**normally**  32:4
  58:2
**notary**  105:25

Sheryl Copeland                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

[notes - part]                                                    Page 14

| | | | |
|---|---|---|---|
| **notes** 76:23 | 22:8 26:21 | **onion** 30:15 | 43:22 44:2 |
| 99:18 | 27:5,11,18,23 | **onions** 19:2 | 50:19 65:21 |
| **notice** 97:17 | 28:8 29:10,14 | **oops** 31:22 | 99:12 101:5 |
| **noticing** 104:8 | 29:20 30:9,14 | **open** 34:16 | **outside** 26:17 |
| **number** 1:5 | 31:1,5 32:1,20 | 35:12,14 36:4 | 60:8 75:23 |
| 4:16 76:22 | 33:12,16,25 | 37:7,9,19 43:1 | 76:2 79:9,12 |
| 93:20 95:17 | 34:4,12 35:6 | 45:9 47:3,6,11 | **oven** 44:13 |
| **numbered** 94:5 | 35:19 36:4,21 | 47:16,20 50:17 | **own** 16:20 20:8 |
| **nurse** 69:18 | 37:6,21,24 | 52:9,12,19,24 | 35:3 61:15,18 |

**o**

**o** 67:25,25
**oath** 6:1,6,7
**objection** 94:2
94:7
**objections** 9:17
9:19,23 93:15
**obligation**
103:24 105:13
**observation**
65:1 96:10
**observations**
61:24 62:10
**observe** 41:11
41:14
**occasionally**
16:25
**occurred** 94:1
**ocga** 103:8,11
104:10
**october** 78:2
**office** 6:12 86:1
**officer** 105:21
**oh** 46:24 96:4
**okay** 6:18 7:2
8:21 16:8 20:8

38:14 42:13
44:24 45:3,11
45:15,23 46:14
46:16 47:5
48:2,7 49:20
50:19 51:3,6,9
51:19 54:22
56:8 65:19
66:5 67:15
76:9 84:22
86:16 88:11
91:10 93:9
95:4,21 96:4,9
96:20 97:7,15
97:19,24 98:4
98:9 99:12,19
99:20 100:3,15
100:22 101:25
**old** 10:8 19:19
19:21 20:6
34:17 90:10
**once** 17:1 24:25
27:6 34:9,10
35:10,10 41:24
47:2 85:25
95:19

53:3 54:22
59:8,11,15
83:10,13 86:17
89:22 90:1,3
90:15,17,20,24
90:24
**opened** 24:2
53:5
**opening** 96:11
**opens** 35:23
**operating**
89:11
**opportunity**
7:11
**oral** 4:10
**order** 30:13
52:8
**ordering** 105:1
**ordinary** 8:14
77:16
**oriented** 50:24
**osterman** 2:5
3:11 5:1,2,15
5:17 9:21,25
27:14,21,24
28:8,13,19,22

81:11 84:3
**owned** 16:14
17:24 20:13
35:6
**owning** 24:21
**oxygen** 14:15
14:16 58:8,10
61:3

**p**

**p** 3:1,1
**p.m.** 102:4
**page** 88:12,12
88:21 94:5
**paid** 84:3
**pain** 62:4
**pair** 57:20
**palm** 72:1
82:21
**pants** 55:3,6,13
57:20,22,23
**part** 25:24
70:23 71:23
75:14 76:6
82:15 84:1
89:2 95:1 96:7
96:13

Sheryl Copeland                                      June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[parties - pressure]**                                    Page 15

parties  104:12
  105:1,21
parts  19:22
  70:25
party  14:18,22
  104:2,13
  105:16
pass  12:24
passed  12:20
password
  104:22,25
past  65:5
patience  101:7
pause  7:16
people  82:19
  93:25
pepper  30:15
perceive  59:3
perfect  28:23
perfectly  9:1
permanent
  77:9,9 82:4
perry  68:2,4,5
  68:8,13,23
  79:16 85:11
perspective
  20:5
pg  2:4,7
phone  69:19
  73:23
photo  44:14,15
  48:8 100:4
photograph  2:8
  2:9,15 44:4,25
  101:3

photographs
  57:10 73:17
photos  43:16
  73:21 74:15
phrase  7:18
physical  56:15
  98:22
picked  34:18
picture  28:6
  45:23 46:5
  49:5 100:8,11
  100:17,24
pictures  73:25
  74:1,2,6,7,10
  74:11,12
piece  25:17
pin  94:22,22
  95:7,23 96:2,3
  96:5,15,16,19
  96:22,24 97:11
  97:21 98:1,6,7
  98:8,11 99:3
pinching  96:24
place  26:4
  37:18 78:25
  79:24 81:17
  104:9
placed  61:14
places  83:4
placing  52:3
plaintiff  1:8 3:4
  93:17 94:13,20
plaintiff's
  93:15,22

plaintiffs  94:7
plant  60:3,6
plastic  63:2
  75:8
please  4:24
  5:10 10:25
  11:4 13:19
plug  31:8
pocket  84:4
point  23:18
  31:18 36:5
  41:14 49:7
  57:9 59:6,11
  62:5,9,18
  65:19 67:16
  70:7 73:9 75:5
  75:25 85:18
  86:16 87:16
  89:6,22
pointing  26:23
points  88:19
popcorn  57:1
portable  58:17
position  26:15
  26:17 27:15
  29:17,19,21
  32:13,18 50:20
  61:14 90:20
  96:5,17 97:10
  99:1,3
positioned  46:5
  48:3 51:4
  58:18
positive  52:2

possession  86:2
possible  63:12
possibly  16:5
pot  21:12 25:12
  26:23 27:7
  33:11 36:6
  43:20,23 46:4
  46:10 48:1
  49:1 54:11,12
  55:20 61:9
  89:16 98:3
pounds  40:5
pour  30:19
power  2:10
  15:23 20:11,22
  23:3 90:16,17
ppc780  2:12
  88:6
practice  35:12
  91:13 97:8
precautions
  88:16
premark  100:5
prepared  94:11
preparing  94:9
present  93:25
presently  13:10
press  90:17
pressure  2:11
  2:16 15:17,21
  16:14,17,18,21
  17:5,10,17,24
  18:5,10,15,21
  18:25 19:15,25
  20:9,12,13,16

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[pressure - r]**                                    Page 16

20:23 21:3,6,9
21:16,17 22:6
22:24 23:3,18
23:19,22 24:6
24:12,25 28:1
28:24 29:1
31:17 33:7,10
33:13,16 34:19
34:22 35:7
36:6 38:4
41:12 43:10
44:20 45:8
46:9,22 47:1,6
47:12,17,20
48:1 49:8,10
49:12,19,25
50:1,20,24
52:5,18,23
53:9 54:19
61:5,9,21 62:6
62:20,22 66:17
66:22 67:5
74:18 75:2,6
75:18 85:19
86:19,24 87:2
88:5,8 89:8,23
89:25 90:2,4
90:10,16,17,20
90:21 92:9
94:14,15,16,18
94:19,21,24,25
95:10 96:19,21
97:4,5,18 98:5
98:21 99:6
100:8

**pressurized**
41:15,25 90:3
**pressurizing**
41:20
**presto** 18:4,8
18:15
**pretty** 66:14
72:11 82:5
97:14
**primary** 67:19
**princeton** 3:15
**prior** 14:24
24:10 91:6
**probably** 16:23
17:3 33:14
36:12 45:17
55:6 56:13
60:14 68:24
76:6
**problem** 88:24
101:9
**problems** 24:11
**procedure** 4:7
70:17 71:3
**proceeding**
5:25 104:15,24
105:10,19
**proceedings**
4:12 103:19
**process** 71:17
76:17
**produced**
100:5 104:15
**product** 15:16
87:9,11,13

88:9
**products** 1:10
4:18 5:4 93:16
**professional**
4:2 103:25
105:14
**prohibited**
104:10
**prohibitions**
103:12
**pronounced**
81:14
**proper** 26:15
**properly** 23:23
26:7 89:10
**protected**
104:22,25
**protruding**
26:22
**provide** 93:3
104:7
**provided** 4:6
**provider** 64:2
**providing** 93:6
**pull** 26:19 55:5
97:25
**pulling** 96:25
**punch** 32:20
**purchase** 15:25
16:4
**purchased**
15:22 16:9
**purpose** 7:10
**pursuant** 3:23

**push** 31:12
**put** 9:19 19:3
21:12 26:2,3
28:9 29:16
30:2,14,15,19
31:18,20,21,21
31:21,22,24
32:8 37:8,18
40:3 41:2 44:7
49:7 51:11
63:2 70:13
71:22 75:8,17
76:1 83:7 87:4
88:1
**putting** 40:22
60:4 75:15

**q**

**quarter** 54:23
**quartered**
30:15
**question** 7:14
7:16,19,21
66:11 93:21
97:8
**questions** 6:21
9:7 92:24 93:7
99:19 100:2
101:6,11
104:17 105:6
**quite** 35:16
59:24 98:10

**r**

**r** 3:1 11:5,20

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.
June 6, 2023

**[raised - resembled]**                                    Page 17

| | | | |
|---|---|---|---|
| **raised** 80:17 | 69:5,22 71:14 | **refresh** 27:3 | 88:21 89:12 |
| 81:5 83:2,5 | **receipt** 16:3 | **registered** 4:2 | 90:6 91:13 |
| **raising** 77:13 | **received** 18:14 | **regular** 55:5 | 93:6 95:1 |
| **ran** 59:19 | 88:8 | **regulations** | **remote** 1:18 4:8 |
| **range** 44:13 | **receives** 104:13 | 3:24 103:6 | **remotely** 3:2 |
| 46:1 49:3 | **receiving** 84:23 | **related** 78:19 | 5:3 |
| 64:12 | **recess** 66:2 | 80:6 81:25 | **remove** 25:23 |
| **rather** 8:4 26:8 | 99:23 | 96:5 | 30:10 49:12 |
| **reach** 76:9 | **recipe** 39:23 | **relating** 76:20 | 62:15 92:12 |
| **reached** 47:3 | **recognize** 32:2 | 77:18 85:9 | **removed** 23:25 |
| 50:5 51:9 | 100:11,14 | 104:23 | 25:21 80:20 |
| **read** 6:25 7:19 | **recollect** 86:15 | **relationship** | 92:1 95:20 |
| 23:9,11 36:20 | **recollection** | 103:20 105:11 | 101:1 |
| 51:1 58:3 87:8 | 27:4 34:1 | **relative** 46:9 | **report** 103:21 |
| 89:17 91:2 | 40:10 41:18 | **relatively** 37:12 | **reporter** 1:23 |
| 95:13,17 | 46:8 49:21 | 81:3 | 3:22 4:2,3,4,22 |
| 101:15,17,24 | 50:23 51:16 | **release** 47:1 | 5:10 6:18 7:24 |
| **reading** 88:21 | 66:12 72:6 | 53:6 59:11 | 8:10 101:14 |
| 89:12 90:6 | 73:4 | 90:21 92:9 | 103:1,9,14 |
| **ready** 33:4 | **record** 4:14,25 | 94:15 97:20 | 104:18,21 |
| **really** 51:11 | 8:7,17 9:19 | 96:22 | **reporter's** |
| 62:2 66:9 79:2 | 65:25 66:4 | **released** 24:1 | 105:2 |
| 96:14 97:12,13 | 99:21,25 | 37:7 51:8,9 | **reporting** 3:24 |
| 97:17 98:12,13 | 100:23 101:12 | 52:18 72:14,16 | 103:6 104:7 |
| **realtime** 4:3 | 103:18,23 | 89:25 94:17 | **repository** |
| **reason** 9:10 | 104:16 105:9 | 96:22 | 104:25 |
| 16:11 24:14 | **recording** 28:3 | **remaining** 91:1 | **represent** 4:25 |
| 39:21 101:23 | **recovery** 77:8 | **remember** 15:9 | 5:4,7 100:6 |
| **reasonable** | 77:22,23 | 15:13,20 17:23 | **representations** |
| 8:23 | **red** 65:8,9,13 | 23:2,6 33:23 | 103:2 |
| **recall** 38:7 | 77:24 79:2 | 40:2 42:6,10 | **representing** |
| 39:20 47:15 | **redness** 79:8,9 | 51:21,23 60:17 | 4:21 |
| 49:17 51:7 | **referring** 84:18 | 61:4 62:25 | **require** 14:15 |
| 52:3 53:2 64:5 | 95:7,22 | 69:25 76:7,11 | **resembled** |
| 66:10 68:11 | | 76:16,22 82:13 | 78:12 |
| | | 85:22 86:5,8 | |

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[reserve - senn]**                                          Page 18

| | | | |
|---|---|---|---|
| **reserve** 9:17,22 | **road** 13:20 | **save** 87:11 | **section** 103:8 |
| **resistance** | **roast** 17:6 | **saw** 24:18 | **sections** 103:11 |
| 52:20 | 22:25 30:13,14 | 36:22 53:19 | **see** 8:15 27:17 |
| **respect** 77:21 | 39:25 40:2,6 | 61:4,11 74:21 | 28:9,12,16,17 |
| **responses** | 55:19,22 | 77:4 | 29:24 35:16,17 |
| 24:19 93:15 | **roasts** 22:8 | **saying** 8:6 | 36:9 41:5 44:3 |
| 100:7 | **room** 6:19 | 53:21 99:9 | 44:25 45:5 |
| **restroom** 65:20 | 28:17 42:5 | **says** 88:13 89:7 | 46:2,5 51:19 |
| **result** 89:9 | 58:19 67:21 | 89:22 90:15 | 53:9,15 57:2 |
| **review** 93:10 | 68:15 71:9 | 94:6 | 69:14 71:19 |
| **reynolds** 3:6 | 85:21 | **scalding** 89:9 | 85:8 86:22 |
| **reynoldsinjur...** | **rotate** 29:24 | **scar** 80:12 | 88:2 89:11 |
| 3:8 | 90:19 | 83:11,12,13 | 90:5 96:12,16 |
| **ride** 68:25 | **round** 92:6 | **scarred** 82:8 | 97:10,13 |
| **right** 7:17,17 | **rpr** 1:25 105:23 | **scarring** 77:10 | 101:23 |
| 8:3 9:6,9,15,25 | **rules** 3:23 4:7 | 82:4 | **seeing** 20:25 |
| 26:8,17 28:20 | 6:5 7:5 37:4 | **scars** 80:25 | 51:7 53:2 |
| 30:24 31:20 | 103:5 | 81:4,5 83:2 | 96:15 |
| 33:20 34:21 | **run** 36:16 | **school** 10:14,17 | **seek** 63:25 |
| 36:13,17,21 | | **screen** 32:22 | 67:15 |
| 37:23 43:9 | **s** | 33:4,18 41:9 | **seeked** 85:25 |
| 44:1,14,22,24 | **s** 1:8,12 3:1,4 | 43:18 46:15 | **seemed** 24:4 |
| 45:5,12 46:1 | 3:10,11 11:20 | 50:25 87:25 | 77:15 89:2 |
| 46:14,17 47:8 | **safe** 63:5 | 88:1 | **seen** 24:8 69:12 |
| 48:5 49:3 | **safeguards** | **scroll** 44:7,11 | 71:16 |
| 50:12,15,18 | 88:14 | 93:19 94:4 | **segalla** 3:12 5:3 |
| 51:4,15,16 | **safety** 20:4 | **searching** 7:17 | **select** 31:13 |
| 53:24 54:1,15 | 21:1 37:4 | **season** 23:6 | 32:25 |
| 55:16 61:8,10 | 88:15 94:22 | 25:6 | **senn** 3:5 5:6,6 |
| 70:9 73:18 | 95:7,23 98:6 | **seasoning** | 9:16,24 27:18 |
| 75:12,13,13 | **sake** 8:17 | 30:16,17,18 | 27:23 28:11,16 |
| 78:7 80:2 | **salt** 30:15 | **seasonings** 19:2 | 28:20 43:20,25 |
| 90:14 98:24 | **sat** 42:4,21 43:5 | **second** 89:21 | 50:22 65:18,23 |
| 99:12 101:17 | 61:22 | 89:21 | 101:10,16 |
| 101:22 | **saturday** 15:15 | | 102:2 |
| | 37:25 64:18 | | |

Sheryl Copeland                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[sense - start]**

Page 19

| | | | |
|---|---|---|---|
| **sense** 89:3 91:7 | **shoulder** 81:16 | **sit** 19:7 34:14 | **sorts** 17:4 22:5 |
| **sent** 27:1 93:1 | 81:17,20 | 42:21,25 60:10 | 22:23 |
| **sentence** 94:12 | **show** 6:24 | 66:18 | **sought** 64:15 |
| **separate** 27:6 | 42:22 43:16 | **site** 70:20 | **sound** 32:17 |
| 69:3 | 44:17 45:25 | **sitting** 32:2 | 53:13 |
| **serious** 65:16 | 80:15 87:24 | 43:10 61:2 | **sounds** 9:24 |
| **serve** 105:20 | 92:21 | 66:23 | **soup** 22:17 |
| **service** 13:25 | **shower** 59:23 | **six** 45:18 64:13 | 23:1 |
| **services** 104:7 | **showers** 59:19 | **size** 40:6 | **soups** 22:16 |
| **set** 21:13 25:15 | **shut** 21:23 | **skin** 55:9 67:12 | **source** 23:25 |
| 31:9 41:8 44:1 | **side** 26:8 48:5,5 | 70:13,15,19,19 | **speak** 69:16,20 |
| 44:21 69:11 | 48:14,14,16 | 70:20,24 71:18 | **specific** 15:24 |
| 84:17 | 52:1,4,8 54:15 | 83:8 90:25 | 16:10,11 66:10 |
| **setting** 6:11 | 61:10 72:1 | **sleeve** 54:23 | 84:7 104:11 |
| 93:23 | 82:25 94:21 | **slight** 81:10,12 | **specifically** |
| **severe** 14:14 | 96:24 97:21 | **slightly** 94:13 | 37:22 78:17 |
| 81:10 82:6 | 98:1,5 99:3 | **sloughing** | 80:19 82:12 |
| **shakes** 67:8 | **sign** 93:10 | 67:12 | 103:4 |
| **shaking** 8:5 | 101:15,24 | **slow** 22:1 | **spell** 11:3 67:24 |
| **shape** 29:10 | **signature** 102:6 | **small** 45:4 | **spider** 78:3,10 |
| **share** 43:18 | 105:23 | **smelled** 75:10 | 78:16 |
| 87:25 | **similar** 6:1 | 75:11 | **splash** 56:23 |
| **shared** 22:22 | 18:11 29:8 | **smith** 1:24 4:1 | **splatter** 57:7 |
| 47:8 | **sink** 46:2 47:1 | 105:23 | **splattered** |
| **sheryl** 1:7,16 | 47:7,19,24,25 | **snaps** 92:11 | 57:11 |
| 4:9,17 5:7,7,11 | 48:4,11 61:9 | **solely** 104:3 | **spoke** 69:23 |
| 10:4 93:17 | 61:23 62:24 | 105:17 | **spot** 78:24 |
| 94:8 | 66:18,24 74:18 | **solutions** 4:21 | **spots** 57:6 |
| **shirt** 54:20 | 74:23 75:4,19 | 103:17 104:6 | **standing** 32:5 |
| 57:21 | 75:21 76:5 | **sorry** 12:22 | 46:25 47:23 |
| **shoes** 55:3,7,13 | 87:4 | 13:12 39:14 | 48:2,13,18,25 |
| 57:25 | **sir** 5:18 14:20 | 65:18 89:24 | 49:24 |
| **shopping** 39:17 | 15:2 20:10,17 | **sort** 21:25 | **start** 9:17 |
| **short** 57:23 | 31:4 58:7 | 45:13 63:12 | 30:10 31:16 |
| | 82:24 | | 33:4,9,19 |

Sheryl Copeland                                                    June 6, 2023
Copeland, Edward A. Vs. Tristar Products, Inc.

**[started - term]**                                                Page 20

| | | | |
|---|---|---|---|
| **started**  9:7 | **stovetop**  16:17 | **sunlight**  73:12 | 30:9,11,18 |
| 38:19,21 39:15 | 16:19,20 17:5 | **super**  77:24 | 33:13 46:15 |
| 51:12 60:4 | 17:24 18:21,25 | **supplemental** | 49:5 65:15,20 |
| 78:13 | 19:15 20:9 | 14:16 58:9 | 65:22 71:6,10 |
| **state**  4:4,24 | 21:17 23:18 | **sure**  13:20 16:5 | 73:25 74:2 |
| 103:15 | 24:24 34:18,22 | 16:7 23:7,24 | 75:1 86:23 |
| **states**  1:1 | 90:10 | 25:14 26:6,22 | 91:10 95:4,9 |
| **stay**  54:4 62:23 | **strike**  54:14 | 27:9 28:11 | 99:13,16 |
| 72:17,23 74:23 | 55:9,12 57:13 | 35:17,18 36:19 | **taken**  9:9 66:2 |
| 76:4 | **struck**  55:15 | 38:5 40:11 | 70:20 74:7 |
| **stayed**  59:23 | **stuck**  59:8 | 50:6,22 56:4,7 | 99:23 100:11 |
| 72:21 | **stuff**  47:10 67:2 | 64:10 65:23 | 100:13 105:4 |
| **steam**  19:12 | 71:20 | 66:9,25 74:3 | **talk**  7:6 37:21 |
| 24:1 36:1,1,5,7 | **style**  18:17 | 77:10 78:11 | 82:19 |
| 36:9,22,23,23 | 29:11 | 83:9 86:11 | **talked**  101:16 |
| 36:25 37:1,7 | **subcontract** | 90:22 95:6 | **talking**  22:7 |
| 47:3 50:6 51:8 | 104:4 | **surgery**  83:10 | 56:1 80:19 |
| 51:10 53:6,13 | **subcontractor** | 83:13 | **tall**  48:15 57:17 |
| 53:16 59:11 | 103:16 105:18 | **surgical**  70:17 | **tampa**  10:13 |
| 90:22 91:1 | **subject**  15:8 | **surgically** | 12:7,18 |
| 94:15,17,24 | 94:6 | 80:20 | **teach**  17:16 |
| **stenographic...** | **submitted** | **surroundings** | **tell**  26:11,14 |
| 105:5 | 104:18,20 | 93:24 | 29:7 53:8 56:5 |
| **steps**  30:10,11 | **substantially** | **survant**  3:6 | 56:6,25 68:11 |
| **stew**  17:6 22:9 | 29:8 | **swear**  5:10 | 69:5,22 71:14 |
| 22:17,25 | **substantively** | **sworn**  5:12 | 76:8 78:16,18 |
| **sticking**  26:18 | 101:21 | **symptoms** | 79:2 97:1 |
| 29:23 94:23 | **suffer**  55:8 | 78:23 | 98:16 |
| 98:7 | **suffered**  14:25 | **system**  58:15 | **telling**  70:21 |
| **stomach**  65:5,6 | 15:4 78:10 | 96:8 | **temple**  55:16 |
| **stop**  19:14 | 81:1 85:10 | | **ten**  56:2 65:22 |
| **stopped**  41:4 | **suite**  3:14 | **t** | **tenderize**  18:23 |
| **stove**  19:8 | **summer**  86:14 | **table**  28:2 | **tenderized**  21:5 |
| 44:22,24 45:5 | **sunday**  66:17 | 100:9 101:1,4 | **term**  25:17 |
| 45:10,12 | 67:3 | **take**  6:20 10:24 | |
| | | 25:12,13 27:19 | |

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.
June 6, 2023

**[terms - turn]**

Page 21

| | | | |
|---|---|---|---|
| **terms** 55:3 | **thirty** 21:13 | **today** 5:20 6:10 | **transcription** |
| 77:16 104:3 | 33:24 34:1,5 | 9:13 54:21 | 105:8 |
| 105:17 | 34:15 35:11 | 58:4 87:14 | **transcripts** |
| **tes** 1:5 | 41:22,24 60:14 | **told** 32:24 | 104:14,23 |
| **testified** 5:13 | **thought** 67:4 | 37:25 58:8 | **transported** |
| 5:22,24 | 78:3 | 67:10 69:10 | 68:17,18,19 |
| **testify** 6:8,14 | **thousand** 84:20 | 78:5 79:8 87:7 | **trash** 75:9 |
| **testimony** 1:15 | **three** 25:4 | 91:11 | **travel** 32:15 |
| 5:20 6:10 7:1 | 54:23 72:9,22 | **tongs** 90:19 | **treat** 85:15 |
| 9:12 46:18 | 79:20 95:18 | **took** 6:2 58:11 | **treated** 72:14 |
| **thank** 9:22,25 | **throw** 75:24 | 58:12,13,22,25 | 72:16 83:20 |
| 12:23 28:23 | **thumb** 72:5 | 63:1 67:20 | **treatment** 70:5 |
| 46:14 77:13 | **thursday** 73:2 | 68:15 69:19 | 76:20 77:2,7 |
| 101:6 | **tilt** 19:11 29:18 | 73:21 74:1,6 | 77:17 79:5 |
| **thereto** 105:6 | **time** 4:14 7:6 | 74:10,11,12,14 | 80:7,7 83:17 |
| **thing** 6:5 19:4 | 12:5,9 16:12 | 79:7,25,25 | **trial** 7:1 |
| 33:6 35:13 | 17:20 25:24 | 80:23 100:16 | **tried** 29:6 |
| 60:16 92:8 | 31:24 38:3,5 | **tool** 90:19 | 60:10 |
| **things** 8:6,22 | 41:23 43:9 | **top** 19:4,12 | **tristar** 1:10 |
| 17:4 22:5,23 | 46:21 58:5,10 | 51:12 52:9 | 4:18 5:4 20:11 |
| 84:10 101:19 | 62:2 64:5,9,14 | 61:5 72:1,4 | 87:17 93:16 |
| 101:20 | 66:4 73:19 | 82:19 85:23 | **trousers** 55:6 |
| **think** 21:4 | 74:8 78:3 85:4 | 88:13 92:5 | **true** 21:21 |
| 24:18 38:1 | 85:18 91:15,15 | 94:14 101:3 | 104:15 105:9 |
| 53:6 56:5 | 91:25 92:15 | **torso** 57:16 | **try** 8:11,12 |
| 57:18 69:1 | 93:24 99:25 | **touch** 48:19 | 52:14 59:11,14 |
| 72:22 77:3 | 104:13 | **touching** 49:18 | 60:12 64:21 |
| 79:20 83:18 | **timer** 33:10,19 | 81:19 | **trying** 7:12 8:8 |
| 91:11 97:12,17 | 33:22 | **tough** 64:22 | 59:23 62:3 |
| 99:1,8,14,14 | **times** 24:20 | **transcribe** 6:22 | 98:17 99:7 |
| **thinking** 66:24 | 25:4 52:22 | **transcribed** 7:4 | **tuesday** 71:11 |
| 66:25 | 76:19,24,25 | 105:7 | **turn** 29:18 |
| **third** 89:6 | 77:3 83:17,18 | **transcript** 7:20 | 32:10,13 50:9 |
| **thirteen** 14:3 | **tissue** 80:1,24 | 101:18 104:14 | 51:12 71:6 |
| | | 105:8 | 90:23 92:9 |

Veritext Legal Solutions

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.
June 6, 2023

**[turned - vs]**

Page 22

turned  32:9,10
  41:4 47:25
  48:22 50:5,9
turning  30:4
  37:14 41:4
tv  38:16,20
  42:5 43:5
  58:20
twelfth  10:15
twenty  33:14
  68:7
twice  34:9,10
twisted  52:9
two  25:3 42:16
  45:4 52:24
  53:3 63:19
  68:25 69:1
  79:20 84:20
  93:20
type  23:1 30:16
  58:15 78:4
typical  38:13
typically  25:23
  29:15 30:12
  32:25 96:9
  97:9

**u**

u  11:5
uh  8:6,6 29:13
  31:11 32:3
  33:8 44:10
  46:19 48:9
  92:7,25 99:4
uncomfortable
  20:3,4 64:20

under  23:19
  65:4 89:8
  95:14 97:4,4
underneath
  62:16 82:6
underside  92:2
  100:25
understand
  6:16 8:16,19
  8:20 12:19
  14:13 15:16
  21:15 24:17
  25:16 98:18
  99:7
understanding
  14:7 79:22
  88:25 93:4
understood
  7:24,25 9:4,5
  23:15 28:8
  31:1 37:3 70:4
  75:3 89:18
  90:9 91:4 95:6
undoing  48:1
unexpected
  77:15
unit  23:22 25:9
  89:10,15,23,23
  89:24 90:1
  91:14
united  1:1 85:1
  85:3
unlocked  29:25
unplugged
  34:14 42:20

43:4 46:22
unplugging
  42:25
untouched
  74:20
unusual  24:5
uploaded
  104:24
upper  54:17
  57:15
upside  26:9
  61:10
use  6:25 9:18
  16:24 17:4,10
  18:24 19:19
  21:25 22:5,12
  22:15,24 24:23
  25:1,17 28:5
  52:24 53:3
  73:23 89:9,11
  90:5 91:18
  92:15
used  6:7 17:24
  20:1,15 24:17
  24:24 25:25
  30:17 34:22
  35:7 50:15
  51:16 52:23
  53:6 91:15
  92:1
using  19:14
  34:18,24 51:15
  58:9,16 88:14
  90:10,18

usually  33:13

**v**

v  11:5
valley  13:11,13
  13:16
valve  35:14,20
  47:2 50:5,17
  53:5,10 59:12
  90:20 94:14
  95:19,24 96:2
  96:6,11,18
  97:3,18 99:5
  99:10
verbalize  8:3
  8:18
verbatim
  103:23
veritext  3:19
  4:21 103:16
  104:6
version  93:22
versus  4:18
video  1:18 4:8
  4:15,16
videographer
  3:18 4:13,22
  5:9 27:24 28:3
  65:25 66:3
  99:21,24
  101:12
view  28:1 44:12
visible  96:14
vs  1:9

Sheryl Copeland
Copeland, Edward A. Vs. Tristar Products, Inc.
June 6, 2023

**[waist - zoom]**

Page 23

| **w** | | | |
|---|---|---|---|
| **waist** 55:9 | **way** 7:18 16:2 | **wish** 42:12 | **wrong** 31:22 |
| **wait** 25:11 | 26:11 41:2 | **witness** 4:10 | **x** |
| **waited** 35:10 | 44:1 57:15 | 5:10 27:16 | **x** 2:2 |
| 51:11 | 61:16,18 71:7 | 28:2 50:21 | **xl** 2:11 15:23 |
| **waiting** 46:20 | 71:8 | 67:8 99:20 | 20:11,22 23:3 |
| **waive** 101:15 | **ways** 21:10 | 101:9 102:1 | 89:23 90:16,17 |
| 101:22 102:2 | **we've** 29:5 | **witness's** 28:6 | **y** |
| **waived** 102:6 | 45:24 | **witnesses** | **y** 11:5 67:25 |
| **waiving** 94:7 | **wear** 58:2 | 104:21 | **yeah** 27:21 |
| 101:25 | **wearing** 54:18 | **woke** 67:11 | 28:22 35:22 |
| **wall** 31:9 101:2 | 55:3 57:19,22 | **word** 53:7 | 36:1,3 43:23 |
| **want** 8:21 9:1 | 58:4,5 | 95:14 | 43:25 57:5 |
| 9:18,20 27:19 | **weather** 25:7 | **words** 7:17 | 75:8 78:11 |
| 28:7 35:17 | **website** 15:23 | 26:8 29:21 | 85:21 96:1,7 |
| 43:16,21 44:7 | **wedding** 18:12 | 50:25 73:14 | 97:1 98:19 |
| 53:7,18 63:7 | 18:15 | 80:6 81:11 | 102:1 |
| 64:25 87:24 | **wednesday** | 96:5 97:25 | **year** 23:4,5 |
| 95:5 101:14,24 | 73:2 | **work** 24:13 | **years** 11:21 |
| **wanted** 31:13 | **week** 15:14 | 28:20 65:22 | 13:17 14:3 |
| 36:15 64:21 | 73:2 75:5 76:7 | 85:6 | 90:9 |
| 74:2 | 76:13 | **worked** 14:2 | **younger** 17:18 |
| **warm** 21:20 | **went** 42:4,20 | 38:23 39:7 | **yuravich** 11:2 |
| 90:18 | 42:21 43:5 | **works** 28:22 | 11:12,17 12:10 |
| **warn** 7:15 | 46:24 47:7 | 65:23 | 13:8 |
| **wash** 25:12 | 50:8 54:9,10 | **worn** 19:22 | **z** |
| **washed** 25:14 | 60:3 64:16,19 | 20:6 | **zero** 34:5 |
| **watched** 42:5 | 67:19 68:14 | **worried** 75:2 | **zip** 13:20 |
| 43:5 | 71:11,16 73:12 | **worse** 78:14 | **zoom** 27:25 |
| **watching** 38:16 | 77:24 78:4,9 | 83:12 | 28:4,4 44:6 |
| 38:20 42:7,22 | 79:6 83:16 | **worst** 82:7 | 88:13 89:7 |
| 42:23 58:20 | 91:18 | **wrapping** | 93:20 |
| **water** 30:19 | **wet** 57:2,3 | 73:15 | |
| 40:11 | **white** 101:1,4 | **written** 92:24 | |
| | **whooshing** | 93:3 | |
| | 53:12 | | |

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
### COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.